# SEALED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.   23-cv-20727

RYAN BRESLOW, ALEX FINE, and JON
GORDON,

     Plaintiffs,

vs.

MARK PHILLIPS and BENJAMIN REED,

     Defendants.

_____/

FILED BY ///\\\ D.C.

FEB 2 3 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### VERIFIED COMPLAINT

Plaintiffs Ryan Breslow ("Breslow"), Alex Fine ("Fine"), and Jon Gordon ("Gordon") (collectively, "Plaintiffs") collectively allege as follows:

1.    Plaintiffs bring this action to obtain temporary, preliminary, and permanent injunctive relief, restitution, money damages, and other equitable relief for Defendants Mark Phillips ("Phillips") and Benjamin Reed's ("Reed") (collectively, "Defendants") acts of breach of fiduciary duty, fraud, and civil conspiracy.

### PARTIES

2.    Plaintiff Ryan Breslow is a co-founder and investor in the Movement DAO.  He currently resides in, and is a citizen of, the United States Virgin Islands.

3.    Plaintiff Alex Fine is a co-founder and investor in the Movement DAO.  He currently resides in, and is a citizen of, California.

4.      Plaintiff Jon Gordon is a co-founder and investor in the Movement DAO. He currently resides in, and is a citizen of Texas.

5.      Upon information and belief, Defendant Mark Phillips currently resides in, and is a citizen of, Florida.

6.      Upon information and belief, Benjamin Reed currently resides, and is a citizen of, Washington.

### JURISDICTION AND VENUE

7.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) because it is the district in which a substantial part of the actions giving rise to the claims occurred.

### FACTUAL ALLEGATIONS

### Plaintiffs and the Movement DAO

9.      Plaintiffs are American entrepreneurs.  In 2021, they set out to create a new cryptocurrency platform dedicated to funding social impact projects called the Movement DAO (the "DAO").

10.      Plaintiffs intended the DAO to function as an online community in which members would invest capital into the DAO endowment.  That endowment would then be invested, and the proceeds from the investment returns would be used by DAO community members to finance social impact projects.

11.      Combined, Plaintiffs invested over $16 million into the DAO endowment—over 97% of its total assets.  The amount invested by all other DAO community members is less than $300,000.

12.     Plaintiffs described the DAO concept in a white paper called the "Gitbook" published online on February 2, 2022.

13.     The "Gitbook" was a roadmap that enumerated the goals of the project and key features of its structure.  For example, the Gitbook stated that no monies from the DAO endowment would ever be spent; only the proceeds from the endowment's investment returns would be used to fund projects or support the DAO's operating expenses.

14.     The Gitbook also explained the security features that protected the DAO's endowment assets.  The DAO endowment would be placed in a Gnosis SAFE account—an account that stores cryptocurrency—which had seven authorized signatories.  No assets could be transferred out of the account unless five of the seven signatories authorized the transfer using authorization tokens.  Plaintiffs were three of the signatories on the DAO endowment's Gnosis account.

15.     The Gitbook also described the unique, decentralized governance of the DAO. Once the DAO launched, decisions relating to governance, funding, and a variety of other subjects would be made by a community vote:  a member would submit a proposal to the entire DAO community, and the DAO community would vote to determine whether the proposal was adopted or defeated.

16.     According to the Gitbook, the number of votes a community member could exercise would be determined based on the amount of capital they contributed to the DAO endowment. The more money a community member invested into the DAO endowment, the more votes they were able to cast on a proposal.  Proposals would be posted and votes would be cast on an online platform called Snapshot.org, which would display proposals and record vote tallies.  DAO community members would be issued "voting tokens"—called MOVE tokens—and would deploy

those tokens to vote on proposals.  These concepts were to take effect upon the launch of the DAO. Because of Defendants' conduct, the DAO never launched.

<strong><u>Plaintiffs Retain The Services of Defendant Mark Phillips</u></strong>

17.     In July 2021, Plaintiffs were looking to hire a code developer who could construct the DAO's systems architecture.  They interviewed Defendant Mark Phillips, who represented he had experience as a coding engineer and had worked for the Securities and Exchange Commission.

18.     Plaintiffs Breslow and Gordon were impressed by Defendant Phillips's experience with the SEC because they wanted to be sensitive to regulatory compliance issues in the cryptocurrency space.  Based on Defendant Phillips's representations about his professional experience, Plaintiffs hired him.  Defendant Phillips did not disclose that he had been convicted of federal wire fraud, mail fraud, and money laundering in connection with a startup technology company.

19.     Defendant Phillips agreed to (1) keep detailed records of all expenditures incurred in connection with the establishment of the DAO and provide correct copies to Plaintiff Breslow upon request (2) keep Plaintiff Breslow fully informed regarding the completion of the DAO in a timely manner and/or if Defendant Phillips requires any additional unexpected resources that are crucial to the development and timely launch of the DAO, and (3) to immediately advise Plaintiff Breslow of any security risks related to the DAO or the project overall.  Defendant Phillips was also required to launch the DAO by January 2022.

<strong><u>Defendant Phillips Induces Plaintiffs to Place Him in a Position of Trust</u></strong>

20.     Over the next several months, Defendant Phillips purportedly began his work on the DAO architecture.  In October 2021, Plaintiff Ryan Breslow brought on Plaintiff Alex Fine as

4

head of the DAO project. Together, Plaintiff Fine and Defendant Phillips worked together to author the Gitbook.

21.     During the Gitbook's creation and after its publication on February 2, 2022, Plaintiffs directed Defendant Phillips to construct the DAO in accordance with the Gitbook, and Defendant Phillips, at least initially, acted accordingly. For example, Defendant Phillips established the Gnosis SAFE account, as described in the Gitbook. Plaintiffs Breslow, Gordon, and Fine contributed over $16 million into that account and were issued authorization tokens over the account. Defendant Phillips also issued authorization tokens to himself and his accomplices, including a sham law firm called Dao-lawfirm.eth.[1]

22.     During that time, Defendant Phillips began to accrete more and more authority to himself. For example, he induced Plaintiffs Breslow and Fine to entrust him with their authorization tokens for the DAO endowment's Gnosis account by repeatedly assuring them he was trustworthy, including by representing he had heightened ethical obligations because of his affiliation with the sham law firm Dao-lawfirm.eth, and because he had a security clearance with the SEC. As a result of those inducements, Defendant Phillips secured control over the DAO endowment.

23.     Around the same time, Defendant Phillips created a Beta version of the DAO Movement voting space on Snapshot.org—the platform that would enable DAO community members to post proposals and hold votes on them, as described in the Gitbook. As part of that

---

[1] As described in more detail below, Dao-lawfirm.eth is the alias for a sham law firm that Defendant Phillips claimed to have retained in connection with creating the DAO. Initial investigation has revealed that this "law firm" is a sham company—nothing more than a single webpage posted on the internet with links to the website of a personal injury law firm—the Law Offices of Reed Yurchak and Steven Hay. Plaintiffs understand that Defendants created sham invoices purporting to come from Dao-lawfirm.eth in order to divert DAO assets to themselves.

process, Defendant Phillips represented to Plaintiffs that he created voting tokens based on the contributions that DAO community members made to the DAO endowment. Because Plaintiffs Breslow, Gordon, and Fine contributed over $16 million to the DAO endowment, they should have held over 97% of the voting tokens—and thus an overwhelming amount of the voting power—in the DAO community. Plaintiff Breslow contributed the majority of the approximately $16 million investment into the DAO endowment, so Plaintiff Breslow should have held well over 50% of the voting tokens. Defendant Phillips once again induced Plaintiff Breslow to entrust him with his voting tokens through repeated assurances he was trustworthy and that Defendant Phillips would vote Plaintiff Breslow's tokens as he directed him. Plaintiff Fine similarly agreed to let Defendant Phillips act as custodian for some, but not all, of his voting tokens.

### Defendant Phillips Consolidates Power

24.     Although the DAO's voting platform was being created and tested at this time, the DAO had not launched, and the governance mechanisms that Defendant Phillips had created on Snapshot.org had no authority.

25.     Defendant Phillips continued to work for Plaintiffs pursuant to his contract with Plaintiff Breslow. Throughout the DAO project, Plaintiff Breslow had delegated responsibility over the operations and management of the DAO to Plaintiffs Fine and Gordon. Defendant Phillips took direction from Plaintiffs and kept Plaintiffs informed of his activities—at least for a time.

26.     During this time, Defendant Phillips hired Defendant Benjamin Reed as a developer for the DAO project. As described below, Defendant Reed was an accomplice to Defendant Phillips's fraud.

27.     The DAO launch did not occur in January 2022, as scheduled. At that point, Defendant Phillips had the most comprehensive knowledge of the DAO's architecture of any

member of the project.  In February 2022, Plaintiff Fine stepped away from day-to-day oversight of the project.  As Plaintiff Fine withdrew, Defendant Phillips filled the vacuum and assumed the primary leadership role of the DAO project—a position of trust.

28.     It was at this point—after months of earning Plaintiffs' trust and now having achieved a greater position of authority—that Defendant Phillips began to take more overt actions to execute his scheme to defraud and embezzle from Plaintiffs.  By August 2022, Defendant Phillips began advocating to Plaintiffs Breslow and Gordon that all spending on the DAO project should be exclusively dedicated to development.  He also advocated that $1.75 million from the DAO endowment should be transferred to a DAO-affiliated account he controlled—known as the DAO Developer Multisig account—to pay "development-related" expenses.

29.     Plaintiffs ultimately agreed to authorize the transfer on the condition that Defendant Phillips would complete and launch the DAO by January 2023.  Plaintiffs did not discuss or approve any other authorizations or grants of authority to Defendant Phillips.

30.     Defendant Phillips caused the $1.75 million to be transferred from the DAO endowment to the DAO Developer Multisig account on August 30, 2022.

31.     On August 22, 2022, Defendant Phillips for the very first time, both through aliases and accomplices, posted proposals to the Snapshot.org page.  Those proposals were the Trojan horse that Defendant Phillips would later use to enable himself to transfer funds to personal accounts he controls and to strip Plaintiffs of the means to stop his fraud.

32.     One proposal purported to authorize the transfer of $1.75 million in DAI cryptocurrency from the DAO endowment into an account controlled by Defendant Phillips—the same amount that Plaintiff Breslow and Gordon authorized days earlier.

33.     The remaining proposals were cast in a veneer of legalese and mundane administrative jargon, but key provisions within them purported to empower Defendant Phillips as follows:

(1) to create formal entities to facilitate DAO operations and to excuse Defendant Phillips from maintaining any record or accounting of costs, fees, or other expenses associated with the DAO;

(2) to authorize the advance of funds to Defendant Phillips and other "Certain Members" (i.e., his accomplices) under the auspices of indemnification for potential legal actions in the future;

(3) to appoint Defendant Phillips, the sham law firm dao-lawfirm.eth, Defendant Ben Reed, and his other accomplices as "Service Providers," which would purportedly entitle them to fees from the DAO;

(4) to give Defendant Phillips and his fellow "Service Providers" discretion to deposit "funds of the DAO" into entities created by him as they deem "necessary or advisable;" and

(5) to retroactively ratify as authorized "every action that has been taken, authorized, unauthorized, and with respect to the DAO by the Service Providers [i.e., Defendant Phillips and his accomplices], including . . . the transfer of cryptocurrency to and from Gnosis [accounts]."

34.     These proposals constituted a surreptitious attempt to give Defendants the color of authority to advance their fraudulent scheme and shield it from detection.  They also were an attempt by Defendant Phillips to supplant his accounting and reporting obligations under his agreement with Plaintiff Breslow.  In reality, these proposals had no force or effect, as the DAO had not yet launched.

35.     Meanwhile, Defendant Phillips was telling Plaintiffs that things were proceeding according to plan and that he was doing what needed to be done to get the DAO up and running. He did not provide copies of the proposals to Plaintiffs, he did not make Plaintiffs aware of the powers and authorizations he sought in the proposals, and Plaintiffs never voted on the proposals. Instead, he induced Plaintiffs to pay no mind to what he was doing in the Beta environment of the DAO community's Snapshot.org space.

36.     For example, when Plaintiffs questioned Defendant Phillips about his proposal-posting activity, he assured them that he did not believe the proposals had any authority by stating that "no one reads them anyway." Despite being the founders of the DAO and possessing over 97% of the voting power in the DAO community, Plaintiffs did not vote on Defendant Phillips's August 2022 proposals. The only members of the DAO community that voted on these proposals were Defendant Phillips and/or his aliases and accomplices. Through his acts of deception and inducement, Defendant Phillips succeeded in pushing the Trojan horse into the DAO community.

37.     Although Plaintiffs had been induced to overlook Defendant Phillips's scheming on SnapShot.org (a Beta environment that had no authority in any event), Plaintiff Fine grew concerned about the $1.75 million transferred from the DAO endowment Gnosis account, which spurred him to consult with the other Plaintiffs in September 2022 about what exactly Defendant Phillips was up to. Over the next two months, Plaintiffs attempted to obtain explanations for Defendant Phillips's actions. Unsatisfied with the justifications that Defendant Phillips provided, in October and November 2022 Plaintiff Fine entered into discussions with the other Plaintiffs about the viability of the DAO and whether they should unwind their money from the DAO endowment.

38.     By December 2022, Plaintiffs, as founders of the DAO, concluded that the best course was to unwind the DAO endowment entirely and refund all DAO endowment assets to all members of the DAO community to make each of them whole.  Because the DAO had incurred substantial costs at that point, Plaintiff Breslow, as the principal investor in the project, agreed to absorb those losses out of his own share of the DAO endowment.  Plaintiff Breslow asked Defendant Phillips to announce to the DAO community that each community member's investment into the DAO endowment would be redeemed and their assets returned.

39.     Faced with the prospect that his scheme would be thwarted before he could further enrich himself, Defendant Phillips stalled for time.  He did not make the announcement requested by Plaintiff Breslow to the DAO community.  He also told Plaintiffs that he would need to consult with the sham law firm, Dao-lawfirm.eth, to make sure the unwinding of the project was done completely above board.  After that, Defendant Phillips became distant and he slowed his communications with Plaintiffs.  By the end of December 2022, Defendant Phillips had still not presented the redemption offer to the DAO community, despite Plaintiffs repeatedly directing him to do so.

### Defendant Phillips's Façade Starts to Crack

40.     On January 2, 2023, Defendant Phillips, through both aliases and accomplices, including Defendant Reed, introduced two proposals on Snapshot.org that revealed cracks in Defendants' fraudulent scheme.  In the proposal titled "Pay Deferred Legal Fees From 2022," Defendants proposed that the DAO endowment should pay Dao-lawfirm.eth $58,831.02 in DAI cryptocurrency for legal services the "law firm" rendered in 2022.  The proposal falsely represented that Plaintiff Gordon's Snapshot.org alias—jimmyethworld.eth—reviewed and "confirmed that this proposal accords with the DAO's agreement with the Service Provider, dao-

lawfirm.eth." That was a lie. Plaintiffs Gordon (Snapshot alias: jimmyethworld.eth) and Fine
(Snapshot alias: jamesbarrie.eth) voted against the proposal. Plaintiff Gordon posted the following
statement along with his votes: "This proposal should be removed for making false claims. This
was not approved by me, nor should that have been stated."

41.    In Defendants' other fraudulent proposal titled "Pay Deferred Service Provider
Fees From 2022," Defendants attempted to obtain sham authorization to transfer $334,487 in DAI
cryptocurrency from the DAO endowment to an account controlled by Defendant Phillips.
Plaintiffs Gordon (alias: jimmyethworld.eth) and Fine (alias: jamesbarrie.eth) voted against this
proposal as well. Plaintiffs understood these proposals to be fraudulent because they knew that
the funds in the DAO endowment account were not to be touched. The Service Provider identified
in the proposal was identified as Dao-lawfirm.eth.

42.    During the course of Defendant Phillips's work on the DAO, he purported to work
with a law firm described in Defendant Phillips's proposal as "Dao-lawfirm.eth." Defendant
Phillips presented the Dao-lawfirm.eth as the Law Firm of Reed Yurchak and Stephen Hay. It
appears that Mr. Yurchak's law firm performed some services for the DAO, but Defendant Phillips
used that association as cover to falsely represent Mr. Yurchak's firm as Dao-lawfirm.eth, when
in reality Dao-lawfirm.eth was actually an alias of Defendant Phillips. For example, the webpage
https://www.dao-lawfirm.xyz/ as it was published on December 29, 2020—just four days before
Defendants' attempt to pass their fraudulent proposals—displays the name of Reed Yurchak, his
office phone number, e-mail address, and a link to Mr. Yurchak's law office website:
https://yurchaklaw.com/.

43.    Although the Dao-lawfirm.eth website purports to be a "crypto-savvy law firm
specializing in legal and blockchain development services," Mr. Yurchak's actual law firm website

does not advertise itself as holding that skill set.  The firm's website lists the following as practice areas of the firm:  personal injury, traumatic brain injury, criminal/traffic infractions, bankruptcy, business consulting, and tax law.

44.     As of the filing of this application, https://www.dao-lawfirm.xyz/ looks very different.   It no longer lists Mr. Yurchak's name, number, e-mail address, or link to https://yurchaklaw.com/.  It also no longer describes itself as a "crypto-savvy law firm."  That is because that website, like dao-lawfirm.eth itself, is a fraud.  Defendant Phillips co-opted Mr. Yurchak's information to pass off the sham firm as a legitimate enterprise.  Mr. Yurchak represented Defendant Phillips in connection with his prior convictions for mail fraud, wire fraud, and money laundering. *See United States v. Mark E. Phillips*, Case No. 2:10-cr-002690-JCC, Dkt. No. 245 (W.D. Wash. July 24, 2014).

45.     Defendants' January 2 proposals to pay "deferred legal fees from 2022" and "deferred service provider fees from 2022" were actually a fraudulent attempt to enrich Defendants themselves.  The proof of that fraud comes from Reed Yurchak himself.  Attorney Reed Yurchak wrote to Plaintiff Breslow explaining that "the last payment my office received was for a March 2022 invoice" and explained that there had been no outstanding invoices since March 2022.  Reed Yurchak had not been owed any funds since March 2022, yet in January 2023 Defendants represented that the DAO owed Reed Yurchak $58,831.02 in DAI cryptocurrency for legal services and $334,487 in DAI cryptocurrency for service provider fees.

46.     On January 6, 2023, Plaintiff Breslow wrote to Defendant Phillips and demanded that he provide an explanation for his fraudulent conduct.  Defendant Phillips went silent.  After receiving no response, Plaintiff Breslow wrote him again on January 29, 2023 alerting Defendant Phillips of the grave nature of his actions.

12

**Defendants Spring Their Trap**

47.     On February 2, 2023, Defendants Phillips and Reed, through aliases and accomplices, introduced several proposals on Snapshot.org that revealed the full scope of their fraudulent scheme.  But before they did so, Defendant Phillips disabled Plaintiffs' voting tokens to ensure they could not vote against the fraudulent proposals.  The proposals were an attempt to remove any control Plaintiffs had over the DAO and provide the pretext for emptying the DAO endowment to enrich Defendants.

48.     The proposals purported to do the following with regard to locking out Plaintiffs from the DAO and their $16 million stored in the DAO endowment:

(1) Disable Plaintiffs' authorization tokens to the DAO endowment Gnosis account and replace Plaintiffs as authorized signatories;

(2) Ratify the termination of Plaintiffs from voting in the DAO community based on the pretext that their conduct was inconsistent with the values of the DAO;

(3) Reallocate the distribution of voting power now that Plaintiffs had been terminated from the DAO community.

49.     Defendants' remaining proposals laid the pretext for transferring assets out of the DAO endowment into accounts that they or their accomplices controlled.   Those proposals purported to authorize the following:

(1) Transfer 10 Ethereum cryptocurrency and $12,200 DAI cryptocurreny from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for the "Launch of DAOLabs Beta Services;"

(2) Transfer $50,000 DAI cryptocurrency from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for the purpose of "retaining counsel;"

(3) Transfer $511,794 DAI cryptocurrency and 41,007 Etherium cryptocurrency from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for "Outstanding Operational Expense Payouts;"

(4) Transfer $349,035 DAI cryptocurreny from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for "Deferred 2022 Developer Payouts;"

(5) Transfer $334,487 DAI cryptocurreny from the DAO endowment Gnosis account to an account controlled by Defendant Phillips to be held "in escrow" until Defendant Phillips and his accomplices decide to dedicate those funds to a new service provider and/or attorneys;"

(6) Transfer $5,354,433 DAI cryptocurreny from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for the "DAO's 2023 Operational Budget;" and

(7) Transfer $2,558,831 DAI cryptocurreny from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for "Deferred Legal and Indemnification Expenses."

50.     On information and belief, the only members of the DAO community that voted on those proposals were Defendants, their accomplices, and a handful of individual DAO community members who had been duped by Defendants' fraudulent scheme.  The sham proposals all passed with no votes against.

14

**Defendant Phillips Illegally Transfers Money Out Of The Gnosis SAFE Account**

51.     On February 2—the same day Defendants' sham proposals were posted but seven days before voting even closed—Defendants completed their fraud by surreptitiously moving millions of dollars out of the DAO endowment's Gnosis account.  An initial review of the blockchain transaction history[2] shows that on February 2, 2023 two large transfers were made out of the DAO endowment Gnosis account to the DAO Developer Multisig account—an account controlled by Defendant Phillips—in the following amounts:

1)  $7,500,000 in DAI cryptocurrency ($7,500,000 in USD); and

2)  Over 800 in Etherium cryptocurrency ($1,367,408 in USD);

52.     That same day, Defendants then caused the following transfers to be made from DAO Developer Multisig account:

1)  $20,000 in DAI cryptocurrency;

2)  $100,000 in DAI cryptocurrency;

3)  $15,000 in DAI cryptocurrency;

4)  $592,000 in DAI cryptocurrency;

5)  $250,000 in DAI cryptocurrency;

6)  $500,000 in DAI cryptocurrency;

7)  39.53 Etherium cryptocurrency ;

8)  $1,058,000 in DAI cryptocurrency;

9)  $322,034.67 in DAI cryptocurrency; and

10) $50,000 in DAI cryptocurrency.

---

[2] Blockchain ledgers are public and a number of third-party tools allow for a review the blockchain transactions associated with a specific wallet.

53.     Plaintiffs have reason to believe that those assets ended up in accounts controlled by Defendants and their accomplices.  For example, Defendant Phillips transferred $1,058,000 directly to an account tied to his known Snapshot alias @tankbottoms.eth.  Three of the transfers (totaling $1,164,034.67) were made directly to the account of his accomplice, Defendant Reed. The rest of the assets were sent to accounts that, on information and belief, are owned or controlled by Defendants.

54.     None of the recipient accounts have presented the DAO with invoices to establish they are legitimate vendors or service providers to the DAO.

55.     Plaintiffs first discovered these unauthorized transfers on February 4, 2023 and immediately attempted to contact Defendant Phillips for an explanation.  By February 6, 2023, as the full impact of Defendants' fraud came into focus, Plaintiffs demanded the return of the DAO endowment's Gnosis account authorization keys and an accounting of all DAO expenditures to date.  Defendant Phillips refused, claiming that he was under no obligation to provide any accounting to Plaintiffs, citing to the sham proposal he purported to pass in August 2022, despite his prior agreement to provide an accounting.  That same day, Plaintiffs discovered that Defendant Phillips had been convicted of federal wire fraud, mail fraud, and money laundering in connection with his involvement in a technology startup in 2011.

56.     Defendant Phillips still has complete control over the DAO endowment Gnosis account, nearly all of whose assets belong to Plaintiffs (fewer than $300,000 in assets belong to others).  Breslow Decl., ¶ 92.  Those assets are at risk because Defendants continue to deplete that account and other accounts that currently hold DAO assets.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – Against Defendant Phillips)

57.     Plaintiffs incorporate by reference Paragraphs 1-57 above, as if fully set forth herein.

58.     After Defendant Phillips was added to the project team, Plaintiffs entrusted Defendant Phillips with significant responsibilities.  Specifically, he was tasked with the development and launch of the DAO systems architecture.

59.     As evidence of the trust that Plaintiffs reposed in Defendant Phillips, Plaintiffs provided him with authorization keys to the DAO endowment Gnosis account, which are needed to access DAO endowment funds.

60.     By virtue of Defendant Phillips's role with the DAO and the position of trust he occupied relative to Plaintiffs, Defendant Phillips owed Plaintiffs (and the DAO community) a fiduciary duty to act in good-faith and in their best interests.

61.     Instead, Defendant Phillips breached his fiduciary duty and abused that trust, enriching himself in the process, by leveraging the access that he was provided to transfer money out of the DAO endowment account and into accounts ultimately managed and/or controlled by Defendants.

62.     As a result of Defendant Phillips's actions, Plaintiffs have suffered significant injuries.  Defendant Phillips, for example, has stolen millions of dollars in cryptocurrency that belong to Plaintiffs.

## SECOND CLAIM FOR RELIEF
### (Fraud – Against Defendant Phillips)

63.     Plaintiffs incorporate by reference Paragraphs 1-62 above, as if fully set forth herein.

64.     From the outset of his involvement with the DAO, Defendant Phillips has been knowledgeable about the principles and policies governing that DAO that were spelled out in the Gitbook.  In fact, Defendant Phillips helped to draft the Gitbook with Plaintiff Fine.

65.     Defendant Phillips agreed that he would perform his job functions in a manner consistent with the principles and policies in the Gitbook.

66.     Defendant Phillips also agreed that, in exchange for receiving custody of authorization keys to the DAO endowment Gnosis account, he would effectuate the wishes of Plaintiffs in utilizing those keys.

67.     Prior to being hired, Defendant Phillips also represented to Plaintiffs Breslow and Gordon that he had previously worked for the Securities and Exchange Commission ("SEC") and held a security clearance in connection with that work.  Defendant Phillips's purported SEC experience was a substantial factor in Plaintiffs' decision to hire him.

68.     The Gitbook also included strict restrictions on withdrawing and/or transferring DAO endowment funds from the DAO endowment Gnosis account.

69.     Despite his representations to Plaintiffs, Defendant Phillips never intended to comply with the DAO's governing rules or the other restrictions placed on him by Plaintiffs.  In fact, Defendant Phillips concocted a multi-phase scheme, executed over the course of many months, to induce Plaintiffs' reliance and ultimately abscond with their assets.

70.     In August 2022, Defendant Phillips submitted a number of voting proposals on a Beta version of the DAO's voting platform on Snapshot.org, purporting to grant him additional control over the DAO's operation and finances.  When pressed on these voting proposals by Plaintiffs, Defendant Phillips told them that the votes were meaningless and that nobody read them anyway.

71.     However, in January 2023, Defendant Phillips submitted another batch of Snapshot.org voting proposals that purported to authorize the transfer of significant DAO endowment assets to accounts managed and/or controlled by Defendants under the guise of satisfied phony invoices.  Wising up to Defendants' fraud, Plaintiffs voted against the proposals and demanded an explanation for Defendants' actions.

72.     On February 2, 2023, Defendants, through aliases and accomplices, introduced several new proposals on Snapshot.org after disabling Plaintiffs' voting tokens.  These proposals were an attempt to remove Plaintiffs' control over the DAO and to authorize the transfer of millions of dollars out of the DAO endowment Gnosis account and into Defendants' personal accounts.

73.     Defendants, at all times, intended for Plaintiffs to rely on their representations about how Defendants would operate and manage the DAO.

74.     Plaintiffs actually relied on the Defendants' misrepresentations, including (1) Defendant Phillips's statement that he previously worked for the SEC (2) Defendant Phillips' statement that he would operate the DAO in accordance with the Gitbook's policies and regulations (3) Defendant Phillips's statement that he would unwind the DAO and allow Plaintiffs to redeem their interests and (4) Defendant Phillips's statement that the Snapshot.org voting proposals had no effect.

75.     As a result of Plaintiffs' reliance on Defendant Phillips's misrepresentations, they have suffered significant monetary losses.  Plaintiffs' injuries include the loss of their initial contributions to the DAO endowment, which total millions of dollars.

### THIRD CLAIM FOR RELLIEF
#### (Civil Conspiracy – Against All Defendants)

76.     Plaintiffs incorporate by reference Paragraphs 1-75 above, as if fully set forth herein.

77.     Defendants Phillips and Reed agreed to combine their efforts in furtherance of their fraudulent scheme, which included the commission of fraud and breach of fiduciary duty

78.     In furtherance of their fraudulent scheme, and commission of several underlying torts including fraud and breach of fiduciary duty, Defendants took a number of concrete steps. They surreptitiously wrested control of the DAO endowment Gnosis account away from Plaintiffs, submitted a number of dubious, sham proposals aimed at legitimizing their fraud, and then transferred DAO endowment Gnosis funds into wallets that Defendants own and/or control.

79.     Defendants conduct and commission of the underlying torts resulted in significant monetary damages to Plaintiffs.

## JURY TRIAL DEMAND

80.     Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants on all claims, and request a judgment providing the following relief:

A.     Judgment in Plaintiffs' favor and against Defendants on all causes of action;

B.     For compensatory damages in an amount to be proven at trial;

C.     For punitive damages and exemplary damages according to proof at trial;

D.     For an order enjoining Defendants from transferring any funds out of the DAO endowment Gnosis account, which can be found at the following wallet address: **0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6;**

E.     For an order enjoining Defendants from transferring any funds out of the DAO Developer Multisig account, which can be found at the following wallet address: . **0x2187e6a7c765777d50213346F0Fe519fCA706fbD;**

F.      For an order enjoining Defendants from transferring any funds that they have

received from either the DAO endowment Gnosis account or the DAO Developer Multisig

account;

G.      For prejudgment interest;

H.      For attorneys' fees and costs, including as warranted by applicable laws; and

I.      For such other and further relief as the Court may deem to be just and proper.

Date:  February 23, 2023

**SHUBIN & BASS, P.A.**
150 West Flagler Street, Suite 1420
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
jkatz@shubinbass.com
dhelfand@shubinbass.com

By:
    John K. Shubin, Esquire
    Fla. Bar. No. 771899
    Jamie L. Katz, Esquire
    Fla. Bar. No. 105634
    Dylan M. Helfand, Esquire
    Fla. Bar. No. 1009129

*Counsel for Plaintiffs Ryan Breslow, Alex Fine,
and Jon Gordon*

**ELLIS GEORGE CIPOLLONE O'BRIEN
ANNAGUEY LLP**
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
cberg@egcfirm.com
bkussman@egcfirm.com

By:
    Christopher T. Berg (*pro hac vice
pending*)
    Benjamin J. Kussman (*pro hac vice
pending*)

*Counsel for Plaintiffs Ryan Breslow, Alex
Fine, and Jon Gordon*

21

DocuSign Envelope ID: 86E2473C-7204-4335-9F32-710472070565

<u>**VERIFICATION**</u>

I, Ryan Breslow, declare as follows:

I am a Plaintiff in the case captioned **Breslow, et al. v. Phillips, et al**.  I have read Plaintiffs' Verified Complaint against Defendants Mark Phillips and Benjamin Reed, filed concurrently with this Verification.  I know the contents thereof to be true based on my own personal knowledge, except as to matters therein based on my information and belief, and as to such matters, I believe them to be true.  Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of February, 2023.

DocuSigned by:

*Ryan Breslow*

B80596C4C546486...

Ryan Breslow