UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

RYAN BRESLOW, ALEX FINE, and JON
GORDON,

     Plaintiffs,

vs.

MARK PHILLIPS and BENJAMIN REED,

     Defendants.

_____/

**REDACTED COPY**

# PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................1

II.     STATEMENT OF FACTS ...........................................................................................2

        A.      Plaintiffs and the Movement DAO ..............................................................3

        B.      Plaintiffs retain the services of Defendant Mark Phillips .........................4

        C.      Defendant Phillips induces Plaintiffs to place him in a position of trust...............5

        D.      Defendant Phillips consolidates power .......................................................7

        E.      Defendant Phillips's façade starts to crack ..............................................11

                1.      Dao-lawfirm.eth is a sham law firm ..............................................13

                2.      The founders confront Defendant Phillips about his fraud ..........15

        F.      Defendants spring their trap ......................................................................15

        G.      Defendant Phillips Illegally Transfers Money Out of the DAO Endowment
                Gnosis Account ............................................................................................17

III.    ARGUMENT ...............................................................................................................20

        A.      Substantial Likelihood of Success On The Merits ..................................20

                1.      Breach of Fiduciary Duty ...............................................................22

                        a.      Defendant Phillips Owed Plaintiffs a Fiduciary Duty ..................22

                        b.      Defendant Phillips Breached His Fiduciary Duty........................24

                        c.      Plaintiffs Have Been Damaged ......................................................24

                2.      Fraud ................................................................................................24

                        a.      Defendants Made False Statements ...............................................25

                        b.      Defendants Knew That Their Statements Were False .................25

                        c.      Defendants Intended for Plaintiffs to Rely on Their
                                Misrepresentations ........................................................................26

                        d.      Plaintiffs Were Damaged ...............................................................26

                3.      Civil Conspiracy .............................................................................27

                        a.      Agreement Between Defendants Phillips and Reed .....................27

                        b.      Defendants Committed An Unlawful Act.....................................28

                        c.      Defendants Committed Overt Acts In Furtherance of
                                Conspiracy .....................................................................................28

                        d.      Plaintiffs Were Damaged ...............................................................29

        B.      Plaintiffs Will Suffer Irreparable Harm Without Relief .......................29

i

## TABLE OF CONTENTS
### (Continued)

|  |  | Page |
|---|---|---|

C.     Balance of Equities Favors Plaintiffs ....................................................31

D.     Injunctive Relief Would Not Be Adverse To The Public Interest .........................31

E.     The Court Should Exercise Its Discretion Not to Require a Bond ......................32

F.     The Court Should Issue a Temporary Restraining Order Without Notice............33

IV.     REQUEST FOR HEARING .................................................................34

V.     CONCLUSION .....................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*BellSouth Telecommunications, Inc. v. MCIMetro Access*
  *Transmission Services, LLC*, 425 F.3d 964 (11th Cir. 2005) ..................................................32

*In re Chira*,
  353 B.R. 693 (Bankr. S.D. Fla. 2006)......................................................................................27

*Demaria v. Gisbex Clearing Corp., S.A.*,
  2012 WL 13008158 (S.D. Fla. March 12, 2012) .....................................................................30

*Developers Sur. & Indem. Co. v. Bi-Tech Const., Inc.*,
  964 F.Supp.2d 1304 (S.D. Fla. 2013) ......................................................................................33

*eCapital Commercial Financing Corp. v. Hitachi Capital America Corp.*,
  519 F.Supp.3d 1129 (S.D Fla. 2021) .......................................................................................31

*FHR TB, LLC v. TB Isle Resort, LP*,
  865 F.Supp.2d 1172 (S.D. Fla. 2011) ......................................................................................29

*Fla. Atl. Univ. Bd. of Trs. v. Parsont*,
  465 F.Supp.3d 1279 (S.D. Fla. 2020) ......................................................................................32

*G.W. Palmer & Co., Inc. v. Florida Fresh Produce Corp.*,
  No. 17-cv-657-FtM-29MRM, 2017 WL 6041918 (M.D. Fla. Dec. 6, 2017) ..........................29

*General Produce, Inc. v. Raindrop Produce, Inc.*,
  No. 11-cv-8-Orl-22GJK, 2011 WL 13298720 (M.D. Fla. Jan. 7, 2011) .................................30

*Hogan v. Provident Life & Acc. Ins. Co.*,
  665 F.Supp.2d 1273 (M.D. Fla. 2009) .....................................................................................23

*Marlite, Inc. v. Eckenrod*,
  2012 WL 12863139 (S.D. Fla. Jan. 31, 2012) .........................................................................30

*Parker v. State Bd. of Pardons and Paroles*,
  275 F.3d 1032 (11th Cir. 2001) ...............................................................................................20

*Schiavo ex. rel Schindler v. Schiavo*,
  403 F.3d 1223 (11th Cir. 2005) ...............................................................................................20

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) (Anderson, J., concurring) ..............................................29, 31

iii

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Textron Financial Corp. v. Unique Marine, Inc.*,
   2008 WL 4716965 (S.D. Fla. Oct. 22, 2008) .........................................................30

*Tropical Fruit Trading, Inc. v. AgroFarms, LLC*,
   No. 16-cv-21735-GAYLES, 2016 WL 4376747 (S.D. Fla. Aug. 17, 2016) ..........................29

*United States v. Mark E. Phillips*,
   Case No. 2:10-cr-002690-JCC, Dkt. No. 245 (W.D. Wash. July 24, 2014) ..........................15

*Univ. Books & Videos, Inc. v. Metro. Dade County*,
   33 F.Supp.2d 1364 (S.D. Fla. 1999) .................................................................32

*Wall v. Centers for Disease Control & Prevention*,
   543 F.Supp.3d 1290 (M.D. Fla. 2021) ...............................................................20

**State Cases**

*Blatt v. Green, Rose, Kahn & Piotrkowski*,
   456 So.2d 949 (Fla. Dist. Ct. App. 1984) ...........................................................28

*Brouwer v. Wyndham Vacation Resorts, Inc.*,
   336 So.3d 372 (Fla. Dist. Ct. App. 2022) ...........................................................22

*Capital Bank v. MVB, Inc.*,
   644 So.2d 515 ( Fla. Dist. Ct. App. 1994) ..........................................................23

*Cedar Hills Properties Corp. v. Eastern Federal Corp.*,
   575 So. 2d 673 (Fla. Dist. Ct. App. 1991) ..........................................................27

*Charles v. Florida Foreclosure Placement Center, LLC*,
   988 So.2d 1157 (Fla. Dist. Ct. Ap. 2008) ..........................................................28

*Cohen v. Hattaway*,
   595 So.2d 105 (Fla. Dist. Ct. App. 1992) ..........................................................23

*Crawley-Kitzman v. Hernandez*,
   324 So.3d 968 (Fla. Dist. Ct. App. 2021) ..........................................................27

*Eagletech Comms., Inc. v. Bryn Mawr Inv. Group, Inc.*,
   79 So.3d 855 (Fla. Dist. Ct. App. 2012) ...........................................................27

*Gracey v. Eaker*,
   837 So.2d 348 (Fla. 2002) ..........................................................................22

iv

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Lopez-Infante v. Union Cent. Life Ins. Co.*,
  809 So.2d 13 (Fla. Dist. Ct. App. 2002) ...................................................................24

*Masztal v. City of Miami*,
  971 So.2d 803 ( Fla. Dist. Ct. App. 2007) ................................................................23

*Quinn v. Phipps*,
  93 Fla. 805 (Fla. 1927)...............................................................................................22

*Raimi v. Furlong*,
  702 So.2d 1273 (Fla. Dist. Ct. App. 1997) ...............................................................28

*Scherer v. Austin Roe Basquill, P.A.*,
  325 So.3d 175 ( Fla. Dist. Ct. App. 2021) ................................................................23

**Federal Statutes**

15 U.S.C. § 1116...............................................................................................................34

**Rules**

Fed. R. Civ. P. § 65 .............................................................................................................1

Fed. R. Civ. P. § 65(b) ......................................................................................................34

Fed. R. Civ. P. § 65(b)(1)..................................................................................................33

## I.      **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs move the Court on an

emergency ex parte basis to issue a temporary restraining order *without notice* against

Defendants Mark Phillips are Benjamin Reed, who are in the process of executing a scheme to

embezzle from Plaintiffs Ryan Breslow, Alex Fine, and Jon Gordon.  Plaintiffs respectfully

request that the Court issue the order by Friday, February 24, 2023 for the following reason: over

the last several days, Defendants have siphoned millions of dollars from Plaintiffs and millions

more are on the verge of disappearing.

Plaintiffs are the founders of the Movement DAO (the "DAO"), an online community

dedicated to financing social impact projects.  They hired Defendant Phillips to design the

systems architecture for the DAO and placed him in a position of trust to oversee the project.

Over the course of several months, Defendant Phillips and his accomplice Defendant Ben Reed

surreptitiously executed a fraudulent scheme by which Defendant Phillips seized control of the

DAO and its approximately $16 million endowment.  Over the last few days, Defendant Phillips

has transferred without authorization over $8.5 million in assets from the DAO endowment.

Those unauthorized transfers are ongoing.  For example, on February 13, 2023,

Defendant Phillips caused $250,000 in cryptocurrency assets to be transferred from a DAO-

affiliated account to an account that Plaintiffs have reason to believe is controlled by Defendant

Ben Reed—despite Defendant Phillips having received a cease and desist letter from Plaintiffs

on February 10, 2023.  That same day, Defendant Reed transferred $137,600 in cryptocurrency

assets to an account of unknown origin, but which Plaintiffs believe is an account capable of

converting cryptocurrency into U.S. dollars.  Defendants were not authorized to make any of

those transfers, the ultimate destination of the transferred assets is unknown, and Defendant Phillips has refused to provide any accounting for the transfers.

Defendants are currently undertaking efforts to dissipate Plaintiffs' assets and secret them in unknown accounts in an attempt to make those assets untraceable and unrecoverable, and Defendants have prevented Plaintiffs from accessing or shutting down the account that holds the remaining DAO endowment funds. Plaintiffs ask the Court to exercise its discretion to issue a temporary restraining order directing Defendants (1) to stop transferring any assets out of the DAO endowment's Gnosis account or any other DAO-affiliated account; (2) to stop transferring any assets from any account that contains or has been used to transfer assets originating from a DAO-affiliated account; and (3) to unwind any transfers that have been made in the last 30 days from the DAO endowment's account or any other DAO-affiliated account, while Plaintiffs prepare the necessary paperwork to file a motion for a preliminary injunction.

## II.     STATEMENT OF FACTS[1]

Beginning in July 2021 and continuing to this day, Defendant Phillips has gradually infiltrated the Movement DAO. By taking step after covert step, he installed mechanisms within the DAO that allowed him to wrest control of the DAO from Plaintiffs and embezzle the millions of dollars of cryptocurrency they dedicated to the project. Defendant Phillips, along with Defendant Reed, has utilized false representations, a sham law firm; sham invoices, aliases, middlemen and accomplices, and the complexities of cryptocurrency platforms to effect their fraudulent scheme.

---

[1] Plaintiffs' investigation is ongoing. At the time of this filing, Plaintiffs have only begun to learn the scope of Defendants' sprawling fraud.

A.      **Plaintiffs and the Movement DAO**

Plaintiffs Ryan Breslow, Jon Gordon, and Alex Fine are American entrepreneurs.  In 2021, they set out to create a new cryptocurrency platform dedicated to funding social impact projects called the Movement DAO.  Breslow Declaration (Feb. 22, 2023) ("Breslow Decl.") ¶ 3. Plaintiffs intended the DAO to function as an online community in which community members would dedicate capital into the DAO endowment.  That endowment would then be invested, and the proceeds from the investment returns would be used by DAO community members to finance social impact projects.  Breslow Decl. ¶ 4.  Plaintiffs invested over $16 million into the DAO endowment—over 97% of its total assets.  Breslow Decl. ¶¶ 5, 6, Exs. 1, 50–52, 54–56.  The amount invested by all other DAO members is less than $300,000.  Breslow Decl. ¶ 6.

Plaintiffs described the DAO concept in a white paper called the "Gitbook" published online on February 2, 2022.  Breslow Decl. ¶ 7, Ex. 2.  That document was a roadmap that enumerated the goals of the project and key features of its structure.  For example, the Gitbook stated that no monies from the DAO endowment would ever be spent; only the proceeds from the endowment's investment returns would be used to fund projects or support the DAO's operating expenses.  Breslow Decl. ¶ 8, Ex. 2 at 20 ("Money in the endowment cannot be spent.  The endowment's yield funds the platform.").  The Gitbook also explained the security features that protected the DAO endowment's assets.  The DAO endowment would be placed in a Gnosis SAFE account—an account that stores cryptocurrency—which had seven authorized signatories. Breslow Decl. ¶ 9.  Plaintiffs were three of the signatories on the DAO endowment's Gnosis account.  Breslow Decl. ¶ 10, Ex. 2 at 7.

The Gitbook also described the unique, decentralized governance structure of the DAO. Once the DAO launched, decisions relating to governance, funding, and a variety of other

subjects would be made by a community vote: a member would submit a proposal to the entire

DAO community, and the DAO community would vote to determine whether the proposal was

adopted or defeated.  Breslow Decl. ¶ 11, Ex. 2 at 11, 27.  According to the Gitbook, the number

of votes a community member could exercise would be determined based on the amount of

capital they contributed to the DAO endowment.  Breslow Decl. ¶ 12, Ex. 2 at 9.  The more

money a community member invested into the DAO endowment, the more votes they were able

to cast on a proposal.  Proposals would be posted and votes would be cast on an online platform

called Snapshot.org, which would display proposals and record vote tallies.  Breslow Decl. ¶ 13.

DAO community members would be issued "voting tokens"—called MOVE tokens—and would

deploy those tokens to vote on proposals.  Breslow Decl. ¶ 14, Ex. 2 at 8.

The concepts described above were to take effect upon the launch of the DAO.  Breslow

Decl. ¶ 15.  Because of Defendants' conduct, the DAO never launched.  Breslow Decl. ¶ 15.

### B.      Plaintiffs retain the services of Defendant Mark Phillips

In July 2021, Plaintiffs were looking to hire a code developer who could construct the

DAO's systems architecture.  They interviewed Defendant Mark Phillips, who represented he

had experience as a coding engineer and had worked for the Securities and Exchange

Commission.  Breslow Decl. ¶ 16.  Plaintiffs Breslow and Gordon were impressed by Defendant

Phillips's experience with the SEC because they wanted to be sensitive to regulatory compliance

issues in the cryptocurrency space.  Breslow Decl. ¶ 17.  Based on Defendant's representations

about his professional experience, Plaintiffs hired him.  Breslow Decl. ¶ 18.  Defendant Phillips

did not disclose that he had been convicted of federal wire fraud, mail fraud, and money

laundering in connection with a startup technology company.  Breslow Decl. ¶ 18, Ex. 3 (FBI

Press Release).

On December 8, 2021, Defendant Phillips ████████████████████████████

████████████████████████████████████ Breslow Decl. ¶ 19, Ex. 4. ████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Breslow Decl. ¶ 20,

Ex. 4 ¶¶ 3 & 4. ███████████████████████████████████ Breslow

Decl. ¶ 21, Ex. 4 ¶ 1.

Defendant Phillips's first act of fraud was to misrepresent his professional experience to

obtain a position of trust within the DAO project.  For example, ████████████████████

████████████████████████████████████████████████████████████████████

██████████████ Breslow Decl. ¶ 22, Ex. 4 ¶ 4.  Based on Defendant Phillips's prior criminal

convictions, Plaintiffs understand that Defendant Phillips ████████████████████████████

████████████████; rather, Defendant Phillips made those false representations to

induce Plaintiffs to hire him.  Breslow Decl. ¶ 23.

C.       **Defendant Phillips induces Plaintiffs to place him in a position of trust**

Over the next several months, Defendant Phillips purportedly began his work on the

DAO architecture.  In October 2021, Plaintiff Breslow brought on Plaintiff Alex Fine as head of

the DAO project.  Breslow Decl. ¶ 24.  Together, Plaintiff Fine and Defendant Phillips worked

together to author the Gitbook.  Breslow Decl. ¶ 24, Ex. 44.  During the Gitbook's creation and

after its publication on February 2, 2022, Plaintiffs directed Defendant Phillips to construct the

DAO in accordance with the Gitbook, and Defendant Phillips, at least initially, acted accordingly.  Breslow Decl. ¶ 25.  For example, Defendant Phillips established the Dao endowment Gnosis account, as described in the Gitbook.  Breslow Decl. ¶ 25.  Plaintiffs Breslow, Gordon, and Fine contributed over $16 million into that account and were issued authorization tokens for the account.  Breslow Decl. ¶¶ 5, 6, 25.  Defendant Phillips also issued authorization tokens to himself and his accomplices, including a sham law firm called Dao-lawfirm.eth.[2]  Breslow Decl. ¶ 26.

During that time, Defendant Phillips began to accrete more and more authority to himself.  For example, he induced Plaintiffs Breslow and Fine to entrust him with their authorization tokens for the DAO endowment's Gnosis account by repeatedly assuring them he was trustworthy, including by representing he had heightened ethical obligations because of his affiliation with the sham law firm Dao-lawfirm.eth, and because he had a security clearance with the SEC.  Breslow Decl. ¶ 27.  As a result of those inducements, Defendant Phillips secured control over the DAO endowment.

Around the same time, Defendant Phillips created a Beta version of the DAO Movement voting space on Snapshot.org—the platform that would enable DAO community members to post proposals and hold votes on them, as described in the Gitbook.  Breslow Decl. ¶ 28, Exhibit 2 at 27.  As part of that process, Defendant Phillips represented to Plaintiffs that he created

---

[2]  As described in more detail below, Dao-lawfirm.eth is the alias for a sham law firm that Defendant Phillips claimed to have retained in connection with creating the DAO.  Breslow Decl. ¶¶ 40, 42, Ex. 5 (internal Exhibit B at 1). Initial investigation has revealed that this "law firm" is a sham company—nothing more than a single webpage posted on the internet with links to the website of a personal injury law firm—the Law Offices of Reed Yurchak and Steven Hay.  Berg Declaration (February 22, 2023) ("Berg. Decl.") ¶¶ 15–17, Exs. B–D.   Plaintiffs understand that Defendants created sham invoices purporting to come from Dao-lawfirm.eth in order to divert DAO assets to themselves.  Breslow Decl. ¶¶ 59–67, 77, Exs. 13, 14, 16, 26.

voting tokens based on the contributions that DAO community members made to the DAO endowment.  Breslow Decl. ¶ 28.  Because Plaintiffs Breslow, Gordon, and Fine contributed over $16 million to the DAO endowment, they should have held over 97% of the voting tokens—and thus an overwhelming amount of the voting power—in the DAO community. Breslow Decl. ¶ 29.  Plaintiff Breslow contributed the majority of the approximately $16 million investment into the DAO endowment, so Plaintiff Breslow should have held well over 50% of the voting tokens.  Breslow Decl. ¶ 30.  Defendant Phillips once again induced Plaintiff Breslow to entrust him with his voting tokens through repeated assurances he was trustworthy and that Defendant Phillips would vote Plaintiff Breslow's tokens as he directed him.  Breslow Decl. ¶ 30.  Plaintiff Fine similarly agreed to let Defendant Phillips act as custodian for some, but not all, of his voting tokens.  Breslow Decl. ¶ 31.

    D.    **Defendant Phillips consolidates power**

        Although the DAO's voting platform was being created and tested at this time, the DAO had not launched, and the governance mechanisms that Defendant Phillips had created on Snapshot.org had no authority.  Breslow Decl. ¶ 32. ███████████████████████ ███████████████████████████████ Throughout the DAO project, Plaintiff Breslow had delegated responsibility over the operations and management of the DAO to Plaintiffs Fine and Gordon.  Breslow Decl. ¶ 33. ████████████████████████ ██████████████████████████████████████████████ ██████████████████████████ During this time, Defendant Phillips hired Defendant Ben Reed as a developer for the DAO project.  Breslow Decl. ¶ 34.  As described below, Defendant Reed was an accomplice to Defendant Phillips's fraud.

The DAO launch did not occur in January 2022, as scheduled. Breslow Decl. ¶ 35. At that point, Defendant Phillips had the most comprehensive knowledge of the DAO's architecture of any member of the project. Breslow Decl. ¶ 35. In February 2022, Plaintiff Fine stepped away from day-to-day oversight of the project. Breslow Decl. ¶ 36. As Plaintiff Fine withdrew, Defendant Phillips filled the vacuum and assumed the primary leadership role of the DAO project—a position of trust. Breslow Decl. ¶ 36.

It was at this point—after months of earning Plaintiffs' trust and now having achieved a greater position of authority—that Defendant Phillips began to take more overt actions to execute his scheme to defraud and embezzle from Plaintiffs. By August 2022, Defendant Phillips began advocating to Plaintiffs Breslow and Gordon that all spending on the DAO project should be exclusively dedicated to development. Breslow Decl. ¶ 37. He also advocated that $1.75 million from the DAO endowment should be transferred to an account he controlled to pay "development-related" expenses. Breslow Decl. ¶ 37. Plaintiffs ultimately agreed to authorize the transfer on the condition that Defendant Phillips would complete and launch the DAO by January 2023. Breslow Decl. ¶ 38. Plaintiffs did not discuss or approve any other authorizations or grants of authority to Defendant Phillips. Breslow Decl. ¶ 38. Defendant Phillips caused the $1.75 million to be transferred from the DAO endowment to another account on August 30, 2022. Breslow Decl. ¶ 39, Ex. 45.

On August 22, 2022, Defendant Phillips for the very first time, both through aliases and accomplices, posted proposals to the Snapshot.org page. Breslow Decl. ¶ 40, Exs. 5-12 (August 22, 2022 proposals). Those proposals were the Trojan horse that Defendant Phillips would later use to enable himself to transfer funds to personal accounts he controls and to strip Plaintiffs of the means to stop his fraud. One proposal purported to authorize the transfer of $1.75 million in

DAI cryptocurrency from the DAO endowment into the DAO Developer Multisig account, an account controlled by Defendant Phillips—the same amount that Plaintiff Breslow and Gordon authorized days earlier.  Breslow Decl. ¶ 41, Ex. 8 at 2, 12.  The remaining proposals were cast in a veneer of legalese and mundane administrative jargon, but key provisions within them purported to empower Defendant Phillips as follows:

(1) to create formal entities to facilitate DAO operations and to excuse Defendant Phillips from maintaining any record or accounting of costs, fees, or other expenses associated with the DAO, Breslow Decl. ¶ 42, Ex. 5;

(2) to authorize the advance of funds to Defendant Phillips and other "Certain Members" (i.e., his accomplices) under the auspices of indemnification for potential legal actions in the future, Breslow Decl. ¶ 43, Ex. 9;

(3) to appoint Defendant Phillips, the sham law firm dao-lawfirm.eth, Defendant Ben Reed, and his other accomplices as "Service Providers," which would purportedly entitle them to fees from the DAO, Breslow Decl. ¶ 44, Ex. 5;

(4) to give Defendant Phillips and his fellow "Service Providers" discretion to deposit "funds of the DAO" into entities created by him as they deem "necessary or advisable," Breslow Decl. ¶ 45, Ex. 12; and

(5) to retroactively ratify as authorized "every action that has been taken, authorized, unauthorized, and with respect to the DAO by the Service Providers [i.e., Defendant Phillips and his accomplices], including . . . the transfer of cryptocurrency to and from Gnosis [accounts]," Breslow Decl. ¶ 46, Ex. 12.

These proposals constituted a surreptitious attempt to give Defendants the color of authority to advance their fraudulent scheme and shield it from detection.  They also were an

attempt by Defendant Phillips ███████████████████████████████████████
███████████████████████████   In reality, these proposals had no force or effect, as the DAO
had not yet launched.

Meanwhile, Defendant Phillips was telling Plaintiffs that things were proceeding
according to plan and that he was doing what needed to be done to get the DAO up and running.
Breslow Decl. ¶ 48.  He did not provide copies of the proposals to Plaintiffs, he did not make
Plaintiffs aware of the powers and authorizations he sought in the proposals, and Plaintiffs never
voted on the proposals.  Breslow Decl. ¶ 48.  Instead, he induced Plaintiffs to pay no mind to
what he was doing in the Beta environment of the DAO community's Snapshot.org space.
Breslow Decl. ¶ 48.  For example, when Plaintiffs questioned Defendant Phillips about his
proposal-posting activity, he assured them that he did not believe the proposals had any authority
by telling Plaintiffs that no one reads them anyway.  Breslow Decl. ¶ 49.  Despite being the
founders of the DAO and possessing over 97% of the voting power in the DAO community,
Plaintiffs did not vote on Defendant Phillips's August 2022 proposals.  The only members of the
DAO community that voted on these proposals were Defendant Phillips and/or his aliases and
accomplices.  Breslow Decl. ¶ 50.  Through his acts of deception and inducement, Defendant
Phillips succeeded in pushing the Trojan horse into the DAO community.

Although Plaintiffs had been induced to overlook Defendant Phillips's scheming on
SnapShot.org (a Beta environment that had no authority in any event), Plaintiff Fine grew
concerned about the $1.75 million transferred from the DAO endowment Gnosis account, which
spurred him to consult with the other Plaintiffs in September 2022 about what exactly Defendant
Phillips was up to.  Breslow Decl. ¶ 51.  Over the next two months, Plaintiffs attempted to obtain
explanations for Defendant Phillips's actions.  Unsatisfied with the justifications provided by

Defendant, in October and November 2022 Plaintiff Fine entered into discussions with the other Plaintiffs about the viability of the DAO and whether they should unwind their money from the DAO endowment. Breslow Decl. ¶ 52. By December 2022, Plaintiffs concluded that the best course was to unwind the DAO endowment entirely and refund all DAO endowment assets to all members of the DAO community to make each of them whole. Breslow Decl. ¶ 53. Because the DAO had incurred substantial costs at that point, Plaintiff Breslow, as the principal investor in the project, agreed to absorb those losses out of his own share of the DAO endowment. Breslow Decl. ¶ 54. Plaintiff Breslow asked Defendant Phillips to announce to the DAO community that each community member's investment into the DAO endowment would be redeemed and their assets returned. Breslow Decl. ¶ 55.

Faced with the prospect that his scheme would be thwarted before he could further enrich himself, Defendant Phillips stalled for time. He did not make the announcement requested by Plaintiff Breslow to the DAO community. Breslow Decl. ¶ 55. He also told Plaintiffs that he would need to consult with the sham law firm, Dao-lawfirm.eth, to make sure the unwinding of the project was done completely above board. Breslow Decl. ¶ 56. After that, Defendant Phillips became distant and he slowed his communications with Plaintiffs. By the end of December 2022, Defendant Phillips had still not presented the redemption offer to the DAO community, despite Plaintiffs repeatedly directing him to do so. Breslow Decl. ¶ 57.

E.    **Defendant Phillips's façade starts to crack**

On January 2, 2023, Defendant Phillips, through both aliases and accomplices, including Defendant Ben Reed, introduced two proposals on Snapshot.org that revealed cracks in Defendants' fraudulent scheme. In the proposal titled "Pay Deferred Legal Fees From 2022," Defendants proposed that the DAO endowment should pay Dao-lawfirm.eth $58,831.02 in DAI

cryptocurrency for legal services the "law firm" rendered in 2022.  Breslow Decl. ¶ 58, Ex. 13.
The proposal falsely represented that Plaintiff Gordon's Snapshot.org alias—
jimmyethworld.eth—reviewed and "confirmed that this proposal accords with the DAO's
agreement with the Service Provider, dao-lawfirm.eth."  Breslow Decl. ¶ 58, Ex. 13 at 3.  That
was a lie.  Plaintiffs Gordon (Snapshot alias: jimmyethworld.eth) and Fine (Snapshot alias:
jamesbarrie.eth) voted against the proposal.  Breslow Decl. ¶ 59, Ex. 13 at 9.  Plaintiff Gordon
posted the following statement along with his votes: "This proposal should be removed for
making false claims.  This was not approved by me, nor should that have been stated."



Breslow Decl. ¶ 59, Ex. 13 at 9.

In Defendants' other fraudulent proposal titled "Pay Deferred Service Provider Fees
From 2022," Defendants attempted to obtain sham authorization to transfer $334,487 in DAI
cryptocurrency from the DAO endowment to an account controlled by Defendant Phillips.
Breslow Decl. ¶ 60, Ex. 14 at 3.  Plaintiffs Gordon (alias: jimmyethworld.eth) and Fine (alias:
jamesbarrie.eth) voted against this proposal as well.  Breslow Decl. ¶ 60.  Plaintiffs understood
these proposals to be fraudulent because they knew that the funds in the DAO endowment

account were not to be touched.  Breslow Decl. ¶ 61.  The Service Provider identified in the proposal was identified as Dao-lawfirm.eth.  Breslow Decl. ¶ 60, Ex. 14 at 3.

### 1.   Dao-lawfirm.eth is a sham law firm

During the course of Defendant Phillips's work on the DAO, he purported to work with a law firm described in Defendant Phillips's proposal as "Dao-lawfirm.eth."  Breslow Decl. ¶ 62, Ex. 15 at 2.  Defendant Phillips presented the Dao-lawfirm.eth as the Law Firm of Reed Yurchak and Stephen Hay.  Breslow Decl. ¶ 63.  It appears that Mr. Yurchak's law firm performed some services for the DAO, but Defendant Phillips used that association as cover to falsely represent Mr. Yurchak's firm as Dao-lawfirm.eth, when in reality Dao-lawfirm.eth was actually an alias of Defendant Phillips.  For example, the webpage https://www.dao-lawfirm.xyz/ as it was published on December 29, 2020—just four days before Defendants' attempt to pass their fraudulent proposals—displays the name of Reed Yurchak, his office phone number, e-mail address, and a link to Mr. Yurchak's law office website: https://yurchaklaw.com/.



Berg Decl. ¶ 15, Ex. B.

Although the Dao-lawfirm.eth website purports to be a "crypto-savvy law firm specializing in legal and blockchain development services," Mr. Yurchak's actual law firm website does not advertise itself as holding that skill set.  The firm's website lists the following as practice areas of the firm:  personal injury, traumatic brain injury, criminal/traffic infractions, bankruptcy, business consulting, and tax law.  Berg Decl. ¶ 16, Ex C.

As of the filing of this application, https://www.dao-lawfirm.xyz/ looks very different.  It no longer lists Mr. Yurchak's name, number, e-mail address, or link to https://yurchaklaw.com/. It also no longer describes itself as a "crypto-savvy law firm."



Berg Decl. ¶ 17, Ex. D.  That is because that website, like dao-lawfirm.eth itself, is a fraud.  It is a sham law firm that is not connected with Attorney Reed Yurchak or his firm.  Defendant Phillips co-opted Mr. Yurchak's information to pass off the sham firm as a legitimate enterprise.

Mr. Yurchak represented Defendant Phillips in connection with his prior convictions for mail fraud, wire fraud, and money laundering. *See United States v. Mark E. Phillips*, Case No. 2:10-cr-002690-JCC, Dkt. No. 245 (W.D. Wash. July 24, 2014).

Defendants' January 2 proposals to pay "deferred legal fees from 2022" and "deferred service provider fees from 2022" were actually a fraudulent attempt to enrich Defendants themselves. The proof of that fraud comes from Reed Yurchak himself. Attorney Reed Yurchak wrote to Plaintiff Breslow explaining that "the last payment my office received was for a March 2022 invoice" and that there had been no outstanding invoices since March 2022. Breslow Decl. ¶ 64, Ex. 16. Reed Yurchak had not been owed any funds since March 2022, yet in January 2023 Defendant Phillips represented that the DAO owed Reed Yurchak $58,831.02 in DAI cryptocurrency for legal services and $334,487 in DAI cryptocurrency for service provider fees.

**2.     The founders confront Defendant Phillips about his fraud**

On January 6, 2023, Plaintiff Breslow wrote to Defendant Phillips and demanded that he provide an explanation for his fraudulent conduct. Breslow Decl. ¶ 65, Ex. 17. Defendant Phillips went silent. After receiving no response, Plaintiff Breslow wrote him again on January 29, 2023 alerting Defendant Phillips of the grave nature of his actions to attempt to prevent the unwinding of the DAO and the redemption of each community member's investment. Breslow Decl. ¶ 66, Ex. 17.

**F.     Defendants spring their trap**

On February 2, 2023, Defendants Phillips and Reed, through aliases and accomplices, introduced several proposals on Snapshot.org that revealed the full scope of their fraudulent scheme. But before they did so, Defendant Phillips disabled Plaintiffs' voting tokens to ensure they could not vote against the fraudulent proposals. Breslow Decl. ¶ 67. The proposals were an

attempt to remove any control Plaintiffs had over the DAO and provide the pretext for emptying the DAO endowment to enrich Defendants.

The proposals purported to do the following with regard to locking out Plaintiffs from the DAO and their $16 million stored in the DAO endowment:

(1) Disable Plaintiffs' authorization tokens to the DAO endowment Gnosis account and replace Plaintiffs as authorized signatories, Breslow Decl. ¶ 68, Ex. 18;

(2) Ratify the termination of Plaintiffs from voting in the DAO community based on the pretext that their conduct was inconsistent with the values of the DAO, Breslow Decl. ¶ 69, Ex. 19;

(3) Reallocate the distribution of voting power now that Plaintiffs had been terminated from the DAO community, Breslow Decl. ¶ 70, Ex. 20;

Defendants' remaining proposals laid the pretext for transferring assets out of the DAO endowment into accounts that they or their accomplices controlled.  Those proposals purported to authorize the following:

(1) Transfer 10 Ethereum cryptocurrency and $12,200 in DAI cryptocurrency from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for the "Launch of DAOLabs Beta Services," Breslow Decl. ¶ 71, Ex. 21;

(2) Transfer $50,000 DAI cryptocurrency from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for the purpose of "retaining counsel," Breslow Decl. ¶ 72, Ex. 22;

(3) Transfer $511,794 DAI cryptocurrency and 41,007 Etherium cryptocurrency from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for "Outstanding Operational Expense Payouts," Breslow Decl. ¶ 73, Ex. 23;

(4) Transfer $349,035 DAI cryptocurreny from the DAO endowment Gnosis account to an account controlled by Defendant Phillips for "Deferred 2022 Developer Payouts," Breslow Decl. ¶ 74, Ex. 24;

(5) Transfer $334,487 DAI cryptocurreny from the DAO endowment Gnosis account to an account controlled by Defendant Phillips to be held "in escrow" until Defendant Phillips and his accomplices decide to dedicate those funds to a new service provider and/or attorneys, Breslow Decl. ¶ 75, Ex. 25;

(6) Transfer $5,354,433 DAI cryptocurreny from the DAO endowment Gnosis account to Dao-lawfirm.eth—an entity controlled by Defendant Phillips for the "DAO's 2023 Operational Budget," Breslow Decl. ¶ 76, Ex. 27;

(7) Transfer $2,558,831 DAI cryptocurreny from the DAO endowment Gnosis account to the DAO Development Multisig account—an account controlled by Defendant Phillips for "Deferred Legal and Indemnification Expenses," Breslow Decl. ¶ 77, Ex. 26.

On information and belief, the only members of the DAO community that voted on those proposals were Defendants, their accomplices, and a handful of individual DAO community members who had been duped by Defendants' fraudulent scheme. The sham proposals all passed with no votes against. Breslow Decl. ¶ 78, Exs. 18-27.

G.    **Defendant Phillips Illegally Transfers Money Out of the DAO Endowment Gnosis Account**

On February 2, 2023—the same day Defendants' sham proposals were posted—Defendants completed their fraud by surreptitiously moving millions of dollars out of the DAO

endowment Gnosis account.  An initial review of the blockchain transaction history[3] shows that on February 2, 2023 two large transfers were made out of the DAO endowment Gnosis account to the DAO Developer Multisig account—an account controlled by Defendant Phillips—in the following amounts:

1)  $7,500,000 in DAI cryptocurrency ($7,500,000 in USD);

2)  Over 800 in Etherium cryptocurrency ($1,367,408 in USD);[4]

Breslow Decl. 79, Exs. 28-29.  That same day, Defendants then caused the following transfers to be made from the DAO Developer Multisig account:

1)  $20,000 in DAI cryptocurrency;

2)  $100,000 in DAI cryptocurrency;

3)  $15,000 in DAI cryptocurrency;

4)  $592,000 in DAI cryptocurrency;

5)  $250,000 in DAI cryptocurrency;

6)  $500,000 in DAI cryptocurrency;

7)  39.53 Etherium cryptocurrency ;

8)  $1,058,000 in DAI cryptocurrency;

9)  $322,034.67 in DAI cryptocurrency; and

10) $50,000 in DAI cryptocurrency.

Breslow Decl. ¶¶ 79–83, Exs. 30-39.  Plaintiffs have reason to believe that those assets ended up in accounts controlled by Defendants and their accomplices.  Breslow Decl., ¶ 80–83, 88–101.

For example, Defendant Phillips transferred over $1,000,000 directly to an account tied to his

---

[3] Blockchain ledgers are public and a number of third-party tools allow for a review the blockchain transactions associated with a specific wallet.  Here, Plaintiffs have audited the Gnosis SAFE Account's transactions at Etherscan.com.  Breslow Decl., ¶¶ 79–83, 88–102.

[4] As of the filing of this Application, ETH was trading for approximately $1,709.26.

known Snapshot alias @tankbottoms.eth.  Breslow Decl., ¶ 81.  Three of the transfers (totaling

$1,164,034.67) were made directly to the account of his accomplice, Defendant Reed.  Breslow

Decl., ¶ 82.  The rest of the assets were sent to accounts that Plaintiffs reasonably believe are

owned or controlled by Defendant Phillips.  Breslow Decl., ¶ 83.  None of the recipient accounts

have presented the DAO with invoices to establish they are legitimate vendors or service

providers to the DAO.  Breslow Decl., ¶ 83.

Plaintiffs first discovered these unauthorized transfers on February 4, 2023 and

immediately attempted to contact Defendant Phillips for an explanation.  Breslow Decl., ¶ 84.

By February 6, 2023, as the full impact of Defendants' fraud came into focus, Plaintiffs

demanded the return of the Gnosis account authorization keys and an accounting of all DAO

expenditures to date.  Breslow Decl., ¶ 85 , Ex. 17.  Defendant Phillips refused, claiming that he

was under no obligation to provide any accounting to Plaintiffs, citing to the sham proposal he

purported to pass in August 2022, ███████████████████████████████████████

███████████████████████  Breslow Decl., ¶ 86 , Ex. 17; *see also* Ex. 4.  That same

day, Plaintiffs discovered that Defendant Phillips had been convicted of federal wire fraud, mail

fraud, and money laundering in connection with his involvement in a technology startup in 2011.

Breslow Decl. ¶ 87, Ex. 3.

Defendant Phillips still has complete control over the DAO endowment Gnosis account,

nearly all of whose assets belong to Plaintiffs (fewer than $300,000 in assets belong to others).

Breslow Decl., ¶ 92.  Those assets are at risk because Defendants continue to deplete that

account and other accounts that currently hold DAO assets.

### III.   ARGUMENT

The Court should issue an injunction directing Defendants (1) to stop transferring any assets out of the DAO endowment's Gnosis account or any other DAO-affiliated account; (2) to stop transferring any assets that have already been transferred out of the DAO endowment's Gnosis account or any other DAO-affiliated account; and (3) to unwind any transfers that have been made in the last 30 days from the DAO endowment's account or any other DAO-affiliated account.  In light of Defendants' brazen (and ongoing) theft, and the irrefutable paper trail left behind, all the factors that the Court must consider to grant such relief weighs overwhelmingly in Plaintiffs' favor.

To obtain a temporary restraining order, a party must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1035 (11th Cir. 2001) (per curiam).  As explained below, all four of these factors favor immediate injunctive relief here.

#### A.   Substantial Likelihood of Success On The Merits

To satisfy this element, Plaintiffs must demonstrate a "substantial likelihood of success on the merits."  *Wall v. Centers for Disease Control & Prevention*, 543 F.Supp.3d 1290, 1292 (M.D. Fla. 2021).  This "requires a showing of only *likely* or probable, rather than *certain*, success."  *Schiavo ex rel. Schindler*, 403 F.3d at 1232 (emphasis in original).

As detailed above, Defendants (and their accomplices) have stolen DAO endowment assets.  The basic facts are straightforward and indisputable.  The over $16 million DAO

endowment is comprised of assets that belong to Plaintiffs (with the exception of approximately $300,000).  Breslow Decl., ¶ 6.  Defendant used his position of trust—covertly usurping control over multiple authorization tokens—to access those funds and divert them to his personal accounts (or accounts managed and/or controlled by his agents and accomplices) without permission.  Breslow Decl., ¶¶ 27, 30, 31, 58–60, 67–83.  In doing so, Defendants have left behind an undeniable paper trail—in black-and-white—recorded for posterity on the "blockchain," a feature of cryptocurrency that enables detailing tracking of crypto assets.

Defendant Phillips has recently made the following unauthorized transfers out of the DAO endowment's Gnosis account—both of which can be independently verified—to the DAO Developer Multisig account:

- February 2:     $7,500,000;

- February 2:     Over 800 ETH[5]

Breslow Decl., ¶ 79.

Defendants then made a number of subsequent transfers from the DAO Developer Multisig account to accounts that Plaintiffs believe are owned, managed, and/or controlled by Defendants.  *See* Sec. II.G, *supra*.

Defendants continue to steal Plaintiffs' property, ignoring demands to cease and desist. This conduct renders them liable to Plaintiffs under a number of common-law theories, including breach of fiduciary duty, fraud, and civil conspiracy. Plaintiffs are likely to succeed on all of these claims because:  (1) the DAO endowment assets have never belonged to Defendants; (2) Defendants never had authority to make the subject transfers out of the DAO endowment Gnosis

---

[5] As of the filing of this Application, ETH (which stands for Ethereum cryptocurrency) was trading for approximately $1,641.87 per ETH coin.

account; and (3) Defendants did, in fact, transfer DAO endowment assets out of the DAO endowment Gnosis account and into personal accounts owned and/or controlled by Defendants.

### 1.   <u>Breach of Fiduciary Duty</u>

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002); *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So.3d 372, 373 (Fla. Dist. Ct. App. 2022).  All elements are satisfied here.

Plaintiffs entrusted Defendant Phillips with significant responsibility for the development and launch of the DAO systems architecture.  Plaintiffs even provided Defendant Phillips and the (now revealed to be a sham) law firm Dao-lawfirm.eth with two of the authorization tokens needed to access DAO endowment funds.  In return, Defendant obliterated that trust— enriching himself in the process—by leveraging that access to break a cardinal rule of the DAO's operating principles:  the DAO endowment could not be spent.  Breslow Decl. 8, Ex. 2 at 20.  By virtue of █████████████████████████████████ and the position of trust that he occupied relative to Plaintiffs as the DAO's founders, Defendant Phillips owed Plaintiffs (and the DAO community) a duty to act in good-faith and in their best interest.  Instead, he abused his position to steal millions of dollars in a flagrant breach of his duties.

### a.   **Defendant Phillips Owed Plaintiffs a Fiduciary Duty**

Fiduciary relationships are not subject to precise definition.  Rather, as the Florida Supreme Court has stated, a fiduciary duty extends "to every possible case…in which there is confidence reposed on one side and the resulting superiority and influence on the other…The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another."  *Quinn v. Phipps*, 93 Fla. 805, 810–811 (Fla. 1927).

Even if not expressly created, a fiduciary relationship is implied in law when "confidence is reposed by one party and a trust accepted by the other." *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 ( Fla. Dist. Ct. App. 1994) *citing Dale v. Jennings*, 90 Fla. 234 (Fla 1925); *see  Hogan v. Provident Life & Acc. Ins. Co.*, 665 F.Supp.2d 1273, 1287 (M.D. Fla. 2009) (a fiduciary duty may be express or implied).  For example, "[a]n implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party." *Masztal v. City of Miami*, 971 So.2d 803, 809 ( Fla. Dist. Ct. App. 2007).

Notably, fiduciary relationships can exist within corporations and amongst their directors, officers, and shareholders.  In particular, "[c]orporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation." *Cohen v. Hattaway*, 595 So.2d 105, 107 (Fla. Dist. Ct. App. 1992); *see Scherer v. Austin Roe Basquill, P.A.*, 325 So.3d 175, 189 ( Fla. Dist. Ct. App. 2021) ("[O]fficers and directors owe fiduciary duties to the corporation and its shareholders and 'must act in good faith and in the best interest of the corporation.'").

Here, Plaintiffs relied on Defendant Phillips as a key member of the DAO team, tasking him with overall responsibility for the development and launch of the DAO.  In doing so, Plaintiffs cloaked Defendant Phillips with significant (though not unlimited) power, made him one of only seven authorized token holders, and entirely depended on him to perform his duties in good-faith and in the best interests of both the Plaintiffs and DAO community at-large. Indeed, Defendant Phillips invited and encouraged Plaintiffs to put their trust in him. "Confidence [was] reposed" by Plaintiffs and "trust accepted by [Defendant]." *Capital Bank v. MVB, Inc.*, 644 So.2d at 518.  Defendant Phillips owed a fiduciary duty to Plaintiffs.

### b.      Defendant Phillips Breached His Fiduciary Duty

Regrettably, Defendant Phillips abused Plaintiffs' trust.  Instead of acting in the best interests of the DAO, Defendant surreptitiously absconded with DAO endowment assets, transferring them to personal accounts for his own personal gain (and at the expense of the DAO and its community members).  For example, between February 2 and February 15, Defendant has made transfers, totaling over $8.5 million, out of the DAO endowment's Gnosis account.  These assets were not transferred to legitimate vendors or used to pay legitimate invoices.  Without permission, Defendants moved these assets from the DAO endowment and into his own personal piggy bank.  This constitutes a breach of his fiduciary duties to Plaintiffs.

### c.      Plaintiffs Have Been Damaged

In breaching his fiduciary duty to Plaintiffs, Defendant Phillips has stolen millions of dollars in cryptocurrency that were deposited into the DAO endowment's Gnosis account for safekeeping.  Based on the DAO's Gitbook, Plaintiffs and all members of the DAO community have the right to redeem their DAO tokens for a pro rata share of the endowment.  In short, at this stage of the DAO's development, the assets in the DAO endowment's Gnosis account belong to Plaintiffs, who continue to suffer damages as Defendants deplete that account.

### 2.      Fraud

To prove fraud, Plaintiffs must establish that: (1) Defendant made a false statement concerning a specific material fact; (2) Defendant knew that the material statement was false; (3) Defendant intended for Plaintiffs to rely on his misrepresentation; and (4) Plaintiffs were injured by their reliance on Defendant's misrepresentation.  *Lopez-Infante v. Union Cent. Life Ins. Co.*, 809 So.2d 13, 15 (Fla. Dist. Ct. App. 2002).  Plaintiffs can establish all four elements.

### a.  Defendants Made False Statements

Defendant Phillips represented that he would perform his job functions, and create the necessary system architecture for the DAO, consistent with the principles and policies described in the Gitbook, which included a strict ban on withdrawing or transferring DAO endowment funds.  That was a false statement because, in January 2023, Defendant Phillips attempted to transfer money out of the DAO endowment through sham proposals within a Beta voting platform, and succeeded in transferring money out of the DAO endowment in February 2023.

Defendant Phillips also represented he would hold Plaintiffs' voting tokens in trust and vote them however they directed.  That statement was false because Defendant disabled Plaintiffs' voting tokens so they could not vote against his February 2023 proposals.

Defendant Phillips also represented that he would hold Plaintiffs' authorization tokens to the DAO endowment Gnosis account in trust.  That statement was false because Phillips disabled those authorization tokens and replaced Plaintiffs as signatories on the DAO endowment's Gnosis account.

Defendants wrote Proposal MIP-0011 that the proposal had been approved by Plaintiff Gordon.  That statement was false, as Plaintiff Gordon declared when he voted against the proposal.

Every proposal that Defendants authored and presented in January and February 2023 was a false statement, because Defendants knew that the Snapshot.org voting platform did not have any force or effect because the DAO had not launched.

### b.  Defendants Knew That Their Statements Were False

Defendant Phillips agreed to abide by the DAO's principles and guidelines even though he had no intention of doing so.  In fact, Defendants' plan was implemented in multiple phases. In August 2022, Defendants Phillips orchestrated a first set of phony Snapshot.org votes to create

the illusion of control over DAO assets and finances.  Defendants Phillips and Reed then used this faux authority to strip Plaintiffs' voting rights altogether by using sham proposals in January and February 2023, including proposals authored by Defendant Reed, to grant Defendants carte blanche authority over DAO assets.  This was a premeditated scheme; Defendants intended to use their position of trust and confidence to gradually gain custody over the DAO endowment's Gnosis account, remove Plaintiffs' voting rights, and then divert the funds for their own benefit.

Additionally, when Defendants published MIP-0011, they knew that Plaintiff Gordon had not approved it.

### c.    Defendants Intended for Plaintiffs to Rely on Their Misrepresentations

Defendant Phillips lied about abiding by the Gitbook and lied about being a trustworthy custodian over Plaintiffs' authorization tokens to the DAO endowment Gnosis account and a over their voting tokens for Snapshot.org.  He did this in order to gain Plaintiffs' confidence and trust.  He misrepresented his true aims (misappropriation of the DAO endowment assets) so that Plaintiffs would entrust him with custody over their authorization and voting tokens.  Defendants Phillips and Reed intended Plaintiffs to abide by the sham proposals in January 2023 that they attempted to pass on SnapShot.org.

### d.    Plaintiffs Were Damaged

As a result of Defendant Phillips's misrepresentations, and Defendant Reed's assistance in connection with those misrepresentations, Plaintiffs have suffered significant financial losses. Believing that Defendant Phillips intended to adhere to the basic principles espoused in the Gitbook, including a prohibition on transferring money out of the DAO endowment's Gnosis account, Plaintiffs placed enormous trust and confidence in Phillips to build out the DAO's

system architecture.  Instead, Plaintiffs are facing financial ruin as millions of dollars in cryptocurrency are bled from the Gnosis account by Defendants.

### 3.     Civil Conspiracy

To prove civil conspiracy, Plaintiffs must establish that: (1) an agreement between two or more parties; (2) to do an unlawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) resulting damage to plaintiffs.  *Eagletech Comms., Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So.3d 855, 863 (Fla. Dist. Ct. App. 2012).  Plaintiffs can establish all four elements.

### a.      Agreement Between Defendants Phillips and Reed

A conspiracy "requires the combination of two or more persons—a meeting of two independent minds intent on one purpose."  *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. Dist. Ct. App. 1991).  This agreement, however, need not be express but "may be implied and understood to exist from the conduct itself."  *In re Chira*, 353 B.R. 693, 732 (Bankr. S.D. Fla. 2006) (applying Florida law); *see also Crawley-Kitzman v. Hernandez*, 324 So.3d 968, 976 (Fla. Dist. Ct. App. 2021) (civil conspiracy may consist of an implied agreement).

The transaction history speaks for itself.  Defendants Phillips and Reed submitted fraudulent proposals, including MIP-0011, to steal funds from the DAO endowment Gnosis account.  Then, once Defendant Phillips transferred assets from the DAO Endowment Gnosis account to the DAO Developer Multisig account, those assets were in turn secreted to accounts, including accounts that belong to Defendant Reed.  Both Defendants acted in concert to dissipate Plaintiffs' assets.

### b.  Defendants Committed An Unlawful Act

Civil conspiracy is not a stand-alone tort but, instead, "requires an actionable underlying tort or wrong."  *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997); *see Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So.2d 949, 950-951 (Fla. Dist. Ct. App. 1984) ("Thus, a cause of action for civil conspiracy exists…only if 'the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person.'") (internal citations omitted).

Both Defendants Reed and Phillips are liable for fraud.  Defendant Phillips is liable for breach of fiduciary duty. These are independent, underlying torts sufficient to underpin a civil conspiracy claim.

### c.  Defendants Committed Overt Acts In Furtherance of Conspiracy

Defendants took a number of concrete steps to put their plan in motion.  Notably, "[e]ach coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist it in some way to be held responsible for all of the acts of his coconspirators."  *Charles v. Florida Foreclosure Placement Center, LLC*, 988 So.2d 1157, 1160 (Fla. Dist. Ct. Ap. 2008) (internal citations omitted).

In this instance, Defendant Phillips committed a number of overt acts in furthering this conspiracy, including: (1) submitted false Snapshot.org proposals; (2) stripping Plaintiffs of their voting rights; and (3) transferring assets from the DAO endowment Gnosis account to the DAO Developer Multisig.  Defendant Reed similar took concrete steps to effectuate their fraudulent scheme, including his submission of sham proposals and receiving misappropriated DAO endowment funds.

### d.     Plaintiffs Were Damaged

Plaintiffs have suffered significant damages as a result of Defendants' underlying conduct.  *See* Sec. III.A.2.d, *supra.*

### B.     Plaintiffs Will Suffer Irreparable Harm Without Relief

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (citing *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990); *see FHR TB, LLC v. TB Isle Resort, LP,* 865 F.Supp.2d 1172, 1206 (S.D. Fla. 2011) (*citing Sampson v. Murray,* 415 U.S. 61, 88 (1974) (The "basis for injunctive relief in the federal courts has always been irreparable harms and inadequacy of legal remedies.")

Here, in the absence of a TRO, Plaintiffs will be irreparably harmed as Defendants transfer, dissipate, and launder the subject funds using a web of complicated aliases to unknown cryptocurrency accounts and wallets.  Even as Plaintiffs prepare this application, Defendants' theft continues; as recently as February 13, Defendant Phillips has illegally transferred funds from a DAO-affiliated account and into personal accounts and/or cryptocurrency wallets that he controls.  As Defendants deplete these funds and launders them through various accounts, Plaintiffs' chances of ever recovering these assets decrease by the hour.  Indeed, Defendants are starting to move misappropriated assets out of cryptocurrency into dollars.  Breslow Decl., ¶ 89-91, Exs. 40-42. Without immediate relief, Phillips will continue to secret these assets and render them unrecoverable.  *See G.W. Palmer & Co., Inc. v. Florida Fresh Produce Corp.*, No. 17-cv-657-FtM-29MRM, 2017 WL 6041918, at *2 (M.D. Fla. Dec. 6, 2017) (noting that a "dissipation of trust assets constitutes irreparable harm justifying injunctive relief…"); *Tropical Fruit Trading, Inc. v. AgroFarms, LLC*, No. 16-cv-21735-GAYLES, 2016 WL 4376747, at *4 (S.D. Fla. Aug. 17, 2016) (emphasis omitted) (acknowledging that "dissipation can constitute

irreparable harm 'if it makes ultimate recovery unlikely'…") (citing *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 140–41 (3d Cir. 2000); *General Produce, Inc. v. Raindrop Produce, Inc.*, No. 11-cv-8-Orl-22GJK, 2011 WL 13298720, at *1 (M.D. Fla. Jan. 7, 2011) ("Because the dissipation of trust assets results in the unlikely chance the plaintiff will ever obtain recovery, PACA trust dissipation often constitutes irreparable harm").

Courts in this district have repeatedly held that "irreparable harm" exists "where there is a strong indication that the defendant may dissipate or conceal assets." *Demaria v. Gisbex Clearing Corp., S.A.,* 2012 WL 13008158 (citing *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005)); *Marlite, Inc. v. Eckenrod*, 2012 WL 12863139 (S.D. Fla. Jan. 31, 2012); *Millennium Funding, Inc. v. 1701 gmt. LLC*, 2023 WL 1863516 (S.D. Fla. Feb. 9, 2023).  For example, in *Textron Financial Corp. v. Unique Marine, Inc.*, 2008 WL 4716965 (S.D. Fla. Oct. 22, 2008), the court found irreparable injury based on the risk that defendant would liquidate assets to avoid collection.  Faced with a defendant that was likely to "continue to liquidate the assets that constitute Collateral owed to [plaintiff] and, for all practical purposes, frustrate [plaintiff's] right to collect the Collateral…" the Court issued temporary injunctive relief.  *Id.* at 8.  Here, Defendants are using a complicated web of aliases and cryptocurrency accounts to dissipate Plaintiffs' assets contained in the DAO endowment Gnosis account and other DAO-related accounts and to secret those assets to unknown destinations in an attempt to make the assets untraceable and unrecoverable.

Time is particularly of the essence given Defendants' sophistication and the nature of the DAO assets.  Unlike traditional fiat currency, which can be tracked to a centralized banking institution, the DAO funds are held as cryptocurrency tokens, able to be moved to—and through—anonymous and untraceable cryptocurrency wallets.  This warrants the utmost

urgency.  As Defendants move these assets, laundering them through different accounts and wallets, it will become virtually impossible to locate and recover them.  A list of cryptocurrency accounts that Plaintiffs have a good faith basis to believe have been used to transfer their property is located at Exhibit 47.  Breslow Decl. ¶ 101, Ex. 47.

### C. <u>Balance of Equities Favors Plaintiffs</u>

Plaintiffs will suffer irreparable harm if a TRO is not issued.  Currently, Defendants <u>flagrantly stealing Plaintiffs' money</u>.  They have not stopped since February 2, 2023.  Defendants will continue to dissipate DAO assets to their intricate web of untraceable cryptocurrency wallets and accounts, placing the funds almost certainly out of reach and rendering them unrecoverable.

Conversely, Defendants cannot show that they will suffer any irreparable harm by maintaining the status quo and preventing further transfers out of the DAO endowment Gnosis account and other DAO-affiliated accounts.  Pausing any movement of these assets while the parties litigate these issues will not impose any significant burden on Defendants (or the DAO— as the DAO endowment was never intended to be transferred).  Based on Plaintiffs' investigation, these assets are not being used for legitimate DAO purposes and freezing them will not negatively impact the project.

### D. <u>Injunctive Relief Would Not Be Adverse To The Public Interest</u>

Lastly, Plaintiffs must show that a preliminary injunction "would not disserve the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000) (Anderson, J., concurring) (per curiam).  In this instance, temporary injunctive relief will allow all parties, including Plaintiffs, Defendants, the DAO community at large, and any third-party stakeholders to assess the status of the DAO endowment assets and take action accordingly.  *See eCapital Commercial Financing*

*Corp. v. Hitachi Capital America Corp.*, 519 F.Supp.3d 1129, 1136 (S.D Fla. 2021) ("Preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing— and no longer—will allow the parties to adjudicate their contractual rights in an orderly setting before any funds are disbursed.").

Moreover, Defendants have violated a number of state laws. "[I]t goes without saying, the public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Florida." *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F.Supp.3d 1279, 1298 (S.D. Fla. 2020) (internal citations omitted).

On the other hand, Defendants cannot plausibly claim that maintaining the status quo— and temporarily preventing additional transfers from the DAO endowment Gnosis account—will be detrimental to the public interest.

### E.  The Court Should Exercise Its Discretion Not to Require a Bond

In granting interim relief, the Court has wide discretion in setting the amount of the bond required, if any. *Univ. Books & Videos, Inc. v. Metro. Dade County*, 33 F.Supp.2d 1364, 1374 (S.D. Fla. 1999). It is well-established that a district court has discretion to dispense with the security requirement, or to require only a nominal security. *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

Here, no bond should be required. Plaintiffs are seeking interim relief returning to them the assets that are indisputably theirs. In fact, if Plaintiffs are required to post a bond, the bond essentially would impose restraints on Plaintiffs' assets just as they are trying to recover their own assets that were stolen by Defendants. This would defeat the purpose of the rule and would force Plaintiffs to suffer additional hardship due to Defendants' misconduct. *See, e.g.*,

*Developers Sur. & Indem. Co. v. Bi-Tech Const., Inc.*, 964 F.Supp.2d 1304, 1310 (S.D. Fla. 2013). The Court should use its discretion and not require any bond to be posted.

### F.     <u>The Court Should Issue a Temporary Restraining Order Without Notice</u>

Rule 65(b)(1) permits the Court to issue a temporary restraining order without notice to Defendants if an affidavit clearly shows immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. That requirement is met here.

As stated more fully in the accompanying Berg declaration, on February 10, 2023, Plaintiffs' counsel sent a cease-and-desist letter to Defendant Phillips' counsel. Berg Decl., ¶ 5, Ex. A. Plaintiffs' counsel then spoke with Defendant Phillips' counsel on February 13, 2023 and proposed placing the DAO endowment funds into a third-party escrow account while the parties worked to resolve their dispute. Berg Decl., ¶ 6. That same day, Defendant Phillips transferred additional assets out of a DAO-affiliated account. Breslow Decl., ¶ 89. Over the last several days, Defendants Phillips and Reed appear to be transferring cryptocurrency assets to exchange accounts to convert those assets into U.S. dollars. Breslow Decl., ¶¶ 89–91.

The thrust here is that, whenever Defendants are alerted to action being taken to slow or stop their fraud, they take steps to transfer assets, including on February 2, 2023 in response to Plaintiffs' accusations of fraud, and on February 13, 2023 in response to Plaintiffs' cease and desist letter on February 10, 2023 and communications with Defendant Phillips' counsel on February 13, 2023. Defendants have complete control over the DAO endowment Gnosis account, nearly all of whose assets belong to Plaintiffs (fewer than $300,000 in assets belong to others). Breslow Decl., ¶ 92 . Those remaining assets in the DAO endowment Gnosis account—approximately $5.5 million—would be at grave risk of being depleted, secreted, and

rendered unrecoverable if the Court provided notice to Defendants before issuing a temporary restraining order. Breslow Decl., ¶ 103.

## IV.    REQUEST FOR HEARING

In light of the complexity of the fraud in this case, including the sophisticated use of cryptocurrency platforms, Plaintiffs request a hearing of no more than twenty (20) minutes to address any questions or concerns the Court may have.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a temporary restraining order on Friday, February 24, 2023 that directs Defendants Phillips and Reed (1) to stop transferring any assets out of the DAO endowment's Gnosis account or any other DAO-affiliated account; (2) to stop transferring any assets from any account that contains or has been used to transfer assets originating from a DAO-affiliated account; and (3) to unwind any transfers that have been made in the last 30 days from the DAO endowment's account or any other DAO-affiliated account.  A ruling by February 24, 2023 is necessary to halt Defendants' active and ongoing attempts to deplete the DAO endowment and related DAO accounts of their assets.  A list of accounts that should be enjoined from receiving or sending any assets is attached to the accompanying Breslow declaration as Exhibit 47.  Plaintiffs also request the Court issue an order to show cause why an order pursuant to 15 U.S.C. § 1116, Rule 65(b) of the Federal Rules of Civil Procedure, should not be entered granting Plaintiffs a preliminary injunction against Defendants.

Date: <u>February 23, 2023</u>

**SHUBIN & BASS, P.A.**
150 West Flagler Street, Suite 1420
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
<u>jshubin@shubinbass.com</u>
<u>jkatz@shubinbass.com</u>
<u>dhelfand@shubinbass.com</u>

By: _____
    John K. Shubin, Esquire
    Fla. Bar. No. 771899
    Jamie L. Katz, Esquire
    Fla. Bar. No. 105634
    Dylan M. Helfand, Esquire
    Fla. Bar. No. 1009129

*Counsel for Plaintiffs Ryan Breslow, Alex Fine,
and Jon Gordon*

**ELLIS GEORGE CIPOLLONE O'BRIEN
ANNAGUEY LLP**
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
<u>cberg@egcfirm.com</u>
bkussman@egcfirm.com

By: _____
    Christopher T. Berg (*pro hac vice
pending*)
    Benjamin J. Kussman (*pro hac vice
pending*)

*Counsel for Plaintiffs Ryan Breslow, Alex
Fine, and Jon Gordon*

## CERTIFICATE OF SERVICE

I hereby certify on this 1st day of March, 2023, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system:

1.       [Redacted] Ex Parte Application for Entry of a TRO and Order to Show Cause

I also certify that the document referenced above was served via E-Mail on the following

non-CM/ECF participants:

Nitoj P. Singh, Esq.                    Attorneys for Defendant Mark
Harmeet Dhillon, Esq.                   Phillips
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, CA 94108

Office: 415-433-1700
Email:  nsingh@dhillonlaw.com
            harmeet@dhillonlaw.com


Defendant Benjamin Reed
8111 206th St SE
Snohomish, WA 98296
Email:  ben.reed@daolabs.wtf

2183832.1

**ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
cberg@egcfirm.com
bkussman@egcfirm.com


**SHUBIN & BASS, P.A.**
John K. Shubin, Esquire
Jamie L. Katz, Esquire
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
jkatz@shubinbass.com


By: /s/ Jamie Katz____
    Jamie Katz


*Counsel for Plaintiffs Ryan Breslow, Alex
Fine, and Jon Gordon*