# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:23-cv-20727-RKA

**RYAN BRESLOW**, *et al.*,

     Plaintiffs,

v.

**MARK PHILLIPS**, *et al.*,

     Defendants.

---

## DECLARATION OF BENJAMIN REED

---

I, Benjamin Reed, make the following declaration:

1.     I am a Defendant in this Action, am over the age of 18, and am competent to testify in this matter. I have personal knowledge of the matters stated herein.

2.     Mark Phillips recruited me to be in charge of MovementDAO governance.

3.     I have never claimed or understood MovementDAO to have a beta or soft launch, or anything than a full and complete launch on February 2, 2022. I worked with the Law Firm of Reed Yurchak ("Law Firm") to ensure MovementDAO was operating legally.

4.     In August 2022, MovementDAO also adopted a set of Guiding Principles, Terms of Service, and Code of Conduct through MIPs—which were approved by Plaintiffs. This led to MovementDAO being categorized as a Delaware unincorporated nonprofit association (MIP-0000). The Law Firm obtained an EIN from the IRS for MovementDAO. MIP-0004 and MIP-0007 specifically identified the Law Firm as a Service Provider, and authorized MovementDAO to indemnify Mr. Phillips, myself, and Mr. Gordon—Mr. Gordon signed off on those MIPs.

MovementDAO also adopted a set of Guiding Principles, Terms of Service, and Code of Conduct through MIP-0000—which were approved by Plaintiffs. Upon their adoption, MovementDAO's relationship with its members or contributors was governed by, *inter alia,* the GitBook, Guiding Principles, Terms of Service, and Code of Conduct (collectively, the "Governing Documents"). True and correct copies of these documents are attached to the Declaration of Mark Phillips.

5.      Mr. Gordon indicated his approval of MIPs 0000, 0001, 0002, 0004, 0005, 0006, 0007, and 0008 by voting for them on Snapshot.

6.      MIP-0004 authorized MovementDAO to form DAOLabs LLC. DAOLabs was intended to serve, *inter alia*, MovementDAO's real world needs, including operating bank accounts, credit cards, making payments, traditional investments, loans, and holding assets. The Law Firm helped form DAOLabs LLC, and I have always been DAOLabs LLC's only member and governor. Generally, I helped oversee business functions, including working with the Law Firm, for both MovementDAO and DAOLabs LLC.

7.      On March 24, 2022, Mr. Fine announced that the PeaceDAO, a DAO formed by MovementDAO, and dedicated to funding projects relating to Ukrainian humanitarian aid, would be launching that day. PeaceDAO's treasury automatically paid a fee (also referred to as a "tribute") to MovementDAO for services provided.

8.      The Law Firm helped form DAOLabs LLC.  Attached hereto as **Exhibit 29** is a true and correct copy of the State of Washington, Office of the Secretary of State, Corporations & Charities Division, Corporation Search Report for DAOLabs, LLC. The report lists me as the Governor of DAOLabs LLC, and Mr. Yurchak as the Registered Agent. It confirms that DAOLabs LLC was formed on August 1, 2022.

DocuSign Envelope ID: B5F94144-2136-45CC-A1D6-B606D9E63D5G

9.      As recently as October 2022, I worked with the Law Firm to review DAOLabs LLC's technology licensing, indemnity, and loan agreements. A true and correct copy of an October 11, 2022 email thread between me and the Law Firm, concerning agreements for DAOLabs LLC, is attached hereto as **Exhibit 30.**

10.      On or about January 11, 2022, I entered into a retainer agreement with the Law Firm.  Attached hereto as **Exhibit 31** is a true and correct copy of the agreement.

11.      On or about October 1, 2022, Mr. Phillips advised me about his concerns related to a redemption by a founding contributor would violate the fundamental terms governing MovementDAO as set forth in the GitBook, as well as assurances Plaintiffs made to Mr. Phillips.

12.      I was part of an emergency committee ("the Committee"), which consisted of a representative group of MovementDAO stakeholders, including internal developers, large contributors, small contributors, and independent members of the community, convened by Mr. Phillips after Mr. Breslow informed him that he only approved of Messrs. Phillips' and Gordon's salaries through January 31, 2023

13.      The Committee held meetings on January 9, 13, and 26, 2023, and in each instance, recorded its business with official minutes.  The Committee made recommendations regarding MovementDAO's continued operations, governance and budget, discussing items such as the problems posed by Plaintiffs' attempted rug pull; the importance of maintaining community governance; the appointment of the Committee along with Defendants as MovementDAO's Service Provider; the indemnification of the Authorized Members and Service Provider; continued funding of MovementDAO's operations; and the removal of Plaintiffs as members of MovementDAO due to their violations of the Terms of Service and Code of Conduct.  Attached

DocuSign Envelope ID: B5F94444-2136-45CC-A1D6-B606D9E63D5G

hereto as **Exhibits 32, 33, and 34** are true and correct copies of the Committee meeting minutes from January 9, 13, and 26, 2023.

14.     On or about January 31, 2023, proposed, and the community adopted, proposals to carry out the Committee's recommendations, including MIP-0014, MIP-0015, and MIP-0016, which, respectively, adjusted the keys associated with MovementDAO's Gnosis to add all Authorized Members and removed Plaintiffs' voting rights; ratified the termination of Plaintiffs from MovementDAO; and updated MovementDAO's Snapshot to reflect Plaintiffs' termination. Attached hereto as **Exhibits 35, 36, and 37** are true and correct copies of MIP-0014, MIP-0015, and MIP-0016.

15.     I also proposed, and the community adopted, the following finance-related MIPs:

- MIP-0017, which authorized itemized payouts for MovementDAO's development expenses in December 2022 and January 2023.  These expenses included development-related expenses I and Mr. Phillips had placed on their credit cards, and the $25,000 retainer Venable required.

- MIP-0018, which authorized deferred payouts due to MovementDAO developers for 2022.

- MIP-0019, which authorized the transfer of deferred fees owed to the Law Firm (of which the Law Firm later refused payment) in escrow pending the retention of a new service provider.

- MIP-0020, which authorized the transfer of 2,558,831 to the Movement Developer Gnosis for the dispersal to Authorized Members for payment of legal fees and indemnification expenses (indemnification as originally authorized

DocuSign Envelope ID: B5F94144-2136-45CC-A1D6-B606D9E63D5G

under MIP-0004 by Mr. Gordon) and $58,831 of deferred legal fees incurred by dao-lawfirm.eth in 2022.

- MIP-0021, which authorized the transfer of 5,354,433 DAI to the Developer Gnosis for Movement's 2023 budget.

Attached hereto as **Exhibits 38, 39, 40, 41, and 42** are true and correct copies of MIP-0017, MIP-0018, MIP-0019, MIP-0020, and MIP-0021.

16.  Pursuant to MIP-0018, I received 322,034.67 DAI to make a deferred payout to Mr. Radin/disintermediated.eth.

17.  On or about February 2, 2023, transfers were done for a legitimate business purpose and with proper authority:

a.  7,500,000 DAI and 805 ETH from the Movement Gnosis to the Movement Developer Gnosis for the funding of MovementDAO's continued development and operations in accordance with the Authorized Member's authority under MIP-0016.

b.  20,000 DAI to cookieslayer.eth (Evita Stenqvist, a Senior Developer) as a deferred payout pursuant to MIP-0018.

c.  100,000 DAI to dsintermedatd.eth (Mikhail Radin, a Senior Developer) as a deferred payout pursuant to MIP-0018.

d.  15,000 DAI to cookieslayer.eth/Ms. Stenqvist as a deferred payout pursuant to MIP-0018.

e.  592,000 DAI to myself as an advance for indemnification expenses (500,000) along with past due salary from December 2022 and January 2023 and a four-

DocuSign Envelope ID: B5F94444-2136-45CC-A1D6-B606D9E63D5G

month advance on his salary (92,000) in accordance with MIP-0004, MIP-0017 and MIP-0020.

f.  250,000 DAI to myself for anticipated operational expenses under MIP-0021 (Movement's 2023 Operational Budget).

g.  500,000 DAI to Mr. Phillips as indemnification for the individuals and entities comprising the Service Provider under MIP-0004 and MIP-0020.

h.  39.53 ETH for Mr. Gordon's December 2022 salary (13.39 ETH) and reimbursement to Mr. Phillips for expenses (26.14 ETH) under MIP-0017.

i.  50,000 DAI as a four-month salary advance for Sameer T, (Sameer Tariq, a Typescript developer) under MIP-0020.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2023

Benjamin Reed

# EXHIBIT 29

# BUSINESS INFORMATION

Business Name:
**DAOLABS LLC**

UBI Number:
**604 950 256**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
████████████████████████████████

Principal Office Mailing Address:

Expiration Date:
**08/31/2023**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/ Registration Date:
**08/01/2022**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**ANY LAWFUL PURPOSE**

# REGISTERED AGENT INFORMATION

Registered Agent Name:
**REED YURCHAK**

Street Address:
████████████████████████████████

Mailing Address:
████████████████████████████████

# GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|-------|----------------|-------------|------------|-----------|
| GOVERNOR | INDIVIDUAL | | BENJAMIN | REED |

# EXHIBIT 30

**Law Office of Reed Yurchak <reed@yurchaklaw.com>**                    10/11/2022 12:41 PM

# Re: Review please: DAOLABS Technology License Agreements

To Ben <r@daolabs.wtf>

Hi.  I've had time to go through the documents and offer the following thoughts:

Indemnity Agreement.  That document is fine although duplicative of the standard indemnity and HH agreements found in the bylaws or operating agreement.

Non recourse loan agreement.  Looks fine.

IP licensing agreements.  These are somewhat confusing to me given they grant Ryan some sort of authority to approve/cancel without identifying that authority.  Meaning - if he cancels the license do the rights revert to the licensor alone or to both Ryan and licensor?  Does Ryan have an ownership interest in the IP that he grants to the licensor and retains supervisory rights?  I think Ryan's rights need to be clarified in this regard.

The second issue is with notice in the agreements.  We can't have George and myself listed as the persons to accept notice for both parties since that would be a conflict of interest. The notice should be sent to the corporations and their individual addresses.

On Mon, Oct 10, 2022 at 12:23 PM Ben <r@daolabs.wtf> wrote:

> Totally understand. Thanks Reed! Hope the new cases are profitable. Cheers!
>
>> On 10/10/2022 12:04 PM PDT Law Office of Reed Yurchak <reed@yurchaklaw.com> wrote:
>>
>> Hey - sorry.  I anticipated being able to get it done Friday.  But the document review proved to be much more of a formidable task; and I also got hit with a few new cases that came in.  I should have it back to you by tomorrow.  Thanks
>>
>> On Mon, Oct 10, 2022 at 11:57 AM Ben <r@daolabs.wtf> wrote:
>>
>>> Hi Reed, just checking in on these docs.
>>>
>>> Regards,
>>>
>>> BenR
>>>
>>>> On 10/07/2022 11:50 AM PDT Law Office of Reed Yurchak <reed@yurchaklaw.com> wrote:
>>>>
>>>> Yes working on it and should have done today
>>>>
>>>> On Fri, Oct 7, 2022, 11:44 AM Ben <r@daolabs.wtf> wrote:
>>>>
>>>>> Hi Reed, just touching base to see if you've had a chance to look over the DAOLABS Technology License Agreements?
>>>>> Thanks!
>>>>> BenR
>>>>>
>>>>>> On 10/06/2022 12:36 AM PDT Ben <r@daolabs.wtf> wrote:
>>>>>>
>>>>>> Hi Reed, can you look over the following Technology License Agreements to make sure they are ready to send out for signatures. Please see attached.

Much appreciated!

BenR

# EXHIBIT 31



500 108th Ave NE, Ste 1100
Bellevue, WA 98004
Tel: (206) 866-0766
Fax: (425) 654-1205
Business Cell: (425) 941-6659
Email: reed@yurchaklaw.com

January 11, 2022

## ATTORNEY-CLIENT PRIVILEGED

*Via Email – benjamin.reed@gmail.com*

Ben Reed

    **Re:**     **Engagement Letter, Custodial Crypto Account**

Dear Ben:

    This engagement letter will clarify and confirm the attorney-client relationship between you (the "Client") and Law Office of Reed Yurchak (the "Firm").  In this letter, the words "you" and "your" refer to the Client and the words "we," "us" and "our" refer to the Firm.

    To avoid misunderstandings, we need to be clear about the scope and terms of our engagement as confirmed by this letter and the enclosure ("Custodial Trust Accounts and Fee Schedule"). Please read the attached and then sign and return this letter to us for our records. Even if you do not sign and return the letter to us, these writings will confirm the basis on which the Firm has agreed to represent you.

    **1.**    **SCOPE OF ENGAGEMENT.**

    We hereby undertake the legal representation of Client as follows: (a) prepare a custodial account designed to secure and hold crypto currencies and/or other investments related to the blockchain, (b) engage an online security consultant and create a wallet(s) specific to your trust to hold your crypto currency that is/are protected by a minimum of 3 (three) security keys, (c) provide updates on a yearly basis or on a schedule of the client's choosing, (d) take all necessary steps to ensure the confidentiality of the account and its assets as well as the security of the assets, (e) perform all other legal work necessary to maintain the confidentiality and security of the assets of the account, and (f) accept transfers of money into the Firm's IOLTA trust account to assist Client in setting up the account and transferring funds to brokers or others employed in the purchase of the account assets.

    You may from time to time ask us to perform additional or other services beyond the engagement described above that are unrelated to the custodial account. Generally the Firm's practice is to handle any small or limited matters for the Client on a "*pro bono*" basis.  Only if the matter were more complex or involved would we need to clear potential conflicts of interest and may need to enter into a separate engagement letter with you. If we undertake additional or other services and do not ask you to sign a new engagement letter, this letter agreement will apply for those services.

## 2.    LIMITATION ON SCOPE OF ENGAGEMENT.

**2.1**    Our engagement is expressly limited, as set forth in Paragraph 1 above, unless we expressly agree otherwise. You are our only client in this matter, and we will not represent anyone else in this engagement who is not a trustee, beneficiary or agent.

**2.2**    We will represent the Client and any beneficiary named in the trust and will also represent the trust in relation to any assets held by the trust.

**2.3**    We will not release any information regarding you or your custodial trust without your prior, written consent or under court order.

**2.4**    The Firm will offer no advice on any investments or asset management and is only authorized to act when granted the authority by the Client which actions must comply with the terms of the trust.  Client understands that the Firm cannot access any wallets or assets of the trust unless Client authorizes such access to the Firm and any other key holders.

**2.5**    The Firm will not set up an account with any bank, credit union or other financial institution in the name of Client or Trust. Any funds that the Client transfers to the Firm shall be held in the Firm's trust account until directed by Client to make purchases, payments or disburse the funds.

**2.6**    The Firm has advised Client that the Securities and Exchange Commission has not yet finalized any specific rules or regulations regarding the sale of tokens but has, recently, taken the position that the sale of tokens for profit or as an investment would be covered under the 1933 Securities and Exchange Act (the "Act") and that any such sale would be prohibited in the absence of an application for registration with the SEC.  The Firm takes no position on whether or not the sale of any tokens qualifies as an offering under the Act nor whether the fact that the tokens are issued by a non-profit DAO to support and fund public works exempts any issued token from registration.  Additionally, the Firm has recommended that any investor be an "accredited investor" as defined in the Act but takes no position and has not offered a formal, legal opinion as to the requirements necessary to qualify as an "accredited investor."

**2.7**    The Firm will always act as a fiduciary on behalf of the Client and will not assume ownership of any entity or assets identified by Client as a part of any trust or legal structure set up or administered by the Firm.  The Firm will do its upmost to maintain all confidences of Client and will not disclose to any third party any information about Client or his assets unless the request is from the Internal Revenue Service or other federal or state agency of competent jurisdiction.  The Firm does not offer specific tax advise but always recommends that Client seek tax counsel from his accountant or tax attorney and further advised Client that any transaction with a regulated trading platform or investment firm will trigger a report of a "taxable event" that will be forwarded to the IRS. The Firm will offer advise and opinions as it relates to keeping such transactions protected from other third parties or the public at large.

## 3.    YEARLY UPDATES.

We will provide you with a yearly account summary unless you opt out of the updates or request asset information based upon an anticipated transaction.  Any request for an account update will be provided as soon as possible.

**4. FEES FOR SERVICES.**

The Firm has established a fee schedule for all work related to setting up the custodial account and the ongoing administration of the account which is accounted for upon deposit of the funds with the Firm.  The Firm will charge 3% (three percent) of any funds deposited with the Firm for placement in Client's account.  For any subsequent transaction involving the funds in Client's wallet, including the sale of any assets in the wallet, including the sale of tokens, NFT's or other crypto currency, the Firm shall charge a fee of 2% (two percent) of the transaction.  *This 2% (two percent) fee will be waived for any sale or transaction of the assets in the Account made within 12 (twelve) months of setting up the account with the Firm*.

**5. BILLING PROCEDURES.**

The Firm will charge it's fees for its services concurrent with any transaction as identified in Section 4.  The Client hereby authorizes the Firm to deduct the fees as outlined above in Section 4 upon transfer of the funds to the Firm's trust account.

**6. ARBITRATION OF DISPUTES.**

We anticipate a harmonious and satisfactory attorney-client relationship. If any disputes arise between us, we shall submit to binding arbitration as described in the enclosure. If you do not wish to agree to arbitrate any disputes with us, you should not sign this letter. Your agreement to arbitrate is not a condition of our agreement to represent you, and upon request, we will consider deleting the arbitration provision.

We look forward to working with you, and we are pleased to serve you and protect your interests.

Sincerely yours,

**LAW OFFICE OF REED YURCHAK**

Reed Yurchak

APPROVED AND ACCEPTED:

By: Ben Reed

### *Custodial Accounts*

#### *Introducing the Custodial Trust Account*

The Law Office of Reed Yurchak ("The Firm") offers Custodial Accounts ("Account") to its preferred clients that allows the client to take advantage of the emerging cryptocurrency markets and enjoy the security of an account administered by a law firm.  This account also provides an added measure of security and confidentiality as all funds deposited go through the law firm's trust account.  No additional bank accounts are necessary as the funds are then used to purchase cryptocurrency or other investments available on the blockchain.

#### *Security and Confidentiality*

Any purchase of cryptocurrency or other crypto investment will be sent and stored in the client's personal wallet or account.  Each wallet is secured by a set of a minimum of 3 (three) keys so that any one breach of security would not grant a third-party access to the client's wallet.  Additional keys may be deployed depending on the client's security needs and parameters as determined by the Firm's security expert.  Further details regarding the security and confidentiality of the wallets are provided in the Firm's Engagement Letter.

#### *Your Secured Investment*

The Custodial Account is not a shared or group investment account.  All assets in an individual Account belong exclusively and solely to the client and all assets are likewise exclusively and solely administered and managed at the client's directions.  The Firm does not provide any investment advice nor does it instigate any purchase of any cryptocurrency on its own initiative.  None of the funds deposited with the Firm shall ever be comingled with the funds of any other client or combined in a single wallet of Account.

#### *The Firm's Role*

The Firm's role in the creation and maintenance of the Account will be that of an Administrator of the Account.  The Firm will help on an ongoing basis with any ongoing legal requirements and improve any tooling that may be necessary to maintain or enhance the value of the Account.  However, the Firm will exercise no control over the funds in the Account unless directed by the Client or per authority granted in the Engagement Letter.

For these services, the Firm will charge Client for the professional services related to setting up the Account, assisting in the acquisition of assets and the creation of the accounts to

help any assets of the Account.  Concurrent with setting up the custodial account the Firm shall receive a fee for its role in maintaining the account and carrying out the wishes of the Client as outlined in Section 4 of the Engagement Agreement. The fee will be used to pay for costs necessary to maintain the Account as well as any improvements necessary to ensure the security and safety of any funds or assets on deposit.  The Firm will not earn any percentage of the profits of the assets or other form of remuneration from the Account or the investments from the Account — this increase will continue to accrue in the corpus of the client's Account.

The Firm charges a surcharge fee of 2% (two percent) on any subsequent transaction, after the Account has been set up, including the sale of any crypto currency held in the Client's Account.   *This 2% (two percent) fee will be waived for any sale or transaction of the assets in the Account made within 12 (twelve) months of setting up the account with the Firm*.

### Binding Arbitration

If a dispute ever arises between you and the Firm that we cannot resolve informally, rather than either of us taking the other to court, we propose to submit the matter to binding arbitration, a process we believe is well suited to resolving lawyer-client disputes. There are important differences between litigation and arbitration. Law and public policy favor arbitration as a method of resolving disputes, and we believe arbitration has considerable advantages for both lawyers and clients.

Arbitration is normally quicker, less expensive and more efficient than court proceedings, enabling both sides to avoid considerable attorneys' fees and costs. In arbitration, each side would present evidence and arguments to a panel of arbitrators, usually retired judges or other persons with relevant experience, and each side would agree to abide by the decision of the arbitrators as the final determination of all legal and factual issues. The parties would get to select the arbitrators, and hearings could be scheduled more promptly and on a date certain. Arbitration is less acrimonious, and it is private, protecting confidential client information. Arbitrators have broad discretion and are not bound by strict rules of evidence and procedure, so the process is relatively informal, more flexible and more relaxed.

Arbitration does have some disadvantages: fees must be paid to the arbitrators, and arbitration limits freedom of choice in how we might pursue claims and remedies against each other. In arbitration, there are limits on discovery, on the ability to compel production of witnesses and documents, and on the kinds of relief available. An arbitration agreement waives the right to a jury trial, there is no public forum, and there is virtually no appeal. Thus, arbitration tends to be relatively quick, simple, inexpensive, private and final.

On balance, we believe arbitration is the best way to resolve lawyer-client disputes. So, unless we both agree otherwise in writing, your signature on the engagement letter will confirm our agreement to arbitrate under the following arbitration provision.

The Client and the Firm expressly agree to resolve, by binding arbitration, any controversy or claim arising out of or relating to this engagement. Such claims or controversies include any dispute relating to this agreement, our relationship, the quality or scope of our services, the fees charged, the appropriateness of actions taken or not taken, or any other matter relating to the representation, including any claim of legal malpractice. The arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association (i.e., the version of those rules in effect as of the date shown at the top of the accompanying Engagement Letter), before a panel of three arbitrators, selected from the AAA's panel for large complex cases. The parties shall be entitled to full discovery in accordance with the Federal Rules of Civil Procedure for a period of ninety days after service of the demand for arbitration. The Chair of the arbitration panel will resolve any discovery disputes. Unless the arbitrators decide otherwise, each party will bear its own attorney's fees and share equally in the payment of the arbitrators' fees and costs. The arbitrators shall follow the law and not re-write the agreement of the parties. Judgment on the arbitration award may be entered in any court having jurisdiction thereof.

### *Choice of Law and Forum*

The laws of the State of Washington shall apply in interpreting or enforcing this agreement. Any proceedings relating to this agreement shall be filed and heard in that state and specifically in King County.

### *Questions*

We strive to provide high quality, cost effective legal services that can respond to your changing needs as well as the changes in the markets.  If you are ever dissatisfied with our services or any aspect of our relationship, please let us know immediately so that we can address your concerns. With good communication, we should be able to resolve amicably and informally any problem that might arise.  We have near constant monitoring of the email account reed@yurchaklaw.com and will try to respond to any request promptly.

# EXHIBIT 32

Movement DAO Emergency Committee Meeting

Meeting Minutes
January 9, 2023

For all terms not defined herein, please refer to https://gov.move.xyz/dao/legal/definitions/ for clarification on the meaning of these terms. Contributions refer to ETH or DAI contributed to the Movement DAO Gnosis Multi-Signature Smart Contract located at 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 (hereafter referred to as "Gnosis")

OPENING

This emergency committee meeting of Movement DAO ("Movement" or "DAO") was called to order at 2 PM PST on January 9, 2023, by its Authorized Member, 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c ("0xA4e6…931c").

FORMATION OF COMMITTEE MEMBERS

The individuals present today were contacted and asked to serve as part of the emergency committee ("Committee") based on the known contributions made by each individual and their willingness to share with the DAO their IRL information as authorized by MIP-0004 Approvals and Authorization of "Meatspace" Activities.[1]

Movement does not have a board of directors, but it does have Authorized Members ("0xA4e6…931c" and 0x5d95baEBB8412AD827287240A5c281E3bB30d27E ("0x5d95…d27E")) and the Service Provider (0x752515a3A1091b9f1c04416CF79D1F14d2340085 ("0x7525…0085")). Although the Service Providers do not owe any fiduciary duties to Movement, they

> "are each authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents and certificates and to pay such expenses, in the name and on behalf of the DAO, as any of each of the Service Providers may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents and certificates and the payment of such expenses by any such Service Providers to be conclusive evidence of his or her authorization hereunder and the approval thereof."[2]

One of the topics to be discussed today is a potential transaction between certain individuals and Movement. These certain individuals were initial contributors, sometimes also referred to as "founders" to the Movement treasury, and both Authorized Members and the Service Provider worked together with them at different points in the creation and operation of Movement. There may potentially be transactions which may be considered "related-party transactions" that will be discussed today.

The Authorized Member, Service Provider, and Movement collectively found it important that Movement, a Delaware unincorporated non-profit, obtain approval by a Committee comprised of fully informed and independent community members regarding any potential related-party transactions that will be executed on behalf of Movement.

In Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984), the Court stated that

> "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences. While directors may confer, debate, and resolve their differences through compromise, or by reasonable reliance upon the expertise of their colleagues and other qualified persons, the end result, nonetheless, must be that each director has brought his or her own informed business judgment to bear with specificity upon

---

[1] https://bit.ly/3IgxCGJ
[2] https://daolabs-docs.on.fleek.co/daolabs/daos/move/proposals/mip-0000.md

1

the corporate merits of the issues without regard for or succumbing to influences which convert an otherwise valid business decision into a faithless act." Furthermore, Delaware courts have defined independence to mean "that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Id.

0xc9284a9FD6D8C484bFD7e24f26B1634585f0A296 ("0xc928…A296") and 0x2770736960c4739f96d3a033676ff0e34e71fC63 ("0x2770…fC63") are fully independent Committee members who together comprise of the sub-committee ("Sub-Committee") for matters which require fully independent ratifications. If the topic of discussion is the compensation paid by Movement to one of the Authorized Members, the Authorized Members, individually, will recuse themselves, leaving the Sub-Committee to ratify and resolve any decision regarding this matter. Furthermore, if the topic of discussion is a potential related-party transaction involving the Authorized Members or Service Provider, the Authorized Members and/or Service Provider will make sure that the Sub-Committee is fully informed of all material information regarding the transaction, but they will not be involved in any decision-making or ratification of any potential related-party transactions.

Here, the members of the Sub-Committee are independent. They do not have any professional, business, or personal relations to Movement other than being contributors. They have no professional, business, or personal relations to either of the Authorized Members/Service Provider, or the certain individuals who would be potentially benefiting from any proposed transactions which collectively are all the interested parties in the potential settlement that will be discussed today.

<u>ROLE CALL</u>

Those present at the meeting were:

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c
2. 0xc9284a9FD6D8C484bFD7e24f26B1634585f0A296
3. 0x5d95baEBB8412AD827287240A5c281E3bB30d27E
4. 0x2770736960c4739f96d3a033676ff0e34e71fC63

<u>APPROVAL OF AGENDA</u>

Topics of discussion:

1. Certain contributors ("Contributors") have made certain demands in which an Authorized Member seeks community guidance and oversight.
2. The Service Provider, dao-lawfirm.eth has resigned, and a new Service Provider must be appointed.
3. The Authorized Member together with the Service Provider have certain 'Slow-Start' powers including the vetoer role, protection against bad actors through governance or security vulnerabilities, and requires guidance or instruction to transfer key-signing responsibilities.
4. State of the current Snapshot strategy – weighted whitelist voting strategy.

The agenda was unanimously approved upon distribution, along with the Exhibit Binder.

Exhibit ("Ex.") Binder Overview:
- <u>Ex. A</u>: Correspondence on 12/23/21, subject "Gitbook Legal Advice" between Contributor 2, 0x5d95…d27E and the Service Provider (dao-lawfirm.eth). This Ex. shows that Contributor 2 was the author of the GitBook and was the sole controller of any modifications made to it.
- <u>Ex. B</u>: Correspondence on 1/3/23 between Contributors 1, 2, and 3 and 0X7525…0085. This Ex. shows that the Contributors attempted to renege part of the compensation package they had agreed upon for the Service Provider and others.
- <u>Ex. C</u>: Correspondence on 2/2/22, subject "token allocations" between Contributor 3, (aka "0x58Ba…1650") and 0x5d95…d27E. This Ex. specifies the allocation of contributions on behalf of the founders to the Gnosis, from which Ex. B's splits are computed.
- Ex. D: Correspondence on 1/6/23 between Contributor 2 and 0X7525…0085. This Ex. shows that Contributor 2 attempted to renege part of terms already agreed upon, and that Contributors 1, 2, and

2

    3 are operating as if 0X7525…0085 is their agent in regard to their keys, even though there was never any agreement in place stating that to be the case.
- Ex. E: Budget outline for the development team.
- Ex. F: Signal correspondence on 1/24/22 showing Contributor 1's long-term commitment to the project, and Contributor 2's agreement.
- Ex. G: Movement DAO Guiding Principles and Terms of Service excerpts.

NOTE: The Exhibit Binder has since been added to and reorganized to be in reverse chronological order.

<u>DISCUSSION</u>

0xA4E6...931C explained that the Service Provider was given authority to oversee fiscal responsibility of protecting the project financials and treasury. 0xA4E6...931C then explained that the Service Provider known as dao-lawfirm.eth has resigned, and the Emergency Committee has been appointed to oversee all material decisions and to act in the best interest of the project.

0xA4E6...931C reviewed certain excerpts from the Movement DAO Guiding Principles and Terms of Service with the Emergency Committee and asked if the Emergency Committee had any questions about any of the documents. There were no questions from 0x2770...FC63 or 0xC928…A296.

0xA4E6...931C then reiterated the key points of the Guiding Principles and Terms of Service, and 0x2770...FC63 and 0XC928…A296 both agreed that the terms were clear and that these were the terms that they agreed upon when they initially contributed to Movement DAO. Furthermore, both 0x2770...FC63 and 0xC928…A296 both agreed that they were fully aware and cognizant of the fact that when they initially contributed to Movement DAO, they had no right and no expectation of any sort of redemption in the future regarding their contribution.

0xA4E6...931C also reiterated that the community and all contributors relied upon the following when initially contributing to Movement DAO: the amount of funding conveyed to be committed to the treasury, that the Contributors had committed their contribution to a multi-year lock up, and that there were multiple commitments by Contributors and the development team to building a blockchain based tool for entity transparency. 0xA4E6...931C stated that these were all material representations which were relied upon by contributors and the community prior to the contribution of funds to the Gnosis.

0xA4E6...931C then reviewed Ex. A and B with 0x2770...FC63 and 0xC928…A296.

0xA4E6...931C then explained the current situation with Contributors 1, 2, and 3. He explained that recent communications to 0x7525…0085, appears that they may be operating in bad faith by reneging the terms that they created and along with all subsequent contributors agreed upon.  0xA4E6...931C further stated that the Contributors 1-3 appear to be making questionable, ethically challenged, bad faith demands upon 0x7525…0085 by ordering him to take certain action using their wallets.

0xA4E6...931C then reviewed Ex. C and D with 0x2770...FC63 and 0xC928…A296. 0x2770...FC63 and 0xC928…A296 acknowledged the apparent bad faith demands by Contributors 1, 2, and 3 in Ex. D, and that it appears that these Contributors seemed to be ordering 0x7525…0085 to take certain actions in order to potentially shift liability to 0x7525…0085.  The Contributors 1-3 appear to be taking steps to orchestrate to extraction of treasury funds.

0xA4E6...931C then reviewed Ex. E.

Emergency Committee agreed that all material decisions regarding budget decisions should be made by the community as a whole, and not by a centralized group in closed-door meetings.

Emergency Committee acknowledges that the correct course of action from 0x7525…0085 is to not be an accessory to Contributor 1, 2 and 3's demands, and that 0x7525…0085 is acting in line with the Guiding Principles and Terms of Service.

<u>NEW BUSINESS</u>

After actions have been taken to execute the resolutions in the "Adjournment" section below, there will be a Discord community voice call to explain current situation with the community as a whole, answer any questions they may have, and collectively go over the next steps that will be taken.

<u>AGENDA FOR NEXT MEETING</u>

Do an analysis of the developer budget, and how to best allocate the remaining funds in order to preserve runway for the project while also allocating enough capital in order to continue building out the product.

<u>ADJOURNMENT</u>

The meeting was adjourned at 5 PM by 0xA4e6...931c. The next meeting will take place in the following days.

1.  RESOLVED, this Emergency Committee, through its members together and individually, hereby authorize, adopt, and resolve to take Emergency action in the interest of the DAO;
2.  RESOLVED FURTHER, this Emergency Committee, together with 0x7525…0085 and 0xA4E6...931C, will continue to be the DAO's "Service Provider" as defined in mip-0004, with the addition that this Emergency Committee will authorize transactions using the dao-lawfirm.eth address until further notice;
3.  RESOLVED FURTHER, the Authorized Members, individually and together with the Service Provider, and its address operator dao-lawfirm.eth are indemnified for any prior actions as approved by mip-0004;
4.  RESOLVED FURTHER, the Emergency Committee terminates 0xb44A...8461 role insofar he was an Authorized Member for "Meat-space" Activities, as previously approved by mip-0004;
5.  RESOLVED FURTHER, the Emergency Committee authorizes the cancellation of all governance rights of the members Signer 0x5e9f, Signer "Mr. Faffle" 0x211b...328E, and Signer 0x8461, and any addresses associated with them each listed below;
6.  RESOLVED FURTHER, the Emergency Committee find that the aforementioned Contributors violated the Terms of Service, Code of Conduct, and spirit of the DAO as outlined in the Movement GitBook, Guiding Principals, and supporting agreements; and that action can and will be taken regarding their governance rights without notice according to Section 6(c) of the Movement DAO Guiding Principles;
7.  RESOLVED FURTHER, the Emergency Committee authorize and direct existing Signers on the Movement multi-sig Gnosis to fully rotate all keys; the new Signers are to remain anonymous for their protection and for the protection of the DAO;
8.  RESOLVED FURTHER, after updating the Gnosis Signers, the Emergency Committee authorize the transfer of the entire development budget, as promised in the previous referenced development budget authored by "Mr. Faffle" 0x211b...328E, and the Community promised "earmarked" Movement community contributions, hereafter referred to as "Marketing Budget, Platform Grants", and additional sums including any promised payments to any party deferred or otherwise due into a new separate Gnosis;
9.  RESOLVED FURTHER, the Emergency Committee further authorize, the disbursement of 500,000 in DAI to each of the Authorized Members, the former Service Provider, and a new Emergency Committee Gnosis or the law firm of its choosing as an advance indemnification as approved in Snapshot mip-0004 (https://bit.ly/3IgxCGJ);
10. RESOLVED FURTHER, the Emergency Committee further authorize, the Authorized Members and the DAO's counsel to prepare and provide the aforementioned Contributors with a proposed Confidential Settlement and Non-Disparagement Agreement.  The Authorized Members are authorized to execute settlements with the above terminated members so long as the combined total amount is no more than $3,000,000;
11. RESOLVED FURTHER, the Emergency Committee further authorize, the Authorized Members and the DAO's counsel or legal consultants to continue to amend, update, and clarify, correct, or modify any of the DAO's Guiding Principals, Terms of Services, Governance.  See "However, there is no guarantee of the correctness and completeness of the information provided herein. Equally, the DAO does not guarantee that this information is always up-to-date and such information is subject qualify to change without prior notice." And "We may revise these Terms at any time without notice to you." And

4

"Note that we reserve the right to modify the Terms at any time in our sole discretion. Any changes to the Terms will be posted on our website at https://move.xyz and will become effective immediately upon posting." Page 92, GitBook;

12. RESOLVED FURTHER, the Emergency Committee further authorize the Authorized Members to present an updated proposed Snapshot strategy to reflect the above termination of members and their governance benefits.

The following Ethereum addresses will no longer participate in any governance with the DAO via committee, Snapshot, etc.

0x746cf650d4E5431474E8D4E2d5B6Bbe53772b498
0x005F7B2e85263C46238D12040E3610dBDBDA8D96
0x816fE01D918b6c66a3F185C500c3B0e6E785d8d
0xEa23fA46578753E12e08Ab28b892094f0DDd7692
0x4462B3cFC9d0Ade5384EC1F834F8846Ca34589Db
0xCdEF8DAE070F3A762119F9481b7A664F575c5746
0x6a2B425a25991DfDF43575B30d6B5ec4354bD85a
0xF51F0f3CFc30F27252Db58F7dFF63521ff03280E
0xB66426c5D88309668dBE013C118831642F532DD0
0x58F09dd6DF8dFCe8c209A00BaE4348002BACac1d
0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57
0x20E8e0aFEeeE8433e54304264fEF8ECbc95bd529
0x86B2894463Cfd62A8ec7D17c4dCDcEf695B61210
0xE0613476623403fbA2D507E9D25D1c810b96459B
0x2407c28A9DA6eF55F0cD30AA64834C0E67Da8fdd
0x60703a03EEb50519ef66d940f3a14271F68b1342
0x5492D49B5ad6081CcCe059EeA861b6f9C36D815B
0x66c865A2B3Ee12F721bEF90a62102fD7109Df092
0x550bD0F03580B9a687931af4d837F8e45D61d410
0xDAdbB554a807C740492AbFED1337C50c7d76d983
0xf6DcD7BB0B0197E9765c396c85D72a982bc1585A
0x41abdE122118f9e50E1C2a6A76Acf1207efF2a0c
0xd773De87789067dcFF739b0E06952448453A872c
0x4C653dE57eEcCD9e3fD405Ceb6A3dA168d5ce5d2
0x4A54Fbc0129280AAe9f9F872E7b5C838Ca9dd9D2
0xc928226A7383F8e1d97093d493371B71333e6d84
0x12703b701f80bf7326686827BfFeA909e799A94C
0xb44A14dEcD9270E34E2dDaff4CD8690a2Cb88461
0x211be2dDC09c482B27Ed780A710b18d8Cb76328E
0x550bD0F03580B9a687931af4d837F8e45D61d410

<u>Omnibus Resolutions</u>

1. RESOLVED FURTHER, the Service Providers of the DAO are each authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents and certificates and to pay such expenses, in the name and on behalf of the DAO, as any of each of the Service Providers may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents and certificates and the payment of such expenses by any such Service Providers to be conclusive evidence of his or her authorization hereunder and the approval thereof;

2.  RESOLVED FURTHER, any and all actions taken by the Service Providers of the DAO to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified and confirmed. As used in this document, the words "herein," "hereof," "hereby" and "hereunder" shall refer to this document as a whole, and not to any particular section, provision, or subdivision of this document. This action by the DAO Member by Snapshot vote shall be effective as of the date the DAO Entities receives the consent of the DAO at the end of the Snapshot vote. This action by the DAO Members consent may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

# EXHIBIT 33

<u>Movement DAO Emergency Committee Meeting</u>

Meeting Minutes
January 13, 2023

For all terms not defined herein, please refer to https://move.xyz/daolabs/daos/move/legal/definitions or the prior meeting minutes for clarification on the meaning of these terms. Contributions refer to ETH or DAI contributed to the Movement DAO Gnosis Multi-Signature Smart Contract located at 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 (hereafter referred to as "Gnosis")

<u>OPENING</u>

This Emergency Committee meeting of Movement DAO ("Movement" or "DAO") was called to order at 2:30 PM PST on January 13, 2023, by its Authorized Member, 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c ("0xA4e6…931c").

<u>ROLE CALL</u>

Those present at the meeting were:

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c
2. 0xc9284a9FD6D8C484bFD7e24f26B1634585f0A296
3. 0x2770736960c4739f96d3a033676ff0e34e71fC63

<u>APPROVAL OF AGENDA</u>

Topics of discussion:

1. Review and ratify meeting minutes for first Emergency Committee meeting.
2. Review Exhibits C(a) and D(a), which are 0x5d95…d27E's rebuttals to statements in communications made by the Contributors.
3. Discuss immediate actions to be taken:
    a. Venable LLP drafting and sending a letter to the Contributors
    b. Suspending the 3 Contributors governance/voting rights for 90 days
    c. Cycling the Gnosis keys
    d. Move indemnification and potential settlement funds
    e. Adjust Snapshot strategy to reflect the termination of the Contributors governance/voting rights
4. Once immediate actions have been completed, Authorized Members will host a community discord space to bring everything into light and answer all community questions about recent events
5. Discuss the next round of proposals:
    a. Assign the Emergency Committee as the temporary Service provider
    b. Permanently remove the Contributor's governance/voting rights
    c. Approve the proposed 2023 budget
    d. Honor all deferred payments
    e. Adjust the Terms of Service

The agenda was unanimously approved upon distribution, along with the new Exhibit Binder.

Exhibit ("Ex.") Binder Overview:
- Exhibit A
    o Summary of Committee and Sub-Committee member contributions to the Gnosis.
- Exhibit B
    o Summary of Contributor 1, 2, 3's contributions to the Gnosis.
- Exhibit C
    o Correspondence on 1/3/23 between Contributors 1, 2, and 3 and 0x5d95…d27E, subject "Some Important Notes".

- o Exhibit C(a) is 0x5d95…d27E's explanation of the significance of Exhibit C along with other important facts to consider.
- Exhibit D
  - o Correspondence on 1/6/23 between Contributor 1 and 0x5d95…d27E, subject "Treasury vote". This Ex. shows that Contributor 1, supported by Contributors 2 and 3, renege on terms already agreed upon, and that Contributors 1, 2, and 3 are operating as if 0x5d95…d27E is their agent in regard to their keys, even though there was never any agreement in place stating that to be the case, additional discussions are also provided below.
  - o Exhibit D(a) is 0x5d95…d27E's explanation of the significance of Exhibit D along with other important facts to consider.
- Exhibit E
  - o Signal correspondence on 1/24/22 showing Contributor 2's long-term commitment to the project, and Contributor 1's agreement. Movement was previously named Ted.
- Exhibit F
  - o Correspondence on 12/23/21, subject "GitBook Legal Advice" between Contributor 2, 0x5d95…d27E and the Service Provider (dao-lawfirm.eth). This Ex. shows that Contributor 2 was the author of the GitBook and was the sole controller of any modifications made to it.
- Exhibit G
  - o Correspondence on 2/2/22, subject "token allocations" between Contributor 3, (aka "0x58Ba…1650") and 0x5d95…d27E. This Ex. specifies the allocation of contributions on behalf of the founders to the Gnosis, from which Ex. B's splits are computed.
- Exhibit H
  - o Movement's Guiding Principles and Terms of Service excerpts.

<u>DISCUSSION</u>

0XA4E6...931C went over the exhibit binder revisions and agenda for today's meeting.

0XA4E6...931C shared his screen and went over the meeting minutes from the first meeting. Both 0xc928…A296 and 0x2770…fC63 agreed that the minutes accurately reflected what transpired.

0XA4E6...931C then went over exhibit C and C(a), and exhibit D and D(a). Both 0xc928…A296 and 0x2770…fC63 acknowledged that they saw the rebuttal from 0x5d95…d27E.

0XA4E6...931C then explained that Movement has engaged Venable LLP to represent them in the dispute involving the Contributors, and that they should have a letter sent to the Contributors late next week, and that in the meantime Movement is going to suspend the Contributor's governance rights for the next 90 days. 0xc928…A296 and 0x2770…fC63 agreed and ratified this, as they did in the previous meeting. Furthermore, 0XA4E6...931C explained once again the cycling of keys and moving of funds for indemnification of $2 million, along with allocating $3 million for a potential settlement with the Contributors. 0xc928…A296 and 0x2770…fC63 agreed and ratified, as they did in the previous meeting.

0XA4E6...931C then explained the next course of action is to bring this all to light with the community through a Discord space. 0xc928…A296 and 0x2770…fC63 agreed and ratified.

0XA4E6...931C then explained next round of proposals. 0xc928…A296 and 0x2770…fC63 agreed and ratified.

0XA4E6...931C then asked if the Emergency Committee approves of 0x5d95…d27E's salary and removing the deferral mechanism going forward. 0xc928…A296 and 0x2770…fC63 agreed and ratified.

0XA4E6...931C then explained that in the case that letter by Venable LLP gets delayed, if Movement needs to take additional emergency steps, would the Emergency Committee approve a short-term budget for continued operations (1 month). 0xc928…A296 and 0x2770…fC63 agreed and ratified.

<u>NEW BUSINESS</u>

<u>AGENDA FOR NEXT MEETING</u>

ADJOURNMENT

The meeting was adjourned at 3 PM by 0xA4e6...931c. The next meeting will take place in the following days.

1. RESOLVED, the Emergency Committee hereby ratify the meeting minutes drafted for the first Emergency Committee meeting;
2. RESOLVED, the Emergency Committee authorizes 0XA4E6...931C to draft new proposals to present to the community through Snapshot;
3. RESOLVED, the Emergency Committee approves of 0x5d95…d27E's salary and removing the deferral mechanism going forward;
4. RESOLVED, the Emergency Committee approved of a potential short-term budget for continued operations, if Venable LLP experiences any delays in the drafting and delivering of their demand letter to the Contributors.

# EXHIBIT 34

Movement DAO Independent Committee Meeting

Meeting Minutes
January 26th, 2023

For all terms not defined herein, please refer to https://move.xyz/daolabs/daos/move/legal/definitions or the prior meeting minutes for clarification on the meaning of these terms. Contributions refer to ETH or DAI contributed to the Movement DAO Gnosis Multi-Signature Smart Contract located at 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 (hereafter referred to as "Gnosis").

The following exhibits include correspondence between individuals to which the following legend should be considered.

1.  0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57 ("0xDbE7…2b57" or Contributor 1 or C1)
2.  0x211be2dCD09c482B27Ed780A710b18d8Cb76328E ("0x211be…328E" or Contributor 2 or C2)
3.  0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650 ("0x58Ba…1650" or Contributor 3 or C3)
4.  0x5d95baEBB8412AD827287240A5c281E3bB30d27E ("0x5d95…d27E"), Authorized Member
5.  0xA4e6C2B6264652444B3F0cc1bB37496AE916931c ("0xA4e6…931c"), Authorized Member

The following exhibits are referenced herein and are provided on IPFS for reference.

1.  Exhibit A: Spreadsheet of Committee Member's contributions to the DAO.
    a.  cloudflare-ipfs.com/ipfs/QmSJmzhPbHn6u3zNyu9tJ7oyMKykL8BZ37XfgS8QzVLRBF
2.  Exhibit B: Spreadsheet of certain controversial Member's (hereafter "Subject Members") contributions.
    a.  cloudflare-ipfs.com/ipfs/QmQ5tgm2RWVvc6DeFcUT4MnhBeWA8qrwd4kWM6QX8m99Gz
3.  Exhibit C: 1/6/23 correspondence between Contributor 1 (0xDbE7…2b57) and 0x5d9…d27E.
    a.  cloudflare-ipfs.com/ipfs/QmdQSKH4UEthwHBLhpSw5qYWAvVGpbGDs4bcja8Z4rPQBX
4.  Exhibit C(a): 0x5d9…d27E rebuttal/explanation of Exhibit C.
    a.  cloudflare-ipfs.com/ipfs/QmWgbxFKCFsKoQ3vNWgnDVR6gmYmHsG9npxhqey91f8Hq9
5.  Exhibit D: 1/3/23 correspondence between Contributor 1 (0xDbE7…2b57), 2 (0x211be…328E), and 3 (0x58Ba…1650), and 0x5d9…d27E.
    a.  cloudflare-ipfs.com/ipfs/QmRzGTNPaa5LsSixU9g6Kj8e7Gq7KP1LTZ8m9eXVBSbChQ
6.  Exhibit D(a): 0x5d9…d27E rebuttal/explanation of Exhibit D.
    a.  cloudflare-ipfs.com/ipfs/QmTY44giNq1iHdsAhYtvwf5gg9sW54baBrcPvwRNh6qCRq
7.  Exhibit E: 1/24/22 correspondence between Contributor 1 (0xDbE7…2b57), and Contributor 2 (0x211be…328E)
    a.  cloudflare-ipfs.com/ipfs/QmUnEbPBDSXDktXR41mRd6Woc14BqJ5iTn6E5W3raS25S7
8.  Exhibit F: 12/23/21 correspondence between Contributor 2 (0x211be…328E), 0x5d9…d27E, and dao-lawfirm.eth.
    a.  cloudflare-ipfs.com/ipfs/QmUcpfEpq9ka6LnUUBc8efgNbSPxES9CWHsCtJEes7uKHN
9.  Exhibit G: 2/2/22 correspondence between Contributor 2 (0x211be…328E), and 0x5d9…d27E, which includes a spreadsheet detailing the total token allocations for Contributor 1 (0xDbE7…2b57), 2 (0x211be…328E), and 3 (0x58Ba…1650) and 0x5d9…d27E.
    a.  cloudflare-ipfs.com/ipfs/QmSyCXEyYCL79FZkd62UAbZsb27jdMrGz8VTEqtD8HQypu
10. Gnosis contributions divided by groups
    a.  https://cloudflare-ipfs.com/ipfs/QmXSQeC22npuhGGkTyW5rGZDXzT4v1kX5vEjDAtr1WTeo1
11. Updated Snapshot Strategy
    a.  https://cloudflare-ipfs.com/ipfs/QmXSQeC22npuhGGkTyW5rGZDXzT4v1kX5vEjDAtr1WTeo1
12. Proposals

OPENING

This Independent Committee meeting of Movement DAO ("Movement" or "DAO") was called to order at 6:00 A.M. January 27, 2023, by its Authorized Member, 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c ("0xA4e6…931c").

FORMATION OF INDEPENDENT COMMITTEE (hereafter "COMMITTEE")

The individuals present today were contacted and asked to serve as part of the independent committee ("Committee") based on the known contributions made by each individual, ongoing contributions to the DAO and their willingness to share with the DAO their IRL information as authorized by MIP-0004 Approvals and Authorization of "Meatspace" Activities.

The DAO does not have a board of directors, but it does have certain Authorized Members ("0xA4e6…931c" and 0x5d95baEBB8412AD827287240A5c281E3bB30d27E ("0x5d95…d27E")) and the Service Provider (0x752515a3A1091b9f1c04416CF79D1F14d2340085 ("0x7525…0085")). Although the Authorized Members and the Service Provider do not owe any fiduciary duties to the DAO, they

> "are each authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents and certificates and to pay such expenses, in the name and on behalf of the DAO, as any of each of the Service Providers may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents and certificates and the payment of such expenses by any such Service Providers to be conclusive evidence of his or her authorization hereunder and the approval thereof."[1]

One of the topics to be discussed today are potential transactions between certain individuals and the DAO. These certain individuals were initial contributors, sometimes also referred to as "founders" to the Movement treasury, and both Authorized Members and the Service

---

[1] MIP-0004, https://move.xyz/daolabs/daos/move/proposals/mip-0004.md

Provider worked together with them at different points in the creation and operation of the DAO. There may potentially be transactions which may be considered "related-party transactions" that will be discussed today.

The Authorized Members, Service Provider, and Movement collectively found it important that Movement, a Delaware unincorporated non-profit, obtain approval by a committee comprised of fully informed and independent community members regarding any potential related-party transactions that will be executed on behalf of Movement.

In Aronson v. Lewis, 473 A.2d 805, 816 (Del. 1984), the Court stated that

> "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences. While directors may confer, debate, and resolve their differences through compromise, or by reasonable reliance upon the expertise of their colleagues and other qualified persons, the end result, nonetheless, must be that each director has brought his or her own informed business judgment to bear with specificity upon the corporate merits of the issues without regard for or succumbing to influences which convert an otherwise valid business decision into a faithless act." Furthermore, Delaware courts have defined independence to mean "that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Id.

Here, the members of the Committee are independent. They do not have any professional, business, or personal relations to the DAO other than being contributors. They have no professional, business, or personal relations to either of the Authorized Members/Service Provider, or the certain individuals who would be potentially benefiting from any proposed transactions which collectively are all the interested parties in any transactions that will be discussed today.

The below listed independent individuals comprise the fully independent Committee. These individuals do not have any material professional, business, or personal relations to the DAO other than being contributors. They are not involved in any of the DAO's day-to-day operations, are not involved with any executive decision making outside of the Committee. They have no material professional or business relations to either of the Authorized Members/Service Provider, or the certain individuals who would be potentially benefiting from any proposed transactions which collectively are all the interested parties in any transactions that will be discussed today.

If the topic of discussion is the compensation paid by Movement to one of the Authorized Members, the Authorized Members, individually, will recuse themselves, leaving the Committee to ratify and resolve any decision regarding this matter. Furthermore, if the topic of discussion is a potential related-party transaction involving the Authorized Members or Service Provider, the Authorized Members and/or Service Provider will make sure that the Sub-Committee is fully informed of all material information regarding the transaction, but they will not be involved in any decision-making or ratification of any potential related-party transactions.

It is important to note that under the "Slow Start" and Vetoer provision from GitBook, the Service Provider, 0x7525…0085, was granted certain safe-guard powers which are now transferred to this Committee. These safe-guard powers include executing financial transactions on behalf of the DAO, in some cases prior to community approvals, take security actions to safeguard the Gnosis treasury or any code smart contracts deployed on Mainnet of which funds are entrusted, along with being able to veto any proposal.

ROLE CALL

Those present at the meeting were:

1. 0xA4e6…931c
2. 0x5d9…d27E, 0x752515a3A1091b9f1c04416CF79D1F14d2340085 ("0x7525…0085")
3. 0x2770736960c4739f96d3a033676ff0e34e71fC63 ("0x2770…fC63")
4. 0xc9284a9FD6D8C484bFD7e24f26B1634585f0A296 ("0xc928…A296")
5. 0x57a16a385e86cd215deF121E6887D23Be8080d37 ("0x57a1…0d37")
6. 0x4e33Ac0C5F929A0De68338f534e6DD3b2e44a525 ("0x4e33A…a525")
7. 0x91898f9103cDBA1546DE834F6E26f019E09A0d4B ("0x9189…0d4B")
8. 0x2B90Cb5080283Cc4e276f5bB42eb8CE08d7d6BD0 ("0x2B90…6BD0")
9. 0xFB6AdceCc361b1F5Dcc4069504c54e588E9F863C ("0xFB6A…863C")
10. 0xab5d306E643cDba074a4251e9E1A4FEC5a8e05Ee ("0xab5d…05Ee")

One or more of individuals may not have been present at the initial meeting and were provided with meeting minutes. All committee members subsequently signed a transaction using Etherscan[2] with the IPFS CID of these minutes and forwarded them to 0xA4e6…931c, which were compiled into a final version, containing each committee member's signature hash.

Individuals who are present and also fully independent:

1. 0xc9284a9FD6D8C484bFD7e24f26B1634585f0A296 ("0xc928…A296");
2. 0x2770736960c4739f96d3a033676ff0e34e71fC63 ("0x2770…fC63");
3. 0xFB6AdceCc361b1F5Dcc4069504c54e588E9F863C ("0xFB6A…863C")
4. 0xab5d306E643cDba074a4251e9E1A4FEC5a8e05Ee ("0xab5d…05Ee"); and
5. 0x3A84E322fdAF69187b5688a0bFbf1ef50e021Fa5 ("0x3A84…1Fa5");

AGENDA

---

[2] https://etherscan.io/verifiedSignatures

1. Presentation of the DAO's goals and charter by 0xA4e6…931c;
2. Demo of the current alpha-site treasury and NFT-tooling;
3. Review of the IPFS Exhibits presented by 0x5d9…d27E;
4. Review of the DAO's code of conduct by 0xA4e6…931c;
5. Review of the Gnosis transactions and groupings;

<u>DISCUSSION</u>

1. 0xA4E6...931C explained the current state of development and invited 0x5d9…d27E to present to the Committee a demonstration of the alpha of the treasury and NFT creation system.

2. 0xA4E6...931C referenced high-level goals of the application citing the GitBook Terms of Use,

   "Movement DAO is an experimental, novel approach to nonprofits devoted to performing good works and encouraging social justice in today's contemporary society. The DAO is a blockchain-based organization that raises funds through the purchase of tokens that entitles the purchaser, or member, to champion specific nonprofit works or projects and seek additional funding from like-minded individuals. Movement DAO hosts blockchain software as a backend service for customers who set up their own accounts and purchase tokens.; Movement DAO is neither designed to be, nor is it set up to be, an investment vehicle and no jurisdiction has deemed any token produced by Movement DAO to be a "security" as defined by the 1933 Securities and Exchange Act ("The Act")."

   "10. Scope. Movement DAO's core is a collection of smart contracts which govern managing a pool of assets on behalf of Movement and its sub-movements, the Endowment bank. Given each Movement has its own property and funds which are managed by Movement, and adapters and extensions which govern how the funds are collected, distributed, and managed are all areas which require extensive design, analysis, and audit before it is employed on Ethereum Mainnet."

3. 0x5d9…d27E explained the current tentative timeline and focus in creating an application which provides value to its users, as to avoid potential abuses by users who rely on token sales. 0x5d9…d27E further explained the balance which the DAO seeks to reach with NFT tooling, treasury management, and DeFi diversification. 0x5d9…d27E referenced the original documentation regarding the contributor's thoughtfulness, care and trust in any code deployed to support the vision of a fully on-chain decentralized entity treasury management system and NFT creation system.

   "founder's tokens will be locked for 6 years from launch, meaning there is no return on investment to the founders until the platform is fully built, operational and successful in its objectives. The system also establishes trust with its community by adopting state of the art mechanism design concepts."[3]

4. 0xA4E6...931C explained Ex. F, which shows Contributor 2 as the author and gatekeeper editor of the DAO's GitBook. The Committee additionally received testimony from individuals supporting the fact that Contributors 1-3 were individually and collectively creators of the GitBook.

5. 0xA4E6...931C explained that the Service Provider was given authority to oversee fiscal responsibility of protecting the project financials and treasury. 0xA4E6...931C then explained that the Service Provider, dao-lawfirm.eth, had submitted their resignation, and therefore the Authorized Members formed the Committee to further oversee certain transactions and membership decisions prior to their presentation to the full community, as to address immediate security concerns and/or financial loss and harm to the DAO treasury from bad actors.

6. 0xA4E6...931C reviewed certain excerpts from GitBook,

   "<u>Community Pledge</u>. The community must build and maintain a level of trust by quickly highlighting any instances of fraudulent or malicious activity; Right effort – Each community member has a duty to prevent, mitigate, and resolve conflict on the platform."

7. 0xA4E6...931C explained the current budget planning process which was significantly less than documentation which he had reviewed on prior expenditure approvals. 0x5d9…d27E explained that the successful recruiting process for each of the senior contributors was specifically due to the Gnosis multi-year runway and the commitment by the DAO to build and do "what is right" instead of taking other corner-cutting efforts which is unfortunately common in Web3. 0x5d9…d27E explained, for example, the care and effort in creating the DAO's legal-tools and plans to support treasury formation efforts with referrals to legal resources.

8. 0xA4E6...931C then explained the current situation with Contributors 1, 2, and 3. He explained that recent communications to 0x5d9…d27E , appears that they may be operating in bad faith by reneging the terms that they created and along with all subsequent contributors agreed upon. 0xA4E6...931C further stated that the Contributors 1-3 appear to be making questionable, ethically challenged, bad faith demands upon 0x5d9…d27E by ordering him to take certain action using their wallets.

9. 0xA4E6...931C then reviewed Ex. C and D with the Committee. The Committee acknowledged the apparent bad faith demands by Contributors 1, 2, and 3 in Ex. D, and that it appears that these Contributors seemed to be ordering 0x5d9…d27E to take certain actions in order to potentially shift liability from themselves to 0x5d9…d27E , and that Contributors 1-3 appear to be taking steps to orchestrate to extraction of treasury funds.

10. 0xA4E6...931C then reviewed Ex. E.

---

[3] GitBook, Why should I trust this platform? https://move.xyz/daolabs/policies/gitbook/README.md

11. The Committee reviewed the rebuttal provided by 0x5d9…d27E and asked clarification questions with regard to the scope of 0x5d9…d27E engagement with the Service Provider and the DAO.

12. The Committee agreed that all material decisions regarding budget decisions should be made by the community as a whole, and not by a centralized group in closed-door meetings.

13. The Committee acknowledges that the correct course of action from 0x7525…0085 is to not be an accessory to Contributor 1, 2 and 3's demands, and that 0x5d9…d27E is acting in line with the Guiding Principles and Terms of Service.

14. 0xA4E6...931C explained that under the "Slow-start" provision in the Gitbook and the Terms of Use, that the Service Providers may:

   a. "veto any pending proposal";
   b. "ensure that no funds are moved in violation of the movement rules and no requests for funding would be indicative of fraudulent activity";
   c. "reserve the right to exercise our discretion as we see fit to refuse to allow certain individuals to contribute or become members of the DAO and further, we may also change our eligibility criteria at any time".

15. 0xA4E6...931C reviewed certain excerpts from the Movement DAO Guiding Principles and Terms of Service with the Committee and asked if the Committee had any questions about any of the documents.

16. The Committee asked 0x5d9…d27E to discuss the types of governance which the DAO may employ and the timelines in implementing them; i.e. providing individuals with economic benefits or tokens without associated governance. The Committee instructed 0x5d9…d27E to provide a strategy for consideration on implementing a decoupled governance and token strategy in the vein of voting escrow which Curve employs with a membership component. Such that in addition to locking tokens for a set duration to participate in governance, the DAO Members also must hold a membership token (NFT) and be in good standing; additionally, 0xA4E6...931C was instructed by the Committee to provide a legal consulting budget so that the membership agreement include non-member token descriptions.


## NEW BUSINESS

After actions have been taken to execute the resolutions in the "Adjournment" section below, there will be a Discord community voice call to explain current situation with the community as a whole, answer any questions they may have, and collectively go over the next steps that will be taken.


## AGENDA FOR NEXT MEETING


## ADJOURNMENT

The meeting was adjourned at 5 PM by 0xA4e6...931c. The next meeting will take place in the following days.

1. RESOLVED, this Committee, through its members together and individually, hereby authorize, adopt, and resolve to take the following actions;

2. RESOLVED FURTHER, this Committee, together with 0xA4E6...931C and 0x5d9…d27E, will continue to be the DAO's "Service Provider" as defined in mip-0004, with the addition that this Committee will authorize transactions using the dao-lawfirm.eth address until further notice.

3. RESOLVED FURTHER, this Committee, find that 0x5d9…d27E has acted in good faith after having reviewed the above exhibits, all associated DAO blockchain transactions, and contract signatures.

4. RESOLVED FURTHER, this Committee, find that there was never an agreement, or any fiduciary duty that was bestowed upon 0x5d9…d27E in regards to managing or executing any actions on behalf of Contributors 1, 2, and 3 through the gnosis keys (which controlled their governance powers) that were assigned to them.

5. RESOLVED FURTHER, the Authorized Members, individually and together with the Service Provider, and its address operator dao-lawfirm.eth, are fully indemnified for any prior and future actions;

6. RESOLVED FURTHER, the Committee finds that Contributors 1 and 2 were the authors with editorial control of the DAO's GitBook;

7. RESOLVED FURTHER, the Committee instructs the Service Providers to terminate all access, communication, or membership to any online services enjoyed by Contributors 1 and 2, including the beta application;

8. RESOLVED FURTHER, the Committee terminates Movement membership for Contributors 1, 2, and 3, and any addresses associated with them, including any associated governance rights;

9.  RESOLVED FURTHER, the Committee finds that Contributor 1, (in agreement and coordination with Contributors 2 and 3) through his/her statement, "limited-time offer to reimburse everyone 1:1 through the end of January, in conjunction with project shutdown," and the appearance of reneging on prior agreements and promises with the Service Provider, other Members, and contributors, in light of the Gitbook provision which states, "The founder's tokens will be locked for 6 years from launch, meaning there is no return on investment to the founders until the platform is fully built, operational and successful in its objectives. The system also establishes trust with its community by adopting state of the art mechanism design concepts" appears to be a coordinated effort to "rug" the Movement project and community.

10. RESOLVED FURTHER, the Committee finds that Contributors 1, 2, and 3 violated the Terms of Service, Code of Conduct, and spirit of the DAO as outlined in the Movement GitBook, Guiding Principles, and supporting agreements; and that action can and will be taken regarding their governance rights without notice according to Section 6(c) of the Movement DAO Guiding Principles; and GitBook Terms of Use,

    "the Service Provider, in their reasonable discretion, is expressly authorized to remove a Member without notice or vote of the Members if the Service Provider determines such a removal to be necessary, desirable, or appropriate, including, without limitation, to comply with applicable law or regulations, or to avoid a material adverse effect on the DAO. For the avoidance of doubt—the Member to be compulsorily withdrawn shall be entitled to vote with respect to any vote of the Members regarding such compulsory withdrawal, unless the Member is deemed to be in violation of the Code of Conduct and Community Enforcement Guidelines."

11. RESOLVED FURTHER, the Committee terminates jimmyethworld.eth 0xb44A...8461 role insofar that he was an Authorized Member for "Meat-space" Activities, as previously approved by mip-0004;

12. RESOLVED FURTHER, the Committee vetoes all pending unpresented proposals from Contributors 1, 2, and 3, and any addresses associated with them attached;

13. RESOLVED FURTHER, the Committee authorizes and directs existing signers on the Gnosis to fully rotate all keys; the new signers are to remain anonymous for their protection and for the protection of the DAO; the Committee further authorizes and instructs 0x5d9…d27E, individually, and as he owes no duty to the other signers, co-signs with 0x7525…0085 and 0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57 to accomplish the rotation.

14. RESOLVED FURTHER, the Committee authorizes the Gnosis to employ four (4) out of seven (7) total signers.

15. RESOLVED FURTHER, the Committee authorizes the Authorized Members to update the DAO's Snapshot Spaces to reflect the removal of the governance rights of Contributors 1, 2, and 3, including direct addresses or addresses associated or seeded by them.

16. RESOLVED FURTHER, the Committee authorizes the disbursement of 500,000 in DAI to each of the Authorized Members, the former Service Provider, and a new Committee Gnosis as an advance indemnification as approved in Snapshot mip-0004 (https://bit.ly/3IgxCGJ), however explicitly approved prior to arbitration, until further notice by this Committee;

17. RESOLVED FURTHER, the Committee authorizes the Authorized Members to seek dedicated counsel for the DAO, with pre-approved expenses up to DAI 250,000;

18. RESOLVED FURTHER, the Committee authorizes the Authorized Members to communicate with Contributor 3 regarding any remaining housekeeping activities;

OMNIBUS RESOLUTIONS

19. RESOLVED FURTHER, the Service Providers of the DAO are each authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents and certificates and to pay such expenses, in the name and on behalf of the DAO, as any of each of the Service Providers may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents and certificates and the payment of such expenses by any such Service Providers to be conclusive evidence of his or her authorization hereunder and the approval thereof;

20. RESOLVED FURTHER, any and all actions taken by the Service Providers of the DAO to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified and confirmed. As used in this document, the words "herein," "hereof," "hereby" and "hereunder" shall refer to this document as a whole, and not to any particular section, provision, or subdivision of this document. This action by the DAO Member by Snapshot vote shall be effective as of the date the DAO Entities receives the consent of the DAO at the end of the Snapshot vote. This action by the DAO Members consent may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

SIGNATURE HASHS FROM ALL COMMITTEE MEMBERS

1.  0x5d95baebb8412ad827287240a5c281e3bb30d27e, https://etherscan.io/verifySig/13756, 0x4de5aa17d5260a663e3015e8a1448ffeb74080a25b375742e2e4322b3ebd52b42a7dfb7e0e1d647216b1c6cfe50e9f76f19550d652832dc73c51f5f6c41d b3e81b

# EXHIBIT 35

# Proposal to Ratify Action to Cycle All Gnosis Keys

**Author: benreed.eth**
**Date: 2023-01-31**

This proposal seeks Movement Member's ratification of a recent action of the Authorized Members, benreed.eth and tankbottoms.eth, which was cycling all of the keys of the Gnosis Multi-sig 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 due to security concerns.

## Thesis

In response to the recent security issues and threats made against the DAO's treasury's Gnosis signing keys, the Authorized Members met and agreed to cycle all the Gnosis keys. The treasury's Gnosis multi-sig Gnosis 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 will immediately be replaced with the following keys.

1. eth:0x818e90cDc2771385d784563173046d7759c8117f
2. eth:0x468f178672C86bFA02e5E1B0413C3ccf55A37409
3. eth:0xA5B70097650FAeC3e87AA9174A76cd78925f7ae0
4. eth:0x752515a3A1091b9f1c04416CF79D1F14d2340085
5. eth:0x5d95baEBB8412AD827287240A5c281E3bB30d27E
6. eth:0x38F83dD64DADFd871BE920422B8Cb5703a1e45a3
7. eth:0x9245D6527462b76638789A78Cec69A4C003f878d
8. eth:0xe588A90B346236fCEc4543a101CD92d01C3fFfD6
9. eth:0x0ca396c41F6548a39D1982077C119eC1479b11bf
10. eth:0x008820F8256F950836775e52571347fFD5309d2b
11. eth:0x0087F67B6b0995D3e7D21f2b94Ef92F4582868aD
12. eth:0x73255155964A09ABb91994fe0EFB8D330f10aDAA
13. eth:0xFeB18aef7a8BB0598A301274777fC9c525Ed9b98

## Motivation

The Gnosis holds a significant amount of treasury assets entrusted to the DAO and its community in furtherance of its vision. In addition to unforeseen security concerns such as lost seed phrases, other OpSec breaches, social engineering or unforeseen motivations by one or more of the signers who are not adhering in good faith or whose interests are orthogonal to the DAO, the Gnosis signers shall be cycled from the original founders and Service Provider to certain Members as determined by the Authorized Members.

Additionally, as a reminder, all Gnosis Multi-Signature signers are expected to act in accordance with the DAO Governance Multi-Signature sub-section.

1

## Specification

1. Removing the following Signer(s):

- eth:0x550bD0F03580B9a687931af4d837F8e45D61d410;
- eth:0x746cf650d4E5431474E8D4E2d5B6Bbe53772b498; and
- eth:0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57;

2. Addition of the above listed Signer(s).

## Rationale

- Authorized Members, benreed.eth and tankbottoms.eth, discussed security concerns and agreed that threats to the DAO and community were imminent;
- Current Service Provider, dao-lawfirm.eth, has resigned;
- The Authorized Members convened, reviewed the pertinent facts, and resolved in authorizing this action;
- Given the current crypto-market sentiment, practicing exceptional security precaution is expected and warranted;
- Multi-Signature signer(s) should be comfortable with cryptographic transactions;

## Risks

- Authorized Members may have been compromised;
- The aforementioned individuals may not have the DAO's best interest in mind;
- The new replacement signers may not be trustworthy.

---

## Snapshot Consensus by the DAO Members

Whereas the DAO through its Authorized Members voted to adopt and resolve the following actions. The Authorized Members now seeks to ratify those actions via a Snapshot Consensus by the DAO Members.

**RESOLVED:** That the cycling of all keys associated with the Movement Gnosis 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6) is hereby adopted and approved;

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This

also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

**RESOLVED FURTHER: That any and all actions taken by the Authorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

---

**Authors**

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

3

# EXHIBIT 36

# Proposal to Ratify the Termination of Certain Members

Author: benreed.eth
Date: 2023-01-31

This Snapshot proposal has been created to ratify the membership termination actions by the Authorized Members, benreed.eth and tankbottoms.eth.

## Thesis

The Authorized Members were concerned with certain Member's ("Certain Members") activities which were in violation of the DAO's Code of Conduct and/or the DAO's Guiding Principles and/or the DAO's Terms of Service and/or the DAO's Token Terms of Service and/or the DAO's GitBook. The Authorized Members disclosed all material information when they convened and sought independent counsel in order for them to render a fully-informed decision, with the goal of balancing the Service Provider's security concerns, membership privacy, as well as the DAO's need to maintain a healthy and vibrant community. Concerned with the current crypto-market sentiment, the Authorized Members felt the need to practice exceptional security precautions, operate with a high degree of transparency and accountability, and ensure that the DAO's treasury assets are protected.

The Certain Members are associated with the following addresses, who are also signers of the DAO's Gnosis Multi-Signature:

0x550bD0F03580B9a687931af4d837F8e45D61d410 0x746cf650d4E5431474E8D4E2d5B6Bbe53772b498 0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57

Additionally, these addresses are also associated with the Certain Members:

0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650 0x211be2dDC09c482B27Ed780A710b18d8Cb76328E 0xb44A14dEcD9270E34E2dDaff4CD8690a2Cb88461

## Motivation

To protect the DAO community from actions taken by the Certain Members that appeared to be malicious, exploitative, and in bad faith in order to protect the DAO's treasury and assets.

## Specification

1. Terminate any governance, voting, or community participation by the following addresses(s):

0x550bD0F03580B9a687931af4d837F8e45D61d410 0x746cf650d4E5431474E8D4E2d5B6Bbe53772b498 0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650 0x211be2dDC09c482B27Ed780A710b18d8Cb76328E 0xb44A14dEcD9270E34E2dDaff4CD8690a2Cb88461

1

2. Remove the above listed addresses from Snapshot, and any position of trust they may hold.

## Rationale

- The Authorized Members convened, reviewed the pertinent facts and resolved authorizing this action;
- dao-lawfirm.eth has resigned as the Service Provider leaving interim DAO oversight to the Authorized Members;
- Given the current crypto-market sentiment, practicing exceptional security precaution is expected and warranted;
- Multi-Signature Signer(s) should be comfortable with cryptographic transactions;

## Risks

- Authorized Members may have been compromised;
- The aforementioned individuals may not have the DAO's best interest in mind;

---

### Snapshot Consensus by the DAO Members

Whereas the DAO through its Authorized Members voted to adopt and resolve the following actions. The Authorized Members now seeks to ratify those actions taken by a Snapshot Consensus by the DAO Members.

**RESOLVED:** That the Certain Members associated with the above listed addresses are concluded to have acted in bad faith, against the interest of the DAO, violated the Code of Conduct, its Terms of Service, and their immediate, irrevocable, membership termination therein is hereby adopted and approved;

**RESOLVED FURTHER:** That the DAO terminates and removes any formal, title, position, function, role, for 0xE41188926607921763D25392475f1156AC5f9033, insofar they were an Authorized Member for "Meat-space" activities as granted in MIP-0004;

**RESOLVED FURTHER:** That the DAO immediately terminates and removes any right to or the participation of governance and vote on community measures for the above listed addresses, and any addresses associated with them each listed above;

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This

2

also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

**RESOLVED FURTHER: That any and all actions taken by the Authorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

_____

**Authors**

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

# EXHIBIT 37

# Proposal to the Update to the DAO's Snapshot Strategy

Authors: benreed.eth
Date: 2023-01-31

## Thesis

The DAO is governed by its community. Multi-sig transactions and signatures, as well as updates to the DAO process, must be ratified by the Governance Process prior to their execution. To support this process the DAO maintains Snapshot Strategies that assign, value, and record Member's voting rights in the Snapshot Consensus Space.

Therefore it is important for the Snapshot Strategies to accurately capture and reflect the correct assignment and value associated to Members. Upon any changes to Member's contributions or rights to participate in governance, due to a lack of good-standing as outlined in the DAO's Terms of Service, Code of Conduct and Policies; the Snapshot Strategies will require reconfiguration in order to incorporate any of these changes.

Authority to make changes to the Snapshot Strategies are outlined in the Governance Process as highlighted under Emergency Governance. It states, "the Authorized Members, individually, or collectively, they may take any and all on-chain or off-chain actions to protect the DAO's treasury and assets - including interfering with the execution of a proposal, approving a proposal, reconfiguring Snapshot, or reconfiguring the Multi-sig."

The Authorized Members includes the appointed Authorized Members as ratified in MIP-0000, MIP-0004, and MIP-0007.

## Motivation

The Authorized Members recently took action to revoke and terminate membership rights of certain community Members ("Certain Members"), nullifying their right and ability to participate in governance. Therefore the existing Snapshot Strategy and Snapshot Consensus configuration is inaccurate and is in need of updating.

## Specification

The Authorized Members will update the Snapshot Strategies, removing the rights of the Certain Members no longer in good-standing. A detailed explanation of all changes and adjustments to the Snapshot Strategies will be posted online to ensure complete transparency.

## Rationale

The Authorized Members want to ensure the DAO's Governance process and is accurate and trustworthy for all Members of the community.

## Risks

- Transparent operation of the DAO is not certain or guaranteed.
- DAO governance is restricted until the Snapshot Strategies have been updated.
- Updating the Snapshot Strategy takes time and may be error prone.

## Snapshot Consensus by the DAO Members

Whereas the DAO through its Authorized Members voted to adopt and resolve the following actions. The Authorized Members now seeks to ratify those actions taken by a Snapshot Consensus by the DAO Members.

**RESOLVED:** That a new Snapshot Strategy incorporates the decisions of the Authorized Members to reconfigure the Snapshot Strategy to reflect actions taken by them to remove Certain Members from the community, is hereby adopted and approved;

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

**RESOLVED FURTHER: That any and all actions taken by the Authorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

---

### Authors

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

2

# EXHIBIT 38

# Proposal for Outstanding Operational Expense Payouts

Authors: benreed.eth
Date: 2023-01-31

## Thesis

The DAO incurs monthly expenses in the form of developer payouts and operational expenses such as software and hosting services, merchandise, professional services, and other miscellaneous expense. Since December 2022 the DAO has yet to disperse payment for the development team's payouts and has depended on the personal contributions from Authorized Members, benreed.eth and tankbottoms.eth, to cover ongoing operational expenses. To sustain product development and continue to ensure the DAO's IRL business accounts remain in good standing, the DAO needs to disperse funds for outstanding payouts and operational expenses for the months of December 2022 and January 2023.

## Specification

The Gnosis Multi-sig[1] shall transfer `DAI 511,794` and `ETH 41.007` (ETH amount subject to change depending on ETH price at time of transfer), to the Developer Multisig[2].

The Authorized Members will transfer and distribute the relevant funds to reimburse the appropriate members and banking institutions for settlement of all accounts.

### Outstanding Expenses

The table below outlines payouts required from the DAO for expenses incurred from December 2022 through January 2023:

| Category | Description | Amount (DAI) | Amount (ETH) |
|---|---|---|---|
| Developer Payouts | 2 months of developer payouts | DAI 431,500 | - |
| Software & Hosting Services | Google Domains, AWS, Fleek, etc. | DAI 10,070 | - |
| Merchandise | Supplies, hardware, etc. | DAI 12,393 | - |

---

[1]The DAO Multisig is a Gnosis Safe at `0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6` on the Ethereum Mainnet.

[2]The Developer Multisig is a Gnosis Safe at `0x2187e6a7c765777d50213346F0Fe519fCA706fbD` on the Ethereum Mainnet.

| Category | Description | Amount (DAI) | Amount (ETH) |
|---|---|---|---|
| Miscellaneous | Transaction and bank fees, etc. | DAI 2,678 | - |
| Professional Services | Business, Accounting, and Security | DAI 3,738 | - |
| Travel & Expenses | Developer team onsite | DAI 4,415 | - |
| Member Reimbursements | 0x5d95...d27e and 0xa4e6...931c | DAI 47,000 | ETH 41.007 |

The total payout for DAO operations in December 2022 and January 2023 was `DAI 511,794` and `ETH 41.007`.

## Rationale

Prompt payment for developer payouts and operational expenses ensure that the DAO continues to conduct itself professionally, avoid any potential delay in ongoing development, and prevents the DAO from incurring additional fees and/or debts.

## Risks

- Failure to pay expenses harms the reputation and good standing of the DAO and it Authorized Members.
- Failure to pay expenses has the potential to expose the DAO to additional fees and/or debts.
- These funds may not be ideally distributed.
- These funds may be more useful later on.

---

## Snapshot Consensus by the DAO Members

Whereas the DAO through its Members voted to adopt the following actions via Snapshot and resolves as follows:

**RESOLVED:** That the DAO Multisig transfer of `DAI 511,794` and `ETH 41.007` to the Developer Multisig (hereinafter, "Payout of Outstanding Expenses") is hereby adopted and approved;

**RESOLVED FURTHER:** That the Developer Multisig shall transfer `DAI 511,794` and `ETH 41.007` to the accounts specified by benreed.eth and tankbottoms.eth, and that the Authorized Members are authorized to pay and reimburse expenses incurred for outstanding developer services and operational ex-

penses incurred by the DAO or the DAO's affiliate entity during the month of December 2022 and January 2023.

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

**RESOLVED FURTHER: That any and all actions taken by the Authorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

―――――――――――――――――

**Authors**

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

# EXHIBIT 39

# Proposal for Deferred 2022 Developer Payouts

Authors: benreed.eth
Date: 2023-01-31

## Thesis

Over the course of 2022, certain developer consultants ("Developers"), listed below, requested the DAO to defer payouts until the upcoming new year. The DAO accepted the request of the Developers and deferred certain payouts. Now that it is the new year, 2023, monies from deferred payouts can now be paid to the Developers.

## Motivation

Attracting and retaining top developer talent is the top priority for the DAO. In an effort to support this priority, the Service Provider and Authorized Members of the DAO, benreed.eth and tankbottoms.eth, agreed to the Developers request to defer payouts. It is in the best interest of the DAO to honor all agreements made with these Developers in order to avoid loss of talent and maintain the DAO's reputation.

## Specification

The Gnosis Multi-sig[1] shall transfer `DAI 349,035`, to the Developer Multisig[2].

### Deferred Developer Payout

The following table represents the total amount of deferred 2022 payouts now due to the Developers. The Developers each have agreements with the DAO and are recognized as senior developers within their respective technology areas: Solidity Smart Contract and UX front-end Typescript development.

| Due Date | Developer Consultant | Deferred Amount | Deferred Months | Practice Area |
|---|---|---|---|---|
| 2023-01-01 | 0xF1cf...eD7C | DAI 234,035 | January, October, November | Smart Contracts |
| 2023-01-01 | 0x89Ff...84fF | DAI 85,000 | October, November | UX Typescript |
| 2023-01-01 | 0x57a1...0d37 | DAI 30,000 | October, November | UX Typescript |

---

[1]The DAO Multisig is a Gnosis Safe at `0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6` on the Ethereum Mainnet.

[2]The Developer Multisig is a Gnosis Safe at `0x2187e6a7c765777d50213346F0Fe519fCA706fbD` on the Ethereum Mainnet.

The total amount of developer payouts deferred in 2022 was `DAI 349,035`.

**Utilization**

The Authorized Members, benreed.eth and tankbottoms.eth, have reviewed and confirm this was the agreement made with the above mentioned Developers.

## Rationale

The DAO is required to abide by it's Guiding Principles and Code of Conduct, requiring its Members to honor agreements made in good faith and follow through with deferred payouts. Additionally the DAO aspires to be an attractive destination for top talent in Web3; therefore, the DAO's Authorized Members want to continue to support requests of the few developers it employs including flexible payout requests.

## Risks

- Delay in the deferred payouts has resulted in loss of trust and goodwill from the Developers.
- Deferred payouts require additional overhead and administrative support to execute.
- Deferred payouts have the potential to distort budget burn rates and complicate accounting.

---

## Snapshot Consensus by the DAO Members

Whereas the DAO through its Members voted to adopt the following actions via Snapshot and resolves as follows:

**RESOLVED:** That the DAO Multisig transfer of `DAI 349,035` to the Developer Multisig (hereinafter, "Deferred Developer Payout") is hereby adopted and approved;

**FURTHER RESOLVED:** That the Developer Multisig further transfer `DAI 349,035` to the accounts specified by the previously mentioned developers for the deferred 2022 payouts. Account transfers may include conversion to fiat currency and or other digital assets.

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This

also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

**RESOLVED FURTHER: That any and all actions taken by the Authorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

**Authors**

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

———————————————————

3

# EXHIBIT 40

# Proposal Regarding the Service Provider Fee Payout From 2022

```
Authors: benreed.eth
Date: 2023-01-31
```

## Thesis

Dao-lawfirm.eth acted as the DAO's Service Provider throughout 2022, providing legal and custodial services to the DAO. In good faith, dao-lawfirm.eth deferred their Service Provider Fee[1], which was equal to 2% of assets under management per annum. This fee was originally to be paid on or around February 2nd, 2022. Now dao-lawfirm.eth, in alignment with their resignation as Service Provider to Movement, has decided to relinquish their rights to the deferred fee that they were owed.

With that said, the core Movement team has found it instrumental to have a Service Provider or attorney engaged to help facilitate the legal and accounting activities, as well as the membership agreements with the Movement application. Furthermore, a Service Provider or attorney(s) will be a great resource in aiding Movement users seeking to streamline entity registration. Juicebox protocol and their community found significant value in the Movement legal tooling forms available online, and we would like to further refine these forms and better integrate them with Juicebox treasury creation workflows. Therefore, Movement will respect dao-lawfirm.eth's decision to resign, and the Authorized Members along with the Movement community will determine the DAO's next steps in regard to retaining a new Service Provider and/or attorney(s), for the reasons just stated.

## Specification

The DAO Multisig[2] shall transfer `DAI 334,487` to the Developer Multisig.[3] The Developer Multisig will then hold these funds in escrow until the Authorized Members and the community determine the DAO's next steps in regard to retaining a new Service Provider, and the DAO has sufficient grounds for moving these funds.

### Service Provider Fee

The following represents the amount owed by the DAO to dao-lawfirm.eth for the Service Provider fee which included providing services such as: treasury

---

[1] The Service Provider, Fees and Expenses as outlined in Original Gitbook Policies, Let's start a movement post, dated 2/2/2022.

[2] The DAO Multisig is a Gnosis Safe at `0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6` on the Ethereum Mainnet.

[3] The Developer Multisig is a Gnosis Safe at `0x2187e6a7c765777d50213346F0Fe519fCA706fbD` on the Ethereum Mainnet.

oversight, governance, and expense/payout management.

| Date | Description | Treasury Balance | Amount Incurred | Amount Paid | Amount Deferred |
|------|-------------|------------------|-----------------|-------------|-----------------|
| 2022-01-01 | Service Provider Fee | $16,724,383.92 | DAI 334,487 | DAI 0 | DAI 334,487 |

### Utilization

The Authorized Members, benreed.eth and tankbottoms.eth, have reviewed the relevant information and confirmed that this proposal accords with the DAO's agreement with the Service Provider, dao-lawfirm.eth.

### Risks

- Certain members acting in bad faith may continue to damage the DAO's reputation.
- This might not be the most efficient way to accomplish the DAO's goals.

---

## Snapshot Consensus by the DAO Members

Whereas the DAO through its Members voted to adopt the following actions via Snapshot and resolves as follows:

**RESOLVED:** That the DAO Multisig transfer of `DAI 334,487` to the Developer Multisig (hereinafter, "Payout of the Service Provider Fee") is hereby adopted and approved;

**RESOLVED FURTHER:** That the Developer Multisig shall hold `DAI 334,487` in escrow until the Authorized Members and the community determine the DAO's next steps in regard to retaining a new Service Provider, and the DAO has sufficient grounds for moving these funds. The Authorized Members are authorized to pay and reimburse expenses associated with any additional expenses of the DAO and the DAO's affiliate entities, including without limitation, expenses incurred prior to the formation and/or incorporation of the entities.

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

2

**RESOLVED FURTHER: That any and all actions taken by the Authorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

---

**Authors**

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

3

# EXHIBIT 41

# Proposal for Payout of Deferred Legal and Indemnification Expenses

Authors: benreed.eth
Date: 2023-01-31

## Thesis

Movement DAO's Guiding Principles appointed dao-lawfirm.eth as the DAO's Service Provider. In addition to acting as the DAO's Service Provider, dao-lawfirm.eth also provided legal services to the Authorized Members and DAO's affiliates throughout 2022 and, in good faith, deferred a portion of the commensurate legal fees. Those fees are to be paid in 2023.

In addition, the Members of the DAO ratified Adopt Actions (MIP-004) which indemnifies the DAO Service Provider and Authorized Members, benreed.eth and tankbottoms.eth, for any and all costs, fees, expenses, and liabilities incurred in the performance of their duties as Authorized Members, and/or DAO Service Provider. In response to recent security concerns by certain member's ("Certain Members) that appeared to be malicious, exploitative, and in bad faith, the Authorized Members have approved disbursement of indemnification funds for tankbottoms.eth and benreed.eth, the former Service Provider dao-lawfirm.eth, and core Contributors from hereon referred to as the"Indemnified Members".

## Specification

The DAO Multisig[1] shall transfer `DAI 2,558,831` to the Developer Multisig.[2] The Developer Multisig will transfer and disburse the relevant funds to dao-lawfirm.eth and the above mentioned Indemnified Members.

### Deferred Legal Fees

The following represents costs associated with legal services performed by the Service Provider for the DAO and it's affiliates, including (but not limited to):

- Drafting governance documents such as Terms of Service, Privacy Policies, or Opinion letters;
- Drafting documents for the formation of legal entities, and filing those documents;
- Providing agreement templates for use in legal.juicebox.wtf; and,
- Conducting tax estimations and impact assessments.

---

[1] The DAO Multisig is a Gnosis Safe at `0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6` on the Ethereum Mainnet.

[2] The Developer Multisig is a Gnosis Safe at `0x2187e6a7c765777d50213346F0Fe519fCA706fbD` on the Ethereum Mainnet.

| Date | Description | Amount Invoiced | Amount Deferred |
|------|-------------|-----------------|-----------------|
| 2023-01-01 | Deferred legal fees from Oct-2021 to Feb-2022 | DAI 96,660 | DAI 58,831 |

### Advance for Indemnified Members

The following represents the total sum of disbursements for the Indemnified Members. Each Member has been allocated an advance of DAI 500,000 prior to arbitration, until further notice by the Authorized Members.

| Date | Description | Per Member Amount | Total Amount |
|------|-------------|-------------------|--------------|
| 2023-01-23 | Advance for Indemnified Members | DAI 500,000 | DAI 2,500,000 |

### Utilization

The Authorized Members benreed.eth and tankbottoms.eth have reviewed the relevant information and confirmed that this proposal accords with the DAO's agreement with the Service Provider, dao-lawfirm.eth for the payout of deferred legal fees.

The Authorized Members benreed.eth and tankbottoms.eth have reviewed the relevant information and confirmed that this proposal also accords with actions ratified by Members of the DAO MIP-0004 approving indemnification rights to the above mentioned Indemnified Members.

### Risks

- Authorized members may require additional indemnification funds.
- This might not be the most efficient way to accomplish the DAO's goals.
- The funds could be better used somewhere else.

------------------

## Snapshot Consensus by the DAO Members

Whereas the DAO through its Members voted to adopt the following actions via Snapshot and resolves as follows:

**RESOLVED:** That the DAO Multisig transfer of DAI 2,558,831 to the Developer Multisig (hereinafter, "Payout of Deferred Legal Fees and Indemnification Expenses") is hereby adopted and approved;

**FURTHER RESOLVED:** That the Developer Multisig shall transfer `DAI 58,831` to the account specified by the Service Provider, dao-lawfirm.eth, and that the Authorized Members are authorized to pay and reimburse expenses associated with any additional expenses of the DAO and the DAO's affiliate entities, including without limitation expenses incurred prior to the formation and/or incorporation of the entities.

**FURTHER RESOLVED:** That the Authorize Members further authorize, the Developer Multisig to transfer a total sum of `DAI 2,500,000`, a disbursement of `DAI 500,000` to each of the Indemnified Members and the account its choosing as an advance indemnification as approved in Snapshot MIP-0004, however explicitly approved prior to arbitration, until further notice by this Committee is hereby adopted and approved. Any indemnification funds that are not utilized shall be returned to the DAO.

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

**RESOLVED FURTHER: That any and all actions taken by the Authorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

---

**Authors**

1. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

# EXHIBIT 42

# Proposal for the DAO's 2023 Operational Budget

Authors: tankbottoms.eth, benreed.eth
Date: 2023-01-31

## Thesis

Transfer `DAI 5,354,433` from the Gnosis Multisig[1] to the Developer Multisig[2] to extend product development runway of the DAO, funding 12 months of product development and operations including:

- Product development and development expenses;
- Tooling, product documentation;
- Legal and accounting services;
- Branding and design work;
- Community-building, on-boarding, business development, and marketing resources;
- NFT/DAO seed funds and creation of an NFT artist/creator grant; and,
- General reimbursements of operational expenses.

1. This payout includes funds for additional development headcount to accelerate product development.
2. This payout includes funds to partially hire various headcount to support marketing, business development, and onboarding functions for the DAO.
3. This payout includes ongoing budgeted expenses borne by the DAO and Authorized Members such as travel & lodging, hosting providers, online services and other miscellaneous operational expenses.
4. This payout includes token purchases.
5. This payout includes marketing investment funds to seed the DAO with content from top NFT artist and creators, in addition to supporting the launch and growth of projects on the platform.

## Motivation

The previously approved Bootstrap Product Development, MIP-0003 expired December 31, 2022. This extends the DAO's product development runway for the rest of the year, 2023. By approving 12 months of product development, it avoids the time consuming, cumbersome, and ineffective method of managing operational costs on a month-to-month basis.

The Authorized Members were provided with a contract (between certain prior members), which in turn, they promised to the core contributors certain compensation and benefits, the expenditure of the budget was intentionally throttled to elongate the capital expenditures and ensure that the DAO could recruit and

---

[1] The DAO Multisig is a Gnosis Safe at `0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6` on the Ethereum Mainnet.
[2] The Developer Multisig is a Gnosis Safe at `0x2187e6a7c765777d50213346F0Fe519fCA706fbD` on the Ethereum Mainnet.

add talent slowly given the larger crypto market; additionally, the development engineering budget was under the Authorized Members' "direct authority" with complete "ownership of all operational decisions", including the allocation of the `DAI 1,000,000` token purchases.

## Specification

### Multisig

The Gnosis Multi-sig shall transfer `DAI 5,354,433` to developer.movedao.eth (`0x2187e6a7c765777d50213346F0Fe519fCA706fbD`), a Gnosis Safe, which has 5 of 13 signers including:

1. eth:0x818e90cDc2771385d784563173046d7759c8117f
2. eth:0x468f178672C86bFA02e5E1B0413C3ccf55A37409
3. eth:0xA5B70097650FAeC3e87AA9174A76cd78925f7ae0
4. eth:0x752515a3A1091b9f1c04416CF79D1F14d2340085
5. eth:0x5d95baEBB8412AD827287240A5c281E3bB30d27E
6. eth:0x38F83dD64DADFd871BE920422B8Cb5703a1e45a3
7. eth:0x9245D6527462b76638789A78Cec69A4C003f878d
8. eth:0xe588A90B346236fCEc4543a101CD92d01C3fFfD6
9. eth:0x0ca396c41F6548a39D1982077C119eC1479b11bf
10. eth:0x008820F8256F950836775e52571347fFD5309d2b
11. eth:0x0087F67B6b0995D3e7D21f2b94Ef92F4582868aD
12. eth:0x73255155964A09ABb91994fe0EFB8D330f10aDAA
13. eth:0xFeB18aef7a8BB0598A301274777fC9c525Ed9b98

### Proposed Budget

See the Proposed Budget, attached hereto as Exhibit A. These documents are high-level overviews and are subject to change based on product development needs. The Authorized Members intend to iterate on the budget and continually publish updates to the DAO and its community.

### Utilization

Both technical development and operations budgets shall be utilized at the discretion of the Authorized Members, benreed.eth and tankbottoms.eth, with oversight from a newly acting interim Service Provider. Newly established marketing, business development, and community functions will also be managed by the development team.

## Rationale

- This proposal provides funding to the development team, enabling them to launch and scale a suite of DAO applications and services, while continuing to ship product and feature enhancements throughout the course of this year, 2023.

2

- Funding additional business development and marketing headcount will allow the DAO to recruit and secure top Web3 projects and partnerships, NFT artists, and creator talent for the DAO's platform, helping to build momentum and grow the DAO.

## Risks

- Original budget did not include marketing, business development, and community functions.
- Original budget did not include any redemptions which may be made available.
- Certain members or large token holders have reneged on their prior promises.
- The Authorize Members may have to expend DAO resources for litigation and/or arbitration and/or indemnification.
- Transparent operation of the DAO is not certain or guaranteed.
- These funds may not be ideally distributed.
- These funds may be more useful later on.
- Additional funds may be required due to underestimation of costs.
- The DAO is delegating major responsibility by approving a budget for 12 months.

---

## Snapshot Consensus by the DAO Members

Whereas the DAO through its Members voted to adopt the following actions via Snapshot and resolves as follows:

**RESOLVED:** That the Gnosis Multisig transfer of `DAI 5,354,433` to the Developer Multisig (hereinafter, "Budget") is hereby adopted and approved;

**FURTHER RESOLVED:** That the Authorized Members are authorized to pay and reimburse expenses associated with incorporation, organization, development, engineering compensation, subscriptions, marketing, and other expenses of the DAO and the DAO's affiliate entities, including without limitation, expenses incurred prior to the approval of this budget.

**RESOLVED FURTHER:** That the Authorized Members convened and are hereby jointly and severally authorized to take any and all actions, along with executing or signing any cryptocurrency transactions, and executing and delivering any other documents, agreements, instruments, and/or certificates as he or she may deem necessary, advisable, or incidental, in connection with the preceding resolution, and other resolutions herein, or any related documents. This also includes authorization to perform or resolve the obligations of the DAO, and/or its affiliates.

**RESOLVED FURTHER: That any and all actions taken by the Au-**

3

**thorized Members to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified, and confirmed.**

This action by the Authorized Members shall be effective as of the date the DAO receives the consent of its Members via the Snapshot vote. This action by the Authorized Members may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

_____

**Authors**

1. 0x5d95baEBB8412AD827287240A5c281E3bB30d27E
2. 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c

4