UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20727-ALTMAN

RYAN BRESLOW, *et al.*,

    *Plaintiffs*,

v.

MARK PHILLIPS, *et al.*,

    *Defendants*.

_____/

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

2199176.5

**TABLE OF CONTENTS**

<u>Page</u>

I.  The Fraud Claim Has A Substantial Likelihood Of Success On The Merits ....................... 2
   A.  The Yurchak deception ................................................................................. 2
   B.  Defendants' arguments fail ........................................................................... 5
      1.  MovementDAO proposals offer no defense ............................................... 5
      2.  Movement DAO never launched ............................................................... 6
II. The Breached Duty Claim Has A Substantial Likelihood Of Success On The Merits ....................................................................................................................... 8
III. Irreparable Harm Exists ............................................................................................... 9
IV. MovementDAO, Defendants, And The Public Interest Will Not Be Prejudiced .............. 10
V.  Conclusion ................................................................................................................ 10
   CERTIFICATE OF SERVICE ............................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**OTHER STATE CASES**

*Masztal v. City of Miami*,
   971 So.2d 803 (Fla. Dist. Ct. App. 2007) ...................................................................................8

Defendants have concocted an elaborate fraud, but the cracks in the facade are plain to see. In the very limited time since Plaintiffs were confronted with this fraud, they already have exposed a cornerstone of Defendants' scheme: the "dao-lawfirm" is a fake. It is not associated with the Law Firm of Reed Yurchak, as Mr. Yurchak's testimony confirms. Dao-lawfirm is an alter ego of Defendant Phillips. To convince Plaintiffs that Defendants were building the Movement DAO in accordance with their wishes, Defendant Phillips stole Mr. Yurchak's identity: (1) he posed as Mr. Yurchak in emails to Plaintiffs; (2) he maintained a website to create the appearance that dao-lawfirm was Mr. Yurchak's firm, and (3) he made dao-lawfirm a signatory to the DAO endowment to secure additional control over the account.

This revelation also means Mr. Yurchak's firm is not the "Service Provider" as claimed in MovementDAO proposals. The proposals that passed with the Service Provider's 10 million votes were therefore fraudulent resolutions, including the adoption of MovementDAO's Guiding Principles, Terms of Service, and Code of Conduct—from which the purported authority for all other proposals stems and for which the Service Provider accounted for 99.8% of the votes. That fact decimates the "governance structure" Defendants use to justify their wrongful conduct.

The appearance of legitimacy achieved by posing as Mr. Yurchak's firm enabled Defendants to construct a corrupted structure that was far different from the Movement DAO described in the Gitbook. Instead, Defendants created a mechanism that enabled them to steal control of the DAO endowment and disable Plaintiffs' ability to disapprove the proposals that Defendants used to legitimize their theft—all while duping the Movement DAO community.

The evidence establishes Plaintiffs are entitled to a preliminary injunction. The discovery process will fully unmask this deplorable fraud.

I.      **The Fraud Claim Has A Substantial Likelihood Of Success On The Merits**

   A.   **The Yurchak deception**

Defendants make several assertions about the involvement of Reed Yurchak and his law firm in the Movement DAO project. The use of a law firm to advise on the Movement DAO project was a pillar of trust on which Plaintiffs relied. Mr. Yurchak's firm provided legal services related to the Movement DAO project,[1] and Mr. Yurchak worked with Defendants Phillips and Reed on behalf of Plaintiffs in providing guidance on the creation of the Movement DAO platform. Declaration of Reed Yurchak (March 19, 2023) ("Yurchak Decl.") ¶¶ 5–6. But Defendants exploited Mr. Yurchak's attorney-client relationship with Plaintiffs and stole his identity to advance their scheme to steal Plaintiffs' assets. This deception was seeded throughout the Movement DAO project.

Defendant Phillips posed as Mr. Yurchak to trick Plaintiffs into believing they were receiving communications from him. Gordon Decl. ¶ 8. Mr. Yurchak last billed for services relating to the Movement DAO in March 2022. Dkt. No. 24-1, Exhibit 16. Yet Plaintiff Gordon received several emails purporting to be from "Reed Yurchak" in September and October 2022 requesting he sign Movement DAO documents. Gordon Decl. ¶ 9, Exhibit A. Those emails were actually sent by m@dao-lawfirm.xyz. *Id.* Mr. Yurchak does not know the owner of that email address and has not authorized it to send emails on his behalf. Yurchak Decl. ¶ 12. Defendant Phillips maintains the domain called dao-lawfirm.xyz. Dkt. No. 43-9 ¶ 64.

---

[1] In the Movement DAO project's early stages, Plaintiffs worked through an entity called Merkaba, Inc. Declaration of Jon Gordon (March 23, 2023) ("Gordon Decl.") ¶ 5. Plaintiffs and Merkaba retained Mr. Yurchak's services to assist with the Movement DAO project. Yurchak Decl. ¶¶ 5, 7. As the project advanced, Merkaba took a less active role. Gordon Decl. ¶ 5.

Defendants represented to Plaintiffs and the DAO community that the alias dao-lawfirm.eth belonged to Mr. Yurchak's firm.[2] But those were lies: "Neither dao-lawfirm.eth nor dao-lawfirm.xyz is affiliated with [Mr. Yurchak's] law firm." Yurchak Decl. ¶ 11. Defendant Phillips controls dao-lawfirm.eth. Dkt. No. 43-9 ¶ 22 ("I created and maintained dao-lawfirm.eth."). To bolster that false association, Defendant Phillips created and maintains a website called www.dao-lawfirm.xyz that formerly listed Mr. Yurchak's firm information. Dkt. No. 7 ¶ 15; Dkt. No. 7-1, Exhibit B; Dkt. No. 43-9 ¶ 22. Mr. Yurchak's firm has no affiliation with that website. Yurchak Decl. ¶ 12.

Armed with that false association, Defendants installed their alter ego throughout the Movement DAO project. Defendant Phillips designated dao-lawfirm.eth as a signatory on the DAO endowment to surreptitiously give him more control over the account. *See* Dkt. No. 43-9 ¶ 24; Dkt. No. 24-1 ¶ 10, Exhibit 2 at 45.[3] Defendants used dao-lawfirm to legitimize their corrupt mechanisms by granting the "law firm" the power to oust community members (i.e., Plaintiffs), Dkt. No. 24-1, Exhibit 5 at 192, and by representing that the "law firm" had authored proposals, *see, e.g.*, *id.*, Exhibit 9 at 306. Mr. Yurchak's firm did not prepare, review, or endorse any MovementDAO proposals. Yurchak Decl. ¶ 10.

And, of course, Defendants used MovementDAO proposals purporting to pay dao-lawfirm to divert funds to themselves. Dkt. No. 24-1, Exhibit 9 at 302; *id.*, Exhibit 8 at 278

---

[2] *E.g.*, Declaration of Ryan Breslow (March 23, 2023) ("Breslow Decl.") ¶ 5, Gordon Decl. ¶ 7, Declaration of Alex Fine (March 23, 2023) ("Fine Decl.") ¶ 5; *see* Dkt. No. 24-1, Exhibit 9 at 302 ("dao-lawfirm.eth of the Law Offices of Reed Yurchak"); *id.*, Exhibit 12 at 365 (identifying "dao-lawfirm.eth" as "Attorney Reed Yurchak"); *id.*, Exhibit 10 at 348.

[3] Page references are to the docket page number unless otherwise indicated.

3

(August 2022 MovementDAO proposal purporting to pay dao-lawfirm.eth for "ongoing expenses").  Mr. Yurchak has billed no services since March 2022.  Dkt. No. 24-1, Exhibit 16.

But the most significant aspect of Defendants' fraud was naming dao-lawfirm as the MovementDAO's "service provider."  *Id.*, Exhibit 5 at 185 ("The initial service provider shall be dao-lawfirm.eth."); *id.,* Exhibit 10 at 348 ("dao-lawfirm.eth, as the DAO's service provider"); *id.* Exhibit 21 at 513 ("oversight from the DAO's service provider, dao-lawfirm.eth").  At that point, dao-lawfirm.eth assumed another alias: service-provider.eth.  Defendants endowed service-provider.eth with 10 million MOVE votes and used those votes to ratify MIP-0000, which purported to form MovementDAO as an unincorporated nonprofit and ratify the MovementDAO's authority to pass further proposals.  *Id.*, Exhibit 5 at 168.  That proposal passed with the Service Provider casting 99.8% of the votes, Declaration of Nicholas Bax (March 23, 2023) ("Bax Decl.") ¶ 13, but it was Defendants casting the votes, not Mr. Yurchak' firm, Yurchak Decl. ¶ 9 (firm never was service provider).

This conduct shows the depths of Defendants' fraud.  MovementDAO's formation documents were procured by Defendants' fraudulent impersonation of Mr. Yurchak.  That has significant implications for Defendants' defense that they were acting pursuant to legitimate proposals passed by MovementDAO votes.  An entity formed through fraudulent means is no entity at all.  MovementDAO is just another alter ego of Defendants, who exercise total power and control over it, and who merely pay lip service to the DAO community to cloak themselves in the appearance of propriety.  Defendants coopted and corrupted the Movement DAO project to divert DAO endowment assets to themselves.  That is the core of the fraud they perpetrated on Plaintiffs.  Plaintiffs have a substantial likelihood of success on their fraud claim.

4

B.      **Defendants' arguments fail**

Defendants argue that there can be fraud only where a promise is made with a present intent not to honor it. Dkt. No. 43 at 26. Defendant Phillips created the DAO endowment account with the sham dao-lawfirm as a signatory on January 15, 2022. Dkt. No. 43-9 ¶ 24. He assumed leadership over the Movement DAO project in February 2022. Dkt. No. 24-1, ¶ 36. Installing a fraudulent signatory into the DAO endowment account a month earlier shows that Defendant Phillips had already concocted a scheme to defraud Plaintiffs and that he had no intent to honor his charge when he rose to leadership over the project in February 2022.

Defendant Phillips claims that Plaintiffs always had possession of their DAO endowment keys. Dkt. 43-9 ¶ 24. That is inconsistent with the record. Plaintiffs requested Defendant Phillips return their keys on February 6, 2023, and he agreed on February 8, 2023. Dkt. No. 24-1 ¶ 85. Exhibit 17. He did not say then that Plaintiffs already had their keys, as he now claims. In any event, that is beside the point. He disabled Plaintiffs' voting tokens and removed Plaintiffs as signers of the DAO endowment account. Dkt. No. 24-1 ¶¶ 67, 68, 78, 92. Implicit in acting as custodian for those items was the promise not to destroy their ability to use them.

1.      **MovementDAO proposals offer no defense**

Defendants claim that their actions to disable Plaintiffs' voting tokens, remove them as signers from the DAO endowment account, and deplete the DAO endowment were authorized by MovementDAO via Snapshot proposals. The MovementDAO was formed by the fraudulent votes cast by "service-provider.eth," which Defendants falsely represented was Mr. Yurchak's firm. By posing as Mr. Yurchak's law firm to cast 99.8% of the votes to form MovementDAO, Defendants eliminated any color of authority MovementDAO could claim to function at all. A proposal that contains fraudulent statements (*i.e.,* the dao-lawfirm is Reed Yurchak) and that is

passed by a fraudulent vote (Defendants voting service-provider, not Mr. Yurchak ) has no authority.  MovementDAO does not actually exist because its formation was procured by fraud.  As such, all proposals that were ratified by MovementDAO are null and void.

### 2. Movement DAO never launched

The MovementDAO proposals offer Defendants no defense for another, independent reason:  Authority vests in proposals passed by the Movement DAO community only after the Movement DAO platform is launched—and Movement DAO never launched.  Declaration of Aidan Heintzman (March 20, 2023) ("Heintzman Decl.") ¶¶ 4–6; Breslow Decl. ¶¶ 9–20, 25; Gordon Decl. ¶¶ 9–20; Fine Decl. ¶¶ 9–20.

First, Mr. Breslow never authorized the launch of the Movement DAO project.  Breslow Decl. ¶ 10.  Defendant Phillips is Mr. Breslow's agent regarding the Movement DAO project.  Breslow Decl. ¶ 9; Gordon Decl. ¶ 10; Fine Decl. ¶ 9; *see also infra* Part II.  He could not unilaterally launch the Movement DAO without Mr. Breslow's authorization.

Second, Defendants claim MovementDAO is bound by the Gitbook.  Dkt. No. 43 at 14.  And the Gitbook states that governance decisions made by the Movement DAO community on Snapshot have authority only after the project is launched—including after $MOVE tokens are distributed.  Dkt. No. 24-1, Exhibit 2 at 47 ("*After the initial $MOVE Distribution via contributions to the endowment . . . the community will manage the remaining treasury through Snapshot.*" (emphasis added)).  The record shows that MOVE tokens were never created or distributed, Heintzman Decl. ¶ 5; Breslow Decl. ¶ 14; Gordon Decl. ¶ 14; Fine Decl. ¶ 13, and Movement DAO community member have not voted with MOVE tokens, Bax Decl. ¶¶ 6–12.  Without MOVE tokens, Movement DAO proposals ratified on Snapshot have no authority, *see*

6

Dkt. No. 24-1, Exhibit 2 at 46 ("$MOVE tokens represent the power to influence change to governance, economics, and incentives in the Movement DAO.").

Third, the Movement DAO never launched because the central feature of the project is a public-facing website with a user interface that allows social impact groups to create their own DAO. No such user interface has ever been deployed. Heintzman Decl. ¶ 4; Breslow Decl. ¶¶ 19–20; Gordon Decl. ¶¶ 19–20; Fine Decl. ¶¶ 19–20. Other ventures similar to the Movement DAO have deployed user interfaces to create projects. *See, e.g.*, Breslow Decl. ¶ 21, Exhibit A.

Fourth, the Movement DAO never launched because Defendants never built the platform described in the Gitbook. In addition to not issuing MOVE tokens or deploying a user interface, Defendants did not create a DAO endowment whose funds could not be spent (instead, they created a mechanism that siphons those funds to them), *see, e.g.*, Dkt. No. 24-1, Exhibits 25–27, and they did not deploy the DAO endowment to generate additional funds that could be used to finance the DAO's operations and social impact projects, Breslow Decl. ¶¶ 17–18; Gordon Decl. ¶¶ 17–18; Fine Decl. ¶¶ 17–18. Instead, they created a corrupt structure that gave Defendants discretion to siphon funds from the DAO endowment, Dkt. No. 24-1, Exhibit 9 at 302, and oust Plaintiffs from the community, *id.*, Exhibit 5 at 192.

Defendants' claim that the Movement DAO launched on February 2, 2022 is wrong. The only thing that occurred on that date was the *presale* of MOVE tokens. That is clear from the Gitbook, Dkt. No. 24-1, Exhibit 2 at 79–80, the webpage launched for the presale, *id.*, Exhibit 2 at 80, and the ENS name for the DAO endowment account itself: **Movement DAO: Presale**, *id.*, Exhibit 1. Text exchanges with Defendant Phillips also show that Movement DAO did not launch on February 2, 2022. Fine Decl. ¶¶ 25–26, Exhibits D & E.

7

## II.     The Breached Duty Claim Has A Substantial Likelihood Of Success On The Merits

A fiduciary relationship was created between Defendant Phillips and Plaintiffs when they placed Phillips in a position of trust by providing him custody over their keys to the DAO endowment account and their voting tokens, and when they charged Phillips to oversee the development of the Movement DAO project—and Phillips accepted those responsibilities. Dkt. No. 24-1 ¶¶ 27, 30-31, 34-39, & Exhibit 45 (Defendant Phillips causing funds to be transferred to an account he controlled pursuant to his position of trust); Dkt. No. 43-9 ¶ 53 (Defendant Phillips proposing budget for Plaintiffs' approval); *see also Masztal v. City of Miami*, 971 So.2d 803, 809 (Fla. Dist. Ct. App. 2007).

Defendant Phillips acknowledged his role as Plaintiffs' agent—including stating he owed fiduciary duties to Plaintiff Breslow. Dkt. No. 45-3 ¶¶ 7-8, Exhibit C & D (March 13, 2022: "I like just executing on Ryan and your [Plaintiff Jon Gordon's] behalf."; August 9, 2022: discussing "the seriousness of duties **specifically fiduciary** something that i take very very seriously" and seeking "to honor Ryan's wishes" (emphasis added)). Defendant Phillips could not have been acting as MovementDAO's fiduciary or agent at the time of those statements. *See* Dkt. No. 24-1, Exhibit 5 at 183 (MovementDAO formed August 31, 2022).[4]

Plaintiffs were the weaker parties who sought to benefit from Defendant Phillips's knowledge and experience. Defendant Phillips advised and counseled Plaintiffs, who were unfamiliar with how to establish a DAO, Fine Decl. ¶ 23, Exhibit B, and who relied on his SEC experience to help with compliance issues, Dkt. No. 24-1 ¶¶ 17, 18, 27. These activities

---

[4] Defendants' contention that this suit is an improper derivative action misapprehends the nature of the claims. Dkt. No. 43 at 19–21. Plaintiffs are suing Defendant Phillips for breach of a duty he owes them, not a duty he owes MovementDAO. *See* Dkt. No. 45 at 7–9. The account that Plaintiffs seek returned belongs to Plaintiffs, not MovementDAO. *See id.*

8

included Defendant Phillips determining the appropriate staff to hire, Fine Decl. ¶ 24, Exhibit C, and preparing memoranda on compliance issues facing the project; Gordon Decl. ¶ 23, Exhibit B. By January 2022, Defendant Phillips knew more about the project than anyone, Dkt. No. 24-1 ¶ 35, and Plaintiffs relied on him to use that knowledge to act in their best interests.

Defendant Phillips breached his duty to Plaintiffs in myriad ways: (1) by attempting to shift his duty of loyalty from Plaintiffs to MovementDAO, *see* Dkt. No. 43 at 19; (2) by passing proposals purporting to claim ownership over the DAO endowment and the Movement DAO project without authorization or authority, Dkt. No. 24-1, Exhibits. 18–20; (3) by depleting the DAO endowment account, *id.* ¶¶ 71-77, Exhibits 21–27; (4) by revoking Plaintiffs as signers to the DAO endowment, *id.* ¶ 68, Exhibit 18; (5) by disabling Plaintiffs' voting tokens on Snapshot.org, *id.* ¶ 67; and (6) by refusing to provide an accounting, *id.* ¶¶ 65-66, Exhibit 17. The proposals that Defendants claim authorize their actions were based on a governance structure that was formed by fraud, *see supra* Part I.A, and contrary to the Gitbook Defendant Phillips was charged with implementing, Dkt. No. 24-1 ¶ 7, Exhibit 2 at 58 ("Money in the endowment cannot be spent."). Moreover, the transfers Defendants made lack any legitimate business purpose. Dkt. No. 45 at 2–4; Gordon Decl. ¶ 7.

**III.    Irreparable Harm Exists**

Defendants ignore the case law cited by Plaintiffs that finds irreparable harm where, as here, assets are being dissipated and concealed. See Dkt. No. 43 at 28; Dkt. No. 24 at 35–37 (collecting cases). Defendants dissipated the assets they stole by making transfers to developers without invoices or contracts, Dkt. No. 45 at 2–4, converting over $500,000 DAI into cash and providing that cash to third-parties, Dkt. No. 43-9 ¶ 67, and transferring assets to individuals who did not work on the Movement DAO, Gordon Decl. ¶ 7. Defendants cannot even provide a

complete accounting of their transfers. Bax Decl. ¶¶ 14–15. Irreparable harm exists here because Defendants have concealed and dissipated DAO endowment assets.

## IV. MovementDAO, Defendants, And The Public Interest Will Not Be Prejudiced

An injunction would not put MovementDAO out of business, *see* Dkt. No. 43 at 30, because MovementDAO has no business. It hosts no social groups on its platform.[5] That is because MovementDAO has not launched—there is not even a user interface from which to start a project.[6] *See supra* Part I.B; Heintzman Decl. ¶ 4. Because Movement DAO provides no benefits to the public, an injunction would not negatively impact the public interest.

Although Defendants claim that the Gitbook governs MovementDAO, Dkt. No. 43 at 14 ("the fundamental terms governing MovementDAO as set forth in the GitBook"), they claim they will be prejudiced if they cannot spend DAO endowment funds, *id.* at 29, even though that is expressly forbidden by the Gitbook, Dkt. No. 24-1 ¶ 8, Exhibit 2 at 58 ("Money in the endowment cannot be spent."). The prejudice Defendants claim MovementDAO would suffer is manufactured and incoherent. Defendants ask the Court to let them deplete the DAO endowment, which is overwhelmingly comprised of Plaintiffs' assets, *see* Dkt. No. 45 at 7–9.[7] Plaintiffs would be far more prejudiced if an injunction does not issue.

## V. Conclusion

For the foregoing reasons, the Court should grant Plaintiffs a preliminary injunction.

---

[5] Defendants falsely claim that PeaceDAO was formed on the Movement DAO platform. Dkt. No. 43 at 12. That is inaccurate. PeaceDAO was launched on an entirely different platform called Juicebox. Breslow Decl. ¶¶ 21–25, Exhibits A & B; Heintzman Decl. ¶ 7.

[6] Defendants also point to no contracts with developers that would be impacted by an injunction; in fact, some developers appear to be abetting Defendants' fraud. *See* Dkt. No. 45 at 2–4.

[7] Defendants claim $1.7 million in the DAO endowment belongs to contributors other than Plaintiffs. Not so. $1.5 million of the sum is controlled by Plaintiff Fine. Fine Decl. ¶¶ 21–22.

10

Dated: March 23, 2023

Respectfully submitted

**SHUBIN & BASS, P.A.**
46 S.W. First Street, Third Floor
Miami, Florida 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
jshubin@shubinbass.com
jkatz@shubinbass.com

By: /s/ Jamie L. Katz
    John K. Shubin, Esquire
    Jamie L. Katz, Esquire

**ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
cberg@egcfirm.com
bkussman@egcfirm.com

By: _____
    Christopher T. Berg (*pro hac vice*)
    Benjamin J. Kussman (*pro hac vice*)

*Counsel for Plaintiffs Ryan Breslow, Alex Fine, and Jon Gordon*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by the Court's CM/ECF system on March 23, 2023 on all counsel of record.

/s/ Jamie L. Katz
Jamie L. Katz

2199176.5