UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20727-ALTMAN

RYAN BRESLOW, *et al.*,

    *Plaintiffs*,

v.

MARK PHILLIPS, *et al.*,

    *Defendants*.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF COMPLIANCE AND
RESPONSE TO ORDER TO SHOW CAUSE**

2200843.2

Defendants have failed to demonstrate good cause for failing to comply with the TRO in staggering fashion. Not only have they failed to provide a complete accounting of the February 2023 transfers, they failed to address the evidence presented by Plaintiffs that shows their transfers were fraudulent and intended to disable themselves from exercising control over the assets they stole. *See* Dkt. No. 35, 45. They have had two opportunities to address Plaintiffs' evidence. Dkt. Nos. 41, 51. Their silence is deafening. They have no invoices and no contracts supporting their transfers—only assertions that contradict the record. The Court should sanction Defendants for failing to show good cause for not complying with the TRO.

I.   **The transfers to developers are fraudulent**

2022 Operational Budget. Defendants acknowledge that *at least* $700,000 from the February 2023 transfers were distributed to third-parties for "services rendered." Dkt. No. 51-1 ¶ 6 (632,912 DAI and 41.88 ETH); *but see id.* ¶ 6 at 3–4 (discussing "deferred developer payments" made using cryptocurrency converted to cash but not specifying the amount paid to developers from that source). Defendants' notice of compliance offers no contracts or invoices to show that these payments were legitimate—no contemporaneous evidence whatsoever.

To the contrary, the evidence in the record shows that those transfers were fraudulent because all 2022 MovementDAO expenses were covered by the $1.75 million that was transferred out of the DAO endowment account in August 2022, Dkt. No. 24-1, Exhibit 8 at 278, as the budget that accompanied the proposal "authorizing" that transfer shows, *id*. at 292. That $1.75 million transfer paid for 2022 expenses, Dkt. No. 24-1 ¶¶ 37 –39, Exhibit 45, not the February 2023 transfers. Defendants are double-paying 2022 expenses to conceal their fraudulent transfers.

2200843.2

Defendants offer no invoices or contracts to support the legitimacy of any developer transfers or to show how the payments were not already covered by the August 2022 transfer of $1.75 million.

<u>Transfer to Marc Welton—18.49 ETH.</u>  Defendants claimed they paid Mr. Welton—a paralegal at Mr. Yurchak's law firm—for services rendered.  Dkt. No. 51-1 ¶ 6.  But Mr. Yurchak stated on February 6, 2023 that his firm has not provided services in connection with the Movement DAO since March 2022 and that there were no outstanding invoices since that time.  Dkt. No. 24-1 ¶ 64, Exhibit 16 at 478; Dkt. No. 48-1 ¶ 13.  Defendants offered no receipt or invoice to show the legitimacy of their transfer to Mr. Welton.

<u>Transfer to Mikhail Radin (disintermediated.eth)—322,034.67 DAI.</u>  Mr. Radin claimed in his declaration that he is paid an annual salary of $400,000 for his work with Movement DAO.  Dkt. No. 43-7 ¶ 4.  Neither he nor Defendants offered any invoices or contract to corroborate that statement.  But Plaintiffs provided invoices, and they show Mr. Radin's statement is inconsistent with the invoices submitted for his work for April ($23,000) and May 2022 ($23,000).  Dkt. No. 50 ¶ 4, Exhibits A & B.  A monthly rate of $23,000 comes out to $276,000 annually, not $400,000.  Mr. Radin further testified that he started working on the Movement DAO project on April 1, 2022—meaning he worked for 10 months by the time of the February 2, 2023 transfers, with two of those months covered by existing invoices.  At $23,000 per month for eight months, he at most was entitled to receive $184,000.

Defendants' accounting also omits the 100,000 DAI they admitted to paying Mr. Radin for services rendered in Defendant Reed's declaration of March 17, 2023.  *See* Dkt. No. 43-8 ¶¶ 16, 17 (admitting that Defendants transferred to Mr. Radin 322,034.67 DAI **and** an additional 100,000 DAI).

The transfers to Mr. Radin do not add up , and Defendants offer no invoice or contract to show the legitimacy of Mr. Radin's payments.

<u>Transfer to jango.eth—10,000 DAI</u>. Defendants transferred 10,000 DAI to jango.eth, but jango.eth never worked on the Movement DAO project. *See* Dkt. No. 48-6 ¶ 6. Defendants offered no invoice or any other record to show the legitimacy of that transaction.

\*   \*   \*

These examples show that the transfers to developers and vendors were illegitimate, and that they were intended to conceal and dissipate assets Defendants took from the DAO endowment. Such transfers cannot qualify as good cause for failing to comply with the TRO.

## II.   The failure to return cash assets lacks good cause

Defendants contend that cash holdings are somehow exempt from the TRO because returning those funds to the DAO endowment "would entail additional transaction costs and would be inconsistent with Plaintiffs' demand that cryptocurrency holdings be converted to fiat currency." Dkt. No. 51 at 9. There is no "transaction cost" exception to the TRO and Defendants' attempt to read one into the order is not good cause for failing to comply. Whatever transaction cost Defendants would face in returning assets to the DAO endowment account, the TRO commanded them to bear it.

Defendants assert that Plaintiffs' request to the Court to convert the DAO endowment assets into cash somehow supersedes Defendants' obligations under the TRO. First, Plaintiffs' request was denied. Second, no argument made by Plaintiffs excuses compliance with an unambiguous Court order. Defendants never sought clarification from the Court. They say on their hands until Plaintiffs were forced to bring an emergency motion. Defendants therefore cannot show good cause for failing to return the cash assets.

### III. The failure to account for the cash assets forecloses good cause

The reality is that the cash assets have not been returned for the same reason Defendants refused to provide this Court with an accounting of the disposition of that cash: Defendants are trying to conceal the status and whereabouts of the cash so they can benefit from their theft.

Defendants have refused to offer an accounting for what they have done with the $1,902,215.30 in cryptocurrency that they converted to cash. Defendants state only that some unidentified portion has "been used to pay expenditures authorized by MovementDAO" without describing the expenditures, to whom money was paid, or providing invoices or receipts to corroborate those expenditures. Dkt. No. 51-1 ¶ 6. This offers the Court no insight into how much has been spent on the unidentified "expenditures" and how much remains in Defendants' control. That lack of disclosure indicates that Defendants have further dissipated those assets. Defendants' failure to provide this accounting is another act in furtherance of their attempts to conceal these assets. That precludes any finding of good cause for not complying with the TRO.

Defendants admit that *at least* 1,000,000 of the 1,058,000 DAI Defendant Phillips received and the 1,414,035 DAI that Defendant Reed received (for a total of 2,472,35 DAI) from the DAO endowment were for "indemnification" expenses. Dkt. Nos. 43-9 ¶ 67, 43-8 ¶ 17. There is no accounting for indemnification expenses in Defendants' notice of compliance, *see* Dkt. No. 51-1, even though one of the February 2023 MovementDAO proposals "authorized" a 2,500,000 DAI transfer for that purpose—coincidentally nearly the exact amount directly received by Defendants. *See* Dkt. No. 24-1, Exhibit 15 at 471. Based on the record, at least $1,000,000 of these indemnification assets must still be in Defendants' control or under the control of their agents, whom they must direct to comply with the TRO. Their failure to do so shows that they do not have good cause for failing to comply with the TRO.

Defendants' failure to provide a full accounting presents the very real possibility that they are using the DAO endowment assets at issue in this case to pay for their legal defense. It is incumbent on opposing counsel to make clear to the Court that their services are not being paid with allegedly stolen funds. If opposing counsel did receive funds from the DAO endowment, they are required to return those assets, as they are subject to the TRO as much as Defendants. Defendants' failure to provide a full accounting leaves these possibilities open, and thus demonstrates why Defendants have not shown good cause for their failure to comply.

## IV.   Conclusion

The examples provided above show the fraudulent nature of Defendants' transfers to developers and underscores how Defendants have attempted to disable themselves from having control over DAO endowment assets. Their failure to provide an accounting of the assets they converted into cash shows that they are continuing to conceal the status of these funds and who else may have received them. The Court should stop the shell game and order Defendants to post a cash bond with the clerk for the remaining unreturned assets in the amount of $2,667,973.37. *See* Dkt No. 51-1 ¶ 6.

Dated:  March 27, 2023

| | |
|---|---|
| /s/ Jamie L. Katz<br>John K. Shubin, Esq.<br>Dylan M. Helfand, Esq.<br>Jamie L. Katz, Esq.<br>**SHUBIN & BASS, P.A.**<br>150 W Flagler Street, Suite 1420<br>Miami, FL 33130<br>Tel.: (305) 381-6060<br>Fax: (305) 381-9457<br>Email:  jshubin@shubinbass.com<br>         jkatz@shubinbass.com<br>         dhelfand@shubinbass.com | *(signature)*<br>Christopher T. Berg (*pro hac vice pending*)<br>Benjamin J. Kussman (*pro hac vice pending*)<br>**ELLIS GEORGE CIPOLLONE**<br>**O'BRIEN ANNAGUEY LLP**<br>2121 Avenue of the Stars, 30th Floor<br>Los Angeles, California 90067<br>(310) 274-7100<br>Email:  cberg@egcfirm.com<br>         bkussman@egcfirm.com<br><br>*Attorneys for Plaintiffs Ryan Breslow, Alex Fine, And Jon Gordon* |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by the Court's CM/ECF system on March 27, 2023 on all counsel of record.

/s/ Jamie L. Katz
Jamie L. Katz

2200843.2