UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 23-20727-CIV-RKA


```
RYAN BRESLOW, ET AL.,            . Miami, Florida
                                 . March 28, 2023
             Plaintiff,          . 3:32 p.m.
                                 .
             v.                  .
                                 .
MARK PHILLIPS, ET AL.,           .
                                 .
             Defendant.          .
. . . . . . . . . . . . . . . . .
```

- - - - -

Transcript of Preliminary Injunction Hearing had

before the Honorable Roy K. Altman,

United States District Judge.

- - - - -

Proceedings recorded by mechanical stenography, transcript
produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305) 301-3276

APPEARANCES:

For the Plaintiffs:     Christopher T. Berg, Esq.
                        Ellis George Cipollone
                          O'Brien Annaguey LLP
                        2121 Avenue of the Stars
                        30th Floor
                        Los Angeles, CA  90067

For the Defendants:     Nitoj P. Singh, Esq.
                        Dhillon Law Group Inc.
                        177 Post Street, Suite 700
                        San Francisco, CA 94108

Court Reporter:         Francine C. Salopek, RMR-CRR
                        Official Court Reporter
                        United States District Court
                        Wilkie D. Ferguson, Jr. U.S. Courthouse
                        400 N. Miami Avenue, Room 12-4
                        Miami, Florida  33128
                        (305)301-3276

                        -  -  -  -  -

| | |
|---|---|
| 1 | **<u>TUESDAY, MARCH 28, 2023, 3:32 P.M.</u>** |
| 2 | *(The Judge entered the courtroom)* |
| 3 | *(Discussion had off the record)* |
| 4 | THE COURT:  All right.  Let's call the case. |
| 5 | ROOM CLERK:  Calling case 23-20727, Breslow, |
| 6 | et al., vs. Phillips, et al. |
| 7 | Counsel, please state your appearances, starting with |
| 8 | the plaintiff. |
| 9 | MR. BERG:  Christopher Berg on behalf of Plaintiffs |
| 10 | Breslow, Fine, and Gordon. |
| 11 | THE COURT:  Good afternoon, sir. |
| 12 | MR. BERG:  Good afternoon, Your Honor. |
| 13 | MR. SINGH:  Good afternoon, Your Honor.  Nitoj Singh |
| 14 | on behalf of Defendants Mark Phillips and Ben Reed. |
| 15 | THE COURT:  Good afternoon. |
| 16 | You all may be seated. |
| 17 | All right.  We're here on the plaintiffs' motion for a |
| 18 | preliminary injunction. |
| 19 | It's your burden. |
| 20 | MR. BERG:  Yes, Your Honor. |
| 21 | Since the filing of the TRO application, plaintiffs' |
| 22 | case has only gotten stronger.  Almost every day we're finding |
| 23 | new evidence.  This case is about -- |
| 24 | THE COURT:  I think I issued a TRO, right? |
| 25 | MR. BERG:  Yes, Your Honor. |

```
 1              THE COURT:  All right.  So we're here on the
 2    preliminary injunction.
 3              MR. BERG:  Yes, Your Honor.
 4              This case is about disloyal agents.
 5              THE COURT:  I don't need argument.  I read all the
 6    briefing.  I just need evidence.
 7              MR. BERG:  Yes, Your Honor.  The evidence is,
 8    defendants' conduct regarding the Law Office of Reed Yurchak is
 9    the clearest evidence of a fraud and breach of duty.  The DAO
10    law firm, which is the purported alias of Reed Yurchak's law
11    firm --
12              THE COURT:  Where are your witnesses?
13              MR. BERG:  I'm sorry, Your Honor?
14              THE COURT:  Where are your witnesses?
15              MR. BERG:  We are relying on documentary evidence,
16    Your Honor.
17              THE COURT:  They contest every document.  They have a
18    whole -- did you read their response?  It's 32 pages.  Every
19    single thing you say in your motion they have an explanation
20    for.
21              MR. BERG:  They do not, Your Honor.  They do not have
22    an explanation for the declaration of Reed Yurchak, which
23    directly refutes their opposition.
24              THE COURT:  Okay.  Let me hear your argument about
25    Reed Yurchak's --
```

1          MR. SINGH:  Yes, Your Honor.

2          THE COURT:  -- declaration.

3          MR. SINGH:  Mr. Yurchak's declaration, as Your Honor

4   may imagine, is problematic for several reasons.  I don't know

5   if Mr. Yurchak was engaging in some clever mental gymnastics,

6   but it appears to me that he was committing simple perjury.

7          Mr. Yurchak had a long relationship with Mr. Mark

8   Phillips.  Mark used Mr. Yurchak to represent him in his

9   earlier criminal action, and thereafter Mark -- Mr. Phillips

10  worked out of Reed Yurchak's office while he was working with

11  the SEC.  And it was while he was working at the SEC that

12  plaintiffs first met Mr. Phillips.

13         Now, Mr. Phillips -- sorry -- Mr. Yurchak states in

14  his declaration:  "I have not provided services concerning

15  Movement DAO or to Merkaba since March 2022, the date of my law

16  firm's last invoice."  Well, we know that's not true.  We

17  attached to Mr. Reed's declaration, at Exhibit 30, an

18  October 2022 email stream between Mr. Reed and Mr. Yurchak

19  regarding Mr. Yurchak rendering legal services to Movement DAO

20  specifically in relation to DAO Labs.  We also attach

21  Exhibit 29 to Mr. Reed's declaration, the formation documents

22  for DAO Labs, LLC, which was created for Movement DAO by

23  Mr. Yurchak.

24         Mr. Yurchak also writes:  "I did not represent

25  Mr. Reed or Mr. Phillips in connection with the Movement DAO

1    projects."  Yet, again, we know this is not true, because we

2    attach Mr. Reed's engagement agreement with Mr. Yurchak, dated

3    January 11, 2022.

4          Mr. Yurchak also writes at paragraph 9 in his

5    declaration:  At no time did he agree to act as a service

6    provider for Movement DAO.  Except we know that Mr. Yurchak

7    agreed to serve as a service provider, because he, among other

8    things, reviewed the GitBook that identified Mr. Yurchak and

9    his firm as a service provider, both by name and by the DAO --

10          THE COURT:  How do we know he reviewed it?

11          MR. SINGH:  Your Honor, we have emails.  We haven't

12    attached them out of deference to counsel's argument that they

13    are privileged.  But I do believe that counsel has put that

14    issue -- put that matter at issue here.  And I have a sample

15    email --

16          THE COURT:  Emails between who and whom?

17          MR. SINGH:  Between Mr. Phillips and Mr. Yurchak.

18          THE COURT:  Well, what's his argument about privilege

19    there?

20          MR. BERG:  Your Honor, our argument on privilege is

21    that Mr. Phillips at the time he was corresponding with

22    Mr. Yurchak was acting as the agent on behalf of Merkaba and

23    plaintiffs.

24          THE COURT:  Haven't you put this issue directly -- you

25    just said your number one argument for this injunction is that

1   Mr. Yurchak proves that they're lying.  They're saying they

2   have emails that show that what you say about Mr. Yurchak's

3   relationship with Mr. Phillips is totally untrue.  How can you

4   block me from seeing those by asserting privilege when that's

5   the central issue you've just raised for your preliminary

6   injunction request?

7            MR. BERG:  Absolutely, Your Honor.  Happy to answer

8   that.

9            THE COURT:  Sure.

10            MR. BERG:  Mr. Phillips was acting as an agent on

11   behalf of plaintiffs, and so correspondence between Yurchak and

12   Phillips is covered by plaintiffs' privilege, that the -- it's

13   not putting at issue -- the evidence that Mr. Singh and

14   defendants need to present is evidence of an independent

15   relationship for which there is none.  The retainer agreement

16   for Benjamin Reed is not what's at issue here, because it

17   didn't cover the Movement DAO, as Mr. Yurchak explains.  The

18   critical piece of evidence that defendants need to present

19   is --

20            THE COURT:  Well, the defendants don't need to present

21   any evidence.

22            MR. BERG:  To refute Mr. Yurchak's declaration, Your

23   Honor.

24            THE COURT:  They just refuted it.  They just said

25   everything he said is untrue.  They've got a bunch of emails

1    that are later than -- let me just -- where are your witnesses?

2    Where is Mr. Breslow?  Where is Mr. -- where are they?

3              MR. BERG:  Your Honor --

4              THE COURT:  Mr. Gordon?

5              MR. BERG:  -- we've --

6              THE COURT:  You just want me to accept what they say

7    in their affidavits as true?  I can't do that.

8              This is how these preliminary injunction hearings go.

9    You bring your witnesses, I listen to them, I decide whether

10   they're telling the truth or not, then he gets to present his

11   witnesses if you've met your burden initially, and he can

12   present witnesses if he wants to, but he doesn't have to,

13   because it's not his burden.  And usually, you know, they have

14   some witnesses too, and I sit there and I listen to them.  Then

15   I decide which one I believe, and then I go through the

16   four-factor test, then I decide whether a preliminary

17   injunction, which is an extraordinary remedy, is appropriate,

18   and I rule.  But you have no witnesses.

19             MR. BERG:  Your Honor, my practice regarding

20   preliminary injunctions is that we can often rely on documents.

21   We're not simply relying --

22             THE COURT:  You can if they're not being contested.

23   But there's a whole other narrative here about chats, and

24   votes, and tokens, and permissions, and consents that were

25   given.  There's a whole other narrative that your clients

1    probably, maybe, to your mind, can come in here very easily and

2    dispose of.  They can sit here and say, Judge, here I am

3    credibly explaining, subject to cross-examination, why none of

4    the things he's explaining as his consent justification is

5    true.

6         And all -- you know, you make a big point in your

7    motion about how he's a convicted felon, he didn't work at the

8    SEC.  You said there's no way the SEC would hire a person who

9    is a convicted fraudster like that.  And your clients were

10   totally shocked to discover that -- and they didn't discover it

11   until 2023, I think -- totally shocked to discover that he was

12   a convicted felon, had no idea about that.

13        But he lays out in his affidavit that all of that is

14   total baloney.  That a bunch -- at a sushi dinner, he told your

15   clients about it.  He told your clients about it when you guys

16   were talking about drug use and interactions with law

17   enforcement.  I mean, what am I, just supposed to take your

18   clients' word for it through an affidavit?  Of course not.  So

19   all of that evidence is just a wash.  It's gone.

20        MR. BERG:  Your Honor, we're not relying solely on

21   affidavits.  There are documents --

22        THE COURT:  I know, but I'm talking about all those

23   things in the affidavits, that are so critical to your motion,

24   about the level of fraud.  I mean, so much of your motion is

25   fraud in the inducement.  This guy finagled his way into the

1    company by lying to us about his background, lying to us about

2    his criminal history, and then sort of inveigle against us by

3    coming in and tricking us into giving him tokens and votes and

4    things like that, which there's not a lot of description about

5    how that trickery occurred.  Just in the brief, it constantly

6    just says, And then he tricked us into giving him the keys to

7    the mansion, and then he tricked us into giving him the veto

8    power, and then he tricked us into this, and then he tricked us

9    into that.

10           And I figured we were going to come into court today

11   and hear from your clients about just how they were tricked,

12   and I was going to decide whether they're telling me the truth

13   or not.  And then maybe if they met their burden, we were going

14   to hear from Mr. Phillips about how he didn't trick anybody.

15           But I can't just say, Well, lawyer says this in the

16   brief, plaintiff says it in his affidavit that he was tricked,

17   I just -- he must have been tricked.  That's not how it works.

18           MR. BERG:  No, Your Honor, and that's not what we're

19   asking.  The question of privilege, if opposing counsel has

20   documentary evidence that says -- that shows that Reed Yurchak

21   is accepting the mantle of DAO law firm, you know, we welcome

22   an in camera presentation to show that to Your Honor.

23           But we've spoken with Mr. Yurchak.  He signed a --

24           THE COURT:  What he's doing is, which is fair -- I

25   mean, look, I obviously have no idea what's the truth in this

1   case, right?

2          MR. BERG:  Of course.

3          THE COURT:  This is the first time I'm seeing all of

4   you in court.  The preparation for this hearing was the first

5   time I read all of these papers on this case.

6          So here we have your claim with an affidavit from

7   Mr. Yurchak saying, I had nothing to do with these people after

8   a certain date, after March I think of 2022.  And I remember

9   reading that in the declaration.

10         Well, but he has emails, which he has attached, which

11  I have read, which, again, I don't know anything about these

12  emails, because I don't have a witness to tell me about them,

13  but they seem to suggest there's a long-standing relationship

14  both before and after March '22.  So what do I make of that?  I

15  don't know.  That's what I need witnesses for, to explain to me

16  why those emails are there and how they're relevant or not

17  relevant to your side of the story.  But it's your burden, and

18  it's an extraordinary remedy.

19         And I mean I've never had a contested preliminary

20  injunction hearing without witnesses.  I never heard of that.

21  We do these all the time.  You come in, you bring your

22  witnesses, they explain the things.  Of course they're

23  contested, because the defense has a theory.  And the defense's

24  theory either gets blasted by the witnesses or it survives the

25  witnesses.  But we don't just go on no witnesses.

```
 1            MR. BERG:  Your Honor, I understand, but that has not
 2    been my practice, and that's why we opted to go -- to rely on
 3    documentary evidence.  If you'll permit us leave, we can
 4    present witnesses for your consideration, if we have a brief
 5    postponement.
 6            THE COURT:  I have no problem with that.
 7            Any objection to that?
 8            MR. SINGH:  Your Honor, we'd ask that during the
 9    duration of the postponement, the TRO order be lifted.
10            THE COURT:  I won't grant that request.  Because I
11    made the findings of the TRO at the time which I thought were
12    appropriate, but I don't want this to be a long postponement,
13    because I think the defense's concerns are fair ones, and I
14    want us to be able to get to the bottom of this.  I don't want
15    to have a full-blown trial, but if I'm going to grant you the
16    extraordinary relief that you're seeking, I want to hear and
17    see from your witnesses, who are telling me that they've been
18    aggrieved.
19            His client is saying all kinds of things about your
20    clients, that they gave away the keys to the house willingly,
21    that they knowingly gave away their vetoes and their tokens,
22    that they voted for those MIPs, that those proposals were known
23    to them, that there was no trickery, that they're
24    sophisticated, and they knew exactly what they were getting
25    into, that they agreed to have the money locked away for
```

1    six years, and that they then went off and spent $8 million in

2    Europe, and had all this liquidity problems is because of the

3    financial turn and the banking crisis and the cryptocurrency

4    depreciation, and they had to sell their house.  And that this

5    is just another example of them realizing that, hey, they need

6    some money.

7         Now, I don't know if any of that is true, but we got

8    to hear from your clients to be able to evaluate whether that's

9    the true reason we're here or whether it's because their guy is

10   a fraudster, who's trying to do away with all your crypto money

11   that's supposed to belong to these viable organizations that

12   are going to be providing social services for the community.

13   Those are two starkly different narratives, both with

14   evidentiary support through affidavits, both affidavits

15   supported by some documentary evidence, emails and Snapshot

16   posts and things like that.  I mean I read all that.  But I'm

17   not in a position, based on the black-and-white papers, just to

18   rule on which side I think is -- that would be totally unfair

19   and unjust in my opinion.

20        So I want us to get together on a date soon to have

21   this hearing.  And I think we should allocate a whole day for

22   it.

23        So what I'm going to ask you to do is for the two of

24   you get together today, come up with a date that works for you

25   in the next couple of weeks, and give me a few dates, just

| | |
|---|---|
| 1 | because I'm busy too, and contact chambers and see if we can |
| 2 | work out a date with Brian, who's the law clerk on this case, |
| 3 | to try to schedule a full-day hearing on this issue.  Okay? |
| 4 | MR. BERG:  Yes, Your Honor.  Your Honor, if I may -- |
| 5 | THE COURT:  Sure. |
| 6 | MR. BERG:  -- if we could reach out to the Court in a |
| 7 | day or so. |
| 8 | THE COURT:  That's no problem.  How about I give you |
| 9 | to the end of the week? |
| 10 | MR. BERG:  Great.  That would be perfect. |
| 11 | MR. SINGH:  Your Honor, one question for |
| 12 | clarification. |
| 13 | THE COURT:  Sure. |
| 14 | MR. SINGH:  As the Court may have noticed, the issue |
| 15 | of privilege is going to be a big one with respect to the |
| 16 | upcoming hearing and the presentation of evidence.  And I don't |
| 17 | take lightly counsel's allegations that there are privileged |
| 18 | communications, but we do feel that it is necessary for us to |
| 19 | present communications that counsel is going to argue that are |
| 20 | privileged in our defense.  And so does the Court have any |
| 21 | guidance with respect to those communications? |
| 22 | THE COURT:  Well, he's already proposed that he's okay |
| 23 | with me reviewing them in camera, right? |
| 24 | MR. BERG:  Provided that we have advanced notice of |
| 25 | what the documents are so we can provide -- |

1          THE COURT:  Absolutely.  You know what?  I think this
2    is a good time to mention, we will treat this preliminary
3    injunction hearing like a trial.  Because the relief that
4    you're getting, if you get the relief that you're after, is the
5    relief that usually you would get only after a trial.  So there
6    needs to be a witness list filed for both sides, there needs to
7    be an exhibit list filed for both sides.  If there are
8    stipulations that the parties think make sense, in order to
9    streamline the hearing, which I hope that you do come to some
10   stipulations, maybe, 20, 30, 40 facts that you think we don't
11   need to hear a witness about, and we don't need to waste court
12   time on if there's not going to be any cross-examination on
13   that issue, let's get some stipulations drafted.  So let's have
14   stipulations.  Let's have an exhibit list.  Let's have a
15   witness list.

16          And then you'll show each other your exhibits a couple
17   weeks -- a week before the hearing, let's say, and then let's
18   say you have a hundred exhibits, you show them to the defense
19   lawyer.  The defense lawyer says, I'm okay with 90 of them.  I
20   have a hearsay objection to these five, I have a relevance
21   objection to these three, I have a privilege objection to the
22   last two.  Well, that way I know when we get to the hearing,
23   the first 90 we could just move them right into evidence, you
24   don't need any foundational questions, we don't need to argue
25   about that, they're in evidence, you can do with them what you

1  will.  The other ten, we'll argue about it when it comes to

2  that point on the hearsay, relevance, privilege objections, as

3  the case may be.

4        So, yes, to answer your question directly.  Any emails

5  that you will want to use will have to be on an exhibit list

6  and will need to be shown to him prior to the hearing.  And

7  you'll need to get his position on it, and you'll need to then,

8  on the exhibit list that you file, tell us whether he objects

9  to those exhibits or not.  So each side, in other words, will

10 file a witness list and an exhibit list.  And the exhibit list

11 will say, Here's my exhibit, Exhibit 1, Snapshot picture, and

12 it's unobjected to.  Here's Exhibit 2, email between

13 Mr. Phillips and Mr. Yurchak, and the objection is hearsay.

14 Exhibit 3, so on and so forth.

15       And each side will then have total clarity and

16 transparency about what the other side is going to be doing at

17 the hearing, what they're going to be introducing, and what the

18 other side's objections are to their evidence.  I'll rule on

19 the objections at the hearing.  Of course, if you want me to

20 review something in camera, that just means that we seal the

21 courtroom, which we can easily do.

22       Any questions about all that?

23       MR. BERG:  Yes, Your Honor.

24       THE COURT:  Go ahead.

25       MR. BERG:  I think we're maybe putting the cart before

```
 1    the horse on the privilege issue.  The concern that my clients

 2    have is that Mr. Phillips is not the holder of the privilege

 3    when he is communicating with Mr Yurchak.

 4            THE COURT:  Well, they're not the holder of the

 5    privilege either, right?

 6            MR. BERG:  Well, there's Merkaba, which is the entity

 7    they formed to be sort of the initiating --

 8            THE COURT:  Didn't that agreement end in January or

 9    February of '22?

10            MR. BERG:  I'm sorry, Your Honor?

11            THE COURT:  The independent contractor agreement, the

12    IC agreement with Merkaba?

13            MR. BERG:  No, Your Honor.  I'm talking about Merkaba

14    the entity and its engagement with Mr. Yurchak.

15            THE COURT:  Oh, its engagement with Mr. Yurchak.

16    Okay.

17            MR. BERG:  So that is a holder of the privilege, and

18    plaintiffs are also holders of a privilege.

19            THE COURT:  But that's what I'm saying, is Merkaba's

20    independent contractor agreement with Mr. Phillips, correct,

21    ended on -- what is it February of 2022?

22            MR. SINGH:  Your Honor, the Merkaba agreement ended

23    prior to the Ryan Breslow independent contractor --

24            THE COURT:  Which is what -- give me a date.

25            MR. SINGH:  So Ryan Breslow's ended on January 2nd,
```

1  Merkaba ended prior to December of 2021.

2        THE COURT:  Okay.  And when are these emails that

3  you're talking about?

4        MR. SINGH:  There are some from December of 2021

5  concerning the GitBook, and there are many thereafter through

6  2022.

7        THE COURT:  So to his point, what's the privilege by

8  Merkaba after January of 2022?

9        MR. BERG:  It's the -- Merkaba and the plaintiffs

10  represent the Movement DAO project.

11        THE COURT:  The Movement DAO he says is a separate

12  entity that has its own rights.

13        MR. BERG:  Could not be before August 2022, which was

14  the date it was formed.

15        THE COURT:  Okay.

16        MR. BERG:  Okay.  So my point is, if Mr. Phillips was

17  interacting with Mr. Yurchak on behalf of either Merkaba or

18  plaintiffs, within the scope of the representation of Yurchak

19  to plaintiffs, those materials are privileged, and the

20  privilege belongs to plaintiffs or Merkaba.  What concerns me

21  is that defendants are viewing privileged materials, held by my

22  clients, that they do not have any rights to.

23        THE COURT:  Oh, you're saying they're viewing them

24  because they --

25        MR. BERG:  They're using them to pursue this

1  litigation.

2         THE COURT:  But how can you object to their viewing it

3  when Mr. Phillips is on the emails?

4         MR. BERG:  Because he has been stripped of the rights

5  to use privileged information.  He no longer has authority by

6  plaintiffs or Merkaba.

7         THE COURT:  But the emails were shared with him in the

8  first instance.

9         MR. BERG:  Well, again, it's difficult to know what

10  emails --

11         THE COURT:  That's why I'm saying it's hard for me to

12  rule on them.  You wanted me to talk about putting the cart

13  before the horse, but I don't even know the dates of the

14  emails, I don't know what the emails say, I don't know who

15  they're between.  So we're just really talking in the abstract

16  here.  I gather there's a privilege issue that we're going to

17  have to address at some point, and I think that's fair.  But if

18  you're asking me to rule on that now, I don't know how I can do

19  that.

20         MR. BERG:  Of course not, Your Honor.  My -- unless

21  you're suggesting that because Mr. Phillips was an agent -- or

22  was on emails at one point, all privilege is waived as to

23  him --

24         THE COURT:  I'm not suggesting anything.  I'm just

25  saying -- all I was saying, which I asked you whether you had

1    any questions about, was you're going to have to file a witness

2    list listing your witnesses, so is he, you're going to have to

3    file an exhibit list listing your exhibits, so is he, you're

4    going to show each other your exhibits, and then you're going

5    to tell the other side which ones you object to and on what

6    ground.

7         MR. BERG:  Right.

8         THE COURT:  And then each of you will file a complete

9    exhibit list with your exhibits and the other side's objections

10   or nonobjections noted on that list.  At that point, we can

11   have our hearing, you call whatever witnesses you want, he can

12   cross-examine.  Then if he wants, but doesn't have to, he can

13   call witnesses, you can cross-examine, and then I will rule.

14        MR. BERG:  My point, Your Honor, is I think it might

15   be beneficial to the Court if we briefed the privilege issue.

16        THE COURT:  The problem with that is that you've got a

17   TRO pending against them right now.

18        MR. BERG:  Yes.

19        THE COURT:  They didn't get a chance, really, at this

20   point, to defend against that in a hearing.

21        MR. BERG:  Um-hum.

22        THE COURT:  And if there's briefing, that's going to

23   take a couple months.  You're going to have to spend a few

24   weeks briefing your brief, then he's going to get a couple

25   weeks to respond, then you're going to get a week to reply,

1    then I'm going to have to take a few weeks to read it and rule

2    on it and do all the research.  In the meantime, he's saying

3    that his clients are being aggrieved.  Now, I get your point

4    that that's all bogus, but I don't know that standing where I

5    am right now.

6         MR. BERG:  Our position, Your Honor, is once -- even

7    if you had access to privileged information as an agent --

8    let's talk about a paralegal at a law firm, for example, and

9    that paralegal leaves the law firm, no longer works there, the

10   paralegal is no longer entitled to view documents that they may

11   have been copied on.  Right?  Using that analogy, our concern

12   here is, defendants are in the process of using privileged

13   information held by my clients, and they are not -- they're --

14   shouldn't be invading that privilege.

15        THE COURT:  I understood that part.  But he's saying,

16   imagine that the paralegal leaves the law firm, and then months

17   later she retains the lawyer to help her with a project that

18   she's now running on her own and owes you no privilege, because

19   it's post her departure from your relationship.  That's what

20   he's suggesting.  I don't know whether that's true or not.  And

21   my point is, I'm not in a position to adjudicate that question,

22   because I have no idea about any of the specifics on the emails

23   that you're talking about.

24        What I'm saying to you is, each side will show each

25   other the exhibits.  You will then tell me which ones you

```
1   object to for hearsay or any other reason -- hopefully not
2   hearsay, because you know that's permissible in this hearing --
3   but if you think it's unreliable for some extreme reason, you
4   raise it.  If you want to raise a relevancy objection, you
5   raise it.  If you want to raise a privilege objection, you
6   raise it.  And then as to those documents that are privileged,
7   if you want to file a motion saying he should not be allowed to
8   read into the record those privileged communications, either in
9   camera or not, you're welcome to file a motion, and he can file
10  a short response.
11          But I just want to tell you that it should happen
12  quickly, because I want this hearing to happen sooner rather
13  than later.
14          MR. BERG:  Yes.  And my last point, Your Honor, in
15  that circumstance, doesn't that eviscerate the privilege?  If
16  you ultimately conclude that actually, you know what, Mark
17  Phillips was acting as an agent under the umbrella of
18  plaintiffs' privilege, and what he has done is he's prepared an
19  entire defense using his access to privileged information that
20  he shouldn't be entitled to.
21          THE COURT:  Then what?
22          MR. BERG:  That has invaded my clients' privilege.
23          THE COURT:  No, it hasn't.  Federal judges review
24  privileged materials all the time in response to objections to
25  the privilege classification.
```

```
 1              MR. BERG:  Of course, Your Honor.  But defendants are
 2      invading it, not Your Honor.
 3              THE COURT:  They've already -- according to you,
 4      they've already invaded it.  They know what those documents
 5      are, they have them, right?
 6              MR. BERG:  Yes, I think the --
 7              THE COURT:  They're on their phones, they're in their
 8      email accounts.
 9              MR. BERG:  The appropriate relief is not --
10              THE COURT:  Destroy their email accounts?
11              MR. BERG:  Destroy the privileged information or
12      return it.
13              THE COURT:  I don't know if it's privileged yet.
14              MR. BERG:  Exactly.  That's why it is difficult to
15      make these determinations in a vacuum without briefing on
16      whether -- because if it is privileged, they shouldn't be able
17      to use it.
18              THE COURT:  Did he not -- are you not listening to the
19      words that are coming out of my mouth?
20              MR. BERG:  I am, Your Honor.
21              THE COURT:  I specifically said that I will adjudicate
22      the privilege questions at or before the hearing.
23              MR. BERG:  I understand.
24              THE COURT:  But I just don't want it to take
25      six months, because you've got what he claims are
```

1   Movement DAO's and his assets locked up pursuant to the TRO,

2   which is unfair.

3        I'm not suggesting we're going to let him put in

4   documents that I ultimately decide are privileged.  I'm

5   suggesting that we need to move forward on this case in order

6   to decide whether they're privileged in the context of getting

7   this preliminary injunction adjudicated.  Does that make sense?

8        MR. BERG:  Yes, Your Honor.

9        THE COURT:  Any questions from you about what we're

10  doing?

11       MR. SINGH:  Your Honor, one scheduling question.  How

12  far in advance of the hearing would Your Honor like the witness

13  list and the exhibit list?

14       THE COURT:  Let's say one week.  I think one week.  I

15  think one week will give everybody enough time to say --

16  hopefully you all can work out some of these -- have you had a

17  meet-and-confer about the privilege issues before?

18       MR. BERG:  Not a substantive one, Your Honor.

19       THE COURT:  All right.  So this is not even something

20  that's ripe for review at all, this privilege question.

21       How many documents are you talking about that you

22  think you would want to use that he has a privilege concern

23  about?

24       MR. SINGH:  Your Honor, I think it's about a dozen.

25       THE COURT:  A dozen.  Okay.  Well, I think you got to

1    show him those documents sooner rather than later.  And we've

2    got to get moving on this thing.  Because I don't want your

3    clients to be sitting on a TRO unjustly, if that's how it ends

4    up turning out.  But at the same time, to his point, I don't

5    want to move forward unless we're all prepared to have a

6    preliminary injunction hearing at which we will review all of

7    the evidence that's appropriate to review from both sides.

8            So I'd like for you all to confer today and tomorrow,

9    if you can, on a date, and to work on a schedule for showing

10   each other your exhibits, and maybe getting some quick briefing

11   on some of those exhibits, and maybe even some stipulations.

12   Maybe you show them to him, and you realize -- because this

13   happens all the time -- actually, there's only eight that we

14   want to use, or nine.  And then he looks at them and says,

15   well, maybe two of them I'm fine with, so there's really only

16   six or seven.  You get my point.  Narrow the issues, especially

17   when we get to witnesses and stipulated facts, please.  Do your

18   homework in advance.  Don't come here with a witness that then

19   the other side's, I don't need to cross-examine this witness, I

20   agree with everything he said.

21           So let's just be clear that we're showing each other

22   our witnesses, showing each other our evidence, so that we can

23   present only the streamlined issues that require judicial

24   intervention.  Okay?

25           MR. BERG:  One last issue, Your Honor.

```
 1              THE COURT:  Sure.
 2              MR. BERG:  I wanted to use this time to address the
 3    notice of compliance that defendants filed.
 4              THE COURT:  Sure.
 5              MR. BERG:  We still do not have an accounting for what
 6    defendants have done with the cryptocurrency they converted
 7    into cash.  The notice was very, very vague on that point.
 8              THE COURT:  I agree with that.
 9              MR. BERG:  And we also have presented, in two
10    different briefs, evidence that suggests that transfers were
11    fraudulent to developers and vendors.  Again, no response to
12    the notice of compliance about that.  So our view is that good
13    cause for not following the TRO has not been shown, and we
14    wanted to raise that issue with you here.
15              THE COURT:  All right.  So what happened to the cash?
16              MR. SINGH:  Your Honor, I don't have that accounting
17    in front of me, but I know that some of it was used to pay
18    common business expenses.  DAO Labs is a functioning LLC, and
19    it has business expenses.
20              Some of the cash was used to pay for attorneys' fees
21    and for -- pursuant to indemnification --
22              THE COURT:  Attorneys' fees to whom?
23              MR. SINGH:  To my firm, Your Honor, and I believe
24    another lawyer as well.
25              THE COURT:  What's the other lawyer?
```

```
 1           MR. SINGH:  The other lawyer's name is Daniel
 2   Resnick-Neillie.  He's a California barred attorney, and he's
 3   also assumed the DAO-lawfirm.eth address.
 4           THE COURT:  Okay.  And what is his role in this case,
 5   if any?
 6           MR. SINGH:  He is counsel to Mr. Mark Phillips
 7   individually.
 8           THE COURT:  As part of this litigation or just
 9   generally speaking?
10           MR. SINGH:  Generally speaking, and he's also
11   consulting in relation to this litigation.
12           THE COURT:  Okay.  And so what are the -- do we know
13   what the total amounts of those lawyer payments are?
14           MR. SINGH:  I do not know off the top of my head, Your
15   Honor.
16           THE COURT:  How much is missing in cash on the
17   accounting to your view?
18           MR. BERG:  I believe it's in the tune of two million.
19           THE COURT:  You think it's about two million what you
20   were paid and Mr. Neillie were paid?
21           MR. SINGH:  Far less than that, Your Honor.
22           THE COURT:  Unfortunately for the two of you.  So that
23   doesn't answer the question.
24           MR. SINGH:  I'm happy to go back to my clients and
25   provide a cash accounting.
```

```
 1            THE COURT:  I'm concerned about this.  Tell your

 2    clients that I'm concerned about it.

 3            MR. SINGH:  Will do, Your Honor.

 4            THE COURT:  And if -- when we get to the hearing --

 5    this is what I said in my paperless order -- I thought this was

 6    going to happen today, but there are no witnesses -- when we

 7    get to the hearing, I am going to consider sanctioning your

 8    clients if I find that the answers to these questions, which

 9    were clearly raised in their requests, are not answered to my

10    satisfaction.  Was I clear about that?

11            MR. SINGH:  Yes, Your Honor, perfectly clear.

12            THE COURT:  And I think that, you know, they can show

13    up or not, but if they don't show up at the preliminary

14    injunction hearing when we have it, then we're only going to

15    have their side of the story on these things, unless you have a

16    very detailed accounting as to where these monies were spent.

17            I assume you think that the DAO Labs payments is just

18    a front.

19            MR. BERG:  This is the first time I've heard of it.

20            THE COURT:  Okay.  So you don't have a view of it one

21    way or the other.

22            Well, I think that in order to streamline that issue,

23    because I can see already it's going to be a big issue at the

24    time of the preliminary injunction hearing, you're going to

25    want to show him all of these accountings with respect to where
```

1   that money was spent, whether it's to the lawyers, whether it's

2   to DAO Labs business expenses, or whatever else so that we can

3   all be on the same page about where that money went.

4          I do not want to find that after the TRO was entered,

5   money was disbursed in violation of the TRO.  That would be

6   very bad for your client.

7          MR. SINGH:  Yes, Your Honor.  My clear instructions to

8   the clients were to not move those funds --

9          THE COURT:  I believe that.  That's not what I'm

10  suggesting.  But we need to be clear that they're not doing

11  that despite your advice.

12         MR. SINGH:  Understood, Your Honor.

13         THE COURT:  Okay.  Anything else, then, from the

14  plaintiff?

15         MR. BERG:  One question, Your Honor.  The nature of

16  some of the witnesses in this cryptocurrency space, they

17  operate using aliases, and we have found that it's been

18  difficult to get these folks to sign declarations and perhaps

19  appear as witnesses, because they don't want to reveal their

20  identities to the public.  If -- would the Court be amenable to

21  sealing the courtroom when those witnesses take the stand?

22         THE COURT:  I don't have a problem with that unless

23  you have a problem with it.

24         MR. SINGH:  No problem with that, Your Honor.

25         THE COURT:  All right.  Who are you talking about?  I

1  meant that I wanted to hear from Mr. Breslow and maybe

2  Mr. Gordon and maybe Mr. Phillips and Mr. Reed, but if you

3  have -- and maybe Mr. Yurchak, but who --

4          MR. BERG:  So, for example, Jango.eth, he is a

5  recipient of $10,000 -- 10,000 DAI for his work on the

6  Movement DAO project.  He's never worked on the Movement DAO

7  project.

8          THE COURT:  Understood.  And you know who he is, but

9  he doesn't want the world to know who he is.

10          MR. BERG:  Correct.

11          THE COURT:  Got it.

12          MR. BERG:  I actually don't know who he is.

13          THE COURT:  Oh, okay.

14          MR. BERG:  But my clients have -- do know who he is.

15  They've spoken to him.  And there are good reasons for keeping

16  an alias like this.  So if it's permissible by the Court,

17  that's how we'd like to approach it.

18          THE COURT:  That's no problem with me.

19          MR. BERG:  In terms of in the future, if we have

20  affidavits, it would be helpful to get participation from some

21  of these witnesses, if we could have the Court's assurance that

22  those would be allowed to be filed under seal as well.

23          THE COURT:  Well, you have got to file a motion to

24  file something under seal.

25          MR. BERG:  Of course, of course.  I just wanted to

1    preview for the Court that -- basically, I want to preview for

2    the Court that this is the type of request that might be coming

3    down the pike.  Witnesses are not willing to provide

4    declarations without that type of assurance.

5              THE COURT:  I appreciate that.  I didn't know that.  I

6    appreciate that.  But I just want to be clear.  I'm not giving

7    a blanket under seal order right now.

8              MR. BERG:  Of course.

9              THE COURT:  The way CM/ECF works, as you probably

10   know, is in order to get access to file something under seal --

11   and, actually, our Court just voted on this, so you may not be

12   aware of it -- you will no longer have permission to file

13   something under seal unless it is precipitated by a motion to

14   file under seal and an order granting your permission to file

15   that specific document under seal.  So even if I wanted to give

16   you access right now, I couldn't.  But any motion that you want

17   to file under seal, you'll need to confer with them, I assume

18   they won't have a problem with that, and you'll file an

19   unopposed motion to file the motion under seal or the affidavit

20   under seal, it will be granted, and then CM/ECF will give you

21   access to that filing.

22             MR. BERG:  Thank you, Your Honor.

23             THE COURT:  Anything else from the plaintiff?

24             MR. BERG:  No, sir.

25             THE COURT:  Anything else from the defense?

1      MR. SINGH:  No, Your Honor.

2      THE COURT:  All right, folks.  So you got your

3 instructions.  Any questions about that, please don't hesitate

4 to call.  But by the end of the week, please call chambers or

5 email chambers and give us some dates that work for you in the

6 next -- I guess probably in the next month, let's say, and

7 we'll go from there.  Okay?

8      MR. BERG:  Thank you, Your Honor.

9      THE COURT:  All right, folks.  Have a good day.

10      MR. SINGH:  Thank you, Your Honor.

11      *(The Judge exited the courtroom)*

12      *(Proceedings concluded at 4:08 p.m.)*

13                    -  -  -  -  -

14

15

16

17

18            C E R T I F I C A T E

19      I hereby certify that pursuant to Section 753,

20 Title 28, United States Code, the foregoing is a true and

21 correct transcript from the record of proceedings in the

22 above-entitled matter.

23

    /s/Francine C. Salopek_____      3-30-2023_____
24 Francine C. Salopek, RMR-CRR              Date
   Official Court Reporter
25

**MR. BERG: [70]**
**MR. SINGH: [28]**
**ROOM CLERK: [1]** 3/5
**THE COURT: [96]**

**$**

**$10,000 [1]** 30/5
**$8 [1]** 13/1
**$8 million [1]** 13/1

**'**

**'22 [2]** 11/14 17/9

**/**

**/s/Francine [1]** 32/23

**1**

**10,000 [1]** 30/5
**11 [1]** 6/3
**12-4 [1]** 2/10
**177 [1]** 2/6

**2**

**20 [1]** 15/10
**2021 [2]** 18/1 18/4
**2022 [8]**
**2023 [4]** 1/7 3/1 9/11 32/23
**20727 [1]** 3/5
**2121 [1]** 2/3
**23-20727 [1]** 3/5
**23-20727-CIV-RKA [1]** 1/4
**28 [3]** 1/7 3/1 32/20
**29 [1]** 5/21
**2nd [1]** 17/25

**3**

**3-30-2023 [1]** 32/23
**30 [2]** 5/17 15/10
**301-3276 [1]** 2/11
**305 [1]** 2/11
**30th [1]** 2/4
**32 [1]** 4/18
**3276 [1]** 2/11
**33128 [1]** 2/10
**3:32 [2]** 1/8 3/1

**4**

**40 [1]** 15/10
**400 [1]** 2/10
**4:08 [1]** 32/12

**7**

**700 [1]** 2/6
**753 [1]** 32/19

**9**

**90 [1]** 15/19 15/23
**90067 [1]** 2/4
**94108 [1]** 2/7

**A**

**above [1]** 32/22

**above-entitled [1]** 32/22
**Absolutely [2]** 7/7 15/1
**abstract [1]** 19/15
**accept [1]** 8/6
**accepting [1]** 10/21
**access [5]** 21/7 22/19 31/10 31/16
31/21
**according [1]** 23/3
**accounting [5]** 26/5 26/16 27/17
27/25 28/16
**accountings [1]** 28/25
**accounts [2]** 23/8 23/10
**act [1]** 6/5
**acting [3]** 6/22 7/10 22/17
**action [1]** 5/9
**address [3]** 19/17 26/2 27/3
**adjudicate [2]** 21/21 23/21
**adjudicated [1]** 24/7
**advance [2]** 24/12 25/18
**advanced [1]** 14/24
**advice [1]** 29/11
**affidavit [5]** 9/13 9/18 10/16 11/6
31/19
**affidavits [6]** 8/7 9/21 9/23 13/14
13/14 30/20
**afternoon [4]** 3/11 3/12 3/13 3/15
**agent [5]** 6/22 7/10 19/21 21/7 22/17
**agents [1]** 4/4
**aggrieved [2]** 12/18 21/3
**agree [2]** 6/5 25/20 26/8
**agreement [7]**
**al [3]** 1/7 1/10 3/6
**al., [1]** 3/6
**alias [2]** 4/10 30/16
**aliases [1]** 29/17
**allegations [1]** 14/17
**allocate [1]** 13/21
**allowed [2]** 22/7 30/22
**Almost [1]** 3/22
**Altman [1]** 1/15
**amenable [1]** 29/20
**amounts [1]** 27/13
**analogy [1]** 21/11
**Angeles [1]** 2/4
**Annaguey [1]** 2/3
**answer [3]** 7/7 16/4 27/23
**answers [1]** 28/8
**appearances [2]** 2/1 3/7
**application [1]** 3/21
**appreciate [2]** 31/5 31/6
**approach [1]** 30/17
**argue [3]** 14/19 15/24 16/1
**argument [6]** 4/5 4/24 6/12 6/18 6/20
6/25
**asserting [1]** 7/4
**assets [1]** 24/1
**assume [2]** 28/17 31/17
**assumed [1]** 27/3
**assurance [2]** 30/21 31/4
**attach [2]** 5/20 6/2
**attached [3]** 5/17 6/12 11/10
**attorney [1]** 27/2
**attorneys' [2]** 26/20 26/22

**August [1]** 18/13
**authority [1]** 19/5
**Avenue [2]** 2/3 2/10
**aware [1]** 31/12

**B**

**background [1]** 10/1
**baloney [1]** 9/14
**banking [1]** 13/3
**barred [1]** 27/2
**believe [5]** 6/13 8/15 26/23 27/18
29/9
**belong [1]** 13/11
**belongs [1]** 18/20
**Ben [1]** 3/14
**beneficial [1]** 20/15
**Benjamin [1]** 7/16
**Berg [2]** 2/2 3/9
**black [1]** 13/17
**blanket [1]** 31/7
**blasted [1]** 11/24
**block [1]** 7/4
**blown [1]** 12/15
**bogus [1]** 21/4
**bottom [1]** 12/14
**breach [1]** 4/9
**BRESLOW [6]** 1/7 3/5 3/10 8/2 17/23
30/1
**Breslow's [1]** 17/25
**Brian [1]** 14/2
**brief [4]** 10/5 10/16 12/4 20/24
**briefed [1]** 20/15
**briefing [5]** 4/6 20/22 20/24 23/15
25/10
**briefs [1]** 26/10
**bunch [2]** 7/25 9/14
**burden [5]** 3/19 8/11 8/13 10/13
11/17
**business [3]** 26/18 26/19 29/2
**busy [1]** 14/1

**C**

**CA [2]** 2/4 2/7
**California [1]** 27/2
**call [5]** 3/4 20/11 20/13 32/4 32/4
**Calling [1]** 3/5
**camera [4]** 10/22 14/23 16/20 22/9
**cart [2]** 16/25 19/12
**cash [5]** 26/7 26/15 26/20 27/16
27/25
**cause [1]** 26/13
**central [1]** 7/5
**certify [1]** 32/19
**chambers [3]** 14/1 32/4 32/5
**chance [1]** 20/19
**chats [1]** 8/23
**Christopher [2]** 2/2 3/9
**Cipollone [1]** 2/2
**circumstance [1]** 22/15
**CIV [1]** 1/4
**claim [1]** 11/6
**claims [1]** 23/25
**clarification [1]** 14/12

**C**

**clarity [1]**  16/15
**classification [1]**  22/25
**clear [6]**  25/21 28/10 28/11 29/7 29/10 31/6
**clearest [1]**  4/9
**clerk [1]**  14/2
**clever [1]**  5/5
**client [2]**  12/19 29/6
**clients [17]**
**clients' [2]**  9/18 22/22
**CM [2]**  31/9 31/20
**CM/ECF [2]**  31/9 31/20
**Code [1]**  32/20
**committing [1]**  5/6
**common [1]**  26/18
**communicating [1]**  17/3
**communications [4]**  14/18 14/19 14/21 22/8
**community [1]**  13/12
**company [1]**  10/1
**complete [1]**  20/8
**compliance [2]**  26/3 26/12
**computer [1]**  1/24
**concern [3]**  17/1 21/11 24/22
**concerned [2]**  28/1 28/2
**concerning [2]**  5/14 18/5
**concerns [2]**  12/13 18/20
**conclude [1]**  22/16
**concluded [1]**  32/12
**conduct [1]**  4/8
**confer [3]**  24/17 25/8 31/17
**connection [1]**  5/25
**consent [1]**  9/4
**consents [1]**  8/24
**consideration [1]**  12/4
**constantly [1]**  10/5
**consulting [1]**  27/11
**contact [1]**  14/1
**contest [1]**  4/17
**contested [3]**  8/22 11/19 11/23
**context [1]**  24/6
**contractor [3]**  17/11 17/20 17/23
**converted [1]**  26/6
**convicted [3]**  9/7 9/9 9/12
**copied [1]**  21/11
**correspondence [1]**  7/11
**corresponding [1]**  6/21
**counsel [5]**  3/7 6/13 10/19 14/19 27/6
**counsel's [2]**  6/12 14/17
**court [17]**
**Court's [1]**  30/21
**Courthouse [1]**  2/9
**courtroom [4]**  3/2 16/21 29/21 32/11
**cover [1]**  7/17
**covered [1]**  7/12
**created [1]**  5/22
**credibly [1]**  9/3
**criminal [2]**  5/9 10/2
**crisis [1]**  13/3
**critical [2]**  7/18 9/23
**cross [5]**  9/3 15/12 20/12 20/13

25/19
**cross-examination [2]**  9/3 15/12
**cross-examine [3]**  20/12 20/13 25/19
**CRR [2]**  2/8 32/24
**crypto [1]**  13/10
**cryptocurrency [3]**  13/3 26/6 29/16

**D**

**DAI [1]**  30/5
**Daniel [1]**  27/1
**DAO [19]**
**DAO Labs [5]**  5/20 5/22 26/18 28/17 29/2
**DAO's [1]**  24/1
**DAO-lawfirm.eth [1]**  27/3
**date [9]**
**dated [1]**  6/2
**dates [3]**  13/25 19/13 32/5
**December [2]**  18/1 18/4
**decide [6]**  8/9 8/15 8/16 10/12 24/4 24/6
**declaration [9]**
**declarations [2]**  29/18 31/4
**defend [1]**  20/20
**Defendant [1]**  1/11
**defendants [10]**
**defendants' [1]**  4/8
**defense [6]**  11/23 14/20 15/18 15/19 22/19 31/25
**defense's [2]**  11/23 12/13
**deference [1]**  6/12
**departure [1]**  21/19
**depreciation [1]**  13/4
**description [1]**  10/4
**despite [1]**  29/11
**Destroy [2]**  23/10 23/11
**detailed [1]**  28/16
**determinations [1]**  23/15
**developers [1]**  26/11
**Dhillon [1]**  2/6
**difficult [3]**  19/9 23/14 29/18
**dinner [1]**  9/14
**directly [3]**  4/23 6/24 16/4
**disbursed [1]**  29/5
**discover [3]**  9/10 9/10 9/11
**Discussion [1]**  3/3
**disloyal [1]**  9/4
**dispose [1]**  9/2
**DISTRICT [4]**  1/1 1/2 1/16 2/9
**DIVISION [1]**  1/3
**document [2]**  4/17 31/15
**documentary [4]**  4/15 10/20 12/3 13/15
**documents [10]**
**dozen [2]**  24/24 24/25
**drafted [1]**  15/13
**drug [1]**  9/16
**duration [1]**  12/9
**duty [1]**  4/9

**E**

**easily [2]**  9/1 16/21
**ECF [2]**  31/9 31/20

**eight [1]**  25/13
**Ellis [1]**  2/2
**email [4]**  5/18 6/15 16/12 23/8 23/10 32/5
**emails [17]**
**enforcement [1]**  9/17
**engagement [3]**  6/2 17/14 17/15
**engaging [1]**  5/5
**entitled [3]**  21/10 22/20 32/22
**entity [3]**  17/6 17/14 18/12
**especially [1]**  25/16
**Esq [2]**  2/2 2/5
**et [4]**  1/7 1/10 3/6 3/6
**et al [1]**  3/6
**et al., vs. Phillips [1]**  3/6
**Europe [1]**  13/2
**evaluate [1]**  13/8
**everybody [1]**  24/15
**evidence [20]**
**evidentiary [1]**  13/14
**eviscerate [1]**  22/15
**examination [2]**  9/3 15/12
**examine [3]**  20/12 20/13 25/19
**exhibit [15]**
**Exhibit 1 [1]**  16/11
**Exhibit 2 [1]**  16/12
**Exhibit 29 [1]**  5/21
**Exhibit 3 [1]**  16/14
**Exhibit 30 [1]**  5/17
**exhibits [9]**
**exited [1]**  32/11
**expenses [3]**  26/18 26/19 29/2
**explain [2]**  11/15 11/22
**explaining [2]**  9/3 9/4
**explains [1]**  7/17
**explanation [2]**  4/19 4/22
**extraordinary [3]**  8/17 11/18 12/16
**extreme [1]**  22/3

**F**

**factor [1]**  8/16
**facts [2]**  15/10 25/17
**February [2]**  17/9 17/21
**Federal [1]**  22/23
**fees [2]**  26/20 26/22
**felon [2]**  9/7 9/12
**Ferguson [1]**  2/9
**figured [1]**  10/10
**file [17]**
**filed [4]**  15/6 15/7 26/3 30/22
**filing [2]**  3/21 31/21
**finagled [1]**  9/25
**financial [1]**  13/3
**findings [2]**  12/11
**fine [2]**  3/10 25/15
**firm [8]**
**firm's [1]**  5/16
**Floor [1]**  2/4
**FLORIDA [3]**  1/2 1/7 2/10
**folks [3]**  29/18 32/2 32/9
**foregoing [1]**  32/20
**formation [1]**  5/21
**foundational [1]**  15/24

**F**

**four-factor [1]** 8/16
**Francine [3]** 2/8 32/23 32/24
**Francisco [1]** 2/7
**fraud [3]** 4/9 9/24 9/25
**fraudster [2]** 9/9 13/10
**fraudulent [1]** 26/11
**front [2]** 26/17 28/18
**full-blown [1]** 12/15
**full-day [1]** 14/3
**functioning [1]** 26/18
**funds [1]** 29/8

**G**

**gather [1]** 19/16
**George [1]** 2/2
**gets [2]** 8/10 11/24
**GitBook [2]** 6/8 18/5
**Gordon [3]** 3/10 8/4 30/2
**gotten [1]** 3/22
**grant [2]** 12/10 12/15
**granted [1]** 31/20
**granting [1]** 31/14
**Great [1]** 14/10
**ground [1]** 20/6
**Group [1]** 2/6
**guidance [1]** 14/21
**gymnastics [1]** 5/5

**H**

**happy [2]** 7/7 27/24
**head [1]** 27/14
**hear [7]**
**heard [2]** 11/20 28/19
**hearing [24]**
**hearings [1]** 8/8
**hearsay [5]** 15/20 16/2 16/13 22/1
22/2
**help [1]** 21/17
**helpful [1]** 30/20
**Here's [2]** 16/11 16/12
**hereby [1]** 32/19
**hesitate [1]** 32/3
**hey [1]** 13/5
**hire [1]** 9/8
**history [1]** 10/2
**holder [3]** 17/2 17/4 17/17
**holders [1]** 17/18
**homework [1]** 25/18
**Honor [56]**
**Honorable [1]** 1/15
**hope [1]** 15/9
**hopefully [2]** 22/1 24/16
**horse [2]** 17/1 19/13
**house [2]** 12/20 13/4
**hum [1]** 20/21
**hundred [1]** 15/18

**I**

**I'd [1]** 25/8
**I'll [1]** 16/18
**I'm [25]**
**I've [2]** 11/19 28/19

**IC [1]** 17/12
**idea [3]** 9/12 10/25 21/22
**identified [1]** 6/8
**identities [1]** 29/20
**imagine [2]** 5/4 21/16
**in camera [1]** 10/22
**Inc [1]** 2/6
**indemnification [1]** 26/21
**independent [4]** 7/14 17/11 17/20
17/23
**individually [1]** 27/7
**inducement [1]** 9/25
**information [5]** 19/5 21/7 21/13
22/19 23/11
**initially [1]** 8/11
**initiating [1]** 17/7
**injunction [13]**
**injunctions [1]** 8/20
**instance [1]** 19/8
**instructions [2]** 29/7 32/3
**interacting [1]** 18/17
**interactions [1]** 19/16
**intervention [1]** 25/24
**introducing [1]** 16/17
**invaded [2]** 22/22 23/4
**invading [2]** 21/14 23/2
**inveigle [1]** 10/2
**invoice [1]** 5/16
**issue [16]**
**issued [1]** 3/24
**issues [3]** 24/17 25/16 25/23

**J**

**Jango.eth [1]** 30/4
**January [4]** 6/3 17/8 17/25 18/8
**January 11 [1]** 6/3
**January 2nd [1]** 17/25
**Jr [1]** 2/9
**Judge [4]** 1/16 3/2 9/2 32/11
**judges [1]** 22/23
**judicial [1]** 25/23
**justification [1]** 9/4

**K**

**keeping [1]** 30/15
**keys [2]** 10/6 12/20
**kinds [1]** 12/19
**knowingly [1]** 12/21

**L**

**Labs [5]** 5/20 5/22 26/18 28/17 29/2
**law [11]**
**lawfirm.eth [1]** 27/3
**lawyer [7]**
**lawyer's [1]** 27/1
**lawyers [1]** 29/1
**lays [1]** 9/13
**leave [1]** 12/3
**leaves [2]** 21/9 21/16
**legal [1]** 5/19
**lifted [1]** 12/9
**lightly [1]** 14/17
**liquidity [1]** 13/2

**list [15]**
**listen [2]** 8/9 8/14
**listening [1]** 23/18
**litigation [3]** 19/1 27/8 27/11
**LLC [2]** 5/22 26/18
**LLP [1]** 2/3
**locked [2]** 12/25 24/1
**long-standing [1]** 11/13
**Los [1]** 2/4
**lying [3]** 7/1 10/1 10/1

**M**

**mansion [1]** 10/7
**mantle [1]** 10/21
**March [5]** 1/7 3/1 5/15 11/8 11/14
**March '22 [1]** 11/14
**MARCH 28 [1]** 3/1
**MARK [7]**
**materials [3]** 18/19 18/21 22/24
**matter [2]** 6/14 32/22
**mean [5]** 9/17 9/24 10/25 11/19
13/16
**means [1]** 16/20
**meant [1]** 30/1
**meantime [1]** 21/2
**mechanical [1]** 1/24
**meet [1]** 24/17
**mental [1]** 5/5
**Merkaba [12]**
**Merkaba's [1]** 17/19
**MIAMI [4]** 1/3 1/7 2/10 2/10
**million [3]** 13/1 27/18 27/19
**MIPs [1]** 12/22
**missing [1]** 27/16
**money [6]** 12/25 13/6 13/10 29/1
29/3 29/5
**monies [1]** 28/16
**month [1]** 32/6
**months [3]** 20/23 21/16 23/25
**motion [12]**
**mouth [1]** 23/19
**move [4]** 15/23 24/5 25/5 29/8
**Movement [11]**
**Movement DAO [10]**
**Movement DAO's [1]** 24/1
**moving [1]** 25/2
**Mr [2]** 8/2 17/3
**Mr Yurchak [1]** 17/3
**Mr. [56]**
**Mr. Breslow [2]** 8/2 30/1
**Mr. Gordon [2]** 8/4 30/2
**Mr. Mark [2]** 5/7 27/6
**Mr. Neillie [1]** 27/20
**Mr. Phillips [16]**
**Mr. Reed [3]** 5/18 5/25 30/2
**Mr. Reed's [3]** 5/17 5/21 6/2
**Mr. Singh [1]** 7/13
**Mr. Yurchak [23]**
**Mr. Yurchak's [3]** 5/3 7/2 7/22

**N**

**name [2]** 6/9 27/1
**narrative [2]** 8/23 8/25

**N**

narratives **[1]** 13/13
Narrow **[1]** 25/16
nature **[1]** 29/15
necessary **[1]** 14/18
Neillie **[2]** 27/2 27/20
nine **[1]** 25/14
Nitoj **[2]** 2/5 3/13
none **[2]** 7/15 9/3
nonobjections **[1]** 20/10
noted **[1]** 20/10
notice **[4]** 14/24 26/3 26/7 26/12
noticed **[1]** 14/14
number **[1]** 6/25

**O**

O'Brien **[1]** 2/3
object **[3]** 19/2 20/5 22/1
objection **[7]**
objections **[5]** 16/2 16/18 16/19 20/9
22/24
objects **[1]** 16/8
October **[1]** 5/18
October 2022 **[1]** 5/18
office **[2]** 4/8 5/10
Official **[2]** 2/8 32/24
Oh **[3]** 17/15 18/23 30/13
one week **[1]** 24/15
operate **[1]** 29/17
opinion **[1]** 13/19
opposing **[1]** 10/19
opposition **[1]** 4/23
opted **[1]** 12/2
order **[8]**
organizations **[1]** 13/11
owes **[1]** 21/18

**P**

p.m **[3]** 1/8 3/1 32/12
page **[1]** 29/3
pages **[1]** 4/18
paperless **[1]** 28/5
papers **[2]** 11/5 13/17
paragraph **[1]** 6/4
paragraph 9 **[1]** 6/4
paralegal **[4]** 21/8 21/9 21/10 21/16
part **[2]** 21/15 27/8
participation **[1]** 30/20
parties **[1]** 15/8
pay **[2]** 26/17 26/20
payments **[2]** 27/13 28/17
pending **[1]** 20/17
people **[1]** 11/7
perfect **[1]** 14/10
perfectly **[1]** 28/11
perhaps **[1]** 29/18
perjury **[1]** 5/6
permissible **[2]** 22/2 30/16
permission **[2]** 31/12 31/14
permissions **[1]** 8/24
permit **[1]** 12/3
person **[1]** 9/8
PHILLIPS **[23]**

phones **[1]** 23/7
picture **[1]** 16/11
piece **[1]** 7/18
pike **[1]** 31/3
plaintiff **[5]** 1/8 3/8 10/16 29/14 31/23
plaintiffs **[11]**
plaintiffs' **[4]** 3/17 3/21 7/12 22/18
point **[15]**
position **[4]** 13/17 16/7 21/6 21/21
post **[2]** 2/6 21/19
postponement **[3]** 12/5 12/9 12/12
posts **[1]** 13/16
power **[1]** 10/8
practice **[2]** 8/19 12/2
precipitated **[1]** 31/13
preliminary **[13]**
preparation **[1]** 11/4
prepared **[2]** 22/18 25/5
present **[8]**
presentation **[2]** 10/22 14/16
presented **[1]** 26/9
preview **[2]** 31/1 31/1
privilege **[29]**
privileged **[17]**
problem **[8]**
problematic **[1]** 5/4
problems **[1]** 13/2
proceedings **[3]** 1/24 32/12 32/21
process **[1]** 21/12
produced **[1]** 1/24
project **[4]** 18/10 21/17 30/6 30/7
projects **[1]** 6/1
proposals **[1]** 12/22
proposed **[1]** 14/22
proves **[1]** 7/1
provide **[3]** 14/25 27/25 31/3
provided **[2]** 5/14 14/24
provider **[3]** 6/6 6/7 6/9
providing **[1]** 13/12
public **[1]** 29/20
purported **[1]** 4/10
pursuant **[3]** 24/1 26/21 32/19
pursue **[1]** 18/25

**Q**

question **[8]**
questions **[7]**
quick **[1]** 25/10
quickly **[1]** 22/12

**R**

raise **[6]** 22/4 22/4 22/5 22/5 22/6
26/14
raised **[2]** 7/5 28/9
reach **[1]** 14/6
read **[7]**
reading **[1]** 11/9
realize **[1]** 25/12
realizing **[1]** 13/5
reasons **[2]** 5/4 30/15
recipient **[1]** 30/5
record **[3]** 3/3 22/8 32/21
recorded **[1]** 1/24

Reed **[11]**
Reed's **[3]** 5/17 5/21 6/2
refute **[1]** 7/22
refuted **[1]** 7/24
refutes **[1]** 4/23
relation **[2]** 5/20 27/11
relationship **[5]** 5/7 7/3 7/15 11/13
21/19
relevance **[2]** 15/20 16/2
relevancy **[1]** 22/4
relevant **[2]** 11/16 11/17
relief **[5]** 12/16 15/3 15/4 15/5 23/9
rely **[2]** 8/20 12/2
relying **[3]** 4/15 8/21 9/20
remedy **[2]** 8/17 11/18
remember **[1]** 11/8
rendering **[1]** 5/19
reply **[1]** 20/25
Reporter **[3]** 2/8 2/8 32/24
represent **[2]** 5/8 5/24 18/10
representation **[1]** 18/18
request **[3]** 7/6 12/10 31/2
requests **[1]** 28/9
research **[1]** 21/2
Resnick **[1]** 27/2
Resnick-Neillie **[1]** 27/2
respond **[1]** 20/25
response **[4]** 4/18 22/10 22/24 26/11
retainer **[1]** 7/15
retains **[1]** 21/17
return **[1]** 23/12
reveal **[1]** 29/19
review **[5]** 16/20 22/23 24/20 25/6
25/7
reviewed **[2]** 6/8 6/10
reviewing **[1]** 14/23
rights **[3]** 18/12 18/22 19/4
ripe **[1]** 24/20
RKA **[1]** 1/4
RMR **[2]** 2/8 32/24
RMR-CRR **[2]** 2/8 32/24
role **[1]** 27/4
Room **[1]** 2/10
Roy **[1]** 1/15
rule **[7]**
RYAN **[3]** 1/7 17/23 17/25

**S**

Salopek **[3]** 2/8 32/23 32/24
sample **[1]** 6/14
San **[1]** 2/7
sanctioning **[1]** 28/7
satisfaction **[1]** 28/10
schedule **[1]** 14/3 25/9
scheduling **[1]** 24/11
scope **[1]** 18/18
seal **[11]**
sealing **[1]** 29/21
SEC **[4]** 5/11 5/11 9/8 9/8
Section **[1]** 32/19
seeking **[1]** 12/16
sense **[2]** 15/8 24/7
serve **[1]** 6/7

## S

**service [3]** 6/5 6/7 6/9
**services [3]** 5/14 5/19 13/12
**seven [1]** 25/16
**shared [1]** 19/7
**shocked [2]** 9/10 9/11
**short [1]** 22/10
**shown [2]** 16/6 26/13
**side [8]**
**side's [3]** 16/18 20/9 25/19
**sides [3]** 15/6 15/7 25/7
**sign [1]** 29/18
**signed [1]** 10/23
**simple [1]** 5/6
**Singh [3]** 2/5 3/13 7/13
**single [1]** 4/19
**six months [1]** 23/25
**six years [1]** 13/1
**Snapshot [2]** 13/15 16/11
**social [1]** 13/12
**solely [1]** 9/20
**soon [1]** 13/20
**sooner [2]** 22/12 25/1
**sophisticated [1]** 12/24
**SOUTHERN [1]** 1/2
**space [1]** 29/16
**specific [1]** 31/15
**specifics [1]** 21/22
**spend [1]** 20/23
**spent [3]** 13/1 28/16 29/1
**spoken [2]** 10/23 30/15
**stand [1]** 29/21
**standing [2]** 11/13 21/4
**starkly [1]** 13/13
**Stars [1]** 2/3
**starting [1]** 3/7
**state [1]** 3/7
**states [5]** 1/1 1/16 2/9 5/13 32/20
**stenography [1]** 1/24
**stipulated [1]** 25/17
**stipulations [5]** 15/8 15/10 15/13 15/14 25/11
**story [2]** 11/17 28/15
**stream [1]** 5/18
**streamline [2]** 15/9 28/22
**streamlined [1]** 25/23
**Street [1]** 2/6
**stripped [1]** 19/4
**stronger [1]** 3/22
**subject [1]** 9/3
**substantive [1]** 24/18
**suggest [1]** 11/13
**suggesting [6]** 19/21 19/24 21/20 24/3 24/5 29/10
**suggests [1]** 26/10
**Suite [1]** 2/6
**support [1]** 13/14
**supported [1]** 13/15
**survives [1]** 11/24
**sushi [1]** 9/14

## T

**take [6]** 9/17 14/17 20/23 21/1 23/24

**talk [2]** 19/12 21/8
**talking [8]**
**tell [6]** 11/12 16/8 20/5 21/25 22/11 28/1
**telling [3]** 8/10 10/12 12/17
**terms [1]** 30/19
**test [1]** 8/16
**Thank [3]** 31/22 32/8 32/10
**theory [2]** 11/23 11/24
**thereafter [2]** 5/9 18/5
**think [23]**
**thought [2]** 12/11 28/5
**time [15]**
**Title [1]** 32/20
**tokens [3]** 8/24 10/3 12/21
**top [1]** 27/14
**total [3]** 9/14 16/15 27/13
**totally [4]** 7/3 9/10 9/11 13/18
**transcript [3]** 1/14 1/24 32/21
**transfers [1]** 26/10
**transparency [1]** 16/16
**treat [1]** 15/2
**trial [3]** 12/15 15/3 15/5
**trick [1]** 10/14
**tricked [7]**
**trickery [2]** 10/5 12/23
**tricking [1]** 10/3
**TRO [10]**
**true [8]**
**truth [3]** 8/10 10/12 10/25
**TUESDAY [1]** 2/13
**tune [1]** 27/18
**turning [1]** 25/4
**two million [2]** 27/18 27/19

## U

**U.S [1]** 2/9
**ultimately [2]** 22/16 24/4
**Um [1]** 20/21
**Um-hum [1]** 20/21
**umbrella [1]** 22/17
**understand [2]** 12/1 23/23
**understood [3]** 21/15 29/12 30/8
**unfair [2]** 13/18 24/2
**Unfortunately [1]** 27/22
**UNITED [4]** 1/1 1/16 2/9 32/20
**unjust [1]** 13/19
**unjustly [1]** 25/3
**unless [5]** 19/20 25/5 28/15 29/22 31/13
**unobjected [1]** 16/12
**unopposed [1]** 31/19
**unreliable [1]** 22/3
**untrue [2]** 7/3 7/25
**upcoming [1]** 14/16
**us [14]**

## V

**vacuum [1]** 23/15
**vague [1]** 26/7
**vendors [1]** 26/11
**veto [1]** 10/7

**vetoes [1]** 12/21
**viable [1]** 13/11
**view [4]** 21/10 26/12 27/17 28/20
**viewing [3]** 18/21 18/23 19/2
**violation [1]** 29/5
**voted [2]** 12/22 31/11
**votes [2]** 8/24 10/3
**vs. [1]** 3/6

## W

**waived [1]** 19/22
**wash [1]** 9/19
**waste [1]** 15/11
**we'd [2]** 12/8 30/17
**week [7]**
**weeks [5]** 13/25 15/17 20/24 20/25 21/1
**welcome [2]** 10/21 22/9
**white [1]** 13/17
**who's [2]** 13/10 14/2
**Wilkie [1]** 2/9
**willing [1]** 31/3
**willingly [1]** 12/20
**witness [9]**
**witnesses [27]**
**word [1]** 9/18
**words [2]** 16/9 23/19
**work [6]** 9/7 14/2 24/16 25/9 30/5 32/5
**worked [2]** 5/10 30/6
**working [2]** 5/10 5/11
**works [4]** 10/17 13/24 21/9 31/9
**world [1]** 30/9
**writes [2]** 5/24 6/4

## Y

**Yurchak [29]**
**Yurchak's [6]** 4/10 4/25 5/3 5/10 7/2 7/22