<u>**MOVEMENTDAO AND MARK PHILLIPS' COUNTERCLAIM**</u>

Counterclaim Plaintiffs MovementDAO and Mark Phillips ("Mr. Phillips") (collectively, "Counterclaim-Plaintiffs"), by and through their attorneys, Dhillon Law Group Inc., for a counterclaim against Ryan Breslow ("Mr. Breslow"), Alex Fine ("Mr. Fine"), and Jon Gordon ("Mr. Gordon") (collectively, "Counterclaim-Defendants"), allege and aver as follows:

<u>Introduction</u>

1.      In July 2021, Mr. Phillips was a computer programmer working as a Lead Developer under contract with the Securities and Exchange Commission's ("SEC").

2.      Mr. Breslow, an entrepreneur who founded electronic payment company Bolt Financial Inc. ("Bolt"), along with his business partners Messrs. Fine and Gordon, lured Mr. Phillips away from the SEC to build a decentralized autonomous organization ("DAO") that would facilitate the creation of other DAOs.

3.      DAOs are member-managed organizations with no hierarchy, or centralized leadership. Within a DAO, decisions are made by building a coalition of support amongst members through voting.

4.      Mr. Phillips' expertise in blockchain development was very much in demand at this time, as technologists, venture capitalists, and others were making big bets on platforms based on cryptocurrency and blockchain technology. Mr. Phillips was so inundated with job offers relating to decentralized finance, non-fungible tokens ("NFTs"), DAO tooling and applications, and cryptocurrency exchanges, and off-ramps, that he disabled his LinkedIn profile. Mr. Phillips valued his role at the SEC, where he performed meaningful and socially valuable work. Mr. Phillips wanted cryptocurrency to succeed, and he believed weeding out bad actors through his work at the SEC was necessary for cryptocurrency's continued growth and viability.

5.     Mr. Breslow was able to offer something different from other technology companies seeking Mr. Phillips' services: a chance to build an organization that would itself be a social good. Mr. Breslow's idea was to build a DAO in which members could contribute money to fund social movements. The DAO would provide the tooling and architecture for subsidiary DAOs dedicated to various social causes that would pay "tribute" to the main DAO. The DAO's tooling would include a shared treasury, built-in transparency in governing and accounting, defined roles for developers, and the use of smart contracts to encode a defined system of governance. In other words, the DAO would be a platform for funding and governing new charitable ventures and potentially for-profit enterprises using a similar tooling. Mr. Phillips later learned that Messrs. Breslow and Gordon came up with the idea at an ayahuasca ceremony, where Mr. Breslow had a psychedelic-induced epiphany that God was telling him to create the DAO.

6.     Ultimately, Mr. Phillips left the SEC to build the DAO, which would become MovementDAO. Mr. Phillips' decision was based on a fundamental promise on Mr. Breslow's part: that Mr. Breslow (and the other founders, Messrs. Fine and Gordon) would lock their contributions to the DAO for a period of six years. This promise was essential because scams known as "rug pulls" abounded in the cryptocurrency space. A "rug" or "rug pull" is a common exit scam in the crypto space where a development team suddenly abandons a project and absconds with contributed funds. Mr. Breslow also promised that Mr. Phillips would have complete authority regarding the development team and budget, and assured Mr. Phillips that he and Messrs. Fine and Gordon were good people committed to doing the right thing. Based on the understanding that he would have sufficient time to build the DAO out properly with the right team and legal oversight, Mr. Phillips agreed to leave the SEC and build the DAO.

7.      Working seventy-two hour shifts under immense pressure from Counterclaim-Defendants, Phillips constructed the DAO, which launched as MovementDAO on February 2, 2022. MovementDAO had a governing document (the GitBook) and the ability for DAOs to use its tooling to fund social movements. Indeed, Mr. Breslow and others were able to launch one such DAO under MovementDAO, the PeaceDAO, which was launched to fund humanitarian efforts in Ukraine. As of March 2022, a governance system was in place as community members who contributed to MovementDAO were issued MAPE NFTs with which they could vote on Discord (a multimedia social media and messaging platform) using the voting/polling feature. Later, voting would take place on Snapshot.org., an online platform on which individuals could vote for proposals on the blockchain using their Ethereum addresses.

8.      By August 2022, MovementDAO's governance system was fully in place after its members passed several important proposals regarding MovementDAO's governance and operations on Snapshot, including confirming MovementDAO as a Delaware unincorporated nonprofit association, appointing Benjamin Reed ("Mr. Reed") as MovementDAO's Authorized Member, and confirming the appointment of the Law Office of Reed Yurchak (the "Law Firm") as MovementDAO's Service Provider. MovementDAO was thus a fully operational entity with full-time developers, a governance structure, and a means by which subsidiary DAOs could form under its umbrella to launch social movements.

9.      In August 2022, Phillips' initial fear that Counterclaim-Defendants intended to use MovementDAO as a piggybank rather than a charitable venture became realized. As Mr. Breslow's exorbitant spending habits took its toll on his finances, Messrs. Breslow and Fine (and later Gordon) began pressing Mr. Phillips regarding options to reverse their contributions to MovementDAO, which Counterclaim-Defendants began describing, wrongfully, as

"investments." Mr. Fine first indicated that he wanted to withdraw money from MovementDAO in June 2022.

10.     Counterclaim-Defendants thus placed Mr. Phillips in a difficult position. On one hand, Mr. Phillips had committed to building MovementDAO and undergone immense personal sacrifices to do so, working alongside other MovementDAO contributors on a full-time basis. Mr. Phillips made these sacrifices with the understanding (based on Mr. Breslow's promises) that MovementDAO would be a nonprofit organized as a DAO. On the other hand, some of MovementDAO's largest contributors were now demanding that Mr. Phillips act counter to MovementDAO's governing documents for their own financial gain. Despite this pressure, Mr. Phillips plowed forward and continued building MovementDAO. Unlike Counterclaim-Defendants, who had remained anonymous to the MovementDAO's community, Mr. Phillips' name was tied to his role in MovementDAO. Thus, the reputation of Mr.  Phillips, but not Counterclaim-Defendants, was on the line.

11.     At the end of December 2022, the "rug pull" took place. Counterclaim-Defendants demanded that Mr. Phillips cease spending MovementDAO's funds (which would kill MovementDAO) and allow them to redeem their contributions. At great personal risk to himself, Mr. Phillips honored his commitment to MovementDAO. Mr. Phillips could have taken the easy way out by letting Counterclaim-Defendants withdraw their funds, cashing out his own contributions, and finding a new job relating to blockchain technology, but Mr. Phillips believed in MovementDAO's purpose and took seriously his obligations to the MovementDAO community. In order to induce Mr.  Phillips to go along with the rug pull, Mr. Breslow indicated a willingness to pay Mr. Phillips a million dollars (in addition to paying Mr. Gordon additional funds), and take care of him with various business opportunities moving forward.

12.     Counterclaim-Defendants responded by taking drastic legal action against Messrs. Phillips and Benjamin Reed, MovementDAO's Authorized Member. In order to obtain an *ex parte* temporary restraining order freezing MovementDAO's assets, Counterclaim-Defendants concocted a fiction in which MovementDAO did not exist, Mr. Gordon had not participated in MovementDAO's governance process, Mr. Phillips did not work for the SEC, and the Law Firm was not MovementDAO's lawyer—all false.

13.     Counterclaim-Defendants trampled on their legal obligations to MovementDAO and Mr. Phillips in their quest to take back the money they contributed to MovementDAO, breaching contracts with both, revealing that they had defrauded Mr. Phillips into leaving the SEC to join MovementDAO, and tortiously interfering with MovementDAO's contracts with third parties.

Parties

14.     Counterclaim-Plaintiff MovementDAO is a Delaware unincorporated nonprofit association ("DUNA").

15.     Counterclaim-Plaintiff Mark Phillips is an individual who resides in and is a citizen of Florida.

16.     Upon information and belief, Counterclaim-Defendant Ryan Breslow is an individual who resides in and is a citizen of the United States Virgin Islands.

17.     Upon information and belief, Counterclaim-Defendant Alex Fine is an individual who resides in and is a citizen of California.

18.     Upon information and belief, Counterclaim-Defendant Jon Gordon is an individual who resides in and is a citizen of Texas.

<u>Jurisdiction and Venue</u>

19.     The Court has jurisdiction over this counterclaim because it is asserted as a compulsory counterclaim to a complaint over which the Court has exercised diversity jurisdiction.

20.     Venue is proper in the Southern District of Florida because many of the acts giving rise to the action took place in the Southern District of Florida.

<u>Facts</u>

21.     In July 2021, Mr. Phillips was employed by InfoTrend Incorporated, a subcontractor to Its Agile, LLC, which was a prime contractor to the SEC under a solicitation for the provision of "blockchain and digital asset data support[.]" While Mr. Phillips was paid by InfoTrend incorporated, he was hired by the SEC to perform work for the SEC.

22.     In order to obtain a contractor position with the SEC and obtain the requisite security clearance, Mr. Phillips completed a Declaration for Federal Employment, an FBI fingerprint search, and an authorization for release of credit information. Mr. Phillips fully disclosed his criminal history to the SEC—including acts outside the seven-year reporting period—and was granted employment.

23.     As an expert in the Solidity, Bitcoin Script, and Typescript, coding languages used for blockchain transactions, Mr. Phillips' skills were in high demand, so much so that he was inundated with so many unsolicited employment offers that he had to deactivate his LinkedIn profile. Ethereum was trading at $3,887.53 on September 3, 2021, and at $4,815.01 on November 9, 2021, the highest it has ever been, and there was incredible demand for cryptocurrency engineers.

24.     Counterclaim-Defendants were able to lure Mr. Phillips away from his SEC position by offering Mr. Phillips a role at what would become MovementDAO. Counterclaim-

Defendants knew full well that Mr. Phillips had prior run-ins with law enforcement. At least in meetings in August and September 2021, and in January, July, and August 2022, Mr. Phillips disclosed and discussed with Counterclaim-Defendants that he had been to jail and prison, including the circumstances related to his imprisonment. At a sushi dinner in September 2021, Mr. Phillips disclosed that he had been on both sides of the law, civil and criminal; that he had been in federal prison and jail for contempt; and that he had been nervous about being rejected for security clearance given his prior run-ins with the law. These discussions arose in a variety of circumstances: when the parties were discussing the legality of different types of entities and cryptocurrency pump and dump schemes; a discussion of experiences with drugs; and discussion of experiences with law enforcement. Mr. Phillips repeatedly made clear during the discussions that he had been in prison, and had no interest in doing anything that was questionable, or would lead to even the possibility of him running afoul of the law. It would be particularly embarrassing to Mr. Phillips to be involved in a cryptocurrency fraud given his relationship with his colleagues at the SEC. Mr. Phillips' experience spoke for himself, and he could just code and get paid. He did not need to engage in any questionable practices. Counterclaim-Defendants, meanwhile, seemingly viewed Mr. Phillips' previous encounters with the law as a plus as they appreciated Mr. Phillips' redemption arc that concluded with his obtaining a security clearance to work for the SEC.

25.     During these same discussions, Mr. Gordon revealed that he had run-ins with the law on account of repeated acts of reckless driving; and Mr. Fine revealed that he never paid taxes (a common issue in cryptocurrency transactions) and would steal others' license plates to evade parking tickets and citations for illegally parking the van he lived out of.

26.     Messrs. Breslow, Fine, and Gordon planned to develop a decentralized autonomous organization (ultimately MovementDAO) to facilitate social and environmental movements, and set of tooling which created other DAOs, in effect, enabling smaller communities to form their own DAOs to promote social movements using MovementDAO's governance structure and technological architecture. MovementDAO would provide a set of decentralized finance activities for which it, or a related entity, would receive some fee or benefit (a "tribute"). However, Counterclaim-Defendants lacked the technical ability to develop and manage the contemplated DAO's creation, and needed Mr. Phillips for the task.

27.     Mr. Phillips initially performed work pursuant to a Consulting Agreement with Merkaba, Inc. ("Merkaba"), under which Mr. Phillips agreed to perform blockchain architecture and related services for Merkaba for $125 an hour. The Agreement initially had a one month term, and was renewable on a monthly basis. Between August 2021 and November 2021, Mr. Phillips helped lay the foundation for what would become MovementDAO, analyzing the structure of existing DAOs, reporting on legal entities and models, devising funding and governance models (including the issuance of NFTs and users interfaces), and ensuring that the DAO would operate under a regime of trust and legitimacy. Counterclaim-Defendants later instructed Mr. Phillips never to use the name Merkaba and called the organization various names, including TedDAO, a reference to the comedy show *Curb Your Enthusiasm*, in which the actor Ted Danson made an anonymous donation, but made sure everyone knew he was the donor (similar to Mr. Breslow's initial intentions). As a result of Mr. Phillips' efforts, Mr. Breslow asked Mr. Phillips to assume a more prominent, full-time role in the venture, which would entail Mr. Phillips leaving the SEC.

28.     Mr. Phillips explained that he would leave SEC to help create MovementDAO on a full-time basis, subject to three non-negotiable conditions: (1) Mr. Phillips would have veto

power over decisions relating to MovementDAO's treasury in order to assuage Mr. Phillips' worry that the project would devolve into a cryptocurrency pump-and-dump scheme; (2) MovementDAO's founders, i.e., Counterclaim-Defendants, would commit to providing substantial funding to MovementDAO, and agree to lock their contributions for six years so that the project would be sufficiently secure to attract developers and donors; and (3) MovementDAO would not engage in conduct tantamount to the unregistered offering of securities, a concern to which Mr. Phillips was especially sensitive given his SEC work. Counterclaim-Defendants agreed to these terms, and Mr. Phillips left the SEC to focus on building the DAO.

29.     In December 2021, the DAO assumed the name MovementDAO. Hoping to remain anonymous, Mr. Breslow instructed Mr. Phillips to document transactions involving MovementDAO through various entities with "Ted" in their name (e.g., Ted One, LLC) and to use the Law Firm as an intermediary for payments.

30.     On December 6, 2021, following the parties' evolving discussions on MovementDAO's launch and governance, Mr. Breslow and Mr. Phillips entered into a Confidential Independent Contractor Agreement (the "IC Agreement"), under which Mr. Breslow engaged Mr. Phillips to work exclusively on MovementDAO, and to fully develop and launch the DAO on or before January 1, 2022. This IC Agreement superseded and terminated the Consulting Agreement with Merkaba. Mr. Phillips would earn $1 million in cash under the IC Agreement and approximately $1 million in MovementDAO tokens. The IC Agreement clarified that Mr. Phillips was only an independent contractor, and that it would terminate on January 1, 2022. The IC Agreement was intended to be a stopgap measure, and after January 1, 2022, the parties were to come to a new agreement, or Mr. Phillips would be directly compensated by MovementDAO.

31.     After signing the IC Agreement and through the present, Mr. Phillips devoted tremendous time and energy to building MovementDAO. Mr. Phillips initially worked out of an Airbnb Mr. Breslow rented for him outside of Seattle. Mr. Breslow then flew Mr. Phillips to Miami so Mr. Phillips could work out of his home until Mr. Breslow set Mr. Phillips up with his own home near Mr. Breslow's house. Mr. Breslow would go on to put this house up for sale in July 2022 with no prior notice to Mr. Phillips. At Mr. Breslow's direction, Mr. Phillips would work in shifts of seventy-two hours, taking every fourth day off. Mr. Breslow, meanwhile, gave an interview on how his company Bolt was the first company to have a four-day work week. Mr. Phillips was working under such pressure that Mr. Breslow expressed dissatisfaction when Mr. Phillips took time off after the death of his younger sister to locate her teenage son. Mr. Phillips even put off his own wedding, after Mr. Breslow agreed to cover the costs incurred regarding the original wedding date. It was during this period that Mr. Reed joined the MovementDAO community, initially as an unpaid contributor.

32.     Mr. Phillips fully performed his obligations under the IC Agreement. On January 2, 2022, Mr. Fine, using his alias "Steve Faffle," sent the following email to Mr. Yurchak: "Hey Reed – wanted to give you the heads up that Mr. M [(Mr. Phillips)] is due to be paid the $1,000,000 contract bonus :) Mr. M crushed it [rocket emoji]."

*[continued on following page.]*

2/5/23, 5:18 AM                                    Steve Faffle Mail - $1M Confirmation



? * <me@teddao.xyz>

## $1M Confirmation
3 messages

**Steve Faffle** <steve@teddao.xyz>                                Sun, Jan 2, 2022 at 4:32 PM
To: Law Office of Reed Yurchak <reed@yurchaklaw.com>, ? * <m@teddao.xyz>, ? * <me@teddao.xyz>
Cc: Ted DAO <j.ted-dao@protonmail.com>

Hey Reed – wanted to give you the heads up that Mr. M is due to be paid the $1,000,000 contract bonus :)

Mr. M crushed it 🚀

Could you work with Mr. M directly on dispersing his funds?

Thank you!
-Steve

33.     The IC Agreement also required Mr. Breslow to contribute funds on behalf of Mr.

Phillips to MovementDAO, such that Mr. Phillips would be entitled to 10% of tokens issued to its

founders. Thanks to Mr. Phillips' many hours of coding, the major technical elements of

MovementDAO were in place.

34.     Mr. Breslow and Mr. Phillips did not enter into a new contractor agreement on

January 1, 2022. Instead, the parties came to an understanding that Mr. Phillips' salary would be

paid by MovementDAO, in the amount of $83,333 per month. Mr. Breslow further agreed to

provide Mr. Phillips with medical benefits, relocation benefits, renovation expenses for his future

office, a $5 million budget for compensation of a senior development team, and $1 million of

MovementDAO tokens to allocate at Mr. Phillips' discretion. Mr. Phillips could have received a

comparable compensation package and management authority in the open market for engineers of

his caliber.

35.     The Law Firm provided the parties with the legal services necessary to build a large,

sophisticated DAO, and contributed 100,000 DAI (approximately equivalent to the same amount

in dollars) to MovementDAO. The Law Firm also facilitated the conversion of fiat money to

cryptocurrency in connection with contributions to MovementDAO (and later PeaceDAO) made by Counterclaim-Defendants and third parties. Counterclaim-Defendants knew full well that the Law Firm had engaged Mr. Phillips as a cryptocurrency and security consultant, and that he created and maintained dao-lawfirm.eth (the Ethereum Name Service ("ENS") the Law Firm used) on behalf of the Law Firm. Indeed, Mr. Phillips worked out of the Law Firm's offices when contracting with the SEC. The Law Firm provided legal services regarding cryptocurrency and was entitled to fees for that work. The Law Firm further agreed to defer a third of its fees in order to receive an equivalent value of tokens from MovementDAO.

36.     The Law Firm also helped MovementDAO with its banking issues. As Mr. Phillips was no longer operating as Mr. Breslow's contractor, and the parties were no longer operating Merkaba (Mr. Breslow ordered Mr. Phillips never to use the name Merkaba to avoid Mr. Breslow being publicly affiliated with MovementDAO), the parties could not use Mr. Breslow's access to banking, or Merkaba's ability to create a bank account and gain access to a credit card. Because DAOs are relatively new entities, traditional banking services and credit cards are not available to them. Accordingly, the Law Firm allowed MovementDAO's founders to use the Law Firm's credit cards (including an American Express card belonging to Marc Welton, a paralegal at the Law Firm). To pay those charges, Mr. Phillips would transfer cryptocurrency to Mr. Yurchak's Coinbase account, sell the cryptocurrency, and transfer the sales proceeds to the linked bank account controlled by Mr. Yurchak. Mr. Phillips also paid for services rendered to MovementDAO by the Law Firm in this same manner.

37.     In January 2022, Mr. Phillips created the Movement Gnosis with Messrs. Fine and Gordon's agreement, which functioned as the virtual safe for Movement's cryptocurrency. While Counterclaim-Defendants chose to give Mr. Phillips copies of their "keys" to the Gnosis, Mr.

Phillips provided Messrs. Fine and Gordon with physical copies of their own keys. Plaintiffs never formally entrusted their keys to Mr. Phillips in any written document. Mr. Phillips attempted to provide Mr. Breslow with a copy of his key and suggested that Mr. Gordon, as Mr. Breslow's trustee be given a copy, but Mr. Breslow refused, stating that MovementDAO was his "gift to the world" and that he would never need or exercise his tokens.

38.     Mr. Fine took charge of preparing MovementDAO's GitBook, that is, an online white paper that set forth MovementDAO's policies, goals, and governance mechanisms. Mr. Fine had complete editorial control over the final contents of the GitBook, making clear that Mr. Phillips' role was limited to providing suggestions and drafting materials relating to Ethereum contract addresses and Ethereum wallet contributions. In many instances, Mr. Fine rejected Mr. Phillips' suggestions. Mr. Gordon also contributed to the GitBook, and Mr. Breslow reviewed and edited its contents. The GitBook's public release on February 2, 2022, marked MovementDAO's official launch as it enabled individuals to join the Movement community, contribute funds, and participate in its governance. Mr. Phillips and Plaintiffs intended for the GitBook to be a public-facing document that would attract developers, contributors, and community members. Much like a set of corporate bylaws, the GitBook was intended to function as MovementDAO's initial governing document. The following are critical provisions of the GitBook:

- MovementDAO would have an endowment funded by contributions invested in cryptocurrency and cryptocurrency-adjacent assets, and the proceeds would be used to fund social movements.

- MovementDAO would be governed by Snapshot Voting, under which members may submit proposals, and Movement token holders can then use their tokens to vote for or against a proposal.

- The Law Firm would act as MovementDAO's "Service Provider" and handle financial transactions. The Service Provider's legal fees were estimated at 2% of assets held per year.

- MovementDAO's founders (which includes Mr. Phillips) can exercise a veto over pending proposals.

- The Founders' tokens (Counterclaim-Defendants' tokens included) will be locked for a period of years from launch, meaning there would be stability for developers and contributors to join MovementDAO, and that Counterclaim-Defendants could not withdraw or redeem their contributions for at least several years.[1]

- MovementDAO was "neither designed to be, nor is it set up to be, an investment vehicle" and instead closer to a non-profit in that contributions to MovementDAO are charitable in nature.

- The "purchase of Tokens is non-refundable and cannot be cancelled."

39.     As of MovementDAO's launch and the publication of the GitBook, Mr. Breslow wanted to be known to the MovementDAO community as "John Galt."[2] Upon information and belief, Mr. Breslow induced members of the public to contribute to MovementDAO and join its community, by making the following additions to the GitBook shortly before its publication (either typing these additions himself or causing Mr. Fine and/or Mr. Gordon to do so):

---

[1] The length of the lock-up period varied in different versions of the GitBook, but Counterclaim-Defendants promised Mr. Phillips that their contributions would be locked for six years, and each published version of the GitBook contemplated that the lock-up period would be multiple years. Versions with four years and "#years" were published simultaneously, and Counterclaim-Defendants added the latter language without telling Mr. Phillips.
[2] John Galt is a character in Ayn Rand's novel *Atlas Shrugged*, who "secretly organized a strike by the world's creative leaders, including inventors, artists and businessmen, in an effort to 'stop the motor of the world' and bring about the collapse of the bureaucratic society." Wikipedia, John Galt, https://en.wikipedia.org/wiki/John_Galt (last accessed Apr. 18, 2023).

```
+## About John Galt &#x20;
+
+John Galt believes that given the right infrastructure, the wisdom of the crowd
can save the world. &#x20;
+
+John Galt believes in this brighter future. &#x20;
+
+Galt donated millions to Movement DAO, collateralized the bonding curve, and
locked his 20% token stake to provide liquidity for Movement DAO. &#x20;
+
+This capital is meant to support the longevity and prosperity of Movement
DAO. &#x20;
```

```
+4. John Galt's tokens are _**"locked" after launch meaning that none of Galt's
tokens can be re-sold to a community member or transferred to a third party for
value.**_ &#x20;
```

Despite adding these sections, Mr. Breslow caused them to be removed from the GitBook in the weeks following MovementDAO's launch.

40.    On February 2, 2022, in addition to promoting the GitBook to the public, Mr. Fine encouraged his Twitter followers to contribute to MovementDAO. He also instructed Mr. Phillips to announce the launch via an email blast to a mailing list of over 110,000 people curated by Mr. Breslow.

41.    Many people contributed to MovementDAO. Nine contributors outside of Counterclaim-Defendants account for over $1.7 million in contributions, and there are many more smaller contributors.

42.    Mr. Fine promoted MovementDAO on Discord, Facebook, Twitter, and other online communities, sometimes using the alias "Steve Faffle," and at other times using the alias "mr_fine." Shortly after MovementDAO's launch, Mr. Fine, using his "mr_fine" alias, promoted MovementDAO on Discord by stating that he "discovered Movement recently and this product looks amazing!," thus concealing his involvement in the project. Mr. Phillips was deeply

concerned about Mr. Fine's deception as misrepresentations designed to induce others to purchase

cryptocurrency tokens may be considered by regulatory authorities as securities fraud.



43.     Between February and August of 2022, MovementDAO's governance took place

mainly on Discord. During this period, Mr. Phillips shepherded the roll-out of online

documentation and tooling relating to its treasury and issuance of NFTs so that DAOs that formed under Movement's umbrella had the resources to be legally compliant.

44.     Until approximately April 2022, Mr. Fine acted as if he were MovementDAO's de facto leader. On or around April 9, 2022, Mr. Fine left the MovementDAO office house in Miami in order to attend to personal, family issues, but he never returned to his former position of leadership in MovementDAO.

45.     In March 2022, Mr. Phillips set up the Snapshot.org voting system in accordance with the GitBook, which enabled MovementDAO community members to govern MovementDAO by exercising their NFTs issued by MovementDAO to vote.

46.     On March 24, 2022, Mr. Fine announced that the PeaceDAO, a DAO formed by MovementDAO, and dedicated to funding Ukrainian humanitarian aid, would be launching that day. Mr. Breslow, using the moniker "theryanking," responded: "This is going to be EPIC!." PeaceDAO did indeed launch, and collected contributions and funded Ukrainian humanitarian aid efforts. Donations received were sent to the Law Firm to be converted to cryptocurrency. PeaceDAO's treasury automatically paid a fee (also referred to as a "tribute") to MovementDAO for services provided. At a launch party for the PeaceDAO, Mr. Breslow (pictured below in a tie-dye shirt) gave a speech where he encouraged members of the audience to join the PeaceDAO discord, participate in its community, and use the platform as a way to promote peace (Mr. Fine is pictured to Mr. Breslow's right.)

*[continued on following page.]*



47.     On June 13, 2022, Mr. Phillips posted on MovementDAO's Discord that a Snapshot proposal regarding the purchase of ETH (a widely traded cryptocurrency) would be voted on via Snapshot in accordance with the GitBook. The MovementDAO community approved this proposal on Snapshot using NFTs to vote. Despite the volatility of the cryptocurrency market, Mr. Phillips' farsighted decision to invest the majority of Movement's treasury in DAI (a "stablecoin" that tracked the dollar) rather than the more volatile Ethereum prevented MovementDAO from losing millions of dollars. The treasury's present value exceeds $12,000,000—if MovementDAO had invested solely in ETH, it would be worth approximately $4.1 million.

48.     Despite his around-the-clock efforts to build MovementDAO's technical architecture, Mr. Phillips repeatedly told Plaintiffs that he did not want to be in charge of MovementDAO's governance, and that he wanted to be a programmer running the engineering side of MovementDAO. Mr. Phillips later recruited Mr. Reed to serve as MovementDAO's Authorized Member (providing operational, administrative, and executive oversight to MovementDAO) and an individual known as Filip Vizitiu ("Mr. Vizitiu") to manage

MovementDAO's community and governance. Despite Mr. Vizitiu's hire, MovementDAO continued paying Mr. Gordon to manage MovementDAO's community, a task to which he devoted minimal efforts at best in the last four months of 2022. Before Mr. Reed and Mr. Vizitiu assumed significant roles in MovementDAO, there was a vacuum in governance as Mr. Fine had failed to make proposals, draft governing and organizational documents, or update the GitBook to conform to MovementDAO's continued evolution.

49.     After the Snapshot.org voting system was in place, Messrs. Phillips and Reed and Mr. Vizitiu rolled out a series of proposals in order to focus MovementDAO's resources on development (i.e., MovementDAO's technical architecture) instead of marketing and bring its governance in line with the GitBook. On August 23, 2022, Mr. Phillips proposed, and MovementDAO's community approved, MIP-0000, which, in addition to the GitBook, served as a governing document for MovementDAO. Its key provisions included the following:

- One objective was to "recognize the DAO's legal standing as an entity[.]" MovementDAO confirmed its continued operation as a Delaware unincorporated nonprofit association.

- MovementDAO would adopt the Guiding Principles, Terms of Service, and Code of Conduct attached as Exhibits A, B, and C to the MIP.

- Mr. Reed was appointed as MovementDAO's Secretary and Authorized Member.

50.     The Guiding Principles vested all control over MovementDAO's affairs in its members, i.e., all those holding governance tokens. Members' authority included the authority to expel another member through an ordinary Snapshot vote. The Service Provider (the Law Firm and Mr. Phillips) had the authority to remove a member without notice or a vote if the Service Provider "determines such a removal to be necessary, desirable, or appropriate[.]" MovementDAO was authorized to pay reasonable compensation and reimburse reasonable expenses to members

and third parties. The Service Provider was authorized to veto any action, proposal, or decision of MovementDAO and its members.

51.     The Guiding Principles stated that MovementDAO was formed on February 2, 2022, and that the obligations of the members would be governed by the Delaware Uniform Unincorporated Nonprofit Association Act and "this Agreement" (i.e., the Guiding Principles).

52.     In addition to MIP-0000, MovementDAO's community enacted MIPs 0001 through 0007 around the same time period. These MIPS helped MovementDAO continue its development by, among other things, providing for the appointment of the Service Provider (the Law Firm); formalizing MovementDAO's governance process; diversifying MovementDAO's treasury holdings; transferring funds from MovementDAO's GNOSIS Safe account to a separate developer account to fund continued development work; and providing for the formation of DAOLabs LLC, a business that would help serve MovementDAO's real world needs, including operating bank accounts, credit cards, making payments, and holding assets,

53.     Counterclaim-Defendants were not only aware of, but supportive of Mr. Phillips' efforts. On August 24, 2022, Mr. Phillips asked Mr. Fine if he "s[aw] the recent [MIPs] proposals," told Mr. Fine to read them, and explained that he was "proposing a path to be clearly legal while using the benefits of tokens."

*[continued on following page.]*



54.     On August 27, 2022, shortly before going "off the grid for a week" for the Burning

Man festival, Mr. Breslow wrote to Mr. Phillips: "Thanks for the epic weeks. Things haven't been

easy but we're moving in the right direction. So much gratitude for everything you both do."



55.     Mr. Gordon indicated his approval of MIPs 0000, 0001, 0002, 0004, 0005, 0006,

0007, and 0008 by voting for them on Snapshot. By not voting for MIP-0003, Mr. Gordon showed

that he was reviewing the MIPS, and exercising discretion with respect to his voting. Indeed, Mr.

Gordon's decision not to vote for MIP-0003 is understandable as it reflected the community's

decision to devote more funds to development at the expense of community and marketing (an area Mr. Gordon was responsible for overseeing).

56.     On August 30, 2022, the first sign of Plaintiffs' intention to "rug" the community emerged. (A "rug" or "rug pull" is a common exit scam in the crypto space where a development team suddenly abandons a project and absconds with investors' funds.) Mr. Breslow, began for the first time, seeking constant updates on the treasury balance in the Gnosis and the development expense budget, indicating that he was more concerned with the present value of the treasury than MovementDAO's long-term success.

57.     In addition to Mr. Breslow's newfound concern with MovementDAO's expenses, an even larger concern was Mr. Fine's perception of his contribution to MovementDAO as an "investment" that he could yank back from MovementDAO. In September 2022, following a decline in the cryptocurrency markets, Mr. Phillips learned from Mr. Breslow that Mr. Fine wanted 20% of Mr. Breslow's contributions and a $1 million redemption. On September 15, 2022, Mr. Fine communicated to the parties that he wanted to redeem his entire contribution.

58.     A redemption by a founding contributor would violate the fundamental terms governing MovementDAO as set forth in the GitBook, as well as assurances Counterclaim-Defendants made to Mr. Phillips, so Mr. Phillips responded to this news by writing a memorandum to Mr. Breslow, which was dated October 2, 2022, in addition to advising Mr. Reed, as MovementDAO's Authorized Member, of his concerns the day prior. After describing the facts relating to MovementDAO's creation and governance, its critical governing documents (including MIPs), and its structure as a Delaware unincorporated nonprofit association, Mr. Phillips explained that "[a]ny community proposal which directs the entity to return portion of their contribution

would be against the guiding principles and would be subject to veto," and that it would "strong suggest a fraudulent scheme designed to induce unwitting 3rd parties to contribute was afoot."

59.     When Mr. Fine continued pressing Mr. Breslow for a premature redemption, Mr. Phillips wrote and transmitted to Mr. Breslow a second memorandum explaining that a premature winddown of Movement would result in the "[r]esignation of dao-lawfirm.eth and the delegation of voting" along with "criminal" and "civil" consequences.

60.     Despite Mr. Phillips' memoranda, Mr. Fine and then Mr. Breslow himself continued to press Mr. Phillips regarding a redemption of their contributions to MovementDAO. Upon information and belief, the decline in the cryptocurrency markets and the value of Mr. Breslow's holdings in Bolt  in the recent equity selloffs in the technology sector, had caused significant liquidity problems for both Messrs. Fine and Breslow; the latter even had to sell his house in Miami for liquidity.

61.     Upon information and belief, Mr. Breslow's liquidity crisis was also induced by a lavish trip to Europe he took with an entourage, in which Mr. Breslow accrued $8 million in expenses, for which Mr. Gordon informed Mr. Phillips that Mr. Breslow was seeking reimbursement from Bolt.

62.     In conversations between October and December of 2022, Mr. Phillips continued to insist that Messrs. Breslow and Fine could not redeem their contributions to MovementDAO as the GitBook prohibited the same, and others had relied on those representations.

63.     On December 27, 2022, Mr. Phillips wrote a memorandum to Mr. Breslow describing their discussions regarding the issue of early redemptions. Mr. Phillips again explained why early redemptions were not allowed. Given the pressure Mr. Breslow was placing on him, Mr. Phillips also included a proposed path forward under which all community members would

be offered redemption rights; counsel would be retained to amend the terms of service; a schedule of payments would be created for parties, dao-lawfirm.eth, and developers, along with other acts necessary to effect those changes. Mr. Phillips, however, emphasized, "Funds held by the Movement DAO are for its purposes and are no longer the property of the contributors – as stated repeatedly in the disclaimers."

64.     Between December 28 and 30, 2022, Messrs. Phillips and Reed shared their fears with the community in messages on Discord. Mr. Breslow, presumably unhappy with Mr. Phillips' unwillingness to allow him to violate MovementDAO's governing documents, wrote the following in an email to Mr. Phillips (with Messrs. Fine and Gordon copied) on December 30, 2023: "Effective immediately, Alex Jon and I vote to stop all spend out of the Move treasury. We are happy to approve payment of your and Jon Gordon's salaries through January 31st. We will also consider any bare minimum necessary legal spend for the month of January."

65.     Upon information and belief, Mr. Breslow was speaking not only for himself, but also for Messrs. Fine and Gordon, when he directed Mr. Phillips to cease spending MovementDAO's funds.

66.     Counterclaim-Defendants lacked authority to force Mr. Phillips to cease spending MovementDAO's money because that money belonged to MovementDAO, and MovementDAO was governed by its members in accordance with its governing documents.

67.     Counterclaim-Defendants nonetheless caused significant harm by directing Mr. Phillips to cease spending MovementDAO's funds as they later accused Messrs. Phillips and Reed of defrauding them and took the position that MovementDAO had never launched and was not a real entity, all in an effort to try to take back their contributions to MovementDAO. As a result of Counterclaim-Defendants' actions, MovementDAO has incurred significant damage to its

goodwill, has had to spend significant amounts of money as a reasonable and foreseeable result of Counterclaim-Defendants' actions, and has lost economic opportunities it otherwise would have had.

68.     As just one example, Mr. Yurchak caused the Law Firm to resign as MovementDAO's Service Provider as a result of the conflict between the parties, which caused a substantial interruption in MovementDAO's business affairs as MovementDAO needed to procure the services of a new Service Provider. Mr. Yurchak later disclaimed the attorney-client relationship that existed between himself and the Law Firm and MovementDAO. Upon information and belief, Mr. Yurchak did so because of pressure that Counterclaim-Defendants placed on him.

69.     Counterclaim-Defendants further tried to interfere with MovementDAO's relationships with other contractors, including senior developers, spreading lies about Mr. Phillips and MovementDAO in an effort to convince the contractors to cease doing business with MovementDAO. Some of these efforts failed as many of MovementDAO's senior developers knew that MovementDAO was a legitimate and valuable organization and that Mr. Phillips had done nothing wrong.

70.     In the case of a contractor, Mr. Vizitiu, who managed MovementDAO's governance operations, Counterclaim-Defendants' campaign of interference succeeded, just as it did with Mr. Yurchak and the Law Firm. Upon information and belief, one or more of Counterclaim-Defendants, with authority from the remaining Counterclaim-Defendants, maligned Mr. Phillips to Mr. Vizitiu, implying that Mr. Phillips stole from MovementDAO, in an effort to cause Mr. Vizitiu to cease working for MovementDAO, which he did.

71.     Following Counterclaim-Defendants' attempt to "pull the rug," Messrs. Phillips and Reed worked hard to keep MovementDAO afloat. They convened an emergency committee to seek community input on MovementDAO's continued governance and operations, and followed committee decisions with MIPs to that the whole community could continue governing MovementDAO in accordance with its governing documents. Messrs. Phillips and Reed, along with MovementDAO's developers, continued building MovementDAO.

72.     Counterclaim-Defendants ambushed Messrs. Phillips and Reed with a lawsuit in a last-ditch effort to freeze MovementDAO's assets, obtaining an *ex parte* temporary restraining order on the basis of omissions, misrepresentations, fabrications.

<u>Legal Claims</u>

### COUNT I: BREACH OF CONTRACT

**MovementDAO against all Counterclaim-Defendants**

73.     Counterclaim-Plaintiffs incorporate by reference each of the proceeding paragraphs as though fully set forth herein.

74.     The GitBook is a valid contract between MovementDAO and its members. As members of MovementDAO, Counterclaim-Defendants consented to be bound by the GitBook.

75.     The GitBook provided that that the founders' (which includes Counterclaim-Defendants) tokens would be locked for a period of multiple years.

76.     Counterclaim-Defendants breached the GitBook by attempting to redeem their contributions to MovementDAO less than a year after MovementDAO launched, thereby breaching their obligation to keep their contributions locked for a period of multiple years.

77.     As a result of Counterclaim-Defendants' breach of the GitBook, MovementDAO has suffered damages in an amount to be proven at trial.

78.    The Guiding Principles is a contract between the Members of MovementDAO. As members of MovementDAO, Counterclaim-Defendants consented to be bound by the Guiding Principles.

79.    Section 2(f) of the Guiding Principles states: "Governance Rights and the governance tokens provide no possibility of profits and losses, no rights to distributions and dividends, and no rights to ownership or management of the DAO. Each Member (or assign, as the case may be) that receives or holds governance Tokens expressly and unequivocally agrees that the Tokens provide no rights to profits and/or losses, that the Tokens do not entitle their holder to distributions or dividends, and that the Tokens do not make their holder an owner or manager of the DAO."

80.    Counterclaim-Defendants breached Section 2(f) of the Guiding Principles by trying to exercise control over MovementDAO's treasury and operations without regard to MovementDAO's governing documents or governance processes.

81.    Section 6(d) of the Guiding Principles states: "During the term of their DAO Membership, and thereafter, any Member shall not make any disparaging remarks, or any remarks that could reasonably be construed as disparaging regarding the DAO, its Members, its affiliates, or its agents."

82.    Counterclaim-Defendants breached Section 6(d) of the Guiding Principles by disparaging MovementDAO, Mr. Phillips, and Mr. Reed by disavowing MovementDAO's existence to counterparties and describing its ongoing business, as well as Messrs. Phillips and Reed's role in governing MovementDAO, as fraudulent. For example, Counterclaim-Defendants disparaged MovementDAO and Mr. Phillips to Joao Ritter, the founder of Juicebox, a platform whose open-source code Mr. Phillips used to construct MovementDAO. As a result of this

disparagement, MovementDAO lost its close partnership with the Juicebox community, which has caused substantial harm to its future prospects.

83.     As a result of Counterclaim-Defendants' breaches of Sections 2(f) and 6(d) of the Guiding Principles, MovementDAO has suffered damages in an amount to be proven at trial.

84.     The Code of Conduct is a valid contract between MovementDAO and its members. As members of MovementDAO, Counterclaim-Defendants consented to be bound the Code of Conduct.

85.     Paragraph 3 of the Community Standards section of the Code of Conduct states: "Members must not employ any device, scheme, or artifice to defraud Movement, engage in any act, practice, or course of business that operates or would operate as a fraud or deceit on Movement, or engage in any manipulative practice with respect to Movement[.]"

86.     Counterclaim-Defendants breached Paragraph 3 of the Community Standards section of the Code of Conduct by attempting to withdraw their contributions to MovementDAO after inducing MovementDAO's members to contribute funds to MovementDAO by promising that their contributions would be locked for a period of multiple years. In addition, Counterclaim-Defendants further breached this provision by disavowing MovementDAO's existence to counterparties and describing its ongoing business, as well as Messrs. Phillips and Reed's role in governing MovementDAO, as fraudulent, thus engaging in a manipulative practice with respect to MovementDAO.

87.     As a result of Counterclaim-Defendants' breach of Paragraph 3 of the Community Standards section of the Code of Conduct, MovementDAO has suffered damages in an amount to be proven at trial.

88.     MIP-0004 is a valid contract between MovementDAO and its members. As members of MovementDAO, Counterclaim-Defendants consented to be bound by MIP-0004.

89.     MIP-0004 provides that "the DAO, through its Service Provider, is authorized to make payments to itself, dao-lawfirm.eth, and tankbottoms.eth [Mr. Phillips] for Cryptocurrency reimbursements associated with ongoing expenses which have continued to date, such as software subscriptions, development services, and individual and/or associated compensation."

90.     Counterclaim-Defendants breached MIP-0004 by disclaiming Mr. Phillips' right to expend funds on behalf of MovementDAO and actively frustrating MovementDAO's continued expenditures and operations.

91.     As a result of Counterclaim-Defendants' breach of MIP-0004, MovementDAO has suffered damages in an amount to be proven at trial.

## COUNT II: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### MovementDAO against all Counterclaim-Defendants

92.     Counterclaim-Plaintiffs incorporate by reference each of the proceeding paragraphs as though fully set forth herein.

93.     MovementDAO had a business relationship with Mr. Yurchak and the Law Firm as Mr. Yurchak and the Law Firm served as MovementDAO's legal counsel.

94.     Counterclaim-Defendants were aware of the business relationship between MovementDAO and Mr. Yurchak and the Law Firm.

95.     Counterclaim-Defendants engaged in intentional and unjustified interference with MovementDAO's relationship with Mr. Yurchak and the Law Firm by putting pressure on Mr. Yurchak to terminate his attorney-client relationship with MovementDAO. Counterclaim-Defendants acted with malice as their sole intent in interfering with this business relationship was

to cause Mr. Yurchak to cease acting as MovementDAO's legal counsel. Counterclaim-Defendants did not interfere with this relationship in their capacity as agents or employees of MovementDAO.

96.    As a result of Counterclaim-Defendants' interference with MovementDAO's relationship with Mr. Yurchak and the Law Firm, MovementDAO has suffered damages in an amount to be proven at trial.

97.    MovementDAO had a business relationship with an individual known as Mr. Vizitiu as Mr. Vizitiu managed governance operations for MovementDAO.

98.    Counterclaim-Defendants engaged in intentional and unjustified interference with MovementDAO's relationship with Mr. Vizitiu by maligning Mr. Phillips and MovementDAO to Mr. Vizitiu, falsely implying that Mr. Phillips was stealing from MovementDAO. Counterclaim-Defendants acted with malice as their sole intent in interfering with this business relationship was to cause Mr. Vizitiu to cease doing work for MovementDAO. Counterclaim-Defendants did not interfere with this relationship in their capacity as agents or employees of MovementDAO.

99.    As a result of Counterclaim-Defendants' interference with MovementDAO's relationship with Mr. Vizitiu, MovementDAO has suffered damages in an amount to be proven at trial.

100.    MovementDAO is entitled to punitive damages because Counterclaim-Defendants are personally guilty of intentional misconduct.

### COUNT III: DECLARATORY RELIEF

**MovementDAO against all Counterclaim-Defendants**

101.    Counterclaim-Plaintiffs incorporate by reference each of the proceeding paragraphs as though fully set forth herein.

102.     MovementDAO is an unincorporated nonprofit association that has been duly formed under Delaware law.

103.     Counterclaim-Defendants have taken the position that MovementDAO does not exist as such and has used that position in order to frustrate MovementDAO's ongoing business dealings.

104.     There is therefore an actual controversy involving MovementDAO's existence as an entity.

105.     MovementDAO therefore seeks a declaratory judgment affirming its existence as an unincorporated nonprofit association formed under Delaware law.

## COUNT IV: BREACH OF CONTRACT

### Mr. Phillips against all Counterclaim-Defendants

106.     Counterclaim-Plaintiffs incorporate by reference each of the proceeding paragraphs as though fully set forth herein.

107.     Counterclaim-Defendants and Mr. Phillips entered into a valid oral contract in or around December 2021. Under the terms of this contract, Mr. Phillips agreed to leave the SEC and work for what would become MovementDAO on a full-time basis in exchange for Counterclaim-Defendants agreeing to the following conditions (among others): (1) Mr. Phillips would have veto power over decisions relating to MovementDAO's treasury in order to assuage Mr. Phillips' worry that the project would devolve into a cryptocurrency pump-and-dump scheme; and (2) MovementDAO's founders, including Counterclaim-Defendants, would commit to providing substantial funding to MovementDAO, and agree to lock their contributions for six years so that the project would be sufficiently secure to attract developers and donors.

108.    Counterclaim-Defendants confirmed and ratified their promise to Mr. Phillips after Mr. Phillips performed his scope of work under the IC Agreement.

109.    Counterclaim-Defendants breached their oral contract with Mr. Phillips by engaging in efforts to revoke Mr. Phillips' right to exercise veto power over decisions relating to MovementDAO's treasury and by engaging in efforts to revoke their contributions to MovementDAO before even one year of the promised six-year lock-up period had elapsed.

110.    As a result of Counterclaim-Defendants' breach of contract, Mr. Phillips suffered damages in an amount to be proven at trial.

## COUNT V: PROMISSORY ESTOPPEL

### Mr. Phillips against all Counterclaim-Defendants

111.    Counterclaim-Plaintiffs incorporate by reference each of the proceeding paragraphs as though fully set forth herein.

112.    In or around December 2021, in order to induce Mr. Phillips to leave the SEC and work full-time on what would become MovementDAO, Counterclaim-Defendants made a number of promises to Mr. Phillips, including the following: (1) Mr. Phillips would have veto power over decisions relating to MovementDAO's treasury in order to assuage Mr. Phillips' worry that the project would devolve into a cryptocurrency pump-and-dump scheme; and (2) MovementDAO's founders, including Counterclaim-Defendants, would commit to providing substantial funding to MovementDAO, and agree to lock their contributions for six years so that the project would be sufficiently secure to attract developers and donors.

113.    Counterclaimants should have reasonably expected that Mr. Phillips would rely on their promises because Mr. Phillips made clear he would not leave the SEC to work full-time on

what would become MovementDAO unless Counterclaim-Defendants agreed to make such promises.

114.    Counterclaim-Defendants' promises did in fact induce Mr. Phillips to leave the SEC and work full-time on what would become MovementDAO.

115.    Counterclaim-Defendants breached their promises to Mr. Phillips by engaging in efforts to revoke Mr. Phillips' right to exercise veto power over decisions relating to MovementDAO's treasury and by engaging in efforts to revoke their contributions to MovementDAO before even one year of the promised six-year lock-up period had elapsed.

116.    As a result of Counterclaim-Defendants' breaches of their promises on which Mr. Phillips reasonably relied to his detriment, Mr. Phillips has suffered damages in an amount to be proven at trial, and injustice can only be avoided by enforcing Counterclaim-Defendants' promises.

## COUNT VI: FRAUD

### Mr. Phillips against all Counterclaim-Defendants

117.    Counterclaim-Plaintiffs incorporate by reference each of the proceeding paragraphs as though fully set forth herein.

118.    In order to induce Mr. Phillips to leave the SEC and work full-time on what would become MovementDAO, as well as contribute his own funds to MovementDAO, Counterclaim-Defendants promised in conversations with Mr. Phillips in or around December 2021 that (1) Mr. Phillips would have veto power over decisions relating to MovementDAO's treasury in order to assuage Mr. Phillips' worry that the project would devolve into a cryptocurrency pump-and-dump scheme; and (2) MovementDAO's founders, including Counterclaim-Defendants, would commit

to providing substantial funding to MovementDAO, and agree to lock their contributions for six years so that the project would be sufficiently secure to attract developers and donors.

119.    Counterclaim-Defendants made these promises without a present intent to honor them and with knowledge as to their falsity, as evidenced by Counterclaim-Defendants' later insistence that their contributions to MovementDAO were "investments" and that they had the right to withdraw their contributions to MovementDAO and direct MovementDAO's operations and treasury.

120.    Counterclaim-Defendants made these promises with the knowledge that their promises would induce Mr. Phillips to leave the SEC and work full-time on what would become MovementDAO. As a result of Counterclaim-Defendants' promises, Mr. Phillips left the SEC and worked full-time on what would become MovementDAO and contributed his own funds to MovementDAO.

121.    As a result of Counterclaim-Defendants' fraudulent inducement, Mr. Phillips has suffered damages in an amount to be proven at trial.

122.    Mr. Phillips is entitled to punitive damages because Counterclaim-Defendants are personally guilty of intentional misconduct.

Prayer for Relief

WHEREFORE, Counterclaim-Plaintiffs pray for relief as follows:

A.    That the Court enter judgment in favor of Counterclaim-Plaintiffs as against Counterclaim-Defendants.

B.    That the Court award Counterclaim-Plaintiffs compensatory damages, including all special damages and consequential damages arising out of Counterclaim-Defendants' wrongful acts.

C.     That the Court award Counterclaim-Plaintiffs punitive damages.

D.     That the Court issue preliminary and permanent injunctive relief so as to protect Counterclaim-Plaintiffs from suffering irreparable harm.

E.     That the Court issue declaratory relief establishing that MovementDAO is an unincorporated nonprofit association duly organized under Delaware law.

F.     That the Court award Counterclaim-Plaintiffs their fees and costs, including reasonable attorneys' fees, to the extent permitted by law or contract.

G.     That the Court issue Counterclaim-Plaintiffs such other and further relief that is just and proper.

Respectfully submitted,

 /s/ Nitoj P. Singh

DHILLON LAW GROUP INC.
Matthew S. Sarelson (Florida Bar 888281)
MSarelson@dhillonlaw.com
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
305.773.1952

DHILLON LAW GROUP INC.
Nitoj P. Singh (Admitted *pro hac vice*)
NSingh@dhillonlaw.com
Jesse Franklin-Murdock (Admitted *pro hac vice*)
JFranklin-Murdock@dhillonlaw.com
177 Post Street, Suite 700
San Francisco, CA 94108
415.433.1700

Attorneys for Defendant and Counterclaim-Plaintiff Mark Phillips; Defendant Benjamin Reed; and Counterclaim-Plaintiff MovementDAO