**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 1:23-cv-20727-RKA

**RYAN BRESLOW**, *et al.*,

    Plaintiffs,

v.

**MARK PHILLIPS**, *et al.*,

    Defendants.

_____/

**MOVEMENTDAO**, *et al.*,

    Counterclaim-Plaintiffs,

v.

**RYAN BRESLOW**, *et al.*,

    Counterclaim-Defendants.

---

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF MARK PHILLIPS, DEFENDANT BENJAMIN REED'S, AND COUNTERCLAIM-PLAINTIFF MOVEMENTDAO'S EXPEDITED MOTION TO MODIFY TEMPORARY RESTRAINING ORDER**

Table of Contents

I. INTRODUCTION ................................................................................................................ 1
II. FACTUAL BACKGROUND ............................................................................................. 3
    B. MovementDAO's Obligations to Mikhail Radin .............................................. 4
    C. MovementDAO's Additional Contractors ........................................................ 5
    D. MovementDAO's Operational Expenses .......................................................... 8
    E. Defendants' Personal Financial Accounts ........................................................ 9
III. LEGAL STANDARD ......................................................................................................... 9
IV. ARGUMENT ..................................................................................................................... 10
V. CONCLUSION .................................................................................................................. 11
VI. CERTIFICATION UNDER LOCAL RULE 7.1(A)(3) ................................................. 12

Table of Authorities

**Other Authorities**

Federal Rules of Civil Procedure 65(b)(4).......................................................................................... 9

Defendant and Counterclaim-Plaintiff Mark Phillips, Defendant Benjamin Reed, and Counterclaim-Plaintiff MovementDAO (collectively, "Movants"), by and through their attorneys, Dhillon Law Group Inc., hereby move the Court on an expedited basis to modify the Court's Order Granting the Plaintiffs' Emergency *Ex Parte* Application for Entry of Temporary Restraining Order, dated February 28, 2023 [ECF No. 18] (the "TRO"). Specifically, Movants seek (1) permission from the Court to make payment to certain third parties who have rendered services to Counterclaim-Plaintiff MovementDAO, a Delaware unincorporated nonprofit association ("MovementDAO"); and (2) clarification that Messrs. Phillips and Reed (collectively, "Defendants") may use their own funds in certain financial accounts they own.

## I.   INTRODUCTION

The Court issued the TRO over two months ago based on a Verified Complaint and accompanying motion that distorted and even misrepresented key facts. Plaintiffs Ryan Breslow, Alex Fine, and Jon Gordon (collectively, "Plaintiffs") obtained the TRO by telling the Court that MovementDAO had not launched, that the Law Office of Reed Yurchak was a sham law firm that provided no cryptocurrency-related services, and that Defendants diverted funds belonging to MovementDAO based on proposals enacted by themselves and their aliases. In opposing Plaintiffs' motion for a preliminary injunction, Defendants provided proof that MovementDAO had indeed launched; that both Plaintiffs and Movants obtained legal services relating to cryptocurrency from Mr. Yurchak; and that Defendants only spent MovementDAO's money after its members approved actions recommended by an emergency committee that included Defendants and other MovementDAO contributors and community members. *See generally* ECF No. 43. As the Court put it at the first hearing on the motion, "[e]very single thing [Plaintiffs] say in [their] motion [Defendants] have an explanation for." Prelim. Inj. Hr'g Tr. 4:18–20, Mar. 28, 2023.

The TRO essentially froze MovementDAO's operations. Like any business or non-profit organization, MovementDAO has vendors and contractors to pay and routine expenses. Rather than shut MovementDAO down, Defendants have used personal funds to keep MovementDAO afloat, using their own assets and credit to pay third parties as its developers continue building the platform. In an abundance of caution, Defendants have further left personal funds in personal accounts that contained funds subject to the TRO untouched. While these efforts have been burdensome for Defendants, Defendants expected (and still expect) to vindicate themselves and MovementDAO at the preliminary injunction hearing. Yet the preliminary injunction process has dragged on for months—the parties stipulated to a longer briefing schedule; Plaintiffs failed to produce witnesses at the March 28 hearing, resulting in a continuance; the complexities of the case require the parties to return to court for an additional day of testimony on May 25, 2023; and there is a probability of at least one side objecting to the findings and recommendations of the Magistrate Judge before a final order issues.

MovementDAO is in a precarious position as a result of the continued effect of the TRO. If Defendants prevail at the preliminary injunction phase, MovementDAO's operations will continue. In order for them to be an organization that can continue, MovementDAO's bills must be paid. Up to this point, Mr. Reed has spent $22,095.91 on MovementDAO's behalf, and Mr. Phillips, through Meow, LLC, has spent $88,586.35 on MovementDAO's behalf. Defendants, however, cannot continue to keep MovementDAO afloat out of their own pockets (particularly without access to their personal accounts), and Movants therefore bring this motion seeking two discrete modifications to the TRO that will preserve the status quo (MovementDAO continues to operate albeit with most of its funds locked) pending the Court's decision on the preliminary injunction motion.

Movants respectfully request that the Court decide the motion on an expedited basis pursuant to Local Rule 7.1(d)(2). As explained below, MovementDAO will owe its contractors payment for work performed in May 2023 on May 31, 2023. Accordingly, Movants request a ruling on or before May 30, 2023.

## II.     FACTUAL BACKGROUND

### A. The Present State of MovementDAO's Finances

In Defendants' Notice of Compliance and Response to Order to Show Cause, dated March 24, 2023 [ECF No. 51] ("Notice of Compliance"), Defendants provided the Court with a detailed summary of cryptocurrency transactions involving two accounts belonging to MovementDAO, specifically, the Movement Gnosis Account and the Developer Gnosis Account. The Notice of Compliance demonstrated that of the $8,826,902.96 transferred from the Movement Gnosis Account during the relevant time period, all but $2,733,697.78 had been returned back to the Movement Gnosis Account, and that the shortfall consists wholly of transfers made to the Developer Gnosis Account. ECF No. 51 at 5. After itemizing all transfers to and from the Developer Gnosis Account, Defendants established that only $65,724.41 remains uncategorized, and that amount is explained solely by (1) fluctuations in the value of Ethereum relative to the U.S. Dollar; and (2) gas payments, i.e., cryptocurrency conversion transaction fees., and that this shortfall is explained solely by (1) fluctuations in the value of Ethereum relative to the U.S. Dollar; and (2) gas payments, i.e., cryptocurrency conversion transaction fees. *Id.* at 8. At present, the Movement Gnosis Account contains cryptocurrency equivalent to $11,978,213.15, and the Developer Gnosis Account contains cryptocurrency equivalent to $21,801.65.[1] *See* Declaration of Benjamin Reed ("Reed Decl.") ¶ 3.

---

[1] These values fluctuate based on the value of DAI and Ethereum relative to the dollar.

To complete the picture of MovementDAO's finances, Movants are including a cash accounting of funds related to MovementDAO ("Cash Accounting"), previous versions of which Movants' counsel shared with Plaintiffs' counsel. *See* Reed Decl. ¶ 4, Exh.1; Declaration of Nitoj P. Singh ¶ 2. The Cash Accounting demonstrates that the sum of all transfers involving MovementDAO funds in the time period covered by the TRO and the balance of all accounts that contain MovementDAO funds is $2,545,291.46, which exceeds the $2,304,485.48 transferred from the Developer Gnosis Account to Defendants during the time period covered by the TRO. *See* Reed Decl ¶ 4, Exh. 1. In other words, every cent has been accounted for, and no MovementDAO assets have been dissipated.

**B. MovementDAO's Obligations to Mikhail Radin**

Mikhail Radin began working as a core blockchain developer for MovementDAO around April 1, 2023 as an independent contractor. Declaration of Mikhail Radin ("Radin Decl.") ¶ 2. Mr. Radin earns an annual salary of $400,000, and he works in excess of forty hours per week for MovementDAO. *Id.* ¶ 3. Mr. Radin is an experienced computer programmer with proficiencies in Typescript and Blockchain specific languages including Solidity. *Id.* ¶ 4. Mr. Radin performs blockchain implementation work for MovementDAO, the underlying smart contracts, and is developing MovementDAO's application, particularly how the website interacts with the blockchain, i.e., through Typescript libraries interacting with smart contracts. *Id.* ¶ 5. Mr. Radin and MovementDAO agreed that Mr. Radin's compensation in 2022 would be deferred until 2023, an agreement Mr. Radin sought for reasons relating to his intended purchase of a home. *Id.* ¶ 6. MIP-0018, a governance proposal dated January 31, 2023, which was subsequently approved by the MovementDAO community, MovementDAO owed Mr. Radin 234,035 DAI (nearly the same amount in dollars) for deferred 2022 compensation. Reed Decl. ¶ 5, Exh. 2. As Mr. Radin

4

continued to work for MovementDAO in 2023, MovementDAO continued to incur financial obligations to Mr. Radin for services rendered. *Id.* ¶ 6.

On February 14, 2023, before the TRO was issued, MovementDAO paid Mr. Radin $79,520.00 for work he performed in December 2022 and January 2023, which is separate from the deferred compensation obligation shown in MIP-0018. *Id.* ¶ 7. On March 8, 10, and 13, 2023, MovementDAO issued payment to Mr. Radin in the respective amounts of $100,000.00, $100,000.00, and $38,417.67, which would have constituted payment in full through April 2023. *Id.* ¶ 8. On April 13, 2023, Mr. Radin voluntarily returned $238,417.67 to MovementDAO. Radin Decl. ¶ 7. Mr. Radin returned these funds in a good-faith effort to comply with the TRO, but it is both his and MovementDAO's understanding that these funds are due and owing for services rendered. *Id.* ¶ 8; Reed Decl. ¶ 9. Returning the funds has resulted in substantial personal hardship for Mr. Radin; in addition to essentially working without pay for the better part of both 2022 and 2023, Mr. Radin has had to dip into savings to pay bills and living expenses and has had to delay the purchase of a home. Radin Decl. ¶ 9. Mr. Radin further anticipates that his return of the funds without subsequent payment will interfere with his ability to obtain credit for the purchase of his home. *Id.* ¶ 10.

### C. MovementDAO's Additional Contractors

In addition to Mr. Radin, other individuals have provided services to MovementDAO, and MovementDAO has benefited from their ongoing efforts. But as a result of the TRO, several of these contractors have worked for no pay. Specifically, MovementDAO owes Action Engine, Yuri

Popov, and Aishwarya Narayana money for development work they performed for MovementDAO with a promise of compensation.[2]

MovementDAO contracts with Action Engine, a company operated by Sergey Sukov, for support engineering and development consulting. Action Engine began performing work for what became MovementDAO in September 2021. Action Engine's work focuses on core back-end infrastructure, website development, and cloud service deployment. MovementDAO currently owes Action Engine $55,000.00 for services rendered, which is equivalent to three months of services. Reed Decl. ¶ 10. Action Engine has since taken its three application developers off the MovementDAO development project, resulting in further delays and distractions for the core development team. *Id.* ¶ 11.

Yuri Popov is a part-time developer who has provided support engineering services to MovementDAO on a part-time basis since September 2022. Mr. Popov's work focuses on MovementDAO's web application, user interface styling, internationalization, and infrastructure testing. MovementDAO currently owes Mr. Popov $4,527.25 for services rendered, which is equivalent to one month of services. *Id.* ¶ 12.

Aishwarya Narayana is a design and program manager who has provided services to MovementDAO since January 2023. Ms. Narayana's focus is developing the text and graphic interfaces by which users will interact with MovementDAO's application, and she also provides branding and product expression services. MovementDAO pays Ms. Narayana through the

---

[2] In addition to these contractors, MovementDAO owes Meow, LLC (owned and operated by Mr. Phillips) $30,860.00 for advancing funds MovementDAO owed Daniel Resnick-Neillie for work he provided to MovementDAO's for governance and documentation. Reed Decl. ¶ 14. Movants are not seeking leave to pay Meow, LLC the past-due amount or any amount to themselves at this time as MovementDAO's immediate priority is paying its developers so that MovementDAO can continue its operations. Thus, even if the motion is granted, Defendants will still have advanced a significant amount of money to fund MovementDAO's ongoing operations.

company Viciously AB (which is owned and operated by Evita Stenqvist, another MovementDAO developer). MovementDAO currently owes Ms. Narayana $32,000.00 for services rendered, which is equivalent to two months of services. Ms. Narayana provided a resignation notice to McKinsey & Company (where she was previously employed) to focus on MovementDAO on a full-time basis. *Id.* ¶ 13.

In addition to the past-due amounts described above, MovementDAO will owe the following individuals compensation or work performed in May 2023[3]:

- MovementDAO will owe Mr. Radin $33,333.34 for services rendered in May 2023. *Id.* ¶ 15.

- MovementDAO will owe Ms. Stenqvist $30,000.00 for services rendered in May 2023. Ms. Stenqvist has served as MovementDAO's lead front-end developer since April 2022. Ms. Stenqvist is responsible for all website and user interface components of the MovementDAO and associated DAOLABS platforms. Ms. Stenqvist also supervises Action Engine and Ms. Narayana's work. *Id.* ¶ 16.

- MovementDAO will owe Ms. Narayana $16,000.00 for services rendered in May 2023. *Id.* ¶ 17.

- MovementDAO will owe Sameer Tariq $15,000.00 for services rendered in May 2023. Mr. Tariq has worked as a senior Typescript developer for MovementDAO since December 2021. Mr. Tariq works on MovementDAO's core application development and its back-end systems architecture. *Id.* ¶ 18.

---

[3] The following list includes contractors who are owed past-due amounts as well as those who are not as they received salary advances to cover work through April 2023 from MovementDAO.

- MovementDAO will owe Mr. Resnick-Neillie $7,715.00 for services provided in May 2023. Mr. Resnick-Neillie is an attorney who began providing services to MovementDAO in 2023, and responsibilities include reviewing governance proposals, editing legal and entity formation documents, conducting legal research, drafting legal analysis, and providing advice on general legal matters. *Id.* ¶ 19.

- MovementDAO will owe Natalia Phillips $15,000.00 for services rendered in May 2023.[4] Ms. Phillips is a designer and graphic artist who has provided services to what became MovementDAO since November 2021. Ms. Phillips is responsible for most of the artwork utilized by MovementDAO and its affiliates, including, without limitation, MovementDAO's entire application interface for both the DAO treasury and the non-fungible tokens ("NFT") collection system; artwork for the platform NFTs including the MAPE non-fungible tokens used for voting; the PeaceDAO brand, merchandise and NFT; and the DAOLABS logo, branding, and governance website. *Id.* ¶ 20.

### D. MovementDAO's Operational Expenses

Defendants have not only continued to work for MovementDAO on a full-time basis without receiving pay since the TRO was issued, but Defendants have kept MovementDAO afloat with personal funds and credit. Mr. Reed has incurred expenses on MovementDAO's behalf in the amount of $22,095.91 for which he has received no reimbursement. *Id.* ¶ 21. Mr. Phillips, through his company, Meow, LLC, has incurred expenses on MovementDAO's behalf in the amount of $88,586.35, for which he has received no reimbursement. Declaration of Mark Phillips ("Phillips Decl.") ¶ 2. While Movants are not seeking reimbursement for those funds, Defendants' personal contributions to MovementDAO reflect their good faith.

---

[4] Ms. Phillips is married to Mr. Phillips, a fact of which Plaintiffs are aware.

### E. Defendants' Personal Financial Accounts

In an abundance of caution, Defendants have made efforts to cease using financial accounts that contained funds subject to the TRO, i.e., the accounts listed under the "BALANCE OF FIAT ACCOUNTS – MOVEMENT & PERSONAL" heading in the Cash Accounting. As relevant to this motion, those accounts include Mr. Phillips' Investment Robinhood account ("Phillips Robinhood Account") and Mr. Reed's personal Wells Fargo checking account with an account number ending in 9216 ("Reed Wells Fargo Account"). Prior to this lawsuit, Defendants generally used both accounts primarily for personal purposes. Reed Decl. ¶ 22; Phillips Decl. ¶ 3. However, Defendants caused MovementDAO funds to be routed through these accounts to facilitate the payment of vendors, and Defendants have thus made efforts to cease using these accounts in an abundance of caution in order to avoid a dispute about their compliance with the TRO. Reed Decl. ¶ 23; Phillips Decl. ¶ 4. The Cash Accounting confirms that of the $1,216,929.23 in the Phillips Robinhood Account, $1,123,614.24 can be traced to MovementDAO's accounts during the thirty-day look-back period set forth in the TRO. *See* Reed Decl. ¶ 4, Exh. 1. The Cash Accounting further shows no transfers of MovementDAO funds to the Reed Wells Fargo Account during the thirty-day look-back period. *See id.*

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for the modification of temporary restraining orders: "On 2 days' notice to the party who obtained the [temporary restraining] order without notice--or on shorter notice set by the court--the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires." Fed. R. Civ. P. 65(b)(4).

9

### IV.     ARGUMENT

Movants are seeking limited relief from the TRO while the preliminary injunction phase continues. Specifically, Movants request that the Court enter the proposed order submitted herewith, which provides for the following: (1) permits MovementDAO to pay contractors outstanding amounts due for services rendered (a total of $325,562.25); (2) permits MovementDAO to pay contractors amounts that will become due and owing for services rendered at the end of May 2023 (a total of $117,048.34); and (3) clarifies that Defendants may make transactions involving personal assets in the Phillips Robinhood Account and the Reed Wells Fargo Account provided that Mr. Phillips maintain a balance of at least the amount of MovementDAO funds in the Phillips Robinhood Account. Under the factor test used in adjudicating motions for temporary restraining orders and preliminary injunctions, the limited relief sought serves the interest of justice by avoiding prejudice to Defendants, MovementDAO, and third parties, without the risk of any irreparable harm to Plaintiffs.

In issuing the TRO, the Court found a likelihood of irreparable harm based on the risk that "Defendants will likely succeed in dissipating all the assets in the DAO endowment and other DAO-affiliated accounts," and that, as to the balance of equities factor, "Plaintiffs' [sic] continued dissipation of DAO endowment funds is likely to harm Plaintiffs, and there is no countervailing interest in protecting the Defendants' conduct." ECF No. 18 at 2–3. The proposed modification of the TRO carries no risk of the irreparable harm about which the Court was concerned. Movants are seeking leave to spend up to $442,610.59 of MovementDAO's funds, which is only 3.69% of MovementDAO's cryptocurrency in the Movement Gnosis Account and the Developer Gnosis Account. Thus, the overwhelming majority of MovementDAO's assets will remain untouched until the Court decides the preliminary injunction motion. If the Court confirms that Defendants

may use their personal funds in the personal accounts at issue, there is likewise no risk of irreparable harm to Plaintiffs as Defendants would only be spending their funds—not MovementDAO's funds (and certainly not Plaintiffs' funds).

In contrast to the minimal prejudice to Plaintiffs associated with the relief at issue, there would be extreme prejudice to MovementDAO, third parties, and Defendants if the motion is denied. Each of the contractors identified above provided valuable services to MovementDAO with the expectation of payment. Those contractors contributed labor to MovementDAO and deserve to be paid for their work. In Mr. Radin's case, the potential for prejudice is even larger as Mr. Radin is owed compensation for nearly all of the work he has performed for MovementDAO to date, and he will experience significant hardship unless Movants are given leave to pay Mr. Radin on MovementDAO's behalf. While MovementDAO's contractors have provided valuable services for MovementDAO, their work will likely cease if the Court does not permit them to be paid. Reed Decl. ¶ 24. Without the work of these contractors, almost all development work on MovementDAO will cease; all work performed by the parties to-date will have been for naught; the MovementDAO platform will never be completed; and no further social movements will be funded. *Id.* ¶ 25. As far as the Phillips Robinhood Account and the Reed Wells Fargo Account, Defendants rely on these accounts to pay bills and living expenses (including, in Mr. Reed's case, his mortgage on his home), and Defendants will face significant hardship unless the Court confirms that they may access their own funds in those accounts. *Id.* ¶ 26; Phillips Decl. ¶ 5.

**V.      CONCLUSION**

Based on the foregoing arguments and authorities, Defendant and Counterclaim-Plaintiff Mark Phillips, Defendant Benjamin Reed, and Counterclaim-Plaintiff MovementDAO respectfully request that this Honorable Court enter an order modifying the TRO so that

11

MovementDAO can pay individuals who have provided and continue to provide valuable services to MovementDAO and so that Defendants can utilize personal funds in personal accounts.

## VI.   CERTIFICATION UNDER LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(A)(3), I hereby certify that counsel for Defendants and Counterclaim-Plaintiffs conferred with counsel for Plaintiffs regarding the relief requested herein. Plaintiffs oppose the relief sought by Defendants and Counterclaim-Plaintiffs.

Respectfully submitted,

 /s/ Nitoj P. Singh

DHILLON LAW GROUP INC.
Matthew S. Sarelson (Florida Bar 888281)
MSarelson@dhillonlaw.com
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
305.773.1952

DHILLON LAW GROUP INC.
Nitoj P. Singh (Admitted *pro hac vice*)
NSingh@dhillonlaw.com
Jesse Franklin-Murdock (Admitted *pro hac vice*)
JFranklin-Murdock@dhillonlaw.com
177 Post Street, Suite 700
San Francisco, CA 94108
415.433.1700

Attorneys for Defendant and Counterclaim-Plaintiff Mark Phillips; Defendant Benjamin Reed; and Counterclaim-Plaintiff MovementDAO