UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| RYAN BRESLOW, ALEX FINE, and JON GORDON,<br><br>      Plaintiffs,<br><br>v.<br><br>MARK PHILLIPS and BENJAMIN REED,<br><br>      Defendants. | Action No.: 23-cv-20727-ALTMAN/Reid<br><br>Honorable Roy K. Altman |
| MOVEMENTDAO and MARK PHILLIPS,<br><br>      Counterclaim-Plaintiffs<br>v.<br><br>RYAN BRESLOW, ALEX FINE, and JON GORDON,<br><br>Counterclaim-Defendants | |

**OPPOSITION TO EXPEDITED MOTION TO AMEND TEMPORARY RESTRAINING ORDER**

I.     **Introduction**

The audacity of Defendants' Motion is staggering.  Defendants have repeatedly violated the TRO and continue to be in flagrant non-compliance.  And yet Defendants ask this Court to relieve them of TRO obligations that they have never honored.

The TRO's directive is simple.  It orders Defendants, their attorneys, and those in active participation with Defendants to return all assets transferred out of the DAO endowment in February 2023, and it forbids any other transfers from any account that received DAO endowment assets from those February 2023 transfers.  Dkt. No. 18.  Defendants have violated these directives over a dozen times, including Defendants transferring TRO-covered assets to third parties after the TRO went into effect.  In addition, nearly three months after the TRO issued, Defendants still have refused to return over $2,300,000 in TRO-covered assets that are in their possession, custody, or control.  Even Defendants' counsel, the Dhillon Law Group, is in violation of the TRO, for they have refused to return $300,000 to the DAO endowment account, despite admitting they possess these funds and despite being specifically directed by the TRO to return them.  Plaintiffs' counsel has never seen a litigant or their counsel be in such open rebellion to an injunction issued by a federal court.

Defendants' Motion does not attempt to justify the non-compliance.  Instead, the Motion is replete with glaring omissions about the nature of the transfers they request the Court to authorize.  For example, Defendants state that Mikhail Radin voluntarily returned $238,427.67. Dkt. No. 86 at 5.  What Defendants omit is that Defendants originally transferred those funds to Mr. Radin in March 2023 *after* the TRO went into effect and in violation of its prohibition against transferring DAO endowment assets.  *See* Dkt. No. 86-3, Ex. 1.  Even characterizing Mr. Radin as "returning" those violative transfers is misleading.  Mr. Radin returned those monies to

*Defendants*, but Defendants never returned those monies *to the DAO endowment*, as the TRO obligates them to do.  Yet Defendants have the gall to ask this Court to authorize the very transfers to Mr. Radin that violated the TRO.  Dkt. No. 86 at 5.  Mr. Radin is the poster child for Defendants' contempt for this Court's order.

Defendants also claim hardship because they cannot access monies in the personal accounts subject to the TRO.  Dkt. No. 86 at 9.  That hardship is a product of their failure to comply with the TRO's directives.  Had Defendants returned the DAO endowment assets that they transferred to their personal accounts, then there would be no reason for their personal accounts to remain frozen.  But Defendants have refused to return those funds.  *See* Dkt. No. 86-3, Ex. 1.  That flagrant noncompliance justifies not only maintaining a freeze on their personal accounts, it warrants imposing sanctions on Defendants for not returning the monies as directed by the TRO.

Defendants are entitled to no relief here.  Instead, the Court should finally grant Plaintiffs' request to hold Defendants in contempt, *see* Dkt. No. 35 at 7-8—that request was made over a month ago and Defendants' violations have only continued.  Plaintiffs have demonstrated (and will demonstrate again at the May 25 hearing) that Defendants' Notice of Compliance with the TRO is untrustworthy and inaccurate, Dkt. No. 52 at 2-4; Plaintiffs have demonstrated that Defendants have refused to return DAO endowment funds that they hold in cash, Dkt. Nos. 52 at 3-4; 86-3, Ex. 1; and Plaintiffs have demonstrated that the payments Defendants have made to developers—and in their Motion ask to make again—are illegitimate, Dkt. No. 52 at 2-5.  No modification to the TRO should issue until Defendants comply with the TRO.  Instead, Defendants should finally be sanctioned for their contempt.

Defendants' Motion also should be denied—and Defendants should be ordered to pay Plaintiffs' attorneys fees in connection with this Motion—for abusing the expedited motions process. Defendants approached Plaintiffs with a request to modify the TRO on April 17, 2023—over a month ago. Declaration of Chris Berg ("Berg Decl."), Ex. E. Plaintiffs rejected that request because Defendants were and continue to be in egregious violation of the TRO. If there were any urgency to this matter, Defendants should have promptly filed their Motion in April after Plaintiffs rejected their request. Instead, Defendants sat on this Motion until a week before the second preliminary injunction hearing. It is transparent gamesmanship for Defendants to file this Motion as "expedited" one week before the continued preliminary injunction hearing.

## II.   Factual Background

Plaintiffs obtained a TRO on February 28, 2023 on facts that have been established by the evidence and testimony presented at the ongoing preliminary injunction hearing. Dkt. No. 18. Plaintiffs have demonstrated that the Movement DAO project has not launched. Berg Decl., Ex. I [Tr.[1] 11:21-12:7; 13:11-14:10; 19:8-10; 20:14-20; 48:7-13; *19:13-22; *23:4-13]. Plaintiffs have demonstrated through the testimony of Reed Yurchak that the "dao-lawfirm" is a sham law firm that Mr. Phillips constructed to deceive Plaintiffs and siphon money from the DAO endowment to himself. *Id.*, Ex. I [Tr. *59:23-60:9; *61:8-14; *62:3-7; *65:23-25; *66:16-67:2; *68:10-11]. Plaintiffs have demonstrated that Defendants constructed a "voting scheme" that they manipulated to achieve their goal of securing control over the Movement DAO project, including by misrepresenting the identity of voters. *Id.*, Ex. I [Tr. 25:5-18; 26:1-20; 46:16-21; *69:17-23; *71:1-12]; Joint Fact Stip. No. 19. In short, Plaintiffs have established that

---

[1] Citations to the rough version of the hearing transcript ("Tr.") refer to the preliminary injunction hearing proceedings from April 27, 2023 unless otherwise noted. Those citations to the afternoon session of the April 27, 2023 hearing are separately denoted with an asterisk (*)

Defendants have defrauded Plaintiffs on a massive scale. Defendants now want to unfreeze the personal accounts subject to the TRO because they see the writing on the wall—a preliminary injunction is coming.

Defendants ask this Court to allow them to spend nearly $500,000 of the money that Defendants illegally seized from the DAO endowment. Dkt. No. 86 at 10. As Plaintiffs have explained, 97% of the DAO endowment belongs to Plaintiffs. Berg. Decl., Ex. I [Tr. 9:13-10:12]. In other words, Defendants are asking the Court to authorize Defendants to spend Plaintiffs' money. Given the facts that have been established and that will be further established at the hearing, Defendants' request should be rejected.

### III.  Legal Standard

Defendants do not cite the legal standard for modification of the TRO. That standard is "When considering whether to modify a . . . [TRO], a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law." *Omaha Indem. Co. v. Wining,* 949 F.2d 235, 239 (8th Cir.1991) (citations and internal quotation marks omitted).

### IV.  Argument

There have been no changes in the facts or the law. The same developers that were supposedly working on the Movement DAO project when the TRO was issued in February are the same developers to which Defendants now seek to send funds. Nothing new has occurred that warrants the requested relief.

To the contrary, all considerations of equity weigh in favor of Plaintiffs. Since the issuance of the TRO, Defendants (1) have made numerous transfers using DAO endowment assets in violation of the TRO; (2) have refused to unwind transactions subject to the TRO and

return DAO endowment assets that they converted into cash; and (3) have provided a notice of compliance riddled with inaccuracies that demonstrates that Defendants have not provided a full accounting for the DAO endowment assets subject to the TRO.  Despite this evidence of dissipation and concealment, Defendants ask this Court for permission to further dissipate nearly $500,000 of DAO endowment assets to third parties.

A.  **Refusal to return cash**

1.  **Defendants**

By Defendants' own admission (and their own accounting) they have: (1) transferred over $2.3 million in funds from the DAO endowment to accounts they control; (2) converted those funds to fiat currency; and (3) failed to return those funds. Dkt Nos. 51, 51-1 ¶¶ 3-6, 86-3, Ex. 1; Berg Decl., Exs. D, H.   This is a violation of the TRO, which requires the return of all TRO assets.

Defendants do not contest these transfers.  In both their Notice of Compliance and the cash accounting they attached to their Motion, Defendants acknowledge that they personally received transfers of TRO assets on February 2, 2023 (bringing them within the scope of the TRO), and that those TRO assets were "converted to fiat currency and not unwound."

| AMOUNT OF CRYPTOCURRENCY RECEIVED BY BENJAMIN REED & MARK PHILLIPS - CONVERTED TO FIAT AND NOT UNWOUND | | | | |
|---|---|---|---|---|
| TnX Date | From ENS | To ENS | Amount - USD | |
| 2/2/2023 | dev.gnosis.eth | benreed.eth | $ | 592,378.66 |
| 2/2/2023 | dev.gnosis.eth | benreed.eth | $ | 250,159.91 |
| 2/2/2023 | dev.gnosis.eth | benreed.eth | $ | 322,034.67 |
| 2/2/2023 | dev.gnosis.eth | Mark Phillip's Robinhood | $ | 64,937.51 |
| 2/2/2023 | dev.gnosis.eth | tankbottoms.eth | $ | 1,058,676.73 |
| 2/5/2023 | dev.gnosis.eth | serviceprovider.eth | $ | 16,298.00 |
| | | | $ | 2,304,485.48 |

Dkt. No. 86-3, Ex. 1.

Defendants' accounting shows that over $2.3 million in cash was transferred to Defendants Reed and Phillips personally, which have not been returned to the DAO endowment.

Dkt. No. 86-3, Ex. 1.  In a prior filing, Defendants justified their failure to return the cash by arguing that unwinding these transactions would incur transaction costs in converting the cash back into cryptocurrency.  Dkt. No. 51 at 7-8.  As Plaintiffs previously explained, there is no "transaction cost" exception to the TRO, and Defendants' attempt to read such an exception into the TRO does not excuse compliance.[2]  Dkt. No. 52 at 3.

Despite this clear, months-long, and ongoing violation of the TRO, Defendants ask the Court to modify the TRO to permit their use of personal financial accounts that still contain TRO assets.  Without so much as mentioning that the TRO requires them to return the TRO assets in their personal accounts, Defendants offer only that they have "made efforts to cease using financial accounts that contained funds subject to the TRO" without explaining why these accounts still contain TRO assets. Dkt. No. 86 at 9.  Defendants were required to do more than simply freeze the TRO assets in their personal accounts; they were obligated to transfer those funds back to the DAO endowment account.  Dkt. No. 18.  Had Defendants done as the TRO ordered, then Defendants would no longer contain TRO assets, which would then present a legitimate reason to modify the TRO.  The Court should not unfreeze the accounts that Defendants are actively using to violate the TRO.

### 2. **Dhillon Law Group**

Defendants' flouting of the TRO is compounded by their counsel's own non-compliance.  The TRO expressly requires Defendants' "attorneys" to return any TRO assets.  Dkt. No. 18 at 4.  The Dhillon Law Group has received $300,000 that, by its own admission, is subject to the TRO.  Ex. L (Mar. 28 Hearing Tr.) at 26:20-24; *see also* Dkt. No. 86-3, Ex. 1.  Now, over ten weeks since this Court issued the TRO, defense counsel has still not returned the funds.

---

[2] Tellingly, Defendants decline to make this spurious argument in the present Motion.

Plaintiffs have repeatedly sought defense counsel's compliance with the TRO. On April 3, 2023, Plaintiffs' counsel sent a letter reminding defense counsel of its obligations under the TRO and demanding the return of the funds no later than April 5, 2023. Berg Decl., Ex. A. Defense counsel refused, instead responding that it would "again seek guidance from the Court with respect to those funds." *Id.*, Ex. C. That was nothing but a stall tactic. Ten weeks have passed since the TRO has issued, and defense counsel has not sought any clarification from the Court about what to do with cash TRO assets. On May 10, 2023, Plaintiffs' counsel sent defense counsel another letter demanding that defense counsel comply with the TRO and return the $300,000 by May 15, 2023. *Id.*, Ex. M. Defense counsel did not even bother to respond. Defendants have failed to direct their counsel to return TRO assets—yet another example of Defendants' failure to comply with the TRO.

### B. DAO endowment assets remain unaccounted for

Defendants should not be relieved from any TRO obligations because they have failed to provide an accurate accounting per the Court's order. Dkt. No. 47 (order directing Defendants to file a notice of compliance).

#### 1. Unaccounted for cash

Defendants have failed to explain how they spent TRO assets, which is a violation of the Court's order directing them to provide an accounting. *See* Dkt. No. 47.

| TRANSACTIONS RELATED TO MOVEMENTDAO WITH MOVEMENTDAO'S FUNDS | | |
|---|---|---|
| Date | Amount - USD | Comments |
| 2/9/2023 | $ 18,669.89 | DAOLABS LLC credit card payment |
| 2/27/2023 | $ 40,000.00 | Reimbursement of expenses to Meow, LLC in accordance with MIP-0017 |

Dkt. No. 86-3, Ex. 1.

For example, Defendants failed to explain what items or services were purchased with TRO assets in connection with a $18,669.89 credit card payment. Similarly, Defendants failed to

explain the "expenses" that $40,000 of TRO assets went to reimburse Meow LLC on February 27, 2023. Dkt. No. 86 at 6, 8. Meow LLC, unsurprisingly, is an entity controlled by Mark Phillips. These are just two instances showing how Defendants dissipated TRO assets to pay themselves.

Mark Phillips admitted that TRO assets were transferred to his Investment Robinhood account, and he represented that he has "made efforts to cease using this account in an abundance of caution to avoid a dispute about my compliance with the [TRO]." Dkt. No. 86-1 ¶¶ 3, 4. Mr. Phillips's representations about his "efforts" are false. A comparison between the cash accounting provided to Plaintiffs of April 13 and the cash accounting submitted with Defendants' Motion shows that Mr. Phillips has transferred over $90,000 out of his Investment Robinhood account between April 13 and May 10, 2023.[3]

**Mark Phillips Investment Robinhood account as of April 13, 2023**

| BALANCE OF FIAT ACCOUNTS - MOVEMENT & PERSONAL | | | |
|---|---|---|---|
| Date | Account | Current Balance (USD) | Comments |
| 4/12/2023 | MARK PHILLIPS ROBINHOOD - INVESTMENT | $ 1,308,093.00 | Current balance as of 4/13/23 |

Berg Decl., Ex. H.

**Mark Phillips Investment Robinhood account as of May 10, 2023**

| BALANCE OF FIAT ACCOUNTS - MOVEMENT & PERSONAL | | | | |
|---|---|---|---|---|
| Date | Account | Beginning Balance (USD) | Current Balance (USD) | Comments |
| 4/12/2023 | DAOLABS LLC CHASE CHECKING…0195 | $ 1,336.46 | $ 280,498.32 | Current balance as of 5/10/23 |
| 4/12/2023 | DAOLABS INC CHASE CHECKING…2721 | $ 1,185.00 | $ 111,049.67 | Current balance as of 5/10/23 |
| 4/12/2023 | BEN REED ROBINHOOD | $ 90.26 | $ 261.26 | Current balance as of 5/10/23 |
| 4/12/2023 | BEN REED CHASE CHECKING…4135 | $ 188.00 | $ 257,138.33 | Current balance as of 5/10/23 |
| 4/12/2023 | BEN REED WF CHECKING…9216 | $ 5,855.19 | $ 126,119.62 | Current balance as of 5/10/23 |
| 4/12/2023 | MARK PHILLIPS ROBINHOOD - INVESTMENT | - | $ 1,216,929.23 | Current balance as of 5/10/23 |

---

[3] Defendants' attempts to come up with a coherent accounting of the TRO assets has resulted in their creating four different versions of an accounting for the TRO assets that they converted into cash: one dated April 8, 2023, one dated April 12, 2023, one dated April 13, 2023, and the most recent accounting submitted with this Motion, which purports to provide an accounting as of May 10, 2023. Despite four attempts, Defendants still cannot get their story straight.

Dkt. No. 86-3, Ex. 1.

A comparison between the April 13 and May 10 accountings shows that Mark Phillips's Investment Robinhood account contains $91,163.77 fewer dollars than it did on April 13 ($1,308,093 - $1,216,929.23 = $91,163.77). What happened to that cash Defendants do not say. Whatever the explanation, it is a violation of the TRO, which forbids transfers out of any accounts that were involved in the transfer of TRO assets, Dkt. No. 18.

### 2. Inaccurate accounting representations

In addition to the unaccounted-for cash, the accounting that Defendants did provide is riddled with inaccuracies and internal contradictions. For example, on March 17, 2023, Ben Reed submitted a declaration stating that Evita Stenqvist (also known as "cookieslayer.eth") received 35,000 DAI on February 2, 2023. Dkt. No. 43-8. A week later, in their Notice of Compliance, Defendants changed their story and said that Evita Stenqvist received four payments on February 2, 2023 totaling $235,000. Dkt. No. 51-1 ¶ 6. Yet, the actual Etherscan transaction record of Ms. Stenqvist's cryptocurrency wallet shows that she only received $35,000 on February 2, 2023, and has not received additional transfers to the cryptocurrency account associated with her alias cookieslayer.eth since February 2, 2023. Berg Decl., Ex. J.

Defendants accounting for monies paid to Mikhail Radin (also known as "dsintermediatd.eth") is equally unreliable. In his March 17, 2023 declaration, Ben Reed represented that Mikhail Radin received payments of 322,034 and 100,000 DAI on February 2. Dkt. No. 43-8. But in their Notice of Compliance, Defendants changed their story once again, and omitted the 100,000 DAI transfer. Dkt No. 51-1 ¶¶ 3-6.

Payments to Mr. Phillips's attorney, Daniel Resnick-Nellie, also do not withstand scrutiny. In their April 8 cash accounting, Defendants identify six cash payments to Resnick-

Nellie—five of which were made after the TRO was issued on February 28.  Berg Decl., Ex. D. Yet, Defendants inexplicably failed to include these as TRO assets in the cash accounting they submitted to the Court.  *Compare* Berg. Decl., Ex. D [April 8 Cash Accounting] *with* Dkt. No. 86-3, Ex. 1.

## C.  Illegitimacy of past and present developer payments

For months, Defendants have claimed that a significant portion of the Movement DAO funds have been used to pay "deferred" third-party developer expenses.  Yet, when pressed, Defendants have produced no documents or any other evidence to corroborate the legitimacy of these payments.  Some of these "deferred payments" are seeking upwards of $400,000 per year that are not reflected in a single invoice, receipt, or contract.  Dkt. No. 86 at 4.  The amounts that these "developers" received are plainly fraudulent because they far exceed past invoices they have submitted.  *See, e.g.*, Dkt. No. 52 at 2.

Defendants also claim that they made additional transfers to developers as advances for four months of work.  Dkt. Nos. 43-9 ¶ 67; 43-8 ¶ 17(e).  But prior to the February 2023 transfers, the Movement DAO project never authorized advanced payments to developers.  Dkt. No. 45-3 ¶ 5.  Do Defendants offer any invoices or contracts to corroborate their story, given that advance payments are contrary to the Movement DAO project's prior course of dealing?  They do not.  These transfers are not for legitimate advance payments; they are a cover to dissipate and conceal TRO assets.

### 1.  2022 Operational Budget

All of the deferred payments for services rendered by developers in 2022 are fraudulent. Defendants acknowledge that in February 2023 they transferred over $700,000 to certain third-parties for "services rendered."  Dkt. No. 51-1, ¶ 6 (632,912 DAI and 41.88 ET).  But

Defendants have failed to provide any contracts or invoices to show that these payments were legitimate.

In fact, these payments—purportedly for "deferred developer expenses" incurred in 2022—were fraudulent because all 2022 Movement DAO expenses were already covered by the $1.75 million that was transferred out of the DAO endowment Account in August 2022, *see* Dkt. No. 24-1, Exhibit 8 at 278, as the budget that accompanied the proposal "authorizing" that transfer shows, *id.* at 292.  That $1.75 million transfer covered all 2022 expenses.  Dkt. No. 24-1, ¶¶ 37-39, Exhibit 45.  The February 2023 transfers that went to developers for "deferred" 2022 work are in excess of that $1.75 million.  Defendants are double-paying 2022 expenses to conceal their fraudulent transfers.  *See* Dkt. No. 52 at 1.

    2.    **<u>Mikhail Radin</u>**

The payments to Mr. Radin are fraudulent.  In his declaration, Mr. Radin claims that he is owed a $400,000 annual salary for his work on the Movement DAO project.  Dkt. No. 86-2.  Yet, neither he nor Defendants have produced a contract, invoice, email, or text message to corroborate his salary.  In fact, the only evidence in the record reflecting monies owed to Mr. Radin shows that he invoiced the Movement DAO project in April and May 2022 for $23,000 per month.  Dkt. No. 50, Ex. A.  A monthly rate of $23,000 per month comes out to an annual salary of $276,000—not $400,000.  Mr. Radin further testified that he started working on the Movement DAO project on April 1, 2022—meaning he worked for 10 months by the time of the February 2, 2023 transfers, with two of those months covered by existing invoices.  Dkt. No. 86-2.  At $23,000 per month for eight months, he at most was entitled to receive $184,000.  But for reasons that Defendants have failed to explain or justify, they now ask this Court to authorize

them to transfer $238,417.67 for work performed by Mr. Radin in 2022. Dkt. No. 86 at 5. The requested transfers are rooted in fraud and should be denied.

### 3. Jango.eth

On February, 2, 2023, Defendants transferred 10,000 DAI to jango.eth, purportedly for development work. Testimony from Mr. Gordon shows that jango.eth never worked on the Movement DAO project and was not owed those funds. Berg Decl., Ex. I [Tr. *13:16-14:6] ("Was he ever owed any money from MOVEMENTDAO for development work? No.") Jango.eth returned those funds. This is another clear-as-day example of the illegitimacy of Defendants' developer payments.

### 4. Evita Stenqvist

As detailed in Section IV.B, *supra*, Defendants' own accounting documents reflect differing amounts actually owed to Ms. Stenqvist. Dkt. Nos. 43-8 ¶ 17, 51-1 ¶ 6. No matter the amount, they have not provided a single contract, invoice, or agreement that supports Ms. Stenqvist being owed anything for work performed on the Movement DAO project. The requests to pay her additional funds should be denied because they are fraudulent.

### 5. Other developers

In this most recent filing, Defendants again insist that multiple developers are owed significant sums for services purportedly rendered to the Movement DAO project, including Mikhail Radin, Evita Stenqvist, Sameer Tariq, Natalia Phillips, and Aishwarya Narayana. Dkt. No. 86 at 6-8. Five different developers, but defendants do not attach to their Motion a single invoice, contract, or written agreement to support the payments.

In fact, when Defendants first asked Plaintiffs to agree to amend the TRO, Defendants attempted to corroborate the expenses with documentation. Tellingly, Defendants do not present

any of those materials to the Court. That is because those materials further reveal that the requested payments are fraudulent. For example: Defendants provided a purported invoice from "Viciously AB" for $48,000. Berg Decl., Ex. F. But that invoice does not contain any indicia of legitimacy. It seeks payment for 480 hours of work, at $100 per hour, without providing <u>any</u> description of the work or services provided. In fact, the entire description reads "Retainer 3 months." *Id.* This bare bones document, which Defendants subsequently decided not to provide to the Court, does not reliably establish that this work was performed or that this money is actually owed.

Even worse, the invoices that Defendants provided to Plaintiffs do not align with Defendants' recent accounting. For instance, in their most recent cash accounting, Defendants refer to a $7,350 transfer of Movement DAO funds to Ms. Narayana (also known as "summerelf") on February 2, 2023 as "[p]ayment for UX, UI, branding work." Dkt. No. 86-3, Ex. 1. None of the invoices that Defendants provided to Plaintiffs correspond to that line item.

### D.      **Assets continue to be dissipated in violation of the TRO**

Despite asserting that they have complied with the TRO, Defendants' accounting paints a different picture. The accounting submitted with this Motion shows that Defendants continued to transfer Movement DAO funds after the TRO was issued. For example, Defendants made three transfers to Mikhail Radin between March 8 and March 13—after the February 28 TRO. Dkt. No. 86-3, Ex. 1. Defendants transferred $14,700 to Ms. Narayana on March 15, 2023. *Id.* And they admit to using Movement DAO funds in connection with paying Daniel Resnick-Nellie between March 7 and 24, 2023. Berg Decl. Exs. D, G, H. Each one of these transfers occurred after February 28 in violation of the TRO.

### E. No legitimate hardship exists

The moving parties cannot show that their proposed modification to the TRO is necessary to avoid legitimate hardship. The Movement DAO—as the evidence and testimony has borne out—is not an operational entity. Berg Decl., Ex. I [Tr. 11:21-12:7; 13:11-14:10; 19:8-10; 20:14-20; 48:7-13; *19:13-22; *23:4-13]. It hosts no social impact groups, it has no operational user interface, it has not issued any MOVE tokens to enable the Movement DAO community to render legitimate governance decisions. *Id.*, Ex. I [Tr. 42:20-43:5; 49:5-11]. The Movement DAO is merely a project in progress.

Defendants' claims to legitimate hardship are of their own making. They have refused to return TRO assets that are currently being held in their accounts. If they had complied with the TRO, they might have had a leg to stand on, but they did not. Their contemptuous conduct forecloses consideration of any claimed hardship.

## V. Conclusion

Defendants' violations of the TRO are dizzying. Any one of those violations would warrant sanction. The weight of these serial and ongoing violations should break the back of Defendants' request to amend the TRO. Moreover, there are no changed circumstances in fact or law warranting an amendment. And, as the foregoing demonstrates, the legitimacy of any of the requested payments to third parties is hotly contested. With regard to Defendants' hardship, the cure is simple and entirely within their control: return all of the assets to the DAO endowment, as ordered by the TRO. Under the current facts, granting the relief requested by Defendants would prejudice Plaintiffs by allowing the further dissipation of the stolen DAO endowment funds and would condone Defendants' contempt for the TRO. The Motion should be denied.

Dated:  May 22, 2023

| | |
|---|---|
| John K. Shubin, Esq.<br>Dylan M. Helfand, Esq.<br>Jamie L. Katz, Esq.<br>**SHUBIN & BASS, P.A.**<br>150 W Flagler Street, Suite 1420<br>Miami, FL 33130<br>Tel.: (305) 381-6060<br>Fax: (305) 381-9457<br>Email:  jshubin@shubinbass.com<br>           jkatz@shubinbass.com<br>           dhelfand@shubinbass.com<br><br>*Attorneys for Plaintiffs Ryan Breslow, Alex Fine, And Jon Gordon* | Christopher T. Berg (*pro hac vice pending*)<br>Benjamin J. Kussman (*pro hac vice pending*)<br>**ELLIS GEORGE CIPOLLONE**<br>**O'BRIEN ANNAGUEY LLP**<br>2121 Avenue of the Stars, 30th Floor<br>Los Angeles, California 90067<br>(310) 274-7100<br>Email:  cberg@egcfirm.com<br>           bkussman@egcfirm.com<br><br>*Attorneys for Plaintiffs Ryan Breslow, Alex Fine, And Jon Gordon* |