<u>Attorney-Client-Privileged</u>

Law Offices of Reed Yurchak
Prepared by M. Phillips
October 2, 2022

Memo Re: The Movement Endowment[1]

Scope of Engagements

Law Offices represented Merkaba, Inc. for the limited scope of reviewing corporate structure and paying development vendors. Ted, the same. A.F., R.B., J.G. crypto-custodial services, for which on Feb. 2, 2022, instructions to transfer the then crypto[2] balances to the Gnosis 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6. Law Offices is retained by the Gnosis Association as the service provider per appointment of the above individuals, ratified by the community on August 2022, by https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/mip-0000.md. Additional governance and Gnosis authorizations were ratified by https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/mip-0001.md, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/mip-0003.md, and https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/mip-0007.md.

Introduction

This memo provides a factual overview of the cryptocurrency platform prior to the contributions to the Gnosis multi-signature wallet 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 ("Gnosis"), which was launched as the Movement DAO[3]. The Movement DAO began development in earnest on or about July 23, 2021. On February 2, 2022, the concept was launched together with a GitBook; by May 25, 2022, the Gnosis received approximately $17,189,461.91[4] from a combination of Ethereum and DAI. As of October 7, 2022, the Gnosis has approximately $11,896,282.2191 in DAI and ETH 1,509.63862486 which at $1,322.86 is worth $2,003,214.97326[5] totaling $13,899,497.18.

Representations

R.Y. engaged A.F. to lead and direct all aspects of the Movement DAO launch, including authoring the GitBook[6], which would serve as the project's whitepaper. While multiple efforts to scope or limit the scope of the promises or forward-looking statements by J.G., or M.P. and R.Y., A.F. ultimately controlled the GitBook and its contents. https://move.xyz, GitBook and Twitter were the predominate tools for communication. A number of material statements were made in order to induce 3rd parties to contribute to the Gnosis. They include:

> "These tokens will be used to provide authentication into community chat rooms (Discord), voting activities (Snapshot), and participation in the movement. However, the token does not entitle the holder to the expectation of any profits from a movement nor is there a guarantee that the tokens will increase in value over time. The purchase of the governance token is simply the threshold that allows the purchaser to participate in the governance of the movement endowment that allows the purchaser a voice in the movements that the DAO should support" Pg. 1, Let's Start A movement.

> "The principal balance of the endowment is designed to stay locked in perpetuity and to provide continuous funding to the Movements it supports." Pg. 2, Basics.

> "$Movement tokens are not to be deemed or interpreted to be representative of any kind of: Investment (whether secured or unsecured), equity interest, proprietary interest and economic rights … right, title, interest or benefit whatsoever in whole or in part, in any person or property, or any assets" Pg. 5, Tokens.

> "Movement DAO also has veto powers on any movements or initiatives that break the community guidelines." Pg. 9, Governance.

> "Endowments minimize the capital that a bad actors could remove from a community at one time." Pg. 10, Backed Endowments enable.

---

[1] Movement DAO GitBook hereto attached as Exhibit A
[2] Crypto-Account Amounts and Gnosis Address are listed in Exhibit C
[3] Also referred to as the Movement Endowment, Move DAO
[4] A detailed account by timestamp, block number, wallet, transaction id, cryptocurrency amount is hereto attached as Exhibit B
[5] Alternatively, if ETH/USD were 1/$3,500 would be worth $5,281,500
[6] The launch GitBook copy is provided as Exhibit A.

> "TERMS AND CONDITIONS OF TOKEN SALE AND USE, A purchase of Tokens is non-refundable and cannot be cancelled. … A purchase of Tokens involves many, varied risks which can result in the loss of all amounts paid." Pg. 12, Terms and Conditions.
>
> "Movement DAO has a pool of capital called an endowment. Money in the endowment cannot be spent." Pg. 14, Logistically.
>
> "Financial transactions are handled after any votes by an IRL law firm acting as a service provider." Pg. 22, Slow Start.
>
> "A registered law firm acts as a signatory on the fund's wallet. They therefore owe a fiduciary duty to the movement and will employ their expertise to ensure that no funds are moved in violation of the movement rules and no requests for funding would be indicative of fraudulent activity." Pg. 31, Fair Launch.
>
> "The Movement DAO system is built in a way that designs bad behavior out of the system by using carefully designed incentive systems. The initial seeder's tokens will be locked for #[7] years from launch, meaning there is no return on investment to the founders until the platform is fully built, operational and successful in its objectives." Pg. 70, FAQ, "Why should I trust this platform?"[8]

GitBook legal disclaimers and terms of use are provided as follows:

Token sale, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/exhibits/token-sale-use.md
Service provider, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/exhibits/service-provider.md
Terms of use, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/exhibits/tou.md
Security, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/exhibits/security.md
FAQ, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/exhibits/faq.md

Various Agreements

In addition to the above public disclosures, several private agreements were made between A.F. and R.B., A.F. and R.B. and 3rd parties, verbal, written, or relied upon:

1. R.B. and A.F. agreed to keep their funds within the platform for 4-5 years or at certain market capitalizations, 25% at 1B, 25% at 10B, 25% at 100B and 25% at 1T;
2. R.B. committed to contributing ~$10m, with A.F. would contribute $3m (not $3.6m per January 24, 2022)
    a. A.F. reduced to $3m to remove any sell pressure, "100% aligned with the long-term success, for the long haul";
3. R.B. committed to A.F. $2,202,028.85, totaling A.F.'s contributed amount of $5,202.028.85;
4. R.B. committed to J.G. $978,679.49, totaling J.G.'s contributed amount of $1,234,189.49.[9];
5. R.B. committed to M.P. $978,679.49, totaling M.P.'s contributed amount of $1,243,679.49; and
6. R.Y. custodial fee $409,755.00, service provider fee of $429,736.55 for 2022;

Governance

On February 2, 2022, the Gnosis Safe ETH-0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 was configured to receive the endowment and together was deployed with the GitBook documentation. Initial governance termed "Slow Start" which comprised of three prongs, 1. R.Y., the service provider to handle IRL financial transactions, 2. Vetoer role enabled, and 3. Gnosis individuals are publicly known individuals – M.P. and R.Y. see Pg. 22, Slow Start.  On February 12, 2022, the governance NFT 0xdd407a053fa45172079916431d06E8e07f655042 was deployed, and airdropped, distributed, and given to the Gnosis contributors and anyone who expressed interest in participating in the Movement DAO. The governance NFT and contribution addresses were configured in the Snapshot Space Strategy so that the benefits of governance were conveyed to contributors.  The Snapshot Space's Strategy allowing anyone with the governance NFT to submit a proposal through Discord temperature-check, which would continue to a temperature check Snapshot, https://snapshot.org/#/tempcheck.movedao.eth with the final voting occurring at https://snapshot.org/#/snapshot.movedao.eth.  See founding proposals, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/README.md

---

[7] Deployed Branch had the #, however, backup branches stated 4 years and another branch stated 5 years.
[8] https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/exhibits/faq.md
[9] Move Token Allocation Spreadsheet, Exhibit C

On August 23, 2022, seven (7) governance proposals[10], mip-0000 through mip-0007[11] were successfully ratified by the community Snapshot vote[12]; notable decisions for Movement DAO were to form a Delaware Unincorporated Nonprofit Association, adopt Community Guidelines, Terms of Service, and Guiding Principles.

Additionally, a path was outlined to formalize the legal structures for the Unincorporated Non-Profit Association, an Intellectual Property Holding company DAOLABS LLC, and a for-profit technology company DAOLABS, Inc. The following Proposals were ratified, Mip 0000 through 0007 - https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/mip-0000.md

### Reputation, Duties

1. A.F. used pseudonyms during efforts to promote the DAO.
2. A.F. engaged dao-lawfirm.eth (R.Y.) specifically to convey public trust
3. R.Y. (M.P.) are the service providers and vetoer to protect the Gnosis purpose
4. J.G., M.P., and R.Y. as project community, law firm, and development lead are doxed

### Entity Structuring

While Movement was originally formed informally as an Unincorporated Non-Profit Association, in August 2022, the community ratified the formal adoption of the Unincorporated Non-Profit Association. Additionally, community ratification to break out the intellectual property efforts into DAOLABS LLC and DAOLABS, Inc. in order to formally recognize and handle for-profit motives.  As of Oct.10, 2022, the formation activity is incomplete due to the shifting priorities by R.B.  The goals are as follows.

1. Formally establish the DAO as a non-profit association to launch blockchain tooling to enable the same;
2. Establish DAOLABS, LLC as a licensing, incubation partnership for individuals;
3. Establish DAOLABS, Inc. for-profit entity with the DAO, NFT tooling scheduled to launch Q1 2023;
4. Create DAOLABS common stock round for Gnosis contributors;
5. Aggregate all expenses for accounting, expenses, DAOLABS;
6. Aid JB to file taxes as an Unincorporated Non-profit Association;
7. Account all promises on DAOLABS balance sheet;

### Hypotheticals

Hypothetical scenarios:

1. Initial contributors would like to unwind a portion of the contributions to the Gnosis; or
2. were under the belief that the financial contributions would result in substantial token value.

The Terms of Service, Terms of Token Sale, GitBook, and transaction of sending funds to a Gnosis wallet (the digital equivalent of handing over a briefcase of cash) foreclose any refunds, returns, cancellation, by clearly stating that the contributions were not refundable, cancellable, etc.

Disclosures were clear that tokens were not financial instruments and do not entitle contributors to assets, or any expectation of income, revenue, profits – if any, disclosures clearly stated that any capital gains would be used to fund development of the application and projects on the platform.

Recent community governance proposal, https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/mip-0000.md, which formalized Movement DAO as a Unincorporated Non-Profit Association further establishes an entity which contributions were made and which any dissolution is codified by Delaware statute.

Any community proposal which directs the entity to return portion of their contribution would be against the guiding principles and would be subject to veto.

---

[10] https://daolabs-docs.on.fleek.co/daolabs/examples/move/governance/process.md
[11] https://daolabs-docs.on.fleek.co/daolabs/examples/move/proposals/mip-0000.md
[12] Movement governance NFT were airdropped to https://daolabs-docs.on.fleek.co/daolabs/examples/move/governance/airdrop.md and Snapshot strategy used the prorate distribution per https://daolabs-docs.on.fleek.co/daolabs/examples/move/governance/contributions.md

Any community proposal subject to vote to direct the entity to return portion of their contribution would irreparably damage the reputation of the doxed individuals, law firm and subject the representations made via the GitBook, Twitter, Discord, about the purpose of the Gnosis, and strongly suggest a fraudulent scheme designed to induce unwitting 3rd parties to contribute was afoot.

Any of the following activity are criminal, as they relate to the above facts,
- a) omitting material facts to potential investors such as the identity of their principals, how investors funds would be used, and the risks of their investment plans;
- b) falsely stating the identity of their principals;
- c) false statements and, or material omissions;
- d) use false or misleading identities in connection with the promotion of tokens;
- e) lack of investment disclosures,

The unwinding above is the very definition of rug-pull, and would go against the duties of the dao-lawfirms.eth role as the service provider.

While cryptocurrency, tokens, NFTs may appear to be new, criminal activity associated employ the same schemes and acts, i.e. OpenSea's insider trading case, which the above hypotheticals would strongly suggest such a scheme was attempted, which would be sufficient for criminal charges, regardless of whether the scheme was successful or not.[13]

Summary

Movement governance Mip 0000 through Mip 0008 pave a reasonable path in the structure of movement as non-profit association making contributions directly to individuals, together associated with a for-profit DAOLABS, LLC which members may invite up to 99 additional members, and DAOLABS, Inc. which may create a class of common stock to invite individuals who value and are active in DAO governance and would like to further the Movement purpose. However, DAOLABS would seek additional agreements foreclosing any future claims, despite the disclosures in exchange for any participation. Any participation may or may not have any computation to the contribution amount and is explicitly not representative of any contribution whatsoever, as to avoid any appearance of quid pro quo.

Likely any extension of DAOLABS participation would only signal of some quid pro quo as the terms of the contributions to the Gnosis were by the direction of R.B., A.F. together or individually who would be the ones who contributed the most. The agreement by R.B. and A.F. regarding the specifics of the duration of capital held within the project are additionally at odds with any hypothetical requests for project funds.[14]

---

[13] https://www.justice.gov/usao-sdny/pr/former-employee-nft-marketplace-charged-first-ever-digital-asset-insider-trading-scheme
[14] January 24, 2022 A.F. wrote to R.B. specifics about the duration of holding the movement token, Exhibit E.