

500 108th Ave NE, Ste 1100
Bellevue, WA 98004
Tel: (206) 866-0766
Fax: (425) 654-1205
Business Cell: (425) 941-6659
Email: reed@yurchaklaw.com

January 11, 2022

**ATTORNEY-CLIENT PRIVILEGED**

<u>Via Email – benjamin.reed@gmail.com</u>

Ben Reed

    Re:    **Engagement Letter, Custodial Crypto Account**

Dear Ben:

    This engagement letter will clarify and confirm the attorney-client relationship between you (the "Client") and Law Office of Reed Yurchak (the "Firm"). In this letter, the words "you" and "your" refer to the Client and the words "we," "us" and "our" refer to the Firm.

    To avoid misunderstandings, we need to be clear about the scope and terms of our engagement as confirmed by this letter and the enclosure ("Custodial Trust Accounts and Fee Schedule"). Please read the attached and then sign and return this letter to us for our records. Even if you do not sign and return the letter to us, these writings will confirm the basis on which the Firm has agreed to represent you.

    1.    **SCOPE OF ENGAGEMENT.**

    We hereby undertake the legal representation of Client as follows: (a) prepare a custodial account designed to secure and hold crypto currencies and/or other investments related to the blockchain, (b) engage an online security consultant and create a wallet(s) specific to your trust to hold your crypto currency that is/are protected by a minimum of 3 (three) security keys, (c) provide updates on a yearly basis or on a schedule of the client's choosing, (d) take all necessary steps to ensure the confidentiality of the account and its assets as well as the security of the assets, (e) perform all other legal work necessary to maintain the confidentiality and security of the assets of the account, and (f) accept transfers of money into the Firm's IOLTA trust account to assist Client in setting up the account and transferring funds to brokers or others employed in the purchase of the account assets.

    You may from time to time ask us to perform additional or other services beyond the engagement described above that are unrelated to the custodial account. Generally the Firm's practice is to handle any small or limited matters for the Client on a "*pro bono*" basis. Only if the matter were more complex or involved would we need to clear potential conflicts of interest and may need to enter into a separate engagement letter with you. If we undertake additional or other services and do not ask you to sign a new engagement letter, this letter agreement will apply for those services.

2. **LIMITATION ON SCOPE OF ENGAGEMENT.**

2.1 Our engagement is expressly limited, as set forth in Paragraph 1 above, unless we expressly agree otherwise. You are our only client in this matter, and we will not represent anyone else in this engagement who is not a trustee, beneficiary or agent.

2.2 We will represent the Client and any beneficiary named in the trust and will also represent the trust in relation to any assets held by the trust.

2.3 We will not release any information regarding you or your custodial trust without your prior, written consent or under court order.

2.4 The Firm will offer no advice on any investments or asset management and is only authorized to act when granted the authority by the Client which actions must comply with the terms of the trust. Client understands that the Firm cannot access any wallets or assets of the trust unless Client authorizes such access to the Firm and any other key holders.

2.5 The Firm will not set up an account with any bank, credit union or other financial institution in the name of Client or Trust. Any funds that the Client transfers to the Firm shall be held in the Firm's trust account until directed by Client to make purchases, payments or disburse the funds.

2.6 The Firm has advised Client that the Securities and Exchange Commission has not yet finalized any specific rules or regulations regarding the sale of tokens but has, recently, taken the position that the sale of tokens for profit or as an investment would be covered under the 1933 Securities and Exchange Act (the "Act") and that any such sale would be prohibited in the absence of an application for registration with the SEC. The Firm takes no position on whether or not the sale of any tokens qualifies as an offering under the Act nor whether the fact that the tokens are issued by a non-profit DAO to support and fund public works exempts any issued token from registration. Additionally, the Firm has recommended that any investor be an "accredited investor" as defined in the Act but takes no position and has not offered a formal, legal opinion as to the requirements necessary to qualify as an "accredited investor."

2.7 The Firm will always act as a fiduciary on behalf of the Client and will not assume ownership of any entity or assets identified by Client as a part of any trust or legal structure set up or administered by the Firm. The Firm will do its upmost to maintain all confidences of Client and will not disclose to any third party any information about Client or his assets unless the request is from the Internal Revenue Service or other federal or state agency of competent jurisdiction. The Firm does not offer specific tax advise but always recommends that Client seek tax counsel from his accountant or tax attorney and further advised Client that any transaction with a regulated trading platform or investment firm will trigger a report of a "taxable event" that will be forwarded to the IRS. The Firm will offer advise and opinions as it relates to keeping such transactions protected from other third parties or the public at large.

3. **YEARLY UPDATES.**

We will provide you with a yearly account summary unless you opt out of the updates or request asset information based upon an anticipated transaction. Any request for an account update will be provided as soon as possible.

4.  **FEES FOR SERVICES.**

The Firm has established a fee schedule for all work related to setting up the custodial account and the ongoing administration of the account which is accounted for upon deposit of the funds with the Firm.  The Firm will charge 3% (three percent) of any funds deposited with the Firm for placement in Client's account.  For any subsequent transaction involving the funds in Client's wallet, including the sale of any assets in the wallet, including the sale of tokens, NFT's or other crypto currency, the Firm shall charge a fee of 2% (two percent) of the transaction.  ***This 2% (two percent) fee will be waived for any sale or transaction of the assets in the Account made within 12 (twelve) months of setting up the account with the Firm***.

5.  **BILLING PROCEDURES.**

The Firm will charge it's fees for its services concurrent with any transaction as identified in Section 4.  The Client hereby authorizes the Firm to deduct the fees as outlined above in Section 4 upon transfer of the funds to the Firm's trust account.

6.  **ARBITRATION OF DISPUTES.**

We anticipate a harmonious and satisfactory attorney-client relationship. If any disputes arise between us, we shall submit to binding arbitration as described in the enclosure. If you do not wish to agree to arbitrate any disputes with us, you should not sign this letter. Your agreement to arbitrate is not a condition of our agreement to represent you, and upon request, we will consider deleting the arbitration provision.

We look forward to working with you, and we are pleased to serve you and protect your interests.

Sincerely yours,

**LAW OFFICE OF REED YURCHAK**

Reed Yurchak

APPROVED AND ACCEPTED:

By/ Ben Reed

## *Custodial Accounts*

### *Introducing the Custodial Trust Account*

The Law Office of Reed Yurchak ("The Firm") offers Custodial Accounts ("Account") to its preferred clients that allows the client to take advantage of the emerging cryptocurrency markets and enjoy the security of an account administered by a law firm.  This account also provides an added measure of security and confidentiality as all funds deposited go through the law firm's trust account.  No additional bank accounts are necessary as the funds are then used to purchase cryptocurrency or other investments available on the blockchain.

### *Security and Confidentiality*

Any purchase of cryptocurrency or other crypto investment will be sent and stored in the client's personal wallet or account.  Each wallet is secured by a set of a minimum of 3 (three) keys so that any one breach of security would not grant a third-party access to the client's wallet.  Additional keys may be deployed depending on the client's security needs and parameters as determined by the Firm's security expert.  Further details regarding the security and confidentiality of the wallets are provided in the Firm's Engagement Letter.

### *Your Secured Investment*

The Custodial Account is not a shared or group investment account.  All assets in an individual Account belong exclusively and solely to the client and all assets are likewise exclusively and solely administered and managed at the client's directions.  The Firm does not provide any investment advice nor does it instigate any purchase of any cryptocurrency on its own initiative.  None of the funds deposited with the Firm shall ever be comingled with the funds of any other client or combined in a single wallet of Account.

### *The Firm's Role*

The Firm's role in the creation and maintenance of the Account will be that of an Administrator of the Account.  The Firm will help on an ongoing basis with any ongoing legal requirements and improve any tooling that may be necessary to maintain or enhance the value of the Account.  However, the Firm will exercise no control over the funds in the Account unless directed by the Client or per authority granted in the Engagement Letter.

For these services, the Firm will charge Client for the professional services related to setting up the Account, assisting in the acquisition of assets and the creation of the accounts to

help any assets of the Account.  Concurrent with setting up the custodial account the Firm shall receive a fee for its role in maintaining the account and carrying out the wishes of the Client as outlined in Section 4 of the Engagement Agreement. The fee will be used to pay for costs necessary to maintain the Account as well as any improvements necessary to ensure the security and safety of any funds or assets on deposit.  The Firm will not earn any percentage of the profits of the assets or other form of remuneration from the Account or the investments from the Account — this increase will continue to accrue in the corpus of the client's Account.

The Firm charges a surcharge fee of 2% (two percent) on any subsequent transaction, after the Account has been set up, including the sale of any crypto currency held in the Client's Account.  ***This 2% (two percent) fee will be waived for any sale or transaction of the assets in the Account made within 12 (twelve) months of setting up the account with the Firm***.

### *Binding Arbitration*

If a dispute ever arises between you and the Firm that we cannot resolve informally, rather than either of us taking the other to court, we propose to submit the matter to binding arbitration, a process we believe is well suited to resolving lawyer-client disputes. There are important differences between litigation and arbitration. Law and public policy favor arbitration as a method of resolving disputes, and we believe arbitration has considerable advantages for both lawyers and clients.

Arbitration is normally quicker, less expensive and more efficient than court proceedings, enabling both sides to avoid considerable attorneys' fees and costs. In arbitration, each side would present evidence and arguments to a panel of arbitrators, usually retired judges or other persons with relevant experience, and each side would agree to abide by the decision of the arbitrators as the final determination of all legal and factual issues. The parties would get to select the arbitrators, and hearings could be scheduled more promptly and on a date certain. Arbitration is less acrimonious, and it is private, protecting confidential client information. Arbitrators have broad discretion and are not bound by strict rules of evidence and procedure, so the process is relatively informal, more flexible and more relaxed.

Arbitration does have some disadvantages: fees must be paid to the arbitrators, and arbitration limits freedom of choice in how we might pursue claims and remedies against each other. In arbitration, there are limits on discovery, on the ability to compel production of witnesses and documents, and on the kinds of relief available. An arbitration agreement waives the right to a jury trial, there is no public forum, and there is virtually no appeal. Thus, arbitration tends to be relatively quick, simple, inexpensive, private and final.

On balance, we believe arbitration is the best way to resolve lawyer-client disputes. So, unless we both agree otherwise in writing, your signature on the engagement letter will confirm our agreement to arbitrate under the following arbitration provision.

The Client and the Firm expressly agree to resolve, by binding arbitration, any controversy or claim arising out of or relating to this engagement. Such claims or controversies include any dispute relating to this agreement, our relationship, the quality or scope of our services, the fees charged, the appropriateness of actions taken or not taken, or any other matter relating to the representation, including any claim of legal malpractice. The arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association (i.e., the version of those rules in effect as of the date shown at the top of the accompanying Engagement Letter), before a panel of three arbitrators, selected from the AAA's panel for large complex cases. The parties shall be entitled to full discovery in accordance with the Federal Rules of Civil Procedure for a period of ninety days after service of the demand for arbitration. The Chair of the arbitration panel will resolve any discovery disputes. Unless the arbitrators decide otherwise, each party will bear its own attorney's fees and share equally in the payment of the arbitrators' fees and costs. The arbitrators shall follow the law and not re-write the agreement of the parties. Judgment on the arbitration award may be entered in any court having jurisdiction thereof.

*Choice of Law and Forum*

The laws of the State of Washington shall apply in interpreting or enforcing this agreement. Any proceedings relating to this agreement shall be filed and heard in that state and specifically in King County.

*Questions*

We strive to provide high quality, cost effective legal services that can respond to your changing needs as well as the changes in the markets. If you are ever dissatisfied with our services or any aspect of our relationship, please let us know immediately so that we can address your concerns. With good communication, we should be able to resolve amicably and informally any problem that might arise. We have near constant monitoring of the email account reed@yurchaklaw.com and will try to respond to any request promptly.

000815