


snapshot                                              ( Connect wallet )   ◯

← Back

# MIP-0004: Adopt Actions

Closed    Movement DAO: Consensus Space by filipv.eth ↑  •••

*Ratify and approve the indemnification of certain individuals who have acted on behalf of the DAO in various capacities.*

## View Proposal →

1. Exhibit A
2. Exhibit B

*PDF Download | IPFS Mirror*

---

Votes  7                                                              ⤓

| | | |
|---|---|---|
| 🌐 servic... ( Core ) | For | 10M MOVE 𝓜 |
| 🌐 0x58Ba...1650 | For | 9.5K MOVE 𝓜 |
| 🌐 obstacker.eth | For | 4.2K MOVE 𝓜 |
| 🌐 rice$cr... ( Core ) | For | 2.2K MOVE 𝓜 |
| 🌐 natasha-pan... | For | 187 MOVE 𝓜 |

**EXHIBIT 012**                                              **PLAINTIFF0000294**

| 🟣 partypants.eth | For | 39 MOVE 𝓃 |
| 🟣 tankbo... ( Core ) | For | 0 MOVE 𝓃 |

## Information

| Strategie(s) | 🔘 🔘 |
|---|---|
| IPFS | #bafkrei |
| Voting system | Basic voting |
| Start date | Aug 23, 2022, 12:00 AM |
| End date | Aug 30, 2022, 12:00 AM |
| Snapshot | 15,399,630 |

## Results

| For | 10M MOVE  100% |
|---|---|
| Against | 0 MOVE  0% |

## I voted POAP



Vote to get this POAP

PLAINTIFF0000295



Mint

---

PLAINTIFF0000296

PLAINTIFF0000297

 Founding Proposals     Adopt Actions

# Adopt Actions

```
Author: tankbottoms.eth, filipv.eth
Creation Date: 2022-08-23
```

## 1. Thesis

At the behest of the DAO's concern, and in concurrence with the views of **dao-lawfirm.eth**, the Service Provider is responsible for aiding the DAO in initializing the Delaware Unincorporated Nonprofit Association, the intellectual property licensing entity, DAOLABS, LLC., and the for-profit entity, DAOLABS, Inc.

The DAO Members hereby ratify and approve all activities by the Service Provider taken in the furtherance of organizational and governance construction of the DAO and DAO affiliate entities, including the processing and execution of documents between shareholders, consultants, third parties, and directors. The DAO Members hereby ratify and approve all Service Provider actions and intentions for prior activities and for future activities and expenses related to these entities, their organization, and their governance.

## 2. DAOLABS Group

The DAO hereby ratifies the establishment of the following affiliates: **DAOLABS, LLC.**, **DAOLABS, INC.** and any permutations thereof, as well as the establishment of **PeaceDAO Unincorporated Nonprofit Association**, and **Movement DAO**.

This proposal ratifies the actions of the Service Provider, insofar as to formalize the entities as either a Washington or Delaware entity, to establish the DAO's banking account, the employment agreements of these entities, and to establish the licensing relationship and consulting agreements between the entities, including **DAOLABS, LLC**, **DAOLABS, Inc.**, Movement DAO, and Peace DAO, and any permutations thereof, together which are referred to herein as the **"DAO Group"** or **"DAO affiliates"**. The Unincorporated Nonprofit Association structure is sufficient for the purposes of PeaceDAO and Movement DAO.

PLAINTIFF0000298

# 3. Abstract

The DAO Members should ratify the indemnification of certain individuals who have acted on behalf of the DAO in various capacities: legal and accounting, including the disbursing of funds at the behest of other Members and the community and for the benefit of the DAO.

## 4. Authorization of "Meatspace" Activities

Authorize **tankbottoms.eth**, **benreed.eth**, **jimmyethworld.eth**,[1] and the individuals, entities, addresses, and contracts mentioned in the Guiding Principals § 7. *Clarification* to act on the DAO Group's behest, ratified by the DAO Members, with all matters related to establishing legal entities, financial registration, and registration with any regulatory bodies or financial institutions, and fully authorize the aforementioned Members in all matters in furtherance of these activities. Furthermore, the DAO Group requires onboarding and accounting relationships with third party Cryptocurrency processor companies, intellectual property matters, and other matters related to the inter-group relationship with financing, intellectual property licensing, copyright and registration, and regulatory activities associated with any significant fundraising activities. Future issuance of tokens, options, and stock are also authorized.

It is anticipated that the entities within the DAO Group will be registered in various jurisdictions including the States of Washington, Florida, and Delaware, as well as the British Virgin Islands. Nonetheless, the individuals referenced above are further authorized to take any action in furtherance of establishing banking relationships with various parties.

## 5. Indemnification of the DAO Service Provider and Certain Individuals

Pursuant to the needs of the DAO in meatspace, aka IRL, with regards to the aforementioned: The DAO will indemnify the above individuals for any and all costs, fees, expenses, and liabilities incurred in the performance of their duties as a DAO Member, and/or DAO Service Provider, and/or DAO Affiliate.

Service Providers, DAO Members, and agents shall not be liable to the DAO, and shall be indemnified and held harmless for any loss or damage resulting from any act or omission performed or omitted in good faith, including gross negligence or willful misconduct, in pursuance of the authority granted to pursue the purpose and interests of the DAO. Moreover, no authorized

PLAINTIFF0000299

individual shall be liable to the DAO because any taxing authorities disallows or adjusts any deductions or credits in the DAO tax returns. The Service Provider may authorize the DAO to pay expenses incurred by, or to satisfy a judgment or fine rendered or levied against that Member, any liquidating trustee or any present or former employee of the DAO, in an action brought by a third party against such person (whether or not the DAO is joined as a party defendant) to impose a liability or penalty on such person for an act alleged to have been committed by such person while a Member, liquidating trustee or employee of the DAO, provided the person to be indemnified was acting in good faith within what he reasonably believed to be the scope of his employment or authority and for a purpose which he reasonably believed to be in furtherance of the purpose and best interests of the DAO. Payments authorized by this paragraph include amounts paid and expenses incurred in settling such an action or threatened action. The indemnification authorized by this paragraph shall be made from the assets of the DAO and no Member shall be personally liable to an indemnitee. This paragraph shall inure to the benefit of the Member and any future employees and agents of the DAO (including any liquidating trustee) and their respective Members, agents, successors and assignees.

## 6. Ratifications of Prior Disbursements

The DAO and its Members do hereby ratify and affirm each and every action undertaken by the Service Provider on behalf of the DAO wherein said DAO has full knowledge of said act and wherein the act has been fully and accurately stated and explained to the DAO. The DAO and its Members are fully aware of every transaction and contemporaneous events and circumstances and

## 7. Clarification

BY RATIFYING THIS PROPOSAL, YOU ARE AFFIRMING THAT THE DAO WILL INDEMNIFY THE FOLLOWING INDIVIDUALS, ENTITIES, CONTRACTS, AND ADDRESSES, AS WELL AS ANY ASSOCIATED SIGNERS, ADDRESSES, CONTRACTS, INDIVIDUALS, OR ENTITIES FOR ANY AND ALL COSTS, FEES, EXPENSES, AND LIABILITIES INCURRED AS A DAO MEMBER, AND/OR DAO SERVICE PROVIDER, AND/OR DAO AFFILIATE:

| Address |
|---|
| 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6[2] |

**PLAINTIFF0000300**

| Address |
|---------|
| 0x752515a3a1091b9f1c04416cf79d1f14d2340085 [3] |
| 0x5d95baebb8412ad827287240a5c281e3bb30d27e [4] |
| 0xf8042c55fe4dff9df82c0f8435fbcdc32fe60a69 |
| 0xE41188926607921763D25392475f1156AC5f9033 |
| 0x468f178672C86bFA02e5E1B0413C3ccf55A37409 |
| 0x550bD0F03580B9a687931af4d837F8e45D61d410 |
| 0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57 |
| 0x746cf650d4E5431474E8D4E2d5B6Bbe53772b498 |
| 0xD2427c0e44D28Ea74c0504E072c6073d135569B2 |
| 0x8C00f41676Ce4670ae9FcBBF297a24736dc23cc3 |

By ratifying this proposal, you attest that you have familiarized yourself with pertinent on-chain and off-chain transactions, contract-transactions, internal transactions, swaps, and the activities and expenses carried out by those individuals and addresses mentioned above.

You also agree that any actions taken by the above listed individuals, accounts, Multisig contracts, in each case for itself or on behalf of the DAO, in connection with the development of cryptocurrency tooling, recruiting, cryptocurrency experimentation, supporting the purpose of the DAO or its Members, interacting with exchanges, contributing to protocols, swapping tokens, purchasing or selling NFTs, deploying contracts, the utilization of meatspace bank accounts, the depositing of monies into such accounts, the obtaining of accounts or Membership licenses on behalf of the DAO (e.g. Hosting services, Fleek, Notion, Cloudflare, Digital Ocean, Google, Apple), and any actions related thereto are hereby confirmed and ratified in all respects, and that the Service Provider and their affiliates (e.g. **tankbottoms.eth**) and the DAO's agents, (e.g. **tankbottoms.eth**) shall be entitled to indemnity with respect to such actions.

PLAINTIFF0000301

## 8. Ratification of Future Disbursements

The DAO, by its Members hereby ratifies and approves a $100,000.00 spending threshold for the Service Providers, including dao-lawfirm.eth and tankbottoms.eth, whereby prior verbal approval, initial signer, or governance approval is not necessary to spend up to 100,000 USD's worth of funds and cryptographic assets; however, notwithstanding any of the above, any such expenses must be accounted for separately.

## 9. Timeline

These processes should be implemented once this proposal is ratified, only to be removed when superseded or amended by another proposal.

# Snapshot Consensus by the DAO Members

dao-lawfirm.eth of the **Law Offices of Reed Yurchak**, **tankbottoms.eth**, **benreed.eth**, and **cptspacecadet.eth** will hereafter be collectively referred to as the **"Service Providers"**.

## Ratification of Prior Expenses

**RESOLVED:** The DAO hereby adopts all prior acts related to agreements, and payments by the Service Providers.

**FURTHER RESOLVED:** That **"Snapshot Consensus"** by the DAO Members hereby ratifies all prior acts related to payments from the DAO or any Member wallet for the DAO or its Members, using fiat, Ethereum, or Stablecoins such as DAI, and through the Service Providers' Cryptocurrency accounts, through personal accounts, or through assigned Multisignature contracts, on behalf the DAO's Members or the DAO, for any and all expenses, including software development, research, or consulting services, at the behest of DAO Members whether to satisfy agreements, letters of intent, or contracts, as well as all other actions heretofore undertaken and performed on behalf of the DAO by the Service Providers, or Authorized Members, or by any agent **are hereby ratified, approved and confirmed in their entirety**. Members have been given all information, regarding each and every transaction from every account and Multisignature wallets below, including all transactions personal, DAO related, or otherwise to any other Cryptocurrency account.

PLAINTIFF0000302

**FURTHER RESOLVED:** The DAO by its Members, individually and collectively, have been provided with all pertinent records, via Etherscan, associated with all the Ethereum addresses with which the DAO, or its Service Providers, operated or were involved in any transactions. The DAO, by its Members, hereby approve all transactions between the DAO, its Service Providers, to or from any address owned by the Service Providers. The DAO, by its Members, hereby ratify and affirm each and every transaction on behalf of the DAO, and have full knowledge of each transaction and the transactions were made fully and accurately as stated and explained in the records.

**FURTHER RESOLVED:** The DAO, by its Members, hereby ratify and approve ongoing reimbursements to the Service Providers for all reoccurring expenses which have continued to accrue since March or April of 2022, including software licenses, cloud computing resources, blockchain resources, consulting services, and other engineering expenses. The DAO hereby authorizes the Service Providers to convert fiat into Cryptocurrency and vice versa in the present, the future, and in the past, which may have incurred tax liabilities. The DAO has determined it is in the best interest of its Members to provide accounting services or reimbursements for accounting services to offset the complexity, overhead, and incurred expenses by the Service Providers.

**FURTHER RESOLVED:** That the DAO, through its Service Provider, is authorized to make payments to itself, dao-lawfirm.eth, and tankbottoms.eth for Cryptocurrency reimbursements associated with ongoing expenses which have continued to date, such as software subscriptions, development services, and individual and/or associated compensation.

**FURTHER RESOLVED:** All actions by the Service Providers from January 1, 2022 have been duly presented to the Members in their entirety by way of the Ethereum address records below. The DAO, by its Members ratify and affirm all actions by the Service Providers.

| ENS | ETH Address |
|---|---|
| developer.movedao.eth | 0x2187e6a7c765777d50213346F0Fe519fCA706fbD |
| peace.movedao.eth | 0xD2427c0e44D28Ea74c0504E072c6073d135569B2 |
| gnosis.dao-lawfirm.eth | 0x607d56643673649bd25AA47325A7a6AFeffc3B4a |
| - | 0x46D65c64E883f70371A6fcAcB124FB5dd68c9918 |
| - | 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 |

PLAINTIFF0000303

| ENS | ETH Address |
|---|---|
| - | 0x1932494517F20EB03D652BfDCbABb42018337436 |
| - | 0x41e923B875aF2Cc72772747E9ef2ed55c8df9D42 |
| - | 0x8C00f41676Ce4670ae9FcBBF297a24736dc23cc3 |
| - | 0x8a97426C1a720a45B8d69E974631f01f1168232B |
| dao-lawfirm.eth | 0x30670D81E487c80b9EDc54370e6EaF943B6EAB39 |
| tankbottoms.eth | 0x5d95baEBB8412AD827287240A5c281E3bB30d27E |

**FURTHER RESOLVED:** That the Service Providers of this DAO are, and each acting alone is, hereby authorized to do and perform any and all acts, including execution of any and all documents and certificates, as said Service Provider(s) shall deem necessary or advisable to carry out the purposes of the resolutions herein.

## Further Indemnification

**FURTHER RESOLVED:** The DAO, by its Members, hereby ratifies and approve that the DAO will provide the Service Providers indemnification, including advances of expenses arising out of any activities subject of the civil, criminal, administrative or investigative action, suit, or proceeding for which indemnification or advancement of expenses is sought. That the DAO, through its Service Providers, determines that it is in the best interest of the DAO, its affiliates, and its Members for the DAO to enter into indemnification agreements with its current and future Service Providers in substantially the form attached hereto: DAOLABS Form Indemnification Agreement. That the Service Providers or Authorized Members are authorized to execute and deliver an indemnification agreement with each of the DAO's current Service Providers, and with any future Service Providers of the DAO. That the Service Providers of the DAO are authorized to make modifications to such agreements in order to comply with applicable law.

**RESOLVED FURTHER:** That the Authorized Members are authorized to determine whether to elect to apply Section 248(a) of the Internal Revenue Code with respect to any organizational expenditures.

PLAINTIFF0000304

**RESOLVED FURTHER**: That the Service Providers are authorized to consult with bookkeepers, auditors and attorneys in order to be fully informed as to, and to collect and pay promptly when due, all withholding taxes for which the DAO and its affiliate entities may now be (or hereafter become) liable.

**RESOLVED FURTHER:** That the Service Providers are authorized and directed to solicit the consent of the eligible Members information related to the adoption of legal equity incentive plans and to file the appropriate notices with the applicable state and federal securities authorities in connection with the issuance of options, at such time as such actions may be necessary or advisable in order to comply with applicable law.

**RESOLVED FURTHER:** That, in accordance with the Guiding Principals, the **Authorized Member**, together with the Service Provider, are authorized to execute and deliver any agreement in the name of the DAO and to otherwise obligate the DAO with respect to the purpose of the DAO, within general guidelines and budgets approved by the Members; however, the Members may adopt from time to time specific limitations on the authority of Authorized Members or Service Providers.

**RESOLVED FURTHER:** That the Service Providers are authorized to execute and deliver any form of work product, draft board minutes, by instruction to legal counsel or other authorized representative to determine the size of the common stock pool, rate of issuance, and the terms of the adoption of the plan for the DAO affiliate entity. That Service Provider is authorized to deliver in any form the parameters of the common stock allocation, option pool, and investment allocation for the DAO affiliate entity.

**RESOLVED FURTHER:** That the "**Service Providers**" of the DAO are each authorized and empowered to take any and all further action to execute and deliver any and all such further agreements in the organization and governance between the DAO affiliate entities and the DAO, with regards to the inter-company licensing agreements.

## Omnibus Resolutions

**RESOLVED FURTHER:** That the **Service Providers** of the DAO are each authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents and certificates and to pay such expenses, in the name and on behalf of the DAO, as any of each of the **Service Providers** may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents and certificates and the payment of such

PLAINTIFF0000305

expenses by any such **Service Providers** to be conclusive evidence of his or her authorization hereunder and the approval thereof.

**RESOLVED FURTHER:** That any and all actions taken by the **Service Providers** of the DAO to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified and confirmed. As used in this document, the words "herein," "hereof," "hereby" and "hereunder" shall refer to this document as a whole, and not to any particular section, provision, or subdivision of this document.

This action by the DAO Member by Snapshot vote shall be effective as of the date the DAO Entities receives the consent of the DAO at the end of the Snapshot vote. This action by the DAO Members consent may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action.

## Authors

1. 0x30670D81E487c80b9EDc54370e6EaF943B6EAB39
2. 0x5d95baEBB8412AD827287240A5c281E3bB30d27E

1. Respectively, `0x5d95baEBB8412AD827287240A5c281E3bB30d27E`, `0xf8042c55fE4dff9Df82c0F8435fbcdC32fe60A69`, and `0xE41188926607921763D25392475f1156AC5f9033`. 🔗
2. tankbottoms.eth, an Authorized Member. 🔗
3. dao-lawfirm.eth. 🔗
4. The DAO Multisig wallet. 🔗

✏️ Edit this page

PLAINTIFF0000306

# Adopt Actions

Author: tankbottoms.eth, filipv.eth
Creation Date: 2022-08-23

## 1. Thesis

At the behest of the DAO's concern, and in concurrence with the views of **dao-lawfirm.eth**, the Service Provider is responsible for aiding the DAO in initializing the Delaware Unincorporated Nonprofit Association, the intellectual property licensing entity, DAOLABS, LLC., and the for-profit entity, DAOLABS, Inc.

The DAO Members hereby ratify and approve all activities by the Service Provider taken in the furtherance of organizational and governance construction of the DAO and DAO affiliate entities, including the processing and execution of documents between shareholders, consultants, third parties, and directors. The DAO Members hereby ratify and approve all Service Provider actions and intentions for prior activities and for future activities and expenses related to these entities, their organization, and their governance.

## 2. DAOLABS Group

The DAO hereby ratifies the establishment of the following affiliates: **DAO-LABS, LLC.**, **DAOLABS, INC.** and any permutations thereof, as well as the establishment of **PeaceDAO Unincorporated Nonprofit Association**, and **Movement DAO**.

This proposal ratifies the actions of the Service Provider, insofar as to formalize the entities as either a Washington or Delaware entity, to establish the DAO's banking account, the employment agreements of these entities, and to establish the licensing relationship and consulting agreements between the entities, including **DAOLABS, LLC**, **DAOLABS, Inc.**, Movement DAO, and Peace DAO, and any permutations thereof, together which are referred to herein as the **"DAO Group"** or **"DAO affiliates"**. The Unincorporated Nonprofit Association structure is sufficient for the purposes of PeaceDAO and Movement DAO.

## 3. Abstract

The DAO Members should ratify the indemnification of certain individuals who have acted on behalf of the DAO in various capacities: legal and accounting, including the disbursing of funds at the behest of other Members and the community and for the benefit of the DAO.

1

PLAINTIFF0000307

## 4. Authorization of "Meatspace" Activities

Authorize **tankbottoms.eth**, **benreed.eth**, **jimmyethworld.eth**,[1] and the individuals, entities, addresses, and contracts mentioned in the Guiding Principals § 7. *Clarification* to act on the DAO Group's behest, ratified by the DAO Members, with all matters related to establishing legal entities, financial registration, and registration with any regulatory bodies or financial institutions, and fully authorize the aforementioned Members in all matters in furtherance of these activities. Furthermore, the DAO Group requires onboarding and accounting relationships with third party Cryptocurrency processor companies, intellectual property matters, and other matters related to the inter-group relationship with financing, intellectual property licensing, copyright and registration, and regulatory activities associated with any significant fundraising activities. Future issuance of tokens, options, and stock are also authorized.

It is anticipated that the entities within the DAO Group will be registered in various jurisdictions including the States of Washington, Florida, and Delaware, as well as the British Virgin Islands. Nonetheless, the individuals referenced above are further authorized to take any action in furtherance of establishing banking relationships with various parties.

## 5. Indemnification of the DAO Service Provider and Certain Individuals

Pursuant to the needs of the DAO in meatspace, aka IRL, with regards to the aforementioned: The DAO will indemnify the above individuals for any and all costs, fees, expenses, and liabilities incurred in the performance of their duties as a DAO Member, and/or DAO Service Provider, and/or DAO Affiliate.

Service Providers, DAO Members, and agents shall not be liable to the DAO, and shall be indemnified and held harmless for any loss or damage resulting from any act or omission performed or omitted in good faith, including gross negligence or willful misconduct, in pursuance of the authority granted to pursue the purpose and interests of the DAO. Moreover, no authorized individual shall be liable to the DAO because any taxing authorities disallows or adjusts any deductions or credits in the DAO tax returns. The Service Provider may authorize the DAO to pay expenses incurred by, or to satisfy a judgment or fine rendered or levied against that Member, any liquidating trustee or any present or former employee of the DAO, in an action brought by a third party against such person (whether or not the DAO is joined as a party defendant) to impose a liability or penalty on such person for an act alleged to have been committed by such person while a Member, liquidating trustee or employee of the DAO, provided the person to be indemnified was acting in good faith within what he reasonably believed to be the scope of his employment or authority and for a purpose which he reasonably believed to be in furtherance of the purpose and best interests of the DAO.

---

[1]Respectively,        0x5d95baEBB8412AD827287240A5c281E3bB30d27E,
0xf8042c55fE4dff9Df82c0F8435fbcdC32fe60A69, and 0xE4118892660792176SD25392475f1156AC5f9033.

2

Payments authorized by this paragraph include amounts paid and expenses incurred in settling such an action or threatened action. The indemnification authorized by this paragraph shall be made from the assets of the DAO and no Member shall be personally liable to an indemnitee. This paragraph shall inure to the benefit of the Member and any future employees and agents of the DAO (including any liquidating trustee) and their respective Members, agents, successors and assignees.

## 6. Ratifications of Prior Disbursements

The DAO and its Members do hereby ratify and affirm each and every action undertaken by the Service Provider on behalf of the DAO wherein said DAO has full knowledge of said act and wherein the act has been fully and accurately stated and explained to the DAO. The DAO and its Members are fully aware of every transaction and contemporaneous events and circumstances and

## 7. Clarification

BY RATIFYING THIS PROPOSAL, YOU ARE AFFIRMING THAT THE DAO WILL INDEMNIFY THE FOLLOWING INDIVIDUALS, ENTITIES, CONTRACTS, AND ADDRESSES, AS WELL AS ANY ASSOCIATED SIGNERS, ADDRESSES, CONTRACTS, INDIVIDUALS, OR ENTITIES FOR ANY AND ALL COSTS, FEES, EXPENSES, AND LIABILITIES INCURRED AS A DAO MEMBER, AND/OR DAO SERVICE PROVIDER, AND/OR DAO AFFILIATE:

| Address |
| --- |
| 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6[2] |
| 0x752515a3a1091b9f1c04416cf79d1f14d2340085[3] |
| 0x5d95baebb8412ad827287240a5c281e3bb30d27e[4] |
| 0xf8042c55fe4dff9df82c0f8435fbcdc32fe60a69 |
| 0xE41188926607921763D25392475f1156AC5f9033 |
| 0x468f178672C86bFA02e5E1B0413C3ccf55A37409 |
| 0x550bD0F03580B9a687931af4d837F8e45D61d410 |
| 0xDbE76F6ae97dFD5bdd1D7DAD8972740d18aB2b57 |
| 0x746cf650d4E5431474E8D4E2d5B6Bbe53772b498 |
| 0xD2427c0e44D28Ea74c0504E072c6073d135569B2 |
| 0x8C00f41676Ce4670ae9FcBBF297a24736dc23cc3 |

By ratifying this proposal, you attest that you have familiarized yourself with pertinent on-chain and off-chain transactions, contract-transactions, internal

---

[2]The DAO Multisig wallet.
[3]dao-lawfirm.eth.
[4]tankbottoms.eth, an Authorized Member.

3

PLAINTIFF0000309

transactions, swaps, and the activities and expenses carried out by those individuals and addresses mentioned above.

You also agree that any actions taken by the above listed individuals, accounts, Multisig contracts, in each case for itself or on behalf of the DAO, in connection with the development of cryptocurrency tooling, recruiting, cryptocurrency experimentation, supporting the purpose of the DAO or its Members, interacting with exchanges, contributing to protocols, swapping tokens, purchasing or selling NFTs, deploying contracts, the utilization of meatspace bank accounts, the depositing of monies into such accounts, the obtaining of accounts or Membership licenses on behalf of the DAO (e.g. Hosting services, Fleek, Notion, Cloudflare, Digital Ocean, Google, Apple), and any actions related thereto are hereby confirmed and ratified in all respects, and that the Service Provider and their affiliates (e.g. **tankbottoms.eth**) and the DAO's agents, (e.g. **tankbottoms.eth**) shall be entitled to indemnity with respect to such actions.

## 8. Ratification of Future Disbursements

The DAO, by its Members hereby ratifies and approves a $100,000.00 spending threshold for the Service Providers, including dao-lawfirm.eth and tankbottoms.eth, whereby prior verbal approval, initial signer, or governance approval is not necessary to spend up to 100,000 USD's worth of funds and cryptographic assets; however, notwithstanding any of the above, any such expenses must be accounted for separately.

## 9. Timeline

These processes should be implemented once this proposal is ratified, only to be removed when superseded or amended by another proposal.

---

## Snapshot Consensus by the DAO Members

**dao-lawfirm.eth** of the **Law Offices of Reed Yurchak**, **tankbottoms.eth**, **benreed.eth**, and **cptspacecadet.eth** will hereafter be collectively referred to as the **"Service Providers"**.

### Ratification of Prior Expenses

**RESOLVED:** The DAO hereby adopts all prior acts related to agreements, and payments by the Service Providers.

**FURTHER RESOLVED:** That **"Snapshot Consensus"** by the DAO Members hereby ratifies all prior acts related to payments from the DAO or any Member wallet for the DAO or its Members, using fiat, Ethereum, or Stablecoins such as DAI, and through the Service Providers' Cryptocurrency accounts, through personal accounts, or through assigned Multisignature contracts, on

4

PLAINTIFF0000310

behalf the DAO's Members or the DAO, for any and all expenses, including software development, research, or consulting services, at the behest of DAO Members whether to satisfy agreements, letters of intent, or contracts, as well as all other actions heretofore undertaken and performed on behalf of the DAO by the Service Providers, or Authorized Members, or by any agent **are hereby ratified, approved and confirmed in their entirety**. Members have been given all information, regarding each and every transaction from every account and Multisignature wallets below, including all transactions personal, DAO related, or otherwise to any other Cryptocurrency account.

**FURTHER RESOLVED:** The DAO by its Members, individually and collectively, have been provided with all pertinent records, via Etherscan, associated with all the Ethereum addresses with which the DAO, or its Service Providers, operated or were involved in any transactions. The DAO, by its Members, hereby approve all transactions between the DAO, its Service Providers, to or from any address owned by the Service Providers. The DAO, by its Members, hereby ratify and affirm each and every transaction on behalf of the DAO, and have full knowledge of each transaction and the transactions were made fully and accurately as stated and explained in the records.

**FURTHER RESOLVED:** The DAO, by its Members, hereby ratify and approve ongoing reimbursements to the Service Providers for all reoccurring expenses which have continued to accrue since March or April of 2022, including software licenses, cloud computing resources, blockchain resources, consulting services, and other engineering expenses. The DAO hereby authorizes the Service Providers to convert fiat into Cryptocurrency and vice versa in the present, the future, and in the past, which may have incurred tax liabilities. The DAO has determined it is in the best interest of its Members to provide accounting services or reimbursements for accounting services to offset the complexity, overhead, and incurred expenses by the Service Providers.

**FURTHER RESOLVED:** That the DAO, through its Service Provider, is authorized to make payments to itself, dao-lawfirm.eth, and tankbottoms.eth for Cryptocurrency reimbursements associated with ongoing expenses which have continued to date, such as software subscriptions, development services, and individual and/or associated compensation.

**FURTHER RESOLVED:** All actions by the Service Providers from January 1, 2022 have been duly presented to the Members in their entirety by way of the Ethereum address records below. The DAO, by its Members ratify and affirm all actions by the Service Providers.

| ENS | ETH Address |
|---|---|
| developer.movedao.eth | 0x2187e6a7c765777d50213346F0Fe519fCA706fbD |
| peace.movedao.eth | 0xD2427c0e44D28Ea74c0504E072c6073d135569B2 |
| gnosis.dao-lawfirm.eth | 0x607d56643673649bd25AA47325A7a6AFeffc3B4a |

5

PLAINTIFF0000311

| ENS | ETH Address |
|---|---|
| - | 0x46D65c64E883f70371A6fcAcB124FB5dd68c9918 |
| - | 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6 |
| - | 0x1932494517F20EB03D652BfDCbABb42018337436 |
| - | 0x41e923B875aF2Cc72772747E9ef2ed55c8df9D42 |
| - | 0x8C00f41676Ce4670ae9FcBBF297a24736dc23cc3 |
| - | 0x8a97426C1a720a45B8d69E974631f01f1168232B |
| dao-lawfirm.eth | 0x30670D81E487c80b9EDc54370e6EaF943B6EAB39 |
| tankbottoms.eth | 0x5d95baEBB8412AD827287240A5c281E3bB30d27E |

**FURTHER RESOLVED:** That the Service Providers of this DAO are, and each acting alone is, hereby authorized to do and perform any and all acts, including execution of any and all documents and certificates, as said Service Provider(s) shall deem necessary or advisable to carry out the purposes of the resolutions herein.

### Further Indemnification

**FURTHER RESOLVED:** The DAO, by its Members, hereby ratifies and approve that the DAO will provide the Service Providers indemnification, including advances of expenses arising out of any activities subject of the civil, criminal, administrative or investigative action, suit, or proceeding for which indemnification or advancement of expenses is sought. That the DAO, through its Service Providers, determines that it is in the best interest of the DAO, its affiliates, and its Members for the DAO to enter into indemnification agreements with its current and future Service Providers in substantially the form attached hereto: DAOLABS Form Indemnification Agreement. That the Service Providers or Authorized Members are authorized to execute and deliver an indemnification agreement with each of the DAO's current Service Providers, and with any future Service Providers of the DAO. That the Service Providers of the DAO are authorized to make modifications to such agreements in order to comply with applicable law.

**RESOLVED FURTHER:** That the Authorized Members are authorized to determine whether to elect to apply Section 248(a) of the Internal Revenue Code with respect to any organizational expenditures.

**RESOLVED FURTHER**: That the Service Providers are authorized to consult with bookkeepers, auditors and attorneys in order to be fully informed as to, and to collect and pay promptly when due, all withholding taxes for which the DAO and its affiliate entities may now be (or hereafter become) liable.

**RESOLVED FURTHER:** That the Service Providers are authorized and directed to solicit the consent of the eligible Members information related to the adoption of legal equity incentive plans and to file the appropriate notices with the applicable state and federal securities authorities in connection with the

6

PLAINTIFF0000312

issuance of options, at such time as such actions may be necessary or advisable
in order to comply with applicable law.

**RESOLVED FURTHER:** That, in accordance with the Guiding Principals,
the **Authorized Member**, together with the Service Provider, are authorized
to execute and deliver any agreement in the name of the DAO and to otherwise
obligate the DAO with respect to the purpose of the DAO, within general
guidelines and budgets approved by the Members; however, the Members may
adopt from time to time specific limitations on the authority of Authorized
Members or Service Providers.

**RESOLVED FURTHER:** That the Service Providers are authorized to execute
and deliver any form of work product, draft board minutes, by instruction to
legal counsel or other authorized representative to determine the size of the
common stock pool, rate of issuance, and the terms of the adoption of the plan
for the DAO affiliate entity. That Service Provider is authorized to deliver in any
form the parameters of the common stock allocation, option pool, and investment
allocation for the DAO affiliate entity.

**RESOLVED FURTHER:** That the "**Service Providers**" of the DAO are
each authorized and empowered to take any and all further action to execute and
deliver any and all such further agreements in the organization and governance
between the DAO affiliate entities and the DAO, with regards to the inter-
company licensing agreements.

**Omnibus Resolutions**

**RESOLVED FURTHER:** That the **Service Providers** of the DAO are each
authorized and empowered to take any and all such further action, to execute
and deliver any and all such further agreements, instruments, documents and
certificates and to pay such expenses, in the name and on behalf of the DAO,
as any of each of the **Service Providers** may deem necessary or advisable to
effectuate the purposes and intent of the resolutions hereby adopted, the taking
of such actions, the execution and delivery of such agreements, instruments,
documents and certificates and the payment of such expenses by any such **Service
Providers** to be conclusive evidence of his or her authorization hereunder and
the approval thereof.

**RESOLVED FURTHER:** That any and all actions taken by the **Service
Providers** of the DAO to carry out the purposes and intent of the foregoing
resolutions prior to their adoption are approved, ratified and confirmed. As used
in this document, the words "herein," "hereof," "hereby" and "hereunder" shall
refer to this document as a whole, and not to any particular section, provision,
or subdivision of this document.

This action by the DAO Member by Snapshot vote shall be effective as of
the date the DAO Entities receives the consent of the DAO at the end of the
Snapshot vote. This action by the DAO Members consent may be executed in

7

PLAINTIFF0000313

any number of counterparts, each of which shall constitute an original and all of
which together shall constitute one action.

_____

**Authors**

1. 0x30670D81E487c80b9EDc54370e6EaF943B6EAB39
2. 0x5d95baEBB8412AD827287240A5c281E3bB30d27E

8

PLAINTIFF0000314

# Exhibit A

PLAINTIFF0000315

## DAOLABS, INC.
## INDEPENDENT CONSULTING AGREEMENT

This Consulting Agreement (this "*Agreement*") is made and entered into as of August 15th, 2022 (the "*Effective Date*"), by and between DAOLABS, INC., a Washington Limited Liability Company ("*DAOLABS*"), and CONTRACTOR, an individual with his principal place of business at _____ and _____ ("*Consultant*") (each herein referred to individually as a "*Party*," or collectively as the "*Parties*").

DAOLABS desires to retain Consultant as an independent contractor to perform consulting services for DAOLABS, and Consultant is willing to perform such services, on the terms described below. In consideration of the mutual promises contained herein, the Parties agree as follows:

**1.      Services and Compensation**

Consultant shall perform the services described in **Exhibit A** (the "*Services*") for DAOLABS (or its designee), and DAOLABS agrees to pay Consultant the compensation described in **Exhibit A** for Consultant's performance of the Services.

**2.      Applicability to Past Activities**

DAOLABS and Consultant acknowledge that Consultant may have performed work, activities, services or made efforts on behalf of or for the benefit of DAOLABS, or related to the current or prospective business of DAOLABS in anticipation of Consultant's involvement with DAOLABS, that would have been "Services" if performed during the term of this Agreement, for a period of time prior to the date of this Agreement starting on <u>August 12, 2022</u> (the "*Prior Consulting Period*"). Accordingly, Consultant agrees that if and to the extent that, during the Prior Consulting Period: (i) Consultant received access to any information from or on behalf of DAOLABS that would have been "Confidential Information" (as defined below) if Consultant received access to such information during the term of this Agreement; or (ii) Consultant (a) conceived, created, authored, invented, developed or reduced to practice any item (including any intellectual property rights with respect thereto) on behalf of or for the benefit of DAOLABS, or related to the current or prospective business of DAOLABS in anticipation of Consultant's involvement with DAOLABS, that would have been an "Invention" (as defined below) if conceived, created, authored, invented, developed or reduced to practice during the term of this Agreement; or (b) incorporated into any such item any pre-existing invention, improvement, development, concept, discovery or other proprietary information that would have been a "Prior Invention" (as defined below) if incorporated into such item during the term of this Agreement; then any such information shall be deemed "Confidential Information" hereunder and any such item shall be deemed an "Invention" or "Prior Invention" hereunder, and this Agreement shall apply to such activities, information or item as if disclosed, conceived, created, authored, invented, developed or reduced to practice during the term of this Agreement.

**3.      Confidentiality**

A.      *Definition of Confidential Information*. "*Confidential Information*" means any non-public information that relates to the actual or anticipated business and/or products, research or development of DAOLABS, its affiliates or subsidiaries or to DAOLABS's, its affiliates' or subsidiaries' technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding DAOLABS's, its affiliates' or subsidiaries' products or services and markets therefor, customer lists and customers (including, but not limited to, customers of DAOLABS on whom Consultant called or with whom Consultant became acquainted during the term of this Agreement), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by DAOLABS, its affiliates or subsidiaries, either directly or indirectly, in writing, orally or by drawings or inspection of premises, parts, equipment, or other property of DAOLABS, its affiliates or subsidiaries. Notwithstanding the foregoing, Confidential Information shall not include any such information which Consultant can establish (i) was publicly known or made generally available prior to the time of disclosure to Consultant; (ii) becomes publicly known or made generally available after disclosure to Consultant through no wrongful action or inaction of Consultant; or (iii) is in the rightful possession of Consultant, without confidentiality obligations, at the time of disclosure as shown by Consultant's then-contemporaneous written records.

PLAINTIFF0000316

B.     ***Nonuse and Nondisclosure.*** During and after the term of this Agreement, Consultant will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Confidential Information, and Consultant will not (i) use the Confidential Information for any purpose whatsoever other than as necessary for the performance of the Services on behalf of DAOLABS, or (ii) disclose the Confidential Information to any third party without the prior written consent of an authorized representative of DAOLABS, except that Consultant may disclose Confidential Information to any third party on a need-to-know basis for the purposes of Consultant performing the Services; provided, however, that such third party is subject to written non-use and non-disclosure obligations at least as protective of DAOLABS and the Confidential Information as this Article 3.  Consultant may also disclose Confidential Information to the extent compelled by applicable law; *provided however*, prior to such disclosure, Consultant shall provide prior written notice to DAOLABS and seek a protective order or such similar confidential protection as may be available under applicable law. Consultant agrees that no ownership of Confidential Information is conveyed to the Consultant. Without limiting the foregoing, Consultant shall not use or disclose any DAOLABS property, intellectual property rights, trade secrets or other proprietary know-how of DAOLABS to invent, author, make, develop, design, or otherwise enable others to invent, author, make, develop, or design identical or substantially similar designs as those developed under this Agreement for any third party. Consultant agrees that Consultant's obligations under this Section 3.B shall continue after the termination of this Agreement.

C.     ***Other Client Confidential Information.*** Consultant agrees that Consultant will not improperly use, disclose, or induce DAOLABS to use any proprietary information or trade secrets of any former or concurrent employer of Consultant or other person or entity with which Consultant has an obligation to keep in confidence. Consultant also agrees that Consultant will not bring onto DAOLABS's premises or transfer onto DAOLABS's technology systems any unpublished document, proprietary information, or trade secrets belonging to any third party unless disclosure to, and use by, DAOLABS has been consented to in writing by such third party.

D.     ***Third Party Confidential Information.*** Consultant recognizes that DAOLABS has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on DAOLABS's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Consultant agrees that at all times during the term of this Agreement and thereafter, Consultant owes DAOLABS and such third parties a duty to hold all such confidential or proprietary information in the strictest confidence and not to use it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out the Services for DAOLABS consistent with DAOLABS's agreement with such third party.

4.     **Ownership**

A.     ***Assignment of Inventions.*** Consultant agrees that all right, title, and interest in and to any copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries and trade secrets conceived, discovered, authored, invented, developed or reduced to practice by Consultant, solely or in collaboration with others, during the term of this Agreement and arising out of, or in connection with, performing the Services under this Agreement and any copyrights, patents, trade secrets, mask work rights or other intellectual property rights relating to the foregoing (collectively, "***Inventions***"), are the sole property of DAOLABS. Consultant also agrees to promptly make full written disclosure to DAOLABS of any Inventions and to deliver and assign (or cause to be assigned) and hereby irrevocably assigns fully to DAOLABS all right, title and interest in and to the Inventions.

B.     ***Pre-Existing Material***s. Subject to Section 4.A, Consultant agrees that if, in the course of performing the Services, Consultant incorporates into any Invention or utilizes in the performance of the Services any pre-existing invention, discovery, original works of authorship, development, improvements, trade secret, concept, or other proprietary information or intellectual property right owned by Consultant or in which Consultant has an interest ("***Prior Inventions***"), (i) Consultant will provide DAOLABS with prior written notice and (ii) DAOLABS is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, transferable, worldwide license (with the right to grant and authorize sublicenses) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Prior Inventions, without restriction, including, without limitation, as part of or in connection with such Invention, and to practice any method related thereto. Consultant will not incorporate any invention, improvement, development, concept, discovery, work of authorship or other proprietary information owned by any third party into any Invention without DAOLABS's prior written permission.

-2-

PLAINTIFF0000317

C. ***Moral Rights.*** Any assignment to DAOLABS of Inventions includes all rights of attribution, paternity, integrity, modification, disclosure and withdrawal, and any other rights throughout the world that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively, "***Moral Rights***"). To the extent that Moral Rights cannot be assigned under applicable law, Consultant hereby waives and agrees not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law.

D. ***Maintenance of Records.*** Consultant agrees to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by Consultant (solely or jointly with others) during the term of this Agreement, and for a period of three (3) years thereafter. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that is customary in the industry and/or otherwise specified by DAOLABS. Such records are and remain the sole property of DAOLABS at all times and upon DAOLABS's request, Consultant shall deliver (or cause to be delivered) the same.

E. ***Further Assurances.*** Consultant agrees to assist DAOLABS, or its designee, at DAOLABS's expense, in every proper way to secure DAOLABS's rights in Inventions in any and all countries, including the disclosure to DAOLABS of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments that DAOLABS may deem necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights, and in order to deliver, assign and convey to DAOLABS, its successors, assigns and nominees the sole and exclusive right, title, and interest in and to all Inventions and testifying in a suit or other proceeding relating to such Inventions. Consultant further agrees that Consultant's obligations under this Section 4.E shall continue after the termination of this Agreement.

F. ***Attorney-in-Fact.*** Consultant agrees that, if DAOLABS is unable because of Consultant's unavailability, dissolution, mental or physical incapacity, or for any other reason, to secure Consultant's signature with respect to any Inventions, including, without limitation, for the purpose of applying for or pursuing any application for any United States or foreign patents or mask work or copyright registrations covering the Inventions assigned to DAOLABS in Section 4.A, then Consultant hereby irrevocably designates and appoints DAOLABS and its duly authorized officers and agents as Consultant's agent and attorney-in-fact, to act for and on Consultant's behalf to execute and file any papers and oaths and to do all other lawfully permitted acts with respect to such Inventions to further the prosecution and issuance of patents, copyright and mask work registrations with the same legal force and effect as if executed by Consultant. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

5. **Conflicting Obligations**

A. Consultant represents and warrants that Consultant has no agreements, relationships, or commitments to any other person or entity that conflict with the provisions of this Agreement, Consultant's obligations to DAOLABS under this Agreement, and/or Consultant's ability to perform the Services. Consultant will not enter into any such conflicting agreement during the term of this Agreement.

B. Consultant shall require all Consultant's employees, contractors, or other third-parties performing Services under this Agreement to execute a Confidential Information and Assignment Agreement in the form of Exhibit B, and promptly provide a copy of each such executed agreement to DAOLABS. Consultant's violation of this Article 5 will be considered a material breach under Section 8.B.

6. **Return of DAOLABS Materials**

Upon the termination of this Agreement, or upon DAOLABS's earlier request, Consultant will immediately deliver to DAOLABS, and will not keep in Consultant's possession, recreate, or deliver to anyone else, any and all DAOLABS property, including, but not limited to, Confidential Information, tangible embodiments of the Inventions, all devices and equipment belonging to DAOLABS, all electronically-stored information and passwords to access such property, those records maintained pursuant to Section 4.D and any reproductions of any of the foregoing items that Consultant may have in Consultant's possession or control.

PLAINTIFF0000318

## 7.     Reports

Consultant agrees that Consultant will keep DAOLABS advised as to Consultant's progress in performing the Services under this Agreement. Consultant further agrees that Consultant will, as requested by DAOLABS, prepare written reports with respect to such progress. DAOLABS and Consultant agree that the reasonable time expended in preparing such written reports will be considered time devoted to the performance of the Services.

## 8.     Term and Termination

A.     ***Term.*** The term of this Agreement will begin on the Effective Date of this Agreement and will continue until the earlier of (i) final completion of the Services or (ii) termination as provided in Section 8.B.

B.     ***Termination.*** DAOLABS may terminate this Agreement upon giving Consultant fourteen (14) days prior written notice of such termination pursuant to Section 14.G of this Agreement. DAOLABS may terminate this Agreement immediately and without prior notice if Consultant refuses to or is unable to perform the Services or is in breach of any material provision of this Agreement.

C.     ***Survival.*** Upon any termination, all rights and duties of DAOLABS and Consultant toward each other shall cease except:

(1)     DAOLABS will pay, within thirty (45) days after the effective date of termination, all amounts owing to Consultant for Services completed and accepted by DAOLABS prior to the termination date and related reimbursable expenses, if any, submitted in accordance with DAOLABS's policies and in accordance with the provisions of Article 1 of this Agreement; and

(2)     Article 3 (Confidentiality), Article 4 (Ownership), Section 5.B (Conflicting Obligations), Article 6 (Return of DAOLABS Materials), Article 8 (Term and Termination), Article 9 (Independent Contractor Relationship), Article 10 (Indemnification), Article 11 (Noninterference), Article 12 (Limitation of Liability), Article 13 (Arbitration and Equitable Relief), and Article 14 (Miscellaneous) will survive termination or expiration of this Agreement in accordance with their terms.

## 9.     Independent Contractor Relationship

It is the express intention of DAOLABS and Consultant that Consultant performs the Services as an independent contractor to DAOLABS. Nothing in this Agreement shall in any way be construed to constitute Consultant as an agent, employee or representative of DAOLABS. Without limiting the generality of the foregoing, Consultant is not authorized to bind DAOLABS to any liability or obligation or to represent that Consultant has any such authority. Consultant agrees to furnish (or reimburse DAOLABS for) all tools and materials necessary to accomplish this Agreement and shall incur all expenses associated with performance, except as expressly provided in **Exhibit A**. Consultant acknowledges and agrees that Consultant is obligated to report as income all compensation received by Consultant pursuant to this Agreement.

## 10.     Indemnification

Consultant agrees to indemnify and hold harmless DAOLABS and its affiliates and their directors, officers and employees from and against all taxes, losses, damages, liabilities, costs and expenses, including attorneys' fees and other legal expenses, arising directly or indirectly from or in connection with (i) any negligent, reckless or intentionally wrongful act of Consultant or Consultant's assistants, employees, contractors or agents, (ii) any breach by the Consultant or Consultant's assistants, employees, contractors or agents of any of the covenants contained in this Agreement and corresponding Confidential Information and Invention Assignment Agreement, (iii) any failure of Consultant to perform the Services in accordance with all applicable laws, rules and regulations, or (iv) any violation or claimed violation of a third party's rights resulting in whole or in part from DAOLABS's use of the Inventions or other deliverables of Consultant under this Agreement.

-4-

PLAINTIFF0000319

**11. Nonsolicitation**

To the fullest extent permitted under applicable law, from the date of this Agreement until twelve (12) months after the termination of this Agreement for any reason (the "***Restricted Period***"), Consultant will not, without DAOLABS's prior written consent, directly or indirectly, solicit any of DAOLABS's employees to leave their employment, or attempt to solicit employees of DAOLABS, either for Consultant or for any other person or entity. Consultant agrees that nothing in this Article 11 shall affect Consultant's continuing obligations under this Agreement during and after this twelve (12) month period, including, without limitation, Consultant's obligations under Article 3.

**12. Limitation of Liability**

IN NO EVENT SHALL DAOLABS BE LIABLE TO CONSULTANT OR TO ANY OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, OR DAMAGES FOR LOST PROFITS OR LOSS OF BUSINESS, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY, WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHER THEORY OF LIABILITY, REGARDLESS OF WHETHER DAOLABS WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. IN NO EVENT SHALL DAOLABS'S LIABILITY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT EXCEED THE AMOUNTS PAID BY DAOLABS TO CONSULTANT UNDER THIS AGREEMENT FOR THE SERVICES, DELIVERABLES OR INVENTION GIVING RISE TO SUCH LIABILITY.

**13. Arbitration and Equitable Relief**

A. ***Arbitration.*** IN CONSIDERATION OF CONSULTANT'S CONSULTING RELATIONSHIP WITH DAOLABS, ITS PROMISE TO ARBITRATE ALL DISPUTES RELATED TO CONSULTANT'S CONSULTING RELATIONSHIP WITH DAOLABS AND CONSULTANT'S RECEIPT OF THE COMPENSATION AND OTHER BENEFITS PAID TO CONSULTANT BY DAOLABS, AT PRESENT AND IN THE FUTURE, CONSULTANT AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING DAOLABS AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF DAOLABS IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM CONSULTANT'S CONSULTING RELATIONSHIP WITH DAOLABS OR THE TERMINATION OF CONSULTANT'S CONSULTING RELATIONSHIP WITH DAOLABS, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION PROVISIONS PURSUANT TO WASHINGTON LAW, AND SHALL BE BROUGHT IN CONSULTANT'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. THE FEDERAL ARBITRATION ACT SHALL CONTINUE TO APPLY WITH FULL FORCE AND EFFECT NOTWITHSTANDING THE APPLICATION OF PROCEDURAL RULES SET FORTH IN THE ACT. **DISPUTES WHICH CONSULTANT AGREES TO ARBITRATE, AND THEREBY AGREES TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER LOCAL, STATE, OR FEDERAL LAW.** CONSULTANT FURTHER UNDERSTANDS THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT DAOLABS MAY HAVE WITH CONSULTANT.

B. ***Procedure.*** CONSULTANT AGREES THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("*JAMS*") PURSUANT TO ITS COMMERCIAL ARBITRATION RULES & PROCEDURES (THE "*JAMS RULES*"), WHICH ARE AVAILABLE AT http://www.jamsadr.com/rules-employment-arbitration/ AND FROM HUMAN RESOURCES AND ATTACHED HERETO AS EXHIBIT C. CONSULTANT AGREES THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION AND MOTIONS TO DISMISS AND DEMURRERS. CONSULTANT AGREES THAT THE ARBITRATOR SHALL ISSUE A WRITTEN DECISION ON THE MERITS. CONSULTANT ALSO AGREES THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO DAOLABS WHERE PROVIDED BY APPLICABLE LAW. CONSULTANT AGREES THAT THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A

-5-

PLAINTIFF0000320

FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. CONSULTANT AGREES THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH WASHINGTON LAW, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL WASHINGTON LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH WASHINGTON LAW, WASHINGTON LAW SHALL TAKE PRECEDENCE. CONSULTANT FURTHER AGREES THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN KING COUNTY, WASHINGTON.

        C.     ***Remedy.*** EXCEPT AS PROVIDED BY THE ACT AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE, AND FINAL REMEDY FOR ANY DISPUTE BETWEEN CONSULTANT AND DAOLABS. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE ACT AND THIS AGREEMENT, NEITHER CONSULTANT NOR DAOLABS WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

        D.     ***Availability of Injunctive Relief.*** THE PARTIES AGREE THAT ANY PARTY MAY ALSO PETITION THE COURT FOR INJUNCTIVE RELIEF WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF ANY AGREEMENT REGARDING INTELLECTUAL PROPERTY, CONFIDENTIAL INFORMATION OR NONINTERFERENCE. IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, DAOLABS SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS' FEES.

        E.     ***Administrative Relief.*** CONSULTANT UNDERSTANDS THAT THIS AGREEMENT DOES NOT PROHIBIT CONSULTANT FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY OR GOVERNMENT AGENCY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE CONSULTANT FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM, EXCEPT AS PERMITTED BY LAW.

        F.     ***Voluntary Nature of Agreement.*** CONSULTANT ACKNOWLEDGES AND AGREES THAT IT IS EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY DAOLABS OR ANYONE ELSE. CONSULTANT FURTHER ACKNOWLEDGES AND AGREES THAT IT HAS CAREFULLY READ THIS AGREEMENT AND THAT CONSULTANT HAS ASKED ANY QUESTIONS NEEDED FOR CONSULTANT TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT ***CONSULTANT IS WAIVING ITS RIGHT TO A JURY TRIAL***. FINALLY, CONSULTANT AGREES THAT IT HAS BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF CONSULTANT'S CHOICE BEFORE SIGNING THIS AGREEMENT.

        **14.**     **Miscellaneous**

        A.     ***Governing Law; Consent to Personal Jurisdiction.*** This Agreement shall be governed by the laws of the State of Washington, without regard to the conflicts of law provisions of any jurisdiction. To the extent that any lawsuit is permitted under this Agreement, the Parties hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in Washington.

        B.     ***Assignability.*** This Agreement will be binding upon Consultant's assigns, administrators, and other legal representatives, and will be for the benefit of DAOLABS, its successors, and its assigns. There are no intended third-party beneficiaries to this Agreement, except as expressly stated. Except as may otherwise be provided in this Agreement, Consultant may not sell, assign or delegate any rights or obligations under this Agreement, by operation of law or otherwise (including by merger, consolidation, reorganization, reincorporation, sale of assets or stock or change of control), and any such attempted assignment, delegation or transfer shall be null and void. Notwithstanding anything to the contrary herein, DAOLABS may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of DAOLABS's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock, change of control or otherwise.

PLAINTIFF0000321

C.     ***Entire Agreement.*** This Agreement constitutes the entire agreement and understanding between the Parties with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between the Parties. Consultant represents and warrants that it is not relying on any statement or representation not contained in this Agreement.  To the extent any terms set forth in any exhibit or schedule conflict with the terms set forth in this Agreement, the terms of this Agreement shall control unless otherwise expressly agreed by the Parties in such exhibit or schedule.

D.     ***Headings.*** Headings are used in this Agreement for reference only and shall not be considered when interpreting this Agreement.

E.     ***Severability.*** If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

F.     ***Modification, Waiver.*** No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the Parties. Waiver by DAOLABS of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

G.     ***Notices.*** Any notice or other communication required or permitted by this Agreement to be given to a Party shall be in writing and shall be deemed given (i) if delivered personally or by commercial messenger or courier service, (ii) when sent by confirmed facsimile, or (iii) if mailed by U.S. registered or certified mail (return receipt requested), to the Party at the Party's address written below or at such address as the Party may have previously specified by like notice. If by mail, delivery shall be deemed effective three business days after mailing in accordance with this Section .

H.     ***Attorneys' Fees.*** In any court action at law or equity that is brought by one of the Parties to this Agreement to enforce or interpret the provisions of this Agreement, DAOLABS will be entitled to reasonable attorneys' fees, in addition to any other relief to which DAOLABS may be entitled.

I.     ***Signatures.*** This Agreement may be signed in two counterparts, each of which shall be deemed an original, with the same force and effectiveness as though executed in a single document.

*[signature page follows]*

PLAINTIFF0000322

IN WITNESS WHEREOF, the Parties hereto have executed this Consulting Agreement as of the date first written above.

**CONTRACTOR**                                      **DAOLABS, INC.**

By: _____                     By: _____

Name: _____                     Name: BENJAMIN REED_____

Title: _____                    Title: MANAGER_____

Address for Notice:

_____

_____

_____

PLAINTIFF0000323

**EXHIBIT A**

**SERVICES AND COMPENSATION**

1.   ***Contact.*** Consultant's principal Company contact:

    DAOLABS, LLC.
    620 131st AVE NE
    Bellevue, WA 98005
    (206) 866-0766

    BLANK

    CONTRACTOR had previous executed a NDA (attached) with DAOLABS, LLC dated August 12th, 2022, such that all communication with _____ will be covered by the agreement.

2.   ***Services.*** The Services shall consist of the following:

    A.   See Attached Signed Scope of Work dated _____, however, Consultant will …

    B.   and such other services that DAOLABS may reasonably request from time to time, including but not limited to ….

3.   ***Compensation.***

    A.   DAOLABS will pay Consultant $100 an hour.

    B.   DAOLABS will pay Consultant $1,500 30 days after contract signing, and another $1,500 after another 30 days, given that Consultant work at least 15 hours per month.

    C.   DAOLABS will pay Consultant any overage hours spent from income derived from DAOLABS licensing or in installments of $1,000 after 4.5 months after contracting signing, whichever comes first.  Consultant will keep track of her time and provide a timesheet in excel format of hours worked per week.  Consultant will provide the timesheet to DAOLABS on a bi-monthly schedule for approval and record keeping.

    D.   DAOLABS will reimburse Consultant, in accordance with DAOLABS policy, for all reasonable expenses incurred by Consultant in performing the Services pursuant to this Agreement, if Consultant receives written consent from an authorized agent of DAOLABS prior to incurring such expenses and submits receipts for such expenses to DAOLABS in accordance with DAOLABS policy.

    Consultant shall submit to DAOLABS a written invoice for Services and expenses, and such statement shall be subject to the approval of the contact person listed above or other designated agent of DAOLABS.  Consultant shall submit to DAOLABS a written invoice for Services including hours worked and hours deferred that week, and cumulative, or total since contract signing.

PLAINTIFF0000324

This **Exhibit A** is accepted and agreed upon as of August 12, 2022.

**CONTRACTOR**                                    **DAOLABS, LLC.**

By: _____    By: _____

Name: _____    Name: BENJAMIN REED_____

Title: _____    Title: MANAGER_____

PLAINTIFF0000325

**SCOPE OF WORKSTATEMENT OF WORK**

Contractor,

If there is a descriptive statement of work you want to include, please do it here.

**CONTRACTOR**                                      **DAOLABS, LLC.**


By: _____        By: _____

Name: _____        Name: BENJAMIN REED_____

PLAINTIFF0000326

# Exhibit B

PLAINTIFF0000327

# DAOLABS TECHNOLOGY LICENSE AGREE-MENT

This Technology License Agreement (the **"Agreement"**) is entered into as of August \_\_\_\_\_ 2022 (the **"Effective Date"**) by and among the DAO (**"Licensor"**), and DAOLABS, LLC., a Washington limited liability corporation (**"Licensee"**) and an authorized individuals appointed by `DAOLABS, LLC,` _____, the authorized representative ("**Authorized Representative**").

## RECITALS

Licensor owns the Technology and desires to grant to the Licensee a license to all substantial rights held by it in and to the Technology. Licensee and Licensor desires to have Authorized Representative approve the termination or assignment of this agreement.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the mutual covenants herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to the following:

**1. Definitions.**

>  **"Confidential Information"** means all information or materials disclosed or transferred by Licensor to Licensee or Licensee to Licensor pursuant to this Agreement which the transferring party designates as confidential or which by its nature ought to be deemed confidential. Notwithstanding the foregoing, Confidential Information shall not include any information that: (i) is at the time of disclosure or subsequently becomes publicly available without the receiving party's breach of any obligations owed the disclosing party; (ii) became known to the receiving party prior to the disclosing party's disclosure of such information to the receiving party; (iii) became known to the receiving party from a source other than the disclosing party other than by the breach of an obligation of confidentiality owed to the disclosing party; (iv) is independently developed by the receiving party without reference to the Confidential Information or (v) is required by law to be disclosed.

>  **"Technology"** means the technology described on Exhibit A, and any and all improvements or derivatives thereof, and any and all intellectual property rights therein, including all patents of the United States of America and all foreign countries that may be issued for any inventions disclosed in patent applications or claiming a priority deriving from such patent applications, including without limitation all divisions, reissues, continuations, continuations-in-part, certificates

1

PLAINTIFF0000328

of re-examination, patents of addition, extensions and prolongations.

**"Product(s)"** means any and all products or services that can be developed, manufactured, marketed, promoted, distributed, sold, rented, or leased using the Technology.

## 2. Grant of License to the Technology.

Licensor hereby grants Licensee an exclusive, worldwide, sub-licensable license to the Technology to develop, market, promote, rent, lease, distribute, manufacture, use, and sell Product(s) or otherwise exploit and/or to sublicense the same. For the sake of clarity, this license is exclusive even as between the parties such that Licensor retains no right to use or license the Technology during the Term.

## 3. Terms of Payment.

Licensee shall pay Licensor for the conveyance of the rights it receives under this Agreement in the amounts and as described in Exhibit B to this Agreement. Upon termination of this Agreement, any amounts earned through the date of termination shall continue to be payable in accordance with the provisions of this Section 3.

## 4. Transfer of Modifications, Enhancements or Improvements of the Technology.

It is anticipated that Licensee may develop modifications, enhancements or improvements to the Technology. If, and to the extent that, Licensee invents, develops or otherwise creates any enhancement, modification, derivation, or other improvement to the technology and/or inventions disclosed in the Technology, ownership of such enhancement, modification, derivation or improvement shall be transferred to Licensor's ownership of the Technology.

## 5. Patent Marking.

Licensee shall mark the Products and/or any packaging pertaining thereto developed, manufactured, marketed, promoted, distributed, sold, rented, or leased pursuant to the terms of this Agreement in accordance with 35 USC §287 and to indicate patents pending if any applications for patent included in Technology are pending.

## 6. Patent Maintenance and Status.

Licensee shall be solely responsible for and bear all fees, costs and expenses associated with the maintenance, protection and defense of the Technology during the Term, including all patent, trademark, trade name, service marks, and copyright registration, applications, prosecution and the defense of any claims by a third party for infringement or unauthorized use of Technology, except as provided in Section 10.

## 7. Licensor's Warranty.

2

PLAINTIFF0000329

Licensor warrants to Licensee that to the best of Licensor's knowledge (i) Licensee's use as contemplated by this Agreement shall not infringe any third party patents, trademarks, copyrights, trade secrets or other proprietary rights, and that (ii) Licensor is the sole owner of any and all rights in and to the Technology and that no other third party, other than the third party rights disclosed on Exhibit A, possesses any rights in and to the Technology.

## 8. Term & Termination.

This Agreement will continue until terminated (i) by Licensor if an Event of Default (as defined below) occurs and Licensee does not cure such default within twenty-four (24) hours following Licensor's written notice of such failure; or (ii) upon the mutual agreement of the parties; or (iii) upon written notice by an authorized individual appointed by DAOLABs. The authorized individuals appointed by DAOLABs will pay Licensee one ($1) dollar for this termination right. Any one of the following is an "Event of Default":

### 8.1 Payment Default.

If Licensee fails to timely pay the obligations described in Section 3;

### 8.2 Covenant Default.

If Licensee violates any covenant herein or does not perform or observe any other material term, condition or covenant in this Agreement;

### 8.3 Insolvency or Attachment.

If Licensee becomes insolvent or if Licensee begins an Insolvency Proceeding or an Insolvency Proceeding is begun against Borrower and not dismissed or stayed within 30 days. An "Insolvency Proceeding" means the filing by or against the Licensee of any petition in bankruptcy or any petition for relief under the provisions of the Federal Bankruptcy Act, as amended, or any other state or federal law for the relief of debtors and the continuation of such petition without dismissal for a period of twenty (20) days or more; the appointment of a receiver or trustee to take possession of any property or assets of the Company; or the attachment of or execution against any property or assets of the Company, which remains unstayed for a period of ten (10) days.

## 9. Audit Rights.

Licensee agrees to keep adequate, accurate records of the amounts due hereunder and of all underlying transactions. Licensor and Authorized Representative shall have the right to audit all such records of Licensee reasonably related to Licensee's use of the Technology, to ensure that proper records are being kept and to verify all reports and payments due hereunder. The cost of such audit will be borne by Licensee. A discrepancy shall be deemed material if it involves payment or adjustment of more than five percent of reported payment. Any additional payments shown to be due as a result of the audit will be paid promptly by Licensee, along with interest on such amounts from the date originally due, upon conclusion of the audit. An audit may be conducted on Licensor's behalf by an

3

PLAINTIFF0000330

independent third party auditor or an individual auditor selected by Licensor or the Authorized Representative with a minimum of three (3) days notice during normal business hours no more than once each calendar year. The auditor shall execute an appropriate confidentiality agreement prior to beginning its audit.

## 10. Third-Party Infringement; Notice and Right to Sue.

If, at any time during the period during which Licensee holds a license hereunder, either party shall become aware of any infringement or threatened infringement of any Technology, said party shall forthwith give notice thereof to the other party. Such notice shall include the identification of the third party or parties thought to be the infringers, the product(s), systems or activities thought to constitute the infringement, along with the basis for suspecting the infringement including an analysis giving the legal and factual basis for believing the Technology has been infringed, along with any documentary evidence of such suspected infringement and identification of witnesses with knowledge of such suspected infringement. Within one hundred and eighty (180) days after learning of an alleged infringement, Licensee shall file a lawsuit in its own name or take other similar affirmative legal action against the alleged infringer or shall give written notice to Licensor of Licensee's intent not to take such action. If no such action is commenced by Licensee within the 180 day time period, or if Licensee provides notice of intent not to take such action, then (as Licensor's sole remedy for such failure to act by Licensee) Licensor shall have the right, but not the obligation, to bring an action at its own expense. For the purpose of such proceedings, Licensor shall permit, if legally necessary, the use of its name, shall give Licensee reasonable assistance, and shall execute such documents and do such acts as may be reasonably necessary. Any action for infringement of the Technology undertaken by either party hereunder shall be at such party's own expense including any legal fees, costs or other expenses. In the event there is a settlement or a recovery in a claim pursued by either party, any and all recovery shall first be applied to reimburse the parties for the costs each party incurred in the action and the remainder shall be allocated between the Licensor and the Licensee pursuant to the terms of payment set forth in Section 3 as though the amounts received were gross revenue received by Licensee .

## 11. Indemnity.

Licensee will reimburse, indemnify, defend and hold harmless Licensor and Authorized Representative from and against and in respect of any and all damages, losses, deficiencies, liabilities, costs and expenses incurred or suffered by Licensee that result from, relate to or arise out of any third party claim including of actual or alleged infringement of intellectual property rights by the exercise of the rights granted herein to the Technology (a "Claim"). Licensee will advance ten thousand dollars ($10,000) to Licensor and the Authorized Representative in the event of a threatened claim by any party, including by Licensee itself.

## 12. Injunctive Relief.

4

PLAINTIFF0000331

The parties hereto specifically acknowledge and agree that the remedy at law for any breach of the foregoing will be inadequate and that each party, in addition to any other relief available to it, shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damage. In the event that the provisions of this Section should ever be deemed to exceed the limitation provided by applicable law, then the parties hereto agree that such provisions shall be reformed to set forth the maximum limitations permitted by such law.

**13. Confidentiality.**

Except as expressly provided herein, neither party will use or disclose any Confidential Information of the other party without first securing the prior written consent of the party whose Confidential Information is to be disclosed. Notwithstanding the foregoing, each party may disclose Confidential Information of the other party to their employees, agents, contractors or consultants on a need-to-know basis. In addition, if either party intends to disclose all or portions of this Agreement or any related document in accordance with any judicial order or other federal, state or local governmental statute, rule, regulation or order, where such disclosure would be a disclosure of Confidential Information if it was not pursuant to legal process, the party intending to make such disclosure must give the other party reasonable notice prior to such disclosure; after receipt of such notice, the party so advised shall be solely responsible for asserting and filing any objections to such disclosure, invoking any governmental, judicial or administrative procedures for protecting against such disclosure, and obtaining any applicable protective order or equivalent, and the Licensee shall not be required to delay any timely filings to comply with any judicial order or other federal, state or local governmental statute, rule, regulation or order; except that the party intending to make such disclosure may not disclose such information for which procedures for protecting against such disclosure have been invoked until the conclusion of such procedures. Nothing in this section is to be construed as granting either party the right to disclose Confidential Information over the other party's objection.

**14. Assignment; Successors and Assigns.**

This Agreement will be binding upon and inure to the benefit of each party's respective successors and lawful assigns. Licensor may not assign this Agreement, in whole or in part, without Licensee and the Authorized Representative's prior written approval. The Authorized Representative will provide one ($1) dollar to Licensee in consideration for this right. This Agreement may only be assigned by Licensee, with both the Licensor and Authorized Representative's written approval. Licensee will provide notice to Licensor of any contemplated assignment within thirty (30) days prior. Any assignment prior to such written approval will be void ab initio. For purposes of this Agreement, an assignment includes (a) a merger with another entity and any other transfer by operation of law, (b) the sale or transfer of all or substantially all of a party's assets, (c) an acquisition of a majority of a party's voting stock or other voting interests by a third party, and (d) change in beneficial ownership of a majority of a party's ownership equity.

5

PLAINTIFF0000332

**15. Notices.**

All notices, authorizations, and requests in connection with this Agreement shall be deemed given (a) on the day they are hand-delivered with signed confirmation of receipt from the party to whom it is addressed, (b) three (3) days after the day they are deposited in the mail, postage prepaid, certified, return receipt requested, or (c) two (2) days after the day they are sent by Federal Express,; and addressed to the signatories of this Agreement (or their successors pursuant to due notice) at the following addresses:

| LICENSOR | LICENSEE |
|---|---|
| DAOLABS, LLC<br>Attn: George Petre, Tiberius Law<br>Re. Law Offices of Reed Yurchak<br>601 Brickell Key Drive Suite 701<br>Miami, FL 33131 | The DAO, Service Provider<br>Attn: George Petre, Tiberius Law<br>Re. Law Offices of Reed Yurchak<br>601 Brickell Key Drive Suite 701<br>Miami, FL 33131 |
| Manager:<br>Attn: George Petre, Tiberius Law<br>Re. Law Offices of Reed Yurchak<br>601 Brickell Key Drive Suite 701<br>Miami, FL 33131 | c/o Reed Yurchak<br>Attn: George Petre, Tiberius Law<br>Re. Law Offices of Reed Yurchak<br>601 Brickell Key Drive Suite 701<br>Miami, FL 33131 |
|  | Law Offices of Reed Yurchak<br>620 131st Ave NE<br>Bellevue, WA 98005<br>reed@yurchaklaw.com |

_____          _____

TERMINATION AND
ASSIGNMENT APPROVAL
RIGHTS

_____          _____
Authorized Representative

**16. Law; Attorneys' Fees.**

Except as specifically preempted by the federal laws of the United States of America, this Agreement shall be construed and interpreted under the laws of the State of Washington without giving effect to the principles of conflict of

6

PLAINTIFF0000333

laws. The parties submit to the exclusive jurisdiction of and venue in the state or federal courts located in Seattle, Washington. Each party hereby waives all defenses of lack of personal jurisdiction and forum nonconveniens. If court proceedings are required to enforce any provision of this Agreement, the Licensor shall be entitled to an award of reasonable costs and expenses of litigation and any appeal, including reasonable attorneys' fees.

**17. Entire Agreement; Modification; Waiver.**

This Agreement contains the entire agreement between the parties and supersedes and replaces all prior negotiations and agreements between the parties hereto respecting this subject matter. No modification or waiver of this Agreement or any of its provisions shall be binding upon the party against whom enforcement is sought, unless made in writing and signed by an authorized representative of each party. No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

**18. Severability.**

If any provision of this Agreement is held to be invalid, illegal or unenforceable for any reason, such invalidity, illegality or un-enforceability shall not affect any other provisions of this Agreement, which shall remain in full force and effect.

**19. Survival.**

Sections 7, 10-13, 16 and 19 shall survive the termination of this Agreement.

—————————————————

DATED as of the date first above written.

| LICENSOR | LICENSEE |
|---|---|
| DAOLABS, LLC | The DAO |
| By: _____ | By: _____ |
| Title: Manager | Title: _____ |
| Name: _____ | Name: _____ |

TERMINATION AND
ASSIGNMENT APPROVAL RIGHT
By: _____
Title: _____
Name: Authorized Representative

**EXHIBIT A**

**The Technology**

7

PLAINTIFF0000334

- (I) Pre-existing technology statement here and there.
- (II) Another pre-existing technology statement here and there.

**Source Code Projects**
- (II) See GitHub Resository

**EXHIBIT B**

**Payment Schedule**

| Id | Ethereum Address | Amount | Year |
|----|------------------|--------|------|
| 1 | 0x0000000000000000000000000000000000000000—$100,000.00 | 6/1/2022 |
| 2 | 0x0000000000000000000000000000000000000000—$250,000.00 | 12/1/2022 |
| 3 | 0x0000000000000000000000000000000000000000—$250,000.00 | 1/1/2023 |
| 4 | 0x0000000000000000000000000000000000000000—$550,000.00 | 6/1/2023 |
| 5 | 0x0000000000000000000000000000000000000000—$550,000.00 | 12/1/2023 |

8

PLAINTIFF0000335