UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:23-cv-20727-RKA

**RYAN BRESLOW**, *et al.*,

    Plaintiffs,

v.

**MARK PHILLIPS**, *et al.*,

    Defendants.

## DECLARATION OF MARK PHILLIPS

I, Mark Phillips, make the following declaration:

1. I am a Defendant in this Action, am over the age of 18, and am competent to testify in this matter. I have personal knowledge of the matters stated herein.

2. In July 2021, I had a meaningful role as a Lead Developer under contract with the Securities and Exchange Commission. Specifically, I was employed by InfoTrend Incorporated, a subcontractor to Its Agile, LLC, which was a prime contractor to the SEC under a solicitation regarding for the provision of "blockchain and digital asset data support[.]" Attached hereto as Exhibit 1 is a true and correct copy of a 2021 InfoTrend Incorporated W-2 I received from my employer.

3. Given that the nature of the work I did for the SEC is confidential, I cannot disclose details, but I can provide an SEC Solicitation for contractor services I obtained via a Freedom of Information Act request. A true and correct copy of that Solicitation is attached hereto as Exhibit 2.

EXHIBIT 073	PLAINTIFF0000712

4.  In order to obtain a contractor position with SEC, and obtain a requisite security clearance, I completed a Declaration for Federal Employment, an FBI fingerprint search, and an authorization for release of credit information. True and correct copies of those documents are Attached hereto as Exhibits 3, 4, and 5.

5.  I am often consulted on my expertise Solidity, Bitcoin Script, and Typescript, coding languages used for blockchain transactions, and have been well-regarded in the blockchain space for my work. At one point, my skills were in such high apparent demand, that I was inundated with so many unsolicited employment offers through LinkedIn that I deactivated my account.

6.  In April 2021, Bitcoin was trading at over $60,000, and would again trade for over $60,000 in October 2021. During that time there was incredible demand for cryptocurrency and blockchain engineers in the market.

7.  I ultimately left my contractor position at the SEC, for what ultimately became MovementDAO based on Plaintiffs representations of what MovementDAO would be.

8.  I had disclosed to Plaintiffs, at least in meetings in August and September 2021, and in January, July, and August 2022, that I had a criminal background, including going to jail and prison, and the related circumstances. My earlier criminal action had been well publicized, and a simple Google search would have revealed the criminal allegations made against me. These discussions arose in a variety of circumstances: when Plaintiffs and I were discussing the legality of different types of entities and cryptocurrency pump and dump schemes; a discussion of experiences with drugs; and discussion of experiences with law enforcement.

9.  I repeatedly made clear during the discussions that I had been to prison, and had no interest in going back, or doing anything that would lead to even remotely the possibility of my

PLAINTIFF0000713

running afoul of the law. It would be particularly embarrassing for me to be involved in a cryptocurrency fraud given my relationship with my colleagues at the SEC.

10. During these same discussions, Mr. Gordon revealed that he had run-ins with the law on account of repeated acts of reckless driving, and Mr. Fine revealed that he never paid taxes (a common issue in cryptocurrency transactions), and would steal others' license plates to evade parking tickets and citations for illegally parking the van he lived out of. I further learned from Plaintiffs that Mr. Breslow and Mr. Gordon had met at an ayahuasca ceremony, where Mr. Breslow had a psychedelic-induced epiphany that God was telling them to create what would become MovementDAO.

11. Messrs. Breslow, Fine, and Gordon planned to develop a decentralized autonomous organization (ultimately MovementDAO) to facilitate social and environmental movements, and set of tooling which created other DAOs, in effect, enabling smaller communities to form their own DAOs to promote social movements using MovementDAO's governance structure and technological architecture. The primary DAO (ultimately MovementDAO) would provide a set of decentralized finance activities for which it, or a related entity, would receive some fee or benefit (a "tribute"). However, Plaintiffs lacked the technical ability to develop and manage the contemplated DAO's creation, and needed my help for the task.

12. I repeatedly explained to Plaintiffs that I would leave the SEC to help create MovementDAO on a full-time basis, subject to three non-negotiable conditions: (1) that I would have veto power over decisions relating to the DAO's treasury in order to assuage my worry that the project would devolve into a cryptocurrency pump-and-dump scheme; (2) that MovementDAO's founders, including Plaintiffs, would commit to providing substantial funding to the DAO, and agree to lock their contributions for six years so that the project would be

3

PLAINTIFF0000714

sufficiently secure to attract developers and donors; and (3) the DAO would not engage in conduct tantamount to the unregistered offering of securities, a concern to which I was especially sensitive given my SEC work. Plaintiffs did agree to these terms, and I ultimately left the SEC to focus on building MovementDAO.

13. On December 6, 2021, following the parties' evolving discussions on MovementDAO's launch and governance, Mr. Breslow and I entered into a Confidential Independent Contractor Agreement (the "IC Agreement"), under which Mr. Breslow engaged me to work exclusively on MovementDAO, and to fully develop and launch the DAO on or before January 1, 2022. A true and correct copy of the IC Agreement is attached hereto as Exhibit 6. That agreement terminated on January 1, 2022.

14. On January 2, 2022, Mr. Fine, using his alias "Steve Faffle," sent the following email to Mr. Yurchak: "Hey Reed – wanted to give you the heads up that Mr. M [(Mr. Phillips)] is due to be paid the $1,000,000 contract bonus :) Mr. M crushed it [rocket emoji] Could you work with Mr. M. Directly on dispersing his funds?" A true and correct copy of that email is attached hereto as Exhibit 7. The email confirmed that I had spent many hours of coding towards MovementDAO, the major technical elements of MovementDAO were substantially completed.

15. On January 15, 2022, the parties created the Move Gnosis, which functioned as the virtual safe and bank account for MovementDAO's assets, consisting mainly of Ethereum and DAI cryptocurrency.

16. The Law Office of Reed Yurchak (the "Law Firm") provided the parties with the legal services necessary to build a large, sophisticated DAO, and contributed 100,000 DAI to MovementDAO.

PLAINTIFF0000715

17. I further advised Plaintiffs that the Law Firm engaged me as a cryptocurrency and security consultant. To that end, I created and maintained dao-lawfirm.eth (the Ethereum Name Service (ENS) the Law Firm used) on behalf of the Law Firm. The Law Firm did provide legal services regarding cryptocurrency, and was entitled significant fees for that work.

18. Because DAOs are relatively new entities, traditional banking services are not available to them. As such, the Law Firm allowed MovementDAO's founders to use the Law Firm's credit card, because MovementDAO could not obtain its own credit cards. To pay those charges, I would transfer cryptocurrency to Mr. Yurchak's Coinbase account, sell the cryptocurrency, and transfer the sales proceeds to the linked bank account controlled by Mr. Yurchak. I also paid for services rendered to MovementDAO by the Law Firm in this same manner.

19. Mr. Fine took charge of preparing the MovementDAO's GitBook, that is, an online documentation tool that set forth MovementDAO's policies, goals, and governance mechanisms. Mr. Fine had complete editorial control over the final contents of the GitBook.

20. The GitBook's public release on February 2, 2022, marked MovementDAO's official launch as it enabled individuals to join the MovementDAO community, contribute funds, and participate in its governance. The parties intended for the GitBook to be a public-facing document that would attract developers, contributors, and community members. Much like a set of corporate bylaws, the GitBook was intended to function as Movement's initial governing document. A true and correct copy of the version of the GitBook that I have access to is attached hereto as Exhibit 8.

21. On February 2, 2022, in addition to publishing the GitBook, Mr. Fine encouraged his Twitter followers contribute to MovementDAO.

PLAINTIFF0000716

22. Many people did contribute to MovementDAO. Nine contributors outside of Plaintiffs account for over $1.7 million in contributions, and there are many more smaller contributors.

23. Neither Plaintiffs, nor Defendants, at any point ever treated MovementDAO's February 2, 2022 launch as just a beta or soft launch, or anything other than a complete and full launch of MovementDAO.

24. MovementDAO enacted a series of Movement Improvement Proposals ("MIPs"), which led to MovementDAO being categorized as a Delaware unincorporated nonprofit association (MIP-0000). Mr. Yurchak obtained an EIN from the IRS for MovementDAO. MIP-0004 and MIP-0007 specifically identified the Law Firm as a Service Provider, and authorized MovementDAO to indemnify Mr. Phillips, Mr. Reed, and Mr. Gordon—Jon Gordon signed off on those MIPs. MovementDAO also adopted a set of Guiding Principles, Terms of Service, and Code of Conduct through MIP-0000—which were approved by Plaintiffs. Upon their adoption, MovementDAO's relationship with its members or contributors was governed by, *inter alia,* the GitBook, Guiding Principles, Terms of Service, and Code of Conduct (collectively, the "Governing Documents").

25. Attached hereto as Exhibit 9 is a true and correct copy of MIP-0000.

26. Attached hereto as Exhibit 10 is a true and correct copy of MIP-0004.

27. Attached hereto as Exhibit 11 is a true and correct copy of MIP-0007.

28. Attached hereto as Exhibit 12 is a true and correct copy of the Guiding Principles.

29. Attached hereto as Exhibit 13 is a true and correct copy of the Terms of Service.

30. Attached hereto as Exhibit 14 is a true and correct copy of the Code of Conduct.

PLAINTIFF0000717

31.     Attached hereto as Exhibit 15 is a true and correct copy of IRS Form SS-4, assigning an EIN to MovementDAO.

32.     On March 24, 2022, Mr. Fine announced that the PeaceDAO, a DAO formed by MovementDAO, and dedicated to funding projects relating to Ukrainian humanitarian aid, would be launching that day. Attached hereto as Exhibit 16 is a true and correct copy of a chat discussion of the announcement. Mr. Breslow, using the moniker "theryanking," responded: "This is going to be EPIC!." PeaceDAO did then launch, and collected contributions and funded Ukrainian humanitarian aid efforts. PeaceDAO's treasury automatically paid a fee (also referred to as a "tribute") to MovementDAO for services provided. For example, PeaceDAO made payments of ETH 1.7561 on April 17, 22, and ETH 2.2477 on June 23, 2022 to MovementDAO.

33.     On August 24, 2023, Mr. Phillips asked Mr. Fine if he "s[aw] the recent [MIPs] proposals," told Mr. Fine to read them, and explained that he was "proposing a path to be clearly legal while using the benefits of tokens." Attached hereto as Exhibit 17 is a true and correct copy of the chat exchange between Mr. Phillips and Mr. Fine.

34.     On August 27, 2022, shortly before going "off the grid for a week" for the Burning Man festival, Mr. Breslow wrote to Mr. Phillips: "Thanks for the epic weeks. Things haven't been easy but we're moving in the right direction. So much gratitude for everything you both do." Attached hereto as Exhibit 18 is a true and correct copy of the chat exchange between Mr. Breslow and Mr. Phillips.

35.     Mr. Gordon indicated his approval of MIPs 0000, 0001, 0002, 0004, 0005, 0006, 0007, and 0008 by voting for them.

36.     When Mr. Yurchak learned of the recent conflict between the parties, he caused the Law Firm to resign as counsel and a MovementDAO Service Provider. He then apparently

PLAINTIFF0000718

disclaimed fees he was due pursuant to the agreements referenced above when contacted by Plaintiffs about this Action. This was after MovementDAO approved payment for services owed to the Law Firm.

37. Since Mr. Yurchak resigned as counsel to MovementDAO, I retired the dao-lawfirm.eth ENS, and modified the dao-lawfirm.xyz website, to no longer associate the domain with Mr. Yurchak. However, I did previously operate the ENS and domain on behalf of the Law Firm.

38. Prior to the recent dispute, Plaintiffs have never 1) challenged my and Mr. Reed's management of MovementDAO's treasury; 2) challenged MovementDAO utilization of the Law Firm; or 3) expressed any sentiment that MovementDAO was not a legal, separately operating entity.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 16, 2023

*Mark Phillips*
Mark Phillips

PLAINTIFF0000719