UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:23-cv-20727-RKA

**RYAN BRESLOW**, *et al.*,

    Plaintiffs,

v.

**MARK PHILLIPS**, *et al.*,

    Defendants.

## DECLARATION OF MARK PHILLIPS

I, Mark Phillips, make the following declaration:

1. I am a Defendant in this Action, am over the age of 18, and am competent to testify in this matter. I have personal knowledge of the matters stated herein.

2. In July 2021, I had a meaningful role as a Lead Developer under contract with the Securities and Exchange Commission. Specifically, I was employed by InfoTrend Incorporated, a subcontractor to Its Agile, LLC, which was a prime contractor to the SEC under a solicitation regarding for the provision of "blockchain and digital asset data support[.]" Attached hereto as **Exhibit 1** is a true and correct copy of a 2021 InfoTrend Incorporated W-2 I received from my employer.

3. Given that the nature of the work I did for the SEC is confidential, I cannot disclose details, but I can provide an SEC Solicitation for contractor services I obtained via a Freedom of Information Act request. A true and correct copy of that Solicitation is attached hereto as **Exhibit 2**.

EXHIBIT 093                                                                 PLAINTIFF0000791

4. In order to obtain a contractor position with SEC, and obtain a requisite security clearance, I completed a Declaration for Federal Employment, an FBI fingerprint search, and an authorization for release of credit information. True and correct copies of those documents are attached hereto as **Exhibits 3, 4, and 5**.

5. I am often consulted on my expertise in Solidity, Bitcoin Script, and Typescript, coding languages used for blockchain transactions, and have been well-regarded in the blockchain space for my work. At one point, my skills were in such high apparent demand, that I was inundated with so many unsolicited employment offers through LinkedIn that I deactivated my account.

6. Ethereum was trading at $3,887.53 on September 3, 2021, and at $4,815.01 on November 9, 2021, the highest it has ever been, and there was incredible demand for cryptocurrency and blockchain engineers.

7. I ultimately left my contractor position at the SEC, for what ultimately became MovementDAO based on Plaintiffs representations of what MovementDAO would be.

8. I had disclosed to Plaintiffs, at least in meetings in August and September 2021, and in January, July, and August 2022, that I had a criminal background, including going to jail and prison, and the related circumstances. My earlier criminal action had been well publicized, and a simple Google search would have revealed the criminal allegations made against me. At a sushi dinner in September 2021, I disclosed that I had been on both sides of the law, civil and criminal; that I had been in federal prison and jail for contempt; and that I had been nervous about being rejected for security clearance given his prior run-ins with the law.

9. I repeatedly made clear during the discussions that I had been to prison, and had no interest in going back, or doing anything that was questionable, or would lead to even remotely

2

PLAINTIFF0000792

the possibility of my running afoul of the law. It would be particularly embarrassing for me to be involved in a cryptocurrency fraud given my relationship with my colleagues at the SEC.

10. These discussions arose in a variety of circumstances: when the parties were discussing the legality of different types of entities and cryptocurrency pump and dump schemes; a discussion of experiences with drugs; and discussion of experiences with law enforcement. During these same discussions, Mr. Gordon revealed that he had run-ins with the law on account of repeated acts of reckless driving, and Mr. Fine revealed that he never paid taxes (a common issue in cryptocurrency transactions), and would steal others' license plates to evade parking tickets and citations for illegally parking the van he lived out of. I further learned from Plaintiffs that Mr. Breslow and Mr. Gordon had met at an ayahuasca ceremony, where Mr. Breslow had a psychedelic-induced epiphany that God was telling them to create what would become MovementDAO.

11. Messrs. Breslow, Fine, and Gordon planned to develop a decentralized autonomous organization (ultimately MovementDAO) to facilitate social and environmental movements, and set of tooling which created other DAOs, in effect, enabling smaller communities to form their own DAOs to promote social movements using MovementDAO's governance structure and technological architecture. The primary DAO (ultimately MovementDAO) would provide a set of decentralized finance activities for which it, or a related entity, would receive some fee or benefit (a "tribute"). However, Plaintiffs lacked the technical ability to develop and manage the contemplated DAO's creation, and needed my help for the task.

12. I initially performed work pursuant to a Consulting Agreement with Merkaba, Inc. ("Merkaba"), a true and correct copy of which is attached hereto as **Exhibit 6**, under which I agreed to perform blockchain architecture and related services for Merkaba for $125 an hour.

3

PLAINTIFF0000793

13. Between August 2021 and November 2021, I helped lay the foundation for what would become MovementDAO, analyzing the structure of existing DAOs, reporting on legal entities and models, devising funding and governance models (including the issuance of nonfungible tokens ("NFTs") and users interfaces), and ensuring that the DAO would operate under a regime of trust and legitimacy.

14. Between August 2021 and MovementDAO's launch on February 2, 2022, Plaintiffs called the organization various names, including TedDAO, a reference to the comedy show *Curb Your Enthusiasm*, in which the actor Ted Danson made an anonymous donation, but made sure everyone knew he was the donor (similar to Plaintiffs' intentions here).

15. As a result of my efforts, Mr. Breslow asked me to assume a more prominent, full-time role in the venture, which would entail me leaving the SEC.

16. I repeatedly explained to Plaintiffs that I would leave the SEC to help create MovementDAO on a full-time basis, subject to three non-negotiable conditions: (1) that I would have veto power over decisions relating to the DAO's treasury in order to assuage my worry that the project would devolve into a cryptocurrency pump-and-dump scheme; (2) that MovementDAO's founders, including Plaintiffs, would commit to providing substantial funding to the DAO, and agree to lock their contributions for six years so that the project would be sufficiently secure to attract developers and donors; and (3) the DAO would not engage in conduct tantamount to the unregistered offering of securities, a concern to which I was especially sensitive given my SEC work. Plaintiffs did agree to these terms, and I ultimately left the SEC to focus on building MovementDAO.

17. On December 6, 2021, following evolving discussions on MovementDAO's launch and governance, Mr. Breslow and I entered into a Confidential Independent Contractor Agreement

4

PLAINTIFF0000794

(the "IC Agreement"), under which Mr. Breslow engaged me to work exclusively on MovementDAO, and to fully develop and launch the DAO on or before January 1, 2022. A true and correct copy of the IC Agreement is attached hereto as **Exhibit 7**. That agreement terminated on January 1, 2022. The IC Agreement was intended to be a stopgap measure. After January 1, 2022, we were to come to a new agreement, or I would be directly compensated by MovementDAO after its launch.

18. After signing the IC Agreement and until the present, I devoted tremendous time and energy to building MovementDAO. I worked out of an Airbnb Mr. Breslow rented for me **outside of Seattle before setting me up in a house nearby Mr. Breslow's Miami home**, and initially **worked out of Mr. Breslow's home. At Mr. Breslow's direction, I would work in shifts of seventy-**two hours, taking every fourth day off. Mr. Breslow, meanwhile, gave an interview on how his company Bolt was the first company to have a four-day work week. I was working under such pressure that Mr. Breslow expressed dissatisfaction when I took time off after the death of my younger sister to locate her teenage son. I even put off my own wedding, after Mr. Breslow agreed to cover the costs incurred regarding the original date. It was during this period that I recruited Mr. Reed, who then began working on MovementDAO.

19. On January 2, 2022, Mr. Fine, using his alias "Steve Faffle," sent the following **email to Mr. Yurchak: "Hey Reed** – wanted to give you the heads up that Mr. M [(Mr. Phillips)] is due to be paid the $1,000,000 contract bonus :) Mr. M crushed it [rocket emoji] Could you work **with Mr. M. Directly on dispersing his funds?" A true and correct copy of that email is attached** hereto as **Exhibit 8**. The email confirmed that I had spent many hours of coding towards MovementDAO, the major technical elements of MovementDAO were substantially completed.

5

DocuSign Envelope ID: 74584D83-D22C-4567-B698-E42F7ED4A8CC

20. Mr. Breslow and I did not enter into a new contractor agreement, or renew the IC Agreement, on January 1, 2022. Instead, we came to an understand that my salary would be paid by MovementDAO, in the amount of $88,000 per month. As a well sought after blockchain and cryptocurrency engineer, I could have received a comparable compensation package in the open market.

21. The Law Office of Reed Yurchak (the "Law Firm") provided the parties with the legal services necessary to build a large, sophisticated DAO, and contributed 100,000 DAI to MovementDAO.

22. I further advised Plaintiffs that the Law Firm engaged me as a cryptocurrency and security consultant. To that end, I created and maintained dao-lawfirm.eth (the Ethereum Name Service (ENS) the Law Firm used) on behalf of the Law Firm. The Law Firm did provide legal services regarding cryptocurrency, and was entitled significant fees for that work. Indeed, I worked out of the Law Firm's offices when contracting with the SEC.

23. Because DAOs are relatively new entities, traditional banking services are not available to them. As such, the Law Firm allowed MovementDAO's founders to use the Law Firm's credit card, because MovementDAO could not obtain its own credit cards. To pay those charges, I would transfer cryptocurrency to Mr. Yurchak's Coinbase account, sell the cryptocurrency, and transfer the sales proceeds to the linked bank account controlled by Mr. Yurchak. I also paid for services rendered to MovementDAO by the Law Firm in this same manner.

24. On January 15, 2022, the parties created the Move Gnosis, which functioned as the virtual safe and bank account for MovementDAO's assets, consisting mainly of Ethereum and DAI cryptocurrency. While Plaintiffs chose to give me copies of their "keys" to the Gnosis, I provided Messrs. Fine and Gordon with physical copies of their own keys. Plaintiffs never formally

PLAINTIFF0000796

entrusted their keys to me in any written document. I attempted to provide Mr. Breslow with a copy of his key and suggested that Mr. Gordon, as Mr. Breslow's trustee be given a copy, but Mr. Breslow refused, stating that Movement was his "gift to the world" and that he would never need or exercise his tokens.

25. I recruited Mr. Reed to be in charge of MovementDAO's governance, which he did as soon as he joined.

26. Mr. Fine took charge of preparing the MovementDAO's GitBook, that is, an online documentation tool that set forth MovementDAO's policies, goals, and governance mechanisms. Mr. Fine had complete editorial control over the final contents of the GitBook, making clear that my role was limited to providing suggestions.

27. The GitBook's public release on February 2, 2022, marked MovementDAO's official launch as it enabled individuals to join the MovementDAO community, contribute funds, and participate in its governance. The parties intended for the GitBook to be a public-facing document that would attract developers, contributors, and community members. Much like a set of corporate bylaws, the GitBook was intended to function as Movement's initial governing document. A true and correct copy of the version of the GitBook that I have access to is attached hereto as **Exhibit 9**.

28. On February 2, 2022, in addition to publishing the GitBook, Mr. Fine encouraged his Twitter followers contribute to MovementDAO. He also instructed me to announce the launch via an email blast to an 110,000+ people mailing list curated by Mr. Breslow.

29. Many people did contribute to MovementDAO. Nine contributors outside of Plaintiffs account for over $1.7 million in contributions, and there are many more smaller contributors.

7

PLAINTIFF0000797

DocuSign Envelope ID: 74584D83-D22C-4567-B698-E42F7ED4A8CC

30. Neither Plaintiffs, nor Defendants, at any point ever treated MovementDAO's February 2, 2022, launch as just a beta or soft launch, or anything other than a complete and full launch of MovementDAO.

31. Between February and August of 2022, MovementDAO's governance took place mainly on Discord. During this period, I shepherded the roll-out of online documentation and tooling relating to its treasury and issuance of NFTs so that DAOs that formed under Movement's umbrella had the resources to be legally compliant. Until approximately March 2022 (when his attention turned to other projects), Mr. Fine acted as if he was MovementDAO's de facto leader, using the alias "Steve Faffle," while also posting under the alias "mr_fine," where he pretended that he was "not a moderator or a creator." Attached hereto as **Exhibit 17** is a true and correct copy of posts Mr. Fine made on Discord under the name "mr_fine."

32. On June 13, 2022, I posted on MovementDAO's Discord that a Snapshot proposal regarding the purchasing of ETH (a widely traded cryptocurrency) would be voted on via Snapshot in accordance with the Gitbook. Attached hereto as **Exhibit 18** is a true and correct copy of various messages on the Discord. Despite the volatility of the cryptocurrency market, my farsighted decision to invest the majority of Movement's treasury in DAI (a "stablecoin" that tracked the dollar) rather than the more volatile Ethereum prevented MovementDAO from losing millions of dollars. The treasury's present value is approximately $13,000,000—if MovementDAO had invested solely in ETH, it would be worth approximately $4.1 million. Despite my around-the-clock efforts to build MovementDAO's technical architecture, I repeatedly told Plaintiffs that I did not want to be in charge of MovementDAO's governance, and that I wanted to be a programmer running the engineering side of MovementDAO.

PLAINTIFF0000798

33. On March 24, 2022, Mr. Fine announced that the PeaceDAO, a DAO formed by MovementDAO, and dedicated to funding projects relating to Ukrainian humanitarian aid, would be launching that day. Donations received were sent to the Law Firm to be converted to cryptocurrency. Attached hereto as **Exhibit 19** is a true and correct copy of a chat discussion of the announcement. Mr. Breslow, using the moniker "theryanking," responded: "This is going to be EPIC!." PeaceDAO did then launch, and collected contributions and funded Ukrainian humanitarian aid efforts. PeaceDAO's treasury automatically paid a fee (also referred to as a "tribute") to MovementDAO for services provided. For example, PeaceDAO made payments of ETH 1.7561 on April 17, 22, and ETH 2.2477 on June 23, 2022 to MovementDAO.

34. MovementDAO enacted a series of Movement Improvement Proposals ("MIPs"), which led to MovementDAO being categorized as a Delaware unincorporated nonprofit association (MIP-0000). Mr. Yurchak obtained an EIN from the IRS for MovementDAO. MIP-0004 and MIP-0007 specifically identified the Law Firm as a Service Provider, and authorized MovementDAO to indemnify myself, Mr. Reed, and Mr. Gordon—Jon Gordon agreed to this MIP by voting for the proposal on Snapshot. MovementDAO also adopted a set of Guiding Principles, Terms of Service, and Code of Conduct through MIP-0000—which were approved by Plaintiffs. Upon their adoption, MovementDAO's relationship with its members or contributors was governed by, *inter alia,* the GitBook, Guiding Principles, Terms of Service, and Code of Conduct (collectively, the "Governing Documents").

35. Attached hereto as **Exhibit 10** is a true and correct copy of MIP-0000. The recorded votes on Snapshot show that Mr. Gordon voted for the proposal using the Ethereum address 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650, as depicted in the screenshot that follows.

PLAINTIFF0000799



36. The recorded votes on Snapshot for MIP-0001 show that Mr. Gordon voted for the proposal using the ENS jimmyethworld.eth, as depicted in the screenshot that follows.



[*continued on following page.*]

10

PLAINTIFF0000800

37. The recorded votes on Snapshot for MIP-0002 show that Mr. Gordon voted for the proposal using the Ethereum address 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650, as depicted in the screenshot that follows.



38. The recorded votes on Snapshot for MIP-0003 show that Mr. Gordon did not vote for or against the proposal as his ENS/Ethereum address is not in the screenshot that follows.



///

///

///

11

PLAINTIFF0000801

39. Attached hereto as **Exhibit 11** is a true and correct copy of MIP-0004. The recorded votes on Snapshot show that Mr. Gordon voted for the proposal using the Ethereum address 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650, as depicted in the screenshot that follows.



40. The recorded votes on Snapshot for MIP-0005 show that Mr. Gordon voted for the proposal using the Ethereum address 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650, as depicted in the screenshot that follows.



12

PLAINTIFF0000802

41. The recorded votes on Snapshot for MIP-0006 show that Mr. Gordon voted for the proposal using the Ethereum address 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650, as depicted in the screenshot that follows.



42. Attached hereto as **Exhibit 12** is a true and correct copy of MIP-0007. The recorded votes on Snapshot show that Mr. Gordon voted for the proposal using the Ethereum address 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650, as depicted in the screenshot that follows.



13

PLAINTIFF0000803

43. The recorded votes on Snapshot for MIP-0008 show that Mr. Gordon voted for the proposal using the Ethereum address 0x58Ba373d9eE46ED5402a6A15fE9CcADc67dE1650, as depicted in the screenshot that follows.



44. In August 2022, MovementDAO also adopted a set of Guiding Principles, Terms of Service, and Code of Conduct through MIPs—which were approved by Plaintiffs.

45. Attached hereto as **Exhibit 13** is a true and correct copy of the Guiding Principles.

46. Attached hereto as **Exhibit 14** is a true and correct copy of the Terms of Service.

47. Attached hereto as **Exhibit 15** is a true and correct copy of the Code of Conduct.

48. Mr. Yurchak obtained an EIN from the IRS for MovementDAO. Attached hereto as **Exhibit 16** is a true and correct copy of IRS Form SS-4, assigning an EIN to MovementDAO.

49. On August 24, 2022, **I asked Mr. Fine if he** "s[aw] the recent [MIPs] proposals," **told Mr. Fine to read them, and explained that he was** "proposing a path to be clearly legal while using the benefits of tokens." **Attached hereto as Exhibit 20** is a true and correct copy of the chat exchange between Mr. Phillips and Mr. Fine.

50. When a later proposal, MIP-0011, indicated that Mr. Gordon had approved it, I understood that that approval was **based on Mr. Gordon's approval of** MIP-0004, which contained consistent provisions regarding the appointment and indemnification of the Service Provider.

14

PLAINTIFF0000804

51. On August 27, 2022, shortly before going "off the grid for a week" for the Burning Man festival, Mr. Breslow wrote to me: "Thanks for the epic weeks. Things haven't been easy but we're moving in the right direction. So much gratitude for everything you both do." Attached hereto as **Exhibit 21** is a true and correct copy of the chat exchange between Mr. Breslow and I.

52. On August 30, 2022, the first sign of Plaintiffs' intention to "rug" the community emerged. (A "rug" or "rug pull" is a common exit scam in the crypto space where a development team suddenly abandons a project and absconds with investors' funds.) Mr. Breslow, began for the first time, seeking constant updates on the treasury balance in the Gnosis and the development expense budget.

53. I prepared a budget for MovementDAO on September 11, 2022, which contains an instructive snapshot of the organization at that time. A true and correct copy of the budget, converted from Excel into PDF, is attached hereto as **Exhibit 22**. Recognizing that MovementDAO was spending far too much on non-development functions that were not benefitting Movement, I proposed cutting $57,500 of Movement's $360,500 monthly budget, which included cuts to various business development expenses such as community and marketing. I transmitted this budget and related documents to Messrs. Breslow and Gordon in an email dated September 11, 2021, in which he provided written answers to questions Mr. Breslow had asked him. A true and correct copy of the email is attached hereto as **Exhibit 23**.

54. In September 2022, following a decline in the cryptocurrency markets, I learned from Mr. Breslow that Mr. Fine wanted 20% of Mr. Breslow's contributions and a $1 million redemption.

55. On September 15, 2022, Mr. Fine communicated to Messrs. Breslow and Gordon and me that he wanted to redeem his entire contribution.

PLAINTIFF0000805

56. A redemption by a founding contributor would violate the fundamental terms governing MovementDAO as set forth in the GitBook, as well as assurances Plaintiffs made to me, so I responded to this news by writing a memorandum to Breslow, which was dated October 2, 2022, a true and correct copy of which is attached hereto as **Exhibit 24**, in addition to advising **Mr. Reed, as MovementDAO's Authorized Member, of my concerns the day prior.**

57. When Mr. Fine continued pressing Mr. Breslow for a premature redemption, I wrote and transmitted to Mr. Breslow a second memorandum, a true and correct copy of which is attached hereto as **Exhibit 25**.

58. Despite my memoranda, Mr. Fine and then Mr. Breslow himself continued to press me regarding a redemption of their contributions to MovementDAO. I believe that the decline in the cryptocurrency markets and the value of Bolt in the recent technology equity sell-offs had caused significant liquidity problems for both Messrs. Fine and Breslow, and that Mr. Breslow even had to sell his house in Miami for liquidity. I believe **Mr. Breslow's liquidity crisis was also** induced by a lavish trip to Europe Mr. Breslow took with an entourage, in which Mr. Breslow accrued $8 million in expenses, for which Mr. Gordon informed me that Mr. Breslow was seeking reimbursement from his Bolt, the online payments company he founded.

59. In conversations between October and December of 2022, I continued to insist that Messrs. Breslow and Fine could not redeem their contributions to MovementDAO as the GitBook prohibited the same, and the developers and contributors relied on the representations in the GitBook.

60. On December 27, 2022, I wrote a memorandum to Mr. Breslow describing their discussions regarding the issue of early redemptions, a true and correct copy of which is attached hereto as **Exhibit 26**.

16

61. On December 28, 2022, Mr. Reed and I communicated our fears with the community in a discussion on the Discord, a true and correct copy of which is attached hereto as **Exhibit 27**.

62. Mr. Breslow, presumably unhappy with my unwillingness to allow him to violate MovementDAO's governing documents, wrote the following in an email to me (with Messrs. Fine and Gordon copied) on December 30, 2023: "Effective immediately, Alex Jon and I vote to stop all spend out of the Move treasury. We are happy to approve payment of your and Jon Gordon's salaries through January 31st. We will also consider any bare minimum necessary legal spend for the month of January." A true and correct copy of the email is attached hereto as **Exhibit 28**.

63. When Mr. Yurchak learned of the recent conflict between the parties, he caused the Law Firm to resign as counsel and a MovementDAO Service Provider. He then apparently disclaimed fees he was due pursuant to the agreements referenced above when contacted by Plaintiffs about this Action. This was after MovementDAO approved payment for services owed to the Law Firm.

64. Since Mr. Yurchak resigned as counsel to MovementDAO, I retired the dao-lawfirm.eth ENS, and modified the dao-lawfirm.xyz website, to no longer associate the domain with Mr. Yurchak. However, I did previously operate the ENS and domain on behalf of the Law Firm.

65. Prior to the recent dispute, Plaintiffs have never 1) challenged my and **Mr. Reed's management of MovementDAO's treasury; 2) challenged MovementDAO utilization of the Law** Firm; or 3) expressed any sentiment that MovementDAO was not a legal, separately operating entity.

PLAINTIFF0000807

66. I believed MovementDAO needed the advice of counsel to navigate the competing pressures on me. As Mr. Yurchak resigned, I sought approval from the community to hire new counsel, as well as to transfer 50,000 DAI to MovementDAO's **development wallet for the payment of MovementDAO's expenses.**

67. On February 2, 2023, 1,058,000 DAI was transferred from the Movement Gnosis to me for deferred developer payouts under MIP-0018, reimbursement of outstanding operational expenses under MIP-0017, an indemnification advance under MIP-0017 and a four-month salary advance for me, Evita Stenqvist/cookieslayer.eth, and Mikhail Radin/disintermediated.eth under MIP-0020. *Id.* I converted these funds to fiat money and used $528,000 for developer payroll, i.e., a four-month advance to developers along with payment of December 2022 and January 2023 salaries; $500,000 as an advance for indemnification for myself; and $30,000 toward deferred developer payments. **MovementDAO and DAOLabs LLC's developers were understandably hesitant to continue working for MovementDAO when they hadn't been paid** for a couple months, and Mr. Breslow was threating MovementDAO. A prepayment for services was necessary to keep these developers engaged.

68. I understand that Mr. Breslow **utilized Mr. Gordon as a fiduciary for Mr. Breslow's** family office investments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2023

DocuSigned by:
*Mark Phillips*
18C8B6E5A594474...
Mark Phillips

18

PLAINTIFF0000808