

of the Form. Is transferred under this Agreement.

VIII.3 **Admission of Transferee as a Member.** A Transfer permitted by this Article VIII will only transfer the rights of an assignee as set forth in Section 8.6 unless (a) the transferee is a Member or is admitted as a Member with the consent of the Administrative Member and otherwise complies with Section 4.1$^{2}$ and (b) payment to the Company of a transfer fee in cash which is sufficient, in the Administrative Member's sole determination, to cover all reasonable expenses incurred by the Company in connection with the Transfer and admission of the transferee as a Member.

VIII.4 **Additional Restrictions.** Notwithstanding any other provision of this Agreement, no Transfer of an Interest (including any Transfer of an interest in Company profits, losses or distributions) shall be permitted unless the Administrative Member otherwise consents, in its sole discretion, if such Transfer would cause the Company (a) to have more than 100 partners, as determined for purposes Section 7704 of the Code; (b) to be treated as a publicly traded partnership within the meaning of Section 7704 of the Code; (c) to be required to be registered as an "investment company" under the Investment Company Act of 1940 (the "*40 Act*"); (d) to hold any "plan assets" under the Employee Retirement Income Security Act of 1974 ("*ERISA*"), or (e) in the Administrative Member's sole determination, to be subject to any burdensome regulatory or reporting requirements, any adverse tax or fiscal consequences or otherwise in breach of any applicable law or agreement to which the Company is a party.

VIII.5 **Involuntary Transfer of Interests.** In the event of any involuntary transfer of Interests to a Person, that Person will have only the rights of an assignee set forth in Section 8.6 with respect to those Interests.

VIII.6 **Rights of Assignee.** An assignee has no right to vote, receive information concerning the business and affairs of the Company and is entitled only to receive Distributions and allocations attributable to the Interest held by

PLAINTIFF0002137

the assignee as determined by the Member and in accordance with this Agreement.



VIII.7 **Enforcement.** The restrictions on Transfers contained in this Agreement are an essential element in the ownership of an Interest. Upon application to any court of competent jurisdiction, the Administrative Member will be entitled to a decree against any Person violating or about to violate those restrictions, requiring their specific performance, including those prohibiting a Transfer of all or a portion of its Interests.

VIII.8 **Death or Disability of a Member.** Upon the Disability or death of a Member, the provisions of Section 18-705 of the Act shall apply.

VIII.9 **Compulsory Redemption.** A Majority in Interest may, with a by notice to any Member, force the sale of all or a portion of that Member's Interest on terms as the Administrative Member determines to be fair and reasonable, or take other action as it determines to be fair and reasonable in the event that the Administrative Member determines or has reason to believe that: (a) that Member has attempted to effect a Transfer of, or a Transfer has occurred with respect to, any portion of that Member's Interest in violation of this Agreement; (b) continued ownership of that Interest by that Member is reasonably likely to cause any of the events set forth in Section 8.4; (c) continued ownership of that Interest by that Member may be harmful to the business or reputation of the Company or the Administrative Member; (d) any of the representations or warranties made by that Member under this Agreement or its Subscription Agreement was not true when made or has ceased to be true; (e) any portion of that Member's Interest has vested in any other Person by reason of the bankruptcy, dissolution, incompetency or death of that Member; (f) such Member has failed to fund any Additional Capital Contribution; or (g) it would not be in the best interests of the Company, as determined by the Administrative Member in its sole discretion, for that Member to continue ownership of its Interest.

PLAINTIFF0002138

# ARTICLE IX. RECORDS, REPORTS AND TAXES.



IX.1 **Books and Records.** The Administrative Member will maintain all of the information required to be maintained by the Act at the Company's principal office, with copies available at all times during normal business hours for inspection and copying upon reasonable notice by any Member or its authorized representatives for any purpose reasonably related to that Member's status as a member of the Company, including as applicable:

(a) true and full information regarding the status of the business and financial condition of the Company;

(b) promptly after becoming available, a copy of the Company's federal, state and local income tax returns, if any, for each Fiscal Year;

(c) the Interest Register;

(d) a copy of this Agreement and all amendments, including any Exception Handling Addendum, together with executed copies of (i) any powers of attorney and (ii) any other document pursuant to which this Agreement or any amendments have been executed or have been deemed to be executed; and

(e) true and full information regarding the amount of Capital Contributions by that Member and the date on which that Member became a Member.

IX.2 **Reports.**

(a) *Governmental Reports*. The Administrative Member will cause to be prepared and filed, at the Company's expense, all documents and reports required to be filed with any governmental agency in accordance with the Act.

(b) *Tax Reports*. The Administrative Member will cause to be prepared and

PLAINTIFF0002139



duly and timely filed, at the Company's expense, all tax returns required to be filed by the Company. The

Administrative Member will send or cause to be sent to each Member within 90 days after the end of each Fiscal Year, or a later date as determined in the discretion of the Administrative Member, an Internal Revenue Service Schedule K-1 with respect to the Member's interest in the Company (or substantially similar information if an Internal Revenue Service Schedule K-1 is not required to be provided to Members).

IX.3 **Tax Elections.** Except as otherwise expressly provided in this Agreement, the Company will make any tax elections as the Administrative Member may determine. The Administrative Member may, in its sole discretion, make an election under Section 754 of the Code.

IX.4 **Partnership Representative.** The Administrative Member will be the "partnership representative" within the meaning of Code Section 6223 (the "*Partnership Representative*"). The Partnership Representative will have all of the powers and authority of a "partnership representative" under the Code. The Partnership Representative will represent the Company (at its expense) in connection with all administrative and judicial proceedings by the Internal Revenue Service or any taxing authority involving any tax return of the Company, and may expend the Company's funds for professional services and associated costs. The Partnership Representative will provide to the Members notice of any communication to or from or agreements with a federal, state or local authority regarding any return of the Company, including a summary of the provisions.

IX.5 **Confidentiality.** All information concerning the business, affairs and properties of the Company and all of the terms and provisions of this Agreement will be held in confidence by each Member and their respective Affiliates, subject to any obligation to comply with (a) any applicable law, (b) any rule or regulation of any

PLAINTIFF0002140

applicable law, (b) any rule or regulation or any legal authority or securities exchange, (c) any subpoena or other legal process to make

information available to the Persons entitled thereto or (d) the enforcement of that Party's rights under this Agreement in any legal process, arbitration, as a Member, or employee, as applicable. Confidentiality will be maintained until that time, if any, as the confidential information either is, or becomes, published or a matter of public knowledge (other than as a result of a breach of this Section 9.5); provided that each Party recognizes that the privilege each has to maintain, in its sole discretion, the confidentiality of a communication relating to the transactions, including a confidential communication with its attorney or a confidential communication with a federally authorized tax practitioner under Section 7525 of the Code, is not intended to be affected by the foregoing provisions of this sentence. Notwithstanding this Section 9.5, the Administrative Member may use confidential information about the Company and the Members in data aggregation, so long as the data use does not include the disclosure of information that could reasonably be used to identify any Member.

# ARTICLE X. DISSOLUTION AND LIQUIDATION.

X.1 **Dissolution**.

> (a) The Company. The Company will be dissolved and its affairs wound up solely upon the first to occur of any of the following:

>> (1) the disposition (which may include by Distribution to the Members) of the final Investment of the Company;

>> (2) the determination by a Majority in Interest to dissolve the Company; or

>> (3) the entry of a judicial decree of dissolution of the

PLAINTIFF0002141

decree of dissolution of the Company pursuant to the Act.

X.2 **Date of Dissolution.** Dissolution of the Company will be effective on the day on which the event occurs giving rise to the dissolution, but the Company will not terminate or cease to exist until the assets of the Company have been liquidated and distributed as provided in this Agreement and a Certificate of Cancellation for the Company has been filed in accordance with Section 10.8. Notwithstanding the dissolution of the Company, prior to the termination of the Company, the business of the Company and the rights and obligations of the Members will continue to be governed by this Agreement.

X.3 **Winding Up.** Upon the occurrence of any event specified in Section 10.1, the Company will continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, satisfying the claims of its creditors, and distributing any remaining assets in cash or in kind, to the Members in accordance with this Agreement. The Liquidating Trustee will be responsible for overseeing the winding up and liquidation of the Company and will cause the Company to sell or otherwise liquidate all of the Company's assets except to the extent the Liquidating Trustee determines to distribute any assets to the Members in kind, discharge or make provision for all liabilities of the Company and all costs relating to the dissolution, winding up, and liquidation and distribution of assets, establish reserves as may be necessary to provide for contingent liabilities of the Company (for purposes of determining the Capital Accounts of the Members, the amounts of those reserves will be deemed to be an expense of the Company and will be deemed income to the extent it ceases to be reserved), and distribute the remaining assets to the Members, in the manner specified in Section 10.4. The Liquidating Trustee will be allowed a reasonable time for the orderly liquidation of the Company's assets and discharge of its liabilities, so as to preserve and upon disposition maximize, to the extent possible, the value of the Company's assets.



PLAINTIFF0002142

X.4 **Liquidation.** The Company's assets, or the proceeds from the liquidation of the Company's

assets, will be paid or distributed in the following order:

    (a) first, to creditors to the extent otherwise permitted by applicable law in satisfaction of all liabilities and obligations of the Company, including expenses of the liquidation (whether by payment or the making of reasonable provision for payment), other than liabilities for which reasonable provision for payment has been made and liabilities, if any, for Distributions to Members;

    (b) next, to the establishment of those reserves for contingent liabilities of the Company as are deemed necessary by the Liquidating Trustee (other than liabilities for which reasonable provision for payment has been made and liabilities, if any, for Distribution to Members and former Members under the Act);

    (c) next, to Members and former Members in satisfaction of any liabilities for Distributions under the Act, if any;

    (d) next, to the Members, on a *pro rata* in accordance with their Interests.

X.5 **Distributions in Kind.** Any non-cash asset distributed to one or more Members will first be valued by the Administrative Member at its Fair Market Value to determine the Net Income, Loss and special allocations that would have resulted if that asset had been sold for that value, which amounts will be allocated pursuant to Article VI, and the Members' Capital Accounts will be adjusted to reflect those allocations. The amount distributed and charged to the Capital Account of each Member receiving an interest in the distributed asset will be the Net Fair Market Value of that interest.

X.6 **No Liability.** Notwithstanding anything in

PLAINTIFF0002143



this Agreement to the contrary, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a negative Capital Account balance (after giving effect to all contributions, Distributions, allocations and other Capital Account adjustments for all Fiscal Years, including the Year in which that liquidation occurs), neither that Member nor the Liquidating Trustee will have any obligation to make any contribution to the capital of the Company, and the negative balance of that Member's Capital Account will not be considered a debt owed by that Member or any Liquidating Trustee to the Company or to any other Person for any purpose; provided, however, that nothing in this Section 10.6 will relieve any Member from any liability under any promissory note or other affirmative commitment that Member has made to contribute capital to the Company.

X.7 **Limitations on Payments Made in Dissolution.** Except as otherwise specifically provided in this Agreement, each Member will be entitled to look only to the assets of the Company for Distributions (including Distributions in liquidation) and the Parties will have no personal liability for any Distributions.

X.8 **Certificate of Cancellation.** Upon completion of the winding up of the Company's affairs, the Liquidating Trustee will cause to be filed a Certificate of Cancellation, in accordance with the Act, of the Certificate of Formation.

# ARTICLE XI. LIMITATION OF LIABILITY; STANDARD OF CARE; INDEMNIFICATION.

XI.1 **Limitation of Liability.** Unless explicitly agreed upon, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, will be solely the debts, obligations and liabilities of the Company, and will not be those of the Members, or the Covered Persons.

PLAINTIFF0002144



XI.2 **Standard of Care; Liability.** Neither the Members nor the Covered Persons will have any personal liability whatsoever to the Company, any Member, or their Affiliates on account of that Person's role within the Company or by reason of that Person's acts or omissions in connection with the conduct of the business of the Company so long as that Person acts in good faith for a purpose which the Person reasonably believes to be in, or not opposed to, the best interests of the Company. Notwithstanding the preceding, nothing contained in this Agreement will protect that Person against any liability to which that Person would otherwise be subject by reason of (a) any act or omission of that Person that involves gross negligence, willful misconduct, bad faith, fraud, or willful and material breach of a material provision of this Agreement or any Subscription Agreement or any management agreement or other agreement with or for the benefit of the Company; (b) any transaction from which that Person or its Affiliate derives any improper personal benefit; or (c) a breach of any representation or warranty by such Member made in this Agreement or its Subscription Agreement.

XI.3 **Indemnification.** To the fullest extent permitted by applicable law, the Members and the Covered Persons will be entitled, out of the Company assets, to be indemnified against and held harmless from any and all liabilities, judgments, obligations, losses, damages, claims, actions, suits or other proceedings (whether civil or criminal, pending or threatened, before any court or administrative or legislative body, and as the same are accrued, in which a Member or Covered Person may be or may have been involved as a party or otherwise or with which he, she or it may be or may have been threatened (a "*Proceeding*")) and reasonable costs, expenses and disbursements (including legal and accounting fees and expenses) of any kind and nature whatsoever (collectively, "*Covered Losses*") that may be imposed on, incurred by, or asserted at any time against a Member or Covered Person (whether or not indemnified against by other parties) in any way related to or arising out of this Agreement, the administration of the Company, or the action or inaction of a Member or

PLAINTIFF0002145



Covered Person (including actions or inactions pursuant to Article X on the Company's dissolution or termination) or under contracts with the Company, except that the Members and Covered Persons will not be entitled to indemnity for Covered Losses with respect to any matter as to which such Member or Covered Person has been finally adjudicated in any action, suit, or other proceeding, or otherwise by a court of competent jurisdiction, to have committed an act or omission involving his, her or its own gross negligence, willful misconduct, bad faith, fraud, willful and material breach of a material provision of this Agreement or any Subscription Agreement or any management agreement or other agreement with or for the benefit of the Company, or from which such Person derived an improper personal benefit. The indemnities contained in this Article XI will survive the termination of this Agreement.

XI.4 **Contract Right; Expenses.** The right to indemnification conferred in this Article XI will be a contract right. A Member's or a Covered Person's right to indemnification under this Agreement includes the right to require the Company to advance the expenses incurred by that Member or Covered Person in defending any Proceeding in advance of its final disposition subject to an obligation to return the amount so advanced if it is ultimately determined that the Member or Covered Person has not met the standard of conduct required for indemnification.

XI.5 **Nonexclusive Right.** The right to indemnification and the payment of expenses incurred in defending a Proceeding in advance of its final disposition conferred in this Article XI will not be exclusive of any other right which any Person may have or later acquire under any statute or agreement, or under any insurance policy obtained for the benefit of any Administrative Member, Partnership Representative or officer of the Company (it being understood that if any such insurance policy is obtained, it shall be at the expense of the Company).

XI.6 **Severability.** If any provision of this Article XI is determined to be unenforceable in whole or in part, that provision will nonetheless

PLAINTIFF0002146

whole or in part, that provision will nonetheless be enforced to the fullest extent permissible, it being the intent of this Article XI to provide

indemnification to all Persons eligible under this Agreement to the fullest extent permitted by applicable law.

XI.7 **Insurance.** The Administrative Member may cause the Company to purchase and maintain insurance on behalf of any Covered Person who is or was an agent of the Company against any liability asserted against that Covered Person capacity as an agent.

# ARTICLE XII. REPRESENTATIONS, WARRANTIES AND COVENANTS.

XII.1 **Representations and Warranties of the Members.** Each Member is fully aware that the Company and the Administrative Member are relying upon the truth and accuracy of the following representations by each of the Members. Each of the Members hereby represents, warrants and covenants to the Administrative Member and the Company that:

(a) (i) In the case of any entity, it has been duly formed and is validly existing and in good standing under the laws of its jurisdiction of organization with full power and authority to enter into and to perform this Agreement in accordance with its terms or (ii) in the case of an individual, he or she has the full legal capacity to enter into and to perform this Agreement in accordance with its terms;

(b) This Agreement is a legal, valid and binding obligation of that Member, enforceable against that Member in accordance with its terms, subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar laws affecting creditors' rights, and subject, as to enforceability, to the effect of general principles of equity;

PLAINTIFF0002147

general principles of equity;

(c) Its Interest is being acquired for its own account, for investment and not with a view to the distribution or resale, subject, however, to any requirement of law that the disposition of its property will at all times be within its control;

(d) It is not a participant-directed defined contribution plan;

(e) It is not an *"investment company"* registered under the 40 Act;

(f) It is not a *"benefit plan investor"* under Section 3(42) of ERISA and its ownership of an Interest does not cause the Company to hold "*plan assets*" under ERISA;

(g) It will conduct its business and affairs (including its investment activities) in a manner that it will be able to honor its obligations under this Agreement;

(h) It understands and acknowledges that the investments contemplated by the Company involve a high degree of risk. The Member has substantial experience in evaluating and investing in Portfolio Company Securities and is capable of evaluating the merits and risks of its investments, including an investment in its Interest, and has the capacity to protect its own interests. The Member, by reason of its business or financial experience, has the capacity to protect its own interests in connection with Investments. The Member has sufficient resources to bear the economic risk of its investment in its Interest and the underlying Investments, including any diminution in value, and will solely bear such economic risk.;

PLAINTIFF0002148



(i) It has undertaken its own independent investigation, and formed its own independent business judgment,

based on its own conclusions, as to the merits of investing in the Company and any Investments to be acquired by the Company. The Member is not relying and has not relied on the Administrative Member or any of their Affiliates for any evaluation or other investment advice in respect of any Investments or the advisability of investing in the Company and has had all questions answered and requests fulfilled that the Member has deemed to be material to the Member's decision to invest in the Company.

(j) It has had the opportunity to consult with legal counsel of its choice and has read and understands this Agreement.

(k) It has received and carefully reviewed all code for the Designated Smart Contract sufficiently in advance of signing this Agreement. It is a Person who is, or in connection with this Agreement and the matters contemplated thereby has received the advice of Persons who are, knowledgeable, sophisticated and experienced in making, and qualified to make, evaluations and decisions with respect to the quality, security and intended and expected functionality of the Designated Smart Contract and the other matters contemplated by this Agreement.

XII.2 **Derivative Transactions.** No Member may, without providing the Administrative Member with a written opinion of counsel satisfactory to the Administrative Member regarding the compliance of the proposed transfer with all applicable securities laws, and the prior written consent of the Administrative Member (which may be granted, withheld, conditioned or delayed in its sole discretion), directly or indirectly, (a) offer,

PLAINTIFF0002149



pledge, sell, contract to sell, sell any option
or contract to purchase, purchase any option or
contract to sell, grant any option, right or

warrant to purchase, lend, or otherwise assign,
transfer or dispose of any Interests or Portfolio
Company Securities, or publicly disclose the
intention to make any offer, sale, pledge or
disposition, or (b) engage in any short selling
of any Interests or Portfolio Company Securities.
Notwithstanding the foregoing, any permitted
transfers of Interests that are approved by the
Members will be governed by Article VIII.

XII.3 **Further Instruments and Cooperation of
Members.** Each Member will furnish, from time to
time, to the Administrative Member within 5
Business Days after receipt of the Administrative
Member's request (or other amounts of time as
specified by the Administrative Member) any
further instruments (including any designations,
representations, warranties, and covenants),
documentation and information as the
Administrative Member deems to be reasonably
necessary, appropriate or convenient: (a) to
facilitate the Closing or satisfy any Closing
Conditions; (b) to satisfy applicable anti-money
laundering requirements; (c) for any tax purpose,
including, for the avoidance of doubt, a Form W-
9; or (d) for any other purpose that is
consistent with the terms of this Agreement.

# ARTICLE XIII. POWER OF ATTORNEY.

XIII.1 **Function of Power of Attorney.** Each
Member, by its execution of this Agreement,
hereby irrevocably makes, constitutes and
appoints each of the Administrative Member and
the Liquidating Trustee, if any, in the capacity
as Liquidating Trustee (each is referred to as
the "*Attorney*"), as its true and lawful agent and
attorney in fact, with full power of substitution
and full power and authority in its name, place
and stead, to make, execute, sign, acknowledge,
swear to, record and file (a) this Agreement and
any amendment to this Agreement that has been
adopted as provided in this Agreement; (b) the
original Certificate of Formation and all
amendments required or permitted by law or the
provisions of this Agreement; (c) all instruments

PLAINTIFF0002150

provisions of this Agreement; (c) all instruments or documents required to effect a transfer of Interest; (d) all certificates and other



instruments deemed advisable by the Administrative Member or the Liquidating Trustee, if any, to carry out the provisions of this Agreement, and applicable law or to permit the Company to become or to continue as a limited liability company wherein the Members have limited liability in each jurisdiction where the Company may be doing business; (e) all instruments that the Administrative Member or the Liquidating Trustee, if any, deems appropriate to reflect a change, modification or termination of this Agreement or the Company in accordance with this Agreement including, the admission of additional Members or substituted members pursuant to the provisions of this Agreement, as applicable; (f) all fictitious or assumed name certificates required or permitted to be filed on behalf of the Company; (g) all conveyances and other instruments or papers deemed advisable by the Administrative Member or the Liquidating Trustee, if any, including, those to effect the dissolution and termination of the Company (including a Certificate of Cancellation); (h) all other agreements and instruments necessary or advisable to consummate any purchase of Investments; (i) all forms, instruments, or documents required to make certain elections pursuant to the Code or state law governing the taxation of limited liability companies; and (j) all other instruments or papers that may be required or permitted by law to be filed on behalf of the Company. Notwithstanding the foregoing, the Administrative Member may not exercise this power of attorney with respect to matters as to which this Agreement requires the consent of the Members until such consent has been received.

XIII.2 **Additional Functions.** The foregoing power of attorney:

> (a) is coupled with an interest, is irrevocable and will survive the subsequent death or Disability of any Member or any subsequent power of attorney executed by a Member;

PLAINTIFF0002151



(b) may be exercised by the Attorney,
either by signing separately as

attorney-in-fact for each Member or by
a single signature of the Attorney,
acting as attorney-in-fact for all of
them;

(c) will survive the delivery of an
assignment by a Member of all or any
portion of its Interest; except that,
where the assignee of all of that
Member's Interest has been approved by
the Administrative Member for admission
to the Company, as a substituted
Member, the power of attorney of the
assignor will survive the delivery of
that assignment for the sole purpose of
enabling the Attorney to execute, swear
to, acknowledge and file any instrument
necessary or appropriate to effect that
substitution.

XIII.3 **Delivery of Power of Attorney.** Each Member
must execute and deliver to the Administrative
Member within 5 Business Days after receipt of
the Administrative Member's request, any further
designations, powers-of-attorney and other
instruments as the Administrative Member
reasonably deems necessary to carry out the terms
of this Agreement.

# ARTICLE XIV. MISCELLANEOUS.

XIV.1 **Ministerial and Administrative Amendments.**
Amendments that under this Agreement are
expressly permitted to be made by the
Administrative Member, ministerial or
administrative amendments to cure ambiguities or
inconsistencies as may in the discretion of the
Administrative Member be necessary or appropriate
and those amendments as may be required by law
may be made from time to time without the Consent
of any of the Members. Other amendments may be
made to this Agreement only with the Consent of a
Majority in Interest. Notwithstanding the
foregoing, (a) no amendment will be adopted
pursuant to this Section 14.1 unless that
amendment would not alter, or result in the

PLAINTIFF0002152



amendment would not at or, or result in an alteration of, the limited liability of the Members or the status of the Company as a

"partnership" for federal income tax purposes and (b) no amendment that increases the liabilities or duties of a Member (including the Administrative Member under this Agreement may be made without the consent of that Member.

XIV.2 **Amendment Recordation.** Upon the adoption of any amendment to this Agreement, the amendment will be executed by the Administrative Member and, if required, will be recorded in the proper records of each jurisdiction in which recordation is necessary for the Company to conduct business. Any adopted amendment may be executed by the Administrative Member on behalf of the Members pursuant to the power of attorney granted in Section 13.1.

XIV.3 **Offset Privilege.** The Company may offset against any monetary obligation owing from the Company to any Members or Administrative Member any monetary obligation then owing from that Member or Administrative Member to the Company; provided, however, that the offset right will only apply to any monetary obligation owed to that Member or Administrative Member in their capacity as a Member or Administrative Member.

XIV.4 **Notices.**

> (a) Any notice or other communication to be given to the Company, the Administrative Member or any Member in connection with this Agreement will be in writing and will be delivered or mailed by registered or certified mail, postage prepaid, sent by facsimile or electronic mail or otherwise delivered by hand or messenger.

> (b) Each Member hereby acknowledges that the Administrative Member is entitled to transmit to that Member exclusively by e-mail (or other means of electronic messaging) all notices, correspondence and reports, including, but not limited to, that Member's Schedule K-1s.

PLAINTIFF0002153



(c) Each notice or other communication to the Administrative Member will for purposes of this Agreement be treated as effective or having been given upon the earlier of (i) receipt, (ii) the date transmitted by email, with evidence of transmission from the transmitting device, (iii) acknowledged receipt, (iv) when delivered in person, (v) when sent by electronic facsimile transfer or electronic mail at the number or address set forth below and receipt is acknowledged by the Administrative Member, (vi) 1 Business Day after having been dispatched by a nationally recognized overnight courier service if receipt is evidenced by a signature of a person regularly employed or residing at the address set forth below for that Party or (vii) 3 Business Days after being sent by registered or certified mail, return receipt requested, postage prepaid.

(d) Any notice must be given, if (x) to the Company, to the Company's email address, to the attention of the Administrative Member and (y) to any Member, to that Member's address or number specified in the Interest Register of the Company. Any Party may by notice pursuant to this Section 14.4 designate any other physical address or email address to which notice to that Party must be given.

XIV.5 **Waiver.** No course of dealing or omission or delay on the part of any Party in asserting or exercising any right under this Agreement will constitute or operate as a waiver of any right. No waiver of any provision of this Agreement will be effective, unless in writing and signed by or on behalf of the Party to be charged with the waiver. No waiver will be deemed a continuing waiver or future waiver or waiver in respect of any other breach or default, unless expressly so stated in writing.

XIV.6 **Governing Law.** This Agreement will be

PLAINTIFF0002154

XIV.6 **Governing Law.** This Agreement will be construed, performed and enforced in accordance with the laws of the State of Delaware, without

giving effect to its conflict of laws principles to the extent those principles or rules would require or permit the application of the laws of another jurisdiction.



XIV.7 **Dispute Resolution.** Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, except for any claim or action that the Administrative Member or Company may elect to commence to enforce any of its rights or the Members' obligations under this Agreement, will be settled by binding arbitration, before three arbitrators, administered by the American Arbitration Association under and in accordance with its Commercial Arbitration Rules. The decision of the arbitrators shall be non-appealable, binding and conclusive upon all parties thereto and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction.

> (a) *Location*. Any arbitration will be held in the Arbitration Location.

> (b) *Costs**.*** Each of the Parties will equally bear any arbitration fees and administrative costs associated with the arbitration. The prevailing Party, as determined by the arbitrators, will be awarded its costs and reasonable attorneys' fees incurred in connection with the arbitration.

> (c) *Consent to Jurisdiction.* The Parties hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any courts located in the Arbitration Location, for recognition or enforcement of any award determined pursuant to this Section 14.7.

> **NOTICE: By becoming a party to this Agreement, each Party is agreeing to have all disputes. claims or**

PLAINTIFF0002155



controversies arising out of or relating to this Agreement decided by neutral binding arbitration, and is giving up any rights it might possess to have those matters litigated in a court or jury trial. By becoming a party to this Agreement, each Party is giving up its judicial rights to discovery and appeal except to the extent that they are specifically provided for under this Agreement. If any Party refuses to submit to arbitration after agreeing to this provision, that Party may be compelled to arbitrate under federal or state law. By becoming a party to this Agreement, each Party confirms that its agreement to this arbitration provision is voluntary.

XIV.8 **Remedies.** In the event of any actual or prospective breach or default of this Agreement by any Party, the other Parties will be entitled to seek equitable relief, including remedies in the nature of injunction and specific performance (without being required to post a bond or other security or to establish any actual damages). In this regard, the Parties acknowledge that they will be irreparably damaged in the event this Agreement is not specifically enforced, since (among other things) the Interests are not readily marketable. All remedies under this Agreement are cumulative and not exclusive, may be exercised concurrently and nothing in this Agreement will be deemed to prohibit or limit any Party from pursuing any other remedy or relief available at law or in equity for any actual or prospective breach or default, including the recovery of damages.

XIV.9 **Severability.** The provisions of this Agreement are severable and in the event that any provision of this Agreement is determined to be illegal, invalid or unenforceable in any respect by a court of competent jurisdiction, the remaining provisions of this Agreement will not be affected, but will, subject to the discretion of that court, remain in full force and effect, and any illegal, invalid or unenforceable

PLAINTIFF0002156



provision will be deemed, without further action on the part of the Parties, amended and limited to the extent necessary to render that provision,

as so amended and limited, legal, valid and enforceable, it being the intention of the Parties that this Agreement and each provision will be legal, valid and enforceable to the fullest extent permitted by applicable law.

XIV.10 **Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. A facsimile, PDF or DocuSign (or similar service) signature will be deemed an original. The Parties hereby Consent to transact business with the Company and each of the other via electronic signature (including via DocuSign, eSignLive, or a similar service). Each Party understands and agrees that their signature page may be disassembled and attached to the final version of this Agreement.

XIV.11 **IRS Circular 230 disclosure.** Any discussion of United States federal tax issues contained in this Agreement, or concerning the investment in the Company, by the Company, Administrative Member, and their respective counsel, is not intended or written to be relied on by the Parties for purpose of avoiding penalties imposed under the Code. Each Party should seek advice from an independent tax adviser based on their particular circumstances.

XIV.12 **Further Assurances.** Each Party shall promptly execute, deliver, file or record those agreements, instruments, certificates and other documents and take other actions as the Administrative Member may reasonably request or as may otherwise be necessary or proper to carry out the terms and provisions of this Agreement and to consummate and perfect the transactions contemplated hereby.

XIV.13 **Assignment.** The rights, interests or obligations of a Party may not be assigned by such Party except in accordance with a Transfer permitted by Article VIII. Any purported assignment without such Consent will be null and void *ab initio*.

PLAINTIFF0002157

void *ab initio*.

XIV.14 **Binding Effect.** This Agreement will be
binding upon and inure to the benefit of the
Parties and their respective legal
representatives, successors and permitted
assigns. This Agreement is not intended, and will
not be deemed, to create or confer any right or
interest for the benefit of any Person not a
party to this Agreement.

XIV.15 **Titles and Captions.** The titles and
captions of the Articles and Sections of this
Agreement are for convenience of reference only
and do not in any way define or interpret the
intent of the Parties or modify or otherwise
affect any of the provisions hereof and shall not
have any effect on the construction or
interpretation of this Agreement.

XIV.16 **Construction.** This Agreement will not be
construed against any party by reason of that
party having caused this Agreement to be drafted.

XIV.17 **Entire Agreement.** This Agreement, the
Subscription Agreements of each Member and any
side letter with a Member constitutes the entire
understanding and agreement among the Parties and
supersedes all prior and contemporaneous
understandings and agreements whether written or
oral. The Administrative Member and the Company
may enter into side letters with any Member or
prospective Member which contain terms different
from those in this Agreement or amend and
supplement provisions of this Agreement as it
applies to such Member. In the event of any
inconsistency between the terms of this Agreement
and the terms of any side letter, the terms of
the side letter shall control.

[Signature page to follow]

IN WITNESS WHEREOF, the undersigned has executed
this Agreement effective as of the Effective
Date.

| COMPANY: |
| --- |
| **[Entity-name]**, a Delaware limited liability company |



PLAINTIFF0002158



```
By: _____
```

| Name: [Administrative-member-name] |
| --- |
| **COMPANY:** |
| Title: Administrative Member |

IN WITNESS WHEREOF, the undersigned has executed this Agreement effective as of the Effective Date or as of the date of such Member's Closing.

| **ADMINISTRATIVE MEMBER:** |
| --- |
| By: |
| Name: [Administrative-member-name] |
| Date: [Date] |

### Member Signature Page

The undersigned Member hereby executes the Limited Liability Company Operating Agreement of the Company, dated as of the Effective Date, and hereby authorizes this signature page to be attached to a counterpart of that document executed by the Administrative Member of the Company.

| **MEMBER:** |
| --- |
| By: _____ |
| [Member-name] |
| Dated: [Date] |

(Signature of Member or Authorized Signatory)

# Exhibit A

**FORM OF SUBSCRIPTION AGREEMENT**

# Footnotes

1. Note to draft: Tax advisors to review and confirm. The Operating Agreement would need

PLAINTIFF0002159

to be substantially revised if the entity is
not taxed as a partnership for U.S. federal

income tax purposes or if a Series LLC is
used. ↩



2. Note: If a transferee is an entity, the form
   of the Subscription Agreement and the
   representations in the Subscription
   Agreement will need to be updated to reflect
   that is it in respect of an entity not an
   individual. ↩

Previous
amendment.md

Next
README.md

PLAINTIFF0002160



**LEGAL—TOOLS**   DAOLABS

Connect Wallet



# Variables

LLC's Name

Acme LLC

Date Established

01/01/2023

Administrative member name

Mr. John Doe

Arbitration location

Kalamazoo, Michigan

Designated Smart Contract Address

0 0000000000000000000000000000000000000000

Company purpose

To provide explosives to Wile E. Coyote.

Member name

Mr. John Doe

Series name

Acme LLC Explosive Tennis Balls Series

Series purpose

To acquire and distribute explosive tennis balls.

Series investments

14 pallets of explosive tennis balls and a cryptopunk.

Series assets description

Four giant rubber bands and three rocket-powered widgets.

Series capital contribution requirements

Additional capital contribution requirements (if any).

Series distribution policies

Series distribution policies (if different).

PLAINTIFF0002161

**Update document**



     

SERIES ADDENDUM to Limited Liability Company Agreement of [Entity-name] (the "LLC Agreement")

Name of Series: **[Series-name]**

Date Established: **[Date]**

Members, Addresses, Capital Contributions, and Percentage Interests: As set forth on the Interest Register

Objective / Purpose: **[Series-purpose]**

Investments: **[Series-investments]**

Description of Assets: **[Series-assets-description]**

Additional Capital Contribution Requirements (if any): **[Series-capital-contribution-requirements]**

Distribution Policies (if different that those set forth in the LLC Agreement): **[Series-distribution-policies]**

| Previous | Next |
|---|---|
| Operating Agreement | Incorporation |

PLAINTIFF0002162



**LEGAL-TOOLS**  DAOLABS

<span style="background:red">Connect Wallet</span>



# Variables

**Investment Vehicle Name**

Acme LLC

**Date by Which Documents Must be Returned**

mm/dd/yyyy

**Administrative Member's Full Name**

Ms. Jane Doe

**Counsel's (or Other Document Recipient's) Full Name**

Mr. John Doe

**Counsel's (or Other Document Recipient's) Email Address**

john@doe org

**Update document**

Resolution.

6. NOTICE:

7. Waiver; Conflict of Interest.

8. Confidentiality.

9. USA PATRIOT Act.

10. Beneficial Ownership.

11. Subscriber's Sophistication.

12. Survival.

13. Additional Information.

14. Assignment and Successors.

15. No Third-Party Benefits.

# [Entity-name] SUBSCRIPTION DOCUMENTS

## SUBSCRIPTION INSTRUCTIONS

Prior to subscribing to **[Entity-name]** (the "Vehicle"), prospective members ("Subscribers")

- (i) the Limited Liability Company Agreement of **[Entity-name]** [and the series ac the vehicle] (as amended, restated, supplemented or otherwise modified from tim time, collectively the "Operating Agreement"); and
- (ii) these subscription documents (the "Subscription Documents", which shall in Subscription Agreement, exhibits, and any documen s incorporated by reference). Subscriber must also provide all of the applicable information and documents ar

PLAINTIFF0002163

the signature page outlined in the checklist below. Capitalized words that are not defined in this Agreement have the meaning given them in the Operating Agreement.

## SUBSCRIPTION DOCUMENTS CHECKLIST

- Complete and sign the Subscription Agreement (including additional representations as applicable).
- Review and sign the Operating Agreement Signature Page.
- Complete Exhibit A (Subscriber Information), and provide any documentation requested.
- Complete Exhibit B (Accredited Investor Status), and provide any documentation requested.
- Complete Exhibit C (USA Patriot Act Compliance), and provide any documentation requested.
- Complete and sign the applicable IRS Form:
- W-9 (for Subscribers who are U.S. persons)
- W-8BEN (for Individual Subscribers who are not U.S. persons)

The Administrative Member may request additional documents it deems necessary from any Subscriber. Scan and e-mail your completed documents to **[Administrative-member-name]** (the "Administrator") and **[Counsel-name]**, to arrive as soon as possible and in any event no later than **[Date-re...** keep a copy of the executed documents for your records. Documents should include applicable documentation, as specified in the Subscription Documents.

Documents should be sent to:

**[Counsel-name]**

**[Counsel-email]**

After notification from the Administrative Member that the subscription has been accepted, Subscriber must send his or her subscription amount by wire transfer or as digital assets asset wallets and wire transfer information will be provided separately by the Administra... Upon acceptance of the subscription, a copy of the executed Subscription Documents, signe... on behalf of the Vehicle, will be returned to Subscriber.

## SUBSCRIPTION AGREEMENT

This Subscription Agreement (this "Agreement") is entered into by and between **[Entity-na...** "Vehicle"), [a Delaware Limited Liability Company (the "Master LLC")], and the undersigne... Subscriber (the "Subscriber"), effective as of the date set forth on the Acceptance of Su... page of this Agreement. Capitalized words that are used but not defined in this Agreement... meaning given them in the Limited Liability Company Agreement of the [Vehicle / Master LL... with each applicable Series Addenda for the Vehicle ] (as amended, restated, supplemented... modified from time to time, the "Operating Agreement"). In consideration of the mutual co... forth in this Agreement and for other good and valuable consideration, the receipt and su... which are hereby acknowledged, the Subscriber and the Vehicle hereby agree as follows:

## 1. Subscription.

- (a) Subject to the terms and conditions of this Agreement, the Subscriber hereb... irrevocably tenders this subscription (this "Subscription") for an interest in... Vehicle (an "Interest") in the amount set forth on the "Sub...

16. Amendment. Waiver.

17. Governing Law.

18. Entire Agreement.

19. Notice.

20. Severability.

21. Counterparts.

22. Electronic Delivery of Disclosures and Schedule K-1.

23. Elections and...

24. U.S. Foreign Account Tax Compliance Act.

SIGNATURE PAGE TO SUBSCRIPTION AGREEMENT

ACCEPTANCE OF SUBSCRIPTION

LIMITED LIABILITY COMPANY AGREEMENT

Member Signature Page

Exhibit A

Exhibit B

Exhibit C

PLAINTIFF00021641

"Subscription Amount") on the Subscriber's applicable signature page hereto (th
"Signature Page").

- (b) This Subscription, when and if accepted by the Administrative Member of the
will constitute a commitment to contribute to the Vehicle that portion       e
Subscription Amount accepted by the Administrative Member. The Subscrib      ll
admitted as a Member in the Vehicle at the time this Subscription is accepted b
Administrative Member pursuant to the terms of Section1(c) below, and the Subsc
hereby irrevocably agrees to be bound by the Operating Agreement as a Member of
Vehicle and to perform all obligations contained in the Operating Agreement ap
to him or her, including making contributions to the Vehicle. This Agreement wi
irrevocable with respect to the Subscriber at the time of its submission to the
and may not be withdrawn by the Subscriber unless the Administrative Member re
Subscription.

- (c) The Administrative Member, on behalf of the Vehicle, may accept or reject t
Subscription, in whole or in part, in its sole discretion. This Subscription wi
deemed to be accepted by the Administrative Member and this Agreement will be b
against the Administrative Member only upon execution and delivery to the Subsc
the Acceptance of Subscription attached to this Agreement. At the Closing, the
Administrative Member will execute the Acceptance of Subscription and deliver
the Closing to the Subscriber within a reasonable time after the Closing. Upon
acceptance, the Subscriber will be issued the Interest for which it has subscri
Failure to deliver fully-completed and executed Subscription Documents, of whic
Agreement is a part, may result in the Vehicle rejecting this Subscription.

- (d) The Vehicle has the unrestricted right to condition its acceptance of the
Subscriber's Subscription, in whole or in part, upon the receipt by the Vehicle
additional instruments (including any designations, representations, warranties
covenants), documentation and information requested by the Vehicle in its sole
discretion, including an opinion of counsel to the Subscriber, evidencing the l
of an investment in the Vehicle by the Subscriber and the authority of the pers
executing this Agreement on behalf of the Subscriber (collectively the "Additio
Documents"), in addition to these Subscription Documents.

- (e) The Subscriber understands that the Vehicle has entered into or expects to
into separate subscription agreements with other members which are or will be
substantially similar in all material respects to this Agreement providing for
admission of such other members as Members in the Vehicle. This Agreement and o
separate subscription agreements are separate agreements and the sale arrangeme
between the Vehicle and other members are separate sales. The Subscriber also
acknowledges and agrees that the Administrative Member may enter into side lett
certain Members (which may include the Subscriber) which contain terms differen
those in this Agreement or amend and supplement certain provisions of the Opera
Agreement as it applies to such Members. In the event of any inconsistency betw
terms of this Agreement and the terms of any side letter, the terms of the side
shall control.

2. Representations and Warranties of the Subscriber

PLAINTIFF0002165

## 2. Representations and warranties of the Subscriber.

The Subscriber hereby represents and warrants to the Vehicle as of the date of this Agree
the date of any Capital Contribution to the Vehicle (and the Subscriber agrees to notify
writing immediately if any changes in the information set forth in this Agreement    ):

- (a) The Subscriber has completed Exhibit B indicating if and how the Subscriber
  qualifies as an "Accredited Investor" within the meaning of Rule 501 of Regulat
  under the Securities Act of 1933, as amended (the "Securities Act").

- (b) The Subscriber has not reproduced, duplicated, or delivered the Operating A
  or this Agreement to any other person, except professional advisers to the Subs
  as instructed by the Administrative Member. Notwithstanding the foregoing, the
  Subscriber (and each employee, representative or other agent of the Subscriber)
  disclose to any and all persons, without limitation of any kind, the tax treatm
  tax structure of

    - (i) the Vehicle and
    - (ii) any of its transactions, and all materials of any kind (includin
      opinions or other tax analyses) that are provided to the Subscriber
      relating to such tax treatment and tax structure.

- (c) The Subscriber (either alone or with the Subscriber's professional advisers
  unaffiliated with the Vehicle, the Administrative Member, or its affiliates) ha
  knowledge and experience in financial and business matters that the Subscriber
  capable of evaluating the merits and risks of membership in the Vehicle.

- (d) All questions of the Subscriber related to the Subscriber's membership in t
  Vehicle have been answered to the full satisfaction of the Subscriber and the S
  has received all the information the Subscriber considers necessary or appropri
  deciding whether to purchase the Interest.

- (e) Upon acceptance of the Subscription by the Vehicle, this Agreement and the
  Agreement will each constitute a valid and legally binding obligation of the Su
  enforceable in accordance with its terms except to the extent limited by applic
  bankruptcy, insolvency, reorganization or other laws affecting the enforcement
  creditors' rights generally and by principles of equity.

- (f) The Subscriber

    - (i) is a natural person,
    - (ii) has full legal capacity to execute and deliver this Agreement an
      perform the Subscriber's obligations in this Agreement and
    - (iii) is a bona fide resident of the state of residence set forth on
      Exhibit A and has no present intention of becoming a resident of any
      other state or jurisdiction.

- (g) Other than as set forth in this Agreement or in the Operating Agreement (an
  separate agreement in writing with the Vehicle executed in conjunction with the
  Subscriber's Subscription), the Subscriber is not relying u

Subscriber's subscription), the Subscriber is not relying upon any information, representation or warranty by the Vehicle, the Administrative Member, or any of respective agents or representatives in determining to subscribe to the Vehicle

Subscriber has consulted, to the extent deemed appropriate by the Subscriber, v Subscriber's own advisers as to the financial, tax, legal and other matters con the Vehicle and on that basis and the basis of its own independent inve     tic without the assistance of the Vehicle, the Administrative Member, or an     the respective agents or representatives, believes that an investment in the Vehicl suitable and appropriate for the Subscriber. Subscriber hereby represents and v that it has had the opportunity to have its own independent legal counsel revie approve all of the legal documents executed in connection with its Subscription

- (h) The Subscriber understands and acknowledges that

  - (i) any description of the Vehicle's business and prospects given to the Subscriber is not necessarily exhaustive,
  - (ii) all estimates, projections and forward-looking statements were based assumptions, estimates or projections at the time they were made, there is guarantee that such assumptions, estimates or projections were at the time remain reasonable and whether or not the estimates, projections or forward looking statements will materialize depends upon many factors that are out the control of the Vehicle and
  - (iii) there is no assurance that any projections, estimates or forward-loo statements will be attained.

- (i) The Subscriber's information provided in this Agreement (including the exhi hereto) is complete and accurate and may be relied upon by the Vehicle and the Administrative Member. Additionally, by executing the Agreement, the Subscriber acknowledges and agrees that any identifying information or documentation regar Subscriber and/or its suitability to invest in the Vehicle that was furnished k Subscriber to the Administrative Member, whether in connection with this Subscr previously, may be made available to Administrative Member, remains true and co all respects and may, at the discretion of the Administrative Member, be incorp reference herein (collectively, "Supporting Documents").

- (j) Neither this Subscription nor any of the Subscriber's Capital Contributions will directly or indirectly contravene applicable laws and regulations, includi money-laundering laws and regulations. The Subscriber understands and agrees th Vehicle may undertake any actions that the Vehicle deems necessary or appropria ensure compliance with applicable laws, rules and regulations regarding money l or terrorism. In furtherance of those efforts, the Subscriber hereby represents covenants, and agrees that, to the best of the Subscriber's knowledge based on reasonable investigation:

  - (i) None of the Subscriber's Capital Contributions to the Vehicle (whether payable in cash or otherwise) will be derived from money laundering or sin activities deemed illegal under federal laws and regulations.
  - (ii) To the extent within the Subscriber's control, none of the Subscriber Capital Contributions to the Vehicle will cause the Vehicle or any of its

PLAINTIFF0002167

personnel to be in violation of federal anti-money laundering laws, includ
without limitation the Bank Secrecy Act (31 U.S.C. 5311 et seq.), the Unit
States Money Laundering Control Act of 1986 or the International Money
Laundering Abatement and Anti-Terrorist Financing Act of 2001, and any
regulations promulgated thereunder.

- (iii) The Subscriber acknowledges that due to anti-money launderin
  requirements operating in the United States, as well as the Vehicle's own
  internal anti-money laundering policies, the Vehicle and the Administrativ
  Member may require further identification of the Subscriber and the source
  its Capital Contribution before these Subscription Documents can be proces
  Capital Contributions can be accepted, or distributions can be made. When
  requested by the Administrative Member, the Subscriber will provide any an
  all additional information, and the Subscriber understands and agrees that
  Administrative Member may release confidential information about the
  Subscriber or persons related to Subscriber if the Administrative Member h
  determined that the release is necessary to ensure compliance with all
  applicable laws and regulations concerning money laundering and similar
  activities.

- (k) Except as otherwise disclosed in writing to the Administrative Member, the
  Subscriber represents and warrants that neither it nor any person or entity co
  by, controlling or under common control with the Subscriber nor any person havi
  beneficial or economic interest in the Subscriber or the Subscriber's assets no
  (without limiting the Subscriber's representations in Section 9 below) for whom
  Subscriber is acting as agent or nominee in connection with this investment, is

  - (i) a Prohibited Investor;

  - (ii) a Senior Foreign Political Figure, any member of a Senior Foreign
    Political Figure's "immediate family," which includes the figure's parents
    siblings, spouse, children and in-laws, or any Close Associate of a Senior
    Foreign Political Figure, or a person or entity resident in, or organized
    chartered under, the laws of a Non-Cooperative Jurisdiction;

  - (iii) a person or entity resident in, or organized or chartered under, the
    laws of a jurisdiction that has been designated by the U.S. Secretary of t
    Treasury under Section 311 or 312 of the USA PATRIOT Act as warranting spe
    measures due to money laundering concerns; or

  - (iv) a person or entity who gives the Subscriber reason to believe that it
    funds originate from, or will be or have been routed through, an account
    maintained at a Foreign Shell Bank, an "offshore bank," or a bank organize
    chartered under the laws of a Non-Cooperative Jurisdiction.

- (l) The Subscriber understands the rights, obligations and restrictions of Memb
  including that withdrawals of capital from the Vehicle and transfers of interes
  Vehicle by Members are limited by the terms of the Operating Agreement.

- (m) The Subscriber understands the meaning and legal consequences of the repres
  and warranties made by the Subscriber in these Subscription

PLAINTIFF0002168

and warranties made by the Subscriber in these Subscription Documents and the ᵁ
Agreement, and that the Administrative Member is relying on those representatiᵒ
warranties in making its determination to accept or reject this Subscription. ᵀ

Subscriber represents and warrants that the information contained in this Agreᵉ
in the Subscription Documents is true and correct as of the date hereof and shᵃ
deemed repeated and reaffirmed by the Subscriber as of each date that ᵢ ᵉˢ
Contribution to the Vehicle and agrees to notify immediately the Admini ᵢive
of any changes in such information (or, if there have been any changes in ᵗʰᵉ
information provided to the Vehicle by the Subscriber in the Subscription Docuᵐ
since the date the Subscription Documents were furnished, the Subscriber has aᵈ
Vehicle in writing of such changes). The Subscriber hereby agrees to indemnify
harmless the Vehicle and each member thereof from and against any and all lossᵉ
damages, expenses, liabilities or reasonable attorneys' fees (including attorneᵉ
and expenses incurred in a securities or other action in which no judgment in ᵗ
the Subscriber is rendered) due to or arising out of a breach of any representaᵗ
warranty of the Subscriber, whether contained in the Operating Agreement, this
Subscription Agreement or the Subscription Documents. Notwithstanding any of thᵉ
representations, warranties, acknowledgments or agreements made in this Subscrᵢ
Agreement and in the Subscription Documents by the Subscriber, the Subscriber ᵈ
thereby or in any other manner waive any rights granted to the Subscriber underᵉ
or state securities law.

- (n) The Subscriber understands the risks involved with acquiring an interest iᵑ
  Vehicle, understands the business of the Vehicle, has thoroughly read and underᵉ
  all the provisions of the Operating Agreement and can withstand a total loss oᶠ
  Capital Contributions to the Vehicle.

- (o) [The Subscriber understands that the use of a limited liability company wiᵗʰ
  protected or registered Series (a "Series LLC") has not yet been widely adopteᵈ
  subject to various legal uncertainties, including, without limitation, uncertaᵢ
  relating to:

> > –  (i) the potential non-recognition of the separate and segregated assets and ᴸ
> > –  (ii) the risk of non-compliance with statutory requirements that must be met
> > –  (iii) the novelty and lack of established precedent regarding Series LLCs anᵈ
> > –  (iv) the lack of legal and regulatory clarity regarding the taxation of a Seᵣ
> > –  (v) the lack of legal and regulatory clarity regarding the treatment of a Seᵣ

## 3. Liability.

The Subscriber agrees that neither the Vehicle, the Administrative Member, nor any of thᵉ
affiliates, nor their respective managers, officers, directors, members, equity holders,
other applicable representatives (collectively, the "Covered Persons"), will incur any liᵃ
respect of any action taken upon any information provided to the Vehicle by the Subscribeᵣ
any Supporting Documents or Additional Documents) or for relying on any notice, consent,
instructions or other instrument believed, in good faith, to be genuine or to be signed ᵇ
authorized persons on behalf of the Subscriber, including any document transmitted by e-ᵐ
electronic delivery or (b) for adhering to applicable anti-money laundering obligations ᵂ
later comes into effect.

**PLAINTIFF0002169**

## 4. Power of Attorney.

The Subscriber hereby irrevocably makes, constitutes and appoints the Administrative Memb and lawful agent and attorney-in-fact, with full power of substitution and full power and the name, place, and stead of the Subscriber, to make, execute, sign, swear to, a led and file in all necessary or appropriate places all documents relating to the Vehicl and activities, including, but not limited to:

- (a) the Operating Agreement and any amendment to the Operating Agreement that h adopted as provided in the Operating Agreement;
- (b) a Certificate of Formation of the Vehicle and all amendments required or pe by law or the provisions of the Operating Agreement;
- (c) any applications, forms, certificates, reports, or other documents that may requested or required by any federal, state, or local governmental agency, secu exchange, securities association, self-regulatory organization, or similar inst and that are deemed necessary or advisable by the Administrative Member;
- (d) any other instrument that may be required to be filed or recorded in any st county or by any governmental agency, or that the Administrative Member deems a to file or record, including, without limitation, applications for foreign qual and certificates of assumed name;
- (e) any documents that may be required to effect the continuation of the Vehicl admission of additional Members, the admission of substitute Members, or the di or termination of the Vehicle, provided such continuation, admission, dissoluti termination are in accordance with the terms of the Operating Agreement;
- (f) to make certain elections contained in the Internal Revenue Code (the "Code state law governing taxation of limited liability companies; and
- (g) to perform any and all other ministerial duties or functions necessary for conduct of the business of the Vehicle. Notwithstanding the foregoing, the Administrative Member may not exercise this power of attorney with respect to m to which the Operating Agreement requires the consent of the Members until such has been received. The foregoing power of attorney is coupled with an interest, irrevocable and will survive the subsequent death or disability of the Subscrib subsequent power of attorney executed by the Subscriber and is coupled with an is irrevocable and will survive the subsequent death or disability of the Subsc any subsequent power of attorney executed by the Subscriber. The Subscriber mus and deliver to the Administrative Member within 5 business days after receipt o Administrative Member's request, any further designations, powers-of-attorney a instruments as the Administrative Member reasonably deems necessary to carry ou terms of this Agreement.

## 5. Dispute Resolution.

Notwithstanding anything to the contrary in this Agreement or the Operating Agreement, an any claim or action that Administrative Member or the Vehicle may elect to commence to en its rights or the Subscriber's obligations under this Agreement or the Operating Agreemen Subscriber agrees that all disputes arising out of (i) this Agreement, (ii) the Vehicle's the Interest, (iii) the Subscriber's Subscription for the Interest and (iv) the Subscribe obligations under the Operating Agreement will be settled by binding arbitration, before

PLAINTIFF0002190

arbitrators, administered by the American Arbitration Association under and in accordance Commercial Arbitration Rules. The decision of the arbitrators shall be non-appealable, bi conclusive upon all parties thereto and judgment on the award rendered by the arbitrators entered in any court having jurisdiction. The location of the arbitration will be [San Fr California ]. Each of the parties will equally bear any arbitration fees and administrati associated with the arbitration. The prevailing party, as determined by the arbi awarded its costs and reasonable attorneys' fees incurred in connection with the arbitrat party hereby irrevocably and unconditionally submits, for itself and its property, to the jurisdiction of any courts located in the Arbitration Location, for recognition or enforc award determined pursuant to this Section 5.

## 6. NOTICE:

By becoming a party to this Agreement and the Operating Agreement, each party is agreeing disputes, claims or controversies arising out of or relating to this Agreement and the Op Agreement decided by neutral binding arbitration, and is giving up any rights it might po those matters litigated in a court or jury trial. By becoming a party to this Agreement a Operating Agreement, each party is giving up its judicial rights to discovery and appeal extent that they are specifically provided for under this Agreement and the Operating Agr party refuses to submit to arbitration after agreeing to this provision, that party may b arbitrate under federal or state law. By becoming a party to this Agreement and the Opera Agreement, each party confirms that its agreement to this arbitration provision is volun

## 7. Waiver; Conflict of Interest.

The Subscriber acknowledges and agrees that the Members (including the Administrative Men their affiliates will be subject to various conflicts of interest in carrying out respons respect to the Vehicle. Affiliates of Members may also be in competition with the Vehicle investments. Other vehicles may be formed in the future with objectives that are the same to the Vehicle's objectives. Each Subscriber hereby waives any such conflicts by executin Agreement.

## 8. Confidentiality.

The Subscriber must keep confidential, and not make use of or disclose to any person (oth purposes reasonably related to its Interest or as required by law), any information or ma from or relating to the Vehicle; provided, that the Subscriber may disclose any such info extent that such information (i) is or becomes generally available to the public through omission of the Subscriber, (ii) was already in the possession of the Subscriber at the t disclosure or (iii) is communicated to the Subscriber by a third party without violation confidentiality obligations.

## 9. USA PATRIOT Act.

To comply with applicable laws, rules and regulations designed to combat money laundering the Subscriber must provide the information on Exhibit C of this Agreement.

## 10. Beneficial Ownership.

PLAINTIFF0002171

The Subscriber represents and warrants that it is subscribing for Interests for Subscribe account and own risk. The Subscriber also represents that it does not have the intention

to sell, distribute, or transfer its Interests or any portion of Interests, directly or i any other person or entity or to any nominee account. The Subscriber represents and warra Subscriber is not acting as trustee, custodian, agent, representative or nominee       or to) another person or entity (howsoever characterized and regardless of whether s    ers is deemed to have a property interest, or the like, with respect to the Interests under 1 Subscriber further represents and warrants that the Subscriber will comply, in all respec requirements of applicable anti-money laundering laws and regulations.

## 11. Subscriber's Sophistication.

In view of the fact that Subscriber is sophisticated, has had access to information suffi an investment decision and has conducted his or her own due diligence, and has made its i decision without reliance on (a) the Administrative Member, (b) any material information Administrative Member may have about the Portfolio Company Securities and Portfolio Compa disclosures of non-public information that may have been made to the Administrative Membe Administrative Member may have independently obtained), and further in view of all of the representations Subscriber has made in Section 2, Subscriber hereby irrevocably: (i) waiv to any and all actions, suits, proceedings, investigations, claims or liabilities of any including but not limited to actions under Rule 10b-5 of the Securities Exchange Act of 1 laws (collectively "Claims") that may arise from or relate to the possession of or failur non-public information, (ii) releases any Claims against the Covered Persons, and (iii) a refrain from pursuing against any Claims against those parties.

## 12. Survival.

The representations, warranties and agreements contained in this Agreement will survive of this Agreement by the Subscriber and acceptance of the Subscription by the Vehicle.

## 13. Additional Information.

The Subscriber agrees that, upon demand, it will promptly furnish any information, and e deliver such documents, as reasonably required by the Administrative Member and furnish relating to the Subscriber's relationship with the Vehicle as required by governmental ag jurisdiction over the Vehicle and/or the Administrative Member.

## 14. Assignment and Successors.

This Agreement may be assigned by the Subscriber only with the prior written consent of accordance with Article VIII and Article 14.13 of the Operating Agreement. Subject to the this Agreement (including the provisions of Section 5) will be binding on the respective assigns, heirs and legal representatives of the parties to this Agreement.

## 15. No Third-Party Beneficiaries.

This Agreement does not confer any rights or remedies upon any person, other than the Par Operating Agreement, and this Agreement..

PLAINTIFF0002172

operating Agreement and this Agreement.

## 16. Amendment; Waiver.

This Agreement may not be amended other than by written consent of the Subscriber and the provision in this Agreement may be waived other than in a writing signed by the waiving p expressly provided otherwise, no waiver will constitute an ongoing or future wai        an this Agreement.

## 17. Governing Law.

This Agreement is governed by and will be construed in accordance with the laws of the St Delaware, without regard to conflict of laws principles. For the purpose of any judicial enforce an award or incidental to arbitration or to compel arbitration, the Subscriber an hereby submit to the non-exclusive jurisdiction of the courts located in [San Francisco, and agree that service of process in such arbitration or court proceedings will be satisf upon it if sent by registered mail addressed to it at the address set forth on the Subscr Information page.

## 18. Entire Agreement.

This Agreement, the Operating Agreement and any side letter entered into between the Admi Member and/or the Vehicle and the Subscriber, and all of the exhibits and appendices atta agreements, constitutes the entire agreement and understanding between the parties with i subject matter those agreements and supersedes any prior written or oral agreements or ur of the Parties.

## 19. Notice.

- (a) Each Member hereby acknowledges that the Administrative Member will
- be entitled to transmit to that Member exclusively by e-mail (or other
- means of electronic messaging) all notices, correspondence and reports,
- including, but not limited to, that Member's Schedule K-1s.
- (b) Each notice or other communication to the Administrative Member or
- the Vehicle will for purposes of this Agreement be treated as effective
- or having been given upon the earlier of

  - (i) receipt,
  - (ii) the date transmitted by e-mail, with evidence of transmission fi the transmitting device,
  - (iii) acknowledged receipt,
  - (iv) when delivered in person,
  - (v) when sent by electronic facsimile transfer or electronic mail at number or address set forth below and receipt is acknowledged by the Administrative Member,
  - (vi) one business day after having been dispatched by a nationally recognized overnight courier service if receipt is evidenced by a signature of a person regularly employed or residing at the address s forth below for that Party or
  - (vii) three business days after being sent by registered or certified

PLAINTIFF 0002173

mail, return receipt requested, postage prepaid.

## 20. Severability.

If any provision of this Agreement is held by applicable authority to be unlawful, void or unenforceable to any extent, such provision, to the extent necessary, will be severed from Agreement and the remainder of this Agreement will not be affected by the removal will continue in full force and effect.

## 21. Copies and Counterparts.

Copies of signatures to this Agreement will be valid, binding and effective as original s all purposes under this Agreement. This Agreement may be executed in any number of counte of which will be an original but all of which taken together will constitute one agreemer

## 22. Electronic Delivery of Disclosures and Schedule K-1.

The Subscriber understands that the Vehicle and the Administrative Member expect to deliv information, including Schedule K-1s (each, a "K-1") to the Subscriber by either electron posting to a Subscriber-accessible platform, or some other form of electronic delivery. F Rev. Proc. 2012-17 (Feb. 13, 2012), the Subscriber hereby expressly understands, consents acknowledges such electronic delivery of tax returns and related information. Federal law Vehicle, the Administrative Member, or their affiliates and designees from disclosing, wi subscriber's tax return information to third parties or use of that information for purpo the preparation of subscriber's tax return. As part of subscription to this offering, the Administrative Member, or their designees may disclose subscriber's income tax return int certain other affiliated entities or third-party service providers for tax return prepara aggregation purposes. The Vehicle and its designees covenant they will keep and maintain information in strict confidence, using such degree of care as is appropriate to avoid un access, use or disclosure, and will not use such information in violation of law. In exec Agreement, subscriber authorizes the Vehicle or the Administrative Member to disclose tax information to various service providers, their respective successors, affiliates and, or third-party service providers as subscriber may request or as may be required by the Vehi Administrative Member for purposes of completing tax return preparation and K-1 delivery this agreement.

- (a) The Subscriber's consent to electronic delivery will apply to all future K- such consent is withdrawn by the Subscriber.
- (b) If for any reason the Subscriber would like a paper copy of the K-1 after Subscriber has consented to electronic delivery, the Subscriber may submit a re the Administrative Member. Requesting a paper copy of the Subscriber's K-1 will treated as a withdrawal of consent.
- (c) If the Subscriber in the future determines that it no longer consents to el delivery, the Subscriber will need to notify the Vehicle so that it can arrange paper K-1 to be delivered to the address that the Vehicle then currently has on The Subscriber may submit notice to the Administrative Member. The Subscriber's is considered withdrawn on the date the Vehicle receives the written request to consent. The Vehicle will confirm the withdrawal and its effective date in writ withdrawal of consent does not apply to a K-1 that was e-mailed to the Subscrik the effective date of the withdrawal of consent.

PLAINTIFF0002174

- (d) The Vehicle (or the Administrative Member) will cease providing statements Subscriber electronically if the Subscriber provides notice to withdraw consent

  Subscriber ceases to be a Member of the Vehicle, or if regulations change to pr the form of delivery.
- (e) If the Subscriber needs to update the Subscriber's contact informat  at file, please e-mail the update to the Administrative Member. The Subscr  wil notified if there are any changes to the contact information of the Vehicle.
- (f) The Subscriber's K-1 may be required to be printed and attached to a federa or local income tax return.

## 23. Elections and Audits.

The Subscriber covenants and agrees to take any action reasonably requested by the Vehic connection with an election by the Vehicle under Section 6221(b) or 6226 of the Code or a final adjustment of the Vehicle by a taxing authority (including, without limitation, pro amended tax returns and promptly paying any related taxes, including penalties and intere limiting the generality of the foregoing, the Subscriber covenants and agrees, if applica into account and report to the IRS any adjustment to its items for any reviewed year as r them by the Vehicle in a statement, in the manner provided in Section 6226(b), whether or Subscriber owns any Interests in the Vehicle in the year of the Vehicle's statement. Any that fails to report its share of such adjustments on its U.S. tax return for its taxable including the date of the Vehicle's statement as described immediately above shall indemr harmless the Vehicle, the Administrative Member, and each of their Affiliates from and ag all liabilities related to taxes (including penalties and interest) imposed on the Vehic of the Subscriber's inaction. In addition, each Subscriber covenant and agrees to indemni harmless the Vehicle, the Administrative Member, and each of their affiliates from and ag all liabilities related to taxes (including penalties and interest) imposed on the Vehic

- (i) pursuant to Section 6221 of the Code, which liabilities relate to adjustmer would have been made to the tax items allocated to such Subscriber had such ad been made for a tax year beginning prior to January 1, 2018 (and assuming that Vehicle had not made an election to have Section 6221 of the Code as amended by 114-74 apply for such earlier tax years) and -(ii) resulting from or attributal such Subscriber's failure to comply with certain of its covenants contained in Operating Agreement.

## 24. U.S. Foreign Account Tax Compliance Act.

The Subscriber covenants that it:

- (i) will provide any form, certification or other information reasonably reques and acceptable to the Vehicle that is necessary for the Vehicle

  - (A) to prevent withholding or qualify for a reduced rate of withholdi or backup withholding in any jurisdiction from or through which the Vehicle receives payments or
  - (B) to satisfy reporting or other obligations under the Code and the Treasury Regulations;

PLAINTIFF0002175

- (ii) will update or replace such form, certification or other information in accordance with its terms or subsequent amendments; and

- (iii) will otherwise comply with any reporting obligations imposed by the United States or any other jurisdiction, including reporting obligations that may be imposed legislation.

The Subscriber understands and acknowledges that if Subscriber fails to provide any such certification or other information as requested, Subscriber would be subject to a withholding the Administrative Member may take any action in relation to Subscriber's Interest or with proceeds to ensure that such withholding is economically borne by Subscriber.

BY SIGNING THIS AGREEMENT, THE SUBSCRIBER:

- (i) ACKNOWLEDGES THAT ANY MISSTATEMENT MAY RESULT IN A FORCED SALE OF SUBSCRIBER INTERESTS.
- (ii) AGREES THAT IF THE VEHICLE BELIEVES THAT SUBSCRIBER'S REPRESENTATION IN SECTION 2(K) IS NO LONGER CORRECT, THE VEHICLE MAY BE OBLIGATED TO FREEZE SUBSCRIBER'S INVESTMENT, DECLINE TO MAKE DISTRIBUTIONS OR SEGREGATE THE ASSETS CONSTITUTING SUBSCRIBER'S INVESTMENT WITH THE VEHICLE IN ACCORDANCE WITH APPLICABLE LAW.

[Signature page to follow]

# SIGNATURE PAGE TO SUBSCRIPTION AGREEMENT

## INDIVIDUALS

IN WITNESS WHEREOF, the Subscriber hereby executes this Agreement as of the date set forth

| Individual | | |
| --- | --- | --- |
| ------------------------ | --- | ------------------------ |
| Date: | | ------------------------ |
| Subscription Amount: | | $----------------------- |
| Subscriber Name: | | ------------------------ |
| Subscriber Signature: | | ------------------------ |
| ------------------------ | | |

# ACCEPTANCE OF SUBSCRIPTION

(to be filled out only by the Vehicle)

By signing below, the Administrative Member and the Vehicle hereby accept Subscriber's Su Interests in the Vehicle with a Subscription Amount of $-------------- admit t

PLAINTIFF0002176

as a Member of the Vehicle as of the date set forth below in accordance with the terms of Subscription Agreement and the Operating Agreement, and authorize this signature page to

the Subscription Agreement related to the Vehicle. **[Administrative-member-name]**, in its of Administrative Member, and for and on behalf of **[Entity-name]**

| Individual | | |
|---|---|---|
| ------------------------ | --- | ------------------------ |
| Date: | | ------------------------ |
| Signature: | | ------------------------ |
| Name: | | ------------------------ |
| Title: | | ------------------------ |

# LIMITED LIABILITY COMPANY AGREEMENT

After reviewing the Operating Agreement, please execute and return the Operating Agreemen page along with the rest of the Subscriber's Subscription Documents. For your convenience the Operating Agreement signature page is included on the next page of this packet.

# Member Signature Page

The undersigned Member hereby executes the Limited Liability Company Operating Agreement Company, dated as of the Effective Date, and hereby authorizes this signature page to be counterpart of that document executed by the Administrative Member of the Company.

| Member | | |
|---|---|---|
| ------------------------ | --- | ------------------------ |
| Dated: | | ------------------------ |
| Signature of Member or | | |
| Authorized Signatory: | | ------------------------ |
| Name of Member: | | ------------------------ |
| Title: | | ------------------------ |

# Exhibit A

SUBSCRIBER INFORMATION

PLAINTIFF0002177

Instructions for Subscribers: Please provide the information requested and make the repre
applicable to the Subscriber. If the Subscriber cannot provide the requested information

certain representation, it should consult with its attorney on how to complete the Subscr
Documents, including this Exhibit A.

| | Subscriber Information | | |
|---|---|---|---|
| | ------------------------------------------ | --- | -------------- |
| 1. | Full Legal Name of the Subscriber: | | -------------- |
| 2. | Subscription Amount: | | -------------- |
| 3. | U.S. Taxpayer Identification Number or: | | -------------- |
| 4. | Social Security Number: | | -------------- |
| 5. | Country of Citizenship: | | -------------- |
| 6. | Subscriber's Address of Residence: | | -------------- |
| 7. | Address for Delivery and Notices: | | -------------- |
| 8. | Phone Number: | | -------------- |
| 9. | e-mail Address: | | -------------- |
| 10. | Payment of Distributions: | | -------------- |

The Subscriber hereby requests that the Vehicle pay any cash distributions to the followi
digital asset wallet, except as the Subscriber otherwise notifies the Administrative Memb

## Bank Account

| Bank Account | | |
|---|---|---|
| -------------------------------------------------- | --- | -------------- |
| Name of Bank: | | -------------- |
| Name of Banking Officer | | -------------- |
| Address: | | -------------- |
| ABA Number: | | -------------- |
| IBAN Number: | | -------------- |
| SWIFT: | | -------------- |

PLAINTIFF0002178

| | | |
|---|---|---|
| Account Number: | | ------------- |
| Account Name: | | ------------- |
| Bank Account | | |
| Telephone Number of Bank: | | ----- -- |
| Facsimile Number of Bank: | | ------------- |
| Address for Notices/Declarations: | | ------------- |
| Digital Asset Wallet: | | ------------- |
| Name and Address of Wallet: | | ------------- |
| Telephone Number: | | ------------- |
| Associated with Wallet: | | ------------- |

1. Has the Subscriber reviewed the portion of the Operating Agreement outlining the ris making an investment in the Vehicle? Yes ____ No ____

2. Does the Subscriber consent to electronic delivery of disclosures and Schedules K-1? No____

3. Please check the box that best describes the Subscriber's intended ownership:

□ Single Individual (one signatory required) □ Joint Tenants with Right of Survivorship individual must sign) □ Tenants-in-Common (each individual must sign) □ Community Prope signatory required) □ Other: _____

4. Does the Subscriber acknowledge that it may not purchase Interests in the Vehicle us an individual retirement account, individual retirement annuity, employee benefit pl similar arrangement, such as a "Keogh" plan?

Yes ____ No____

If the Subscriber responded "No " above, its ability to invest in the Vehicle may be limi

5. Does the Subscriber make its own investment decisions?

Yes ____ No____

6. If the Subscriber responded "No", please provide the name of the Person who makes in decisions on behalf of the Subscriber:

# Exhibit B

ACCREDITED INVESTOR STATUS

The Subscriber represents and warrants that ate of the following representations

PLAINTIFF0002179

The Subscriber makes one or more of the following representations regarding the Subscriber ... an "Accredited Investor" (within the meaning of Rule 501 of Regulation D under the Securi...

1933, (the "Securities Act") as amended by Section 412 of the Dodd-Frank Wall Street Refo... Consumer Protection Act of 2010), and has checked the applicable representations.

☐ 1. The Subscriber is a natural person with a net worth, either individually or ... a with the Subscriber's spouse or spousal equivalent, of at least $1,000,000.

☐ 2. The Subscriber is a natural person with individual income (without including any in... Subscriber's spouse or spousal equivalent) in excess of $200,000, or a joint income with ... Subscriber's spouse or spousal equivalent in excess of $300,000, in each of the two most ... and has a reasonable expectation of reaching the same income level in the current year.

☐ 3. The Subscriber is a natural person holding in good standing one or more of the foll... professional certifications or designations or other credentials: (a) Licensed General Se... Representative (Series 7); (b) Licensed Private Securities Offerings Representative (Seri... Licensed Investment Adviser Representative (Series 65); or (d) any other professional cer... designation or other credential from an accredited educational institution that the SEC h... as of the date hereof, as qualifying an individual for accredited investor status.

☐ 4. The Subscriber has reviewed, either independently or with the assistance of counsel... understands the representations set forth in Items 1 through 13 above.

☐ 5. The Subscriber cannot make any of the representations set forth in Items 1 through ...

# Exhibit C

USA PATRIOT ACT COMPLIANCE

1. Name of the bank from which the Subscriber's payment to the Vehicle is being wired (... Bank"):
2. Is the Wiring Bank located in the United States or another "FATF Country" ? ☐ Yes ☐...
3. If the Subscriber answered "Yes," is the Subscriber a customer of the Wiring Bank? ...

If the Subscriber answered "No" to questions 2 or 3 above, the Subscriber may be require... Subscriber is an individual, to produce a copy of a passport or identification card, toge... evidence of the Subscriber's address, such as a utility bill or bank statement, and date ...

Previous
Investment Club Additional Information

Opera...

PLAINTIFF0002180

 **LEGAL—TOOLS** DAOLABS

Connect Wallet



# Variables

LLC's name

Acme LLC

Agreement Effective Date

01/01/2023

Adminstrative Member's Full Name

Mr. John Doe

Arbitration Location

Kalamazoo, Michigan

Designated Smart Contract Address

0x0000000000000000000000000000000000000000

LLC's Purpose

To provide explosives to Wile E. Coyote.

Authorized Member's name

Mr. John Doe

Member's name

Ms. Jane Doe

Update document

LIMITED LIABILITY COMPANY
AGREEMENT [Entity-name]

LIMITED LIABILITY COMPANY
AGREEMENT [Entity-name]

ARTICLE I

DEFINITIONS

ARTICLE II

PLAINTIFF0002181



ORGANIZATIONAL MATTERS

ARTICLE III

MEMBERSHIP CAPITAL; CAPITAL
ACCOUNTS

ARTICLE IV

MEMBERS

ARTICLE V

MANAGEMENT AND CONTROL OF
THE COMPANY

ARTICLE VI

ALLOCATIONS OF NET INCOME
AND NET LOSS

ARTICLE VII

DISTRIBUTIONS

ARTICLE VIII

TRANSFERS

ARTICLE IX

RECORDS, REPORTS AND TAXES

ARTICLE X

DISSOLUTION AND LIQUIDATION

ARTICLE XI

ARTICLE XII

REPRESENTATIONS, WARRANTIES
AND COVENANTS

ARTICLE XIII

POWER OF ATTORNEY

ARTICLE XIV

MISCELLANEOUS

Member Signature Page

Exhibit A

Exhibit B

Exhibit C




PLAINTIFF0002182

# LIMITED LIABILITY COMPANY AGREEMENT [Entity-name]

Note: Original arbitration location was San Francisco

Note: Series-capital-contribution-requirements and Series-distribution-policies atic

NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE REGULATORY AUTHORITY HAS APPROVED OR DISAPPROVED THIS LIMITED LIABILITY COMPANY AGREEMENT (THIS "AGREEMENT") OR THE LIMITED LIABILITY COMPANY INTERESTS (THE "INTERESTS") OR THE MERITS OF ACQUIRING INTERESTS PROVIDED FOR HEREIN OR THE MERITS OF ACQUIRING INTERESTS. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE NOT INTENDED TO BE SECURITIES UNDER THE SECURITIES ACT OR UNDER ANY STATE SECURITIES LAWS. TO THE EXTENT THE INTERESTS ARE DEEMED TO BE SECURITIES UNDER THE SECURITIES ACT, THEY ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND THOSE STATES. ANY TRANSFER OR RESALE OF THE INTERESTS IS FURTHER SUBJECT TO RESTRICTIONS, THE TERMS AND CONDITIONS OF WHICH ARE SET FORTH IN THIS AGREEMENT.

Note to User: You acknowledge and agree that the making available of this document to you by DAOLABS shall not create any confidential or special relationship between you and DAOLABS or its affiliates (collectively, "DAOLABS") and does not constitute the provision of legal advice or other professional advice by DAOLABS or its legal counsel. You should seek advice from an attorney licensed in the relevant jurisdiction(s), as well as a tax professional, before relying on this template document.

Additionally, the information provided in this document, any subscription agreement or otherwise by DAOLABS does not constitute tax advice. Any discussion of tax matters is not intended or written to be used, and cannot be used or relied on, for the purpose of tax planning or avoiding penalties under the Internal Revenue Code (or equivalent in the relevant jurisdiction) or promoting, marketing or recommending to another party any transaction or matter.

You further agree and acknowledge that this document, any subscription agreement or any other document otherwise provided by DAOLABS has not been prepared with your specific circumstances in mind, may not be suitable for use in your personal circumstances. Any reliance on this document, any subscription agreement or anything otherwise provided by DAOLABS or any information contained therein is at your sole risk and you assume all losses and liability that may result.

Review all documents carefully for accuracy before using them. There may be [BRACKETED TEXT] requiring your attention.

THIS TEMPLATE IS FOR USE ONLY BY AN INVESTMENT CLUB WITH INDIVIDUALS AND NOT ENTITIES AS MEMBERS .

SYNDICATE PROVIDES THESE TERMS ON AN "AS IS" BASIS, AND SPECIFICALLY

PLAINTIFF0002183

SYNDICATE PROVIDES THESE TERMS ON AN "AS IS" BASIS, AND SPECIFICALLY DISCLAIMS ALL WARRANTIES, TERMS, REPRESENTATIONS AND CONDITIONS WHETHER EXPRESS, IMPLIED, OR STATUTORY, AND INCLUDING ANY WARRANTIES, TERMS, REPRESENTATIONS AND CONDITIONS OF

MERCHANTABILITY, SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, OR NONINFRINGEMENT.

# LIMITED LIABILITY COMPANY AGREEMENT [Entity-name]

This limited liability company agreement is made as of **[Date]** (the "Effective Date") by and among the Members identified on the signature pages hereto and those Persons who have or may become parties to this Agreement in the future, in accordance with the terms of this Agreement (collectively the "Parties") of the Company. In consideration of the mutual covenants in this Agreement the Parties agree as follows:

# ARTICLE I

## DEFINITIONS

Definitions. When used in this Agreement, the following terms have the meanings specified in this Article I:

**"Account Address"** means a public key address on the Designated Blockchain Network that is uniquely associated with a single private key, and at which no smart contract has been deployed.

**"Act"** means the Delaware Limited Liability Company Act, Section 18-101, et seq., as it may be amended from time to time and any successor to said law.

**"Additional Capital Contributions"** has the meaning set forth in Section 4.5(d).

**"Administrative Member"** means **[Administrative-member-name]** or such other Person as may be appointed as a replacement Administrative Member pursuant to Section 5.1(b). For the avoidance of doubt, the Administrative Member is a Member of the Company.

**"Advance"** has the meaning set forth in Section 4.5(c).

**"Affiliate"** of another Person means (a) a Person directly or indirectly (through one or more intermediaries) controlling, controlled by or under common control with that other Person; (b) a Person owning or controlling 10% or more of the outstanding voting securities or beneficial interests of that other Person; or (c) an officer, Administrative Member, director, partner or member of that other Person. For purposes of this Agreement, "control" of a Person means the possession, directly or indirectly, of the power to direct the management and policies of that Person, whether through the ownership of voting securities, by contract or otherwise. For the avoidance of doubt, no Member will be deemed, solely by virtue of that membership, to be an Affiliate of the Company.

**"Agreement"** means this limited liability company agreement of the Company, as

PLAINTIFF0002184

amended from time to time.



**"Arbitration Location"** means [Arbitration-location] .

**"Attorney"** has the meaning specified in Section 13.1.

**"Business Day"** means any day other than Saturday, Sunday, any day which is a fede legal holiday in the United States or any other day on which commercial banks in York, New York are authorized or required by law to remain closed.

**"Capital Account"** of a Member means the capital account of the Member determined in accordance with Section 3.4 in this Agreement.

**"Capital Call"** has the meaning set forth in Section 4.5(d).

**"Capital Contribution"** of a Member means the total amount of cash and other assets contributed (or deemed contributed under Section 1.7041(b)(2)(iv)(d) of the Treasury Regulations) to the Company or the applicable Series by that Member, net of liabilities assumed or to which the assets are subject.

**"Certificate of Formation"** means the Certificate of Formation of the Company, as amended and restated from time to time, filed with the Office of the Secretary of State of the State of Delaware pursuant to the Act.

**"Claim"** means any past, present or future dispute, claim, controversy, demand, right, obligation, liability, action or cause of action of any kind or nature.

**"Closing"** means the date a Member is admitted to the Company as a Member or the Commitment of a Member is increased (as agreed to by such Member and the Administrative Member).

**"Closing Date"** means the date of a Closing as determined by the Administrative Member.

**"Closing Conditions"** means the conditions of the Closing, as determined by the Administrative Member.

**"Code"** means the Internal Revenue Code of 1986, as amended, from time to time.

**"Commitment"** has the meaning set forth in Section 3.1.

**"Company"** means [Entity-name] .

**"Company Minimum Gain"** means the "partnership minimum gain" of the Company or the applicable Series computed in accordance with the principles of Sections 1.7042(b)(2) and 1.704-2(d) of the Treasury Regulations.

**"Confirmation"** of a transaction shall be deemed to have occurred if and only if such transaction has been recorded in accordance with the Consensus Rules in a valid block whose hashed header is referenced by at least ten subsequent valid blocks on the Designated Blockchain.

**"Consensus Attack"** means an attack that: (a) is undertaken by or on behalf of

block producer who controls, or group of cooperating block producers who collectively control, a preponderance of the means of block production on the Designated Blockchain Network; and (b) has the actual or intended effect of:



- (i) reversing any transaction made to or by the Designated Smart Contract after Confirmation of such transaction, including any "double spend" attack having or intended to have such effect; or
- (ii) preventing inclusion in blocks or Confirmation of any transaction made to or by the Designated Smart Contract, including any "censorship attack,"

**"transaction withholding attack"** or "block withholding attack" having or intended to have such effect.

**"Consensus Rules"** means the rules for transaction validity, block validity and determination of the canonical blockchain that are embodied in the Designated Client.

**"Consent"** means the approval of a Person to do the act or thing for which the approval is solicited, or the act of granting the approval, as the context may require.

**"Contract"** means any: (a) written, oral, implied by course of performance or otherwise or other agreement, contract, understanding, arrangement, settlement, instrument, warranty, license, insurance policy, benefit plan or legally binding commitment or undertaking; or (b) any representation, statement, promise, commitment, undertaking, right or obligation that may be enforceable, or become subject to an Order directing performance thereof, based on equitable principles or doctrines such as estoppel, reliance, or quasi-contract.

**"Contributing Member"** has the meaning set forth in Section 4.5(e).

**"Covered Losses"** has the meaning set forth in Section 11.3.

**"Covered Person"** means the Administrative Member, the Partnership Representative, the Liquidating Trustee, any officer of the Company, and their respective Affiliates.

**"DAOLABS"** means DAOLABS, LLC and DAOLABS, Corporation.

**"Deadline"** has the meaning set forth in Section 4.5(d).

**"Designated Blockchain"** means at any given time, the version of the digital blockchain ledger commonly known as "Ethereum" that at least a majority of nodes running the Designated Client recognize as canonical as of such time. For the avoidance of doubt, the "Designated Blockchain" does not refer to the digital blockchain ledger commonly known as "Ethereum Classic" or any other blockchain ledgers from which or to which the Designated Blockchain has been "forked" or "split".

**"Designated Blockchain Network"** means the Ethereum mainnet (networkID:1, chainID:1)

PLAINTIFF0002186

as recognized by the Designated Client.

**"Designated Client"** means the Official Go Ethereum client available at https://github.com/ethereum/go-ethereum.

**"Designated Smart Contract"** means the smart contract deployed at address **[Contract address]** on the Designated Blockchain. 

**"Digital Assets"** means tokens, cryptocurrencies, and other digital assets the record of which is primarily stored in a distributed ledger system utilizing cryptographic verification.

**"Disability"** of an individual means the incapacity of the individual to engage in any substantial gainful activity with the Company by reason of any medically determinable physical or mental impairment that reasonably can be expected to last for a continuous period of not less than 12 months as determined by a competent physician chosen by the Company and Consented to by the individual or his legal representative, which Consent will not be unreasonably withheld, conditioned or delayed.

**"Distributable Cash"** at any time means that amount of the cash then on hand or in bank accounts of the Company or the applicable Series which the Administrative Member determines is legally available for Distribution, taking into account (a) the amount of cash required for the payment of all current expenses, liabilities and obligations of the Company or the applicable Series and (b) the amount of cash which the Administrative Member deems necessary or appropriate to establish reserves for the payment of future expenses, liabilities, or obligations, including liabilities which may be incurred in litigation and liabilities undertaken pursuant to the indemnification provisions of this Agreement. "Distributed Subject Property" means any asset, right or property that was once Subject Property and has been distributed to a Member.

**"Distribution"** means the transfer of money or property by the Company or the applicable Series to one or more Members with respect to their Interests, without separate consideration.

**"Distribution Expenses"** has the meaning set forth in Section 7.1(c).

**"Effective Date"** has the meaning set forth in the initial paragraph of this Agreement.

**"ERISA"** has the meaning set forth in Section 8.4(d).

**"Exception Handling Addendum"** has the meaning set forth in Section 2.12(b)(3)(A).

**"Exception Handling Proposal"** has the meaning set forth in Section 2.12(b)(1)(C).

**"Exception Notice"** has the meaning set forth in Section 2.12(b)(1).

**"Exception Objection Notice"** has the meaning set forth in Section 2.12(b)(3)(C).

PLAINTIFF0002187

**"Fair Market Value"** of any property means, subject to Section 3.4(b), the amount that would be paid for that property in cash by a hypothetical willing buyer to a

hypothetical willing seller, each having knowledge of all relevant facts and neither being under a compulsion to buy or sell, as determined by the Administrative Member in good faith; provided, however, the Fair Market Value of any Digital Asset shall be the price in US Dollars per token of the relevant Digital Asset as set forth at 5:00 pm Pacific Time on the day immediately preceding the applicable valuation date on coinmarketcap.com (or, if not valued on coinmarketcap.com, such other publicly available third party valuation website as the Administrative Member may reasonably select), if such price is available.

**"Family Members"** means an individual who is a Member's spouse, child, stepchild, son-in-law, daughter-in-law, father, or mother, including adoptive relationships.

**"Fiscal Year"** means the Company's or the applicable Series' taxable year, which will be the taxable year ended December 31, or other taxable year as may be selected by the Administrative Member in accordance with applicable law.

**"Initial Closing"** means the first Closing.

**"Initial Closing Date"** means the date selected by the Administrative Member for the Initial Closing.

**"Interest"** means with respect to each Member, as of any date, its fractional ownership of the membership interest in the Company or the applicable Series which is expressed as a percentage, the numerator of which is that Member's then Capital Contributions and the denominator of which is the sum of the then Capital Contributions of all Members to the Company or the applicable Series. A Member's Interest represents the totality of the Member's interests in the Company or the applicable Series and the right of that Member to all benefits (including, without limitation, allocations of Net Income and Net Losses and the receipt of Distributions) to which a Member may be entitled pursuant to this Agreement and under the Act, together with all obligations of that Member to comply with the terms and provisions of this Agreement and the Act. If one or more Series are established pursuant to Section 2.13, the combined Interests of all Members of each Series shall at all times equal 100%. If no Series are established, the combined Interests of all Members of the Company shall at all times equal 100%.

**"Interest Register"** has the meaning specified in Section 2.8.

**"Investment"** means an investment by the Company or the applicable Series in a Digital Asset or a Portfolio Company Security.

**"Legal Order"** means any restraining order, preliminary or permanent injunction, stay or other order, writ, injunction, judgment or decree that either: (a) is issued by a court of competent jurisdiction, or (b) arises by operation of applicable law as if issued by a court of competent jurisdiction, including, in the case of clause "(b)" an automatic stay imposed by applicable law upon the filing of a petition for bankruptcy.

**PLAINTIFF0002188**

**"Liquidating Trustee"** means the Administrative Member (or its authorized designee) or, if there is none, a Person selected by a Majority in Interest to act as a

liquidating trustee of the Company or the applicable Series.

**"Liquidity Event Proceeds"** means (a) the receipt by the Company or the applicable Series of a material amount of cash, or non-cash assets that may readily be transferred or liquidated for cash, as set forth in Section 7.1, in respect of an Investment as a result of (i) the sale or other liquidation of such Investment; (ii) a Merger Event or a sale of all or substantially all of the assets, of a Portfolio Company; (iii) the bankruptcy, liquidation or dissolution of a Portfolio Company or (b) in the case of a Portfolio Security, the determination by the Administrative Member that such Portfolio Security is then freely or readily transferable by the holder thereof without restriction under applicable law and the documents governing the terms of such Portfolio Security or the Company's investment therein.

**"Majority in Interest"** means, at any time, a majority of the total Interests held by all Members in the Company or the applicable Series. Except as otherwise expressly required under this Agreement, whenever in this Agreement the Members are permitted or required to vote on, approve, make a determination as to, or consent to any matter or proposed action, such vote, approval, determination or consent shall only require a Majority in Interest.

**"Material Adverse Exception Event"** means that one or more of the following has occurred, is occurring or would reasonably be expected to occur:

- (a) a Consensus Attack adversely affecting the results or operations of the Designated Smart Contract;
- (b) the Designated Smart Contract having become inoperable, inaccessible or unusable, including as the result of any code library or repository incorporated by reference into the Designated Smart Contract or any other smart contract or oracle on which the Designated Smart Contract depends having become inoperable, inaccessible or unusable or having itself suffered a Material Adverse Exception Event, mutatis mutandis;
- (c) a material and adverse effect on the use, functionality or performance of the Designated Smart Contract as the result of any bug, defect or error in the Designated Smart Contract or the triggering, use or exploitation (whether intentional or unintentional) thereof (it being understood that for purposes of this clause "(iii)", a bug, defect or error will be deemed material only if it results in a loss to a Party of at least 20 percent of the Subject Property);
- (d) any unauthorized use of an administrative function or privilege of the Designated Smart Contract, including:

  - (i) any use of any administrative credential, key, password, account or address by a Person who has misappropriated or gained unauthorized access to such administrative credential, key, password, account

PLAINTIFF0002189

       address or

- ○ (ii) any unauthorized use of an administrative function or privilege by a Party or a representative of a Party; or



- (e) the Designated Smart Contract, the Company or the applicable Series or the Subject Property is subject to a Legal Order that prohibits the Designated Smart Contract (or that, if the Designated Smart Contract were a Person, would prohibit the Designated Smart Contract) from executing any function or operation it would otherwise reasonably be expected to execute.

**"Member"** means any Person admitted as a Member pursuant to Section 4.1 that has not ceased to be a Member pursuant to this Agreement or the Act.

**"Member Minimum Gain"** means the "partner nonrecourse debt minimum gain" of the Company or the applicable Series computed in accordance with the principles of Section 1.7042(i)(3) of the Treasury Regulations.

**"Member Nonrecourse Deductions"** means the "partner nonrecourse deductions" of the Company or the applicable Series computed in accordance with the principles of Sections 1.704-2(i)(1) and (2) of the Treasury Regulations.

**"Merger Event"** means a Portfolio Company has merged or consolidated with or into any other entity, and after giving effect to that transaction, the equity owners of a Portfolio Company immediately prior to that transaction ceased to own at least a majority of the equity interest of the surviving or resulting entity.

**"Negotiation Period"** has the meaning set forth in Section 2.12(b)(3)(D).

**"Net Fair Market Value"** of an asset means its Fair Market Value net of any liability secured by the asset that the Member or the Company or the applicable Series, as applicable, assumes or takes subject to.

**"Non-Contributing Member"** has the meaning set forth in Section 4.5(e).

**"Nonrecourse Deductions"** means the "nonrecourse deductions" of the Company or the applicable Series computed in accordance with Section 1.704-2(b) of the Treasury Regulations.

**"Net Income"** and "Net Loss" means, for each Fiscal Year, the taxable income and taxable loss, as the case may be, of the Company or the applicable Series for that Fiscal Year determined in accordance with federal income tax principles, including items required to be separately stated, taking into account income that is exempt from federal income taxation, items that are neither deductible nor chargeable to a capital account and rules governing depreciation and amortization, except that in computing taxable income or taxable loss, the "tax book" value of an asset will be substituted for its adjusted tax basis if the two differ, and any gain, income, deductions or losses specially allocated under Article VI will be excluded from the computation. Any adjustment to the "tax" book value of an asset pursuant to Section 1.704-1(b)(2)(iv)(e), (f) and (g) of the Treasury Regulations will be treated as Net Income or Net Loss from the sale of that asset.

PLAINTIFF0002190

Income or Net Loss from the sale of that asset.

**"Partnership Representative"** means the Person designated pursuant to Section 9.4.

**"Permitted Transferee"** has the meaning set forth in Section 8.2.



**"Person"** means any human, robot, bot, artificial intelligence, corporation, partnership, association or other individual or entity recognized as having the status of a person under the law.

**"Portfolio Company"** means the issuer of a Portfolio Company Security.

**"Portfolio Company Securities"** means debt or equity securities acquired by the Company or the applicable Series in accordance with this Agreement.

**"Proceeding"** has the meaning set forth in Section 11.3.

**"Receiving Party"** has the meaning set forth in Section 2.12(b)(1).

**"Registered Agent"** means the registered agent appointed by the Company as the Company's registered agent for the service of process on the Company in the State of Delaware.

**"Sending Party"** has the meaning set forth in Section 2.12(b)(1).

**"Series"** means one or more separate series of Interests established by the Administrative Member pursuant to this Section 2.13, each of which shall be separate and distinct from any other Series and may be a "protected series" or a "registered series" for purposes of the Act. To the extent any Series are established, the provisions of this Agreement relating to Series shall apply. If no Series are established, then the provisions of this Agreement relating to Series shall not apply.

**"Shortfall Amount"** has the meaning set forth in Section 4.5(e).

**"Standstill Period"** has the meaning set forth in Section 2.12(b)(2).

**"Subject Property"** means the property of the Company that is the subject of the Designated Smart Contract.

**"Subscription Agreement"** means a Subscription Agreement in the form of Exhibit A or such other form as is determined by the Administrative Member to be acceptable.

**"Transfer"** means, with respect to an Interest, the sale, assignment, transfer, other disposition, pledge, hypothecation or other encumbrance, whether direct or indirect, voluntary, involuntary or by operation of law, and whether or not for value, of that Interest. Transfer includes any transfer by gift, devise, intestate succession, sale, operation of law, upon the termination of a trust, because of or in connection with any property settlement or judgment incident to a divorce, dissolution of marriage or separation, by decree of distribution or other court order or otherwise.

**"Treasury Regulations"** means the income tax regulations, including temporary regulations, promulgated by the United States Treasury Department under

PLAINTIFF0002191

regulations, promulgated by the United States Treasury Department under the code, as such regulations may be amended from time to time (including corresponding provisions of superseding regulations).

**"40 Act"** has the meaning set forth in Section 8.4(c).

# ARTICLE II



## ORGANIZATIONAL MATTERS

**II.1 Name.** The name of the Company is set forth on the cover page of this Agreement. The business of the Company may be conducted under that name or under any other name that the Members may determine.

**II.2 Term.** The Parties hereto as of the Effective Date, by execution of this Agreement and the filing of the Certificate of Formation, hereby form the Company as a limited liability company under and pursuant to the Act as of the Effective Date. The term of the Company commenced on the Effective Date and will continue in full force and effect until the Company is terminated pursuant to Article X.

**II.3 Member Information.** Each Member may be required by the Company, at any time, to provide basic Know Your Customer (KYC) information, such as copy of national ID, name, proof of address, Form W-9, among others, in the event where: (a) the Company desires to obtain a bank account, (b) the Company is legally required to provide such information, or (c) any Series will be formed or become a "registered series" (as defined in the Act) in the State of Delaware.

**II.4 Office and Agent.** The Company will maintain its principal office at a place as the Administrative Member may determine from time to time. The Administrative Member will notify the Members of any change in principal office of the Company. The Registered Agent and the address of the registered office of the Company in the State of Delaware as of the Effective Date is set forth in the Certificate of Formation. The Administrative Member may change the identity of the Registered Agent and the Company's registered office in accordance with the Act. The Administrative Member will notify the Members of any change in the identity of the Registered Agent or the location of the Company's registered office in the State of Delaware.

**II.5 Purpose of the Company.** The Company has been created to [Entity-purpose] and the purpose of the Company shall be to engage in the foregoing and in any and all lawful activities and transactions as may be necessary, advisable, or desirable, as determined by the Administrative Member, in its sole discretion, to carry out the foregoing or any reasonably related activities.

**II.6 Intent.** It is the intent of the Members that the Company will be treated as a "partnership" for federal income tax purposes. It also is the intent of the Members that the Company not be operated or treated as a "partnership" for purposes of Section 303 of the United States Bankruptcy Code.

**II.7 Qualification.** The Administrative Member shall cause the Company to qualify to do business in each jurisdiction where qualification is required. The Administrative Member has the power and authority to execute, file and publish all c...

PLAINTIFF0002192

Member has the power and authority to execute, file and publish all certificates, notices, statements or other instruments necessary to permit the Company to conduct

business as a limited liability company in all jurisdictions where the Company elects to do business.

**II.8 Interest Register.** The Administrative Member will maintain a register (the ("Interest Register") that sets forth the name, contact information, Commitment, Capital Contributions and Interest of each Member. The Interest Register will be available to each Member at request of such Member. Each Member shall promptly provide, upon request, the Administrative Member with the information required to be set forth for that Member on the Interest Register and shall promptly notify the Administrative Member of any change to that information. The Administrative Member, or a designee of the Administrative Member, shall update the Interest Register from time to time as necessary to accurately reflect the information therein as known by the Administrative Member, including, without limitation, admission of new Members, but no update will constitute an amendment for purposes of Section 14.1. Any reference in this Agreement to the Interest Register will be deemed to be a reference to the Interest Register as amended and in effect from time to time.

**II.9 Maintenance of Separate Existence.** The Company will do all things necessary to maintain its limited liability company existence separate and apart from the existence of each Member, any Affiliate of a Member and any Affiliate of the Company, including maintaining the Company's books and records on a current basis separate from that of any Affiliate of the Company or any other Person. In furtherance of the foregoing, the Company must (a) maintain or cause to be maintained by an agent under the Company's control physical possession of all its books and records (including, as applicable, storage of electronic records online or in "cloud" services), (b) account for and manage all of its liabilities separately from those of any other Person, and (c) identify separately all its assets from those of any other Person.

**II.10 Title to Assets.** All assets of the Company will be deemed to be owned by the Company as an entity, and no Member, individually, will have any direct ownership interest in those assets. Each Member, to the extent permitted by applicable law, hereby irrevocably waives its rights to a partition of the assets of the Company and, to that end, agrees that it will not seek or be entitled to a partition of any assets, whether by way of physical partition, judicial sale or otherwise.

**II.11 Events Affecting a Member.** The death, bankruptcy, withdrawal, insanity, incompetency, temporary or permanent incapacity, liquidation, dissolution, reorganization, merger, sale of all or substantially all the stock or assets of, or other change in the ownership or nature of a Member will not dissolve the Company and, upon the happening of any such event, the affairs of the Company will be continued without dissolution by the remaining Members or any successor entities thereto.

**II.12 Effects of Designated Smart Contract.**

- (a) General Binding Effect.

PLAINTIFF0002193

- (1) Smart Contract Results Binding. Subject to Section 2.12(b) the results of operation of the Designated Smart Contract shall be determinative of the rights and obligations of, and shall be final, binding upon and non-appealable by, each of the Parties with respect to the Subject Property.
- (2) Smart Contract Trumps Other Contracts. Except as set forth in Section 2.12(b), if there is any conflict or inconsistency between: (A) this Agreement or any other Contract between or involving the Parties; and (B) any Contract created or implied by, or embodied in, the machine, assembly or other code, or the results of operation, of the Designated Smart Contract, then the Contract referred to in the preceding clause "(B)" shall prevail over the Contract referred to in the preceding clause "(A)."
- (3) Prohibition of Transfers. Each Party shall not, without the prior written consent of all of the other Parties, directly or indirectly take or attempt to take any of the following actions:

    - (A) convey any of the Subject Property other than such Party's Distributed Subject Property it being understood that for a Party to "convey" any of the Subject Property means for such Party to or enter into any Contract that may obligate such Party to: (1) create, perfect or enforce any lien on, (2) pledge, hypothecate, grant an option or derivative security with respect to or (3) convey, sell, transfer or dispose of such Subject Property or any right or interest of a Party to or in such Subject Property; or
    - (B) cause, encourage or facilitate, a Material Adverse Exception Event.

- (b) Exception Handling. Notwithstanding anything to the contrary set forth in Section 2.12(a), if there is a Material Adverse Exception Event, then the rules and procedures set forth in this Section 2.12(b) shall determine the rights and obligations of the Parties relating to the Subject Property.

    - (1) Exception Notice. If any Party becomes aware that there is a Material Adverse Exception Event, such Party (the "Sending Party") shall deliver to the other Parties (the "Receiving Parties") a notice (an "Exception Notice") signed by such Party:

PLAINTIFF0002194



- (A) certifying that the Sending Party believes in good faith that there is a Material Adverse Exception Event;
- (B) describing in reasonable detail the events, facts, circumstances and reasons forming the basis of such belief;
- (C) describing in reasonable detail any proposal by the Sending Party of the actions to be taken, the agreements to be entered into, and the remedies to be sought by the Parties in response to the Material Adverse Exception Event (an "Exception Handling Proposal");
- (D) including copies of any written evidence or other material written information, and summaries of any other evidence, relevant to, and material for the consideration of, the Material Adverse Exception Event and the other matters referred to in the Exception Notice; and
- (E) containing a representation by the Sending Party, made to and for the benefit of the Receiving Parties with the understanding that the Receiving Party will rely thereon, that, to the Sending Party's knowledge, the certification and statements made pursuant to the preceding clauses "(A)" and "(B)" are accurate as of the date of the Exception Notice, and, considered collectively, do not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make such statements, in light of the circumstances in which they were made, not misleading.

- (2) Exception Standstill. During the period commencing upon the earlier of any Party becoming aware that there is a Material Adverse Exception Event or being delivered an Exception Notice and ending with the Parties entering into an Exception Handling Addendum, agreeing that no Material Adverse Exception Event has occurred or receiving a final decision of an arbitrator in accordance with Section 2.12(b)(3) (the "Standstill Period"). such Party shall: (A) treat a

PLAINTIFF0002195



of the Distributed Subject Property of such Party that may have been transferred to such Party as a result of the Material Adverse Exception Event as if it were Subject Property; and (B) deposit and maintain such Distributed Subject Property in a segregated Account Address to be treated, to the extent permitted by applicable legal requirements, as a custodial trust held for the benefit of the other Parties.

- (3) Determination of Exception Handling.

    - (A) The term "Exception Handling Addendum" refers to an addendum to this Agreement approved by a Majority in Interest which sets forth a description of the Material Adverse Exception Event and the actions to be taken, the agreements to be entered into, and the remedies to be sought in response thereto. Each Exception Handling Addendum shall automatically and without further action of the Parties be deemed incorporated into and to form a part of this Agreement.
    - (B) Notwithstanding Section 2.14(b)(3) (A), if the Sending Party has provided an Exception Handling Proposal, and no Receiving Party disputes the existence of the Material Adverse Exception Event described in the Exception Notice or objects to the terms of the Exception Handling Proposal included in the Exception Notice within 3 Business Days after delivery of the Exception Notice, then the Exception Handling Proposal shall be deemed to have been approved by all Parties as the Exception Handling Addendum.
    - (C) If a Receiving Party disputes the existence of a Material Adverse Exception Event, or does not wish to accept all or any part of the Exception Handling Proposal included in the Exception Notice, if any, then the Receiving Party shall promptly (but in any event within 3 Business Days of delivery of the Exception Notice) deliver a written notice of such non-acceptance (an "Exception Objection Notice") to the Sending Party and each

PLAINTIFF0002196



other Receiving Party. The Exception Objection Notice shall include the same categories of information, statements, evidence and representations and warranties as would be required for an Exception Notice, mutatis mutandis, and the basis for the objection to the Exception Handling Proposal.

- (D) If any Receiving Party delivers a timely Exception Objection Notice, then during the continuous 30-day period beginning on the date such Exception Notice is delivered to the other Parties (the "Negotiation Period"), the Parties shall use commercially reasonable efforts to negotiate in good faith to agree upon the existence or non-existence of a Material Adverse Exception Event and the Exception Handling Addendum to be approved in response to such Material Adverse Exception Event.
- (E) If the Parties fail to reach an agreement resulting in an Exception Handling Addendum during the Negotiation Period (or a determination that no Material Adverse Exception Event has occurred), then any Party may initiate an arbitration action to resolve the issues in accordance with the procedures set forth in Section 14.7; provided the decision of the arbitrators shall include, among any other determinations, a determination of the treatment of any Distributed Subject Property and whether to extend, modify or terminate the covenants applying to the Distributed Subject Property during the Standstill Period.

## II.13 Establishment of Series.

The Members, acting by a Majority in Interest, shall have full power and authority to approve the establishment of one or more Series (as defined below), and upon such approval, the Administrative Member shall establish such Series pursuant to the provisions of this Section 2.3 through the adoption of a Series Addendum (as defined below) and, if such Series shall be a "registered series" (within the meaning of the Act), the execution and filing of a Certificate of Registered Series with the Office of the Secretary of State of Delaware in the form attached hereto as Exhibit C

PLAINTIFF0002197

hereto, whereupon such Series shall be established. The Interests in each Series are
and shall be separate and distinct from the Interests in any other Series. In
connection with the establishment of a Series hereunder, the Administrative Member

may, in its sole discretion and without obtaining the consent, vote or other
approval of the other Members:

- (i) issue Interests without limitation as to number to such persons or entit
  and for such amount and type of consideration, including cash or securities, at
  such time or times and on such terms as the Administrative Member may deem
  appropriate and in connection therewith to admit such persons or entities as
  Members associated with such Series,
- (ii) establish, designate and fix such preferences, voting powers, rights,
  duties and privileges and business purpose of each Series as the Administrative
  Member may from time to time determine, which preferences, voting powers,
  rights, duties and privileges may be senior or subordinate to (or in the case
  of business purpose, different from) any existing Series and may be limited to
  specified property or obligations of the Company or profits and losses
  associated with specified property or obligations of the Company,
- (iii) divide or combine the Interests of any Series into a greater or lesser
  number without thereby materially changing the proportionate beneficial
  interest of the Interests of such Series in the assets held with respect to
  that Series and
- (iv) combine the assets and liabilities belonging to any two or more Series
  into assets and liabilities belonging to a single Series. The relative
  preferences, voting powers, rights, duties and privileges and business purpose
  of any Series established by the Administrative Member will be as set forth in
  an addendum to this Agreement that covers the terms specific to a particular
  Series, each of which shall be a part of this Agreement (each, a "Series
  Addendum") and, to the extent of any inconsistency between the provisions set
  forth herein and in the Series Addendum, the terms of the Series Addendum shall
  control. A form of Series Addendum is attached as Exhibit B hereto. Subject to
  variation by any Series Addendum, Interests of any Series that may from time to
  time be established by the Administrative Member shall (unless the
  Administrative Member otherwise determines at the time of establishing the
  same) have the following relative rights and preferences:

  - (a) Assets Belonging to Series. All consideration received by the
    Company for the issue or sale of Interests of a particular Series,
    together with all assets in which such consideration is invested or
    reinvested, all income, earnings, profits, and proceeds thereof,
    including any proceeds derived from the sale, exchange or liquidation
    of such assets, and any funds or payments derived from any
    reinvestment of such proceeds in whatever form the same may be, shall
    be held for the benefit of the Members who have Interests in that
    Series and shall irrevocably belong to that Series for all purposes,
    subject only to the rights of creditors of such Series and shall be
    so recorded upon the books of account of the Company. Such
    consideration, assets, income, earnings, profits, and proceeds
    thereof, including any proceeds derived from the sale, exchange or

PLAINTIFF0002198



liquidation of such assets, and any funds or payments derived from any reinvestment of such proceeds, in whatever form the same may be, are herein referred to as "assets belonging to" or "assets of" that

Series. In the event that there are any assets, income, earnings, profits and proceeds thereof, funds or payments that are not readily identifiable as assets of any particular Series (collectively "General Assets"), the Administrative Member shall allocate such General Assets to, between or among any one or more of the Series in such manner and on such basis as the Administrative Member, in its sole discretion, deems fair and equitable, and any General Assets so allocated to a particular Series shall be assets belonging to that Series. Each such allocation by the Administrative Member shall be conclusive and binding upon the Members associated with all Series for all purposes. Pursuant to the applicable provisions of the Act, the records maintained for each Series shall account for the assets of Series separately from the assets of all other Series and the General Assets of the Company not allocated to such Series. No Series shall have any right to or interest in the assets belonging to any other Series, and no Member shall have any right or interest with respect to the assets belonging to any Series in which it does not have an Interest. The Administrative Member shall operate the business and manage the assets belonging to each Series in the manner described in this Agreement (including the Series Addendum relating to such Series).

- (b) Liabilities Belonging to Series. The assets belonging to each particular Series shall be charged with the liabilities of that Series and all expenses, costs, charges and reserves attributable to that Series. The debts, liabilities, obligations, expenses, costs, charges and reserves so charged to a Series are herein referred to as "liabilities belonging to" or "liabilities of" that Series. The Administrative Member shall allocate general debts, liabilities, obligations, expenses, costs or charges of the Company that are not readily identifiable with respect to any particular Series ("General Liabilities") among the Series in such manner as may be determined by the Administrative Member, in its sole discretion, to be fair and reasonable.
- (c) Liabilities of Series. In accordance with the applicable provisions of the Act, without limitation of the provisions of paragraph (ii) hereof relating to the allocation of General Liabilities, the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of such Series only, and not against the assets of the Company generally or against any other Series thereof, and, except to the extent provided in paragraph (ii) hereof relating to the allocation of the General Liabilities, none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the Company generally or any other Series shall be enforceable against the assets of such Series. Notice of the foregoing limitation

PLAINTIFF0002199

liabilities of a Series shall be set forth in the Certificate of Formation.

- (d) Voting. On each matter submitted to a vote or permitted or required to be taken by the Members:

    - (1) with respect to any vote, matter or action affecting a Series, each Member who holds an Interest in such Series shall be entitled to a vote proportionate to its Interest in such Series as recorded on the books of the Company with respect to such Series, all Members who hold an Interest in such Series shall vote as a separate class, and the vote or action of a Majority in Interest of the Members associated with such Series shall control; and

    - (2) notwithstanding the foregoing, in the event of a vote, matter or action affecting the Company as a whole (regardless of whether such vote, matter of action also affects one or more Series), each Member shall be entitled to a vote proportionate to the proportion that its Capital Contributions to all Series and the Company bears to the Capital Contributions of all Members to all Series and the Company, all Members shall vote together as a single class, and the vote or action of Members holding a majority of all Capital Contributions to all Series and the Company shall control.

- For the avoidance of doubt, the provisions of this Section 2.3(d) shall apply solely to the extent that one or more Series has been established.
- (e) Application of this Agreement with respect to Series. References to the Company in this Agreement shall be deemed to include references to each Series, as applicable, as determined by the Administrative Member in its sole discretion. This Agreement and all provisions herein will be interpreted in a manner to give full effect to the separateness of each Series. The Administrative Member shall take reasonable steps as are necessary to implement the provisions of this Section.

**II.14 Specific Disclaimer.** The Members agree to the disclaimers set forth here:

The use of an LLC with protected or registered Series is a relatively recent legal advent and is subject to various legal uncertainties regarding its validity and use cases, including, without limitation, uncertainties relating to:

- the non-recognition of such type of legal entity and structure by other U.S. States, such as California, New York and Massachusetts;

- the novelty and lack of established precedent regarding LLCs with Series and

PLAINTIFF 0002200

any liability "spill-over" risks between the Series and the Company;

- the lack of regulatory clarity regarding the taxation of Series of an LLC and an LLC with Series; and

- the lack of legal and regulatory clarity regarding the treatment of Series of an LLC and an LLC with Series in bankruptcy proceedings under federal law;

Notwithstanding anything to the contrary in the Agreement, the Members shall be entitled to dissolve or terminate, as applicable, the Company or any Series at any time, in the event where there is any risk or threatened risk of liability with respect to the existence of Series or the Company in relation to the Company's or any Series' affairs.

# ARTICLE III

## MEMBERSHIP CAPITAL; CAPITAL ACCOUNTS

**III.1 Membership Capital.** Upon each Closing, each participating Member shall make a Capital Contribution in an amount equal to its accepted Subscription Amount as set forth in its Subscription Agreement (its "Commitment") in exchange for an Interest.

**III.2 No Further Capital Contributions.** No Member will be required to make Capital Contributions in the aggregate in excess of that Member's then accepted Commitment or lend money to the Company or the applicable Series.

**III.3 In-Kind Contributions.** In the sole discretion of the Administrative Member, Capital Contributions can be made via non-cash assets, such as Portfolio Company Securities or Digital Assets. Non-cash assets will be valued at their Net Fair Market Value on the date of contribution.

**III.4 Capital Accounts.**

- (a) A separate capital account will be established and maintained for each Member ("Capital Account") reflecting each Member's Interest in the Company or in each Series as applicable.
- (b) The Capital Accounts of Members will be maintained in accordance with the rules of Section 704(b) of the Code and the related Treasury Regulations (including Section 1.704-1(b)(2)(iv)). The Capital Accounts will be adjusted by the Administrative Member upon an event described in Sections 1.704-1(b)(2)(iv)(e) and (f)(5) of the Treasury Regulations in the manner described in Sections 1.704-1(b)(2)(iv)(e), (f) and (g) of the Treasury Regulations if the Administrative Member determines that the adjustments are necessary or appropriate to reflect the relative economic interests of the Members in the Company, and at other times as the Administrative Member may determine is necessary or appropriate to reflect the relative economic interests of the Members. In determining Fair Market

economic interests of the Members in determining fair market value of an asset, the provisions of Section 1.704-1 of the Treasury Regulations shall be applied.



- (c) If any Interest is Transferred pursuant to the terms of this Agreement, the transferee will succeed to the Capital Account and the respective Interest of the transferor to the extent the Capital Account and Interest is attributable to the Interests so Transferred.

**III.5 Interest on Capital.** No Member will be entitled to receive any interest on its Capital Contributions or Capital Account.

**III.6 Return of Capital Contributions.** Except as otherwise provided in this Agreement, no Member has any right to withdraw or reduce its Capital Contribution or Commitment.

**III.7 No Priorities of Members.** Subject to the provisions of this Agreement, no Member will have a priority over any other Member as to any Distribution, whether by way of return of capital or by way of profits, or as to any allocation of Net Income, Net Loss or special allocations.

# ARTICLE IV

## MEMBERS

### IV.1 Admission of Members.

- (a) Except in connection with a Transfer permitted pursuant to Article VIII, only individuals will be admitted to the Company as Members. The individuals who, as of the Initial Closing Date, have supplied the Company with a signed, fully completed Subscription Agreement, which has been accepted by the Administrative Member, together with an executed signature page to this Agreement and any other information that may be required pursuant to Section 12.3 (as determined in good faith by the Administrative Member) shall be admitted as Members effective as of the Initial Closing Date. With the consent of a Majority in Interest or in the case of a Transfer permitted by Article VIII, with the consent of the Administrative Member pursuant to Section 8.3 additional Members may be admitted to the Company and existing Members may increase their Commitments from time to time on such date and upon such terms and conditions, including Closing Conditions, as determined by the Administrative Member; provided no Person shall be admitted as a Member unless and until such Person has supplied the Company with a signed, fully completed Subscription Agreement, which has been accepted by the Administrative Member, together with an executed signature page to this Agreement and any other information that may be required pursuant to Section 12.3 (as determined in good faith by the Administrative Member).
- (b) Notwithstanding Section 4.1(a), the Company will be deemed

PLAINTIFF0002202

"closed", such that no additional Members may be admitted except in connection with a Transfer permitted by Article VIII, or increased Commitments are no longer accepted following the earliest of (i) the date the Administrative Member closes the Company, (ii) the maximum number of Members is reached (as specified by the Administrative Member), and (iii) the set maximum amount of Capital Contributions to the Company is reached (as specified by the Administrative Member ). This can be seen when the closedSyndicate event is emitted for a given Syndicate address within the Syndicate smart contract.

**IV.2 Nature of Ownership.** Interests held by Members constitute personal property.

**IV.3 Dealing with Third Parties.** Unless admitted as a Member as provided in this Agreement, no Person will be considered a Member. The Company and the Administrative Member need deal only with Persons admitted as Members. The Company, the Series, and the Administrative Member will not be required to deal with any other Person (other than with respect to Distributions to assignees pursuant to assignments in compliance with Article VIII) merely because of an assignment or transfer of any Interest to that Person whether by reason of the Disability of a Member or otherwise; provided, however, that any Distribution by the Company or the applicable Series to the Person shown on the Interest Register as a Member or to its legal representatives, or to the assignee of the right to receive such Member's Distributions as provided in this Agreement, will relieve the Company or the applicable Series and the Administrative Member of all liability to any other Person who may be interested in that Distribution by reason of any other assignment by the Member or by reason of its Disability, or for any other reason.

**IV.4 Members are not Agents.** Pursuant to Article V of this Agreement, the management of the Company and each Series is vested in the Members as a group. No Member acting alone has any right to direct the management of the Company or any Series except as expressly authorized by the Act or this Agreement. Except as expressly authorized in this Agreement or in writing by a Majority in Interest, no Member, acting solely in the capacity of a Member, is an agent of the Company or any Series, nor does any Member, have any power or authority to bind or act on behalf of the Company or any Series in any way, to pledge its credit, to execute any instrument on its behalf or to render it liable for any purpose.

**IV.5 Expenses.**

- (a) The Company or the applicable Series shall maintain reserves from the assets of the Company or the applicable Series (including Capital Contributions made by the Members) for the payment of the expenses, liabilities and obligations of the Company or the applicable Series, including for taxes, contingent liabilities or probable losses or foreseeable expenses, in such accounts and in such amounts that the Administrative Member deems necessary or appropriate, subject to increase or reduction at the Administrative Member's sole discretion. All organizational and operating costs and expenses of the Company or the applicable Series will be paid by the Company or the applicable Series (excluding any regulatory expenses, or other costs incurred if the

PLAINTIFF0002203

the Administrative Member in connection with its daily operations, including but not limited to salary and other payments to employees of the Administrative Member).

- (b) The Administrative Member will, to the extent of available funds of the Company or the applicable Series, pay or cause to be paid, all Company operating costs and expenses incurred by the Company or the applicable Series or on its behalf, including (i) out-of-pocket expenses that are associated with disposing of Investments, including transactions not completed; (ii) extraordinary expenses, if any (such as certain valuation expenses, litigation and indemnification payments); (iii) interest on borrowed money, investment banking, financing and brokerage fees and expenses, if any; (iv) expenses associated with the Company or the applicable Series' tax compliance costs, tax returns and Schedules K-1, custodial, legal and insurance expenses, any taxes, fees or other governmental charges levied against the Company or the applicable Series; (v) attorneys' and accountants' fees and disbursements on behalf of the Company or the applicable Series; (vi) insurance, regulatory or litigation expenses (and damages); (vii) expenses incurred in connection with the winding up or liquidation of the Company or the applicable Series; (viii) expenses incurred in connection with any amendments to the constituent documents of the Company or the applicable Series, and related entities; (ix) except as set forth in Section 4.5(a), all out of pocket costs and expenses incurred by the Administrative Member in connection with its services as such to the Company or the applicable Series; and (x) expenses incurred in connection with the distributions to the Members and in connection with any meetings of the Members called by the Administrative Member.

- (c) If the Administrative Member determines at any time, or from time to time, that the available funds of the Company or the applicable Series (after the drawdown of any then unfunded Commitments) are not sufficient to pay the Company's or the applicable Series' operating costs and expenses, then the Administrative Member may, but is not required to, loan its own funds to the Company or the applicable Series for the payment of such costs and expenses (an "Advance"). The Company or the applicable Series shall reimburse the Administrative Member for any such Advance together with interest on such Advance from the date of such Advance at an annual rate of 10%. Any such Advance, together with the interest thereon, shall be an expense of the Company or the applicable Series and shall be paid by the Company or the applicable Series prior to making any further Distributions. Payments by the Company or the applicable Series shall be applied first to accrued interest on and then to the principal of such Advance. The determination to apply funds of the Company or the applicable Series to the payment of such Advance shall be at the Administrative Member's discretion. For the avoidance of doubt, an Advance by the Administrative Member will not constitute a Capital Contribution by the Administrative Member.

- (d) If the Administrative Member does not make an Advance. If neither

PLAINTIFF0002204



Administrative Member shall notify the Members and describe in reasonable detail the operating costs and expenses requiring additional Company funds. Such notification shall also state the aggregate amount of additional Capital Contributions ("Additional Capital Contributions") being requested from the Members and each Member's pro rata share of such amount. (such a request, a "Capital Call") Within 15 days following the date of such Capital Call (the "Deadline"), each Member may, but is not obligated to, make an Additional Capital Contribution in an amount equal to its pro rata share (based on its Interest) of the aggregate amount of the Additional Capital Contributions requested by the Administrative Member. An Additional Capital Contribution made by a Member shall be treated as having been received on the later of the Deadline with respect to the applicable Capital Call or the date on which such Additional Capital Contribution is actually made.

- (e) If any Member (the "Non-Contributing Member") fails to make any Additional Capital Contribution (or any portion thereof) requested by a Capital Call (a "Shortfall Amount") by the Deadline, the Administrative Member shall notify each Member that is not a Non-Contributing Member in respect of such Capital Call (a "Contributing Member") of the aggregate Shortfall Amount in writing, and each Contributing Member may elect to make a further Additional Capital Contribution in the amount of such Shortfall Amount (or a portion thereof). If more than one Contributing Member elects to make a further Additional Contribution, the Shortfall Amount shall be allocated to such Contributing Members pro rata based on their Interests, but not in excess of the actual Additional Capital Contribution such Contributing Member has elected to contribute. Such further Additional Capital Contributions shall be made within 15 days after the Deadline.

- (f) If the Company or the applicable Series has insufficient funds to pay its operating costs and expenses after a Capital Call and any Advances, the Administrative Member, in its discretion, may sell assets of the Company or the applicable Series without any Consent of the Members in order to pay the Company's or the applicable Series' operating costs and expenses.

**IV.6 Nature of Obligations between Members.** Except as otherwise required by applicable law, nothing contained in this Agreement will be deemed to constitute any Member, in that Member's capacity as a Member, an agent or legal representative of any other Member or to create any fiduciary relationship between Members for any purpose whatsoever. Except as otherwise expressly provided in this Agreement, a Member has no authority to act for, or to assume any obligation or responsibility on behalf of, any other Member or the Company or any Series.

**IV.7 Status Under the Uniform Commercial Code.** All Interests will be securities governed by Article 8 of the Uniform Commercial Code as in effect from time to time in the State of Delaware. The Interests are not evidenced by certificates and will remain not evidenced by certificates. Neither the Company nor any Series is

PLAINTIFF0002205

authorized to issue certificated Interests. The Company will record all Transfers of Members' Interests made in accordance with Article VIII of this Agreement in the Interest Register.

# ARTICLE V

## MANAGEMENT AND CONTROL OF THE COMPANY



### V.1 Management.

- (a) Management of the Company and each Series is vested in the Members. Except for those matters delegated to the Administrative Member pursuant to this Agreement, the Members, acting by Majority in Interest (or such greater percentage specified in this Agreement with respect to a specified matter), have the exclusive management and control of the Company and its business and affairs, including all decisions related to the acquisition and disposition of Investments or otherwise required to be made by the Company as the holder of an Investment. Except as otherwise provided in this Agreement and subject to the provisions of the Act, the Administrative Member has all power and authority to take all actions necessary to execute the decisions made by a Majority in Interest or otherwise delegated to it under this Agreement.

- (b) A Majority in Interest of the Members may at any time remove the Person then serving as the Administrative Member. The Administrative Member may also at any time, upon not less than 30 days prior notice, resign as the Administrative Member. The Members, by Majority in Interest, may also appoint an alternate Administrative Member to act on behalf of the Company or the applicable Series and the Members if the Administrative Member is temporarily unable to serve or is unwilling to serve in any particular circumstance. When so acting, the alternative Administrative Member shall have all the powers and authority delegated to the Administrative Member. Any vacancy in the position of the Administrative Member (whether from the removal, resignation or death of such Administrative Member or otherwise) shall be automatically filled by the then appointed alternate Administrative Member, or if none, by the Members acting by a Majority in Interest.

- (c) The Members may agree to (i) delegate any matters or actions authorized to be taken by the Members under this Agreement to the Administrative Member, specified Member(s) or third Persons and (ii) appoint any Persons, with titles as the Members may select, to act on behalf of the Company or the applicable Series, with power and authority as the Members may delegate from time to time. Any delegation by the Members may be rescinded at any time by a Majority in Interest. If a Person is appointed as an officer of the Company, then, unless otherwise specified in such appointment, such Person shall have the authority and duties customarily held by an officer of a Delaware corporation with such title.

  (d) Third parties dealing with the Company or the applicable

PLAINTIFF0002206

- (d) Third parties dealing with the Company or the applicable Series or its assets shall not be required to investigate the authority of the Administrative Member or whether any approval of the Members is

  required or has been obtained with respect to any matter and may rely conclusively upon any certificate of the Administrative Member to the effect that it is authorized to and is acting on behalf of the Company or the applicable Series as to any matter relating to the Company or its assets and Members. The Administrative Member shall have the authority to execute any agreements, instruments, documents and certificates on behalf of the Company or the applicable Series as its authorized signatory and the signature of the Administrative Member , when acting pursuant to this Article V, will be sufficient to bind the Company or the applicable Series.



## V.2 Duties and Obligations of the Administrative Member.

In addition to the duties and services of the Administrative Member elsewhere in this Agreement,

- (a) The Administrative Member shall take all action that may be necessary or appropriate for the continuation of the Company's valid existence and authority to do business as a limited liability company under the laws of the State of Delaware and of each other jurisdiction in which authority to do business is, in the judgment of the Administrative Member, necessary or advisable.
- (b) The Administrative Member shall prepare or cause to be prepared and shall file on or before the due date (or any extension) any federal, state or local tax returns required to be prepared or filed by the Company and each Series.
- (c) To the extent of available funds of the Company and each Series, the Administrative Member shall cause the Company and each Series to pay any taxes or other governmental charges levied against or payable by the Company or such Series; provided, however, that the Administrative Member will not be required to cause the Company or any series to pay any tax so long as the Administrative Member or the Company (or any series) is in good faith and by appropriate legal proceedings contesting the validity, applicability or amount the tax and the contest does not materially endanger any right or interest of the Company or the applicable Series.
- (d) Notwithstanding any other provision of this Agreement or otherwise applicable provision of law or equity, whenever in this Agreement, the Administrative Member is permitted or required to make a decision (i) in its "sole discretion" or "discretion" or under a grant of similar authority or latitude, the Administrative Member will be entitled to consider only those interests and factors as it desires, including its own interests, and will, to the fullest extent permitted by applicable law, have no duty or obligation to give any consideration to any interest of or factors affecting the Company or the Members, or (ii) in its "good faith" or under another expressed standard, the Administrative Member shall act under that ex

PLAINTIFF0002207

standard, the Administrative Member shall act under that express standard and will not be subject to any other or different standards. Unless otherwise expressly stated, for purposes of this Section

5.2(d), the Administrative Member will be deemed to be permitted or required to make all decisions hereunder in its sole discretion.

**V.3 No Fiduciary Duty.** To the fullest extent permitted by applicable law, no Memb including the Administrative Member when acting as such, owes any fiduciary duties of any kind whatsoever to the Company or any Series, or to any of the Members, including, but not limited to, the duties of due care and loyalty, whether those duties were established as of the date of this Agreement or any time hereafter, and whether established under common law, at equity or legislatively defined. It is the intention of the Members and the Company that those fiduciary duties be affirmatively eliminated to the fullest extent permitted by Delaware law, including the Act, and the Members hereby waive any rights with respect to those fiduciary duties. Notwithstanding the foregoing, the Members have the duties, liabilities and obligations expressly set forth in this Agreement.

**V.4 The Members May Engage in Other Activities.** Subject to the terms of any other agreement between a Member and the Company or any Series, no Member (including the Administrative Member) is obligated to devote all of its time or business efforts to the affairs of the Company or any Series, provided that the Administrative Member shall devote the time, effort and skill as it determines in its sole discretion may be necessary or appropriate for the responsibilities delegated to it under this Agreement. Subject to the foregoing, any Member may have other business interests and may engage in other activities in addition to those related to the Company and the Series. The Members and their respective Affiliates may acquire or possess interests in a Portfolio Company and the interests may be of a different class or type, with different rights and preferences, than those held by the Company or the applicable Series. Likewise, the Members and their respective Affiliates may acquire or possess interests in other companies or business ventures that are competitive with a Portfolio Company or the Company or any Series. Neither the Company or the Series nor any Member will have the right, by virtue of this Agreement, to share or participate in other investments or activities of any other Member or to the income derived therefrom.

# ARTICLE VI

## ALLOCATIONS OF NET INCOME AND NET LOSS

**VI.1 Allocation of Net Income and Net Loss.** Except as otherwise provided in this Agreement, Net Income and Net Loss (including individual items of profit, income, gain, loss, credit, deduction and expense) of the Company or the applicable Series will be allocated among the Members in a manner such that the Capital Account balance of each Member, immediately after making that allocation, is, as nearly as possible, equal (proportionately) to the Distributions that would be made to that Member pursuant to Section 10.4 if the Company or the applicable Series were dissolved or terminated, its affairs wound up and its assets sold for cash equal to their Fair Market Value, all Company liabilities were satisfied (limi

PLAINTIFF0002208

their fair market value, all company liabilities were satisfied (limited with respect to each nonrecourse liability to the Fair Market Value of the assets securing that liability), and the net assets of the Company or the applicable Series were distributed in accordance with Section 10.4 to the Members immediately after making that allocation, adjusted for applicable special allocations, computed immediately prior to the hypothetical sale of assets.

**VI.2 Allocation Rules.** In the event that Members are issued Interests on different dates, the Net Income or Net Loss allocated to the Members for each Fiscal Year during which Members receive Interests will be allocated among the Members in accordance with Section 706 of the Code, using any convention permitted by law and selected by the Administrative Member. For purposes of determining the Net Income, Net Loss and individual items of income, gain, loss credit, deduction and expense allocable to any period, Net Income, Net Loss and any other items will be determined on a daily, monthly or other basis, as determined by the Administrative Member using any method that is permissible under Section 706 of the Code and the Treasury Regulations. Except as otherwise provided in this Agreement, all individual items of Company or Series income, gain, loss and deduction will be divided among the Members in the same proportions as they share Net Income and Net Loss for the Fiscal Year or other period in question.

**VI.3 Limitation on Allocation of Net Losses.** There will be no allocation of Net Losses to any Member to the extent that the allocation would create a negative balance in the Capital Account of that Member (or increase the amount by which that Member's Capital Account balance is negative).

**VI.4 General Tax Allocations.** Except as otherwise provided in this Section 6.4, the taxable income or loss of the Company or the applicable Series will be allocated pro rata among the Members associated therewith in the same manner as the corresponding items of Net Income, Net Loss and separate items of income, gain, loss, credit, deduction and expense (excluding items for which there are no related tax items) are allocated among the Member for Capital Account purposes; provided, that in the event there is a difference between the "tax book" value of a Company or Series asset and the asset's adjusted tax basis at the time of the asset's contribution or revaluation pursuant to this Agreement, all items of tax depreciation, cost recovery, amortization, and gain or loss with respect to such asset shall be allocated among the Members to take into account the disparities between the "tax book" values and the adjusted tax basis with respect to such properties in accordance with any method selected by the Administrative Member that is permitted by the Treasury Regulations promulgated under Sections 704(b) and 704(c) of the Code.

**VI.5 Special Tax Allocations.**

- (a) Minimum Gain Chargeback. In the event there is a net decrease in the Company Minimum Gain during any Fiscal Year, the minimum gain chargeback provisions described in Sections 1.704-2(f) and (g) of the Treasury Regulations will apply.
- (b) Member Minimum Gain Chargeback. In the event there is a net decrease in Member Minimum Gain during any Fiscal Year, the minimum

PLAINTIFF0002209



minimum gain chargeback provisions described in Section 1.704-2(i) of the Treasury Regulations will apply.

- (c) Qualified Income Offset. In the event a Member unexpectedly receives an adjustment, allocation or Distribution described in of Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6) of the Treasury Regulations, which adjustment, allocation or Distribution creates or increases a deficit balance in that Member's Capital Account, the "qualified income offset" provisions described in Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations will apply.
- (d) Nonrecourse Deductions. Nonrecourse Deductions will be allocated in accordance with and as required in the Treasury Regulations.
- (e) Member Nonrecourse Deductions. Member Nonrecourse Deductions will be allocated to the Members as required in Section 1.704-2(i)(1) of the Treasury Regulations.
- (f) Intention. The special allocations in this Section 6.5 are intended to comply with certain requirements of the Treasury Regulations and will be interpreted consistently. It is the intent of the Members that any special allocation pursuant to this Section 6.5 will be offset with other special allocations pursuant to this Section 6.5. Accordingly, special allocations of Company or Series income, gain, loss or deduction will be made in such manner so that, in the reasonable determination of the Administrative Member, taking into account likely future allocations under this Section 6.5, after those allocations are made, each Member's Capital Account is, to the extent possible, equal to the Capital Account it would have been were this Section 6.5 not part of this Agreement.
- (g) Recapture Items. In the event that the Company or the applicable Series has taxable income in any Fiscal Year that is characterized as ordinary income under the recapture provisions of the Code, each Member's distributive share of taxable gain or loss from the sale of Company or Series assets (to the extent possible) will include a proportionate share of this recapture income equal to that Member's share of prior cumulative depreciation deductions with respect to the assets which gave rise to the recapture income.
- (h) Tax Credits and Similar Items. Allocations of tax credits, tax credit recapture, and any items related thereto will be allocated in those items as determined by the Administrative Member considering the principles of Treasury Regulation Section 1.704-1(b)(4)(ii).
- (i) Consistent Treatment. All items of income, gain, loss, deduction and credit of the Company or the applicable Series will be allocated among the Members for federal income tax purposes in a manner consistent with the allocation under this Article VI. Each Member is aware of the income tax consequences of the allocations made by this Article VI and hereby agrees to be bound by the provisions of this Article VI in reporting its share of Company or Series income and loss for income tax purposes. No Member will report on its tax return any transaction by the Company or the applicable Series, any amount allocated or distributed from the Company or the applicable Series in

PLAINTIFF0002210

contributed to the Company or the applicable Series inconsistently
with the treatment reported (or to be reported) by the Company or the
applicable Series on its tax return nor take a position for tax
purposes that is inconsistent with the position taken by the Company
or the applicable Series.

- (j) Modifications to Preserve Underlying Economic Objectives. If, in
  the opinion of counsel to the Company, there is a change in the
  Federal income tax law (including the Code as well as the Treasury
  Regulations, rulings, and administrative practices thereunder) which
  makes modifying the allocation provisions of this Article VI it
  necessary or prudent to preserve the underlying economic objectives
  of the Members as reflected in this Agreement, the Administrative
  Member will make the minimum modification necessary to achieve that
  purpose.

**VI.6 Allocation of Excess Nonrecourse Liabilities.** "Excess nonrecourse liabilities"
of the Company or the applicable Series as used in Section 1.752-3(a)(3) of the
Treasury Regulations will first be allocated among the Member pursuant to the
"additional method" described in that section and then in accordance with the manner
in which the Administrative Member expects the nonrecourse deductions allocable to
those liabilities will be allocated.

**VI.7 Allocations in Respect of a Transferred Interest.** Except as otherwise provided
in this Agreement, amounts of Net Income, Net Loss and special allocations allocated
to the Members will be allocated among the appropriate Members in proportion to
their respective Interests. If there is a change in any Member's Interest for any
reason during any Fiscal Year, each item of income, gain, loss, deduction or credit
of the Company or the applicable Series for that Fiscal Year will be assigned pro
rata to each day in that Fiscal Year in the case of items allocated based on
Interests, and the amount of that item so assigned to that day will be allocated to
the Member based upon that Member's Interest at the close of that day.
Notwithstanding the immediately preceding sentence, the net amount of gain or loss
realized by the Company or the applicable Series in connection with a sale or other
disposition of property by the Company or the applicable Series will be allocated
solely to the Members having Interests on the date of that sale or other
disposition.

**VI.8 Allocations in Year of Liquidation Event.** Notwithstanding anything else in this
Agreement to the contrary, the Parties intend for the allocation provisions of this
Article VI to produce final Capital Account balances of the Members that will permit
liquidating Distributions to be made pursuant to the order set forth in Section
10.4. To the extent that the allocation provisions of this Article VI would fail to
produce the final Capital Account balances, the Administrative Member may elect, in
its sole discretion, to (a) amend those provisions if and to the extent necessary to
produce that result and (b) reallocate income and loss of the Company or the
applicable Series for prior open years (including items of gross income and
deduction of the Company or the applicable Series for those years) among the Members
to the extent it is not possible to achieve that result with allocations of items of
income (including gross income) and deduction for the current year and future years,

PLAINTIFF0002211

as approved by the Administrative Member. This Section 6.8 will control notwithstanding any reallocation or adjustment of taxable income, taxable loss, or related items by the Internal Revenue Service or any other taxing authority.

Notwithstanding any provision of this Agreement to the contrary, the Administrative Member will have the power to amend this Agreement without the Consent of the other Members, as it reasonably considers advisable, to make the allocations and adjustments described in this Section 6.8. To the extent that the allocations and adjustments described in this Section 6.8 result in a reduction in the Distributions that any Member will receive under this Agreement compared to the amount of the Distributions that Member would receive if all those Distributions were made pursuant to the order set forth in Section 10.4, the Company or the applicable Series may make a guaranteed payment (within the meaning of Section 707(c) of the Code) to that Member (to be made at the time that Member would otherwise receive the Distributions that have been reduced) to the extent that payment does not violate the requirements of Section 704(b) of the Code or may take other action as reasonably determined by the Administrative Member to offset that reduction.

# ARTICLE VII

## DISTRIBUTIONS

### VII.1 Generally.

- (a) The Company or the applicable Series will first use available assets to pay or set aside reserves for the payment of the costs, expenses, debts, liabilities and obligations of the Company or the applicable Series as set forth in Section 4.5.
- (b) Subject to Sections 7.4 and 7.5, the Company or the applicable Series will make Distributions, at such times, in such amounts and of such types (i.e. in cash or in kind) as determined by a Majority in Interest. Distributions shall be made to the Members associated therewith pro rata in accordance with their respective Interests.
- (c) For the avoidance of doubt, prior to the dissolution of the Company or the applicable Series pursuant to Section 10.1, the Company or the applicable Series will not make Distributions in kind except to the extent of Liquidity Event Proceeds without the consent of the Administrative Member. Any expenses relating to brokerage commissions, escrow fees, clearing and settlement charges, custodial fees, and any other costs relating to the event giving rise to such Liquidity Event Proceeds and the receipt and Distribution of Liquidity Event Proceeds by the Company or the applicable Series ("Distribution Expenses") will be paid by the Company or the applicable Series prior to any Distributions. The amount of Liquidity Event Proceeds distributable to the Members will be net of any Distribution Expenses.

### VII.2 Non-Cash Distributions. Whenever a Distribution provided for in this Section 7.2 is payable in property other than cash, the value of the Distribution will be deemed to be its Net Fair Market Value as of the date of Distribution.

PLAINTIFF0002212

deemed to be its Net Fair Market Value as of the date of Distribution. The capital
Accounts of the Members will be adjusted accordingly as the result of any
Distribution in kind.

**VII.3 Return of Distributions.** Any Member receiving a Distribution in violation of
the terms of this Agreement shall return that Distribution (or cash equal to the Net
Fair Market Value of any property so distributed, determined as of the date of
Distribution) promptly following the Member's receipt of a request to return the
Distribution from the Administrative Member. No third party will be entitled to rely
on or enforce the obligations to return Distributions set forth in this Agreement or
to demand that the Company, any Series, or any Member make any request for any such
return.

**VII.4 Form of Distribution.** Distributions pursuant to this Article VII will be
comprised of (a) assets and securities constituting Liquidity Event Proceeds, and/or
(b) Distributable Cash. Notwithstanding the foregoing, no Distribution of securities
will be made to any Member to the extent that Member would be prohibited by
applicable law from holding those securities. Unless otherwise agreed to by the
Administrative Member, Distributions will be made to its respective brokerage
account; provided that any Distribution of Distributable Cash may, in the sole
discretion of the Administrative Member, be made, in whole or in part, to the
account from which such Member's Capital Contributions were paid.

**VII.5 Amounts Withheld.** Any amounts withheld with respect to a Member pursuant to
any federal, state, local or foreign tax law from a Distribution by the Company or
the applicable Series to the Member will be treated as paid or distributed, as the
case may be, to the Member for all purposes of this Agreement. In addition, the
Company or the applicable Series may withhold from Distributions amounts deemed
necessary, in the sole discretion of the Administrative Member, to be held in
reserve for payment of accrued or foreseeable permitted expenses of the Company or
the applicable Series. Each Member hereby agrees to indemnify and hold harmless the
Company and the applicable Series from and against any liability with respect to
income attributable to or Distributions or other payments to that Member (including,
without limitation, any "imputed underpayment" within the meaning of Section 6225 of
the Code attributable to such Member, as determined by the Administrative Member).
Any other amount that the Administrative Member determines is required to be paid by
the Company or the applicable Series to a taxing authority with respect to a Member
pursuant to any federal, state, local or foreign tax law in connection with any
payment to or tax liability (estimated or otherwise) of the Member shall be treated
as a loan from the Company or the applicable Series to that Member. If that loan is
not repaid within 30 days from the date the Administrative Member notifies that
Member of that withholding, the loan will bear interest from the date of the
applicable notice to the date of repayment at a rate at the lesser of (a) 10% or (b)
the maximum legal interest rate under applicable law, compounded annually. In
addition to all other remedies the Company or the applicable Series may have, the
Company or the applicable Series may withhold Distributions that would otherwise be
payable to that Member and apply that amount toward repayment of the loan and
interest. Any payment made by a Member to the Company or the applicable Series
pursuant to this Section 7.5 will not constitute a Capital Contribution. The
obligations of a Member pursuant to this Section 7.5 shall survive the termination

PLAINTIFF0002213

dissolution, liquidation and winding up of the Company or applicable Series and the withdrawal of such Member from the Company or applicable Series or transfer of its interest in the Company or applicable Series.

**VII.6 Member Giveback.** Except as required by applicable law, Section 7.3 or Section 7.5, no Member will be required to repay to the Company or the applicable Series, any other Member, or any creditor of the Company or the applicable Series, all or any part of the Distributions made to that Member.

**VII.7 No Creditor Status.** A Member will not have the status of, and is not entitled to the remedies available to, a creditor of the Company or the applicable Series with regard to Distributions that the Member becomes entitled to receive pursuant to this Agreement and the Act.

**VII.8 Limitations on Distributions.** Notwithstanding any provision to the contrary contained in this Agreement, no Distribution shall be made to any Member on account of its Interest if the Distribution would violate the Act or other applicable law.

# ARTICLE VIII

## TRANSFERS

**VIII.1 Transfers.** Except as otherwise expressly provided in this Article VIII, no Member may Transfer all or any portion of its Interests without (a) providing the Administrative Member with a written opinion of counsel that such Transfer would not be considered a securities transaction under applicable securities laws if required by the Administrative Member; (b) compliance with the provisions of Section 8.4; (c) the approval of the Administrative Member; and (d) the approval of such Members (which may include the Administrative Member) as represents two-thirds of the aggregate Interests in the Company or the applicable Series. Any attempted Transfer in violation of this Article VIII will be null and void ab initio and will not bind the Company or the applicable Series.

**VIII.2 Permitted Transfers.** The consent of the Members pursuant to Section 8.1(d) will not be required for any Transfer (a) by a Member who is an individual to an entity controlled (which for this purpose shall require that the Member own more than 50% of the voting control and equity securities of that entity) by that Member and all of the remaining beneficial ownership of such entity is owned by the Family Members of such Member or (b) by a Member to another Member (each transferee, a "Permitted Transferee"); provided, however, that unless otherwise consented to by the Administrative Member, in connection with a Transfer permitted pursuant to clause (a) of this Section 8.2, the transferring Member shall remain jointly and severally liable for the obligations of the Permittee Transferee under this Agreement.

**VIII.3 Admission of Transferee as a Member.** A Transfer permitted by this Article VIII will only transfer the rights of an assignee as set forth in Section 8.6 unless (a) the transferee is a Member or is admitted as a Member with the consent of the Administrative Member and otherwise complies with Section 4.1 and (b) payment to the Company or the applicable Series of a transfer fee in cash which is sufficient in

PLAINTIFF0002214

the Administrative Member's sole determination, to cover all reasonable expenses incurred by the Company or the applicable Series in connection with the Transfer and admission of the transferee as a Member.

**VIII.4 Additional Restrictions.** Notwithstanding any other provision of this Agreement, no Transfer of an Interest (including any Transfer of an interest in Company profits, losses or distributions) shall be permitted unless the Administrative Member otherwise consents, in its sole discretion, if such Transfer would cause the Company or the applicable Series (a) to have more than 100 partners, as determined for purposes Section 7704 of the Code; (b) to be treated as a publicly traded partnership within the meaning of Section 7704 of the Code; (c) to be required to be registered as an "investment company" under the Investment Company Act of 1940 (the "40 Act"); (d) to hold any "plan assets" under the Employee Retirement Income Security Act of 1974 ("ERISA"), or (e) in the Administrative Member's sole determination, to be subject to any burdensome regulatory or reporting requirements, any adverse tax or fiscal consequences or otherwise in breach of any applicable law or agreement to which the Company or the applicable Series is a party.

**VIII.5 Involuntary Transfer of Interests.** In the event of any involuntary transfer of Interests to a Person, that Person will have only the rights of an assignee set forth in Section 8.6 with respect to those Interests.

**VIII.6 Rights of Assignee.** An assignee has no right to vote, receive information concerning the business and affairs of the Company or the applicable Series and is entitled only to receive Distributions and allocations attributable to the Interest held by the assignee as determined by the Member and in accordance with this Agreement.

**VIII.7 Enforcement.** The restrictions on Transfers contained in this Agreement are an essential element in the ownership of an Interest. Upon application to any court of competent jurisdiction, the Administrative Member will be entitled to a decree against any Person violating or about to violate those restrictions, requiring their specific performance, including those prohibiting a Transfer of all or a portion of its Interests.

**VIII.8 Death or Disability of a Member.** Upon the Disability or death of a Member, the provisions of Section 18-705 of the Act shall apply.

**VIII.9 Compulsory Redemption.** A Majority in Interest may, by notice to any Member, force the sale of all or a portion of that Member's Interest on terms as the Administrative Member determines to be fair and reasonable, or take other action as it determines to be fair and reasonable in the event that the Administrative Member determines or has reason to believe that: (a) that Member has attempted to effect a Transfer of, or a Transfer has occurred with respect to, any portion of that Member's Interest in violation of this Agreement; (b) continued ownership of that Interest by that Member is reasonably likely to cause any of the events set forth in Section 8.4; (c) continued ownership of that Interest by that Member may be harmful to the business or reputation of the Company or the applicable Series or the Administrative Member; (d) any of the representations or warranties made by that Member under this Agreement or its Subscription Agreement was not true

PLAINTIFF0002215

has ceased to be true; (e) any portion of that Member's Interest has vested in any other Person by reason of the bankruptcy, dissolution, incompetency or death of that Member; (f) such Member has failed to fund any Additional Capital Contribution; or (g) it would not be in the best interests of the Company or the applicable Series, as determined by the Administrative Member in its sole discretion, for that Member to continue ownership of its Interest.

# ARTICLE IX

## RECORDS, REPORTS AND TAXES

**IX.1 Books and Records.** The Administrative Member will maintain all of the information required to be maintained by the Act at the Company's principal office, with copies available at all times during normal business hours for inspection and copying upon reasonable notice by any Member or its authorized representatives for any purpose reasonably related to that Member's status as a member of the Company or the applicable Series, including as applicable:

- (a) true and full information regarding the status of the business and financial condition of the Company and such Series;
- (b) promptly after becoming available, a copy of the Company's and the applicable Series' federal, state and local income tax returns, if any, for each Fiscal Year;
- (c) the Interest Register;
- (d) a copy of this Agreement and all amendments, including any Exception Handling Addendum, together with executed copies of

    - (i) any powers of attorney and
    - (ii) any other document pursuant to which this Agreement or any amendments have been executed or have been deemed to be executed; and

- (e) true and full information regarding the amount of Capital Contributions by that Member and the date on which that Member became a Member.

**IX.2 Reports.**

- (a) Governmental Reports. The Administrative Member will cause to be prepared and filed, at the Company's and Series' expense, all documents and reports required to be filed with any governmental agency in accordance with the Act.
- (b) Tax Reports. The Administrative Member will cause to be prepared and duly and timely filed, at the Company's and Series' expense, all tax returns required to be filed by the Company and each Series. The Administrative Member will send or cause to be sent to each Member within 90 days after the end of each Fiscal Year, or a later date as determined in the discretion of the Administrative Member, an Internal Revenue Service Schedule K-1 with respect to the Member's

PLAINTIFF0002216

interest in the Company or applicable Series (or substantially
similar information if an Internal Revenue Service Schedule K-1 is
not required to be provided to Members).

**IX.3 Tax Elections.** Except as otherwise expressly provided in this Agreement, the
Company will make any tax elections as the Administrative Member may determine. The
Administrative Member may, in its sole discretion, make an election under Section
754 of the Code.

**IX.4 Partnership Representative.** The Administrative Member will be the "partnership
representative" within the meaning of Code Section 6223 (the "Partnership
Representative"). The Partnership Representative will have all of the powers and
authority of a "partnership representative" under the Code. The Partnership
Representative will represent the Company and each Series (at its expense) in
connection with all administrative and judicial proceedings by the Internal Revenue
Service or any taxing authority involving any tax return of the Company and each
Series, and may expend the Company's and Series' funds for professional services and
associated costs. The Partnership Representative will provide to the Members notice
of any communication to or from or agreements with a federal, state or local
authority regarding any return of the Company or the applicable Series, including a
summary of the provisions.

**IX.5 Confidentiality.** All information concerning the business, affairs and
properties of the Company and each Series and all of the terms and provisions of
this Agreement will be held in confidence by each Member and their respective
Affiliates, subject to any obligation to comply with (a) any applicable law, (b) any
rule or regulation of any legal authority or securities exchange, (c) any subpoena
or other legal process to make information available to the Persons entitled thereto
or (d) the enforcement of that Party's rights under this Agreement in any legal
process, arbitration, as a Member, or employee, as applicable. Confidentiality will
be maintained until that time, if any, as the confidential information either is, or
becomes, published or a matter of public knowledge (other than as a result of a
breach of this Section 9.5); provided that each Party recognizes that the privilege
each has to maintain, in its sole discretion, the confidentiality of a communication
relating to the transactions, including a confidential communication with its
attorney or a confidential communication with a federally authorized tax
practitioner under Section 7525 of the Code, is not intended to be affected by the
foregoing provisions of this sentence. Notwithstanding this Section 9.5, the
Administrative Member may use confidential information about the Company, the
Series, and the Members in data aggregation, so long as the data use does not
include the disclosure of information that could reasonably be used to identify any
Member.

# ARTICLE X

## DISSOLUTION AND LIQUIDATION

### X.1 Dissolution.

- (a) The Company. The Company will be dissolved and its affairs wound up

PLAINTIFF0002217

up solely upon the first to occur of any of the following:



- (1) the disposition (which may include by Distribution to the Members) of the final Investment of the Company;
- (2) the determination by a Majority in Interest to dissolve the Company; or
- (3) the entry of a judicial decree of dissolution of the Company pursuant to the Act.

- (b) Series. A Series will be dissolved or terminated, as applicable, and its affairs wound up solely upon the first to occur of any of the following:

- (1) the final Distribution of the net assets of the Series to the Members or a Liquidating Vehicle in accordance with this Article X;
- (2) determination by a Majority in Interest to dissolve or terminate the Series; or
- (3) entry of a judicial decree of dissolution of the Series pursuant to the Act.

- At any time that (i) there are no Interests outstanding of any particular Series previously established or (ii) a particular Series never acquired any Portfolio Company or any other assets, has no liabilities, and did not receive any Capital Contributions, the Administrative Member may terminate that Series, cancel any Interests therein for no consideration and rescind the establishment thereof.

**X.2 Date of Dissolution.** Dissolution of the Company or the applicable Series will be effective on the day on which the event occurs giving rise to the dissolution, but the Company or the applicable Series will not terminate or cease to exist until the assets of the Company or the applicable Series have been liquidated and distributed as provided in this Agreement and a Certificate of Cancellation for the Company or the applicable Series has been filed in accordance with Section 10.8. Notwithstanding the dissolution of the Company or the applicable Series, prior to the termination of the Company or the applicable Series, the business of the Company or the applicable Series and the rights and obligations of the Members will continue to be governed by this Agreement.

**X.3 Winding Up.** Upon the occurrence of any event specified in Section 10.1, the Company or the applicable Series will continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, satisfying the claims of its creditors, and distributing any remaining assets in cash or in kind, to the Members in accordance with this Agreement. The Liquidating Trustee will be responsible for overseeing the winding up and liquidation of the Company or the applicable Series and will cause the Company or the applicable Series to sell or otherwise liquidate all of the Company's or the applicable Series' assets except to the extent the Liquidating Trustee determines to distribute any assets to the Members in kind, discharge or make provision for all liabilities of the

PLAINTIFF0002218

members in kind, discharge or make provision for all liabilities of the Company or
the applicable Series and all costs relating to the dissolution, winding up, and
liquidation and distribution of assets, establish reserves as may be necessary to

provide for contingent liabilities of the Company or the applicable Series (for
purposes of determining the Capital Accounts of the Members, the amounts of those
reserves will be deemed to be an expense of the Company or the applicable Series
will be deemed income to the extent it ceases to be reserved), and distribute the
remaining assets to the Members, in the manner specified in Section 10.4. The
Liquidating Trustee will be allowed a reasonable time for the orderly liquidation of
the Company or the applicable Series' assets and discharge of its liabilities, so as
to preserve and upon disposition maximize, to the extent possible, the value of the
Company's or the applicable Series' assets.

**X.4 Liquidation.** The Company's or the applicable Series' assets, or the proceeds
from the liquidation of the Company's or the applicable Series' assets, will be paid
or distributed in the following order:

- (a) first, to creditors to the extent otherwise permitted by
  applicable law in satisfaction of all liabilities and obligations of
  the Company or the applicable Series, including expenses of the
  liquidation (whether by payment or the making of reasonable provision
  for payment), other than liabilities for which reasonable provision
  for payment has been made and liabilities, if any, for Distributions
  to Members;
- (b) next, to the establishment of those reserves for contingent
  liabilities of the Company or the applicable Series as are deemed
  necessary by the Liquidating Trustee (other than liabilities for
  which reasonable provision for payment has been made and liabilities,
  if any, for Distribution to Members and former Members under the
  Act);
- (c) next, to Members and former Members in satisfaction of any
  liabilities for Distributions under the Act, if any;
- (d) next, to the Members, on a pro rata in accordance with their
  Interests.

**X.5 Distributions in Kind.** Any non-cash asset distributed to one or more Members
will first be valued by the Administrative Member at its Fair Market Value to
determine the Net Income, Loss and special allocations that would have resulted if
that asset had been sold for that value, which amounts will be allocated pursuant to
Article VI, and the Members' Capital Accounts will be adjusted to reflect those
allocations. The amount distributed and charged to the Capital Account of each
Member receiving an interest in the distributed asset will be the Net Fair Market
Value of that interest.

**X.6 No Liability.** Notwithstanding anything in this Agreement to the contrary, upon a
liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury
Regulations, if any Member has a negative Capital Account balance (after giving
effect to all contributions, Distributions, allocations and other Capital Account
adjustments for all Fiscal Years, including the Year in which that liquidation
occurs), neither that Member nor the Liquidating Trustee will have any

PLAINTIFF0002219

occurs), neither that member nor the Liquidating Trustee will have any obligation to make any contribution to the capital of the Company or the applicable Series, and the negative balance of that Member's Capital Account will not be considered a debt owed by that Member or any Liquidating Trustee to the Company or the applicable Series or to any other Person for any purpose; provided, however, that nothing in this Section 10.6 will relieve any Member from any liability under any promissory note or other affirmative commitment that Member has made to contribute capital to the Company or the applicable Series.

**X.7 Limitations on Payments Made in Dissolution.** Except as otherwise specifically provided in this Agreement, each Member will be entitled to look only to the assets of the Company or the applicable Series for Distributions (including Distributions in liquidation) and the Parties will have no personal liability for any Distributions.

**X.8 Certificate of Cancellation.** Upon completion of the winding up of the Company's affairs, the Liquidating Trustee will cause to be filed a Certificate of Cancellation, in accordance with the Act, of the Certificate of Formation.

**X.9 Conversion to a Trust.** If, on the Outside Date, a Liquidity Event has not occurred, the Administrative Member may appoint a third-party liquidator or custodian at the expense of the Company or the applicable Series or distribute the assets of the Company or the applicable Series to a liquidating trust or Entity for the benefit of the Members (a "Liquidating Vehicle"). Interests in any Liquidating Vehicle will generally be subject to terms comparable to Interests (including, for the avoidance of doubt, Distribution Expenses); provided that, in addition to other expenses contemplated in this Agreement, interests in a Liquidating Vehicle may be subject to actual expenses incurred in connection with the ongoing operations of the liquidating vehicle. The Administrative Member or the liquidating trustee, in its sole discretion, may establish reserves for contingencies under this Section 10.9, including with respect to interests in any liquidating vehicle.

# ARTICLE XI

LIMITATION OF LIABILITY; STANDARD OF CARE; INDEMNIFICATION

**XI.1 Limitation of Liability.** Unless explicitly agreed upon, the debts, obligations and liabilities of the Company and each Series, whether arising in contract, tort or otherwise, will be solely the debts, obligations and liabilities of the Company or such Series, and will not be those of the Members, or the Covered Persons.

**XI.2 Standard of Care; Liability.** Neither the Members nor the Covered Persons will have any personal liability whatsoever to the Company, any Series, any Member, or their Affiliates on account of that Person's role within the Company or any Series or by reason of that Person's acts or omissions in connection with the conduct of the business of the Company or any Series so long as that Person acts in good faith for a purpose which the Person reasonably believes to be in, or not opposed to, the best interests of the Company or such Series. Notwithstanding the preceding, nothing contained in this Agreement will protect that Person against any liability to which

PLAINTIFF0002220

that Person would otherwise be subject by reason of (a) any act or omission of that Person that involves gross negligence, willful misconduct, bad faith, fraud, or willful and material breach of a material provision of this Agreement or any

Subscription Agreement or any management agreement or other agreement with or for the benefit of the Company; (b) any transaction from which that Person or its Affiliate derives any improper personal benefit; or (c) a breach of any representation or warranty by such Member made in this Agreement or its Subscription Agreement.

**XI.3 Indemnification.** To the fullest extent permitted by applicable law, the Members and the Covered Persons will be entitled, out of the Company or Series assets, to be indemnified against and held harmless from any and all liabilities, judgments, obligations, losses, damages, claims, actions, suits or other proceedings (whether civil or criminal, pending or threatened, before any court or administrative or legislative body, and as the same are accrued, in which a Member or Covered Person may be or may have been involved as a party or otherwise or with which he, she or it may be or may have been threatened (a "Proceeding")) and reasonable costs, expenses and disbursements (including legal and accounting fees and expenses) of any kind and nature whatsoever (collectively, "Covered Losses") that may be imposed on, incurred by, or asserted at any time against a Member or Covered Person (whether or not indemnified against by other parties) in any way related to or arising out of this Agreement, the administration of the Company or any Series, or the action or inaction of a Member or Covered Person (including actions or inactions pursuant to Article X on the Company's or Series' dissolution or termination) or under contracts with the Company or any Series, except that the Members and Covered Persons will not be entitled to indemnity for Covered Losses with respect to any matter as to which such Member or Covered Person has been finally adjudicated in any action, suit, or other proceeding, or otherwise by a court of competent jurisdiction, to have committed an act or omission involving his, her or its own gross negligence, willful misconduct, bad faith, fraud, willful and material breach of a material provision of this Agreement or any Subscription Agreement or any management agreement or other agreement with or for the benefit of the Company or any Series, or from which such Person derived an improper personal benefit. The indemnities contained in this Article XI will survive the termination of this Agreement.

**XI.4 Contract Right; Expenses.** The right to indemnification conferred in this Article XI will be a contract right. A Member's or a Covered Person's right to indemnification under this Agreement includes the right to require the Company or the applicable Series to advance the expenses incurred by that Member or Covered Person in defending any Proceeding in advance of its final disposition subject to an obligation to return the amount so advanced if it is ultimately determined that the Member or Covered Person has not met the standard of conduct required for indemnification.

**XI.5 Nonexclusive Right.** The right to indemnification and the payment of expenses incurred in defending a Proceeding in advance of its final disposition conferred in this Article XI will not be exclusive of any other right which any Person may have or later acquire under any statute or agreement, or under any insurance policy obtained for the benefit of any Administrative Member, Partnership Representative or officer of the Company or the applicable Series (it being understood

PLAINTIFF0002221

officer of the Company or the applicable Series (it being understood that if any such insurance policy is obtained, it shall be at the expense of the Company or the applicable Series).

**XI.6 Severability.** If any provision of this Article XI is determined to be unenforceable in whole or in part, that provision will nonetheless be enforced to the fullest extent permissible, it being the intent of this Article XI to provide indemnification to all Persons eligible under this Agreement to the fullest extent permitted by applicable law.

**XI.7 Insurance.** The Administrative Member may cause the Company or the applicable Series to purchase and maintain insurance on behalf of any Covered Person who is or was an agent of the Company or the applicable Series against any liability asserted against that Covered Person capacity as an agent.

# ARTICLE XII

## REPRESENTATIONS, WARRANTIES AND COVENANTS

**XII.1 Representations and Warranties of the Members.** Each Member is fully aware that the Company, each Series, and the Administrative Member are relying upon the truth and accuracy of the following representations by each of the Members. Each of the Members hereby represents, warrants and covenants to the Administrative Member, the Company, and each Series that:

- (a) (i) In the case of any entity, it has been duly formed and is validly existing and in good standing under the laws of its jurisdiction of organization with full power and authority to enter into and to perform this Agreement in accordance with its terms or (ii) in the case of an individual, he or she has the full legal capacity to enter into and to perform this Agreement in accordance with its terms;
- (b) This Agreement is a legal, valid and binding obligation of that Member, enforceable against that Member in accordance with its terms, subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar laws affecting creditors' rights, and subject, as to enforceability, to the effect of general principles of equity;
- (c) Its Interest is being acquired for its own account, for investment and not with a view to the distribution or resale, subject, however, to any requirement of law that the disposition of its property will at all times be within its control;
- (d) It is not a participant-directed defined contribution plan;
- (e) It is not an "investment company" registered under the 40 Act;
- (f) It is not a "benefit plan investor" under Section 3(42) of ERISA and its ownership of an Interest does not cause the Company or the applicable Series to hold "plan assets" under ERISA;
- (g) It will conduct its business and affairs (including its investment activities) in a manner that it will be able to honor its obligations under this Agreement;

PLAINTIFF0002222

- (h) It understands and acknowledges that the investments contemplated by the Company involve a high degree of risk. The Member has

  substantial experience in evaluating and investing in Portfolio Company Securities and is capable of evaluating the merits and risks of its investments, including an investment in its Interest, and has the capacity to protect its own interests. The Member, by reason of its business or financial experience, has the capacity to protect its own interests in connection with Investments. The Member has sufficient resources to bear the economic risk of its investment in its Interest and the underlying Investments, including any diminution in value, and will solely bear such economic risk.;
- (i) It has undertaken its own independent investigation, and formed its own independent business judgment, based on its own conclusions, as to the merits of investing in the Company and any Investments to be acquired by the Company. The Member is not relying and has not relied on the Administrative Member or any of their Affiliates for any evaluation or other investment advice in respect of any Investments or the advisability of investing in the Company and has had all questions answered and requests fulfilled that the Member has deemed to be material to the Member's decision to invest in the Company.
- (j) It has had the opportunity to consult with legal counsel of its choice and has read and understands this Agreement.
- (k) It has received and carefully reviewed all code for the Designated Smart Contract sufficiently in advance of signing this Agreement. It is a Person who is, or in connection with this Agreement and the matters contemplated thereby has received the advice of Persons who are, knowledgeable, sophisticated and experienced in making, and qualified to make, evaluations and decisions with respect to the quality, security and intended and expected functionality of the Designated Smart Contract and the other matters contemplated by this Agreement.

**XII.2 Derivative Transactions.** No Member may, without providing the Administrative Member with a written opinion of counsel satisfactory to the Administrative Member regarding the compliance of the proposed transfer with all applicable securities laws, and the prior written consent of the Administrative Member (which may be granted, withheld, conditioned or delayed in its sole discretion), directly or indirectly, (a) offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise assign, transfer or dispose of any Interests or Portfolio Company Securities, or publicly disclose the intention to make any offer, sale, pledge or disposition, or (b) engage in any short selling of any Interests or Portfolio Company Securities. Notwithstanding the foregoing, any permitted transfers of Interests that are approved by the Members will be governed by Article VIII.

**XII.3 Further Instruments and Cooperation of Members.** Each Member will furnish, from

PLAINTIFF0002223

time to time, to the Administrative Member within 5 Business Days after receipt of the Administrative Member's request (or other amounts of time as specified by the Administrative Member) any further instruments (including any designations,

representations, warranties, and covenants), documentation and information as the Administrative Member deems to be reasonably necessary, appropriate or convenient: (a) to facilitate the Closing or satisfy any Closing Conditions; (b) to satisfy applicable anti-money laundering requirements; (c) for any tax purpose, including, for the avoidance of doubt, a Form W-9; or (d) for any other purpose that is consistent with the terms of this Agreement.

# ARTICLE XIII

## POWER OF ATTORNEY

**XIII.1 Function of Power of Attorney.** Each Member, by its execution of this Agreement, hereby irrevocably makes, constitutes and appoints each of the Administrative Member and the Liquidating Trustee, if any, in the capacity as Liquidating Trustee (each is referred to as the "Attorney"), as its true and lawful agent and attorney-in-fact, with full power of substitution and full power and authority in its name, place and stead, to make, execute, sign, acknowledge, swear to, record and file (a) this Agreement and any amendment to this Agreement that has been adopted as provided in this Agreement; (b) the original Certificate of Formation and all amendments required or permitted by law or the provisions of this Agreement; (c) all instruments or documents required to effect a transfer of Interest; (d) all certificates and other instruments deemed advisable by the Administrative Member or the Liquidating Trustee, if any, to carry out the provisions of this Agreement, and applicable law or to permit the Company to become or to continue as a limited liability company wherein the Members have limited liability in each jurisdiction where the Company may be doing business; (e) all instruments that the Administrative Member or the Liquidating Trustee, if any, deems appropriate to reflect a change, modification or termination of this Agreement or the Company or the Series in accordance with this Agreement including, the admission of additional Members or substituted members pursuant to the provisions of this Agreement, as applicable; (f) all fictitious or assumed name certificates required or permitted to be filed on behalf of the Company or the Series; (g) all conveyances and other instruments or papers deemed advisable by the Administrative Member or the Liquidating Trustee, if any, including, those to effect the dissolution and termination of the Company (including a Certificate of Cancellation) or the Series; (h) all other agreements and instruments necessary or advisable to consummate any purchase of Investments; (i) all forms, instruments, or documents required to make certain elections pursuant to the Code or state law governing the taxation of limited liability companies; and (j) all other instruments or papers that may be required or permitted by law to be filed on behalf of the Company or the Series. Notwithstanding the foregoing, the Administrative Member may not exercise this power of attorney with respect to matters as to which this Agreement requires the consent of the Members until such consent has been received.

**XIII.2 Additional Functions.**

PLAINTIFF0002224

The foregoing power of attorney:



- (a) is coupled with an interest, is irrevocable and will survive the subsequent death or Disability of any Member or any subsequent power of attorney executed by a Member;
- (b) may be exercised by the Attorney, either by signing separately as attorney-in-fact for each Member or by a single signature of the Attorney, acting as attorney-in-fact for all of them;
- (c) will survive the delivery of an assignment by a Member of all or any portion of its Interest; except that, where the assignee of all of that Member's Interest has been approved by the Administrative Member for admission to the Company or the applicable Series, as a substituted Member, the power of attorney of the assignor will survive the delivery of that assignment for the sole purpose of enabling the Attorney to execute, swear to, acknowledge and file any instrument necessary or appropriate to effect that substitution.

**XIII.3 Delivery of Power of Attorney.** Each Member must execute and deliver to the Administrative Member within 5 Business Days after receipt of the Administrative Member's request, any further designations, powers-of-attorney and other instruments as the Administrative Member reasonably deems necessary to carry out the terms of this Agreement.

# ARTICLE XIV

## MISCELLANEOUS

**XIV.1 Ministerial and Administrative Amendments.** Amendments that under this Agreement are expressly permitted to be made by the Administrative Member, ministerial or administrative amendments to cure ambiguities or inconsistencies as may in the discretion of the Administrative Member be necessary or appropriate and those amendments as may be required by law may be made from time to time without the Consent of any of the Members. Other amendments may be made to this Agreement only with the Consent of a Majority in Interest. Amendments may be made to a Series Addendum with the Consent of Majority in Interest of such Series. Notwithstanding the foregoing, (a) no amendment will be adopted pursuant to this Section 14.1 unless that amendment would not alter, or result in the alteration of, the limited liability of the Members or the status of the Company or any Series as a "partnership" for federal income tax purposes and (b) no amendment that increases the liabilities or duties of a Member (including the Administrative Member under this Agreement may be made without the consent of that Member.

**XIV.2 Amendment Recordation.** Upon the adoption of any amendment to this Agreement, the amendment will be executed by the Administrative Member and, if required, will be recorded in the proper records of each jurisdiction in which recordation is necessary for the Company or any Series to conduct business. Any adopted amendment may be executed by the Administrative Member on behalf of the Members **PLAINTIFF0002225**

the power of attorney granted in Section 13.1.

**XIV.3 Offset Privilege.** The Company may offset against any monetary obligation owing from the Company or any Series to any Members or Administrative Member any monetary obligation then owing from that Member or Administrative Member to the Company or such Series; provided, however, that the offset right will only apply to any monetary obligation owed to that Member or Administrative Member in their capacity as a Member or Administrative Member.

## XIV.4 Notices.

- (a) Any notice or other communication to be given to the Company or the Series, the Administrative Member or any Member in connection with this Agreement will be in writing and will be delivered or mailed by registered or certified mail, postage prepaid, sent by facsimile or electronic mail or otherwise delivered by hand or messenger.
- (b) Each Member hereby acknowledges that the Administrative Member is entitled to transmit to that Member exclusively by e-mail (or other means of electronic messaging) all notices, correspondence and reports, including, but not limited to, that Member's Schedule K-1s.
- (c) Each notice or other communication to the Administrative Member will for purposes of this Agreement be treated as effective or having been given upon the earlier of

    - (i) receipt,
    - (ii) the date transmitted by e-mail, with evidence of transmission from the transmitting device,
    - (iii) acknowledged receipt,
    - (iv) when delivered in person, (v) when sent by electronic facsimile transfer or electronic mail at the number or address set forth below and receipt is acknowledged by the Administrative Member, (vi) 1 Business Day after having been dispatched by a nationally recognized overnight courier service if receipt is evidenced by a signature of a person regularly employed or residing at the address set forth below for that Party or (vii) 3 Business Days after being sent by registered or certified mail, return receipt requested, postage prepaid.

- (d) Any notice must be given, if (x) to the Company or any Series, to the Company's or Series' e-mail address, to the attention of the Administrative Member and (y) to any Member, to that Member's address or number specified in the Interest Register of the Company or the applicable Series. Any Party may by notice pursuant to this Section 14.4 designate any other physical address or e-mail address to which notice to that Party must be given.

**PLAINTIFF0002226**

**XIV.5 Waiver.** No course of dealing or omission or delay on the part of any Party in asserting or exercising any right under this Agreement will constitute or operate as a waiver of any right. No waiver of any provision of this Agreement will be effective, unless in writing and signed by or on behalf of the Party to be charged with the waiver. No waiver will be deemed a continuing waiver or future waiver or waiver in respect of any other breach or default, unless expressly so stated in writing.

**XIV.6 Governing Law.** This Agreement will be construed, performed and enforced in accordance with the laws of the State of Delaware, without giving effect to its conflict of laws principles to the extent those principles or rules would require or permit the application of the laws of another jurisdiction.

**XIV.7 Dispute Resolution.** Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, except for any claim or action that the Administrative Member, any Series or Company may elect to commence to enforce any of its rights or the Members' obligations under this Agreement, will be settled by binding arbitration, before three arbitrators, administered by the American Arbitration Association under and in accordance with its Commercial Arbitration Rules. The decision of the arbitrators shall be non-appealable, binding and conclusive upon all parties thereto and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction.

- (a) Location. Any arbitration will be held in the Arbitration Location.
- (b) Costs. Each of the Parties will equally bear any arbitration fees and administrative costs associated with the arbitration. The prevailing Party, as determined by the arbitrators, will be awarded its costs and reasonable attorneys' fees incurred in connection with the arbitration.
- (c) Consent to Jurisdiction. The Parties hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any courts located in the Arbitration Location, for recognition or enforcement of any award determined pursuant to this Section 14.7.

NOTICE: By becoming a party to this Agreement, each Party is agreeing to have all disputes, claims or controversies arising out of or relating to this Agreement decided by neutral binding arbitration, and is giving up any rights it might possess to have those matters litigated in a court or jury trial. By becoming a party to this Agreement, each Party is giving up its judicial rights to discovery and appeal except to the extent that they are specifically provided for under this Agreement. If any Party refuses to submit to arbitration after agreeing to this provision, that Party may be compelled to arbitrate under federal or state law. By becoming a party to this Agreement, each Party confirms that its agreement to this arbitration provision is voluntary.

**XIV.8 Remedies.** In the event of any actual or prospective breach or default of this Agreement by any Party, the other Parties will be entitled to seek equitable relief, including remedies in the nature of injunction and specific performance.

PL_AINTIFF0002227

being required to post a bond or other security or to establish any actual damages). In this regard, the Parties acknowledge that they will be irreparably damaged in the event this Agreement is not specifically enforced, since (among other things) the Interests are not readily marketable. All remedies under this Agreement are cumulative and not exclusive, may be exercised concurrently and nothing in this Agreement will be deemed to prohibit or limit any Party from pursuing any other remedy or relief available at law or in equity for any actual or prospective breach or default, including the recovery of damages.

**XIV.9 Severability.** The provisions of this Agreement are severable and in the event that any provision of this Agreement is determined to be illegal, invalid or unenforceable in any respect by a court of competent jurisdiction, the remaining provisions of this Agreement will not be affected, but will, subject to the discretion of that court, remain in full force and effect, and any illegal, invalid or unenforceable provision will be deemed, without further action on the part of the Parties, amended and limited to the extent necessary to render that provision, as so amended and limited, legal, valid and enforceable, it being the intention of the Parties that this Agreement and each provision will be legal, valid and enforceable to the fullest extent permitted by applicable law.

**XIV.10 Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. A facsimile, PDF or DocuSign (or similar service) signature will be deemed an original. The Parties hereby Consent to transact business with the Company and each of the other via electronic signature (including via DocuSign, eSignLive, or a similar service). Each Party understands and agrees that their signature page may be disassembled and attached to the final version of this Agreement.

**XIV.11 IRS Circular 230 disclosure.** Any discussion of United States federal tax issues contained in this Agreement, or concerning the investment in the Company, by the Company, Administrative Member, and their respective counsel, is not intended or written to be relied on by the Parties for purpose of avoiding penalties imposed under the Code. Each Party should seek advice from an independent tax adviser based on their particular circumstances.

**XIV.12 Further Assurances.** Each Party shall promptly execute, deliver, file or record those agreements, instruments, certificates and other documents and take other actions as the Administrative Member may reasonably request or as may otherwise be necessary or proper to carry out the terms and provisions of this Agreement and to consummate and perfect the transactions contemplated hereby.

**XIV.13 Assignment.** The rights, interests or obligations of a Party may not be assigned by such Party except in accordance with a Transfer permitted by Article VIII. Any purported assignment without such Consent will be null and void ab initio.

**XIV.14 Binding Effect.** This Agreement will be binding upon and inure to the benefit of the Parties and their respective legal representatives, successors and permitted assigns. This Agreement is not intended, and will not be deemed, to create or confer any right or interest for the benefit of any Person not a party to this Agreement.

PLAINTIFF0002228

**XIV.15 Titles and Captions.** The titles and captions of the Articles and Sections of this Agreement are for convenience of reference only and do not in any way define or interpret the intent of the Parties or modify or otherwise affect any of the

provisions hereof and shall not have any effect on the construction or interpretation of this Agreement.



**XIV.16 Construction.** This Agreement will not be construed against any party by reason of that party having caused this Agreement to be drafted.

**XIV.17 Entire Agreement.** This Agreement, the Subscription Agreements of each Member and any side letter with a Member constitutes the entire understanding and agreement among the Parties and supersedes all prior and contemporaneous understandings and agreements whether written or oral. The Administrative Member and the Company and any Series may enter into side letters with any Member or prospective Member which contain terms different from those in this Agreement or amend and supplement provisions of this Agreement as it applies to such Member. In the event of any inconsistency between the terms of this Agreement and the terms of any side letter, the terms of the side letter shall control.

[Signature page to follow]

IN WITNESS WHEREOF, the undersigned has executed this Agreement effective as of the Effective Date.

| [Entity-name]: |
|---|
| **[Entity-name]**, a Delaware limited liability company |
| Signature: _____ |
| Name: **[Administrative-member-name]** |
| Title: Administrative Member |

IN WITNESS WHEREOF, the undersigned has executed this Agreement effective as of the Effective Date or as of the date of such Member's Closing.

| ADMINISTRATIVE MEMBER: |
|---|
| Signature: _____ |
| Name: **[Administrative-member-name]** |
| Date: **[Date]** |

## Member Signature Page

The undersigned Member hereby executes the Limited Liability Company Operating Agreement of the Company, dated as of the Effective Date, and hereby authorizes this signature page to be attached to a counterpart of that document executed

PLAINTIFF0002229

signature page to be attached to a counterpart of that document executed by the Administrative Member of the Company.

| MEMBER: |
|---|
| Signature of Member or Authorized Signatory: _____ |
| Member Name: [Member-name] |
| Dated: [Date] |

## Exhibit A

FORM OF SUBSCRIPTION AGREEMENT

## Exhibit B

SERIES ADDENDUM

to

Limited Liability Company Agreement of [Entity-name] (the "LLC Agreement")

Name of Series: _____

Date Established: _____

Members, Addresses, Capital Contributions, and Percentage Interests: As set forth on the Interest Register

Objective / Purpose: _____

Investments: _____

Description of Assets: _____

Additional Capital Contribution Requirements (if any): _____

Distribution Policies (if different that those set forth in the LLC Agreement): _____

## Exhibit C

CERTIFICATE OF REGISTERED SERIES

(see attached)

CERTIFICATE OF REGISTERED SERIES

OF

PLAINTIFF0002230

LIMITED LIABILITY COMPANY

This Certificate of Registered Series is being filed pursuant to Section 18-218 of the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq. (the "Act") to form a registered series of a limited liability company pursuant to the Act.

The undersigned, being duly authorized to execute and file this Certificate of Registered Series, does hereby certify as follows:

1. The name of the limited liability company is **[Entity-name].**
2. The name of the registered series is **[Entity-name]** – _____. (Signature Page Follows) IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Registered Series.

| AUTHORIZED PERSON: |
|---|
| Signature: _____ |
| **[Administrative-member-name],** Authorized Person |

| Previous | Next |
|---|---|
| Investment Club | Operating Agreement |

PLAINTIFF0002231



**LEGAL—TOOLS**  DAOLABS

Connect Wallet



# Variables

### LLC's Name

Acme LLC

### Agreement Effective Date

01/01/2023

### Administrative Member's Name

Mr. John Doe

### Arbitration Location

Kalamazoo, Michigan

### Designated Smart Contract Address

0x0000000000000000000000000000000000000000

### LLC's Purpose

To provide explosives to Wile E. Coyote.

### Member's Name

Mr. John Doe

### Series' Name

Acme LLC Explosive Tennis Balls Series

### Series' purpose

To acquire and distribute explosive tennis balls.

### Series' Investments

14 pallets of explosive tennis balls and a cryptopunk.

### Series' Assets Description

Four giant rubber bands and three rocket-powered widgets.

### Series' Capital Contribution Requirements

Additional capital contribution requirements (if any).

### Series' Distribution Policies

Series distribution policies (if different).

PLAINTIFF0002232

Update document



LIMITED LIABILITY COMPANY AGREEMENT [Entity-name]

LIMITED LIABILITY COMPANY AGREEMENT [Entity-name]

ARTICLE I

DEFINITIONS

ARTICLE II

ORGANIZATIONAL MATTERS

ARTICLE III

MEMBERSHIP CAPITAL; CAPITAL ACCOUNTS

ARTICLE IV

MEMBERS

ARTICLE V

MANAGEMENT AND CONTROL OF THE COMPANY

ARTICLE VI

ALLOCATIONS OF NET INCOME AND NET LOSS

ARTICLE VII

DISTRIBUTIONS

ARTICLE VIII

TRANSFERS

ARTICLE IX

RECORDS, REPORTS AND TAXES

ARTICLE X

DISSOLUTION AND LIQUIDATION

ARTICLE XI

ARTICLE XII

REPRESENTATIONS, WARRANTIES AND COVENANTS

ARTICLE XIII

PLAINTIFF0002233

ARTICLE XIII

    POWER OF ATTORNEY

ARTICLE XIV

    MISCELLANEOUS

    Member Signature Page

    Exhibit A

    Exhibit B

    Exhibit C



     

# LIMITED LIABILITY COMPANY AGREEMENT [Entity-name]

Note: Original arbitration location was San Francisco

Note: Series-capital-contribution-requirements and Series-distribution-policies are opti

NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE REGULATORY AUTHORITY HAS APPROVED OR DISAPPROVED THIS LIMITED LIABILITY COMPANY AGREEMENT (THIS "AGREEMENT") OR THE LIMITED LIABILITY COMPANY INTERESTS (THE "INTERESTS") OR THE MERITS OF ACQUIRING INTERESTS PROVIDED FOR HEREIN OR THE MERITS OF ACQUIRING INTERESTS. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE NOT INTENDED TO BE SECURITIES UNDER THE SECURITIES ACT OR UNDER ANY STATE SECURITIES LAWS. TO THE EXTENT THE INTERESTS ARE DEEMED TO BE SECURITIES UNDER THE SECURITIES ACT, THEY ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND THOSE STATES. ANY TRANSFER OR RESALE OF THE INTERESTS IS FURTHER SUBJECT TO RESTRICTIONS, THE TERMS AND CONDITIONS OF WHICH ARE SET FORTH IN THIS AGREEMENT.

Note to User: You acknowledge and agree that the making available of this document to you by DAOLABS shall not create any confidential or special relationship between you and DAOLABS or its affiliates (collectively, "DAOLABS") and does not constitute the provision of legal advice or other professional advice by DAOLABS or its legal counsel. You should seek advice from an attorney licensed in the relevant jurisdiction(s), as well as a tax professional, before relying on this template document.

Additionally, the information provided in this document, any subscription agreement or otherwise by DAOLABS does not constitute tax advice. Any discussion of tax matters is not intended or written to be used, and cannot be used or relied on, for

PLAINTIFF0002234

the purpose of tax planning or avoiding penalties under the Internal Revenue Code
(or equivalent in the relevant jurisdiction) or promoting, marketing or recommending
to another party any transaction or matter.

You further agree and acknowledge that this document, any subscription agreement or
any other document otherwise provided by DAOLABS has not been prepared with your
specific circumstances in mind, may not be suitable for use in your personal
circumstances. Any reliance on this document, any subscription agreement or anything
otherwise provided by DAOLABS or any information contained therein is at your sole
risk and you assume all losses and liability that may result.

Review all documents carefully for accuracy before using them. There may be
[BRACKETED TEXT] requiring your attention.

THIS TEMPLATE IS FOR USE ONLY BY AN INVESTMENT CLUB WITH INDIVIDUALS AND NOT
ENTITIES AS MEMBERS .

SYNDICATE PROVIDES THESE TERMS ON AN "AS IS" BASIS, AND SPECIFICALLY DISCLAIMS ALL
WARRANTIES, TERMS, REPRESENTATIONS AND CONDITIONS WHETHER EXPRESS, IMPLIED, OR
STATUTORY, AND INCLUDING ANY WARRANTIES, TERMS, REPRESENTATIONS AND CONDITIONS OF
MERCHANTABILITY, SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, OR
NONINFRINGEMENT.

# LIMITED LIABILITY COMPANY AGREEMENT [Entity-name]

This limited liability company agreement is made as of **[Date]** (the "Effective Date")
by and among the Members identified on the signature pages hereto and those Persons
who have or may become parties to this Agreement in the future, in accordance with
the terms of this Agreement (collectively the "Parties") of the Company. In
consideration of the mutual covenants in this Agreement the Parties agree as
follows:

# ARTICLE I

## DEFINITIONS

Definitions. When used in this Agreement, the following terms have the meanings
specified in this Article I:

**"Account Address"** means a public key address on the Designated Blockchain Network
that is uniquely associated with a single private key, and at which no smart
contract has been deployed.

**"Act"** means the Delaware Limited Liability Company Act, Section 18-101, et seq., as
it may be amended from time to time and any successor to said law.

**"Additional Capital Contributions"** has the meaning set forth in Section 4.5(d).

**"Administrative Member"** means **[Administrative-member-name]** or such other Person as
may be appointed as a replacement Administrative Member pursuant to Section 5.1(b).

PLAINTIFF0002235

For the avoidance of doubt, the Administrative Member is a Member of the Company.

**"Advance"** has the meaning set forth in Section 4.5(c).

**"Affiliate"** of another Person means (a) a Person directly or indirectly (through one or more intermediaries) controlling, controlled by or under common control with that other Person; (b) a Person owning or controlling 10% or more of the outstanding voting securities or beneficial interests of that other Person; or (c) an officer, Administrative Member, director, partner or member of that other Person. For purposes of this Agreement, "control" of a Person means the possession, directly or indirectly, of the power to direct the management and policies of that Person, whether through the ownership of voting securities, by contract or otherwise. For the avoidance of doubt, no Member will be deemed, solely by virtue of that membership, to be an Affiliate of the Company.

**"Agreement"** means this limited liability company agreement of the Company, as amended from time to time.

**"Arbitration Location"** means [Arbitration-location] .

**"Attorney"** has the meaning specified in Section 13.1.

**"Business Day"** means any day other than Saturday, Sunday, any day which is a federal legal holiday in the United States or any other day on which commercial banks in New York, New York are authorized or required by law to remain closed.

**"Capital Account"** of a Member means the capital account of the Member determined in accordance with Section 3.4 in this Agreement.

**"Capital Call"** has the meaning set forth in Section 4.5(d).

**"Capital Contribution"** of a Member means the total amount of cash and other assets contributed (or deemed contributed under Section 1.7041(b)(2)(iv)(d) of the Treasury Regulations) to the Company or the applicable Series by that Member, net of liabilities assumed or to which the assets are subject.

**"Certificate of Formation"** means the Certificate of Formation of the Company, as amended and restated from time to time, filed with the Office of the Secretary of State of the State of Delaware pursuant to the Act.

**"Claim"** means any past, present or future dispute, claim, controversy, demand, right, obligation, liability, action or cause of action of any kind or nature.

**"Closing"** means the date a Member is admitted to the Company as a Member or the Commitment of a Member is increased (as agreed to by such Member and the Administrative Member).

**"Closing Date"** means the date of a Closing as determined by the Administrative Member.

**"Closing Conditions"** means the conditions of the Closing, as determined by the Administrative Member.

PLAINTIFF0002236

**"Code"** means the Internal Revenue Code of 1986, as amended, from time to time.

**"Commitment"** has the meaning set forth in Section 3.1.

**"Company"** means **[Entity-name]** .

**"Company Minimum Gain"** means the "partnership minimum gain" of the Company or the applicable Series computed in accordance with the principles of Sections 1.7042(b)(2) and 1.704-2(d) of the Treasury Regulations.

**"Confirmation"** of a transaction shall be deemed to have occurred if and only if such transaction has been recorded in accordance with the Consensus Rules in a valid block whose hashed header is referenced by at least ten subsequent valid blocks on the Designated Blockchain.

**"Consensus Attack"** means an attack that: (a) is undertaken by or on behalf of a block producer who controls, or group of cooperating block producers who collectively control, a preponderance of the means of block production on the Designated Blockchain Network; and (b) has the actual or intended effect of:

- (i) reversing any transaction made to or by the Designated Smart Contract after Confirmation of such transaction, including any "double spend" attack having or intended to have such effect; or
- (ii) preventing inclusion in blocks or Confirmation of any transaction made to or by the Designated Smart Contract, including any "censorship attack,"

**"transaction withholding attack"** or "block withholding attack" having or intended to have such effect.

**"Consensus Rules"** means the rules for transaction validity, block validity and determination of the canonical blockchain that are embodied in the Designated Client.

**"Consent"** means the approval of a Person to do the act or thing for which the approval is solicited, or the act of granting the approval, as the context may require.

**"Contract"** means any: (a) written, oral, implied by course of performance or otherwise or other agreement, contract, understanding, arrangement, settlement, instrument, warranty, license, insurance policy, benefit plan or legally binding commitment or undertaking; or (b) any representation, statement, promise, commitment, undertaking, right or obligation that may be enforceable, or become subject to an Order directing performance thereof, based on equitable principles or doctrines such as estoppel, reliance, or quasi-contract.

**"Contributing Member"** has the meaning set forth in Section 4.5(e).

**"Covered Losses"** has the meaning set forth in Section 11.3.

PLAINTIFF0002237

**"Covered Person"** means the Administrative Member, the Partnership Representative, the Liquidating Trustee, any officer of the Company, and their respective Affiliates.

**"DAOLABS"** means DAOLABS, LLC and DAOLABS, Corporation.

**"Deadline"** has the meaning set forth in Section 4.5(d).



**"Designated Blockchain"** means at any given time, the version of the digital blockchain ledger commonly known as "Ethereum" that at least a majority of nodes running the Designated Client recognize as canonical as of such time. For the avoidance of doubt, the "Designated Blockchain" does not refer to the digital blockchain ledger commonly known as "Ethereum Classic" or any other blockchain ledgers from which or to which the Designated Blockchain has been "forked" or "split".

**"Designated Blockchain Network"** means the Ethereum mainnet (networkID:1, chainID:1), as recognized by the Designated Client.

**"Designated Client"** means the Official Go Ethereum client available at https://github.com/ethereum/go-ethereum.

**"Designated Smart Contract"** means the smart contract deployed at address **[Contract-address]** on the Designated Blockchain.

**"Digital Assets"** means tokens, cryptocurrencies, and other digital assets the record of which is primarily stored in a distributed ledger system utilizing cryptographic verification.

**"Disability"** of an individual means the incapacity of the individual to engage in any substantial gainful activity with the Company by reason of any medically determinable physical or mental impairment that reasonably can be expected to last for a continuous period of not less than 12 months as determined by a competent physician chosen by the Company and Consented to by the individual or his legal representative, which Consent will not be unreasonably withheld, conditioned or delayed.

**"Distributable Cash"** at any time means that amount of the cash then on hand or in bank accounts of the Company or the applicable Series which the Administrative Member determines is legally available for Distribution, taking into account (a) the amount of cash required for the payment of all current expenses, liabilities and obligations of the Company or the applicable Series and (b) the amount of cash which the Administrative Member deems necessary or appropriate to establish reserves for the payment of future expenses, liabilities, or obligations, including liabilities which may be incurred in litigation and liabilities undertaken pursuant to the indemnification provisions of this Agreement. "Distributed Subject Property" means any asset, right or property that was once Subject Property and has been distributed to a Member.

**"Distribution"** means the transfer of money or property by the Company or the applicable Series to one or more Members with respect to their Interests, without separate consideration.

PLAINTIFF0002238

separate consideration.

**"Distribution Expenses"** has the meaning set forth in Section 7.1(c).

**"Effective Date"** has the meaning set forth in the initial paragraph of this Agreement.

**"ERISA"** has the meaning set forth in Section 8.4(d).

**"Exception Handling Addendum"** has the meaning set forth in Section 2.12(b)(3)(A).

**"Exception Handling Proposal"** has the meaning set forth in Section 2.12(b)(1)(C).

**"Exception Notice"** has the meaning set forth in Section 2.12(b)(1).

**"Exception Objection Notice"** has the meaning set forth in Section 2.12(b)(3)(C).

**"Fair Market Value"** of any property means, subject to Section 3.4(b), the amount that would be paid for that property in cash by a hypothetical willing buyer to a hypothetical willing seller, each having knowledge of all relevant facts and neither being under a compulsion to buy or sell, as determined by the Administrative Member in good faith; provided, however, the Fair Market Value of any Digital Asset shall be the price in US Dollars per token of the relevant Digital Asset as set forth at 5:00 pm Pacific Time on the day immediately preceding the applicable valuation date on coinmarketcap.com (or, if not valued on coinmarketcap.com, such other publicly available third party valuation website as the Administrative Member may reasonably select), if such price is available.

**"Family Members"** means an individual who is a Member's spouse, child, stepchild, son-in-law, daughter-in-law, father, or mother, including adoptive relationships.

**"Fiscal Year"** means the Company's or the applicable Series' taxable year, which will be the taxable year ended December 31, or other taxable year as may be selected by the Administrative Member in accordance with applicable law.

**"Initial Closing"** means the first Closing.

**"Initial Closing Date"** means the date selected by the Administrative Member for the Initial Closing.

**"Interest"** means with respect to each Member, as of any date, its fractional ownership of the membership interest in the Company or the applicable Series which is expressed as a percentage, the numerator of which is that Member's then Capital Contributions and the denominator of which is the sum of the then Capital Contributions of all Members to the Company or the applicable Series. A Member's Interest represents the totality of the Member's interests in the Company or the applicable Series and the right of that Member to all benefits (including, without limitation, allocations of Net Income and Net Losses and the receipt of Distributions) to which a Member may be entitled pursuant to this Agreement and under the Act, together with all obligations of that Member to comply with the terms and provisions of this Agreement and the Act. If one or more Series are established pursuant to Section 2.13, the combined Interests of all Members of each Series shall

PLAINTIFF0002239

at all times equal 100%. If no Series are established, the combined Interests of all Members of the Company shall at all times equal 100%.



**"Interest Register"** has the meaning specified in Section 2.8.

**"Investment"** means an investment by the Company or the applicable Series in a Digital Asset or a Portfolio Company Security.

**"Legal Order"** means any restraining order, preliminary or permanent injunction, stay or other order, writ, injunction, judgment or decree that either: (a) is issued by a court of competent jurisdiction, or (b) arises by operation of applicable law as if issued by a court of competent jurisdiction, including, in the case of clause "(b)" an automatic stay imposed by applicable law upon the filing of a petition for bankruptcy.

**"Liquidating Trustee"** means the Administrative Member (or its authorized designee) or, if there is none, a Person selected by a Majority in Interest to act as a liquidating trustee of the Company or the applicable Series.

**"Liquidity Event Proceeds"** means (a) the receipt by the Company or the applicable Series of a material amount of cash, or non-cash assets that may readily be transferred or liquidated for cash, as set forth in Section 7.1, in respect of an Investment as a result of (i) the sale or other liquidation of such Investment; (ii) a Merger Event or a sale of all or substantially all of the assets, of a Portfolio Company; (iii) the bankruptcy, liquidation or dissolution of a Portfolio Company or (b) in the case of a Portfolio Security, the determination by the Administrative Member that such Portfolio Security is then freely or readily transferable by the holder thereof without restriction under applicable law and the documents governing the terms of such Portfolio Security or the Company's investment therein.

**"Majority in Interest"** means, at any time, a majority of the total Interests held by all Members in the Company or the applicable Series. Except as otherwise expressly required under this Agreement, whenever in this Agreement the Members are permitted or required to vote on, approve, make a determination as to, or consent to any matter or proposed action, such vote, approval, determination or consent shall only require a Majority in Interest.

**"Material Adverse Exception Event"** means that one or more of the following has occurred, is occurring or would reasonably be expected to occur:

- (a) a Consensus Attack adversely affecting the results or operations of the Designated Smart Contract;
- (b) the Designated Smart Contract having become inoperable, inaccessible or unusable, including as the result of any code library or repository incorporated by reference into the Designated Smart Contract or any other smart contract or oracle on which the Designated Smart Contract depends having become inoperable, inaccessible or unusable or having itself suffered a Material Adverse Exception Event, mutatis mutandis;
- (c) a material and adverse effect on the use, functionality or

PLAINTIFF0002240



performance of the Designated Smart Contract as the result of any bug, defect or error in the Designated Smart Contract or the triggering, use or exploitation (whether intentional or unintentional) thereof (it being understood that for purposes of this clause "(iii)", a bug, defect or error will be deemed material only if it results in a loss to a Party of at least 20 percent of the Subject Property);

- (d) any unauthorized use of an administrative function or privilege of the Designated Smart Contract, including:

    - (i) any use of any administrative credential, key, password, account or address by a Person who has misappropriated or gained unauthorized access to such administrative credential, key, password, account or address or
    - (ii) any unauthorized use of an administrative function or privilege by a Party or a representative of a Party; or

- (e) the Designated Smart Contract, the Company or the applicable Series or the Subject Property is subject to a Legal Order that prohibits the Designated Smart Contract (or that, if the Designated Smart Contract were a Person, would prohibit the Designated Smart Contract) from executing any function or operation it would otherwise reasonably be expected to execute.

**"Member"** means any Person admitted as a Member pursuant to Section 4.1 that has not ceased to be a Member pursuant to this Agreement or the Act.

**"Member Minimum Gain"** means the "partner nonrecourse debt minimum gain" of the Company or the applicable Series computed in accordance with the principles of Section 1.7042(i)(3) of the Treasury Regulations.

**"Member Nonrecourse Deductions"** means the "partner nonrecourse deductions" of the Company or the applicable Series computed in accordance with the principles of Sections 1.704-2(i)(1) and (2) of the Treasury Regulations.

**"Merger Event"** means a Portfolio Company has merged or consolidated with or into any other entity, and after giving effect to that transaction, the equity owners of a Portfolio Company immediately prior to that transaction ceased to own at least a majority of the equity interest of the surviving or resulting entity.

**"Negotiation Period"** has the meaning set forth in Section 2.12(b)(3)(D).

**"Net Fair Market Value"** of an asset means its Fair Market Value net of any liability secured by the asset that the Member or the Company or the applicable Series, as applicable, assumes or takes subject to.

**"Non-Contributing Member"** has the meaning set forth in Section 4.5(e).

**"Nonrecourse Deductions"** means the "nonrecourse deductions" of the Company or the

applicable Series computed in accordance with Section 1.704-2(b) of the Treasury Regulations.

**"Net Income"** and "Net Loss" means, for each Fiscal Year, the taxable income and taxable loss, as the case may be, of the Company or the applicable Series for that Fiscal Year determined in accordance with federal income tax principles, including items required to be separately stated, taking into account income that is exempt from federal income taxation, items that are neither deductible nor chargeable to a capital account and rules governing depreciation and amortization, except that in computing taxable income or taxable loss, the "tax book" value of an asset will be substituted for its adjusted tax basis if the two differ, and any gain, income, deductions or losses specially allocated under Article VI will be excluded from the computation. Any adjustment to the "tax" book value of an asset pursuant to Section 1.704-1(b)(2)(iv)(e), (f) and (g) of the Treasury Regulations will be treated as Net Income or Net Loss from the sale of that asset.

**"Partnership Representative"** means the Person designated pursuant to Section 9.4.

**"Permitted Transferee"** has the meaning set forth in Section 8.2.

**"Person"** means any human, robot, bot, artificial intelligence, corporation, partnership, association or other individual or entity recognized as having the status of a person under the law.

**"Portfolio Company"** means the issuer of a Portfolio Company Security.

**"Portfolio Company Securities"** means debt or equity securities acquired by the Company or the applicable Series in accordance with this Agreement.

**"Proceeding"** has the meaning set forth in Section 11.3.

**"Receiving Party"** has the meaning set forth in Section 2.12(b)(1).

**"Registered Agent"** means the registered agent appointed by the Company as the Company's registered agent for the service of process on the Company in the State of Delaware.

**"Sending Party"** has the meaning set forth in Section 2.12(b)(1).

**"Series"** means one or more separate series of Interests established by the Administrative Member pursuant to this Section 2.13, each of which shall be separate and distinct from any other Series and may be a "protected series" or a "registered series" for purposes of the Act. To the extent any Series are established, the provisions of this Agreement relating to Series shall apply. If no Series are established, then the provisions of this Agreement relating to Series shall not apply.

**"Shortfall Amount"** has the meaning set forth in Section 4.5(e).

**"Standstill Period"** has the meaning set forth in Section 2.12(b)(2).

**"Subject Property"** means the property of the Company that is the subject

PLAINTIFF0002242

"**Subject Property**" means the property of the Company that is the subject of the Designated Smart Contract.

"**Subscription Agreement**" means a Subscription Agreement in the form of Exhibit A or such other form as is determined by the Administrative Member to be acceptable.

"**Transfer**" means, with respect to an Interest, the sale, assignment, transfer, other disposition, pledge, hypothecation or other encumbrance, whether direct or indirect, voluntary, involuntary or by operation of law, and whether or not for value, of that Interest. Transfer includes any transfer by gift, devise, intestate succession, sale, operation of law, upon the termination of a trust, because of or in connection with any property settlement or judgment incident to a divorce, dissolution of marriage or separation, by decree of distribution or other court order or otherwise.

"**Treasury Regulations**" means the income tax regulations, including temporary regulations, promulgated by the United States Treasury Department under the Code, as such regulations may be amended from time to time (including corresponding provisions of superseding regulations).

"**40 Act**" has the meaning set forth in Section 8.4(c).

# ARTICLE II

## ORGANIZATIONAL MATTERS

**II.1 Name.** The name of the Company is set forth on the cover page of this Agreement. The business of the Company may be conducted under that name or under any other name that the Members may determine.

**II.2 Term.** The Parties hereto as of the Effective Date, by execution of this Agreement and the filing of the Certificate of Formation, hereby form the Company as a limited liability company under and pursuant to the Act as of the Effective Date. The term of the Company commenced on the Effective Date and will continue in full force and effect until the Company is terminated pursuant to Article X.

**II.3 Member Information.** Each Member may be required by the Company, at any time, to provide basic Know Your Customer (KYC) information, such as copy of national ID, name, proof of address, Form W-9, among others, in the event where: (a) the Company desires to obtain a bank account, (b) the Company is legally required to provide such information, or (c) any Series will be formed or become a "registered series" (as defined in the Act) in the State of Delaware.

**II.4 Office and Agent.** The Company will maintain its principal office at a place as the Administrative Member may determine from time to time. The Administrative Member will notify the Members of any change in principal office of the Company. The Registered Agent and the address of the registered office of the Company in the State of Delaware as of the Effective Date is set forth in the Certificate of Formation. The Administrative Member may change the identity of the Registered Agent and the Company's registered office in accordance with the Act. The Administrative Member will notify the Members of any change in the identity of the Registered

PLAINTIFF0002243

Member will notify the Members of any change in the identity of the Registered Agent or the location of the Company's registered office in the State of Delaware.

**II.5 Purpose of the Company.** The Company has been created to **[Entity-purpose]** and the purpose of the Company shall be to engage in the foregoing and in any and all lawful activities and transactions as may be necessary, advisable, or desirable, determined by the Administrative Member, in its sole discretion, to carry out the foregoing or any reasonably related activities.

**II.6 Intent.** It is the intent of the Members that the Company and each series will be treated as a "partnership" for federal income tax purposes. It also is the intent of the Members that the Company not be operated or treated as a "partnership" for purposes of Section 303 of the United States Bankruptcy Code.

**II.7 Qualification.** The Administrative Member shall cause the Company to qualify to do business in each jurisdiction where qualification is required. The Administrative Member has the power and authority to execute, file and publish all certificates, notices, statements or other instruments necessary to permit the Company to conduct business as a limited liability company in all jurisdictions where the Company elects to do business.

**II.8 Interest Register.** The Administrative Member will maintain a register (the ("Interest Register") that sets forth the name, contact information, Commitment, Capital Contributions and Interest of each Member. The Interest Register will be available to each Member at request of such Member. Each Member shall promptly provide, upon request, the Administrative Member with the information required to be set forth for that Member on the Interest Register and shall promptly notify the Administrative Member of any change to that information. The Administrative Member, or a designee of the Administrative Member, shall update the Interest Register from time to time as necessary to accurately reflect the information therein as known by the Administrative Member, including, without limitation, admission of new Members, but no update will constitute an amendment for purposes of Section 14.1. Any reference in this Agreement to the Interest Register will be deemed to be a reference to the Interest Register as amended and in effect from time to time.

**II.9 Maintenance of Separate Existence.** The Company will do all things necessary to maintain its limited liability company existence separate and apart from the existence of each Member, any Affiliate of a Member and any Affiliate of the Company, including maintaining the Company's books and records on a current basis separate from that of any Affiliate of the Company or any other Person. In furtherance of the foregoing, the Company must (a) maintain or cause to be maintained by an agent under the Company's control physical possession of all its books and records (including, as applicable, storage of electronic records online or in "cloud" services), (b) account for and manage all of its liabilities separately from those of any other Person, and (c) identify separately all its assets from those of any other Person.

**II.10 Title to Assets.** All assets of the Company will be deemed to be owned by the Company as an entity, and no Member, individually, will have any direct ownership interest in those assets. Each Member, to the extent permitted by applicable

**PLAINTIFF0002244**

hereby irrevocably waives its rights to a partition of the assets of the Company and, to that end, agrees that it will not seek or be entitled to a partition of any assets, whether by way of physical partition, judicial sale or otherwise.

**II.11 Events Affecting a Member.** The death, bankruptcy, withdrawal, insanity, incompetency, temporary or permanent incapacity, liquidation, dissolution, reorganization, merger, sale of all or substantially all the stock or assets of, other change in the ownership or nature of a Member will not dissolve the Company and, upon the happening of any such event, the affairs of the Company will be continued without dissolution by the remaining Members or any successor entities thereto.

## II.12 Effects of Designated Smart Contract.

- (a) General Binding Effect.

  - (1) Smart Contract Results Binding. Subject to Section 2.12(b) the results of operation of the Designated Smart Contract shall be determinative of the rights and obligations of, and shall be final, binding upon and non-appealable by, each of the Parties with respect to the Subject Property.
  - (2) Smart Contract Trumps Other Contracts. Except as set forth in Section 2.12(b), if there is any conflict or inconsistency between: (A) this Agreement or any other Contract between or involving the Parties; and (B) any Contract created or implied by, or embodied in, the machine, assembly or other code, or the results of operation, of the Designated Smart Contract, then the Contract referred to in the preceding clause "(B)" shall prevail over the Contract referred to in the preceding clause "(A)."
  - (3) Prohibition of Transfers. Each Party shall not, without the prior written consent of all of the other Parties, directly or indirectly take or attempt to take any of the following actions:

    - (A) convey any of the Subject Property other than such Party's Distributed Subject Property it being understood that for a Party to "convey" any of the Subject Property means for such Party to or enter into any Contract that may obligate such Party to: (1) create, perfect or enforce any lien on, (2) pledge, hypothecate, grant an option or derivative security with respect to or (3) convey, sell, transfer or dispose of such Subject Property or any right or interest of a Party to or in such Subject Property; or

PLAINTIFF0002245

Subject Property; or

- (B) cause, encourage or facilitate, a Material Adverse Exception Event.

- (b) Exception Handling. Notwithstanding anything to the contrary set forth in Section 2.12(a), if there is a Material Adverse Exception Event, then the rules and procedures set forth in this Section 2.12(b) shall determine the rights and obligations of the Parties relating to the Subject Property.



  - (1) Exception Notice. If any Party becomes aware that there is a Material Adverse Exception Event, such Party (the "Sending Party") shall deliver to the other Parties (the "Receiving Parties") a notice (an "Exception Notice") signed by such Party:

      - (A) certifying that the Sending Party believes in good faith that there is a Material Adverse Exception Event;
      - (B) describing in reasonable detail the events, facts, circumstances and reasons forming the basis of such belief;
      - (C) describing in reasonable detail any proposal by the Sending Party of the actions to be taken, the agreements to be entered into, and the remedies to be sought by the Parties in response to the Material Adverse Exception Event (an "Exception Handling Proposal");
      - (D) including copies of any written evidence or other material written information, and summaries of any other evidence, relevant to, and material for the consideration of, the Material Adverse Exception Event and the other matters referred to in the Exception Notice; and
      - (E) containing a representation by the Sending Party, made to and for the benefit of the Receiving Parties with the understanding that the Receiving Party will rely thereon, that, to the Sending Party's knowledge, the certification and statements made pursuant to the preceding clauses "(A)" and "(B)" are accurate as of the date of the Exception Notice, and, considered collectively, do not contain any untrue statement of a material fact

PLAINTIFF0002246



or omit to state any material fact necessary in order to make such statements, in light of the

circumstances in which they were made, not misleading.

- (2) Exception Standstill. During the period commencing upon the earlier of any Party becoming aware that there is a Material Adverse Exception Event or being delivered an Exception Notice and ending with the Parties entering into an Exception Handling Addendum, agreeing that no Material Adverse Exception Event has occurred or receiving a final decision of an arbitrator in accordance with Section 2.12(b)(3) (the "Standstill Period"), such Party shall: (A) treat all of the Distributed Subject Property of such Party that may have been transferred to such Party as a result of the Material Adverse Exception Event as if it were Subject Property; and (B) deposit and maintain such Distributed Subject Property in a segregated Account Address to be treated, to the extent permitted by applicable legal requirements, as a custodial trust held for the benefit of the other Parties.
- (3) Determination of Exception Handling.

  - (A) The term "Exception Handling Addendum" refers to an addendum to this Agreement approved by a Majority in Interest which sets forth a description of the Material Adverse Exception Event and the actions to be taken, the agreements to be entered into, and the remedies to be sought in response thereto. Each Exception Handling Addendum shall automatically and without further action of the Parties be deemed incorporated into and to form a part of this Agreement.
  - (B) Notwithstanding Section 2.14(b)(3) (A), if the Sending Party has provided an Exception Handling Proposal, and no Receiving Party disputes the existence of the Material Adverse Exception Event described in the Exception Notice or objects to the terms of the Exception Handling Proposal included in the Exception Notice within 3 Business Days after delivery of the Exception Notice, then the Exception Handling Proposal shall be deemed to have been approved

PLAINTIFF0002247

by all Parties as the Exception Handling Addendum.



- (C) If a Receiving Party disputes the existence of a Material Adverse Exception Event, or does not wish to accept all or any part of the Exception Handling Proposal included in the Exception Notice, if any, then the Receiving Party shall promptly (but in any event within 3 Business Days of delivery of the Exception Notice) deliver a written notice of such non-acceptance (an "Exception Objection Notice") to the Sending Party and each other Receiving Party. The Exception Objection Notice shall include the same categories of information, statements, evidence and representations and warranties as would be required for an Exception Notice, mutatis mutandis, and the basis for the objection to the Exception Handling Proposal.
- (D) If any Receiving Party delivers a timely Exception Objection Notice, then during the continuous 30-day period beginning on the date such Exception Notice is delivered to the other Parties (the "Negotiation Period"), the Parties shall use commercially reasonable efforts to negotiate in good faith to agree upon the existence or non-existence of a Material Adverse Exception Event and the Exception Handling Addendum to be approved in response to such Material Adverse Exception Event.
- (E) If the Parties fail to reach an agreement resulting in an Exception Handling Addendum during the Negotiation Period (or a determination that no Material Adverse Exception Event has occurred), then any Party may initiate an arbitration action to resolve the issues in accordance with the procedures set forth in Section 14.7; provided the decision of the arbitrators shall include, among any other determinations. a determination

PLAINTIFF0002248

of the treatment of any Distributed
Subject Property and whether to extend,
modify or terminate the covenants
applying to the Distributed Subject
Property during the Standstill Period.

## II.13 Establishment of Series.



The Members, acting by a Majority in Interest, shall have full power and authority
to approve the establishment of one or more Series (as defined below), and upon such
approval, the Administrative Member shall establish such Series pursuant to the
provisions of this Section 2.3 through the adoption of a Series Addendum (as defined
below) and, if such Series shall be a "registered series" (within the meaning of the
Act), the execution and filing of a Certificate of Registered Series with the Office
of the Secretary of State of Delaware in the form attached hereto as Exhibit C
hereto, whereupon such Series shall be established. The Interests in each Series are
and shall be separate and distinct from the Interests in any other Series. In
connection with the establishment of a Series hereunder, the Administrative Member
may, in its sole discretion and without obtaining the consent, vote or other
approval of the other Members:

- (i) issue Interests without limitation as to number to such persons or entities
  and for such amount and type of consideration, including cash or securities, at
  such time or times and on such terms as the Administrative Member may deem
  appropriate and in connection therewith to admit such persons or entities as
  Members associated with such Series,
- (ii) establish, designate and fix such preferences, voting powers, rights,
  duties and privileges and business purpose of each Series as the Administrative
  Member may from time to time determine, which preferences, voting powers,
  rights, duties and privileges may be senior or subordinate to (or in the case
  of business purpose, different from) any existing Series and may be limited to
  specified property or obligations of the Company or profits and losses
  associated with specified property or obligations of the Company,
- (iii) divide or combine the Interests of any Series into a greater or lesser
  number without thereby materially changing the proportionate beneficial
  interest of the Interests of such Series in the assets held with respect to
  that Series and
- (iv) combine the assets and liabilities belonging to any two or more Series
  into assets and liabilities belonging to a single Series. The relative
  preferences, voting powers, rights, duties and privileges and business purpose
  of any Series established by the Administrative Member will be as set forth in
  an addendum to this Agreement that covers the terms specific to a particular
  Series, each of which shall be a part of this Agreement (each, a "Series
  Addendum") and, to the extent of any inconsistency between the provisions set
  forth herein and in the Series Addendum, the terms of the Series Addendum shall
  control. A form of Series Addendum is attached as Exhibit B hereto. Without
  limiting the authority of the Members to establish Series in the future as set
  forth above, the Parties hereby establish [Series-name] as a Series, and the
  Series Addendum for [Series-name] is annexed hereto and, if such Series is
  intended to be a "registered series" (within the meaning of the

PLAINTIFF0002249

intended to be a "registered series within the meaning of the Act), the Administrative Member shall file a Certificate of Registered Series for such Series, whereupon such Series shall be formed. Subject to variation by any

Series Addendum, Interests of any Series that may from time to time be established by the Administrative Member shall (unless the Administrative Member otherwise determines at the time of establishing the same) have the following relative rights and preferences:



- (a) Assets Belonging to Series. All consideration received by the Company for the issue or sale of Interests of a particular Series, together with all assets in which such consideration is invested or reinvested, all income, earnings, profits, and proceeds thereof, including any proceeds derived from the sale, exchange or liquidation of such assets, and any funds or payments derived from any reinvestment of such proceeds in whatever form the same may be, shall be held for the benefit of the Members who have Interests in that Series and shall irrevocably belong to that Series for all purposes, subject only to the rights of creditors of such Series and shall be so recorded upon the books of account of the Company. Such consideration, assets, income, earnings, profits, and proceeds thereof, including any proceeds derived from the sale, exchange or liquidation of such assets, and any funds or payments derived from any reinvestment of such proceeds, in whatever form the same may be, are herein referred to as "assets belonging to" or "assets of" that Series. In the event that there are any assets, income, earnings, profits and proceeds thereof, funds or payments that are not readily identifiable as assets of any particular Series (collectively "General Assets"), the Administrative Member shall allocate such General Assets to, between or among any one or more of the Series in such manner and on such basis as the Administrative Member, in its sole discretion, deems fair and equitable, and any General Assets so allocated to a particular Series shall be assets belonging to that Series. Each such allocation by the Administrative Member shall be conclusive and binding upon the Members associated with all Series for all purposes. Pursuant to the applicable provisions of the Act, the records maintained for each Series shall account for the assets of Series separately from the assets of all other Series and the General Assets of the Company not allocated to such Series. No Series shall have any right to or interest in the assets belonging to any other Series, and no Member shall have any right or interest with respect to the assets belonging to any Series in which it does not have an Interest. The Administrative Member shall operate the business and manage the assets belonging to each Series in the manner described in this Agreement (including the Series Addendum relating to such Series).
- (b) Liabilities Belonging to Series. The assets belonging to each particular Series shall be charged with the liabilities of that Series and all expenses, costs, charges and reserves attributable to that Series. The debts, liabilities, obligations, expenses, costs,

PLAINTIFF0002250



charges and reserves so charged to a Series are herein referred to as "liabilities belonging to" or "liabilities of" that Series. The Administrative Member shall allocate general debts, liabilities, obligations, expenses, costs or charges of the Company that are not readily identifiable with respect to any particular Series ("General Liabilities") among the Series in such manner as may be determined by the Administrative Member, in its sole discretion, to be fair and reasonable.

- (c) Liabilities of Series. In accordance with the applicable provisions of the Act, without limitation of the provisions of paragraph (ii) hereof relating to the allocation of General Liabilities, the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of such Series only, and not against the assets of the Company generally or against any other Series thereof, and, except to the extent provided in paragraph (ii) hereof relating to the allocation of the General Liabilities, none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the Company generally or any other Series shall be enforceable against the assets of such Series. Notice of the foregoing limitation on liabilities of a Series shall be set forth in the Certificate of Formation.
- (d) Voting. On each matter submitted to a vote or permitted or required to be taken by the Members:

    - (1) with respect to any vote, matter or action affecting a Series, each Member who holds an Interest in such Series shall be entitled to a vote proportionate to its Interest in such Series as recorded on the books of the Company with respect to such Series, all Members who hold an Interest in such Series shall vote as a separate class, and the vote or action of a Majority in Interest of the Members associated with such Series shall control; and
    - (2) notwithstanding the foregoing, in the event of a vote, matter or action affecting the Company as a whole (regardless of whether such vote, matter of action also affects one or more Series), each Member shall be entitled to a vote proportionate to the proportion that its Capital Contributions to all Series and the Company bears to the Capital Contributions of all Members to all Series and the Company, all Members shall vote together as a single class, and the vote or action of Members holding a majority of all Capital Contributions to all Series and the Company shall control.

- For the avoidance of doubt, the provisions of this Section 2.3(d)

PLAINTIFF0002251

shall apply solely to the extent that one or more Series has been established.



- (e) Application of this Agreement with respect to Series. References to the Company in this Agreement shall be deemed to include references to each Series, as applicable, as determined by the Administrative Member in its sole discretion. This Agreement and all provisions herein will be interpreted in a manner to give full effect to the separateness of each Series. The Administrative Member shall take reasonable steps as are necessary to implement the provisions of this Section.

**II.14 Specific Disclaimer.** The Members agree to the disclaimers set forth here:

The use of an LLC with protected or registered Series is a relatively recent legal advent and is subject to various legal uncertainties regarding its validity and use cases, including, without limitation, uncertainties relating to:

- the non-recognition of such type of legal entity and structure by other U.S. States, such as California, New York and Massachusetts;

- the novelty and lack of established precedent regarding LLCs with Series and any liability "spill-over" risks between the Series and the Company;

- the lack of regulatory clarity regarding the taxation of Series of an LLC and an LLC with Series; and

- the lack of legal and regulatory clarity regarding the treatment of Series of an LLC and an LLC with Series in bankruptcy proceedings under federal law;

Notwithstanding anything to the contrary in the Agreement, the Members shall be entitled to dissolve or terminate, as applicable, the Company or any Series at any time, in the event where there is any risk or threatened risk of liability with respect to the existence of Series or the Company in relation to the Company's or any Series' affairs.

# ARTICLE III

## MEMBERSHIP CAPITAL; CAPITAL ACCOUNTS

**III.1 Membership Capital.** Upon each Closing, each participating Member shall make a Capital Contribution in an amount equal to its accepted Subscription Amount as set forth in its Subscription Agreement (its "Commitment") in exchange for an Interest.

**III.2 No Further Capital Contributions.** No Member will be required to make Capital Contributions in the aggregate in excess of that Member's then accepted Commitment or lend money to the Company or the applicable Series.

**III.3 In-Kind Contributions.** In the sole discretion of the Administrative Member, Capital Contributions can be made via non-cash assets, such as Portfolio Company

PLAINTIFF0002252

Securities or Digital Assets. Non-cash assets will be valued at their Net Fair Market Value on the date of contribution.

### III.4 Capital Accounts.

- (a) A separate capital account will be established and maintained for each Member ("Capital Account") reflecting each Member's Interest in the Company or in each Series as applicable. 
- (b) The Capital Accounts of Members will be maintained in accordance with the rules of Section 704(b) of the Code and the related Treasury Regulations (including Section 1.704-1(b)(2)(iv)). The Capital Accounts will be adjusted by the Administrative Member upon an event described in Sections 1.704-1(b)(2)(iv)(e) and (f)(5) of the Treasury Regulations in the manner described in Sections 1.704-1(b)(2)(iv)(e), (f) and (g) of the Treasury Regulations if the Administrative Member determines that the adjustments are necessary or appropriate to reflect the relative economic interests of the Members in the Company, and at other times as the Administrative Member may determine is necessary or appropriate to reflect the relative economic interests of the Members. In determining Fair Market Value of an asset, the provisions of Section 1.704-1 of the Treasury Regulations shall be applied.
- (c) If any Interest is Transferred pursuant to the terms of this Agreement, the transferee will succeed to the Capital Account and the respective Interest of the transferor to the extent the Capital Account and Interest is attributable to the Interests so Transferred.

**III.5 Interest on Capital.** No Member will be entitled to receive any interest on its Capital Contributions or Capital Account.

**III.6 Return of Capital Contributions.** Except as otherwise provided in this Agreement, no Member has any right to withdraw or reduce its Capital Contribution or Commitment.

**III.7 No Priorities of Members.** Subject to the provisions of this Agreement, no Member will have a priority over any other Member as to any Distribution, whether by way of return of capital or by way of profits, or as to any allocation of Net Income, Net Loss or special allocations.

# ARTICLE IV

## MEMBERS

### IV.1 Admission of Members.

- (a) Except in connection with a Transfer permitted pursuant to Article VIII, only individuals will be admitted to the Company as Members. The individuals who, as of the Initial Closing Date, have supplied the Company with a signed, fully completed Subscription

PLAINTIFF0002253



Agreement, which has been accepted by the Administrative Member, together with an executed signature page to this Agreement and any other information that may be required pursuant to Section 12.3 (as

determined in good faith by the Administrative Member) shall be admitted as Members effective as of the Initial Closing Date. With the consent of a Majority in Interest or in the case of a Transfer permitted by Article VIII, with the consent of the Administrative Member pursuant to Section 8.3 additional Members may be admitted to the Company and existing Members may increase their Commitments from time to time on such date and upon such terms and conditions, including Closing Conditions, as determined by the Administrative Member; provided no Person shall be admitted as a Member unless and until such Person has supplied the Company with a signed, fully completed Subscription Agreement, which has been accepted by the Administrative Member, together with an executed signature page to this Agreement and any other information that may be required pursuant to Section 12.3 (as determined in good faith by the Administrative Member).

- (b) Notwithstanding Section 4.1(a), the Company will be deemed "closed", such that no additional Members may be admitted except in connection with a Transfer permitted by Article VIII, or increased Commitments are no longer accepted following the earliest of (i) the date the Administrative Member closes the Company, (ii) the maximum number of Members is reached (as specified by the Administrative Member), and (iii) the set maximum amount of Capital Contributions to the Company is reached (as specified by the Administrative Member ). This can be seen when the closedSyndicate event is emitted for a given Syndicate address within the Syndicate smart contract.

**IV.2 Nature of Ownership.** Interests held by Members constitute personal property.

**IV.3 Dealing with Third Parties.** Unless admitted as a Member as provided in this Agreement, no Person will be considered a Member. The Company and the Administrative Member need deal only with Persons admitted as Members. The Company, the Series, and the Administrative Member will not be required to deal with any other Person (other than with respect to Distributions to assignees pursuant to assignments in compliance with Article VIII) merely because of an assignment or transfer of any Interest to that Person whether by reason of the Disability of a Member or otherwise; provided, however, that any Distribution by the Company or the applicable Series to the Person shown on the Interest Register as a Member or to its legal representatives, or to the assignee of the right to receive such Member's Distributions as provided in this Agreement, will relieve the Company or the applicable Series and the Administrative Member of all liability to any other Person who may be interested in that Distribution by reason of any other assignment by the Member or by reason of its Disability, or for any other reason.

**IV.4 Members are not Agents.** Pursuant to Article V of this Agreement, the management of the Company and each Series is vested in the Members as a group. No Member acting alone has any right to direct the management of the Company or any Series except as

**PLAINTIFF0002254**

expressly authorized by the Act or this Agreement. Except as expressly authorized in this Agreement or in writing by a Majority in Interest, no Member, acting solely in the capacity of a Member, is an agent of the Company or any Series, nor does any

Member, have any power or authority to bind or act on behalf of the Company or any Series in any way, to pledge its credit, to execute any instrument on its behalf or to render it liable for any purpose.

## IV.5 Expenses.

- (a) The Company or the applicable Series shall maintain reserves from the assets of the Company or the applicable Series (including Capital Contributions made by the Members) for the payment of the expenses, liabilities and obligations of the Company or the applicable Series, including for taxes, contingent liabilities or probable losses or foreseeable expenses, in such accounts and in such amounts that the Administrative Member deems necessary or appropriate, subject to increase or reduction at the Administrative Member's sole discretion. All organizational and operating costs and expenses of the Company or the applicable Series will be paid by the Company or the applicable Series (excluding any regulatory expenses, or other costs incurred by the Administrative Member in connection with its daily operations, including but not limited to salary and other payments to employees of the Administrative Member).
- (b) The Administrative Member will, to the extent of available funds of the Company or the applicable Series, pay or cause to be paid, all Company operating costs and expenses incurred by the Company or the applicable Series or on its behalf, including (i) out-of-pocket expenses that are associated with disposing of Investments, including transactions not completed; (ii) extraordinary expenses, if any (such as certain valuation expenses, litigation and indemnification payments); (iii) interest on borrowed money, investment banking, financing and brokerage fees and expenses, if any; (iv) expenses associated with the Company or the applicable Series' tax compliance costs, tax returns and Schedules K-1, custodial, legal and insurance expenses, any taxes, fees or other governmental charges levied against the Company or the applicable Series; (v) attorneys' and accountants' fees and disbursements on behalf of the Company or the applicable Series; (vi) insurance, regulatory or litigation expenses (and damages); (vii) expenses incurred in connection with the winding up or liquidation of the Company or the applicable Series; (viii) expenses incurred in connection with any amendments to the constituent documents of the Company or the applicable Series, and related entities; (ix) except as set forth in Section 4.5(a), all out of pocket costs and expenses incurred by the Administrative Member in connection with its services as such to the Company or the applicable Series; and (x) expenses incurred in connection with the distributions to the Members and in connection with any meetings of the Members called by the Administrative Member.
- (c) If the Administrative Member determines at any time, or from time

PLAINTIFF0002255

to time, that the available funds of the Company or the applicable Series (after the drawdown of any then unfunded Commitments) are not sufficient to pay the Company's or the applicable Series' operating

costs and expenses, then the Administrative Member may, but is not required to, loan its own funds to the Company or the applicable Series for the payment of such costs and expenses (an "Advance"). The Company or the applicable Series shall reimburse the Administrative Member for any such Advance together with interest on such Advance from the date of such Advance at an annual rate of 10%. Any such Advance, together with the interest thereon, shall be an expense of the Company or the applicable Series and shall be paid by the Company or the applicable Series prior to making any further Distributions. Payments by the Company or the applicable Series shall be applied first to accrued interest on and then to the principal of such Advance. The determination to apply funds of the Company or the applicable Series to the payment of such Advance shall be at the Administrative Member's discretion. For the avoidance of doubt, an Advance by the Administrative Member will not constitute a Capital Contribution by the Administrative Member.

- (d) If the Administrative Member does not make an Advance, then the Administrative Member shall notify the Members and describe in reasonable detail the operating costs and expenses requiring additional Company funds. Such notification shall also state the aggregate amount of additional Capital Contributions ("Additional Capital Contributions") being requested from the Members and each Member's pro rata share of such amount. (such a request, a "Capital Call") Within 15 days following the date of such Capital Call (the "Deadline"), each Member may, but is not obligated to, make an Additional Capital Contribution in an amount equal to its pro rata share (based on its Interest) of the aggregate amount of the Additional Capital Contributions requested by the Administrative Member. An Additional Capital Contribution made by a Member shall be treated as having been received on the later of the Deadline with respect to the applicable Capital Call or the date on which such Additional Capital Contribution is actually made.
- (e) If any Member (the "Non-Contributing Member") fails to make any Additional Capital Contribution (or any portion thereof) requested by a Capital Call (a "Shortfall Amount") by the Deadline, the Administrative Member shall notify each Member that is not a Non-Contributing Member in respect of such Capital Call (a "Contributing Member") of the aggregate Shortfall Amount in writing, and each Contributing Member may elect to make a further Additional Capital Contribution in the amount of such Shortfall Amount (or a portion thereof). If more than one Contributing Member elects to make a further Additional Contribution, the Shortfall Amount shall be allocated to such Contributing Members pro rata based on their Interests, but not in excess of the actual Additional Capital Contribution such Contributing Member has elected to contribute. Such further Additional Capital Contributions shall be made within

PLAINTIFF0002256

after the Deadline.

- (f) If the Company or the applicable Series has insufficient funds to pay its operating costs and expenses after a Capital Call and any Advances, the Administrative Member, in its discretion, may sell assets of the Company or the applicable Series without any Consent of the Members in order to pay the Company's or the applicable Series' operating costs and expenses.



**IV.6 Nature of Obligations between Members.** Except as otherwise required by applicable law, nothing contained in this Agreement will be deemed to constitute any Member, in that Member's capacity as a Member, an agent or legal representative of any other Member or to create any fiduciary relationship between Members for any purpose whatsoever. Except as otherwise expressly provided in this Agreement, a Member has no authority to act for, or to assume any obligation or responsibility on behalf of, any other Member or the Company or any Series.

**IV.7 Status Under the Uniform Commercial Code.** All Interests will be securities governed by Article 8 of the Uniform Commercial Code as in effect from time to time in the State of Delaware. The Interests are not evidenced by certificates and will remain not evidenced by certificates. Neither the Company nor any Series is authorized to issue certificated Interests. The Company will record all Transfers of Members' Interests made in accordance with Article VIII of this Agreement in the Interest Register.

# ARTICLE V

## MANAGEMENT AND CONTROL OF THE COMPANY

### V.1 Management.

- (a) Management of the Company and each Series is vested in the Members. Except for those matters delegated to the Administrative Member pursuant to this Agreement, the Members, acting by Majority in Interest (or such greater percentage specified in this Agreement with respect to a specified matter), have the exclusive management and control of the Company and its business and affairs, including all decisions related to the acquisition and disposition of Investments or otherwise required to be made by the Company as the holder of an Investment. Except as otherwise provided in this Agreement and subject to the provisions of the Act, the Administrative Member has all power and authority to take all actions necessary to execute the decisions made by a Majority in Interest or otherwise delegated to it under this Agreement.
- (b) A Majority in Interest of the Members may at any time remove the Person then serving as the Administrative Member. The Administrative Member may also at any time, upon not less than 30 days prior notice, resign as the Administrative Member. The Members, by Majority in Interest, may also appoint an alternate Administrative Member to act on behalf of the Company or the applicable Series and the Members

PLAINTIFF0002257



the Administrative Member is temporarily unable to serve or is
unwilling to serve in any particular circumstance. When so acting,
the alternative Administrative Member shall have all the powers and
authority delegated to the Administrative Member. Any vacancy in the
position of the Administrative Member (whether from the removal,
resignation or death of such Administrative Member or otherwise)
shall be automatically filled by the then appointed alternate
Administrative Member, or if none, by the Members acting by a
Majority in Interest.

- (c) The Members may agree to (i) delegate any matters or actions
authorized to be taken by the Members under this Agreement to the
Administrative Member, specified Member(s) or third Persons and (ii)
appoint any Persons, with titles as the Members may select, to act on
behalf of the Company or the applicable Series, with power and
authority as the Members may delegate from time to time. Any
delegation by the Members may be rescinded at any time by a Majority
in Interest. If a Person is appointed as an officer of the Company,
then, unless otherwise specified in such appointment, such Person
shall have the authority and duties customarily held by an officer of
a Delaware corporation with such title.

- (d) Third parties dealing with the Company or the applicable Series
or its assets shall not be required to investigate the authority of
the Administrative Member or whether any approval of the Members is
required or has been obtained with respect to any matter and may rely
conclusively upon any certificate of the Administrative Member to the
effect that it is authorized to and is acting on behalf of the
Company or the applicable Series as to any matter relating to the
Company or its assets and Members. The Administrative Member shall
have the authority to execute any agreements, instruments, documents
and certificates on behalf of the Company or the applicable Series as
its authorized signatory and the signature of the Administrative
Member , when acting pursuant to this Article V, will be sufficient
to bind the Company or the applicable Series.

## V.2 Duties and Obligations of the Administrative Member.

In addition to the duties and services of the Administrative Member elsewhere in
this Agreement,

- (a) The Administrative Member shall take all action that may be
necessary or appropriate for the continuation of the Company's valid
existence and authority to do business as a limited liability company
under the laws of the State of Delaware and of each other
jurisdiction in which authority to do business is, in the judgment of
the Administrative Member, necessary or advisable.

- (b) The Administrative Member shall prepare or cause to be prepared
and shall file on or before the due date (or any extension) any
federal, state or local tax returns required to be prepared or filed
by the Company and each Series.

(c) To the extent of available funds of the Company and each Series

PLAINTIFF0002258

- (c) To the extent of available funds of the Company and each Series, the Administrative Member shall cause the Company and each Series to pay any taxes or other governmental charges levied against or payable

  by the Company or such Series; provided, however, that the Administrative Member will not be required to cause the Company or any series to pay any tax so long as the Administrative Member or the Company (or any series) is in good faith and by appropriate legal proceedings contesting the validity, applicability or amount the tax and the contest does not materially endanger any right or interest of the Company or the applicable Series.
- (d) Notwithstanding any other provision of this Agreement or otherwise applicable provision of law or equity, whenever in this Agreement, the Administrative Member is permitted or required to make a decision (i) in its "sole discretion" or "discretion" or under a grant of similar authority or latitude, the Administrative Member will be entitled to consider only those interests and factors as it desires, including its own interests, and will, to the fullest extent permitted by applicable law, have no duty or obligation to give any consideration to any interest of or factors affecting the Company or the Members, or (ii) in its "good faith" or under another expressed standard, the Administrative Member shall act under that express standard and will not be subject to any other or different standards. Unless otherwise expressly stated, for purposes of this Section 5.2(d), the Administrative Member will be deemed to be permitted or required to make all decisions hereunder in its sole discretion.

**V.3 No Fiduciary Duty.** To the fullest extent permitted by applicable law, no Member, including the Administrative Member when acting as such, owes any fiduciary duties of any kind whatsoever to the Company or any Series, or to any of the Members, including, but not limited to, the duties of due care and loyalty, whether those duties were established as of the date of this Agreement or any time hereafter, and whether established under common law, at equity or legislatively defined. It is the intention of the Members and the Company that those fiduciary duties be affirmatively eliminated to the fullest extent permitted by Delaware law, including the Act, and the Members hereby waive any rights with respect to those fiduciary duties. Notwithstanding the foregoing, the Members have the duties, liabilities and obligations expressly set forth in this Agreement.

**V.4 The Members May Engage in Other Activities.** Subject to the terms of any other agreement between a Member and the Company or any Series, no Member (including the Administrative Member) is obligated to devote all of its time or business efforts to the affairs of the Company or any Series, provided that the Administrative Member shall devote the time, effort and skill as it determines in its sole discretion may be necessary or appropriate for the responsibilities delegated to it under this Agreement. Subject to the foregoing, any Member may have other business interests and may engage in other activities in addition to those related to the Company and the Series. The Members and their respective Affiliates may acquire or possess interests in a Portfolio Company and the interests may be of a different class or type, with different rights and preferences, than those held by the Company or the

PLAINTIFF0002259

applicable Series. Likewise, the Members and their respective Affiliates may acquire or possess interests in other companies or business ventures that are competitive with a Portfolio Company or the Company or any Series. Neither the Company or the

Series nor any Member will have the right, by virtue of this Agreement, to share or participate in other investments or activities of any other Member or to the income derived therefrom.

# ARTICLE VI

## ALLOCATIONS OF NET INCOME AND NET LOSS

**VI.1 Allocation of Net Income and Net Loss.** Except as otherwise provided in this Agreement, Net Income and Net Loss (including individual items of profit, income, gain, loss, credit, deduction and expense) of the Company or the applicable Series will be allocated among the Members in a manner such that the Capital Account balance of each Member, immediately after making that allocation, is, as nearly as possible, equal (proportionately) to the Distributions that would be made to that Member pursuant to Section 10.4 if the Company or the applicable Series were dissolved or terminated, its affairs wound up and its assets sold for cash equal to their Fair Market Value, all Company liabilities were satisfied (limited with respect to each nonrecourse liability to the Fair Market Value of the assets securing that liability), and the net assets of the Company or the applicable Series were distributed in accordance with Section 10.4 to the Members immediately after making that allocation, adjusted for applicable special allocations, computed immediately prior to the hypothetical sale of assets.

**VI.2 Allocation Rules.** In the event that Members are issued Interests on different dates, the Net Income or Net Loss allocated to the Members for each Fiscal Year during which Members receive Interests will be allocated among the Members in accordance with Section 706 of the Code, using any convention permitted by law and selected by the Administrative Member. For purposes of determining the Net Income, Net Loss and individual items of income, gain, loss credit, deduction and expense allocable to any period, Net Income, Net Loss and any other items will be determined on a daily, monthly or other basis, as determined by the Administrative Member using any method that is permissible under Section 706 of the Code and the Treasury Regulations. Except as otherwise provided in this Agreement, all individual items of Company or Series income, gain, loss and deduction will be divided among the Members in the same proportions as they share Net Income and Net Loss for the Fiscal Year or other period in question.

**VI.3 Limitation on Allocation of Net Losses.** There will be no allocation of Net Losses to any Member to the extent that the allocation would create a negative balance in the Capital Account of that Member (or increase the amount by which that Member's Capital Account balance is negative).

**VI.4 General Tax Allocations.** Except as otherwise provided in this Section 6.4, the taxable income or loss of the Company or the applicable Series will be allocated pro rata among the Members associated therewith in the same manner as the corresponding items of Net Income, Net Loss and separate items of income, gain, loss

PLAINTIFF0002260

deduction and expense (excluding items for which there are no related tax items) are allocated among the Member for Capital Account purposes; provided, that in the event there is a difference between the "tax book" value of a Company or Series asset and the asset's adjusted tax basis at the time of the asset's contribution or revaluation pursuant to this Agreement, all items of tax depreciation, cost recovery, amortization, and gain or loss with respect to such asset shall be allocated among the Members to take into account the disparities between the "tax book" values and the adjusted tax basis with respect to such properties in accordance with any method selected by the Administrative Member that is permitted by the Treasury Regulations promulgated under Sections 704(b) and 704(c) of the Code.

## VI.5 Special Tax Allocations.

- (a) Minimum Gain Chargeback. In the event there is a net decrease in the Company Minimum Gain during any Fiscal Year, the minimum gain chargeback provisions described in Sections 1.704-2(f) and (g) of the Treasury Regulations will apply.
- (b) Member Minimum Gain Chargeback. In the event there is a net decrease in Member Minimum Gain during any Fiscal Year, the partner minimum gain chargeback provisions described in Section 1.704-2(i) of the Treasury Regulations will apply.
- (c) Qualified Income Offset. In the event a Member unexpectedly receives an adjustment, allocation or Distribution described in of Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6) of the Treasury Regulations, which adjustment, allocation or Distribution creates or increases a deficit balance in that Member's Capital Account, the "qualified income offset" provisions described in Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations will apply.
- (d) Nonrecourse Deductions. Nonrecourse Deductions will be allocated in accordance with and as required in the Treasury Regulations.
- (e) Member Nonrecourse Deductions. Member Nonrecourse Deductions will be allocated to the Members as required in Section 1.704-2(i)(1) of the Treasury Regulations.
- (f) Intention. The special allocations in this Section 6.5 are intended to comply with certain requirements of the Treasury Regulations and will be interpreted consistently. It is the intent of the Members that any special allocation pursuant to this Section 6.5 will be offset with other special allocations pursuant to this Section 6.5. Accordingly, special allocations of Company or Series income, gain, loss or deduction will be made in such manner so that, in the reasonable determination of the Administrative Member, taking into account likely future allocations under this Section 6.5, after those allocations are made, each Member's Capital Account is, to the extent possible, equal to the Capital Account it would have been were this Section 6.5 not part of this Agreement.
- (g) Recapture Items. In the event that the Company or the applicable Series has taxable income in any Fiscal Year that is characterized as ordinary income under the recapture provisions of the Code, each

PLAINTIFF0002261

Member's distributive share of taxable gain or loss from the sale of Company or Series assets (to the extent possible) will include a proportionate share of this recapture income equal to that Member's share of prior cumulative depreciation deductions with respect to the assets which gave rise to the recapture income.

- (h) Tax Credits and Similar Items. Allocations of tax credits, tax credit recapture, and any items related thereto will be allocated in those items as determined by the Administrative Member considering the principles of Treasury Regulation Section 1.704-1(b)(4)(ii).
- (i) Consistent Treatment. All items of income, gain, loss, deduction and credit of the Company or the applicable Series will be allocated among the Members for federal income tax purposes in a manner consistent with the allocation under this Article VI. Each Member is aware of the income tax consequences of the allocations made by this Article VI and hereby agrees to be bound by the provisions of this Article VI in reporting its share of Company or Series income and loss for income tax purposes. No Member will report on its tax return any transaction by the Company or the applicable Series, any amount allocated or distributed from the Company or the applicable Series or contributed to the Company or the applicable Series inconsistently with the treatment reported (or to be reported) by the Company or the applicable Series on its tax return nor take a position for tax purposes that is inconsistent with the position taken by the Company or the applicable Series.
- (j) Modifications to Preserve Underlying Economic Objectives. If, in the opinion of counsel to the Company, there is a change in the Federal income tax law (including the Code as well as the Treasury Regulations, rulings, and administrative practices thereunder) which makes modifying the allocation provisions of this Article VI it necessary or prudent to preserve the underlying economic objectives of the Members as reflected in this Agreement, the Administrative Member will make the minimum modification necessary to achieve that purpose.

**VI.6 Allocation of Excess Nonrecourse Liabilities.** "Excess nonrecourse liabilities" of the Company or the applicable Series as used in Section 1.752-3(a)(3) of the Treasury Regulations will first be allocated among the Member pursuant to the "additional method" described in that section and then in accordance with the manner in which the Administrative Member expects the nonrecourse deductions allocable to those liabilities will be allocated.

**VI.7 Allocations in Respect of a Transferred Interest.** Except as otherwise provided in this Agreement, amounts of Net Income, Net Loss and special allocations allocated to the Members will be allocated among the appropriate Members in proportion to their respective Interests. If there is a change in any Member's Interest for any reason during any Fiscal Year, each item of income, gain, loss, deduction or credit of the Company or the applicable Series for that Fiscal Year will be assigned pro rata to each day in that Fiscal Year in the case of items allocated based on Interests, and the amount of that item so assigned to that day will be allocated to

PLAINTIFF0002262

the Member based upon that Member's Interest at the close of that day. Notwithstanding the immediately preceding sentence, the net amount of gain or loss realized by the Company or the applicable Series in connection with a sale or other disposition of property by the Company or the applicable Series will be allocated solely to the Members having Interests on the date of that sale or other disposition.

**VI.8 Allocations in Year of Liquidation Event.** Notwithstanding anything else in this Agreement to the contrary, the Parties intend for the allocation provisions of this Article VI to produce final Capital Account balances of the Members that will permit liquidating Distributions to be made pursuant to the order set forth in Section 10.4. To the extent that the allocation provisions of this Article VI would fail to produce the final Capital Account balances, the Administrative Member may elect, in its sole discretion, to (a) amend those provisions if and to the extent necessary to produce that result and (b) reallocate income and loss of the Company or the applicable Series for prior open years (including items of gross income and deduction of the Company or the applicable Series for those years) among the Members to the extent it is not possible to achieve that result with allocations of items of income (including gross income) and deduction for the current year and future years, as approved by the Administrative Member. This Section 6.8 will control notwithstanding any reallocation or adjustment of taxable income, taxable loss, or related items by the Internal Revenue Service or any other taxing authority. Notwithstanding any provision of this Agreement to the contrary, the Administrative Member will have the power to amend this Agreement without the Consent of the other Members, as it reasonably considers advisable, to make the allocations and adjustments described in this Section 6.8. To the extent that the allocations and adjustments described in this Section 6.8 result in a reduction in the Distributions that any Member will receive under this Agreement compared to the amount of the Distributions that Member would receive if all those Distributions were made pursuant to the order set forth in Section 10.4, the Company or the applicable Series may make a guaranteed payment (within the meaning of Section 707(c) of the Code) to that Member (to be made at the time that Member would otherwise receive the Distributions that have been reduced) to the extent that payment does not violate the requirements of Section 704(b) of the Code or may take other action as reasonably determined by the Administrative Member to offset that reduction.

# ARTICLE VII

## DISTRIBUTIONS

### VII.1 Generally.

- (a) The Company or the applicable Series will first use available assets to pay or set aside reserves for the payment of the costs, expenses, debts, liabilities and obligations of the Company or the applicable Series as set forth in Section 4.5.
- (b) Subject to Sections 7.4 and 7.5, the Company or the applicable Series will make Distributions, at such times, in such amounts and of such types (i.e. in cash or in kind) as determined by a Majority

PLAINTIFF0002263



such types (i.e. in cash or in-kind) as determined by a majority in Interest. Distributions shall be made to the Members associated therewith pro rata in accordance with their respective Interests.

- (c) For the avoidance of doubt, prior to the dissolution of the Company or the applicable Series pursuant to Section 10.1, the Company or the applicable Series will not make Distributions in kind except to the extent of Liquidity Event Proceeds without the consent of the Administrative Member. Any expenses relating to brokerage commissions, escrow fees, clearing and settlement charges, custodial fees, and any other costs relating to the event giving rise to such Liquidity Event Proceeds and the receipt and Distribution of Liquidity Event Proceeds by the Company or the applicable Series ("Distribution Expenses") will be paid by the Company or the applicable Series prior to any Distributions. The amount of Liquidity Event Proceeds distributable to the Members will be net of any Distribution Expenses.

**VII.2 Non-Cash Distributions.** Whenever a Distribution provided for in this Section 7.2 is payable in property other than cash, the value of the Distribution will be deemed to be its Net Fair Market Value as of the date of Distribution. The Capital Accounts of the Members will be adjusted accordingly as the result of any Distribution in kind.

**VII.3 Return of Distributions.** Any Member receiving a Distribution in violation of the terms of this Agreement shall return that Distribution (or cash equal to the Net Fair Market Value of any property so distributed, determined as of the date of Distribution) promptly following the Member's receipt of a request to return the Distribution from the Administrative Member. No third party will be entitled to rely on or enforce the obligations to return Distributions set forth in this Agreement or to demand that the Company, any Series, or any Member make any request for any such return.

**VII.4 Form of Distribution.** Distributions pursuant to this Article VII will be comprised of (a) assets and securities constituting Liquidity Event Proceeds, and/or (b) Distributable Cash. Notwithstanding the foregoing, no Distribution of securities will be made to any Member to the extent that Member would be prohibited by applicable law from holding those securities. Unless otherwise agreed to by the Administrative Member, Distributions will be made to its respective brokerage account; provided that any Distribution of Distributable Cash may, in the sole discretion of the Administrative Member, be made, in whole or in part, to the account from which such Member's Capital Contributions were paid.

**VII.5 Amounts Withheld.** Any amounts withheld with respect to a Member pursuant to any federal, state, local or foreign tax law from a Distribution by the Company or the applicable Series to the Member will be treated as paid or distributed, as the case may be, to the Member for all purposes of this Agreement. In addition, the Company or the applicable Series may withhold from Distributions amounts deemed necessary, in the sole discretion of the Administrative Member, to be held in reserve for payment of accrued or foreseeable permitted expenses of the Company or the applicable Series. Each Member hereby agrees to indemnify and hold

PLAINTIFF0002264

the applicable Series. Each member hereof agrees to indemnify and hold harmless the Company and the applicable Series from and against any liability with respect to income attributable to or Distributions or other payments to that Member (including,

without limitation, any "imputed underpayment" within the meaning of Section 6225 of the Code attributable to such Member, as determined by the Administrative Member). Any other amount that the Administrative Member determines is required to be paid by the Company or the applicable Series to a taxing authority with respect to a Member pursuant to any federal, state, local or foreign tax law in connection with any payment to or tax liability (estimated or otherwise) of the Member shall be treated as a loan from the Company or the applicable Series to that Member. If that loan is not repaid within 30 days from the date the Administrative Member notifies that Member of that withholding, the loan will bear interest from the date of the applicable notice to the date of repayment at a rate at the lesser of (a) 10% or (b) the maximum legal interest rate under applicable law, compounded annually. In addition to all other remedies the Company or the applicable Series may have, the Company or the applicable Series may withhold Distributions that would otherwise be payable to that Member and apply that amount toward repayment of the loan and interest. Any payment made by a Member to the Company or the applicable Series pursuant to this Section 7.5 will not constitute a Capital Contribution. The obligations of a Member pursuant to this Section 7.5 shall survive the termination, dissolution, liquidation and winding up of the Company or applicable Series and the withdrawal of such Member from the Company or applicable Series or transfer of its interest in the Company or applicable Series.

**VII.6 Member Giveback.** Except as required by applicable law, Section 7.3 or Section 7.5, no Member will be required to repay to the Company or the applicable Series, any other Member, or any creditor of the Company or the applicable Series, all or any part of the Distributions made to that Member.

**VII.7 No Creditor Status.** A Member will not have the status of, and is not entitled to the remedies available to, a creditor of the Company or the applicable Series with regard to Distributions that the Member becomes entitled to receive pursuant to this Agreement and the Act.

**VII.8 Limitations on Distributions.** Notwithstanding any provision to the contrary contained in this Agreement, no Distribution shall be made to any Member on account of its Interest if the Distribution would violate the Act or other applicable law.

# ARTICLE VIII

## TRANSFERS

**VIII.1 Transfers.** Except as otherwise expressly provided in this Article VIII, no Member may Transfer all or any portion of its Interests without (a) providing the Administrative Member with a written opinion of counsel that such Transfer would not be considered a securities transaction under applicable securities laws if required by the Administrative Member; (b) compliance with the provisions of Section 8.4; (c) the approval of the Administrative Member; and (d) the approval of such Members (which may include the Administrative Member) as represents two-thirds

PLAINTIFF0002265

aggregate Interests in the Company or the applicable Series. Any attempted Transfer in violation of this Article VIII will be null and void ab initio and will not bind the Company or the applicable Series.

**VIII.2 Permitted Transfers.** The consent of the Members pursuant to Section 8.1(d) will not be required for any Transfer (a) by a Member who is an individual to an entity controlled (which for this purpose shall require that the Member own more than 50% of the voting control and equity securities of that entity) by that Member and all of the remaining beneficial ownership of such entity is owned by the Family Members of such Member or (b) by a Member to another Member (each transferee, a "Permitted Transferee"); provided, however, that unless otherwise consented to by the Administrative Member, in connection with a Transfer permitted pursuant to clause (a) of this Section 8.2, the transferring Member shall remain jointly and severally liable for the obligations of the Permittee Transferee under this Agreement.

**VIII.3 Admission of Transferee as a Member.** A Transfer permitted by this Article VIII will only transfer the rights of an assignee as set forth in Section 8.6 unless (a) the transferee is a Member or is admitted as a Member with the consent of the Administrative Member and otherwise complies with Section 4.1 and (b) payment to the Company or the applicable Series of a transfer fee in cash which is sufficient, in the Administrative Member's sole determination, to cover all reasonable expenses incurred by the Company or the applicable Series in connection with the Transfer and admission of the transferee as a Member.

**VIII.4 Additional Restrictions.** Notwithstanding any other provision of this Agreement, no Transfer of an Interest (including any Transfer of an interest in Company profits, losses or distributions) shall be permitted unless the Administrative Member otherwise consents, in its sole discretion, if such Transfer would cause the Company or the applicable Series (a) to have more than 100 partners, as determined for purposes Section 7704 of the Code; (b) to be treated as a publicly traded partnership within the meaning of Section 7704 of the Code; (c) to be required to be registered as an "investment company" under the Investment Company Act of 1940 (the "40 Act"); (d) to hold any "plan assets" under the Employee Retirement Income Security Act of 1974 ("ERISA"), or (e) in the Administrative Member's sole determination, to be subject to any burdensome regulatory or reporting requirements, any adverse tax or fiscal consequences or otherwise in breach of any applicable law or agreement to which the Company or the applicable Series is a party.

**VIII.5 Involuntary Transfer of Interests.** In the event of any involuntary transfer of Interests to a Person, that Person will have only the rights of an assignee set forth in Section 8.6 with respect to those Interests.

**VIII.6 Rights of Assignee.** An assignee has no right to vote, receive information concerning the business and affairs of the Company or the applicable Series and is entitled only to receive Distributions and allocations attributable to the Interest held by the assignee as determined by the Member and in accordance with this Agreement.

**VIII.7 Enforcement.** The restrictions on Transfers contained in this Ar

PLAINTIFF0002266

essential element in the ownership of an Interest. Upon application to any court of competent jurisdiction, the Administrative Member will be entitled to a decree against any Person violating or about to violate those restrictions, requiring their specific performance, including those prohibiting a Transfer of all or a portion of its Interests.

**VIII.8 Death or Disability of a Member.** Upon the Disability or death of a Member, the provisions of Section 18-705 of the Act shall apply.

**VIII.9 Compulsory Redemption.** A Majority in Interest may, by notice to any Member, force the sale of all or a portion of that Member's Interest on terms as the Administrative Member determines to be fair and reasonable, or take other action as it determines to be fair and reasonable in the event that the Administrative Member determines or has reason to believe that: (a) that Member has attempted to effect a Transfer of, or a Transfer has occurred with respect to, any portion of that Member's Interest in violation of this Agreement; (b) continued ownership of that Interest by that Member is reasonably likely to cause any of the events set forth in Section 8.4; (c) continued ownership of that Interest by that Member may be harmful to the business or reputation of the Company or the applicable Series or the Administrative Member; (d) any of the representations or warranties made by that Member under this Agreement or its Subscription Agreement was not true when made or has ceased to be true; (e) any portion of that Member's Interest has vested in any other Person by reason of the bankruptcy, dissolution, incompetency or death of that Member; (f) such Member has failed to fund any Additional Capital Contribution; or (g) it would not be in the best interests of the Company or the applicable Series, as determined by the Administrative Member in its sole discretion, for that Member to continue ownership of its Interest.

# ARTICLE IX

## RECORDS, REPORTS AND TAXES

**IX.1 Books and Records.** The Administrative Member will maintain all of the information required to be maintained by the Act at the Company's principal office, with copies available at all times during normal business hours for inspection and copying upon reasonable notice by any Member or its authorized representatives for any purpose reasonably related to that Member's status as a member of the Company or the applicable Series, including as applicable:

- (a) true and full information regarding the status of the business and financial condition of the Company and such Series;
- (b) promptly after becoming available, a copy of the Company's and the applicable Series' federal, state and local income tax returns, if any, for each Fiscal Year;
- (c) the Interest Register;
- (d) a copy of this Agreement and all amendments, including any Exception Handling Addendum, together with executed copies of
  - (i) any powers of attorney and

PLAINTIFF0002267



  - ○ (ii) any other document pursuant to which this Agreement or any amendments have been executed or have been deemed to be executed; and
- (e) true and full information regarding the amount of Capital Contributions by that Member and the date on which that Member became a Member.

## IX.2 Reports.

- (a) Governmental Reports. The Administrative Member will cause to be prepared and filed, at the Company's and Series' expense, all documents and reports required to be filed with any governmental agency in accordance with the Act.
- (b) Tax Reports. The Administrative Member will cause to be prepared and duly and timely filed, at the Company's and Series' expense, all tax returns required to be filed by the Company and each Series. The Administrative Member will send or cause to be sent to each Member within 90 days after the end of each Fiscal Year, or a later date as determined in the discretion of the Administrative Member, an Internal Revenue Service Schedule K-1 with respect to the Member's interest in the Company or applicable Series (or substantially similar information if an Internal Revenue Service Schedule K-1 is not required to be provided to Members).

**IX.3 Tax Elections.** Except as otherwise expressly provided in this Agreement, the Company will make any tax elections as the Administrative Member may determine. The Administrative Member may, in its sole discretion, make an election under Section 754 of the Code.

**IX.4 Partnership Representative.** The Administrative Member will be the "partnership representative" within the meaning of Code Section 6223 (the "Partnership Representative"). The Partnership Representative will have all of the powers and authority of a "partnership representative" under the Code. The Partnership Representative will represent the Company and each Series (at its expense) in connection with all administrative and judicial proceedings by the Internal Revenue Service or any taxing authority involving any tax return of the Company and each Series, and may expend the Company's and Series' funds for professional services and associated costs. The Partnership Representative will provide to the Members notice of any communication to or from or agreements with a federal, state or local authority regarding any return of the Company or the applicable Series, including a summary of the provisions.

**IX.5 Confidentiality.** All information concerning the business, affairs and properties of the Company and each Series and all of the terms and provisions of this Agreement will be held in confidence by each Member and their respective Affiliates, subject to any obligation to comply with (a) any applicable law, (b) any rule or regulation of any legal authority or securities exchange, (c) any subpoena or other legal process to make information available to the Persons entitled thereto or (d) the enforcement of that Party's rights under this Agreement in any legal process, arbitration, as a Member, or employee, as applicable. Confidentiality will

PLAINTIFF0002268

be maintained until that time, if any, as the confidential information either is, or becomes, published or a matter of public knowledge (other than as a result of a breach of this Section 9.5); provided that each Party recognizes that the privilege each has to maintain, in its sole discretion, the confidentiality of a communication relating to the transactions, including a confidential communication with its attorney or a confidential communication with a federally authorized tax practitioner under Section 7525 of the Code, is not intended to be affected by the foregoing provisions of this sentence. Notwithstanding this Section 9.5, the Administrative Member may use confidential information about the Company, the Series, and the Members in data aggregation, so long as the data use does not include the disclosure of information that could reasonably be used to identify any Member.

# ARTICLE X

## DISSOLUTION AND LIQUIDATION

### X.1 Dissolution.

- (a) The Company. The Company will be dissolved and its affairs wound up solely upon the first to occur of any of the following:

    - (1) the disposition (which may include by Distribution to the Members) of the final Investment of the Company;
    - (2) the determination by a Majority in Interest to dissolve the Company; or
    - (3) the entry of a judicial decree of dissolution of the Company pursuant to the Act.

- (b) Series. A Series will be dissolved or terminated, as applicable, and its affairs wound up solely upon the first to occur of any of the following:

    - (1) the final Distribution of the net assets of the Series to the Members or a Liquidating Vehicle in accordance with this Article X;
    - (2) determination by a Majority in Interest to dissolve or terminate the Series; or
    - (3) entry of a judicial decree of dissolution of the Series pursuant to the Act.

- At any time that (i) there are no Interests outstanding of any particular Series previously established or (ii) a particular Series never acquired any Portfolio Company or any other assets, has no liabilities, and did not receive any Capital Contributions, the Administrative Member may terminate that Series, cancel any Interests therein for no consideration and rescind the establishment thereof.

**X.2 Date of Dissolution.** Dissolution of the Company or the applicable

PLAINTIFF0002269

**X.2 Date of Dissolution.** Dissolution of the Company or the applicable Series will be effective on the day on which the event occurs giving rise to the dissolution, but the Company or the applicable Series will not terminate or cease to exist until the

assets of the Company or the applicable Series have been liquidated and distributed as provided in this Agreement and a Certificate of Cancellation for the Company or the applicable Series has been filed in accordance with Section 10.8. Notwithstanding the dissolution of the Company or the applicable Series, prior to the termination of the Company or the applicable Series, the business of the Company or the applicable Series and the rights and obligations of the Members will continue to be governed by this Agreement.

**X.3 Winding Up.** Upon the occurrence of any event specified in Section 10.1, the Company or the applicable Series will continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, satisfying the claims of its creditors, and distributing any remaining assets in cash or in kind, to the Members in accordance with this Agreement. The Liquidating Trustee will be responsible for overseeing the winding up and liquidation of the Company or the applicable Series and will cause the Company or the applicable Series to sell or otherwise liquidate all of the Company's or the applicable Series' assets except to the extent the Liquidating Trustee determines to distribute any assets to the Members in kind, discharge or make provision for all liabilities of the Company or the applicable Series and all costs relating to the dissolution, winding up, and liquidation and distribution of assets, establish reserves as may be necessary to provide for contingent liabilities of the Company or the applicable Series (for purposes of determining the Capital Accounts of the Members, the amounts of those reserves will be deemed to be an expense of the Company or the applicable Series and will be deemed income to the extent it ceases to be reserved), and distribute the remaining assets to the Members, in the manner specified in Section 10.4. The Liquidating Trustee will be allowed a reasonable time for the orderly liquidation of the Company or the applicable Series' assets and discharge of its liabilities, so as to preserve and upon disposition maximize, to the extent possible, the value of the Company's or the applicable Series' assets.

**X.4 Liquidation.** The Company's or the applicable Series' assets, or the proceeds from the liquidation of the Company's or the applicable Series' assets, will be paid or distributed in the following order:

- (a) first, to creditors to the extent otherwise permitted by applicable law in satisfaction of all liabilities and obligations of the Company or the applicable Series, including expenses of the liquidation (whether by payment or the making of reasonable provision for payment), other than liabilities for which reasonable provision for payment has been made and liabilities, if any, for Distributions to Members;
- (b) next, to the establishment of those reserves for contingent liabilities of the Company or the applicable Series as are deemed necessary by the Liquidating Trustee (other than liabilities for which reasonable provision for payment has been made and liabilities, if any, for Distribution to Members and former Members under the Act);

PLAINTIFF0002270

Act);

- (c) next, to Members and former Members in satisfaction of any liabilities for Distributions under the Act, if any;

- (d) next, to the Members, on a pro rata in accordance with their Interests.

**X.5 Distributions in Kind.** Any non-cash asset distributed to one or more Members will first be valued by the Administrative Member at its Fair Market Value to determine the Net Income, Loss and special allocations that would have resulted if that asset had been sold for that value, which amounts will be allocated pursuant to Article VI, and the Members' Capital Accounts will be adjusted to reflect those allocations. The amount distributed and charged to the Capital Account of each Member receiving an interest in the distributed asset will be the Net Fair Market Value of that interest.

**X.6 No Liability.** Notwithstanding anything in this Agreement to the contrary, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a negative Capital Account balance (after giving effect to all contributions, Distributions, allocations and other Capital Account adjustments for all Fiscal Years, including the Year in which that liquidation occurs), neither that Member nor the Liquidating Trustee will have any obligation to make any contribution to the capital of the Company or the applicable Series, and the negative balance of that Member's Capital Account will not be considered a debt owed by that Member or any Liquidating Trustee to the Company or the applicable Series or to any other Person for any purpose; provided, however, that nothing in this Section 10.6 will relieve any Member from any liability under any promissory note or other affirmative commitment that Member has made to contribute capital to the Company or the applicable Series.

**X.7 Limitations on Payments Made in Dissolution.** Except as otherwise specifically provided in this Agreement, each Member will be entitled to look only to the assets of the Company or the applicable Series for Distributions (including Distributions in liquidation) and the Parties will have no personal liability for any Distributions.

**X.8 Certificate of Cancellation.** Upon completion of the winding up of the Company's affairs, the Liquidating Trustee will cause to be filed a Certificate of Cancellation, in accordance with the Act, of the Certificate of Formation.

**X.9 Conversion to a Trust.** If, on the Outside Date, a Liquidity Event has not occurred, the Administrative Member may appoint a third-party liquidator or custodian at the expense of the Company or the applicable Series or distribute the assets of the Company or the applicable Series to a liquidating trust or Entity for the benefit of the Members (a "Liquidating Vehicle"). Interests in any Liquidating Vehicle will generally be subject to terms comparable to Interests (including, for the avoidance of doubt, Distribution Expenses); provided that, in addition to other expenses contemplated in this Agreement, interests in a Liquidating Vehicle may be subject to actual expenses incurred in connection with the ongoing operations of the liquidating vehicle. The Administrative Member or the liquidating trustee, in its sole discretion, may establish reserves for contingencies under this Section

PLAINTIFF0002271

including with respect to interests in any liquidating vehicle.

# ARTICLE XI



LIMITATION OF LIABILITY; STANDARD OF CARE; INDEMNIFICATION

**XI.1 Limitation of Liability.** Unless explicitly agreed upon, the debts, obligations and liabilities of the Company and each Series, whether arising in contract, tort or otherwise, will be solely the debts, obligations and liabilities of the Company or such Series, and will not be those of the Members, or the Covered Persons.

**XI.2 Standard of Care; Liability.** Neither the Members nor the Covered Persons will have any personal liability whatsoever to the Company, any Series, any Member, or their Affiliates on account of that Person's role within the Company or any Series or by reason of that Person's acts or omissions in connection with the conduct of the business of the Company or any Series so long as that Person acts in good faith for a purpose which the Person reasonably believes to be in, or not opposed to, the best interests of the Company or such Series. Notwithstanding the preceding, nothing contained in this Agreement will protect that Person against any liability to which that Person would otherwise be subject by reason of (a) any act or omission of that Person that involves gross negligence, willful misconduct, bad faith, fraud, or willful and material breach of a material provision of this Agreement or any Subscription Agreement or any management agreement or other agreement with or for the benefit of the Company; (b) any transaction from which that Person or its Affiliate derives any improper personal benefit; or (c) a breach of any representation or warranty by such Member made in this Agreement or its Subscription Agreement.

**XI.3 Indemnification.** To the fullest extent permitted by applicable law, the Members and the Covered Persons will be entitled, out of the Company or Series assets, to be indemnified against and held harmless from any and all liabilities, judgments, obligations, losses, damages, claims, actions, suits or other proceedings (whether civil or criminal, pending or threatened, before any court or administrative or legislative body, and as the same are accrued, in which a Member or Covered Person may be or may have been involved as a party or otherwise or with which he, she or it may be or may have been threatened (a "Proceeding")) and reasonable costs, expenses and disbursements (including legal and accounting fees and expenses) of any kind and nature whatsoever (collectively, "Covered Losses") that may be imposed on, incurred by, or asserted at any time against a Member or Covered Person (whether or not indemnified against by other parties) in any way related to or arising out of this Agreement, the administration of the Company or any Series, or the action or inaction of a Member or Covered Person (including actions or inactions pursuant to Article X on the Company's or Series' dissolution or termination) or under contracts with the Company or any Series, except that the Members and Covered Persons will not be entitled to indemnity for Covered Losses with respect to any matter as to which such Member or Covered Person has been finally adjudicated in any action, suit, or other proceeding, or otherwise by a court of competent jurisdiction, to have committed an act or omission involving his, her or its own gross negligence, willful

PLAINTIFF-0002272

misconduct, bad faith, fraud, willful and material breach of a material provision of this Agreement or any Subscription Agreement or any management agreement or other agreement with or for the benefit of the Company or any Series, or from which such Person derived an improper personal benefit. The indemnities contained in this Article XI will survive the termination of this Agreement.

**XI.4 Contract Right; Expenses.** The right to indemnification conferred in this Article XI will be a contract right. A Member's or a Covered Person's right to indemnification under this Agreement includes the right to require the Company or the applicable Series to advance the expenses incurred by that Member or Covered Person in defending any Proceeding in advance of its final disposition subject to an obligation to return the amount so advanced if it is ultimately determined that the Member or Covered Person has not met the standard of conduct required for indemnification.

**XI.5 Nonexclusive Right.** The right to indemnification and the payment of expenses incurred in defending a Proceeding in advance of its final disposition conferred in this Article XI will not be exclusive of any other right which any Person may have or later acquire under any statute or agreement, or under any insurance policy obtained for the benefit of any Administrative Member, Partnership Representative or officer of the Company or the applicable Series (it being understood that if any such insurance policy is obtained, it shall be at the expense of the Company or the applicable Series).

**XI.6 Severability.** If any provision of this Article XI is determined to be unenforceable in whole or in part, that provision will nonetheless be enforced to the fullest extent permissible, it being the intent of this Article XI to provide indemnification to all Persons eligible under this Agreement to the fullest extent permitted by applicable law.

**XI.7 Insurance.** The Administrative Member may cause the Company or the applicable Series to purchase and maintain insurance on behalf of any Covered Person who is or was an agent of the Company or the applicable Series against any liability asserted against that Covered Person capacity as an agent.

# ARTICLE XII

## REPRESENTATIONS, WARRANTIES AND COVENANTS

**XII.1 Representations and Warranties of the Members.** Each Member is fully aware that the Company, each Series, and the Administrative Member are relying upon the truth and accuracy of the following representations by each of the Members. Each of the Members hereby represents, warrants and covenants to the Administrative Member, the Company, and each Series that:

- (a) (i) In the case of any entity, it has been duly formed and is validly existing and in good standing under the laws of its jurisdiction of organization with full power and authority to enter into and to perform this Agreement in accordance with its terms or

PLAINTIFF0002273

(ii) in the case of an individual, he or she has the full legal capacity to enter into and to perform this Agreement in accordance with its terms;



- (b) This Agreement is a legal, valid and binding obligation of that Member, enforceable against that Member in accordance with its terms, subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar laws affecting creditors' rights, and subject, as to enforceability, to the effect of general principles of equity;
- (c) Its Interest is being acquired for its own account, for investment and not with a view to the distribution or resale, subject, however, to any requirement of law that the disposition of its property will at all times be within its control;
- (d) It is not a participant-directed defined contribution plan;
- (e) It is not an "investment company" registered under the 40 Act;
- (f) It is not a "benefit plan investor" under Section 3(42) of ERISA and its ownership of an Interest does not cause the Company or the applicable Series to hold "plan assets" under ERISA;
- (g) It will conduct its business and affairs (including its investment activities) in a manner that it will be able to honor its obligations under this Agreement;
- (h) It understands and acknowledges that the investments contemplated by the Company involve a high degree of risk. The Member has substantial experience in evaluating and investing in Portfolio Company Securities and is capable of evaluating the merits and risks of its investments, including an investment in its Interest, and has the capacity to protect its own interests. The Member, by reason of its business or financial experience, has the capacity to protect its own interests in connection with Investments. The Member has sufficient resources to bear the economic risk of its investment in its Interest and the underlying Investments, including any diminution in value, and will solely bear such economic risk.;
- (i) It has undertaken its own independent investigation, and formed its own independent business judgment, based on its own conclusions, as to the merits of investing in the Company and any Investments to be acquired by the Company. The Member is not relying and has not relied on the Administrative Member or any of their Affiliates for any evaluation or other investment advice in respect of any Investments or the advisability of investing in the Company and has had all questions answered and requests fulfilled that the Member has deemed to be material to the Member's decision to invest in the Company.
- (j) It has had the opportunity to consult with legal counsel of its choice and has read and understands this Agreement.
- (k) It has received and carefully reviewed all code for the Designated Smart Contract sufficiently in advance of signing this Agreement. It is a Person who is, or in connection with this Agreement and the matters contemplated thereby has received the advice of Persons who are, knowledgeable, sophisticated and

PLAINTIFF0002274

experienced in making, and qualified to make, evaluations and decisions with respect to the quality, security and intended and

expected functionality of the Designated Smart Contract and the other matters contemplated by this Agreement.

**XII.2 Derivative Transactions.** No Member may, without providing the Administrative Member with a written opinion of counsel satisfactory to the Administrative Member regarding the compliance of the proposed transfer with all applicable securities laws, and the prior written consent of the Administrative Member (which may be granted, withheld, conditioned or delayed in its sole discretion), directly or indirectly, (a) offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise assign, transfer or dispose of any Interests or Portfolio Company Securities, or publicly disclose the intention to make any offer, sale, pledge or disposition, or (b) engage in any short selling of any Interests or Portfolio Company Securities. Notwithstanding the foregoing, any permitted transfers of Interests that are approved by the Members will be governed by Article VIII.

**XII.3 Further Instruments and Cooperation of Members.** Each Member will furnish, from time to time, to the Administrative Member within 5 Business Days after receipt of the Administrative Member's request (or other amounts of time as specified by the Administrative Member) any further instruments (including any designations, representations, warranties, and covenants), documentation and information as the Administrative Member deems to be reasonably necessary, appropriate or convenient: (a) to facilitate the Closing or satisfy any Closing Conditions; (b) to satisfy applicable anti-money laundering requirements; (c) for any tax purpose, including, for the avoidance of doubt, a Form W-9; or (d) for any other purpose that is consistent with the terms of this Agreement.

# ARTICLE XIII

## POWER OF ATTORNEY

**XIII.1 Function of Power of Attorney.** Each Member, by its execution of this Agreement, hereby irrevocably makes, constitutes and appoints each of the Administrative Member and the Liquidating Trustee, if any, in the capacity as Liquidating Trustee (each is referred to as the "Attorney"), as its true and lawful agent and attorney-in-fact, with full power of substitution and full power and authority in its name, place and stead, to make, execute, sign, acknowledge, swear to, record and file (a) this Agreement and any amendment to this Agreement that has been adopted as provided in this Agreement; (b) the original Certificate of Formation and all amendments required or permitted by law or the provisions of this Agreement; (c) all instruments or documents required to effect a transfer of Interest; (d) all certificates and other instruments deemed advisable by the Administrative Member or the Liquidating Trustee, if any, to carry out the provisions of this Agreement, and applicable law or to permit the Company to become or to continue as a limited liability company wherein the Members have

PLAINTIFF0002275

or to continue as a limited liability company wherein the Members have limited liability in each jurisdiction where the Company may be doing business; (e) all instruments that the Administrative Member or the Liquidating Trustee, if any, deems appropriate to reflect a change, modification or termination of this Agreement or the Company or the Series in accordance with this Agreement including, the admission of additional Members or substituted members pursuant to the provisions of this Agreement, as applicable; (f) all fictitious or assumed name certificates required or permitted to be filed on behalf of the Company or the Series; (g) all conveyances and other instruments or papers deemed advisable by the Administrative Member or the Liquidating Trustee, if any, including, those to effect the dissolution and termination of the Company (including a Certificate of Cancellation) or the Series; (h) all other agreements and instruments necessary or advisable to consummate any purchase of Investments; (i) all forms, instruments, or documents required to make certain elections pursuant to the Code or state law governing the taxation of limited liability companies; and (j) all other instruments or papers that may be required or permitted by law to be filed on behalf of the Company or the Series. Notwithstanding the foregoing, the Administrative Member may not exercise this power of attorney with respect to matters as to which this Agreement requires the consent of the Members until such consent has been received.

### XIII.2 Additional Functions.

The foregoing power of attorney:

- (a) is coupled with an interest, is irrevocable and will survive the subsequent death or Disability of any Member or any subsequent power of attorney executed by a Member;
- (b) may be exercised by the Attorney, either by signing separately as attorney-in-fact for each Member or by a single signature of the Attorney, acting as attorney-in-fact for all of them;
- (c) will survive the delivery of an assignment by a Member of all or any portion of its Interest; except that, where the assignee of all of that Member's Interest has been approved by the Administrative Member for admission to the Company or the applicable Series, as a substituted Member, the power of attorney of the assignor will survive the delivery of that assignment for the sole purpose of enabling the Attorney to execute, swear to, acknowledge and file any instrument necessary or appropriate to effect that substitution.

**XIII.3 Delivery of Power of Attorney.** Each Member must execute and deliver to the Administrative Member within 5 Business Days after receipt of the Administrative Member's request, any further designations, powers-of-attorney and other instruments as the Administrative Member reasonably deems necessary to carry out the terms of this Agreement.

# ARTICLE XIV

## MISCELLANEOUS

PLAINTIFF0002276

**XIV.1 Ministerial and Administrative Amendments.** Amendments that under this Agreement are expressly permitted to be made by the Administrative Member, ministerial or administrative amendments to cure ambiguities or inconsistencies as may in the discretion of the Administrative Member be necessary or appropriate and those amendments as may be required by law may be made from time to time without the Consent of any of the Members. Other amendments may be made to this Agreement only with the Consent of a Majority in Interest. Amendments may be made to a Series Addendum with the Consent of Majority in Interest of such Series. Notwithstanding the foregoing, (a) no amendment will be adopted pursuant to this Section 14.1 unless that amendment would not alter, or result in the alteration of, the limited liability of the Members or the status of the Company or any Series as a "partnership" for federal income tax purposes and (b) no amendment that increases the liabilities or duties of a Member (including the Administrative Member under this Agreement may be made without the consent of that Member.

**XIV.2 Amendment Recordation.** Upon the adoption of any amendment to this Agreement, the amendment will be executed by the Administrative Member and, if required, will be recorded in the proper records of each jurisdiction in which recordation is necessary for the Company or any Series to conduct business. Any adopted amendment may be executed by the Administrative Member on behalf of the Members pursuant to the power of attorney granted in Section 13.1.

**XIV.3 Offset Privilege.** The Company may offset against any monetary obligation owing from the Company or any Series to any Members or Administrative Member any monetary obligation then owing from that Member or Administrative Member to the Company or such Series; provided, however, that the offset right will only apply to any monetary obligation owed to that Member or Administrative Member in their capacity as a Member or Administrative Member.

**XIV.4 Notices.**

- (a) Any notice or other communication to be given to the Company or the Series, the Administrative Member or any Member in connection with this Agreement will be in writing and will be delivered or mailed by registered or certified mail, postage prepaid, sent by facsimile or electronic mail or otherwise delivered by hand or messenger.
- (b) Each Member hereby acknowledges that the Administrative Member is entitled to transmit to that Member exclusively by e-mail (or other means of electronic messaging) all notices, correspondence and reports, including, but not limited to, that Member's Schedule K-1s.
- (c) Each notice or other communication to the Administrative Member will for purposes of this Agreement be treated as effective or having been given upon the earlier of

  - (i) receipt,
  - (ii) the date transmitted by e-mail, with evidence of transmission from the transmitting device,
  - (iii) acknowledged receipt,
  - (iv) when delivered in person, (v) when sent by

PLAINTIFF0002277



electronic facsimile transfer or electronic mail at
the number or address set forth below and receipt is
acknowledged by the Administrative Member, (vi) 1
Business Day after having been dispatched by a
nationally recognized overnight courier service if
receipt is evidenced by a signature of a person
regularly employed or residing at the address set
forth below for that Party or (vii) 3 Business Days
after being sent by registered or certified mail,
return receipt requested, postage prepaid.

- (d) Any notice must be given, if (x) to the Company or any Series, to
the Company's or Series' e-mail address, to the attention of the
Administrative Member and (y) to any Member, to that Member's address
or number specified in the Interest Register of the Company or the
applicable Series. Any Party may by notice pursuant to this Section
14.4 designate any other physical address or e-mail address to which
notice to that Party must be given.

**XIV.5 Waiver.** No course of dealing or omission or delay on the part of any Party in
asserting or exercising any right under this Agreement will constitute or operate as
a waiver of any right. No waiver of any provision of this Agreement will be
effective, unless in writing and signed by or on behalf of the Party to be charged
with the waiver. No waiver will be deemed a continuing waiver or future waiver or
waiver in respect of any other breach or default, unless expressly so stated in
writing.

**XIV.6 Governing Law.** This Agreement will be construed, performed and enforced in
accordance with the laws of the State of Delaware, without giving effect to its
conflict of laws principles to the extent those principles or rules would require or
permit the application of the laws of another jurisdiction.

**XIV.7 Dispute Resolution.** Any dispute, controversy or claim arising out of or
relating to this Agreement, or the breach of this Agreement, except for any claim or
action that the Administrative Member, any Series or Company may elect to commence
to enforce any of its rights or the Members' obligations under this Agreement, will
be settled by binding arbitration, before three arbitrators, administered by the
American Arbitration Association under and in accordance with its Commercial
Arbitration Rules. The decision of the arbitrators shall be non-appealable, binding
and conclusive upon all parties thereto and judgment on the award rendered by the
arbitrators may be entered in any court having jurisdiction.

- (a) Location. Any arbitration will be held in the Arbitration
Location.
- (b) Costs. Each of the Parties will equally bear any arbitration fees
and administrative costs associated with the arbitration. The
prevailing Party, as determined by the arbitrators, will be awarded
its costs and reasonable attorneys' fees incurred in connection with
the arbitration.
- (c) Consent to Jurisdiction. The Parties hereby irrevocably and
unconditionally submits, for itself and its property, to the

PLAINTIFF0002278

unconditionally submits, for itself and its property, to the exclusive jurisdiction of any courts located in the Arbitration

Location, for recognition or enforcement of any award determined pursuant to this Section 14.7.

NOTICE: By becoming a party to this Agreement, each Party is agreeing to have all disputes, claims or controversies arising out of or relating to this Agreement decided by neutral binding arbitration, and is giving up any rights it might possess to have those matters litigated in a court or jury trial. By becoming a party to this Agreement, each Party is giving up its judicial rights to discovery and appeal except to the extent that they are specifically provided for under this Agreement. If any Party refuses to submit to arbitration after agreeing to this provision, that Party may be compelled to arbitrate under federal or state law. By becoming a party to this Agreement, each Party confirms that its agreement to this arbitration provision is voluntary.

**XIV.8 Remedies.** In the event of any actual or prospective breach or default of this Agreement by any Party, the other Parties will be entitled to seek equitable relief, including remedies in the nature of injunction and specific performance (without being required to post a bond or other security or to establish any actual damages). In this regard, the Parties acknowledge that they will be irreparably damaged in the event this Agreement is not specifically enforced, since (among other things) the Interests are not readily marketable. All remedies under this Agreement are cumulative and not exclusive, may be exercised concurrently and nothing in this Agreement will be deemed to prohibit or limit any Party from pursuing any other remedy or relief available at law or in equity for any actual or prospective breach or default, including the recovery of damages.

**XIV.9 Severability.** The provisions of this Agreement are severable and in the event that any provision of this Agreement is determined to be illegal, invalid or unenforceable in any respect by a court of competent jurisdiction, the remaining provisions of this Agreement will not be affected, but will, subject to the discretion of that court, remain in full force and effect, and any illegal, invalid or unenforceable provision will be deemed, without further action on the part of the Parties, amended and limited to the extent necessary to render that provision, as so amended and limited, legal, valid and enforceable, it being the intention of the Parties that this Agreement and each provision will be legal, valid and enforceable to the fullest extent permitted by applicable law.

**XIV.10 Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. A facsimile, PDF or DocuSign (or similar service) signature will be deemed an original. The Parties hereby Consent to transact business with the Company and each of the other via electronic signature (including via DocuSign, eSignLive, or a similar service). Each Party understands and agrees that their signature page may be disassembled and attached to the final version of this Agreement.

**XIV.11 IRS Circular 230 disclosure.** Any discussion of United States federal tax issues contained in this Agreement, or concerning the investment in the Company

the Company, Administrative Member, and their respective counsel, is not intended or written to be relied on by the Parties for purpose of avoiding penalties imposed

under the Code. Each Party should seek advice from an independent tax adviser based on their particular circumstances.

**XIV.12 Further Assurances.** Each Party shall promptly execute, deliver, file or record those agreements, instruments, certificates and other documents and take other actions as the Administrative Member may reasonably request or as may otherwise be necessary or proper to carry out the terms and provisions of this Agreement and to consummate and perfect the transactions contemplated hereby.

**XIV.13 Assignment.** The rights, interests or obligations of a Party may not be assigned by such Party except in accordance with a Transfer permitted by Article VIII. Any purported assignment without such Consent will be null and void ab initio.

**XIV.14 Binding Effect.** This Agreement will be binding upon and inure to the benefit of the Parties and their respective legal representatives, successors and permitted assigns. This Agreement is not intended, and will not be deemed, to create or confer any right or interest for the benefit of any Person not a party to this Agreement.

**XIV.15 Titles and Captions.** The titles and captions of the Articles and Sections of this Agreement are for convenience of reference only and do not in any way define or interpret the intent of the Parties or modify or otherwise affect any of the provisions hereof and shall not have any effect on the construction or interpretation of this Agreement.

**XIV.16 Construction.** This Agreement will not be construed against any party by reason of that party having caused this Agreement to be drafted.

**XIV.17 Entire Agreement.** This Agreement, the Subscription Agreements of each Member and any side letter with a Member constitutes the entire understanding and agreement among the Parties and supersedes all prior and contemporaneous understandings and agreements whether written or oral. The Administrative Member and the Company and any Series may enter into side letters with any Member or prospective Member which contain terms different from those in this Agreement or amend and supplement provisions of this Agreement as it applies to such Member. In the event of any inconsistency between the terms of this Agreement and the terms of any side letter, the terms of the side letter shall control.

[Signature page to follow]

IN WITNESS WHEREOF, the undersigned has executed this Agreement effective as of the Effective Date.

| **[Entity-name]:** |
| --- |
| **[Entity-name],** a Delaware limited liability company |
| Signature: _____ |

PLAINTIFF0002280

Name: **[Administrative-member-name]**

**[Entity-name]:**

Title: Administrative Member

IN WITNESS WHEREOF, the undersigned has executed this Agreement effective as of the Effective Date or as of the date of such Member's Closing.

**ADMINISTRATIVE MEMBER:**

Signature: _____

Name: **[Administrative-member-name]**

Date: **[Date]**

## Member Signature Page

The undersigned Member hereby executes the Limited Liability Company Operating Agreement of the Company, dated as of the Effective Date, and hereby authorizes this signature page to be attached to a counterpart of that document executed by the Administrative Member of the Company.

**MEMBER:**

Signature of Member or Authorized Signatory: _____

Member Name: **[Member-name]**

Dated: **[Date]**

## Exhibit A

FORM OF SUBSCRIPTION AGREEMENT

## Exhibit B

SERIES ADDENDUM

to

Limited Liability Company Agreement of **[Entity-name]** (the "LLC Agreement")

Name of Series: **[Series-name]**

Date Established: **[Date]**

PLAINTIFF0002281

Members, Addresses, Capital Contributions, and Percentage Interests: As set forth on the Interest Register

Objective / Purpose: **[Series-purpose]**

Investments: **[Series-investments]**

Description of Assets: **[Series-assets-description]**

Additional Capital Contribution Requirements (if any): **[Series-capital-contribution-requirements]**

Distribution Policies (if different that those set forth in the LLC Agreement): **[Series-distribution-policies]**

## Exhibit C

CERTIFICATE OF REGISTERED SERIES

(see attached)

CERTIFICATE OF REGISTERED SERIES

OF

LIMITED LIABILITY COMPANY

This Certificate of Registered Series is being filed pursuant to Section 18-218 of the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq. (the "Act"), to form a registered series of a limited liability company pursuant to the Act.

The undersigned, being duly authorized to execute and file this Certificate of Registered Series, does hereby certify as follows:

1. The name of the limited liability company is **[Entity-name]**.
2. The name of the registered series is **[Entity-name]** – **[Series-name]**. (Signature Page Follows) IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Registered Series.

| AUTHORIZED PERSON: |
|---|
| Name: **[Administrative-member-name]** |
| Signature: _____ |
| Authorized Person |

Previous
Operating Agreement

Next
series-addendum-agreement.md

PLAINTIFF0002282



**LEGAL—TOOLS** DAOLABS

**Connect Wallet**



    

Overview.

Documents.

Jurisdiction.

# Overview.

According to the <u>U.S. Small Business Administration</u>:

> *A corporation, sometimes called a C corp, is a legal entity that's separate from its owners. Corporations can make a profit, be taxed, and can be held legally liable.*
>
> *Corporations offer the strongest protection to its owners from personal liability, but the cost to form a corporation is higher than other structures. Corporations also require more extensive record-keeping, operational processes, and reporting.*
>
> *Unlike sole proprietors, partnerships, and LLCs, corporations pay income tax on their profits. In some cases, corporate profits are taxed twice — first, when the company makes a profit, and again when dividends are paid to shareholders on their personal tax returns.*

- C Corporations can raise funds through the sale of stock, which can be a benefit in attracting employees.
- C Corporations can provide separation between ownership and management.
- C corporations limit the liability of investors and firm owners since the most that they can lose in the business' failure is the amount they have invested in it.
- C Corporations are "double taxed", on an entity level and on dividends distributed to shareholders.

PLAINTIFF0002283

- C corporations are mandated to hold annual meetings and have a board of directors that is voted on by shareholders.

# Documents.



1. The <u>Incorporation Questionnaire</u> contains high level questions to help you plan your C corporation.
2. The <u>Certificate of Incorporation</u> formally incorporates a C corporation.
3. <u>Action by Sole Incorporator</u> allows a C corporation to adopt bylaws and appoint an initial board member.
4. <u>Bylaws</u> set forth key rules and regulations governing day to day operations of a C corporation.
5. <u>Certificate of Adoption of Bylaws</u> formally adopts the bylaws in document 4.
6. <u>Board Action in Lieu of First Meeting</u> contains several useful resolutions and actions concerning stock, indemnification, management, and other day to day concerns.
7. <u>IRS Form SS 4 Application for Employer Identification Number</u> is an EIN number application. The IRS uses EINs to identify taxpayers you need an EIN to pay taxes.
8. The <u>Founder Stock Agreement</u> is a Restricted Stock Purchase Agreement, typically intended to be used by the founder(s) of a company.
9. The <u>Common Stock Purchase Agreement</u> delineates the terms and conditions for the purchase of common stock in a C corporation.
10. <u>Indemnification Agreement</u> provides *indemnification* put simply, indemnification is insurance/security against legal liability for one's actions.
11. The <u>Equity Incentive Plan</u> permits the grant of Incentive Stock Options, Nonstatutory Stock Options, Stock Appreciation Rights, Restricted Stock and Restricted Stock Units.
12. The <u>Form of Stock Option Agreement</u> grants an *option* to purchase Common Stock of the c corporation. Stock options give an investor the right, but not the obligation, to buy or sell a stock at an agreed upon price and date.
13. The <u>Action by Written Consent of Stockholders</u> formally adopts the <u>Equity Incentive Plan</u> and the <u>Indemnification Agreement</u> (documents 11 & 12).
14. The <u>At Will Employment Agreement</u> is an employment

PLAINTIFF0002284



agreement which covers topics such as intellectual property, confidentiality, termination, and conflict of interest.

15. The <u>Individual Consulting Agreement</u> is—you guessed it—a consulting agreement which may be used with an individual.
16. The <u>Corporation Consulting Agreement</u> is a consulting agreement which may be used with a corporation.
17. The <u>Nondisclosure Agreement</u> is a one-way nondisclosure agreement which only applies to one party.
18. The <u>The Mutual Nondisclosure Agreement</u> is a two-way nondisclosure agreement which applies to both parties.
19. The <u>Nonqualified Stock Option Agreement</u> is a non-incentive stock option plan.
20. The <u>Warrant to Purchase Common Stock</u> is a stock warrant plan. Stock warrants convey the right to purchase shares of stock at a set price on a set date (as opposed to options, which convey the right to purchase shares of stock at a set price on or before a set date).
21. The <u>Investment Letter</u> warrants that shares are being acquired for investment and are not intended for resale.
22. The <u>Notice of Grant of Stock Option (Double Trigger)</u> grants a recipient a share option with double trigger vesting, meaning the vesting will accelerate if the company is acquired.
23. The <u>Notice of Grant of Stock Option (Standard Vesting)</u> grants a recipient a share option with standard vesting.

# Jurisdiction.

The documents above are written for the jurisdiction of the State of Delaware. Each State has adopted specific State laws regulating Corporations, Partnerships, and other business entities. The states and their respective laws differ in areas of personal liability for business debts and business' tax obligations. Generally speaking, corporate laws outline the rights, responsibilities, and procedures for each given business structure.

While you may want to consult a paralegal or attorney on the matter generally or specifically, the documents above cannot simply be revised from Delaware specific

PLAINTIFF0002285

above cannot simply be revised from Delaware-specific
language to whichever state you wish to operate, but
the corporate law statutes referenced will also need to

be updated. The following table references the state
statutes which correspond with corporate law in each
state.



| State | Statute | Title |
|-------|---------|-------|
| Alabama | Title 10 | Corporations, Partnerships and Associations |
| Alaska | Title 10 | Corporations and Associations |
| Arizona | Title 10 | Corporations and Associations |
| Arkansas | Title 4, Sub-title 3 | Corporations and Associations |
| California | California Corporations Code | California Corporations Code |
| Colorado | Title 7 | Corporations and Associations |
| Connecticut | Title 33 | Corporations |
| Delaware | Title 8 | Corporations |
| District | of Columbia Title 29 | Corporations |
| Florida | Title XXXVI | Business Organizations |
| Georgia | Title 14 | Business Corporation Code |
| Hawaii | Title 23 | Corporations and Partnerships |
| Idaho | Title 30 | Corporations |
| Illinois | Chapter 805 | Business Organizations |

PLAINTIFF0002286



| Indiana | Title 23 | Business and Other Associations |
|---------|----------|--------------------------------|

| State | Statute | Title |
|-------|---------|-------|
| Iowa | Title XII | Business Entities |
| Kansas | Chapter 17 | Corporations |
| Kentucky | Title XXIII | Private Corporations and Associations |
| Louisiana | Title 12 | Corporations and Associations |
| Maine | Titles 13 13C | Corporations |
| Maryland | Corporations and Associations | Maryland Corporations and Associations Code |
| Massachusetts | Title XXII | Corporations |
| Michigan | Chapter 450 | Corporations |
| Minnesota | Chapters 300 | thru 319B Corporations |
| Mississippi | Title 79 | Corporations, Associations, and Partnerships |
| Missouri | Title XXIII | Corporations, Associations and Partnerships |
| Montana | Title 35 | Corporations, Partnerships and Associations |
| Nebraska | Sections 21 2001   21 20,193 | Business Corporation Act |
| Nevada | Title 7 | Business Associations; Securities; Commodities |
| New | Hampshire Title XXVII | Corporations, Associations, and Proprietors of Common Lands |

PLAINTIFF0002287

| Lands |  |  |
| --- | --- | --- |



| State | Statute | Title |
| --- | --- | --- |
| New | Jersey Title 14a | New Jersey Business Corporation Act |
| New | Mexico Chapter 53 | Corporations |
| New | York Chapter 855 | Business Corporation Code |
| North | Carolina Chapter 55 – 55D | North Carolina Business Corporation Act |
| North | Dakota Title 10 | Corporations |
| Ohio | Title XVII | Corporations – Partnerships |
| Oklahoma | Title 18 | Corporations |
| Oregon | Title 7 | Corporations and Partnerships |
| Pennsylvania | Title 15 | Corporations and Business Associations |
| Rhode | Island Title 7 | Corporations, Associations, and Partnerships |
| South | Carolina Title 33 | Corporations, Partnerships and Associations |
| South | Dakota Title 47 | Corporations |
| Tennessee | Title 48 | Corporations and Associations |
| Texas | Business Organization | Code Business Organization Code |
| Utah | Title 16 | Corporations |
| Vermont | Title 11 | Corporations, Partnerships and Associations |

PLAINTIFF0002288



| State | Statute | Title |
|---|---|---|
| Virgin | Title 13.1 | Corporations |

| State | Statute | Title |
|---|---|---|
| ia | | |
| Washington | Title 23B | Washington Business Corporation Act |
| West | Virginia Chapter 31D | West Virginia Business Corporation Act |
| Wisconsin | Chapter 180 | Business Corporations |
| Wyoming | Title 17 | Wyoming Business Corporation Act |

Previous
[Notice of Grant of Stock Option (Standard Vesting)]

Next
[California C Corporation Bylaws]

PLAINTIFF0002289



**LEGAL-TOOLS** DAOLABS

**Connect Wallet**



# Variables

Corporation's Name (ALL CAPS)

ACME CORPORATION

Corporation's Street Address

123 Main Street, Apt. 45

Corporation's City

Kalamazoo

Corporation's State

Michigan

Corporation's ZIP Code

49001

Year of First Annual Meeting

2023

Month and Day of Annual Meeting

September 1st

**Update document**

Section 2.6 Notice of Special Meetings.

Section 2.7 Quorum.

Section 2.8 Adjourned Meeting and Notice.

Section 2.9 Record Date.

Section 2.10 Voting.

Section 2.11 Proxies.

Section 2.12 Validation of Defectively Called or

# BYLAWS OF [Entity-name], a California corporation

# ARTICLE I

## Section 1.1 Principal Executive Office.

PLAINTIFF0002290

The principal executive office of the corporation is hereby fixed and located at: [Entity [Entity-city], [Entity-state] [Entity-zip]. The Board of Directors is hereby granted full

authority to change said principal executive office from one location to another. Any suc be noted on these Bylaws by the Secretary opposite this Section, or this Section may be a state the new location.

## Section 1.2 Other Offices.

Other business offices may at any time be established at any place or places specified by Directors.

# ARTICLE II

## Section 2.1 Place of Meetings.

All meetings of shareholders shall be held at the principal executive office of the corpo any other place, within or without the State of California, specified by the Board of Dir

## Section 2.2 Annual Meeting.

The annual meeting of the shareholders, after the year [Annual-meeting-year], shall be he and date in each year fixed by the Board of Directors, or, if not designated then on [An meeting-month-day] in each year if not a legal holiday, and, if a legal holiday, on the n day not a legal holiday. At the annual meeting directors shall be elected, reports of the the corporation shall be considered, and any other business may be transacted that is wi of the shareholders.

## Section 2.3 Notice of Annual Meeting.

Written notice of each annual meeting shall be given to each shareholder entitled to vote personally or by first-class mail, or, if the corporation has outstanding shares held of one or more persons (determined in accordance with Section 605 of the General Corporation Law record date for the meeting, by third-class mail, or by other means of written communicat prepaid, addressed to such shareholder at the shareholder's address appearing on the book corporation or given by such shareholder to the corporation for the purpose of notice. If report addressed to the shareholder at the address of such shareholder appearing on the b corporation is returned to the corporation by the United States Post Office marked to in the United States Postal Service is unable to deliver the notice or report to the shareho address, all future notices or reports shall be deemed to have been duly given without fu if the same shall be available for the shareholder upon written demand of the sharehold principal executive office of the corporation for a period of one year from the date of t the notice or report to all other shareholders. If a shareholder gives no address, notice deemed to have been given to such shareholder if addressed to the shareholder at the plac principal executive office of the corporation is situated, or if published at least once newspaper of general circulation in the county in which said principal executive office i

All such notices shall be given to each shareholder entitled thereto not less than ten (1 if sent by third-class mail, thirty (30) days) nor more than sixty (60) days before the m

Noticed Meetings.

Section 2.13 Action Without Meeting.

Section 2.14 Inspectors of Elect

ARTICLE III: Board Directors.

Section 3.1 Powers; Approval of Loans to Officers.

Section 3.2 Number and Qualification of Directors.

Section 3.3 Election and Term of Office

Section 3.4 Vacancies.

Section 3.5 Time and Place of Meetings.

Section 3.6 Notice of

Section 3.7 Action at a Meeting: Quorum and Required Vote.

Section 3.8 Action Without a Meeting.

Section 3.9 Adjourned Meeting and Notice

Section 3.10 Fees and Compensation.

Section 3 Appointment Executive Committee

Section 3 Other Committees

ARTICLE IV: Officers.

Section 4.1 Officers

Section 4.2 The

Section 4.3 The President.

Section 4.4 Vice-President.

PLAINTIFF0002291

if sent by third-class mail, thirty (30) nor more than sixty (60) days before each meeting. Any such notice shall be deemed to have been given at the time when delivered pe deposited in the mail or sent by other means of written communication. An affidavit of ma such notice in accordance with the foregoing provisions, executed by the Secretary, Assis or any transfer agent of the corporation, shall be *prima facie* evidence of the giving of

Such notice shall specify:

(a) the place, the date, and the hour of such meeting;

(b) those matters that the Board of Directors, at the time of the mailing of the not intends to present for action by the shareholders (but, subject to the provisions of subsection (d) below, any proper matter may be presented at the meeting for such act

(c) if directors are to be elected, the names of nominees intended at the time of th to be presented by the Board of Directors for election;

(d) the general nature of a proposal, if any, to take action with respect to approva a contract or other transaction with an interested director, (ii) amendment of the A of Incorporation, (iii) a reorganization of the corporation as defined in Section 18 General Corporation Law, (iv) voluntary dissolution of the corporation, or (v) a dis in dissolution other than in accordance with the rights of outstanding preferred sha any; and

(e) such other matters, if any, as may be expressly required by statute.

## Section 2.4 Shareholder Proposals at Annual Meetings.

At an annual meeting of the shareholders, only such business shall be conducted as shall properly brought before the meeting. To be properly brought before an annual meeting, bus specified in the notice of meeting (or any supplement thereto) given by or at the directi Board of Directors, otherwise properly brought before the meeting by or at the direction of Directors or otherwise properly brought before the meeting by a shareholder. In additi other applicable requirements, for business to be properly brought before an annual meeti shareholder, the shareholder must have given timely notice thereof in writing to the Secr corporation. To be timely, a shareholder's notice must be delivered to or mailed and rece principal executive offices of the corporation, not less than 45 days nor more than 75 da the date on which the corporation first mailed its proxy materials for the previous year' meeting of shareholders (or the date on which the corporation mails its proxy materials f year if during the prior year the corporation did not hold an annual meeting or if the da annual meeting was changed more than 30 days from the prior year). A shareholder's notice Secretary shall set forth as to each matter the shareholder proposes to bring before the (i) a brief description of the business desired to be brought before the annual meeting a for conducting such business at the annual meeting, (ii) the name and record address of t proposing such business, (iii) the class and number of shares of the corporation which ar owned by the shareholder, and (iv) any material interest of the shareholder in such busin

Notwithstanding anything in the By-Laws to the contrary, no business shall be conducted a meeting except in accordance with the procedures set forth in this Section 2.4, provided, nothing in this Section 2.4 shall be deemed to preclude discussion by any shareholder of

Section 4.5 The Secretary.

Section 4.6 The Treasurer.

Section 4.7 The Controller.

ARTICLE V: Execution of corporate instruments; the not which is the authority to vote on behalf of the Corporation.

Section 5.1 Execution of Corporate Instruments.

Section 5.2 Ratification by Shareholders.

Section 5.3 Voting of Stocks Owned by the Corporation.

ARTICLE VI: Annual and Other Reports.

Section 6.1 Reports for Shareholders.

Section 6.2 Reports directors shareholders, at the direction of the Board of Directors.

Section 6.3 Reports to the Secretary.

ARTICLE VII: Stock Certificates.

Section 7.1 Stock Certificates.

Section 7.2 Certification of Shares.

ARTICLE VIII: Inspection of corporation's records.

Section 8.1 General Records.

PLAINTIFF0002292

properly brought before the annual meeting in accordance with said procedure Bylaws.

The Chairman of an annual meeting shall, if the facts warrant, determine and declare to the meeting that business was not properly brought before the meeting in accordance with the provisions of Section 2.4, and if he should so determine he shall so declare to the meeting, and any such business not properly brought before the meeting shall not be transacted.

Nothing in this Section 2.4 shall affect the right of a shareholder to request inclusion of proposals in the corporation's proxy statement to the extent that such right is provided by an applicable rule of the Securities and Exchange Commission.

## Section 2.5 Special Meetings.

Special meetings of the shareholders for any purpose or purposes whatsoever may be called at any time by the Chairman of the Board (if there be such an officer appointed), by the President, by the Board of Directors, or by one or more shareholders entitled to cast not less than ten percent (10%) of the votes at the meeting.

## Section 2.6 Notice of Special Meetings.

Upon request in writing that a special meeting of shareholders be called for any proper purpose, directed to the Chairman of the Board (if there be such an officer appointed), President, any Vice President or Secretary by any person (other than the Board of Directors) entitled to call a special meeting of shareholders, the officer forthwith shall cause notice to be given to the shareholders entitled to vote that a meeting will be held at a time requested by the person or persons calling the meeting, not less than thirty-five (35) nor more than sixty (60) days after the receipt of the request. Except in special cases where other express provision is made by statute, notice of any special meeting of shareholders shall be given in the same manner as for annual meetings of shareholders. In addition to the matters required by Section 2.3(a) and, if applicable, Section 2.3(b), notice of any special meeting shall specify the general nature of the business to be transacted, and no other business may be transacted at such meeting.

## Section 2.7 Quorum.

The presence in person or by proxy of persons entitled to vote a majority of the voting shares at a meeting shall constitute a quorum for the transaction of business. If a quorum is present, the affirmative vote of a majority of the shares represented and voting at the meeting (which shares voting affirmatively also constitute at least a majority of the required quorum) shall be the act of the shareholders, unless the vote of a different number or voting by class is required by the General Corporation Law, the Articles of Incorporation or these Bylaws. Any meeting of shareholders, whether or not a quorum is present, may be adjourned from time to time by the vote of the holders of a majority of the shares present in person or represented by proxy thereat and entitled to vote, but in the absence of a quorum no other business may be transacted at such meeting, except that the shareholders present or represented by proxy at a duly called or held meeting, at which a quorum is present, may continue to transact business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum.

ARTICLE IX:
Indemnification of
Directors, Officers,
Employees and Agents

Section 9.1 Right to
Indemnification.

Section 9.2 Authority
to Advance Expenses.

Section 9.3 Right of
Claimant to Bring Suit.

Section 9.4
Provisions Nonexclusive.

Section 9.5 Authority
to Insure.

Section 9.6 Survival
of Rights.

Section 9.7
Settlement of Claims.

Section 9.8 Effect of
Amendment.

Section 9.9
Subrogation.

Section 9.10 No
Duplication of Payments.

ARTICLE X: Amendments.

Section 10.1 Power of
Shareholders.

Section 10.2 Power of
Directors.

ARTICLE XI:
Definitions.

ARTICLE XII: Right of
First Refusal.

Section 11.1 Right of
First Refusal.

PLAINTIFF0002293

## Section 2.8 Adjourned Meeting and Notice.

When any shareholders' meeting, either annual or special, is adjourned for more than fort[y]
days, or if after adjournment a new record date is fixed for the adjourned meeting, notic[e]
adjourned meeting shall be given as in the case of an original meeting. Except as [prov]ide[d]
shall not be necessary to give any notice of the time and place of the adjourned [meeti]ng
business to be transacted thereat, other than by announcement of the time and place there[of]
meeting at which such adjournment is taken.

## Section 2.9 Record Date.

(a) The Board of Directors may fix a time in the future as a record date for the
determination of the shareholders entitled to notice of and to vote at any meeting [of]
shareholders or entitled to give consent to corporate action in writing without a me[eting]
receive any report, to receive any dividend or other distribution, or allotment of a[ny]
rights, or to exercise rights in respect of any other lawful action. The record date
shall be not more than sixty (60) days nor less than ten (10) days prior to the date [of]
meeting, nor more than sixty (60) days prior to any other action. A determination of
shareholders of record entitled to notice of or to vote at a meeting of shareholders
apply to any adjournment of the meeting unless the Board of Directors fixes a new re[cord date]
for the adjourned meeting, but the Board of Directors shall fix a new record date i[f the]
meeting is adjourned for more than forty-five (45) days from the date set for the or[iginal]
meeting. When a record date is so fixed, only shareholders of record at the close of [business]
on that date are entitled to notice of and to vote at any such meeting, to give cons[ent]
without a meeting, to receive any report, to receive the dividend, distribution, or [allotment]
of rights, or to exercise the rights, as the case may be, notwithstanding any transf[er of]
shares on the books of the corporation after the record date, except as otherwise pr[ovided in]
the Articles of Incorporation or these Bylaws.

(b) If no record date is fixed:

1. The record date for determining shareholders entitled to notice of or to v[ote]
   at a meeting of shareholders shall be at the close of business on the busi[ness]
   day next preceding the day on which notice is given or, if notice is waive[d,]
   at the close of business on the business day preceding the day on which th[e]
   meeting is held.

2. The record date for determining shareholders entitled to give consent to
   corporate action in writing without a meeting, when no prior action by the
   Board of Directors has been taken, shall be the day on which the first wri[tten]
   consent is given.

3. The record date for determining shareholders for any other purpose shall b[e]
   the close of business on the day on which the Board of Directors adopts th[e]
   resolution relating thereto, or the sixtieth (60th) day prior to the date [of]
   such other action, whichever is later.

## Section 2.10 Voting.

PLAINTIFF0002294

(a) Except as provided below with respect to cumulative voting and except as may be provided in the Articles of Incorporation, each outstanding share, regardless of cla

be entitled to one vote on each matter submitted to a vote of shareholders. Any hol shares entitled to vote on any matter may vote part of the shares in favor of the pr and refrain from voting the remaining shares or vote them against the propo       he elections to office, but, if the shareholder fails to specify the number of       s s shareholder is voting affirmatively, it will be conclusively presumed that the share approving vote is with respect to all shares such shareholder is entitled to vote.

(b) Subject to the provisions of Sections 702 through 704 of the General Corporation (relating to voting of shares held by a fiduciary, receiver, pledgee, or minor, in 1 of a corporation, or in joint ownership), persons in whose names shares entitled to stand on the stock records of the corporation at the close of business on the recor shall be entitled to vote at the meeting of shareholders. Such vote may be *viva voc* ballot; provided, however, that all elections for directors must be by ballot upon made by a shareholder at any election and before the voting begins. Shares of this corporation owned by a corporation more than twenty-five percent (25%) of the voting which is owned directly by this corporation, or indirectly through one or more majo subsidiaries of this corporation, shall not be entitled to vote on any matter.

(c) Subject to the requirements of the next sentence, every shareholder entitled to any election for directors shall have the right to cumulate such shareholder's votes one candidate a number of votes equal to the number of directors to be elected multi the number of votes to which such shareholder's shares are normally entitled, or to distribute votes on the same principle among as many candidates as such shareholder fit. No shareholder shall be entitled to cumulate votes unless such candidate's name candidates' names have been placed in nomination prior to the voting and the shareh given notice at the meeting, prior to the voting, of the shareholder's intention to such shareholder's votes. If any one shareholder has given such notice, all sharehol cumulate their votes for candidates in nomination.

(d) The candidates for directors receiving the highest number of affirmative votes entitled to be voted for them, up to the number of directors to be elected by such s shall be elected. Votes against a director and votes withheld shall have no legal ef

## Section 2.11 Proxies.

(a) Every person entitled to vote shares (including voting by written consent) may another person or other persons to act by proxy with respect to such shares. "Proxy written authorization signed or an electronic transmission authorized by a sharehol shareholder's attorney-in-fact giving another person or persons power to vote with the shares of such shareholder. "Signed" for the purpose of this Section means the the shareholder's name or other authorization on the proxy (whether by manual signa typewriting, telegraphic, or electronic transmission or otherwise) by the sharehold shareholder's attorney-in-fact. A proxy may be transmitted by an oral telephone tran if it is submitted with information from which it may be determined that the proxy v authorized by the shareholder, or his or her attorney in fact. Any proxy duly execut revoked and continues in full force and effect until (i) a written instrument revoki filed with the Secretary of the corporation prior to the vote pu

PLAINTIFF0002295

filed with the Secretary of the corporation prior to the vote pursuant thereto, (ii)
subsequent proxy executed by the person executing the prior proxy is presented to th
meeting, (iii) the person executing the proxy attends the meeting and votes in perso

(iv) written notice of the death or incapacity of the maker of such proxy is receive
corporation before the vote pursuant thereto is counted; provided that no such proxy
valid after the expiration of eleven (11) months from the date of its execut    unl
otherwise provided in the proxy. Notwithstanding the foregoing sentence, a p     tha
that it is irrevocable, is irrevocable for the period specified therein to the exter
permitted by Section 705(e) and (f) of the General Corporation Law. The dates contai
the forms of proxy presumptively determine the order of execution, regardless of the
dates on the envelopes in which they are mailed.

(b) As long as no outstanding class of securities of the corporation is registered u
Section 12 of the Securities Exchange Act of 1934, or is not exempted from such regi
by Section 12(g)(2) of such Act, any form of proxy or written consent distributed to
or more shareholders of the corporation when outstanding shares of the corporation a
of record by 100 or more persons shall afford an opportunity on the proxy or form of
consent to specify a choice between approval and disapproval of each matter or group
related matters intended to be acted upon at the meeting for which the proxy is soli
by such written consent, other than elections to office, and shall provide, subject
reasonable specified conditions, that where the person solicited specifies a choice
respect to any such matter the shares will be voted in accordance therewith. In any
of directors, any form of proxy in which the directors to be voted upon are named th
candidates and which is marked by a shareholder "withhold" or otherwise marked in a
indicating that the authority to vote for the election of directors is withheld shal
voted for the election of a director.

## Section 2.12 Validation of Defectively Called or Noticed Meetings.

The transactions of any meeting of shareholders, however called and noticed, and wherever
valid as though had at a meeting duly held after regular call and notice, if a quorum is
in person or by proxy, and if, either before or after the meeting, each of the persons en
vote, not present in person or by proxy, signs a written waiver of notice or a consent to
of the meeting or an approval of the minutes thereof. All such waivers, consents and appr
filed with the corporate records or made a part of the minutes of the meeting. Attendance
at a meeting shall constitute a waiver of notice and of presence at such meeting, except
person objects, at the beginning of the meeting, to the transaction of any business becau
is not lawfully called or convened and except that attendance at a meeting is not a waive
to object to the consideration of matters required by these Bylaws or by the General Corp
be included in the notice if such objection is expressly made at the meeting. Neither the
be transacted at nor the purpose of any regular or special meeting of shareholders need b
any written waiver of notice, consent to the holding of the meeting or approval of the mi
unless otherwise provided in the Articles of Incorporation or these Bylaws, or unless the
involves one or more matters specified in Section 2.3(d) of these Bylaws.

## Section 2.13 Action Without Meeting.

(a) Directors may be elected without a meeting by a consent in writing, setting fort
action so taken, signed by all of the persons who would be entitled to vote for the

PLAINTIFF0002298

of directors, provided that, without notice except as hereinafter set forth, a direc
be elected at any time to fill a vacancy not filled by the directors (other than a v

created by removal of a director) by the written consent of persons holding a majori
outstanding shares entitled to vote for the election of directors.

Any other action that may be taken at a meeting of the shareholders, may be      wi

(b) Unless the consents of all shareholders entitled to vote have been solicited in

   1. notice of any proposed shareholder approval of (i) a contract or other
      transaction with an interested director, (ii) indemnification of an agent
      the corporation, (iii) a reorganization of the corporation as defined in
      Section 181 of the General Corporation Law, or (iv) a distribution in
      dissolution other than in accordance with the rights of outstanding prefer
      shares, if any, without a meeting by less than unanimous written consent,
      shall be given at least ten (10) days before the consummation of the actic
      authorized by such approval; and

   2. prompt notice shall be given of the taking of any other corporate action
      approved by shareholders without a meeting by less than unanimous written
      consent to those shareholders entitled to vote who have not consented in
      writing. Such notices shall be given in the manner provided in Section 2.3
      these Bylaws.

Any shareholder giving a written consent, or the shareholder's proxyholders, or a transfe
shares or a personal representative of the shareholder or their respective proxyholders,
consent by a writing received by the corporation prior to the time that written consents
of shares required to authorize the proposed action have been filed with the Secretary of
corporation, but may not do so thereafter. Such revocation is effective upon its receipt
Secretary of the corporation.

## Section 2.14 Inspectors of Election.

(a) In advance of any meeting of shareholders, the Board of Directors may appoint in
of election to act at the meeting and any adjournment thereof. If inspectors of elec
not so appointed, or if any persons so appointed fail to appear or refuse to act, th
chairman of any such meeting may, and on the request of any shareholder or the holde
shareholder's proxy shall, appoint inspectors of election (or persons to replace tho
fail or refuse) at the meeting. The number of inspectors shall be either one or thre
inspectors are appointed at a meeting on the request of one or more shareholders or
of proxies, the majority of shares represented in person or by proxy shall determine
one inspector or three inspectors are to be appointed.

(b) The inspectors of election shall determine the number of shares outstanding and
voting power of each, the shares represented at the meeting, the existence of a quor
the authenticity, validity and effect of proxies; receive votes, ballots or consents
and determine all challenges and questions in any way arising in connection with the
vote; count and tabulate all votes or consents; determine when the polls shall close
determine the result; and do such acts as may be proper to conduct the election or v

PLAINTIFF0002297

fairness to all shareholders.

(c) The inspectors of election shall perform their duties impartially, in good faith
best of their ability and as expeditiously as is practical. If there are three inspe
election, the decision, act or certificate of a majority is effective in all
decision, act or certificate of all. Any report or certificate made by the i...to
election is *prima facie* evidence of the facts stated therein.

# ARTICLE III

## Section 3.1 Powers; Approval of Loans to Officers.

(a) Subject to the provisions of the General Corporation Law and any limitations in
Articles of Incorporation relating to action required to be approved by the sharehol
by the outstanding shares, the business and affairs of the corporation shall be mana
all corporate powers shall be exercised by or under the direction of the Board of Di
The Board of Directors may delegate the management of the day-to-day operation of th
business of the corporation to a management company or other person, provided that t
business and affairs of the corporation shall be managed and all corporate powers sh
exercised under the ultimate direction of the Board of Directors.

(b) The corporation may, upon approval of the Board of Directors alone, make loans o
or property to, or guarantee the obligations of, any officer (whether or not a direc
the corporation or of its parent, or adopt an employee benefit plan authorizing such
guaranties, provided that:

1. the Board of Directors determines that such a loan, guaranty, or plan may
   reasonably be expected to benefit the corporation;

2. the corporation has outstanding shares held of record by 100 or more perso
   (determined as provided in Section 605 of the General Corporation Law) on
   date of approval by the Board of Directors;

3. the approval by the Board of Directors is by a vote sufficient without
   counting the vote of any interested director(s); and

4. the loan is otherwise made in compliance with Section 315 of the General
   Corporation Law.

## Section 3.2 Number and Qualification of Directors.

The number of directors of the corporation shall not be less than five (5) nor more than
until changed by amendment of the Articles of Incorporation or by a Bylaw amending this S
duly adopted by the vote or written consent of holders of a majority of the outstanding s
provided that if the minimum number of directors is five or more, any proposal to reduce
number of directors to a number less than five cannot be adopted if the votes cast agains
at a meeting, or the shares not consenting in the case of action by written consent, are
than sixteen and two-thirds percent (16-2/3%) of the outstanding shares entitled to vote.

PLAINTIFF0002298

number of directors shall be fixed from time to time, within the limits specified in the Incorporation or in this Section 3.2, by a bylaw or amendment thereof duly adopted by the majority of the shares entitled to vote represented at a duly held meeting at which a quo

present, or by the written consent of the holders of a majority of the outstanding shares vote, or by the Board of Directors.

Subject to the foregoing provisions for changing the number of directors, the num   r c the corporation has been fixed at six (6).

## Section 3.3 Election and Term of Office.

The directors shall be elected at each annual meeting of shareholders, but, if any such a is not held or the directors are not elected thereat, the directors may be elected at an meeting of shareholders held for that purpose. Each director, including a director electe vacancy, shall hold office until the expiration of the term for which elected and until a been elected and qualified.

## Section 3.4 Vacancies.

A vacancy in the Board of Directors shall be deemed to exist in case of the death, resign removal of any director, if a director has been declared of unsound mind by order of cour of a felony, if the authorized number of directors is increased, if the incorporator or i have failed to appoint the authorized number of directors in any resolution for appointme directors upon the initial organization of the corporation, or if the shareholders fail, or special meeting of shareholders at which any director or directors are elected, to ele authorized number of directors to be voted for at that meeting.

Vacancies in the Board of Directors, except for a vacancy created by the removal of a dir filled by a majority of the directors present at a meeting at which a quorum is present, number of directors then in office is less than a quorum, (a) by the unanimous written co directors then in office, (b) by the vote of a majority of the directors then in office a held pursuant to notice or waivers of notice in compliance with these Bylaws, or (c) by a remaining director. Each director so elected shall hold office until his or her successor an annual or a special meeting of the shareholders. A vacancy in the Board of Directors c removal of a director may be filled only by the vote of a majority of the shares entitled represented at a duly held meeting at which a quorum is present, or by the written consen the holders of the outstanding shares.

The shareholders may elect a director or directors at any time to fill any vacancy or vac filled by the directors. Any such election by written consent other than to fill a vacanc removal shall require the consent of holders of a majority of the outstanding shares enti Any such election by written consent to fill a vacancy created by removal shall require t written consent of all shares entitled to vote for the election of directors.

Any director may resign effective upon giving written notice to the Chairman of the Board such an officer appointed), the President, the Secretary or the Board of Directors of the unless the notice specifies a later time for the effectiveness of such resignation. If th is effective at a future time, a successor may be elected to take office when the resigna effective.

PLAINTIFF0002299

No reduction of the authorized number of directors shall have the effect of removing any
to the expiration of the director's term of office.

No director may be removed (unless the entire board is removed) when the votes cast again
not consenting in writing to the removal, would be sufficient to elect the director if vo
cumulatively at an election at which the same total number of votes were cast (or the
taken by written consent, all shares entitled to vote were voted) and the entire            r o
authorized at the time of the director's most recent election were then being elected.

## Section 3.5 Time and Place of Meetings.

The Board of Directors shall hold a regular meeting immediately after the meeting of shar
which it is elected and at the place where such meeting is held, or at such other place a
fixed by the Board of Directors, for the purpose of organization, election of officers of
corporation and the transaction of other business. Notice of such meeting is hereby dispe
Other regular meetings of the Board of Directors shall be held without notice at such tim
as are fixed by the Board of Directors. Special meetings of the Board of Directors may be
time whenever called by the Chairman of the Board (if there be such an officer appointed)
President, any Vice-President, the Secretary or any two directors.

Except as hereinabove provided in this Section 3.5, all meetings of the Board of Director
at any place within or without the State of California that has been designated by resolu
Board of Directors as the place for the holding of regular meetings, or by written consen
directors. In the absence of such designation, meetings of the Board of Directors shall b
principal executive office of the corporation. Special meetings of the Board of Directors
either at a place so designated or at the principal executive office of the corporation.

## Section 3.6 Notice of Special Meetings.

Notice of the time and place of special meetings shall be delivered personally to each di
communicated to each director by telephone, telegraph, facsimile, electronic mail message
charges prepaid, addressed to the director at the director's address as it is shown upon
the corporation or, if it is not so shown on such records or is not readily ascertainable
at which the meetings of the directors are regularly held. In case such notice is mailed,
deposited in the United States mail at least four (4) days prior to the time of the holdi
meeting. In case such notice is delivered personally or by telephone, telegraph, facsimil
electronic mail message, as above provided, it shall be so delivered at least forty-eight
prior to the time of the holding of the meeting. Any such transmission of notice, as abov
shall be due, legal and personal notice to such director. As used herein, notice by telep
deemed to include a voice messaging system or other system or technology designed to reco
communicate messages, or wireless, to the recipient, including the recipient's designated
or address on such a system.

Notice of a meeting need not be given to any director who signs a waiver of notice or a c
holding the meeting or an approval of the minutes thereof, whether before or after the me
attends the meeting without protesting, prior thereto or at its commencement, the lack of
such director. All such waivers, consents and approvals shall be filed with the corporate
made a part of the minutes of the meetings.

PLAINTIFF0002300

## Section 3.7 Action at a Meeting

(a) Presence of a majority of the authorized number of directors at a meeting of the Directors constitutes a quorum for the transaction of business, except as hereinafter provided.

(b) Members of the Board of Directors may participate in a meeting through use of conference telephone, electronic video screen communication or other communications equipment. Participation in a meeting through use of conference telephone pursuant to this subsection (b) constitutes presence in person at such meeting as long as all members participating in the meeting are able to hear one another. Participation in a meeting through use of electronic video screen communication or other communications equipment (other than conference telephone) pursuant to this subsection (b) constitutes presence in person at the meeting, if (1) each member participating in the meeting can communicate with all of the other members concurrently, (2) each member is provided the means of participating in all matters before the board, including, without limitation, the capacity to propose, or to interpose an objection to, a specific action to be taken by the corporation, and (3) the corporation adopts and implements some means of verifying that (a) a person participating in the meeting is a director or other person entitled to participate in the meeting, and (b) all actions of, or votes by, the board are taken or cast only by the directors and not by persons who are not directors.

(c) Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors, unless a greater number, or the same number after disqualifying one or more directors from voting, is required by law, by the Articles of Incorporation, or by these Bylaws. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for such meeting.

## Section 3.8 Action Without a Meeting.

Any action required or permitted to be taken by the Board of Directors may be taken without a meeting if all members of the Board of Directors shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of the proceedings of the Board of Directors. Such action by written consent shall have the same force and effect as a unanimous vote of such directors.

## Section 3.9 Adjourned Meeting and Notice.

A majority of the directors present, whether or not a quorum is present, may adjourn any meeting to another time and place. If the meeting is adjourned for more than twenty-four (24) hours, notice of any adjournment to another time or place shall be given prior to the time of the adjourned meeting to the directors who were not present at the time of the adjournment.

## Section 3.10 Fees and Compensation.

PLAINTIFF0002301

Directors and members of committees may receive such compensation, if any, for their serv
reimbursement for expenses, as may be fixed or determined by resolution of the Board of D

## Section 3.11 Appointment of Executive and Other Committees.

The Board of Directors may, by resolution adopted by a majority of the authorize           er
designate one or more committees, each consisting of two or more directors, to se        t
the Board of Directors. The Board of Directors may designate one or more directors as alt
of any committee, who may replace any absent member at any meeting of the committee. The
members or alternate members of a committee requires the vote of a majority of the author
directors. Any such committee, to the extent provided in the resolution of the Board of D
these Bylaws, shall have all the authority of the Board of Directors, except with respect

    (a) The approval of any action for which the General Corporation Law also requires
    shareholders' approval or approval of the outstanding shares.

    (b) The filling of vacancies on the Board of Directors or in any committee.

    (c) The fixing of compensation of the directors for serving on the Board of Director
    any committee.

    (d) The amendment or repeal of these Bylaws or the adoption of new Bylaws.

    (e) The amendment or repeal of any resolution of the Board of Directors that by its
    terms is not so amendable or repealable.

    (f) A distribution to the shareholders of the corporation, except at a rate, in a pe
    amount or within a price range determined by the Board of Directors.

    (g) The appointment of other committees of the Board of Directors or the members the

The provisions of Sections 3.5 through 3.9 of these Bylaws apply also to committees of th
Directors and action by such committees, *mutatis mutandis* (with the necessary changes hav
in the language thereof).

# ARTICLE IV

## Section 4.1 Officers.

The officers of the corporation shall consist of the President, the Secretary and the Tre
each of them shall be appointed by the Board of Directors. The corporation may also have
the Board, one or more Vice-Presidents, a Controller, one or more Assistant Secretaries a
Treasurers, and such other officers as may be appointed by the Board of Directors, or wit
authorization from the Board of Directors by the President. The order of the seniority of
Presidents shall be in the order of their nomination, unless otherwise determined by the
Directors. Any two or more of such offices may be held by the same person. The Board of D
designate one officer as the chief financial officer of the corporation. In the absence o
designation, the Treasurer shall be the chief financial officer. The Board of Directors m
and may empower the President to appoint, such other officers as the business of the corp
require, each of whom shall have such authority and perform such duties

require, each of whom shall have such authority and perform such duties as are provided
or as the Board of Directors may from time to time determine.

All officers of the corporation shall hold office from the date appointed to the date of
succeeding regular meeting of the Board of Directors following the meeting of shareholder
Board of Directors is elected, and until their successors are elected; provided t   ll
well as any other employee or agent of the corporation, may be removed at any tim    the
the Board of Directors, or, except in the case of an officer chosen by the Board of Direc
officer upon whom such power of removal may be conferred by the Board of Directors, and u
removal, resignation, death or incapacity of any officer, the Board of Directors or the F
cases where he or she has been vested by the Board of Directors with power to appoint, ma
office vacant and fill such vacancy. Nothing in these Bylaws shall be construed as creati
contractual right to employment with the corporation.

Any officer may resign at any time by giving written notice to the Board of Directors, th
or the Secretary of the corporation, without prejudice, however, to the rights, if any, c
corporation under any contract to which such officer is a party. Any such resignation sha
at the date of the receipt of such notice or at any later time specified therein; and, un
specified therein, the acceptance of such resignation shall not be necessary to make it e

The salary and other compensation of the officers shall be fixed from time to time by res
in the manner determined by the Board of Directors.

## Section 4.2 The Chairman of the Board.

The Chairman of the Board (if there be such an officer appointed) shall, when present, pr
meetings of the Board of Directors and shall perform all the duties commonly incident to
The Chairman of the Board shall have authority to execute in the name of the corporation
contracts, deeds, leases and other written instruments to be executed by the corporation
by law the signature of the President is required), and shall perform such other duties a
Directors may from time to time determine.

## Section 4.3 The President.

Subject to such supervisory powers, if any, as may be given by the Board of Directors to
of the Board, the President shall be the chief executive officer of the corporation and s
all the duties commonly incident to that office. The President shall have authority to ex
name of the corporation bonds, contracts, deeds, leases and other written instruments to
the corporation. The President shall preside at all meetings of the shareholders and, in
the Chairman of the Board or if there is none, at all meetings of the Board of Directors,
perform such other duties as the Board of Directors may from time to time determine.

## Section 4.4 Vice-Presidents.

The Vice-Presidents (if there be such officers appointed), in the order of their seniorit
otherwise established by the Board of Directors), may assume and perform the duties of th
the absence or disability of the President or whenever the offices of the Chairman of the
President are vacant. The Vice-Presidents shall have such titles, perform such other duti
such other powers as the Board of Directors, the President or these Bylaws may designate

PLAINTIFF0002303

time.

## Section 4.5 The Secretary.

The Secretary shall record or cause to be recorded, and shall keep or cause to be kept, a principal executive office and such other place as the Board of Directors may order  a bo of actions taken at all meetings of directors and committees thereof and of share    rs, and place of holding, whether regular or special, and, if special, how authorized,    nc given, the names of those present at directors' meetings, the number of shares present or at shareholders' meetings, and the proceedings thereof.

The Secretary shall keep, or cause to be kept, at the principal executive office or at th the corporation's transfer agent, a share register or a duplicate share register in a for being converted into written form, showing the names of the shareholders and their addres number and classes of shares held by each, the number and date of certificates issued for the number and date of cancellation of every certificate surrendered for cancellation.

The Secretary shall give, or cause to be given, notice of all the meetings of the shareho the Board of Directors and committees thereof required by these Bylaws or by law to be gi have such other powers and perform such other duties as may be prescribed by the Board of by these Bylaws.

The President may direct any Assistant Secretary to assume and perform the duties of the the absence or disability of the Secretary, and each Assistant Secretary shall perform su duties and have such other powers as the Board of Directors or the President may designat time.

## Section 4.6 The Treasurer.

The Treasurer shall keep and maintain, or cause to be kept and maintained, adequate and c accounts of the properties and business transactions of the corporation. The books of acc all reasonable times be open to inspection by any director.

The Treasurer shall deposit all moneys and other valuables in the name and to the credit corporation with such depositaries as may be designated by the Board of Directors. The Tr disburse the funds of the corporation as may be ordered by the Board of Directors, shall President and directors, whenever they request it, an account of all of the Treasurer's t Treasurer and of the financial condition of the corporation, and shall have such other po perform such other duties as may be prescribed by the Board of Directors or these Bylaws.

The President may direct any Assistant Treasurer to assume and perform the duties of the the absence or disability of the Treasurer, and each Assistant Treasurer shall perform su duties and have such other powers as the Board of Directors or the President may designat time.

## Section 4.7 The Controller.

The Controller (if there be such an officer appointed) shall be responsible for the estab maintenance of accounting and other systems required to control and account for the asset corporation and provide safeguards therefor, and to collect information required for mana purposes, and shall perform such other duties and have such other pow

purposes, and shall perform such other ~~duties and have such other powers as the Board of~~ the President may designate from time to time.

The President may direct any Assistant Controller to assume and perform the duties of the in the absence or disability of the Controller, and each Assistant Controller shall perfo duties and have such other powers as the Board of Directors, the Chairman of the (i such an officer appointed) or the President may designate from time to time.

# ARTICLE V

## Section 5.1 Execution of Corporate Instruments.

In its discretion, the Board of Directors may determine the method and designate the sig or officers or other person or persons, to execute any corporate instrument or document, corporate name without limitation, except where otherwise provided by law, and such exec signature shall be binding upon the corporation.

All checks and drafts drawn on banks or other depositaries on funds to the credit of the or in special accounts of the corporation, shall be signed by such person or persons as 1 Directors shall authorize to do so.

The Board of Directors shall designate an officer who personally, or through his represen vote shares of other corporations standing in the name of this corporation. The authority shares shall include the authority to execute a proxy in the name of the corporation for voting the shares.

## Section 5.2 Ratification by Shareholders.

In its discretion, the Board of Directors may submit any contract or act for approval or of the shareholders at any annual meeting of shareholders, or at any special meeting of s called for that purpose; and any contract or act that shall be approved or ratified by th majority of the voting power of the corporation shall be as valid and binding upon the co upon the shareholders thereof as though approved or ratified by each and every shareholde corporation, unless a greater vote is required by law for such purpose.

## Section 5.3 Voting of Stocks Owned by the Corporation.

All stock of other corporations owned or held by the corporation for itself, or for other any capacity, shall be voted, and all proxies with respect thereto shall be executed, by authorized to do so by resolution of the Board of Directors, or in the absence of such au by the Chairman of the Board (if there be such an officer appointed), the President or an Vice-President, or by any other person authorized to do so by the Chairman of the Board, or any Vice President.

# ARTICLE VI

## Section 6.1 Reports to Shareholders.

PLAINTIFF0002305

The Board of Directors of the corporation shall cause an annual report to be sent to the
not later than 120 days after the close of the fiscal year, and at least fifteen (15) day
by third-class mail, thirty-five (35) days) prior to the annual meeting of shareholders t
during the next fiscal year. This report shall contain a balance sheet as of the end of t
year and an income statement and statement of changes in financial position for that fisc
accompanied by any report thereon of independent accountants or, if there is no s     epo
certificate of an authorized officer of the corporation that the statements were p    red
from the books and records of the corporation. This report shall also contain such other
required by Section 1501(b) of the General Corporation Law, unless the corporation is sub
reporting requirements of Section 13 of the Securities Exchange Act of 1934, and is not e
therefrom under Section 12(g)(2) thereof. As long as the corporation has less than 100 ho
record of its shares (determined as provided in Section 605 of the General Corporation La
foregoing requirement of an annual report is hereby waived.

If no annual report for the last fiscal year has been sent to shareholders, the corporati
the written request of any shareholder made more than 120 days after the close of such fi
deliver or mail to the person making the request within thirty (30) days thereafter the f
statements for such year as required by Section 1501(a) of the General Corporation Law. A
or shareholders holding at least five percent (5%) of the outstanding shares of any class
corporation may make a written request to the corporation for an income statement of the
for the three-month, six-month or nine-month period of the current fiscal year ended more
(30) days prior to the date of the request and a balance sheet of the corporation as of t
period and, in addition, if no annual report for the last fiscal year has been sent to sh
the annual report for the last fiscal year, unless such report has been waived under thes
statements shall be delivered or mailed to the person making the request within thirty (3
thereafter. A copy of any such statements shall be kept on file in the principal executiv
the corporation for twelve (12) months, and they shall be exhibited at all reasonable tim
shareholder demanding an examination of the statements, or a copy shall be mailed to the

The quarterly income statements and balance sheets referred to in this Section shall be a
the report thereon, if any, of any independent accountants engaged by the corporation or
certificate of an authorized officer of the corporation that the financial statements wer
without audit from the books and records of the corporation.

## Section 6.2 Report of Shareholder Vote.

For a period of sixty (60) days following the conclusion of an annual, regular, or specia
shareholders, the corporation shall, upon written request from a shareholder, forthwith i
shareholder of the result of any particular vote of shareholders taken at the meeting, in
number of shares voting for, the number of shares voting against, and the number of share
or withheld from voting. If the matter voted on was the election of directors, the corpor
report the number of shares (or votes if voted cumulatively) cast for each nominee for di
more than one class or series of shares voted, the report shall state the appropriate num
and series of shares.

## Section 6.3 Reports to the Secretary of State.

(a) Every year, during the calendar month in which the original articles of incorporation
with the California Secretary of State, or during the preceding five calendar months, the

PLAINTIFF0002306

shall file a statement with the Secretary of State on the prescribed form, setting forth number of directors; the names and complete business and residence addresses of all incum directors; the names and complete business or resident addresses of the chief executive secretary, and the chief financial officer; the street address of the corporation's princ office or principal business office in this state; a statement of the general type of bus constituting the principal business activity of the corporation; and a designatio the corporation for the purpose of service of process, all in compliance with Section Corporations Code of California.

(b) Notwithstanding the provisions of paragraph (a) of this section, if there has been no information contained in the corporation's last annual statement on file in the Secretary office, the corporation may, in lieu of filing the annual statement described in paragrap section, advise the Secretary of State, on the appropriate form, that no changes in the information have occurred during the applicable period.

# ARTICLE VII

## Section 7.1 Stock Certificates.

Every holder of shares in the corporation shall be entitled to have a certificate signed the corporation by the Chairman or Vice Chairman of the Board (if there be such officers the President or a Vice-President and by the chief financial officer or any Assistant Tre Secretary or any Assistant Secretary, certifying the number of shares and the class or se owned by the shareholder. Any of the signatures on the certificate may be a facsimile. In officer, transfer agent or registrar who has signed or whose facsimile signature has been certificate has ceased to be such officer, transfer agent or registrar before such certifi issued, it may be issued by the corporation with the same effect as if such person were a transfer agent or registrar at the date of issue.

Any such certificate shall also contain such legends or other statements as may be requir 417 and 418 of the General Corporation Law, the Corporate Securities Law of 1968, federal state securities laws, and any agreement between the corporation and the issuee of the ce

Certificates for shares may be issued prior to full payment, under such restrictions and purposes as the Board of Directors or these Bylaws may provide; provided, however, that t issued to represent any such partly paid shares shall state on the face thereof the total consideration to be paid therefor, the amount remaining unpaid and the terms of payment.

No new certificate for shares shall be issued in lieu of an old certificate unless the la surrendered and canceled at the same time; provided, however, that a new certificate will without the surrender and cancellation of the old certificate if (1) the old certificate apparently destroyed or wrongfully taken; (2) the request for the issuance of the new cer made within a reasonable time after the owner of the old certificate has notice of its lo destruction, or theft; (3) the request for the issuance of a new certificate is made prio receipt of notice by the corporation that the old certificate has been acquired by a bona purchaser; (4) the owner of the old certificate files a sufficient indemnity bond with on other adequate security to the corporation; and (5) the owner satisfies any other reasona requirement imposed by the corporation. In the event of the issuance of a new certificate and liabilities of the corporation, and of the holders of the old and new certificates, s

PLAINTIFF0002367

governed by the provisions of Sections 8104 and 8405 of the California Commercial Code.

## Section 7.2 Uncertificated Shares.

Notwithstanding Section 7.1, the corporation may adopt a system of issuance, recordation of its shares by electronic or other means not involving any issuance of certificates, in provisions for notice to purchasers in substitution for the required statements of citi Sections 417, 418, and 1302 of the California Corporations Code, and as may be req d b commissioner in administering the Corporate Securities Law of 1968, which system (1) has by the United States Securities and Exchange Commission, (2) is authorized in any statute States, or (3) is in accordance with Division 8 (commencing with Section 8101) of the Cal Commercial Code. Any system so adopted shall not become effective as to issued and outsta certificated securities until the certificates therefor have been surrendered to the corp

# ARTICLE VIII

## Section 8.1 General Records.

The accounting books and records and the minutes of proceedings of the shareholders, the Directors and committees thereof of the corporation and any subsidiary of the corporation to inspection upon the written demand on the corporation of any shareholder or holder of certificate at any reasonable time during usual business hours, for a purpose reasonably such holder's interests as a shareholder or as the holder of such voting trust certificat inspection by a shareholder or holder of a voting trust certificate may be made in person or attorney, and the right of inspection includes the right to copy and make extracts. Mi proceedings of the shareholders, Board, and committees thereof shall be kept in written f books and records shall be kept either in written form or in any other form capable of be into written form.

A shareholder or shareholders holding at least five percent (5%) in the aggregate of the voting shares of the corporation or who hold at least one percent (1%) of such voting sha filed a Schedule 14A with the United States Securities and Exchange Commission relating t of directors of the corporation shall have (in person, or by agent or attorney) the right and copy the record of shareholders' names and addresses and shareholdings during usual b upon five (5) business days' prior written demand upon the corporation or to obtain from agent for the corporation, upon written demand and upon the tender of its usual charges f a list of the shareholders' names and addresses, who are entitled to vote for the electio directors, and their shareholdings, as of the most recent record date for which it has be as of a date specified by the shareholder subsequent to the date of demand. The list shal available on or before the later of five (5) business days after the demand is received o specified therein as the date as of which the list is to be compiled.

Every director shall have the absolute right at any reasonable time to inspect and copy a records and documents of every kind and to inspect the physical properties of the corpora subsidiaries. Such inspection by a director may be made in person or by agent or attorney right of inspection includes the right to copy and make extracts.

## Section 8.2 Inspection of Bylaws.

The corporation shall keep at its principal executive office in Calif **PLAINTIFF0002308**ri

The corporation shall keep at its principal executive office in California, or if its pri
executive office is not in California, then at its principal business office in Californi
otherwise provide upon written request of any shareholder if it has no such office in Cal

original or a copy of these Bylaws as amended to date, which shall be open to inspection
shareholders at all reasonable times during office hours.

# ARTICLE IX

## Section 9.1 Right to Indemnification.

Each person who was or is a party or is threatened to be made a party to or is involved (
witness, or otherwise), in any threatened, pending, or completed action, suit, or proceed
civil, criminal, administrative, or investigative (hereafter a "Proceeding"), by reason o
that he, or a person of whom he is the legal representative, is or was a director, office
or agent of the corporation or is or was serving at the request of the corporation as a d
officer, employee, or agent of another foreign or domestic corporation, partnership, join
trust, or other enterprise, or was a director, officer, employee, or agent of a foreign o
corporation that was a predecessor corporation of the corporation or of another enterpris
request of such predecessor corporation, including service with respect to employee benef
whether the basis of the Proceeding is alleged action in an official capacity as a direct
employee, or agent or in any other capacity while serving as a director, officer, employe
(hereafter an "Agent"), shall be indemnified and held harmless by the corporation to the
authorized by statutory and decisional law, as the same exists or may hereafter be interp
amended (but, in the case of any such amendment or interpretation, only to the extent tha
amendment or interpretation permits the corporation to provide broader indemnification ri
permitted prior thereto) against all expenses, liability, and loss (including attorneys'
judgments, fines, ERISA excise taxes and penalties, amounts paid or to be paid in settlem
interest, assessments, or other charges imposed thereon, and any federal, state, local, o
taxes imposed on any Agent as a result of the actual or deemed receipt of any payments un
Article) [reasonably] incurred or suffered by such person in connection with investigatin
being a witness in, or participating in (including on appeal), or preparing for any of th
in, any Proceeding (hereafter "Expenses"); *provided*, *however*, that except as to actions t
indemnification rights pursuant to Section 9.3 of these Bylaws, the corporation shall ind
Agent seeking indemnification in connection with a Proceeding (or part thereof) initiated
person only if the Proceeding (or part thereof) was authorized by the Board of Directors
corporation. The right to indemnification conferred in this Article shall be a contract r
the corporation's intention that these bylaws provide indemnification in excess of that e
permitted by Section 317 of the California General Corporation Law, as authorized by the
Articles of Incorporation.

## Section 9.2 Authority to Advance Expenses.

Expenses incurred by an officer or director (acting in his capacity as such) in defending
shall be paid by the corporation in advance of the final disposition of such Proceeding,
*however,* that if required by the California General Corporation Law, as amended, such Exp
advanced only upon delivery to the corporation of an undertaking by or on behalf of such
officer to repay such amount if it shall ultimately be determined that he is not entitled
indemnified by the corporation as authorized in this Article or otherwise. Expenses incur

PLAINTIFF0002309

Agents of the corporation (or by the directors or officers not acting in their capacity a
including service with respect to employee benefit plans) may be advanced upon the receip
undertaking, if required by law, and upon such other terms and conditions as the Board of

deems appropriate. Any obligation to reimburse the corporation for Expense advances shall
and no interest shall be charged thereon.

## Section 9.3 Right of Claimant to Bring Suit.

If a claim under Section 9.1 or 9.2 of these Bylaws is not paid in full by the corporatio
thirty (30) days after a written claim has been received by the corporation, the claimant
time thereafter bring suit against the corporation to recover the unpaid amount of the cl
successful in whole or in part, the claimant shall be entitled to be paid also the expens
attorneys' fees) of prosecuting such claim. It shall be a defense to any action (oth
action brought to enforce a claim for expenses incurred in defending a Proceeding in adva
final disposition where the required undertaking has been tendered to the corporation) th
claimant has not met the standards of conduct that make it permissible under the Californ
Corporation Law for the corporation to indemnify the claimant for the amount claimed. The
proving such a defense shall be on the corporation. Neither the failure of the corporatio
its Board of Directors, independent legal counsel, or its stockholders) to have made a de
prior to the commencement of such action that indemnification of the claimant is proper u
circumstances because he has met the applicable standard of conduct set forth in the Cali
Corporation Law, nor an actual determination by the corporation (including its Board of D
independent legal counsel, or its stockholders) that the claimant had not met such applic
of conduct, shall be a defense to the action or create a presumption that claimant has no
applicable standard of conduct.

## Section 9.4 Provisions Nonexclusive.

The rights conferred on any person by this Article shall not be exclusive of any other ri
person may have or hereafter acquire under any statute, provision of the Articles of Inco
agreement, vote of stockholders or disinterested directors, or otherwise, both as to acti
official capacity as to action in another capacity while holding such office. To the
any provision of the Articles, agreement, or vote of the stockholders or disinterested di
inconsistent with these bylaws, the provision, agreement, or vote shall take precedence.

## Section 9.5 Authority to Insure.

The corporation may purchase and maintain insurance to protect itself and any Agent agair
asserted against or incurred by such person, whether or not the corporation would have th
indemnify the Agent against such Expense under applicable law or the provisions of this A
provided that, in cases where the corporation owns all or a portion of the shares of the
issuing the insurance policy, the company and/or the policy must meet one of the two sets
set forth in Section 317 of the California General Corporation Law, as amended.

## Section 9.6 Survival of Rights.

The rights provided by this Article shall continue as to a person who has ceased to be an
shall inure to the benefit of the heirs, executors, and administrators of such person.

PLAINTIFF0002310

## Section 9.7 Settlement of Claims.

The corporation shall not be liable to indemnify any Agent under this Article (a) for any in settlement of any action or claim effected without the corporation's written consent, shall not be unreasonably withheld; or (b) for any judicial award, if the corpora  as reasonable and timely opportunity, at its expense, to participate in the defense  ch

## Section 9.8 Effect of Amendment.

Any amendment, repeal, or modification of this Article shall not adversely affect any rig protection of any Agent existing at the time of such amendment, repeal, or modification.

## Section 9.9 Subrogation.

In the event of payment under this Article, the corporation shall be subrogated to the ex payment to all of the rights of recovery of the Agent, who shall execute all papers requi do everything that may be necessary to secure such rights, including the execution of suc necessary to enable the corporation effectively to bring suit to enforce such rights.

## Section 9.10 No Duplication of Payments.

The corporation shall not be liable under this Article to make any payment in connection made against the Agent to the extent the Agent has otherwise actually received payment (u insurance policy, agreement, vote, or otherwise) of the amounts otherwise indemnifiable h

# ARTICLE X

## Section 10.1 Power of Shareholders.

New bylaws may be adopted or these Bylaws may be amended or repealed by the affirmative v majority of the outstanding shares entitled to vote, or by the written assent of sharehol to vote such shares, except as otherwise provided by law or by the Articles of Incorporat these Bylaws.

## Section 10.2 Power of Directors.

Subject to the right of shareholders as provided in Section 10.1 of this Article X to add repeal these Bylaws, these Bylaws (other than a bylaw or amendment thereof providing for by the Board, acting alone, of a loan or guarantee to any officer or an employee benefit for the same) may be adopted, amended or repealed by the Board of Directors; provided, ho the Board of Directors may adopt a bylaw or amendment thereof changing the authorized num directors only for the purpose of fixing the exact number of directors within the limits the Articles of Incorporation or in Section 3.2 of these Bylaws.

# ARTICLE XI

Unless the context otherwise requires, the general provisions, rules **PLAINTIFF0002311**d

unless the context otherwise requires, the general provisions, rules of construction and
contained in the General Corporation Law as amended from time to time shall govern the co
these Bylaws. Without limiting the generality of the foregoing, the masculine gender incl

feminine and neuter, the singular number includes the plural and the plural number inclu
singular, and the term "person" includes a corporation as well as a natural person

# ARTICLE XII

## Section 11.1 Right of First Refusal.

No shareholder shall sell, assign, pledge, or in any manner transfer any of the shares of
of the corporation or any right or interest therein, whether voluntarily or by operation
gift or otherwise, except by a transfer which meets the requirements hereinafter set fort
bylaw:

a. If the shareholder receives from anyone a bona fide offer acceptable to the share
purchase any of his shares of Common Stock, then the shareholder shall first give wr
notice thereof to the corporation. The notice shall name the proposed transferee and
the number of shares to be transferred, the price per share and all other terms and
conditions of the offer.

b. For fifteen (15) days following receipt of such notice, the corporation or its as
shall have the option to purchase all or any lesser part of the shares specified in
notice at the price and upon the terms set forth in such bona fide offer. In the eve
corporation elects to purchase all or any of the shares, it shall give written notic
selling shareholder of its election and settlement for said shares shall be made as
below in paragraph (c).

c. In the event the corporation elects to acquire any of the shares of the selling
shareholder as specified in said selling shareholder's notice, the Secretary of the
corporation shall so notify the selling shareholder and settlement thereof shall be
cash within thirty (30) days after the Secretary of the corporation receives said se
shareholder's notice; provided that if the terms of payment set forth in said sellin
shareholder's notice were other than cash against delivery, the corporation shall pa
said shares on the same terms and conditions set forth in said selling shareholder's

d. In the event the corporation does not elect to acquire all of the shares specifie
selling shareholder's notice, said selling shareholder may, within the sixty (60) da
following the expiration of the option rights granted to the corporation, sell elsew
shares specified in said selling shareholder's notice which were not acquired by the
corporation, in accordance with the provisions of paragraph (c) of this bylaw, provi
said sale shall not be on terms and conditions more favorable to the purchaser than
contained in the bona fide offer set forth in said selling shareholder's notice. All
so sold by said selling shareholder shall continue to be subject to the provisions o
bylaw in the same manner as before said transfer.

e. The following transactions shall be exempt from the provisions of this paragraphs
through (d) of this bylaw:

1. A shareholder's transfer of any or all shares held eith

PLAINTIFF0002312

1. A shareholder's transfer of any or all shares held either during such shareholder's lifetime or on death by will or intestacy to such shareholde immediate family or a trust for the sole benefit of such shareholder and/c

   his immediate family. "Immediate family" as used herein shall mean spouse, lineal descendent, father, mother, brother, or sister of the shareholder making such transfer.

2. A shareholder's transfer of any or all of such shareholder's shares of Con Stock to any other shareholder of the corporation.

3. A shareholder's transfer of any or all of such shareholder's shares of Con Stock to a person who, at the time of such transfer, is an officer or dire of the corporation.

4. A corporate shareholder's transfer of any or all of its shares of Common S pursuant to and in accordance with the terms of any merger, consolidation, reclassification of securities of the corporate shareholder or capital reorganization of the corporate shareholder, or pursuant to a sale of all substantially all of the stock or assets of the corporate shareholder.

5. A corporate shareholder's transfer of any or all of its shares of Common S to any or all of its shareholders.

6. A transfer of any or all of the shares of Common Stock held by a sharehold which is a limited or general partnership or limited liability company to or all of its partners or members.

   In any such case, the transferee, assignee, or other recipient shall recei and hold such stock subject to the provisions of this bylaw, and there sha be no further transfer of such stock except in accord with this bylaw.

f. The provisions of this bylaw may be waived with respect to any transfer either by corporation, upon duly authorized action of its Board of Directors, or by the shareh upon the express written consent of the owners of a majority of the voting power of corporation (excluding the votes represented by those shares to be sold by the selli shareholder). This bylaw may be amended or repealed either by the corporation, upon authorized action of its Board of Directors, or by the shareholders, upon the expres consent of the owners of a majority of the voting power of the corporation.

g. Any sale or transfer, or purported sale or transfer, of securities of the corpora shall be null and void unless the terms, conditions, and provisions of this bylaw ar strictly observed and followed.

h. The foregoing right of first refusal shall terminate upon the date securities of corporation are first offered to the public pursuant to a registration statement fil and declared effective by, the Securities and Exchange Commission under the Securiti 1933, as amended.

i. The certificates representing shares of Common Stock of the corporation shall bea their face the following legend so long as the foregoing right of first refusal rema effect:

PLAINTIFF0002313

"THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO A RIGHT OF FIRST REFUSAL OPTI( THE CORPORATION, AS PROVIDED IN THE BYLAWS OF THE CORPORATION."

Previous
C Corporations

Delawar⬚rp

PLAINTIFF0002314



**LEGAL–TOOLS**  DAOLABS

Connect Wallet



# Variables

Corporation's Name (ALL CAPS)

ACME CORPORATION

Date of Adoption

mm/dd/yyyy

Update document

BYLAWS OF [Entity name]

BYLAWS

  MEETINGS OF STOCKHOLDERS

    Place of Meetings

    Annual Meeting

    Special Meeting

    Notice of Stockholders' Meetings

    Quorum

    Adjourned Meeting; Notice

    Conduct of Business

    Voting

    Stockholder Action by Written Consent Without a Meeting

    Record Dates

    Proxies

    List of Stockholders Entitled to Vote

  DIRECTORS

PLAINTIFF0002315

Powers

Number of Directors

Election, Qualification and

Term of Office of Directors

Resignation and Vacancies

Place of Meetings; Meetings
by Telephone

Conduct of Business

Regular Meetings

Special Meetings; Notice

Quorum; Voting

Board Action by Written
Consent Without a Meeting

Fees and Compensation of
Directors

Removal of Directors

COMMITTEES

Committees of Directors

Committee Minutes

Meetings and Actions of
Committees

Subcommittees

OFFICERS

Officers

Appointment of Officers

Subordinate Officers

Removal and Resignation of
Officers

Vacancies in Offices

Representation of Shares of
Other Corporations

Authority and Duties of
Officers

INDEMNIFICATION

Indemnification of
Directors and Officers in
Third Party Proceedings

PLAINTIFF0002316

Indemnification of
Directors and Officers in
Actions by or in the Right of
the Company

Successful Defense

Indemnification of Others

Advanced Payment of
Expenses

Limitation on
Indemnification

Determination; Claim

Non-Exclusivity of Rights

Insurance

Survival

Effect of Repeal or
Modification

Certain Definitions

STOCK

Stock Certificates; Partly
Paid Shares

Special Designation on
Certificates

Lost Certificates

Dividends

Stock Transfer Agreements

Registered Stockholders

Transfers

MANNER OF GIVING NOTICE AND
WAIVER

Notice of Stockholder
Meetings

Notice by Electronic
Transmission

Notice to Stockholders
Sharing an Address

Notice to Person with Whom
Communication is Unlawful

Waiver of Notice

GENERAL MATTERS

PLAINTIFF0002317

GENERAL MATTERS

    Fiscal Year

    Seal

    Annual Report

    Construction; Definitions

AMENDMENTS



     

# BYLAWS OF [Entity-name]

**Adopted on [Date]**

# BYLAWS

# MEETINGS OF STOCKHOLDERS

## Place of Meetings

Meetings of stockholders of **[Entity-name]** (the "**Company**") shall be held at any place, within or outside the State of Delaware, determined by the Company's board of directors (the "**Board**"). The Board may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication as authorized by Section 211(a)(2) of the Delaware General Corporation Law (the "**DGCL**"). In the absence of any such designation or determination, stockholders' meetings shall be held at the Company's principal executive office.

## Annual Meeting

An annual meeting of stockholders shall be held for the election of directors at such date and time as may be designated by resolution of the Board from time to time. Any other proper business may be transacted at the annual meeting. The Company shall not be required to hold an annual meeting of stockholders, *provided* that (i) the stockholders are permitted to act by written consent under the Company's certificate of incorporation and these bylaws, (ii) the stockholders take action by written consent to elect directors and (iii) the stockholders unanimously consent to such action or, if such consent is less than unanimous, all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

## Special Meeting

. A special meeting of the stockholders may be called at any time by the Board

PLAINTIFF0002318

Chairperson of the Board, Chief Executive Officer or President (in the absence of a Chief Executive Officer) or by one or more stockholders holding shares in the aggregate entitled to cast not less than 10% of the votes at that meeting.

If any person(s) other than the Board calls a special meeting, the request shall:

- be in writing;
- specify the time of such meeting and the general nature of the business proposed to be transacted; and
- be delivered personally or sent by registered mail or by facsimile transmission to the Chairperson of the Board, the Chief Executive Officer, the President (in the absence of a Chief Executive Officer) or the Secretary of the Company.

The officer(s) receiving the request shall cause notice to be promptly given to the stockholders entitled to vote at such meeting, in accordance with these bylaws, that a meeting will be held at the time requested by the person or persons calling the meeting. No business may be transacted at such special meeting other than the business specified in such notice to stockholders. Nothing contained in this paragraph of this **section 1.3** shall be construed as limiting, fixing, or affecting the time when a meeting of stockholders called by action of the Board may be held.

## Notice of Stockholders' Meetings

Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, the record date for determining the stockholders entitled to vote at the meeting, if such date is different from the record date for determining stockholders entitled to notice of the meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Except as otherwise provided in the DGCL, the certificate of incorporation or these bylaws, the written notice of any meeting of stockholders shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder entitled to vote at such meeting as of the record date for determining the stockholders entitled to notice of the meeting.

## Quorum

Except as otherwise provided by law, the certificate of incorporation or these bylaws, at each meeting of stockholders the presence in person or by proxy of the holders of shares of stock having a majority of the votes which could be cast by the holders of all outstanding shares of stock entitled to vote at the meeting shall be necessary and sufficient to constitute a quorum. Where a separate vote by a class or series or classes or series is required, a majority of the outstanding shares of such class or series or classes or series, present in person or represented by proxy, shall constitute a quorum entitled to take action with respect to that vote on that matter, except as otherwise provided by law, the certificate of incorporation or these bylaws.

PLAINTIFF0002319

If, however, such quorum is not present or represented at any meeting of the stockholders, then either (i) the chairperson of the meeting, or (ii) the

stockholders entitled to vote at the meeting, present in person or represented by proxy, shall have the power to adjourn the meeting from time to time, in the manner provided in **section 1.6**, until a quorum is present or represented.

## Adjourned Meeting; Notice

Any meeting of stockholders, annual or special, may adjourn from time to time to reconvene at the same or some other place, and notice need not be given of the adjourned meeting if the time, place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Company may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. If after the adjournment a new record date for stockholders entitled to vote is fixed for the adjourned meeting, the Board shall fix a new record date for notice of such adjourned meeting in accordance with Section 213(a) of the DGCL and **section 1.10** of these bylaws, and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

## Conduct of Business

Meetings of stockholders shall be presided over by the Chairperson of the Board, if any, or in his or her absence by the Vice Chairperson of the Board, if any, or in the absence of the foregoing persons by the Chief Executive Officer, or in the absence of the foregoing persons by the President, or in the absence of the foregoing persons by a Vice President, or in the absence of the foregoing persons by a chairperson designated by the Board, or in the absence of such designation by a chairperson chosen at the meeting. The Secretary shall act as secretary of the meeting, but in his or her absence the chairperson of the meeting may appoint any person to act as secretary of the meeting. The chairperson of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of business.

## Voting

The stockholders entitled to vote at any meeting of stockholders shall be determined in accordance with the provisions of **section 1.10** of these bylaws, subject to Section 217 (relating to voting rights of fiduciaries, pledgors and joint owners of stock) and Section 218 (relating to voting trusts and other voting agreements) of the DGCL.

Except as may be otherwise provided in the certificate of incorporation, each stockholder entitled to vote at any meeting of stockholders shall be entitled to one

PLAINTIFF0002320

vote for each share of capital stock held by such stockholder which has voting power upon the matter in question. Voting at meetings of stockholders need not be by written ballot and, unless otherwise required by law, need not be conducted by inspectors of election unless so determined by the holders of shares of stock having a majority of the votes which could be cast by the holders of all outstanding shares of stock entitled to vote thereon which are present in person or by proxy at such meeting. If authorized by the Board, such requirement of a written ballot shall be satisfied by a ballot submitted by electronic transmission (as defined in **section 7.2** of these bylaws), *provided* that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder or proxy holder.

Except as otherwise required by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of a majority of the voting power of the shares present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders. Except as otherwise required by law, the certificate of incorporation or these bylaws, directors shall be elected by a plurality of the voting power of the shares present in person or represented by proxy at the meeting and entitled to vote on the election of directors. Where a separate vote by a class or series or classes or series is required, in all matters other than the election of directors, the affirmative vote of the majority of shares of such class or series or classes or series present in person or represented by proxy at the meeting shall be the act of such class or series or classes or series, except as otherwise provided by law, the certificate of incorporation or these bylaws.

## Stockholder Action by Written Consent Without a Meeting

Unless otherwise provided in the certificate of incorporation, any action required by the DGCL to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

An electronic transmission (as defined in **section 7.2**) consenting to an action to be taken and transmitted by a stockholder or proxy holder, or by a person or persons authorized to act for a stockholder or proxy holder, shall be deemed to be written, signed and dated for purposes of this section, *provided* that any such electronic transmission sets forth or is delivered with information from which the Company can determine (i) that the electronic transmission was transmitted by the stockholder or proxy holder or by a person or persons authorized to act for the stockholder or proxy holder and (ii) the date on which such stockholder or proxy holder or authorized person or persons transmitted such electronic transmission.

In the event that the Board shall have instructed the officers of the Company to solicit the vote or written consent of the stockholders of the Company, an

PLAINTIFF0002321

electronic transmission of a stockholder's written consent given pursuant to such solicitation may be delivered to the Secretary or the President of the Company or to a person designated by the Secretary or the President. The Secretary or the

President of the Company or a designee of the Secretary or the President shall cause any such written consent by electronic transmission to be reproduced in paper form and inserted into the corporate records.

Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders to take the action were delivered to the Company as provided in Section 228 of the DGCL. In the event that the action which is consented to is such as would have required the filing of a certificate under any provision of the DGCL, if such action had been voted on by stockholders at a meeting thereof, the certificate filed under such provision shall state, in lieu of any statement required by such provision concerning any vote of stockholders, that written consent has been given in accordance with Section 228 of the DGCL.

## Record Dates

In order that the Company may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If the Board so fixes a date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination.

If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of and to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided, however,* that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the provisions of Section 213 of the DGCL and this Section 1.10 at the adjourned meeting.

In order that the Company may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board may fix a record date, which record date shall not precede the date upon which the resolution

PLAINTIFF0002322

which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the

Board. If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is required by law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Company in accordance with applicable law. If no record date has been fixed by the Board and prior action by the Board is required by law, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

In order that the Company may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

## Proxies

Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy authorized by an instrument in writing or by a transmission permitted by law filed in accordance with the procedure established for the meeting, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212 of the DGCL.

## List of Stockholders Entitled to Vote

The officer who has charge of the stock ledger of the Company shall prepare and make, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting; *provided, however,* if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. The Company shall not be required to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder for any purpose germane to the meeting for a period of at least ten days prior to the meeting: (i) on a reasonably accessible electronic network, *provided* that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at

PLAINTIFF0002323

the Company's principal place of business. In the event that the Company determines to make the list available on an electronic network, the Company may take reasonable steps to ensure that such information is available only to stockholders of the Company. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting.

# DIRECTORS

## Powers

The business and affairs of the Company shall be managed by or under the direction of the Board, except as may be otherwise provided in the DGCL or the certificate of incorporation.

## Number of Directors

The Board shall consist of one or more members, each of whom shall be a natural person. Unless the certificate of incorporation fixes the number of directors, the number of directors shall be determined from time to time by resolution of the Board. No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires.

## Election, Qualification and Term of Office of Directors

Except as provided in **section 2.4** of these bylaws, and subject to **sections 1.2** and **1.9** of these bylaws, directors shall be elected at each annual meeting of stockholders. Directors need not be stockholders unless so required by the certificate of incorporation or these bylaws. The certificate of incorporation or these bylaws may prescribe other qualifications for directors. Each director shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.

## Resignation and Vacancies

Any director may resign at any time upon notice given in writing or by electronic transmission to the Company. A resignation is effective when the resignation is delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events. A resignation which is conditioned upon the director failing to receive a specified vote for reelection as a director may provide that it is irrevocable. Unless otherwise provided in the certificate of incorporation or these bylaws, when one or more directors resign from the Board, effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have power to fill such vacancy or

PLAINTIFF0002324

vacancies, the vote thereon to take effect when such resignation or resignations shall become effective.

Unless otherwise provided in the certificate of incorporation or these bylaws:



- Vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all of the stockholders having the right to vote as a single class may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director.
- Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the provisions of the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority of the directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.

If at any time, by reason of death or resignation or other cause, the Company should have no directors in office, then any officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder, or other fiduciary entrusted with like responsibility for the person or estate of a stockholder, may call a special meeting of stockholders in accordance with the provisions of the certificate of incorporation or these bylaws, or may apply to the Court of Chancery for a decree summarily ordering an election as provided in Section 211 of the DGCL.

If, at the time of filling any vacancy or any newly created directorship, the directors then in office constitute less than a majority of the whole Board (as constituted immediately prior to any such increase), the Court of Chancery may, upon application of any stockholder or stockholders holding at least 10% of the voting stock at the time outstanding having the right to vote for such directors, summarily order an election to be held to fill any such vacancies or newly created directorships, or to replace the directors chosen by the directors then in office as aforesaid, which election shall be governed by the provisions of Section 211 of the DGCL as far as applicable.

A director elected to fill a vacancy shall be elected for the unexpired term of his or her predecessor in office and until such director's successor is elected and qualified, or until such director's earlier death, resignation or removal.

## Place of Meetings; Meetings by Telephone

The Board may hold meetings, both regular and special, either within or outside the State of Delaware.

Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board, or any committee designated by the Board, may participate in a meeting of the Board, or any committee, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

PLAINTIFF0002325

## Conduct of Business

Meetings of the Board shall be presided over by the Chairperson of the Board, if any, or in his or her absence by the Vice Chairperson of the Board, if any, or in the absence of the foregoing persons by a chairperson designated by the Board, or in the absence of such designation by a chairperson chosen at the meeting. The Secretary shall act as secretary of the meeting, but in his or her absence the chairperson of the meeting may appoint any person to act as secretary of the meeting.

## Regular Meetings

Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board.

## Special Meetings; Notice

Special meetings of the Board for any purpose or purposes may be called at any time by the Chairperson of the Board, the Chief Executive Officer, the President, the Secretary or any two directors.

Notice of the time and place of special meetings shall be:

- delivered personally by hand, by courier or by telephone;
- sent by United States first-class mail, postage prepaid;
- sent by facsimile; or
- sent by electronic mail,

directed to each director at that director's address, telephone number, facsimile number or electronic mail address, as the case may be, as shown on the Company's records.

If the notice is (i) delivered personally by hand, by courier or by telephone, (ii) sent by facsimile or (iii) sent by electronic mail, it shall be delivered or sent at least 24 hours before the time of the holding of the meeting. If the notice is sent by United States mail, it shall be deposited in the United States mail at least four days before the time of the holding of the meeting. Any oral notice may be communicated to the director. The notice need not specify the place of the meeting (if the meeting is to be held at the Company's principal executive office) nor the purpose of the meeting.

## Quorum; Voting

At all meetings of the Board, a majority of the total authorized number of directors shall constitute a quorum for the transaction of business. If a quorum is not present at any meeting of the Board, then the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present. A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors

PLAINTIFF0002326

may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

The vote of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board, except as may be otherwise specifically provided by statute, the certificate of incorporation or these bylaws.

If the certificate of incorporation provides that one or more directors shall have more or less than one vote per director on any matter, every reference in these bylaws to a majority or other proportion of the directors shall refer to a majority or other proportion of the votes of the directors.

## Board Action by Written Consent Without a Meeting

Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board, or of any committee thereof, may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

## Fees and Compensation of Directors

Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board shall have the authority to fix the compensation of directors.

## Removal of Directors

Unless otherwise restricted by statute, the certificate of incorporation or these bylaws, any director or the entire Board may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors.

No reduction of the authorized number of directors shall have the effect of removing any director prior to the expiration of such director's term of office.

# COMMITTEES

## Committees of Directors

The Board may designate one or more committees, each committee to consist of one or more of the directors of the Company. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting

PLAINTIFF0002327

may unanimously appoint another member of the Board to act at the meeting in the
place of any such absent or disqualified member. Any such committee, to the extent
provided in the resolution of the Board or in these bylaws, shall have and may

exercise all the powers and authority of the Board in the management of the business
and affairs of the Company, and may authorize the seal of the Company to be affixed
to all papers that may require it; but no such committee shall have the power or
authority to (i) approve or adopt, or recommend to the stockholders, any action or
matter (other than the election or removal of directors) expressly required by the
DGCL to be submitted to stockholders for approval, or (ii) adopt, amend or repeal
any bylaw of the Company.

## Committee Minutes

Each committee shall keep regular minutes of its meetings and report the same to the
Board when required.

## Meetings and Actions of Committees

Meetings and actions of committees shall be governed by, and held and taken in
accordance with, the provisions of:

- **section 2.5** (Place of Meetings; Meetings by Telephone);
- **section 2.7** (Regular Meetings);
- **section 2.8** (Special Meetings; Notice);
- **section 2.9** (Quorum; Voting);
- **section 2.10** (Board Action by Written Consent Without a Meeting); and
- **section 7.5** (Waiver of Notice)

with such changes in the context of those bylaws as are necessary to substitute the
committee and its members for the Board and its members. *However*:

- **the time of regular meetings of committees may be determined either
  by resolution of the Board or by resolution of the committee;**
- **special meetings of committees may also be called by resolution of
  the Board; and**
- **notice of special meetings of committees shall also be given to all
  alternate members, who shall have the right to attend all meetings of
  the committee. The Board may adopt rules for the government of any
  committee not inconsistent with the provisions of these bylaws.**

Any provision in the certificate of incorporation providing that one or more
directors shall have more or less than one vote per director on any matter shall
apply to voting in any committee or subcommittee, unless otherwise provided in the
certificate of incorporation or these bylaws.

## Subcommittees

Unless otherwise provided in the certificate of incorporation, these bylaws or the
resolutions of the Board designating the committee, a committee may create one or
more subcommittees, each subcommittee to consist of one or more members **PLAINTIFF0002328**

more subcommittees, each subcommittee to consist of one or more members of the committee, and delegate to a subcommittee any or all of the powers and authority of the committee.

# OFFICERS

## Officers



The officers of the Company shall be a President and a Secretary. The Company may also have, at the discretion of the Board, a Chairperson of the Board, a Vice Chairperson of the Board, a Chief Executive Officer, one or more Vice Presidents, a Chief Financial Officer, a Treasurer, one or more Assistant Treasurers, one or more Assistant Secretaries, and any such other officers as may be appointed in accordance with the provisions of these bylaws. Any number of offices may be held by the same person.

## Appointment of Officers

The Board shall appoint the officers of the Company, except such officers as may be appointed in accordance with the provisions of **section 4.3** of these bylaws.

## Subordinate Officers

The Board may appoint, or empower the Chief Executive Officer or, in the absence of a Chief Executive Officer, the President, to appoint, such other officers and agents as the business of the Company may require. Each of such officers and agents shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the Board may from time to time determine.

## Removal and Resignation of Officers

Any officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board at any regular or special meeting of the Board or, except in the case of an officer chosen by the Board, by any officer upon whom such power of removal may be conferred by the Board.

Any officer may resign at any time by giving written notice to the Company. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice. Unless otherwise specified in the notice of resignation, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the Company under any contract to which the officer is a party.

## Vacancies in Offices

Any vacancy occurring in any office of the Company shall be filled by the Board or as provided in **section 4.3**.

## Representation of Shares of Other Corporations

PLAINTIFF0002329

Unless otherwise directed by the Board, the President or any other person authorized by the Board or the President is authorized to vote, represent and exercise on

behalf of the Company all rights incident to any and all shares of any other corporation or corporations standing in the name of the Company. The authority granted herein may be exercised either by such person directly or by any other person authorized to do so by proxy or power of attorney duly executed by such person having the authority.



## Authority and Duties of Officers

Except as otherwise provided in these bylaws, the officers of the Company shall have such powers and duties in the management of the Company as may be designated from time to time by the Board and, to the extent not so provided, as generally pertain to their respective offices, subject to the control of the Board.

# INDEMNIFICATION

## Indemnification of Directors and Officers in Third Party Proceedings

Subject to the other provisions of this **Article V**, the Company shall indemnify, to the fullest extent permitted by the DGCL, as now or hereinafter in effect, any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "**Proceeding**") (other than an action by or in the right of the Company) by reason of the fact that such person is or was a director or officer of the Company, or is or was a director or officer of the Company serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such Proceeding if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe such person's conduct was unlawful. The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which such person reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that such person's conduct was unlawful.

## Indemnification of Directors and Officers in Actions by or in the Right of the Company

Subject to the other provisions of this **Article V**, the Company shall indemnify, to the fullest extent permitted by the DGCL, as now or hereinafter in effect, any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Company to procure a

PLAINTIFF0002330

judgment in its favor by reason of the fact that such person is or was a director or officer of the Company, or is or was a director or officer of the Company serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection with the defense or settlement of such action or suit if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Company; except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Company unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

## Successful Defense

To the extent that a present or former director or officer of the Company has been successful on the merits or otherwise in defense of any action, suit or proceeding described in **section 5.1** or **section 5.2**, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

## Indemnification of Others

Subject to the other provisions of this **Article V**, the Company shall have power to indemnify its employees and agents to the extent not prohibited by the DGCL or other applicable law. The Board shall have the power to delegate to such person or persons the determination of whether employees or agents shall be indemnified.

## Advanced Payment of Expenses

Expenses (including attorneys' fees) incurred by an officer or director of the Company in defending any Proceeding shall be paid by the Company in advance of the final disposition of such Proceeding upon receipt of a written request therefor (together with documentation reasonably evidencing such expenses) and an undertaking by or on behalf of the person to repay such amounts if it shall ultimately be determined that the person is not entitled to be indemnified under this **Article V** or the DGCL. Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents of the Company or by persons serving at the request of the Company as directors, officers, employees or agents of another corporation, partnership, joint venture, trust or other enterprise may be so paid upon such terms and conditions, if any, as the Company deems appropriate. The right to advancement of expenses shall not apply to any Proceeding for which indemnity is excluded pursuant to these bylaws, but shall apply to any Proceeding referenced in **section 5.6(ii)** or **5.6(iii)** prior to a determination that the person is not entitled to be indemnified by the Company.

**PLAINTIFF0002331**

## Limitation on Indemnification

Subject to the requirements in **section 5.3** and the DGCL, the Company shall not be obligated to indemnify any person pursuant to this **Article V** in connection with any Proceeding (or any part of any Proceeding):

- for which payment has actually been made to or on behalf of such person under any statute, insurance policy, indemnity provision, vote or otherwise, except with respect to any excess beyond the amount paid;
- for an accounting or disgorgement of profits pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended, or similar provisions of federal, state or local statutory law or common law, if such person is held liable therefor (including pursuant to any settlement arrangements);
- for any reimbursement of the Company by such person of any bonus or other incentive-based or equity-based compensation or of any profits realized by such person from the sale of securities of the Company, as required in each case under the Securities Exchange Act of 1934, as amended (including any such reimbursements that arise from an accounting restatement of the Company pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 (the **"Sarbanes-Oxley Act"**), or the payment to the Company of profits arising from the purchase and sale by such person of securities in violation of Section 306 of the Sarbanes-Oxley Act), if such person is held liable therefor (including pursuant to any settlement arrangements);
- initiated by such person, including any Proceeding (or any part of any Proceeding) initiated by such person against the Company or its directors, officers, employees, agents or other indemnitees, unless (a) the Board authorized the Proceeding (or the relevant part of the Proceeding) prior to its initiation, (b) the Company provides the indemnification, in its sole discretion, pursuant to the powers vested in the Company under applicable law, (c) otherwise required to be made under **section 5.7** or (d) otherwise required by applicable law; or
- if prohibited by applicable law.

## Determination; Claim

If a claim for indemnification or advancement of expenses under this **Article V** is not paid by the Company or on its behalf within 90 days after receipt by the Company of a written request therefor, the claimant shall be entitled to an adjudication by a court of competent jurisdiction of his or her entitlement to such indemnification or advancement of expenses. To the extent not prohibited by law, the Company shall indemnify such person against all expenses actually and reasonably incurred by such person in connection with any action for indemnification or advancement of expenses from the Company under this **Article V**, to the extent such person is successful in such action. In any such suit, the Company shall, to the fullest extent not

PLAINTIFF0002332

prohibited by law, have the burden of proving that the claimant is not entitled to the requested indemnification or advancement of expenses.

## Non-Exclusivity of Rights

The indemnification and advancement of expenses provided by, or granted pursuant this **Article V** shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under the certificate of incorporation or any statute, bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office. The Company is specifically authorized to enter into individual contracts with any or all of its directors, officers, employees or agents respecting indemnification and advancement of expenses, to the fullest extent not prohibited by the DGCL or other applicable law.

## Insurance

The Company may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of the DGCL.

## Survival

The rights to indemnification and advancement of expenses conferred by this **Article V** shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

## Effect of Repeal or Modification

A right to indemnification or to advancement of expenses arising under a provision of the certificate of incorporation or a bylaw shall not be eliminated or impaired by an amendment to the certificate of incorporation or these bylaws after the occurrence of the act or omission that is the subject of the civil, criminal, administrative or investigative action, suit or proceeding for which indemnification or advancement of expenses is sought, unless the provision in effect at the time of such act or omission explicitly authorizes such elimination or impairment after such action or omission has occurred.

## Certain Definitions

For purposes of this **Article V,** references to the "**Company**" shall include, in addition to the resulting corporation, any constituent corporation (including

PLAINTIFF0002333

addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify

its directors, officers, employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under the provisions of this **Article V** with respect to the resulting or surviving corporation as such person would have with respect to such constituent corporation if its separate existence had continued. For purposes of this **Article V**, references to "**other enterprises**" shall include employee benefit plans; references to "**fines**" shall include any excise taxes assessed on a person with respect to an employee benefit plan; and references to "**serving at the request of the Company**" shall include any service as a director, officer, employee or agent of the Company which imposes duties on, or involves services by, such director, officer, employee or agent with respect to an employee benefit plan, its participants or beneficiaries; and a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "**not opposed to the best interests of the Company**" as referred to in this **Article V.**

# STOCK

## Stock Certificates; Partly Paid Shares

The shares of the Company shall be represented by certificates, *provided* that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Company. Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Company by the Chairperson of the Board or Vice-Chairperson of the Board, or the President or a Vice-President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary of the Company representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate has ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Company with the same effect as if such person were such officer, transfer agent or registrar at the date of issue. The Company shall not have power to issue a certificate in bearer form.

The Company may issue the whole or any part of its shares as partly paid and subject to call for the remainder of the consideration to be paid therefor. Upon the face and back of each stock certificate issued to represent any such partly paid shares, or upon the books and records of the Company in the case of uncertificated partly paid shares, the total amount of the consideration to be paid therefor and the amount

PLAINTIFF0002334

paid thereon shall be stated. Upon the declaration of any dividend on fully paid
shares, the Company shall declare a dividend upon partly paid shares of the same

class, but only upon the basis of the percentage of the consideration actually paid
thereon.

## Special Designation on Certificates

If the Company is authorized to issue more than one class of stock or more than one
series of any class, then the powers, the designations, the preferences, and the
relative, participating, optional or other special rights of each class of stock or
series thereof and the qualifications, limitations or restrictions of such
preferences and/or rights shall be set forth in full or summarized on the face or
back of the certificate that the Company shall issue to represent such class or
series of stock; *provided* that, except as otherwise provided in Section 202 of the
DGCL, in lieu of the foregoing requirements there may be set forth on the face or
back of the certificate that the Company shall issue to represent such class or
series of stock, a statement that the Company will furnish without charge to each
stockholder who so requests the powers, designations, preferences and relative,
participating, optional or other special rights of each class of stock or series
thereof and the qualifications, limitations or restrictions of such preferences
and/or rights. Within a reasonable time after the issuance or transfer of
uncertificated stock, the Company shall send to the registered owner thereof a
written notice containing the information required to be set forth or stated on
certificates pursuant to this section 6.2 or Sections 156, 202(a) or 218(a) of the
DGCL or with respect to this section 6.2 a statement that the Company will furnish
without charge to each stockholder who so requests the powers, designations,
preferences and relative, participating, optional or other special rights of each
class of stock or series thereof and the qualifications, limitations or restrictions
of such preferences and/or rights. Except as otherwise expressly provided by law,
the rights and obligations of the holders of uncertificated stock and the rights and
obligations of the holders of certificates representing stock of the same class and
series shall be identical.

## Lost Certificates

Except as provided in this **section 6.3,** no new certificates for shares shall be
issued to replace a previously issued certificate unless the latter is surrendered
to the Company and cancelled at the same time. The Company may issue a new
certificate of stock or uncertificated shares in the place of any certificate
theretofore issued by it, alleged to have been lost, stolen or destroyed, and the
Company may require the owner of the lost, stolen or destroyed certificate, or such
owner's legal representative, to give the Company a bond sufficient to indemnify it
against any claim that may be made against it on account of the alleged loss, theft
or destruction of any such certificate or the issuance of such new certificate or
uncertificated shares.

## Dividends

PLAINTIFF0002335

The Board, subject to any restrictions contained in the certificate of incorporation
or applicable law, may declare and pay dividends upon the shares of the Company's

capital stock. Dividends may be paid in cash, in property, or in shares of the
Company's capital stock, subject to the provisions of the certificate of
incorporation.

The Board may set apart out of any of the funds of the Company available for
dividends a reserve or reserves for any proper purpose and may abolish any such
reserve.

## Stock Transfer Agreements

The Company shall have power to enter into and perform any agreement with any number
of stockholders of any one or more classes of stock of the Company to restrict the
transfer of shares of stock of the Company of any one or more classes owned by such
stockholders in any manner not prohibited by the DGCL.

## Registered Stockholders

The Company:

- shall be entitled to recognize the exclusive right of a person
  registered on its books as the owner of shares to receive dividends
  and to vote as such owner;
- shall be entitled to hold liable for calls and assessments the person
  registered on its books as the owner of shares; and
- shall not be bound to recognize any equitable or other claim to or
  interest in such share or shares on the part of another person,
  whether or not it shall have express or other notice thereof, except
  as otherwise provided by the laws of Delaware.

## Transfers

Transfers of record of shares of stock of the Company shall be made only upon its
books by the holders thereof, in person or by an attorney duly authorized, and, if
such stock is certificated, upon the surrender of a certificate or certificates for
a like number of shares, properly endorsed or accompanied by proper evidence of
succession, assignation or authority to transfer.

# MANNER OF GIVING NOTICE AND WAIVER

## Notice of Stockholder Meetings

Notice of any meeting of stockholders, if mailed, is given when deposited in the
United States mail, postage prepaid, directed to the stockholder at such
stockholder's address as it appears on the Company's records. An affidavit of the
Secretary or an Assistant Secretary of the Company or of the transfer agent or other
agent of the Company that the notice has been given shall, in the abs...

PLAINTIFF0002336

agent of the company that the notice has been given shall, in the absence of fraud, be *prima facie* evidence of the facts stated therein.

## Notice by Electronic Transmission

Without limiting the manner by which notice otherwise may be given effectively to stockholders pursuant to the DGCL, the certificate of incorporation or these bylaws, any notice to stockholders given by the Company under any provision of the DGCL, the certificate of incorporation or these bylaws shall be effective if given by a form of electronic transmission consented to by the stockholder to whom the notice is given. Any such consent shall be revocable by the stockholder by written notice to the Company. Any such consent shall be deemed revoked if:

- the Company is unable to deliver by electronic transmission two consecutive notices given by the Company in accordance with such consent; and
- such inability becomes known to the Secretary or an Assistant Secretary of the Company or to the transfer agent, or other person responsible for the giving of notice.

However, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

Any notice given pursuant to the preceding paragraph shall be deemed given:

- if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice;
- if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice;
- if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (A) such posting and (B) the giving of such separate notice; and
- if by any other form of electronic transmission, when directed to the stockholder.

An affidavit of the Secretary or an Assistant Secretary or of the transfer agent or other agent of the Company that the notice has been given by a form of electronic transmission shall, in the absence of fraud, be *prima facie* evidence of the facts stated therein.

An "**electronic transmission**" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

Notice by a form of electronic transmission shall not apply to Sections 164, 296, 311, 312 or 324 of the DGCL.

## Notice to Stockholders Sharing an Address

PLAINTIFF0002337

Except as otherwise prohibited under the DGCL, without limiting the manner by which notice otherwise may be given effectively to stockholders, any notice to stockholders given by the Company under the provisions of the DGCL, the certificate of incorporation or these bylaws shall be effective if given by a single written notice to stockholders who share an address if consented to by the stockholders at that address to whom such notice is given. Any such consent shall be revocable by the stockholder by written notice to the Company. Any stockholder who fails to object in writing to the Company, within 60 days of having been given written notice by the Company of its intention to send the single notice, shall be deemed to have consented to receiving such single written notice.

## Notice to Person with Whom Communication is Unlawful

Whenever notice is required to be given, under the DGCL, the certificate of incorporation or these bylaws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting which shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. In the event that the action taken by the Company is such as to require the filing of a certificate under the DGCL, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

## Waiver of Notice

Whenever notice is required to be given under any provision of the DGCL, the certificate of incorporation or these bylaws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time of the event for which notice is to be given, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice or any waiver by electronic transmission unless so required by the certificate of incorporation or these bylaws.

# GENERAL MATTERS

## Fiscal Year

The fiscal year of the Company shall be fixed by resolution of the Board and may be changed by the Board.

## Seal

PLAINTIFF0002338

The Company may adopt a corporate seal, which shall be in such form as may be approved from time to time by the Board. The Company may use the corporate seal by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

### Annual Report

The Company shall cause an annual report to be sent to the stockholders of the Company to the extent required by applicable law. If and so long as there are fewer than 100 holders of record of the Company's shares, the requirement of sending an annual report to the stockholders of the Company is expressly waived (to the extent permitted under applicable law).

### Construction; Definitions

Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the DGCL shall govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

## AMENDMENTS

These bylaws may be adopted, amended or repealed by the stockholders entitled to vote. However, the Company may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors. The fact that such power has been so conferred upon the directors shall not divest the stockholders of the power, nor limit their power to adopt, amend or repeal bylaws.

A bylaw amendment adopted by stockholders which specifies the votes that shall be necessary for the election of directors shall not be further amended or repealed by the Board.

Previous
California C Corporation Bylaws

Next
Washington C Corporation Bylaws

PLAINTIFF0002339



**LEGAL–TOOLS** DAOLABS

Connect Wallet



# Variables

Corporation's Name (ALL CAPS)

ACME CORPORATION

Agreement Adoption Date

01/01/2023

Corporation President's Name

Ms. Jane Doe

**Update document**

⚇ M↓ 🗎 W 📄 ⚙

# BYLAWS OF [Entity-name]

Originally adopted on [Date] Amendments are listed on p. i

# [Entity-name] AMENDMENTS TO BYLAWS

| Article | Effect of Amendment | Date of Amendment |
|---------|---------------------|-------------------|
|         |                     |                   |

# BYLAWS OF [Entity-name]

These Bylaws are promulgated pursuant to the Washington Business Corporation Act, as set forth in Title 23B of the Revised Code of Washington (the "Act").

BYLAWS OF [Entity-name]

 [Entity-name]
AMENDMENTS TO BYLAWS

 BYLAWS OF [Entity-name]

   I. SHAREHOLDERS

   II. BOARD OF DIRECTORS

   III. OFFICERS

   IV. CONTRACTS, CHECKS AND DRAFTS

   V. STOCK

   VI. RECORDS OF CORPORATE MEETINGS

   VII. FINANCIAL MATTERS

   VIII. DISTRIBUTIONS

   IX. CORPORATE SEAL

   X. MISCELLANY

   XI. AMENDMENT OF BYLAWS

   XII. AUTHENTICATION

PLAINTIFF0002340

# I. SHAREHOLDERS

## I.1. Annual Meeting.

### I.1.1 Time and Place of Meeting. The annual meeting of the shareholders of the corporation for the election of Directors and for the transaction of such other business as may properly come before the meeting shall be held each year at a place, day, and time to be set by the Board of Directors.

## I.2. Business Conducted at Meeting.

(a) At an annual meeting of shareholders, an item of business may be conducted, and a proposal may be considered and acted upon, only if such item or proposal is brought before the meeting (i) by, or at the direction of, the Board of directors, or (ii) by any shareholder of the corporation who is entitled to vote at the meeting and who complies with the procedures set forth in the remainder of this Section 1.1.2. This Section 1.1.2 shall not apply to matters of procedure that, pursuant to Section 10.3(a) of these Bylaws, are subject to the authority of the chairman of the meeting.

(b) For an item of business or proposal to be brought before an annual meeting by a shareholder, the shareholder must have given timely notice thereof in writing to the Secretary of the corporation. To be timely, a shareholder's notice must be delivered to, or mailed and received at, the principal office of the corporation (i) not less than one hundred twenty (120) days prior to the first anniversary of the date that the corporation's proxy statement was first released to shareholders in connection with the previous year's annual meeting; (ii) a reasonable time before the corporation begins to print and mail its proxy materials if the date of the current year's annual meeting has been changed by more than thirty (30) days from the date of the previous year's meeting; or (iii) not more than seven (7) days following the mailing to shareholders of the notice of annual meeting with respect to the

PLAINTIFF0002341

notice of annual meeting with respect the
current year's annual meeting, if the
corporation did not release a proxy statement

to shareholders in connection with the
previous year's annual meeting, or if no
annual meeting was held during such year.

(c) A shareholder's notice to the Secretary
under Section 1.1.2(b) shall set forth, as to
each item of business or proposal the
shareholder intends to bring before the
meeting (i) a brief description of the item
of business or proposal and the reasons for
bringing it before the meeting, (ii) the name
and address, as they appear on the
corporation's books, of the shareholder and
of any other shareholders that the
shareholder knows or anticipates will support
the item of business or proposal, (iii) the
number and class of shares of stock of the
corporation that are beneficially owned on
the date of such notice by the shareholder
and by any such other shareholders, and (iv)
any financial interest of the shareholder or
any such other shareholders in such item of
business or proposal.

(d) The Board of Directors, or a designated
committee thereof, may reject a shareholder's
notice that is not timely given in accordance
with the terms of Section 1.1.2(b). If the
Board of Directors, or a designated committee
thereof, determines that the information
provided in a timely shareholder's notice
does not satisfy the requirements of
Section 1.1.2(c) in any material respect, the
Secretary of the corporation shall notify the
shareholder of the deficiency in the notice.
The shareholder shall have an opportunity to
cure the deficiency by providing additional
information to the Secretary within such
period of time, not to exceed five (5) days
from the date such deficiency notice is given
to the shareholder, as the Board of Directors
or such committee shall reasonably determine.
If the deficiency is not cured within such
period, or if the Board of Directors or such
committee determines that the additional
information provided by the shareholder,

PLAINTIFF0002342



together with information previously
provided, does not satisfy the requirements
of Section 1.1.2(c) in any material respect,

then the Board of Directors or such committee
may reject the shareholder's notice.

(e) Notwithstanding the procedures set forth
in Section 1.1.2(d), if a shareholder desires
to bring an item of business or proposal
before an annual meeting, and neither the
Board of Directors nor any committee thereof
has made a prior determination of whether the
shareholder has complied with the procedures
set forth in this Section 1.1.2 in connection
with such item of business or proposal, then
the chairman of the meeting shall determine
and declare at the meeting whether the
shareholder has so complied. If the chairman
determines that the shareholder has so
complied, then the chairman shall so state
and ballots shall be provided for use at the
meeting with respect to such item of business
or proposal. If the chairman determines that
the shareholder has not so complied, then,
unless the chairman, in his sole and absolute
discretion, determines to waive such
compliance, the chairman shall state that the
shareholder has not so complied and the item
of business or proposal shall not be brought
before the meeting.

This Section 1.1.2 shall not prevent the
consideration and approval or disapproval at
the annual meeting of reports of officers,
directors and committees of the Board of
Directors, but, in connection with such
reports, no item of business may be
conducted, and no proposal may be considered
and acted upon, unless there has been
compliance with the procedures set forth in
this Section 1.1.2 in connection therewith.

I.3. **Special Meetings.** Special meetings of the
shareholders for any purpose or purposes may be called
at any time by the Board of Directors or by the
Chairman of the Board (if one be appointed) or by one
or more shareholders holding not less than twenty-five
percent (25%) of all the shares entitled to be cast on
any issue proposed to be considered at that meeting, to

PLAINTIFF0002343



be held at such time and place as the Board or the
Chairman (if one be appointed) or the President may
prescribe; provided, that, at any time when the

corporation is subject to the reporting requirements of
Section 13 of the Securities Exchange Act of 1934, as
amended (the "Exchange Act"), special meetings of the
shareholders for any purpose or purposes may be called
at any time only by the Board of Directors or the
Chairman of the Board (if one be appointed) or the
President or one or more shareholders holding not less
than twenty-five percent (25%) of all the shares
entitled to be cast on any issue proposed to be
considered at that meeting.

If a special meeting is called by any person or persons
other than the Board of Directors or the Chairman of
the Board (if one be appointed) or the President, then
a written demand, describing with reasonable clarity
the purpose or purposes for which the meeting is called
and specifying the general nature of the business
proposed to be transacted, shall be delivered
personally or sent by registered mail or by telegraphic
or other facsimile transmission to the Secretary of the
corporation. Upon receipt of such a demand, the
Secretary shall cause notice of such meeting to be
given, within thirty (30) days after the date the
demand was delivered to the Secretary, to the
shareholders entitled to vote, in accordance with the
provisions of Section 1.3 of these Bylaws. Except as
provided below, if the notice is not given by the
Secretary within thirty (30) days after the date the
demand was delivered to the Secretary, then the person
or persons demanding the meeting may specify the time
and place of the meeting and give notice thereof.

I.4. **Notice of Meetings.** Except as otherwise provided
below, the Secretary, Assistant Secretary, or any
transfer agent of the corporation shall give, in any
manner permitted by law, not less than ten (10) nor
more than sixty (60) days before the date of any
meeting of shareholders, written notice stating the
place, day, and time of the meeting to each shareholder
of record entitled to vote at such meeting. Written
notice may be transmitted by mail, private carrier or
personal delivery; telegraph, wire or wireless
equipment that transmits a facsimile of the notice. If
mailed, notice to a shareholder shall be effective when
mailed, with first-class postage thereon prepaid,
correctly addressed to the shareholder at the

PLAINTIFF0002344

shareholder's address as it appears on the current record of shareholders of the corporation. Otherwise, written notice shall be effective at the earliest of



the following: (a) If sent to the person's address, or facsimile number when dispatched by telegraph or facsimile equipment, (b) when received, or (c) on the date shown on the return receipt, if sent by registered or certified mail, return receipt requested, and the receipt is signed by or on behalf of the addressee.

I.4.1 **Notice of Special Meeting.** In the case of a special meeting, the written notice shall also state with reasonable clarity the purpose or purposes for which the meeting is called and the general nature of the business proposed to be transacted at the meeting. No business other than that within the purpose or purposes specified in the notice may be transacted at a special meeting.

I.4.2 **Proposed Articles of Amendment, Merger, Exchange, Sale, Lease or Disposition.** If the business to be conducted at any meeting includes any proposed amendment to the Articles of Incorporation or any proposed merger or exchange of shares, or any proposed sale, lease, exchange, or other disposition of all or substantially all of the property and assets (with or without the goodwill) of the corporation not in the usual or regular course of its business, then the written notice shall state that the purpose or one of the purposes is to consider the proposed amendment or plan of merger, exchange of shares, sale, lease, exchange, or other disposition, as the case may be, shall describe the proposed action with reasonable clarity, and shall be accompanied by a copy of the proposed amendment or plan. Written notice of such meeting shall be given to each shareholder of record, whether or not entitled to vote at such meeting, not less than twenty (20) days before such meeting, in the manner provided in Section 1.3 above.

I.4.3 **Proposed Dissolution.** If the business to be conducted at any meeting includes the proposed voluntary dissolution of the corporation, then the written notice shall

PLAINTIFF0002345



state that the purpose or one of the purposes
is to consider the advisability thereof.
Written notice of such meeting shall be given

to each shareholder of record, whether or not
entitled to vote at such meeting, not less
than twenty (20) days before such meeting, in
the manner provided in Section 1.3 above.

I.4.4 **Declaration of Mailing.** A declaration
of the mailing or other means of giving any
notice of any shareholders' meeting, executed
by the Secretary, Assistant Secretary, or any
transfer or other agent of the corporation
giving the notice, shall be prima facie
evidence of the giving of such notice.

I.4.5 **Waiver of Notice.** A shareholder may
waive notice of any meeting at any time,
either before or after such meeting. Except
as provided below, the waiver must be in
writing, be signed by the shareholder
entitled to the notice, and be delivered to
the corporation for inclusion in the minutes
or filing with the corporate records. A
shareholder's attendance at a meeting in
person or by proxy waives objection to lack
of notice or defective notice of the meeting
unless the shareholder at the beginning of
the meeting objects to holding the meeting or
transacting business at the meeting on the
ground that the meeting is not lawfully
called or convened. In the case of a special
meeting, or an annual meeting at which
fundamental corporate changes are considered,
a shareholder waives objection to
consideration of a particular matter that is
not within the purpose or purposes described
in the meeting notice unless the shareholder
objects to considering the matter when it is
presented.

I.5. **Quorum; Vote Requirement.** A quorum shall exist at
any meeting of shareholders if a majority of the votes
entitled to be cast is represented in person or by
proxy. Once a share is represented for any purpose at a
meeting other than solely to object to holding the
meeting or transacting business at the meeting, it is
deemed present for quorum purposes for the remainder of
the meeting and for any adjournment of that meeting
unless a new record date is or must be set for that

PLAINTIFF0002346



unless a new record date is or must be set for that adjourned meeting. Subject to the foregoing, the determination of the voting groups entitled to vote (as required by law), and the quorum and voting requirements applicable thereto, must be made separately for each matter being considered at a meeting. In the case of any meeting of shareholders that is adjourned more than once because of the failure of a quorum to attend, those who attend the third convening of such meeting, although less than a quorum, shall nevertheless constitute a quorum for the purpose of electing directors, provided that the percentage of shares represented at the third convening of such meeting shall not be less than one-third of the shares entitled to vote.

If a quorum exists, action on a matter (other than the election of directors) is approved by a voting group if the votes cast within the voting group favoring the action exceed the votes cast within the voting group opposing the action unless a greater number of affirmative votes is required by law or by the Articles of Incorporation.

I.6. **Adjourned Meetings.** An adjournment or adjournments of any shareholders' meeting, whether by reason of the failure of a quorum to attend or otherwise, may be taken to such date, time, and place as the chairman of the meeting may determine without new notice being given if the date, time, and place are announced at the meeting at which the adjournment is taken. However, if the adjournment is for more than one hundred twenty (120) days from the date set for the original meeting, a new record date for the adjourned meeting shall be fixed and a new notice of the adjourned meeting shall be given to each shareholder of record entitled to vote at the adjourned meeting, in accordance with the provisions of Section 1.3 of these Bylaws. At any adjourned meeting, the corporation may transact any business which might have been transacted at the original meeting. Any meeting at which directors are to be elected shall be adjourned only from day to day until such directors are elected.

I.7. **Fixing Record Date.** For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders (or, subject to Section 1.5 above, any adjournment thereof), the Board of Directors may fix in advance a date as the record date for any such determination of shareholders, such date in any

PLAINTIFF0002347



such determination of shareholders, such date in any
case to be not more than seventy (70) days prior to the
meeting. If no such record date is fixed for the

determination of shareholders entitled to notice of or
to vote at a meeting of shareholders, then the day
before the first notice is delivered to shareholders
shall be the record date for such determination of
shareholders. If no notice is given because all
shareholders entitled to notice have waived notice,
then the record date for the determination of
shareholders entitled to notice of or to vote at a
meeting shall be the date on which the last such waiver
of notice was obtained. When a determination of
shareholders entitled to vote at any meeting of
shareholders has been made as provided in this section,
such determination shall apply to any adjournment
thereof, except as provided in Section 1.5 of these
Bylaws. If no notice is given because shareholders
holding of record or otherwise entitled to vote in the
aggregate not less than the minimum number of votes
necessary in order to take such action by written
consent have signed a consent, the record date for
determining shareholders entitled to take action
without a meeting is the date the first shareholder
signs the consent.

I.8. **Shareholders' List for Meeting.** The corporation
shall cause to be prepared an alphabetical list of the
names of all of its shareholders on the record date who
are entitled to notice of a shareholders' meeting or
any adjournment thereof. The list must be arranged by
voting group (and within each voting group by class or
series of shares) and show the address of and the
number of shares held by each shareholder. The
shareholders' list must be available for inspection by
any shareholder, beginning ten (10) days prior to the
meeting and continuing through the meeting, at the
principal office of the corporation or at a place
identified in the meeting notice in the city where the
meeting will be held. Such list shall be produced and
kept open at the time and place of the meeting. During
such ten-day period, and during the whole time of the
meeting, the shareholders' list shall be subject to the
inspection of any shareholder, or the shareholder's
agent or attorney. In cases where the record date is
fewer than ten (10) days prior to the meeting because
notice has been waived by all shareholders, the
Secretary shall keep such record available for a period
from the date the first waiver of notice was delivered

PLAINTIFF0002348

to the date of the meeting. Failure to comply with the requirements of this section shall not affect the validity of any action taken at the meeting.

I.9. **Ratification**. Subject to the requirements of RCW 23B.08.730 and 23B.19.040, any contract, transaction, or act of the corporation or of any director or officer of the corporation that shall be authorized, approved, or ratified by the affirmative vote of a majority of shares represented at a meeting at which a quorum is present shall, insofar as permitted by law, be as valid and as binding as though ratified by every shareholder of the corporation.



I.10.**Telephonic Meetings**. Shareholders may participate in a meeting by any means of communication by which all persons participating in the meeting can hear each other during the meeting, and participation by such means shall constitute presence in person at a meeting.

## II. BOARD OF DIRECTORS

II.1. **Responsibility of Board of Directors**. The business and affairs and property of the corporation shall be managed under the direction of a Board of Directors. A director shall discharge the duties of a director, including duties as a member of a committee, in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the director reasonably believes to be in the best interests of the corporation. In discharging the duties of a director, a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:
(a) one or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;
(b) legal counsel, public accountants, or other persons as to matters the director reasonably believes are within the person's professional or expert competence; or (c) a committee of the Board of Directors of which the director is not a member, if the director reasonably believes the committee merits confidence. A director is not acting in good faith if the director has knowledge concerning the matter in question that makes reliance otherwise permitted above unwarranted. The creation of, delegation of authority to, or action by a committee does not alone constitute compliance by a director with the standards of conduct imposed by law

PLAINTIFF0002349



upon directors. A director is not liable for any action taken as a director, or any failure to take any action,

if the director performed the duties of the director's office in compliance with this section.

II.2. **Number of Directors; Qualification.** The number of directors of the corporation shall be between two (2) and seven (7), the specific number to be set by resolution of the Board. No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires. No director need be a shareholder of the corporation or a resident of Washington. Each director must be at least eighteen (18) years of age.

II.3. **Election of Directors; Nominations.**

II.3.1. **Election and Term of Office.** At each annual meeting of shareholders, the shareholders shall elect directors. Each director shall hold office until the next succeeding annual meeting or, in the case of staggered terms as permitted by RCW 23B.08.060, for the term for which he or she is elected, and in each case until his or her successor shall have been elected and qualified.

II.3.2. **Nominations for Directors.**

a. Nominations of candidates for election as directors at an annual meeting of shareholders may only be made (i) by, or at the direction of, the Board of Directors or (ii) by any shareholder of the corporation who is entitled to vote at the meeting and who complies with the procedures set forth in the remainder of this Section 2.3.2.

b. If a shareholder proposes to nominate one or more candidates for election as directors at an annual meeting, the shareholder must have given timely notice thereof in writing to the Secretary of the corporation. To be timely, a

PLAINTIFF0002350



shareholder's notice must be delivered to, or mailed and received at, the principal office of the corporation (i) not less than one hundred twenty (120) days prior to the first anniversary of the date that the corporation's proxy statement was released to shareholders in connection with the previous year's annual meeting; (ii) a reasonable time before the corporation begins to print and mail its proxy materials if the date of this year's annual meeting has been changed by more than thirty (30) days from the date of the previous year's meeting; or (iii) not more than seven (7) days following the mailing to shareholders of the notice of annual meeting with respect to the current year's annual meeting, if the corporation did not release a proxy statement to shareholders in connection with the previous year's annual meeting, or if no annual meeting was held during such year.

c. A shareholder's notice to the Secretary under Section 2.3.2(b) shall set forth, as to each person whom the shareholder proposes to nominate for election as a director (i) the name, age, business address and residence address of such person, (ii) the principal occupation or employment of such person, (iii) the number and class of shares of stock of the corporation that are beneficially owned on the date of such notice by such person and (iv) if the corporation at such time has a class of securities registered pursuant to Section 12 of the Exchange Act, any other information relating to such person required to be disclosed in solicitations of proxies with respect to nominees

PLAINTIFF0002351



for election as directors pursuant
to Regulation 14A under the
Exchange Act, including, but not
limited to, information required to
be disclosed by Schedule 14A of
Regulation 14A, and any other
information that the shareholder
would be required to file with the
Securities and Exchange Commission
in connection with the
shareholder's nomination of such
person as a candidate for director
or the shareholder's opposition to
any candidate for director
nominated by, or at the direction
of, the Board of Directors. In
addition to the above information,
a shareholder's notice to the
Secretary under Section 2.3.2(b)
shall (A) set forth (i) the name
and address, as they appear on the
corporation's books, of the
shareholder and of any other
shareholders that the shareholder
knows or anticipates will support
any candidate or candidates
nominated by the shareholder and
(ii) the number and class of shares
of stock of the corporation that
are beneficially owned on the date
of such notice by the shareholder
and by any such other shareholders
and (B) be accompanied by a written
statement, signed and acknowledged
by each candidate nominated by the
shareholder, that the candidate
agrees to be so nominated and to
serve as a director of the
corporation if elected at the
annual meeting.

d. The Board of Directors, or a
designated committee thereof, may
reject any shareholder's nomination
of one or more candidates for
election as directors if the
nomination is not made pursuant to
a shareholder's notice timely given
in accordance with the terms of

PLAINTIFF0002352



Section 2.3.2(b). If the Board of Directors, or a designated committee thereof, determines that the information provided in a shareholder's notice does not satisfy the requirements of Section 2.3.2(c) in any material respect, the Secretary of the corporation shall notify the shareholder of the deficiency in the notice. The shareholder shall have an opportunity to cure the deficiency by providing additional information to the Secretary within such period of time, not to exceed five (5) days from the date such deficiency notice is given to the shareholder, as the Board of Directors or such committee shall reasonably determine. If the deficiency is not cured within such period, or if the Board of Directors or such committee determines that the additional information provided by the shareholder, together with information previously provided, does not satisfy the requirements of Section 2.3.2(c) in any material respect, then the Board of Directors or such committee may reject the shareholder's notice.

e. Notwithstanding the procedures set forth in Section 2.3.2(d), if a shareholder proposes to nominate one or more candidates for election as directors at an annual meeting, and neither the Board of Directors nor any committee thereof has made a prior determination of whether the shareholder has complied with the procedures set forth in this Section 2.3.2 in connection with such nomination, then the chairman of the annual meeting shall determine and declare at the annual meeting whether the shareholder has so complied. If the chairman

PLAINTIFF0002353



determines that the shareholder has
so complied, then the chairman
shall so state and ballots shall be
provided for use at the meeting
with respect to such nomination. If
the chairman determines that the
shareholder has not so complied,
then, unless the chairman, in his
sole and absolute discretion,
determines to waive such
compliance, the chairman shall
state that the shareholder has not
so complied and the defective
nomination shall be disregard.

II.4. **Vacancies**. Except as otherwise provided by law,
any vacancy occurring in the Board of Directors
(whether caused by resignation, death, or otherwise)
may be filled by the affirmative vote of a majority of
the directors present at a meeting of the Board at
which a quorum is present, or, if the directors in
office constitute less than a quorum, by the
affirmative vote of a majority of all of the directors
in office. Notice shall be given to all of the
remaining directors that such vacancy will be filled at
the meeting. However, if the vacant office was held by
a director elected by a voting group composed of less
than all of the voting shareholders, then the Board of
Directors shall not have the power to fill such
vacancy. A director elected to fill any vacancy shall
hold office until the next meeting of shareholders at
which directors are elected, and until his or her
successor shall have been elected and qualified.

II.5. **Removal.** One or more members of the Board of
Directors (including the entire Board) may be removed,
with or without cause, at a special meeting of
shareholders called expressly for that purpose. A
director (or the entire Board) may be removed if the
number of votes cast in favor of removing such director
(or the entire Board) exceeds the number of votes cast
against removal; provided that, if a director (or the
entire Board) has been elected by one or more voting
groups, only those voting groups may participate in the
vote as to removal. However, if the Articles of
Incorporation grant shareholders the right to cumulate
their votes in the election of directors, a director
may not be removed if a number of votes sufficient to
elect such director under cumulative voting (computed

PLAINTIFF0002354

on the basis of the number of votes actually cast at
the meeting on the question of removal) is cast against
such director's removal.

II.6. **Resignation.** A director may resign at any time by
delivering written notice to the Board of Directors,
the Chairman of the Board (if one be appointed), the
President, or the Secretary. A resignation is effective
when the notice is delivered unless the notice
specifies a later effective date.

II.7. **Annual Meeting.** The first meeting of each newly
elected Board of Directors shall be known as the annual
meeting thereof and shall be held without notice
immediately after the annual shareholders' meeting or
any special shareholders' meeting at which a Board is
elected. Such meeting shall be held at the same place
as such shareholders' meeting unless some other place
shall be specified by resolution of the shareholders.

II.8. **Regular Meetings.** Regular meetings of the Board
of Directors may be held at such place, day, and time
as shall from time to time be fixed by resolution of
the Board without notice other than the delivery of
such resolution as provided in Section 2.10 below.

II.9. **Special Meetings.** Special meetings of the Board
of Directors may be called by the President or the
Chairman of the Board (if one be appointed) or any two
or more directors, to be held at such place, day, and
time as specified by the person or persons calling the
meeting.

II.10. **Notice of Meeting.** Notice of the place, day, and
time of any meeting of the Board of Directors for which
notice is required shall be given, at least two (2)
days preceding the day on which the meeting is to be
held, by the Secretary or an Assistant Secretary, or by
the person calling the meeting, in any manner permitted
by law, including orally. Any oral notice given by
personal communication over the telephone or otherwise
may be communicated either to the director or to a
person at the office of the director who, the person
giving the notice has reason to believe, will promptly
communicate it to the director. Notice shall be deemed
to have been given on the earliest of (a) the day of
actual receipt, (b) five (5) days after the day on
which written notice is deposited in the United States
mail, as evidenced by the postmark, with first-class
postage prepaid, and correctly addressed, or (c) on the
date shown on the return receipt, if sent by registered

PLAINTIFF0002355

date shown on the return receipt, if sent by registered or certified mail, return receipt requested, and the receipt is signed by or on behalf of the addressee.

No notice of any regular meeting need be given if the place, day, and time thereof have been fixed by resolution of the Board of Directors and a copy of such resolution has been given to each director, either by personally delivering the copy to the director at least two (2) days, or by depositing the copy in the United States mail with first class postage prepaid and correctly addressed to the director at the director's address as it appears on the records of the corporation at least five (5) days (as evidenced by the postmark), prior to the day of the first meeting held in pursuance thereof.

Notice of a meeting of the Board of Directors need not be given to any director if it is waived by the director in writing, whether before or after such meeting is held. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting unless required by law, the Articles of Incorporation, or these Bylaws.

A director's attendance at or participation in a meeting shall constitute a waiver of notice of such meeting except when a director attends or participates in a meeting for the express purpose of objecting on legal grounds prior to or at the beginning of the meeting (or promptly upon the director's arrival) to the holding of the meeting or the transaction of any business and does not thereafter vote for or assent to action taken at the meeting. Any meeting of the Board of Directors shall be a legal meeting without any notice thereof having been given if all of the directors have received valid notice thereof, are present without objecting, or waive notice thereof, or any combination thereof.

II.11. **Quorum of Directors.** Except in particular situations where a lesser number is expressly permitted by law, and unless a greater number is required by the Articles of Incorporation, a majority of the number of directors specified in or fixed in accordance with these Bylaws shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of



PLAINTIFF0002356



a quorum is present shall be the act of the Board of Directors. If the number of directors in office at any time is less than the number specified in or fixed in

accordance with these Bylaws, then a quorum shall consist of a majority of the number of directors in office; provided that in no event shall a quorum consist of fewer than one-third of the number specified in or fixed in accordance with these Bylaws.

Directors at a meeting of the Board of Directors at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, provided such withdrawal does not reduce the number of directors attending the meeting below the level of a quorum.

A majority of the directors present, whether or not constituting a quorum, may adjourn any meeting of the Board of Directors to another time and place. If the meeting is adjourned for more than forty-eight (48) hours, then notice of the time and place of the adjourned meeting shall be given before the adjourned meeting takes place, in the manner specified in Section 2.10 of these Bylaws, to the directors who were not present at the time of the adjournment.

II.12. **Dissent by Directors**. Any director who is present at any meeting of the Board of Directors at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless the director objects at the beginning of the meeting (or promptly upon the director's arrival) to the holding of, or the transaction of business at, the meeting; or unless the director's dissent or abstention shall be entered in the minutes of the meeting; or unless the director delivers written notice of the director's dissent or abstention to the presiding officer of the meeting before the adjournment thereof or to the corporation within a reasonable time after the adjournment of the meeting. Such right to dissent or abstention shall not be available to any director who votes in favor of such action.

II.13. **Action by Directors Without a Meeting**. Any action required by law to be taken or which may be taken at a meeting of the Board of Directors may be taken without a meeting if one or more consents in writing, setting forth the action so taken, shall be signed either before or after the action so taken by all of the directors and delivered to the corporation

PLAINTIFF0002357

all of the directors and delivered to the corporation
for inclusion in the minutes or filing with the
corporate records. Such consent shall have the same

effect as a meeting vote. Action taken under this
section is effective when the last director signs the
consent, unless the consent specifies a later effective
date.



II.14. **Telephonic Meetings**. Except as may be otherwise
restricted by the Articles of Incorporation, members of
the Board of Directors may participate in a meeting of
the Board by any means of communication by which all
directors participating in the meeting may
simultaneously hear each other during the meeting.
Participation by such means shall constitute presence
in person at a meeting.

II.15. **Compensation**. By resolution of the Board of
Directors, the directors may be paid their expenses, if
any, and may be paid a fixed sum or a stated salary as
a director, for attendance at each meeting of the
Board. No such payment shall preclude any director from
serving the corporation in any other capacity and
receiving compensation therefor.

II.16. **Committees**. The Board of Directors, by
resolution adopted by the greater of (a) a majority of
all of the directors in office, or (b) the number of
directors required by the Articles of Incorporation or
these Bylaws to take action may from time to time
create, and appoint individuals to, one or more
committees, each of which must have at least two (2)
members. If a committee is formed for the purpose of
exercising functions of the Board, the committee must
consist solely of directors. If the only function of a
committee is to study and make recommendations for
action by the full Board, the committee need not
consist of directors. Committees of directors may
exercise the authority of the Board of Directors to the
extent specified by such resolution or in the Articles
of Incorporation or these Bylaws. However, no committee
shall:

    1. authorize or approve a distribution (as
       defined in RCW 23B.01.400) except
       according to a general formula or method
       prescribed by the Board of Directors;

    2. approve or propose to shareholders
       action that by law is required to be

PLAINTIFF0002358



approved by shareholders;

3. fill vacancies on the Board of Directors or on any of its committees;

4. amend the Articles of Incorporation;

5. adopt, amend, or repeal Bylaws;

6. approve a plan of merger not requiring shareholder approval; or

7. authorize or approve the issuance or sale or contract for sale of shares, or determine the designation and relative rights, preferences, and limitations of a class or series of shares, except that the Board of Directors may authorize a committee of directors (or a senior executive officer of the corporation) to do so within limits specifically prescribed by the Board of Directors.

Committees shall be governed by the same provisions as govern the meetings, actions without meetings, notice and waiver of notice, quorum and voting requirements, and standards of conduct of the Board of Directors. The Executive Committee (if one be established) shall meet periodically between meetings of the full Board. All committees shall keep regular minutes of their meetings and shall cause them to be recorded in books kept for that purpose at the office of the corporation.

II.17. **The Chairman of the Board.** In its discretion, the Board of Directors may appoint a non-employee director as the Chairman of the Board. If the Board of Directors appoints a Chairman of the Board, he shall perform such duties and possess such powers as are assigned to him by the Board of Directors. Unless otherwise provided by the Board of Directors, he shall preside at all meetings of the stockholders and at all meetings of the Board of Directors.

## III. OFFICERS

III.1. **Appointment.** The officers of the corporation shall be appointed annually by the Board of Directors at its annual meeting held after the annual meeting of

PLAINTIFF0002359



the shareholders. If the appointment of officers is not held at such meeting, such appointment shall be held as soon thereafter as a Board meeting conveniently may be held. Except in the case of death, resignation, or removal, each officer shall hold office until the next annual meeting of the Board and until his or her successor is appointed and qualified.

III.2. **Qualification.** None of the officers of the corporation need be a director, except as specified below. Any two or more of the corporate offices may be held by the same person.

III.3. **Officers Enumerated.** Except as otherwise provided by resolution of the Board of Directors, the officers of the corporation and their respective powers and duties shall be as follows:

> III.3.1. **President.** Subject to such supervisory powers as may be given by the Board of Directors to other officers or to the Chairman of the Board (if such an officer be appointed), the President shall be the chief executive officer of the corporation unless some other officer is so designated by the Board and, subject to the control of the Board and the Executive Committee (if one be established), shall supervise and control all of the assets, business, and affairs of the corporation. The President may sign certificates for shares of the corporation, deeds, mortgages, bonds, contracts, and other instruments, except when the signing thereof has been expressly delegated by the Board or by these Bylaws to some other officer or agent of the corporation or is otherwise required by law to be signed by some other officer or in some other manner. The President shall vote the shares owned by the corporation in other corporations, domestic or foreign, unless otherwise prescribed by law or resolution of the Board. In general, the President shall perform all duties incident to the office of President and such other duties as may be prescribed by the Board from time to time. In the absence of the Chairman of the Board, the President, if a director, shall preside over all meetings of the shareholders and over all meetings of

PLAINTIFF0002360

the Board of Directors. The President shall
have the authority to appoint one or more

Assistant Secretaries and Assistant
Treasurers, as he or she deems necessary.



III.3.2. **Vice Presidents.** In the absence or
disability of the President, the Vice
Presidents, if any, in order of their rank as
fixed by the Board of Directors or, if not
ranked, a Vice President designated by the
Board shall perform all the duties of the
President and when so acting shall have all
the powers of, and be subject to all the
restrictions upon, the President; provided
that no such Vice President shall assume the
authority to preside as Chairman of meetings
of the Board unless such Vice President is a
member of the Board. The Vice Presidents
shall have such other powers and perform such
other duties as from time to time may be
respectively prescribed for them by the
Board, these Bylaws or the President.

III.3.3. **Secretary.** The Secretary shall:

> (a) have responsibility for
> preparing minutes of meetings of
> the shareholders and the Board of
> Directors and for authenticating
> records of the corporation;

> (b) see that all notices are duly
> given in accordance with the
> provisions of Sections 1.3, 1.5,
> 2.8, and 2.10 of these Bylaws and
> as required by law;

> (c) be custodian of the corporate
> records and seal of the
> corporation, if one be adopted;

> (d) keep a register of the post
> office address of each shareholder
> and director;

> (e) attest certificates for shares
> of the corporation;

> (f) have general charge of the
> stock transfer books of the

PLAINTIFF0002361

stock transfer books of the
corporation;

(g) when required by law or
authorized by resolution of the
Board of Directors, sign with the
President, or other officer
authorized by the President or the
Board, deeds, mortgages, bonds,
contracts, and other instruments;
and

(h) in general, perform all duties
incident to the office of Secretary
and such other duties as from time
to time may be assigned by the
President or the Board of
Directors.

In the absence of the Secretary, an Assistant
Secretary may perform the duties of the
Secretary.

III.3.4 **Treasurer.** If required by the Board
of Directors, the Treasurer shall give a bond
for the faithful discharge of his or her
duties in such sum and with such surety or
sureties as the Board shall determine. The
Treasurer shall:

(a) have charge and custody of and
be responsible for all funds and
securities of the corporation;

(b) receive and give receipts for
moneys due and payable to the
corporation from any source
whatsoever and deposit all such
moneys in the name of the
corporation in banks, trust
companies, or other depositories
selected in accordance with the
provisions of these Bylaws; and

(c) in general, perform all of the
duties incident to the office of
Treasurer and such other duties as
from time to time may be assigned
by the President or the Board of
Directors.

PLAINTIFF0002362

In the absence of the Treasurer, an Assistant
Treasurer may perform the duties of the

Treasurer.

III.4. **Delegation.** In case of the absence or inability
to act of any officer of the corporation and of each
person herein authorized to act in his or her place,
the Board of Directors may from time to time delegate
the powers and duties of such officer to any other
officer or other person whom it may select.



III.5. **Resignation.** Any officer may resign at any time
by delivering notice to the corporation. Any such
resignation shall take effect at the time the notice is
delivered unless the notice specifies a later effective
date. Unless otherwise specified therein, acceptance of
such resignation by the corporation shall not be
necessary to make it effective. Any resignation shall
be without prejudice to the rights, if any, of the
corporation under any contract to which the officer is
a party.

III.6. **Removal.** Any officer or agent may be removed by
the Board with or without cause. An officer empowered
to appoint another officer or assistant officer also
has the power with or without cause to remove any
officer he or she would have the power to appoint
whenever in his or her judgment the best interests of
the corporation would be served thereby. The removal of
an officer or agent shall be without prejudice to the
contract rights, if any, of the corporation or the
person so removed. Appointment of an officer or agent
shall not of itself create contract rights.

III.7. **Vacancies.** A vacancy in any office because of
death, resignation, removal, disqualification, creation
of a new office, or any other cause may be filled by
the Board of Directors for the unexpired portion of the
term or for a new term established by the Board.

III.8. **Other Officers and Agents.** One or more Vice
Presidents and such other officers and assistant
officers as may be deemed necessary or advisable may be
appointed by the Board of Directors or, to the extent
provided in Section 3.3.1 above, by the President. Such
other officers and assistant officers shall hold office
for such periods, have such authorities, and perform
such duties as are provided in these Bylaws or as may
be provided by resolution of the Board. Any officer may

PLAINTIFF0002363

be assigned by the Board any additional title that the Board deems appropriate. The Board may delegate to any officer or agent the power to appoint any such assistant officers or agents and to prescribe their respective terms of office, authorities, and duties.

III.9. **Compensation.** Compensation, if any, for officers and other agents and employees of the corporation shall be determined by the Board of Directors, or by the President to the extent such authority may be delegated to him or her by the Board. No officer shall be prevented from receiving compensation in such capacity by reason of the fact that he or she is also a director of the corporation.

III.10. **General Standards for Officers.** Officers with discretionary authority shall discharge their duties under that authority in accordance with the same standards of conduct applicable to directors as specified in Section 2.1 above (except for subsection (c) thereof).

## IV. CONTRACTS, CHECKS AND DRAFTS

IV.1. **Contracts.** The Board of Directors may authorize any officer or officers or agent or agents to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation. Such authority may be general or confined to specific instances.

Subject to the limitations set forth in RCW 23B.08.700 through 23B.08.730 and 23B.19.040, to the extent applicable:

> IV.1.1. The corporation may enter into contracts and otherwise transact business as vendor, purchaser, lender, borrower, or otherwise with its directors and shareholders and with corporations, associations, firms, and entities in which they are or may be or become interested as directors, officers, shareholders, members, or otherwise.

> IV.1.2. Any such contract or transaction shall not be affected or invalidated or give rise to liability by reason of the director's or shareholder's having an interest in the contract or transaction.

PLAINTIFF0002364

IV.2. **Checks, Drafts, Etc.** All checks, drafts, and other orders for the payment of money, notes, and other evidences of indebtedness issued in the name of the corporation shall be signed by such officer or officers or agent or agents of the corporation and in such manner as may be determined from time to time by resolution of the Board of Directors.



IV.3. **Deposits.** All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies, or other depositories as the Treasurer, subject to the direction of the Board of Directors, may select.

## V. STOCK

V.1. **Issuance of Shares.** No shares of the corporation shall be issued unless authorized by the Board of Directors, which authorization shall include the maximum number of shares to be issued, the consideration to be received for each share, and, if the consideration is in a form other than cash, the determination of the value of the consideration.

V.2. **Certificates of Stock.** All shares of the corporation shall be represented by certificates in such form, not inconsistent with the Articles of Incorporation, as the Board of Directors may from time to time prescribe. Certificates of stock shall be issued in numerical order, and each shareholder shall be entitled to a certificate signed by the President or a Vice President, attested to by the Secretary or an Assistant Secretary, and sealed with the corporate seal, if any. If any certificate is manually signed by a transfer agent or a transfer clerk and by a registrar, the signatures of the President, Vice President, Secretary or Assistant Secretary upon that certificate may be facsimiles that are engraved or printed. If any person who has signed or whose facsimile signature has been placed on a certificate no longer is an officer when the certificate is issued, the certificate may nevertheless be issued with the same effect as if the person were still an officer at the time of its issue. Every certificate of stock shall state:

V.2.1. The state of incorporation;

V.2.2. The name of the registered holder of

PLAINTIFF0002365

V.2.2. The name of the registered holder of
the shares represented thereby;

V.2.3. The number and class of shares, and
the designation of the series, if any, which
such certificate represents;

V.2.4. If the corporation is authorized to
issue different classes of shares or
different series within a class, either a
summary of (on the face or back of the
certificate), or a statement that the
corporation will furnish to any shareholder
upon written request and without charge a
summary of, the designations, relative
rights, preferences, and limitations
applicable to each class and the variations
in rights, preferences and limitations
determined for each series, and the authority
of the Board of Directors to determine
variations for future series; and

V.2.5. If the shares are subject to transfer
or other restrictions under applicable
securities laws or contracts with the
corporation, either a complete description of
or a reference to the existence and general
nature of such restrictions on the face or
back of the certificate.

V.3. **Stock Records.** The corporation or its agent shall
maintain at the registered office or principal office
of the corporation, or at the office of the transfer
agent or registrar of the corporation, if one be
designated by the Board of Directors, a record of its
shareholders, in a form that permits preparation of a
list of the names and addresses of all shareholders in
alphabetical order by class of shares showing the
number and class of shares held by each. The person in
whose name shares stand on the books of the corporation
shall be deemed by the corporation to be the owner
thereof for all purposes.

V.4. **Restrictions on Transfer.** The Board of Directors
shall have the authority to issue shares of the capital
stock of this corporation and the certificates therefor
subject to such transfer restrictions and other
limitations as it may deem necessary to promote
compliance with applicable federal and state securities
laws, and to regulate the transfer thereof in such

PLAINTIFF0002366



laws, and to regulate the transfer thereof in such manner as may be calculated to promote such compliance or to further any other reasonable purpose. Except to

the extent that the corporation has obtained an opinion of counsel acceptable to the corporation that transfer restrictions are not required under applicable securities laws, all certificates representing shares of the corporation shall bear the following legend (or a legend of substantially the same import) on the face of the certificate or on the reverse of the certificate if a reference to the legend is contained on the face:

> NOTICE: RESTRICTIONS ON TRANSFER
>
> The securities represented by this certificate have not been registered under the Securities Act of 1933, or any state securities laws, and may not be offered, sold, transferred, encumbered, or otherwise disposed of except upon satisfaction of certain conditions. Information concerning these restrictions may be obtained from the corporation or its legal counsel. Any offer or disposition of these securities without satisfaction of said conditions will be wrongful and will not entitle the transferee to register ownership of the securities with the corporation.

V.5. **Transfers.** Shares of stock may be transferred by delivery of the certificates therefor, accompanied by:

> V.5.1. an assignment in writing on the back of the certificate, or an assignment separate from certificate, or a written power of attorney to sell, assign, and transfer the same, signed by the record holder of the certificate; and
>
> V.5.2. such additional documents, instruments, and other items of evidence as may be reasonably necessary to satisfy the requirements of any transfer restrictions applicable to such shares, whether arising under applicable securities or other laws, or by contract, or otherwise.
>
> Except as otherwise specifically provided in these Bylaws, no shares of stock shall be transferred on the books of the corporation

PLAINTIFF0002367



until the outstanding certificate therefor
has been surrendered to the corporation. All
certificates surrendered to the corporation

for transfer shall be canceled, and no new
certificate shall be issued until the former
certificate for a like number of shares shall
have been surrendered and canceled, except
that, in case of a lost, destroyed, or
mutilated certificate, a new one may be
issued therefor upon such terms (including
indemnity to the corporation) as the Board of
Directors may prescribe.

## VI. RECORDS OF CORPORATE MEETINGS

The corporation shall keep, as permanent records,
minutes of all meetings of its shareholders and Board
of Directors, a record of all actions taken by the
shareholders or Board of Directors without a meeting,
and a record of all actions taken by a committee of the
Board of Directors exercising the authority of the
Board of Directors on behalf of the corporation. The
corporation shall keep at its principal office a copy
of the minutes of all shareholders' meetings that have
occurred, and records of all action taken by
shareholders without a meeting, within the past three
(3) years. Any person dealing with the corporation may
rely upon a copy of any of the records of the
proceedings, resolutions, or votes of the Board or
shareholders when certified by the President or
Secretary.

## VII. FINANCIAL MATTERS

The corporation shall maintain appropriate accounting
records at its principal office and shall prepare the
annual financial statements required by RCW 23B.16.200.
Except to the extent otherwise expressly determined by
the Board of Directors or otherwise required by law,
the accounting records of the corporation shall be kept
and prepared in accordance with generally accepted
accounting principles applied on a consistent basis
from period to period. The fiscal year of the
corporation shall be the calendar year unless otherwise
expressly determined by the Board of Directors.

## VIII. DISTRIBUTIONS

The Board of Directors may from time to time authorize,

PLAINTIFF0002368

and the corporation may make, distributions (as defined
in RCW 23B.01.400) to its shareholders to the extent

permitted by RCW 23B.06.400, subject to any limitation
in the Articles of Incorporation. A director who votes
for or assents to a distribution made in violation of
RCW 23B.06.400 is personally liable to the corporation
for the amount of the distribution that exceeds that
which could have been distributed without violating
RCW 23B.06.400 if it is established that the director
did not perform the director's duties in compliance
with Section 2.1 above.

## IX. CORPORATE SEAL

The Board of Directors may, but shall not be required
to, adopt a corporate seal for the corporation in such
form and with such inscription as the Board may
determine. If such a corporate seal shall at any time
be so adopted, the application of or the failure to
apply such seal to any document or instrument shall
have no effect upon the validity or invalidity of such
document or instrument under otherwise applicable
principles of law.

## X. MISCELLANY

**X.1. Communications by Facsimile.** Whenever these Bylaws
require notice, consent, or other communication to be
delivered for any purpose, transmission by phone, wire,
wireless equipment or electronic mail which transmits a
facsimile of such communication shall constitute
sufficient delivery for such purpose. Such
communication shall be deemed to have been received by
or in the possession of the addressee upon completion
of the transmission.

**X.2. Inspector of Elections.** Before any annual meeting
of shareholders, the Board of Directors may appoint an
inspector of elections to act at the meeting and any
adjournment thereof. If no inspector of elections is so
appointed by the Board, then the chairman of the
meeting may appoint an inspector of elections to act at
the meeting. If any person appointed as inspector fails
to appear or fails or refuses to act, then the chairman
of the meeting may, and upon the request of any
shareholder or a shareholder's proxy shall, appoint a
person to fill that vacancy.



PLAINTIFF0002369

Such inspector of elections shall:



1. determine the number of shares
   outstanding and the voting power of
   each, the number of shares represented
   at the meeting, the existence of a
   quorum, and, with the advice of legal
   counsel to the corporation, the
   authenticity, validity, and effect of
   proxies pursuant to RCW 23B.07.220 and
   23B.07.240 and any procedure adopted by
   the Board of Directors pursuant to
   RCW 23B.07.230;

2. receive votes, ballots, or consents;

3. hear and determine all challenges and
   questions in any way arising in
   connection with the right to vote;

4. count and tabulate all votes or
   consents;

5. determine the result; and

6. do any other acts that may be proper to
   conduct the election or vote with
   fairness to all shareholders.

X.3. **Rules of Order**. The rules contained in the most
recent edition of Robert's Rules of Order, Revised,
shall govern all meetings of shareholders and directors
where those rules are not inconsistent with the
Articles of Incorporation or Bylaws, subject to the
following:

X.3.1. The chairman of the meeting shall have
absolute authority over matters of procedure,
and there shall be no appeal from the ruling
of the chairman. If the chairman in his or
her absolute discretion deems it advisable to
dispense with the rules of parliamentary
procedure for any meeting or any part
thereof, the chairman shall so state and
shall clearly state the rules under which the
meeting or appropriate part thereof shall be
conducted.

X.3.2. If disorder should arise which

PLAINTIFF0002370



X.3.2. If disorder should arise which
prevents continuation of the legitimate
business of the meeting, the chairman may

quit the chair and announce the adjournment
of the meeting; upon so doing, the meeting
shall be deemed immediately adjourned,
subject to being reconvened in accordance
with Section 1.5 of these Bylaws, as the case
may be.

X.3.3. The chairman may ask or require that
anyone not a bona fide shareholder or proxy
leave the meeting of shareholders.

X.3.4. A resolution or motion at a meeting of
shareholders shall be considered for vote
only if proposed by a shareholder or duly
authorized proxy and seconded by an
individual who is a shareholder or duly
authorized proxy other than the individual
who proposed the resolution or motion.

X.4. **Construction.** Within these Bylaws, words of any
gender shall be construed to include any other gender,
and words in the singular or plural number shall be
construed to include the plural or singular,
respectively, unless the context otherwise requires.

X.5. **Severability.** If any provision of these Bylaws or
any application thereof shall be invalid,
unenforceable, or contrary to applicable law, the
remainder of these Bylaws, and the application of such
provisions to individuals or circumstances other than
those as to which it is held invalid, unenforceable, or
contrary to applicable law, shall not be affected
thereby.

## XI. AMENDMENT OF BYLAWS

Subject to the requirements of RCW 23B.10.210 relating
to supermajority quorum provisions for the Board of
Directors, the Bylaws of the corporation may be amended
or repealed, or new Bylaws may be adopted, by: (a) the
shareholders, even though the Bylaws may also be
amended or repealed, or new Bylaws may also be adopted,
by the Board of Directors; or (b) subject to the power
of the shareholders of the corporation to change or
repeal the Bylaws, the Board of Directors, unless such
power is reserved, by the Articles of Incorporation or
by law, exclusively to the shareholders in whole or in

**PLAINTIFF0002371**

by law, exclusively to the shareholders in whole or in part or unless the shareholders, in amending or repealing a particular bylaw, provide expressly that

the Board of Directors may not amend or repeal that bylaw. Any officer of the corporation may authenticate a restatement of the Bylaws and all amendments thereto adopted in the manner provided above.



## XII. AUTHENTICATION

The foregoing Bylaws were read, approved, and duly adopted by the Board of Directors of the Corporation on the **date below the undersigned,** and the President of the corporation is empowered to authenticate such Bylaws by his signature below.

| PRESIDENT |
|---|
| Signature: |
| Print Name: [President-name] |
| Role: President |
| Dated: [Date] |

Previous
[Delaware C Corporation Bylaws]

Next
[REA ME.m]

PLAINTIFF0002372



**LEGAL-TOOLS**    DAOLABS

Connect Wallet



# Variables

Agreement Date

01/01/2023

Corporation's Name (ALL CAPS)

ACME CORPORATION

Corporation's Purpose

any lawful act or activity

Registered Agent Name

Mr. John Doe

Entity-state

Delaware

Registered Office Address

123 Main Street, Apt. 45, Kalamazoo, MI 49001

Incorporator's Full Name

Mr. John Doe

Incorporator Address

123 Main Street, Apt. 45, Kalamazoo, MI 49001

Total Number of Shares

10000000

Par Value Per Share (USD)

1

Jurisdiction statue referencing incorporation

Article VIII and Article IX

Update document

INCORPORATOR

PLAINTIFF0002373





```
CERTIFICATE OF INCORPORATION OF [Entity name]
            Last Update: [Date]
```

The name of the corporation is **[Entity-name]** (the "Company").

The address of the Company's registered office in the State of **[Entity-state]** is **[Registered-office-address].** The name of its registered agent at such address is **[Registered-agent-name].**

The purpose of the Company is to engage in **[Entity-purpose]** for which corporations may be organized under the **[Entity-state]** Corporation Law, as the same exists or as may hereafter be amended from time to time.

This Company is authorized to issue one class of shares to be designated Common Stock. The total number of shares of Common Stock the Company has authority to issue is **[Share-amount]** with par value of **[Share-value]** dollars per share.

The name and mailing address of the incorporator are as follows:

## INCORPORATOR

**[Incorporator-name], [Incorporator-address]**

In furtherance and not in limitation of the powers conferred by statute, the board of directors of the Company is expressly authorized to make, alter, amend or repeal the bylaws of the Company.

Elections of directors need not be by written ballot unless otherwise provided in the bylaws of the Company.

To the fullest extent permitted by the **[Entity-state]** Corporation Law, as the same exists or as may hereafter be amended from time to time, a director of the Company shall not be personally liable to the Company or its stockholders for monetary damages for breach of fiduciary duty as a director. If the **[Entity-state]**

PLAINTIFF0002374

Corporation Law is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Company shall be eliminated or limited to the fullest extent permitted by the **[Entity-state]** General Corporation Law, as so amended.



Neither any amendment nor repeal of this Article, nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article, shall eliminate or reduce the effect of this Article in respect of any matter occurring, or any cause of action, suit or claim accruing or arising or that, but for this Article, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

Subject to any provisions in the bylaws of the Company related to indemnification of directors or officers of the Company, the Company shall indemnify, to the fullest extent permitted by applicable law, any director or officer of the Company who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "**Proceeding**") by reason of the fact that he or she is or was a director, officer, employee or agent of the Company or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with any such Proceeding. The Company shall be required to indemnify a person in connection with a Proceeding initiated by such person only if the Proceeding was authorized by the Board.

The Company shall have the power to indemnify, to the extent permitted by the **[Entity-state]** Corporation Law, as it presently exists or may hereafter be amended from time to time, any employee or agent of the Company who was or is a party or is threatened to be made a party to any Proceeding by reason of the fact that he or she is or was a director, officer, employee or agent of the Company or is or was serving at the request of the Company as a director, officer, employee or agent of

PLAINTIFF0002375



another corporation, partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, against expenses (including

attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with any such Proceeding.

A right to indemnification or to advancement of expenses arising under a provision of this Certificate of Incorporation or a bylaw of the Company shall not be eliminated or impaired by an amendment to this Certificate of Incorporation or the bylaws of the Company after the occurrence of the act or omission that is the subject of the civil, criminal, administrative or investigative action, suit or proceeding for which indemnification or advancement of expenses is sought, unless the provision in effect at the time of such act or omission explicitly authorizes such elimination or impairment after such action or omission has occurred.

Except as provided in **[Entity-jurisdiction-statute]** above, the Company reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

I, the undersigned, as the sole incorporator of the Company, have signed this Certificate of Incorporation on **[Date]**.

[Signature page to follow]

| INCORPORATOR |
| --- |
| Signature: |
| Print Name: **[Incorporator-name]** |
| Role: Incorporator |

| Previous | Next |
| --- | --- |
| series-addendum-agreement.md | Incorporator, Action |

PLAINTIFF0002376



**LEGAL-TOOLS** DAOLABS

Connect Wallet



# Variables

**Agreement Date**

mm/dd/yyyy

**Corporation's Name (ALL CAPS)**

ACME CORPORATION

**Board Member's Full Name**

Mr. John Doe

**Incorporator's Full Name**

Ms. Jane Doe

Update document

ACTION BY SOLE
INCORPORATOR OF [Entity-
name]

    Bylaws

    Directors

  Exhibit A



# ACTION BY SOLE INCORPORATOR OF [Entity-name]

## [Date]

In accordance with Section 108 of the Delaware General Corporation Law, the undersigned sole incorporator of **[Entity-name]**, a Delaware corporation (the "***Company***"), takes the following actions and resolves as follows:

## Bylaws

- The bylaws attached as **Exhibit A** are hereby adopted as the bylaws of the Company.
- The Secretary of the Company is authorized and

PLAINTIFF0002377

- The Secretary of the company is authorized and directed to execute a certificate of the adoption

  of the bylaws and to insert such certificate and the bylaws in the minute book of the Company.

## Directors

- The initial board of directors of the Company shall consist of one (1) member.
- **[Board-member-name]** is appointed to serve as the initial member of the board of directors, to serve until his respective successor is duly elected and qualified.

This action by sole incorporator shall be filed in the minute book of the Company and is effective as of the date first set forth above.

[Signature page to follow]

| INCORPORATOR |
| --- |
| Signature: |
| Print Name: [Incorporator-name] |
| Role: Incorporator |

# Exhibit A

### Bylaws

| Previous | Next |
| --- | --- |
| Incorporation | ByLaws |

PLAINTIFF0002378



**LEGAL–TOOLS**    DAOLABS

Connect Wallet



# Variables

Corporation's Name (ALL CAPS)

```
ACME CORPORATION
```

Date of Adoption

```
mm/dd/yyyy
```

Update document



# BYLAWS OF [Entity-name]

**Adopted on [Date]**

## BYLAWS

## MEETINGS OF STOCKHOLDERS

### Place of Meetings

Meetings of stockholders of **[Entity-name]** (the "**Company**") shall be held at any place, within or outside the State of Delaware, determined by the Company's board of directors (the "**Board**"). The Board may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication as authorized by Section 211(a)(2) of the Delaware General Corporation Law (the "**DGCL**"). In the absence of

BYLAWS OF [Entity-name]

BYLAWS

  MEETINGS OF STOCKHOLDERS

    Place of Meetings

    Annual Meeting

    Special Meeting

    Notice of Stockholders' Meetings

    Quorum

    Adjourned Meeting; Notice

    Conduct of Business

    Voting

    Stockholder Action by Written Consent Without a Meeting

    Record Dates

    Proxies

    List of Stockholders Entitled to Vote

  DIRECTORS

    Powers

    Number of Directors

    Election, Qualification and Term of Office of Directors

    Resignation and Vacancies

    Place of Meetings; Meetings by Telephone

    Conduct of Business

    Regular Meetings

    Special Meetings

PLAINTIFF0002379

any such designation or determination,

stockholders' meetings shall be held at the Company's principal executive office.

## Annual Meeting

An annual meeting of stockholders shall be held for the election of directors at such date and time as may be designated by resolution of the Board from time to time. Any other proper business may be transacted at the annual meeting. The Company shall not be required to hold an annual meeting of stockholders, *provided* that (i) the stockholders are permitted to act by written consent under the Company's certificate of incorporation and these bylaws, (ii) the stockholders take action by written consent to elect directors and (iii) the stockholders unanimously consent to such action or, if such consent is less than unanimous, all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

## Special Meeting

.  A special meeting of the stockholders may be called at any time by the Board, Chairperson of the Board, Chief Executive Officer or President (in the absence of a Chief Executive Officer) or by one or more stockholders holding shares in the aggregate entitled to cast not less than 10% of the votes at that meeting.

If any person(s) other than the Board calls a special meeting, the request shall:

- be in writing;
- specify the time of such meeting and the general nature of the business proposed to be transacted; and
- be delivered personally or sent by registered mail or by facsimile transmission to the Chairperson of the Board, the Chief Executive

Special Meetings; Notice

Quorum; Voting

Board Action by Written Consent Without a Meeting

Fees and Compensation of Directors

Removal of Directors

COMMITTEES

Committees of Directors

Committee Minutes

Meetings and Actions of Committees

Subcommittees

OFFICERS

Officers

Appointment of Officers

Subordinate Officers

Removal and Resignation of Officers

Vacancies in Offices

Representation of Shares of Other Corporations

Authority and Duties of Officers

INDEMNIFICATION

Indemnification of Directors and Officers in Third Party Proceedings

Indemnification of Directors and Officers in Actions by or in the Right of the Company

Successful Defense

Indemnification of Others

Advanced Payment of Expenses

Limitation on Indemnification

PLAINTIFF0002380

Officer, the President (in the
absence of a Chief Executive

Officer) or the Secretary of the
Company.

The officer(s) receiving the request shall cause
notice to be promptly given to the stockholders
entitled to vote at such meeting, in accordance
with these bylaws, that a meeting will be held at
the time requested by the person or persons
calling the meeting. No business may be
transacted at such special meeting other than the
business specified in such notice to
stockholders. Nothing contained in this paragraph
of this **section 1.3** shall be construed as
limiting, fixing, or affecting the time when a
meeting of stockholders called by action of the
Board may be held.

## Notice of Stockholders' Meetings

Whenever stockholders are required or permitted
to take any action at a meeting, a written notice
of the meeting shall be given which shall state
the place, if any, date and hour of the meeting,
the means of remote communications, if any, by
which stockholders and proxy holders may be
deemed to be present in person and vote at such
meeting, the record date for determining the
stockholders entitled to vote at the meeting, if
such date is different from the record date for
determining stockholders entitled to notice of
the meeting, and, in the case of a special
meeting, the purpose or purposes for which the
meeting is called. Except as otherwise provided
in the DGCL, the certificate of incorporation or
these bylaws, the written notice of any meeting
of stockholders shall be given not less than 10
nor more than 60 days before the date of the
meeting to each stockholder entitled to vote at
such meeting as of the record date for
determining the stockholders entitled to notice
of the meeting.

## Quorum

Except as otherwise provided by law, the
certificate of incorporation or these bylaws, at

Determination; Claim

Non-Exclusivity of Rights

Insurance

Survival

Effect of Repeal or
Modification

Certain Definitions

STOCK

Stock Certificates; Partly
Paid Shares

Special Designation on
Certificates

Lost Certificates

Dividends

Stock Transfer Agreements

Registered Stockholders

Transfers

MANNER OF GIVING NOTICE AND
WAIVER

Notice of Stockholder
Meetings

Notice by Electronic
Transmission

Notice to Stockholders
Sharing an Address

Notice to Person with Whom
Communication is  nlawful

Waiver of Notice

GENERAL MATTERS

Fiscal Year

Seal

Annual Report

Construction; Definitions

AMENDMENTS



PLAINTIFF0002381



each meeting of stockholders the presence in
person or by proxy of the holders of shares of
stock having a majority of the votes which could
be cast by the holders of all outstanding shares
of stock entitled to vote at the meeting shall be
necessary and sufficient to constitute a quorum.
Where a separate vote by a class or series or
classes or series is required, a majority of the
outstanding shares of such class or series or
classes or series, present in person or
represented by proxy, shall constitute a quorum
entitled to take action with respect to that vote
on that matter, except as otherwise provided by
law, the certificate of incorporation or these
bylaws.

If, however, such quorum is not present or
represented at any meeting of the stockholders,
then either (i) the chairperson of the meeting,
or (ii) the stockholders entitled to vote at the
meeting, present in person or represented by
proxy, shall have the power to adjourn the
meeting from time to time, in the manner provided
in **section 1.6**, until a quorum is present or
represented.

## Adjourned Meeting; Notice

Any meeting of stockholders, annual or special,
may adjourn from time to time to reconvene at the
same or some other place, and notice need not be
given of the adjourned meeting if the time,
place, if any, thereof, and the means of remote
communications, if any, by which stockholders and
proxy holders may be deemed to be present in
person and vote at such adjourned meeting are
announced at the meeting at which the adjournment
is taken. At the adjourned meeting, the Company
may transact any business which might have been
transacted at the original meeting. If the
adjournment is for more than 30 days, a notice of
the adjourned meeting shall be given to each
stockholder of record entitled to vote at the
meeting. If after the adjournment a new record
date for stockholders entitled to vote is fixed
for the adjourned meeting, the Board shall fix a
new record date for notice of such adjourned
meeting in accordance with Section 213(a) of the
DGCL and **section 1.10** of these bylaws, and shall

PLAINTIFF0002382

give notice of the adjourned meeting to each
stockholder of record entitled to vote at such

adjourned meeting as of the record date fixed for
notice of such adjourned meeting.

## Conduct of Business

Meetings of stockholders shall be presided over
by the Chairperson of the Board, if any, or in
his or her absence by the Vice Chairperson of the
Board, if any, or in the absence of the foregoing
persons by the Chief Executive Officer, or in the
absence of the foregoing persons by the
President, or in the absence of the foregoing
persons by a Vice President, or in the absence of
the foregoing persons by a chairperson designated
by the Board, or in the absence of such
designation by a chairperson chosen at the
meeting. The Secretary shall act as secretary of
the meeting, but in his or her absence the
chairperson of the meeting may appoint any person
to act as secretary of the meeting. The
chairperson of any meeting of stockholders shall
determine the order of business and the procedure
at the meeting, including such regulation of the
manner of voting and the conduct of business.

## Voting

The stockholders entitled to vote at any meeting
of stockholders shall be determined in accordance
with the provisions of **section 1.10** of these
bylaws, subject to Section 217 (relating to
voting rights of fiduciaries, pledgors and joint
owners of stock) and Section 218 (relating to
voting trusts and other voting agreements) of the
DGCL.

Except as may be otherwise provided in the
certificate of incorporation, each stockholder
entitled to vote at any meeting of stockholders
shall be entitled to one vote for each share of
capital stock held by such stockholder which has
voting power upon the matter in question. Voting
at meetings of stockholders need not be by
written ballot and, unless otherwise required by
law, need not be conducted by inspectors of
election unless so determined by the holders of

PLAINTIFF0002383



shares of stock having a majority of the votes which could be cast by the holders of all outstanding shares of stock entitled to vote thereon which are present in person or by proxy at such meeting. If authorized by the Board, such requirement of a written ballot shall be satisfied by a ballot submitted by electronic transmission (as defined in **section 7.2** of these bylaws), *provided* that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder or proxy holder.

Except as otherwise required by law, the certificate of incorporation or these bylaws, in all matters other than the election of directors, the affirmative vote of a majority of the voting power of the shares present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders. Except as otherwise required by law, the certificate of incorporation or these bylaws, directors shall be elected by a plurality of the voting power of the shares present in person or represented by proxy at the meeting and entitled to vote on the election of directors. Where a separate vote by a class or series or classes or series is required, in all matters other than the election of directors, the affirmative vote of the majority of shares of such class or series or classes or series present in person or represented by proxy at the meeting shall be the act of such class or series or classes or series, except as otherwise provided by law, the certificate of incorporation or these bylaws.

## Stockholder Action by Written Consent Without a Meeting

Unless otherwise provided in the certificate of incorporation, any action required by the DGCL to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in

PLAINTIFF0002384



writing, setting forth the action so taken, shall
be signed by the holders of outstanding stock
having not less than the minimum number of votes
that would be necessary to authorize or take such
action at a meeting at which all shares entitled
to vote thereon were present and voted.

An electronic transmission (as defined in
**section 7.2**) consenting to an action to be taken
and transmitted by a stockholder or proxy holder,
or by a person or persons authorized to act for a
stockholder or proxy holder, shall be deemed to
be written, signed and dated for purposes of this
section, *provided* that any such electronic
transmission sets forth or is delivered with
information from which the Company can determine
(i) that the electronic transmission was
transmitted by the stockholder or proxy holder or
by a person or persons authorized to act for the
stockholder or proxy holder and (ii) the date on
which such stockholder or proxy holder or
authorized person or persons transmitted such
electronic transmission.

In the event that the Board shall have instructed
the officers of the Company to solicit the vote
or written consent of the stockholders of the
Company, an electronic transmission of a
stockholder written consent given pursuant to
such solicitation may be delivered to the
Secretary or the President of the Company or to a
person designated by the Secretary or the
President. The Secretary or the President of the
Company or a designee of the Secretary or the
President shall cause any such written consent by
electronic transmission to be reproduced in paper
form and inserted into the corporate records.

Prompt notice of the taking of the corporate
action without a meeting by less than unanimous
written consent shall be given to those
stockholders who have not consented in writing
and who, if the action had been taken at a
meeting, would have been entitled to notice of
the meeting if the record date for notice of such
meeting had been the date that written consents
signed by a sufficient number of holders to take
the action were delivered to the Company as
provided in Section 228 of the DGCL. In the event
that the action which is consented to is such as

PLAINTIFF0002385



that the action which is consented to is such as
would have required the filing of a certificate
under any provision of the DGCL, if such action

had been voted on by stockholders at a meeting
thereof, the certificate filed under such
provision shall state, in lieu of any statement
required by such provision concerning any vote of
stockholders, that written consent has been given
in accordance with Section 228 of the DGCL.

## Record Dates

In order that the Company may determine the
stockholders entitled to notice of any meeting of
stockholders or any adjournment thereof, the
Board may fix a record date, which record date
shall not precede the date upon which the
resolution fixing the record date is adopted by
the Board and which record date shall not be more
than 60 nor less than 10 days before the date of
such meeting. If the Board so fixes a date, such
date shall also be the record date for
determining the stockholders entitled to vote at
such meeting unless the Board determines, at the
time it fixes such record date, that a later date
on or before the date of the meeting shall be the
date for making such determination.

If no record date is fixed by the Board, the
record date for determining stockholders entitled
to notice of and to vote at a meeting of
stockholders shall be at the close of business on
the day next preceding the day on which notice is
given, or, if notice is waived, at the close of
business on the day next preceding the day on
which the meeting is held.

A determination of stockholders of record
entitled to notice of or to vote at a meeting of
stockholders shall apply to any adjournment of
the meeting; *provided, however,* that the Board
may fix a new record date for determination of
stockholders entitled to vote at the adjourned
meeting, and in such case shall also fix as the
record date for stockholders entitled to notice
of such adjourned meeting the same or an earlier
date as that fixed for determination of
stockholders entitled to vote in accordance with
the provisions of Section 213 of the DGCL and

PLAINTIFF0002386

this Section 1.10 at the adjourned meeting.



In order that the Company may determine the
stockholders entitled to consent to corporate
action in writing without a meeting, the Board
may fix a record date, which record date shall
not precede the date upon which the resolution
fixing the record date is adopted by the Board,
and which date shall not be more than 10 days
after the date upon which the resolution fixing
the record date is adopted by the Board. If no
record date has been fixed by the Board, the
record date for determining stockholders entitled
to consent to corporate action in writing without
a meeting, when no prior action by the Board is
required by law, shall be the first date on which
a signed written consent setting forth the action
taken or proposed to be taken is delivered to the
Company in accordance with applicable law. If no
record date has been fixed by the Board and prior
action by the Board is required by law, the
record date for determining stockholders entitled
to consent to corporate action in writing without
a meeting shall be at the close of business on
the day on which the Board adopts the resolution
taking such prior action.

In order that the Company may determine the
stockholders entitled to receive payment of any
dividend or other distribution or allotment of
any rights or the stockholders entitled to
exercise any rights in respect of any change,
conversion or exchange of stock, or for the
purpose of any other lawful action, the Board may
fix a record date, which record date shall not
precede the date upon which the resolution fixing
the record date is adopted, and which record date
shall be not more than 60 days prior to such
action. If no record date is fixed, the record
date for determining stockholders for any such
purpose shall be at the close of business on the
day on which the Board adopts the resolution
relating thereto.

## Proxies

Each stockholder entitled to vote at a meeting of
stockholders or to express consent or dissent to

PLAINTIFF0002387



corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy authorized by an instrument in writing or by a transmission permitted by law filed in accordance with the procedure established for the meeting, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212 of the DGCL.

## List of Stockholders Entitled to Vote

The officer who has charge of the stock ledger of the Company shall prepare and make, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting; *provided, however,* if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. The Company shall not be required to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder for any purpose germane to the meeting for a period of at least ten days prior to the meeting: (i) on a reasonably accessible electronic network, *provided* that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the Company's principal place of business. In the event that the Company determines to make the list available on an electronic network, the Company may take reasonable steps to ensure that such information is available only to stockholders of the Company. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present. If the meeting is to be held

PLAINTIFF0002388

solely by means of remote communication, then the list shall also be open to the examination of any

stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting.



# DIRECTORS

## Powers

The business and affairs of the Company shall be managed by or under the direction of the Board, except as may be otherwise provided in the DGCL or the certificate of incorporation.

## Number of Directors

The Board shall consist of one or more members, each of whom shall be a natural person. Unless the certificate of incorporation fixes the number of directors, the number of directors shall be determined from time to time by resolution of the Board. No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires.

## Election, Qualification and Term of Office of Directors

Except as provided in **section 2.4** of these bylaws, and subject to **sections 1.2** and **1.9** of these bylaws, directors shall be elected at each annual meeting of stockholders. Directors need not be stockholders unless so required by the certificate of incorporation or these bylaws. The certificate of incorporation or these bylaws may prescribe other qualifications for directors. Each director shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.

## Resignation and Vacancies

Any director may resign at any time upon notice

PLAINTIFF0002389



given in writing or by electronic transmission to
the Company. A resignation is effective when the
resignation is delivered unless the resignation
specifies a later effective date or an effective
date determined upon the happening of an event or
events. A resignation which is conditioned upon
the director failing to receive a specified vote
for reelection as a director may provide that it
is irrevocable. Unless otherwise provided in the
certificate of incorporation or these bylaws,
when one or more directors resign from the Board,
effective at a future date, a majority of the
directors then in office, including those who
have so resigned, shall have power to fill such
vacancy or vacancies, the vote thereon to take
effect when such resignation or resignations
shall become effective.

Unless otherwise provided in the certificate of
incorporation or these bylaws:

- Vacancies and newly created
  directorships resulting from any
  increase in the authorized number
  of directors elected by all of the
  stockholders having the right to
  vote as a single class may be
  filled by a majority of the
  directors then in office, although
  less than a quorum, or by a sole
  remaining director.
- Whenever the holders of any class
  or classes of stock or series
  thereof are entitled to elect one
  or more directors by the
  provisions of the certificate of
  incorporation, vacancies and newly
  created directorships of such
  class or classes or series may be
  filled by a majority of the
  directors elected by such class or
  classes or series thereof then in
  office, or by a sole remaining
  director so elected.

If at any time, by reason of death or resignation
or other cause, the Company should have no
directors in office, then any officer or any
stockholder or an executor, administrator,
trustee or guardian of a stockholder, or other

PLAINTIFF0002390

trustee or guardian of a stockholder, or other
fiduciary entrusted with like responsibility for
the person or estate of a stockholder, may call a

special meeting of stockholders in accordance
with the provisions of the certificate of
incorporation or these bylaws, or may apply to
the Court of Chancery for a decree summarily
ordering an election as provided in Section 211
of the DGCL.

If, at the time of filling any vacancy or any
newly created directorship, the directors then in
office constitute less than a majority of the
whole Board (as constituted immediately prior to
any such increase), the Court of Chancery may,
upon application of any stockholder or
stockholders holding at least 10% of the voting
stock at the time outstanding having the right to
vote for such directors, summarily order an
election to be held to fill any such vacancies or
newly created directorships, or to replace the
directors chosen by the directors then in office
as aforesaid, which election shall be governed by
the provisions of Section 211 of the DGCL as far
as applicable.

A director elected to fill a vacancy shall be
elected for the unexpired term of his or her
predecessor in office and until such director's
successor is elected and qualified, or until such
director's earlier death, resignation or removal.

## Place of Meetings; Meetings by Telephone

The Board may hold meetings, both regular and
special, either within or outside the State of
Delaware.

Unless otherwise restricted by the certificate of
incorporation or these bylaws, members of the
Board, or any committee designated by the Board,
may participate in a meeting of the Board, or any
committee, by means of conference telephone or
other communications equipment by means of which
all persons participating in the meeting can hear
each other, and such participation in a meeting
shall constitute presence in person at the
meeting.

Conduct of Business

PLAINTIFF0002391



Conduct of Business



Meetings of the Board shall be presided over by
the Chairperson of the Board, if any, or in his
or her absence by the Vice Chairperson of the
Board, if any, or in the absence of the foregoing
persons by a chairperson designated by the Board,
or in the absence of such designation by a
chairperson chosen at the meeting. The Secretary
shall act as secretary of the meeting, but in his
or her absence the chairperson of the meeting may
appoint any person to act as secretary of the
meeting.

## Regular Meetings

Regular meetings of the Board may be held without
notice at such time and at such place as shall
from time to time be determined by the Board.

## Special Meetings; Notice

Special meetings of the Board for any purpose or
purposes may be called at any time by the
Chairperson of the Board, the Chief Executive
Officer, the President, the Secretary or any two
directors.

Notice of the time and place of special meetings
shall be:

- delivered personally by hand, by
  courier or by telephone;
- sent by United States first-class
  mail, postage prepaid;
- sent by facsimile; or
- sent by electronic mail,

directed to each director at that director's
address, telephone number, facsimile number or
electronic mail address, as the case may be, as
shown on the Company's records.

If the notice is (i) delivered personally by
hand, by courier or by telephone, (ii) sent by
facsimile or (iii) sent by electronic mail, it
shall be delivered or sent at least 24 hours
before the time of the holding of the meeting. If
the notice is sent by United States mail, it

PLAINTIFF0002392

the notice is sent by United States mail,
shall be deposited in the United States mail at
least four days before the time of the holding of

the meeting. Any oral notice may be communicated
to the director. The notice need not specify the
place of the meeting (if the meeting is to be
held at the Company's principal executive office)
nor the purpose of the meeting.

## Quorum; Voting

At all meetings of the Board, a majority of the
total authorized number of directors shall
constitute a quorum for the transaction of
business. If a quorum is not present at any
meeting of the Board, then the directors present
thereat may adjourn the meeting from time to
time, without notice other than announcement at
the meeting, until a quorum is present. A meeting
at which a quorum is initially present may
continue to transact business notwithstanding the
withdrawal of directors, if any action taken is
approved by at least a majority of the required
quorum for that meeting.

The vote of a majority of the directors present
at any meeting at which a quorum is present shall
be the act of the Board, except as may be
otherwise specifically provided by statute, the
certificate of incorporation or these bylaws.

If the certificate of incorporation provides that
one or more directors shall have more or less
than one vote per director on any matter, every
reference in these bylaws to a majority or other
proportion of the directors shall refer to a
majority or other proportion of the votes of the
directors.

## Board Action by Written Consent Without a Meeting

Unless otherwise restricted by the certificate of
incorporation or these bylaws, any action
required or permitted to be taken at any meeting
of the Board, or of any committee thereof, may be
taken without a meeting if all members of the
Board or committee, as the case may be, consent
thereto in writing or by electronic transmission



PLAINTIFF0002393

and the writing or writings or electronic
transmission or transmissions are filed with the
minutes of proceedings of the Board or committee.

Such filing shall be in paper form if the minutes
are maintained in paper form and shall be in
electronic form if the minutes are maintained in
electronic form.



### Fees and Compensation of Directors

Unless otherwise restricted by the certificate of
incorporation or these bylaws, the Board shall
have the authority to fix the compensation of
directors.

### Removal of Directors

Unless otherwise restricted by statute, the
certificate of incorporation or these bylaws, any
director or the entire Board may be removed, with
or without cause, by the holders of a majority of
the shares then entitled to vote at an election
of directors.

No reduction of the authorized number of
directors shall have the effect of removing any
director prior to the expiration of such
director's term of office.

# COMMITTEES

### Committees of Directors

The Board may designate one or more committees,
each committee to consist of one or more of the
directors of the Company. The Board may designate
one or more directors as alternate members of any
committee, who may replace any absent or
disqualified member at any meeting of the
committee. In the absence or disqualification of
a member of a committee, the member or members
thereof present at any meeting and not
disqualified from voting, whether or not such
member or members constitute a quorum, may
unanimously appoint another member of the Board
to act at the meeting in the place of any such
absent or disqualified member. Any such
committee, to the extent provided in the
resolution of the Board or in these bylaws, shall

PLAINTIFF0002394



resolution of the Board or in these bylaws shall have and may exercise all the powers and authority of the Board in the management of the

business and affairs of the Company, and may authorize the seal of the Company to be affixed to all papers that may require it; but no such committee shall have the power or authority to (i) approve or adopt, or recommend to the stockholders, any action or matter (other than the election or removal of directors) expressly required by the DGCL to be submitted to stockholders for approval, or (ii) adopt, amend or repeal any bylaw of the Company.

## Committee Minutes

Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

## Meetings and Actions of Committees

Meetings and actions of committees shall be governed by, and held and taken in accordance with, the provisions of:

- **section 2.5** (Place of Meetings; Meetings by Telephone);
- **section 2.7** (Regular Meetings);
- **section 2.8** (Special Meetings; Notice);
- **section 2.9** (Quorum; Voting);
- **section 2.10** (Board Action by Written Consent Without a Meeting); and
- **section 7.5** (Waiver of Notice)

with such changes in the context of those bylaws as are necessary to substitute the committee and its members for the Board and its members. *However*:

- **the time of regular meetings of committees may be determined either by resolution of the Board or by resolution of the committee;**
- **special meetings of committees may also be called by resolution of the Board; and**

PLAINTIFF0002395



- notice of special meetings of committees shall also be given to all alternate members, who shall

  have the right to attend all meetings of the committee. The Board may adopt rules for the government of any committee not inconsistent with the provisions of these bylaws.

Any provision in the certificate of incorporation providing that one or more directors shall have more or less than one vote per director on any matter shall apply to voting in any committee or subcommittee, unless otherwise provided in the certificate of incorporation or these bylaws.

### Subcommittees

Unless otherwise provided in the certificate of incorporation, these bylaws or the resolutions of the Board designating the committee, a committee may create one or more subcommittees, each subcommittee to consist of one or more members of the committee, and delegate to a subcommittee any or all of the powers and authority of the committee.

# OFFICERS

### Officers

The officers of the Company shall be a President and a Secretary. The Company may also have, at the discretion of the Board, a Chairperson of the Board, a Vice Chairperson of the Board, a Chief Executive Officer, one or more Vice Presidents, a Chief Financial Officer, a Treasurer, one or more Assistant Treasurers, one or more Assistant Secretaries, and any such other officers as may be appointed in accordance with the provisions of these bylaws. Any number of offices may be held by the same person.

### Appointment of Officers

The Board shall appoint the officers of the Company, except such officers as may be appointed in accordance with the provisions of section 4.3

PLAINTIFF0002396

in accordance with the provisions of **section 4.3**
of these bylaws.

## Subordinate Officers



The Board may appoint, or empower the Chief
Executive Officer or, in the absence of a Chief
Executive Officer, the President, to appoint,
such other officers and agents as the business of
the Company may require. Each of such officers
and agents shall hold office for such period,
have such authority, and perform such duties as
are provided in these bylaws or as the Board may
from time to time determine.

## Removal and Resignation of Officers

Any officer may be removed, either with or
without cause, by an affirmative vote of the
majority of the Board at any regular or special
meeting of the Board or, except in the case of an
officer chosen by the Board, by any officer upon
whom such power of removal may be conferred by
the Board.

Any officer may resign at any time by giving
written notice to the Company. Any resignation
shall take effect at the date of the receipt of
that notice or at any later time specified in
that notice. Unless otherwise specified in the
notice of resignation, the acceptance of the
resignation shall not be necessary to make it
effective. Any resignation is without prejudice
to the rights, if any, of the Company under any
contract to which the officer is a party.

## Vacancies in Offices

Any vacancy occurring in any office of the
Company shall be filled by the Board or as
provided in **section 4.3.**

## Representation of Shares of Other Corporations

Unless otherwise directed by the Board, the
President or any other person authorized by the
Board or the President is authorized to vote,
represent and exercise on behalf of the Company

PLAINTIFF0002397

represent and exercise on behalf of the Company
all rights incident to any and all shares of any
other corporation or corporations standing in the

name of the Company. The authority granted herein
may be exercised either by such person directly
or by any other person authorized to do so by
proxy or power of attorney duly executed by such
person having the authority.



## Authority and Duties of Officers

Except as otherwise provided in these bylaws, the
officers of the Company shall have such powers
and duties in the management of the Company as
may be designated from time to time by the Board
and, to the extent not so provided, as generally
pertain to their respective offices, subject to
the control of the Board.

# INDEMNIFICATION

## Indemnification of Directors and Officers in Third Party Proceedings

Subject to the other provisions of this
**Article V,** the Company shall indemnify, to the
fullest extent permitted by the DGCL, as now or
hereinafter in effect, any person who was or is a
party or is threatened to be made a party to any
threatened, pending or completed action, suit or
proceeding, whether civil, criminal,
administrative or investigative (a "**Proceeding**")
(other than an action by or in the right of the
Company) by reason of the fact that such person
is or was a director or officer of the Company,
or is or was a director or officer of the Company
serving at the request of the Company as a
director, officer, employee or agent of another
corporation, partnership, joint venture, trust or
other enterprise, against expenses (including
attorneys' fees) judgments, fines and amounts
paid in settlement actually and reasonably
incurred by such person in connection with such
Proceeding if such person acted in good faith and
in a manner such person reasonably believed to be
in or not opposed to the best interests of the
Company, and, with respect to any criminal action
or proceeding, had no reasonable cause to believe

PLAINTIFF0002398

such person's conduct was unlawful. The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which such person reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that such person's conduct was unlawful.



## Indemnification of Directors and Officers in Actions by or in the Right of the Company

Subject to the other provisions of this **Article V**, the Company shall indemnify, to the fullest extent permitted by the DGCL, as now or hereinafter in effect, any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Company to procure a judgment in its favor by reason of the fact that such person is or was a director or officer of the Company, or is or was a director or officer of the Company serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection with the defense or settlement of such action or suit if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Company; except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Company unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

**PLAINTIFF0002399**

## Successful Defense

To the extent that a present or former director or officer of the Company has been successful on the merits or otherwise in defense of any action, suit or proceeding described in **section 5.1** or **section 5.2,** or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.



## Indemnification of Others

Subject to the other provisions of this **Article V,** the Company shall have power to indemnify its employees and agents to the extent not prohibited by the DGCL or other applicable law. The Board shall have the power to delegate to such person or persons the determination of whether employees or agents shall be indemnified.

## Advanced Payment of Expenses

Expenses (including attorneys' fees) incurred by an officer or director of the Company in defending any Proceeding shall be paid by the Company in advance of the final disposition of such Proceeding upon receipt of a written request therefor (together with documentation reasonably evidencing such expenses) and an undertaking by or on behalf of the person to repay such amounts if it shall ultimately be determined that the person is not entitled to be indemnified under this **Article V** or the DGCL. Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents of the Company or by persons serving at the request of the Company as directors, officers, employees or agents of another corporation, partnership, joint venture, trust or other enterprise may be so paid upon such terms and conditions, if any, as the Company deems appropriate. The right to advancement of expenses shall not apply to any Proceeding for which indemnity is excluded pursuant to these bylaws, but shall apply to any Proceeding referenced in **section 5.6(ii)** or **5.6(iii)** prior to a

PLAINTIFF0002400

determination that the person is not entitled to
be indemnified by the Company.

## Limitation on Indemnification



Subject to the requirements in **section 5.3** and
the DGCL, the Company shall not be obligated to
indemnify any person pursuant to this **Article V**
in connection with any Proceeding (or any part of
any Proceeding):

- for which payment has actually
  been made to or on behalf of such
  person under any statute,
  insurance policy, indemnity
  provision, vote or otherwise,
  except with respect to any excess
  beyond the amount paid;
- for an accounting or disgorgement
  of profits pursuant to
  Section 16(b) of the Securities
  Exchange Act of 1934, as amended,
  or similar provisions of federal,
  state or local statutory law or
  common law, if such person is held
  liable therefor (including
  pursuant to any settlement
  arrangements);
- for any reimbursement of the
  Company by such person of any
  bonus or other incentive based or
  equity based compensation or of
  any profits realized by such
  person from the sale of securities
  of the Company, as required in
  each case under the Securities
  Exchange Act of 1934, as amended
  (including any such reimbursements
  that arise from an accounting
  restatement of the Company
  pursuant to Section 304 of the
  Sarbanes Oxley Act of 2002 (the
  **"Sarbanes-Oxley Act"**), or the
  payment to the Company of profits
  arising from the purchase and sale
  by such person of securities in
  violation of Section 306 of the
  Sarbanes Oxley Act), if such
  person is held liable therefor

PLAINTIFF0002401

(including pursuant to any settlement arrangements);

- initiated by such person, including any Proceeding (or any part of any Proceeding) initiated by such person against the Company or its directors, officers, employees, agents or other indemnitees, unless (a) the Board authorized the Proceeding (or the relevant part of the Proceeding) prior to its initiation, (b) the Company provides the indemnification, in its sole discretion, pursuant to the powers vested in the Company under applicable law, (c) otherwise required to be made under **section 5.7** or (d) otherwise required by applicable law; or
- if prohibited by applicable law.



## Determination; Claim

If a claim for indemnification or advancement of expenses under this **Article V** is not paid by the Company or on its behalf within 90 days after receipt by the Company of a written request therefor, the claimant shall be entitled to an adjudication by a court of competent jurisdiction of his or her entitlement to such indemnification or advancement of expenses. To the extent not prohibited by law, the Company shall indemnify such person against all expenses actually and reasonably incurred by such person in connection with any action for indemnification or advancement of expenses from the Company under this **Article V**, to the extent such person is successful in such action. In any such suit, the Company shall, to the fullest extent not prohibited by law, have the burden of proving that the claimant is not entitled to the requested indemnification or advancement of expenses.

## Non-Exclusivity of Rights

The indemnification and advancement of expenses

PLAINTIFF0002402



provided by, or granted pursuant to, this **Article V** shall not be deemed exclusive of any

other rights to which those seeking indemnification or advancement of expenses may be entitled under the certificate of incorporation or any statute, bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office. The Company is specifically authorized to enter into individual contracts with any or all of its directors, officers, employees or agents respecting indemnification and advancement of expenses, to the fullest extent not prohibited by the DGCL or other applicable law.

## Insurance

The Company may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such liability under the provisions of the DGCL.

## Survival

The rights to indemnification and advancement of expenses conferred by this **Article V** shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

## Effect of Repeal or Modification

A right to indemnification or to advancement of expenses arising under a provision of the certificate of incorporation or a bylaw shall not be eliminated or impaired by an amendment to the

PLAINTIFF0002403



certificate of incorporation or these bylaws
after the occurrence of the act or omission that

is the subject of the civil, criminal,
administrative or investigative action, suit or
proceeding for which indemnification or
advancement of expenses is sought, unless the
provision in effect at the time of such act or
omission explicitly authorizes such elimination
or impairment after such action or omission has
occurred.

## Certain Definitions

For purposes of this **Article V**, references to the
"**Company**" shall include, in addition to the
resulting corporation, any constituent
corporation (including any constituent of a
constituent) absorbed in a consolidation or
merger which, if its separate existence had
continued, would have had power and authority to
indemnify its directors, officers, employees or
agents, so that any person who is or was a
director, officer, employee or agent of such
constituent corporation, or is or was serving at
the request of such constituent corporation as a
director, officer, employee or agent of another
corporation, partnership, joint venture, trust or
other enterprise, shall stand in the same
position under the provisions of this **Article V**
with respect to the resulting or surviving
corporation as such person would have with
respect to such constituent corporation if its
separate existence had continued. For purposes of
this **Article V**, references to "**other enterprises**"
shall include employee benefit plans; references
to "**fines**" shall include any excise taxes
assessed on a person with respect to an employee
benefit plan; and references to "**serving at the
request of the Company**" shall include any service
as a director, officer, employee or agent of the
Company which imposes duties on, or involves
services by, such director, officer, employee or
agent with respect to an employee benefit plan,
its participants or beneficiaries; and a person
who acted in good faith and in a manner such
person reasonably believed to be in the interest
of the participants and beneficiaries of an
employee benefit plan shall be deemed to have

PLAINTIFF0002404

acted in a manner "**not opposed to the best**

**interests of the Company**" as referred to in this **Article V**.



# STOCK

## Stock Certificates; Partly Paid Shares

The shares of the Company shall be represented by certificates, *provided* that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Company. Every holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of the Company by the Chairperson of the Board or Vice-Chairperson of the Board, or the President or a Vice-President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary of the Company representing the number of shares registered in certificate form. Any or all of the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate has ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Company with the same effect as if such person were such officer, transfer agent or registrar at the date of issue. The Company shall not have power to issue a certificate in bearer form.

The Company may issue the whole or any part of its shares as partly paid and subject to call for the remainder of the consideration to be paid therefor. Upon the face or back of each stock certificate issued to represent any such partly paid shares, or upon the books and records of the Company in the case of uncertificated partly paid shares, the total amount of the consideration to be paid therefor and the amount paid thereon shall be stated. Upon the declaration of any dividend on fully paid shares, the Company shall

PLAINTIFF0002405

dividend on fully paid shares, the Company shall
declare a dividend upon partly paid shares of the
same class, but only upon the basis of the

percentage of the consideration actually paid
thereon.

## Special Designation on Certificates



If the Company is authorized to issue more than
one class of stock or more than one series of any
class, then the powers, the designations, the
preferences, and the relative, participating,
optional or other special rights of each class of
stock or series thereof and the qualifications,
limitations or restrictions of such preferences
and/or rights shall be set forth in full or
summarized on the face or back of the certificate
that the Company shall issue to represent such
class or series of stock; *provided* that, except
as otherwise provided in Section 202 of the DGCL,
in lieu of the foregoing requirements there may
be set forth on the face or back of the
certificate that the Company shall issue to
represent such class or series of stock, a
statement that the Company will furnish without
charge to each stockholder who so requests the
powers, designations, preferences and relative,
participating, optional or other special rights
of each class of stock or series thereof and the
qualifications, limitations or restrictions of
such preferences and/or rights. Within a
reasonable time after the issuance or transfer of
uncertificated stock, the Company shall send to
the registered owner thereof a written notice
containing the information required to be set
forth or stated on certificates pursuant to this
section 6.2 or Sections 156, 202(a) or 218(a) of
the DGCL or with respect to this section 6.2 a
statement that the Company will furnish without
charge to each stockholder who so requests the
powers, designations, preferences and relative,
participating, optional or other special rights
of each class of stock or series thereof and the
qualifications, limitations or restrictions of
such preferences and/or rights. Except as
otherwise expressly provided by law, the rights
and obligations of the holders of uncertificated
stock and the rights and obligations of the
holders of certificates representing stock of the

PLAINTIFF0002406

same class and series shall be identical.

## Lost Certificates



Except as provided in this **section 6.3,** no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the Company and cancelled at the same time. The Company may issue a new certificate of stock or uncertificated shares in the place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Company may require the owner of the lost, stolen or destroyed certificate, or such owner's legal representative, to give the Company a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate or uncertificated shares.

## Dividends

The Board, subject to any restrictions contained in the certificate of incorporation or applicable law, may declare and pay dividends upon the shares of the Company's capital stock. Dividends may be paid in cash, in property, or in shares of the Company's capital stock, subject to the provisions of the certificate of incorporation.

The Board may set apart out of any of the funds of the Company available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.

## Stock Transfer Agreements

The Company shall have power to enter into and perform any agreement with any number of stockholders of any one or more classes of stock of the Company to restrict the transfer of shares of stock of the Company of any one or more classes owned by such stockholders in any manner not prohibited by the DGCL.

## Registered Stockholders

PLAINTIFF0002407

The Company:



- shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends and to vote as such owner;
- shall be entitled to hold liable for calls and assessments the person registered on its books as the owner of shares; and
- shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of another person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

## Transfers

Transfers of record of shares of stock of the Company shall be made only upon its books by the holders thereof, in person or by an attorney duly authorized, and, if such stock is certificated, upon the surrender of a certificate or certificates for a like number of shares, properly endorsed or accompanied by proper evidence of succession, assignation or authority to transfer.

# MANNER OF GIVING NOTICE AND WAIVER

## Notice of Stockholder Meetings

Notice of any meeting of stockholders, if mailed, is given when deposited in the United States mail, postage prepaid, directed to the stockholder at such stockholder's address as it appears on the Company's records. An affidavit of the Secretary or an Assistant Secretary of the Company or of the transfer agent or other agent of the Company that the notice has been given

PLAINTIFF0002408

shall, in the absence of fraud, be *prima facie* evidence of the facts stated therein.

## Notice by Electronic Transmission



Without limiting the manner by which notice otherwise may be given effectively to stockholders pursuant to the DGCL, the certificate of incorporation or these bylaws, any notice to stockholders given by the Company under any provision of the DGCL, the certificate of incorporation or these bylaws shall be effective if given by a form of electronic transmission consented to by the stockholder to whom the notice is given. Any such consent shall be revocable by the stockholder by written notice to the Company. Any such consent shall be deemed revoked if:

- the Company is unable to deliver by electronic transmission two consecutive notices given by the Company in accordance with such consent; and
- such inability becomes known to the Secretary or an Assistant Secretary of the Company or to the transfer agent, or other person responsible for the giving of notice.

However, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

Any notice given pursuant to the preceding paragraph shall be deemed given:

- if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice;
- if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice;
- if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later

PLAINTIFF0002409

specific posting, upon the later
of (A) such posting and (B) the

      giving of such separate notice;
      and
- if by any other form of electronic
  transmission, when directed to the
  stockholder.



An affidavit of the Secretary or an Assistant
Secretary or of the transfer agent or other agent
of the Company that the notice has been given by
a form of electronic transmission shall, in the
absence of fraud, be *prima facie* evidence of the
facts stated therein.

An "**electronic transmission**" means any form of
communication, not directly involving the
physical transmission of paper, that creates a
record that may be retained, retrieved, and
reviewed by a recipient thereof, and that may be
directly reproduced in paper form by such a
recipient through an automated process.

Notice by a form of electronic transmission shall
not apply to Sections 164, 296, 311, 312 or 324
of the DGCL.

## Notice to Stockholders Sharing an Address

Except as otherwise prohibited under the DGCL,
without limiting the manner by which notice
otherwise may be given effectively to
stockholders, any notice to stockholders given by
the Company under the provisions of the DGCL, the
certificate of incorporation or these bylaws
shall be effective if given by a single written
notice to stockholders who share an address if
consented to by the stockholders at that address
to whom such notice is given. Any such consent
shall be revocable by the stockholder by written
notice to the Company. Any stockholder who fails
to object in writing to the Company, within 60
days of having been given written notice by the
Company of its intention to send the single
notice, shall be deemed to have consented to
receiving such single written notice.

## Notice to Person with Whom Communication

PLAINTIFF0002410

is Unlawful



Whenever notice is required to be given, under the DGCL, the certificate of incorporation or these bylaws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting which shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. In the event that the action taken by the Company is such as to require the filing of a certificate under the DGCL, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

## Waiver of Notice

Whenever notice is required to be given under any provision of the DGCL, the certificate of incorporation or these bylaws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time of the event for which notice is to be given, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice or any waiver by electronic transmission unless so required by the certificate of incorporation or these bylaws.

# GENERAL MATTERS

PLAINTIFF0002411

## Fiscal Year

The fiscal year of the Company shall be fixed by resolution of the Board and may be changed by the Board.

## Seal

The Company may adopt a corporate seal, which shall be in such form as may be approved from time to time by the Board. The Company may use the corporate seal by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

## Annual Report

The Company shall cause an annual report to be sent to the stockholders of the Company to the extent required by applicable law. If and so long as there are fewer than 100 holders of record of the Company's shares, the requirement of sending an annual report to the stockholders of the Company is expressly waived (to the extent permitted under applicable law).

## Construction; Definitions

Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the DGCL shall govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

# AMENDMENTS

These bylaws may be adopted, amended or repealed by the stockholders entitled to vote. However, the Company may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors. The fact that such power has been so conferred upon the directors shall not divest the stockholders of the power, nor limit their power to adopt, amend

PLAINTIFF0002412

or repeal bylaws.

A bylaw amendment adopted by stockholders which specifies the votes that shall be necessary for the election of directors shall not be further amended or repealed by the Board.



| Previous | Next |
|---|---|
| Incorporator, Action | ByLaws, Adoption |

PLAINTIFF0002413



**LEGAL–TOOLS**   DAOLABS

**Connect Wallet**



# Variables

**Corporation's Name (ALL CAPS)**

ACME CORPORATION

**Date of Bylaws Adoption**

01/01/2023

**Date of Execution**

01/01/2023

**Secretary's Full Name**

Mr. John Doe

**Update document**

CERTIFICATE OF ADOPTION OF
BYLAWS OF [Entity-name]



# CERTIFICATE OF ADOPTION OF BYLAWS OF [Entity-name]

The undersigned certifies that he or she is the duly elected, qualified and acting Secretary of **[Entity-name]**, a Delaware corporation (the "***Company***"), and that the foregoing bylaws, comprising seventeen (17) pages, were adopted as the bylaws of the Company on **[Date-adoption]** by the sole incorporator of the Company.

The undersigned has executed this certificate as of **[Date]**

**PLAINTIFF0002414**

SECRETARY

Signature: _____

SECRETARY

Print Name: [Secretary name]

Role: Secretary

Previous
ByLaws

Next
Consent of Directors

PLAINTIFF0002415



**LEGAL-TOOLS**   DAOLABS                                    **Connect Wallet**



# Variables

Corporation's Name (ALL CAPS) (ALL CAPs)

ACME CORPORATION

Corporation's Counsel's Name

Looney & Looney LLP

Director's Full Name

M Jane Doe

Year of Equity Incentive Plan and Agreement

2023

Purchaser's Full Name

Mr. John Doe

Total Number of Shares

100

Total Share Purchase Price (USD)

100

Price Per Share (USD)

1

Address of the Principal Executive Office of the Company

123 Main Street, Apt. 45, Kalamazoo, Michigan 49001

Number of Shares Reserved for Issuance Under the Plan

100

Agreement Date

01/01/2023

**Update document**

[Entity-name] ACTION BY WRITTEN CONSENT OF THE MEMBERS OF THE BOARD OF DIRECTORS IN LIE OF FIRST MEETING

Ratification of Actions of Sole Incorporator

Minute Book

Size of Board and Chairman of Board

Appointment of Officers

Authority of Officers

Issuance of Common Stock

Indemnification Agreements

Employee Agreements

Management of Fiscal Affairs

Expenses of Incorporation and Organization

Withholding Taxes

Accounting Year

Principal Executive Office

Qualifications to do Business

Employer Tax Identification Number

Adoption of [Plan-year] Equity Incentive Plan and Agreement

Omnibus Resolutions

Exhibit A

Exhibit B

PLAINTIFF0002416

Exhibit C

Exhibit D

Exhibit E

    

# [Entity-name] ACTION BY WRITTEN CONSENT OF THE MEMBERS OF THE BOARD OF DIRECTORS IN LIEU OF FIRST MEETING

> ⓘ **Issuance of Common Stock** may need to be made generic across jurisdictions. See bracketed terms. More purchasers can be added to the table (2nd resolution).

Pursuant to Sections 108(c) and 141(f) of the Delaware General Corporation Law and the bylaws of **[Entity-name]**, a Delaware corporation (the "**Company**"), the undersigned, constituting the members of the board of directors of the Company (the "**Board**"), hereby adopt the following resolutions:

## Ratification of Actions of Sole Incorporator

**RESOLVED:** That every action that has been taken or authorized with respect to the Company by the sole incorporator (including, but not limited to, the initial incorporation of the Company, the election of directors and the adoption of the bylaws) is ratified.

## Minute Book

**RESOLVED:** That the Company will maintain as part of its corporate records a book entitled "minute book" or "corporate records", which will include certified copies of its certificate of incorporation and bylaws and any amendments thereto, minutes and notices of all meetings, and

PLAINTIFF0002417

actions by written consent, of the Board,
committees of the Board and stockholders, and any

other records which the Secretary of the Company
deems advisable to be maintained in such book.



## Size of Board and Chairman of Board

**RESOLVED:** That the Board will initially consist
of one (1) member.

**RESOLVED FURTHER:** That **[Director-name]** is
appointed to serve as the Chairman of the Board,
to serve until his respective successor is duly
elected and qualified.

## Appointment of Officers

**RESOLVED:** That the following persons are elected
as officers of the Company to the offices set
forth opposite their respective names, to serve
until their respective successors are duly
elected and qualified or until any such officer's
earlier resignation or removal:

| Position | Individual |
|---|---|
| Chief Executive Officer | **[Individual-1]** |
| Treasurer | **[Individual-2]** |
| Secretary | **[Individual-3]** |

## Authority of Officers

**RESOLVED:** That, in accordance with the powers of
the officers specified in the Company's bylaws,
the officers of the Company are authorized to
execute and deliver any agreement in the name of
the Company and to otherwise obligate the Company
with respect to the business of the Company,
within general guidelines and budgets approved by
the Board; *provided, however,* that the Board may
adopt from time to time specific limitations on
the authority of such officers.

## Issuance of Common Stock

**RESOLVED:** That the Board determines that the fair

PLAINTIFF0002418

**RESOLVED:** That the Board determines that the fair market value of the common stock is $**[Share-price]** per share.

**RESOLVED FURTHER:** That the Company is authorized to sell and issue to the following person the number of shares of common stock listed opposite such purchaser's name at a purchase price per share of $**[Share-price]** on the terms and conditions and for the form of consideration set forth in the agreements listed opposite such purchaser's name, which agreement shall be entered into in substantially the form provided to and reviewed by the Board with such changes as may be approved by the officers of the Company, acting on behalf of the Company, with the advice of counsel:

| Name | Number of Shares | Purchase Price | Form of Agreement |
|---|---|---|---|
| **[Purchaser-name]** | **[Share-number]** | **[Share-purchase-price]** dollars | Restricted Stock Purchase Agreement (form attached as **Exhibit A**) |

**RESOLVED FURTHER:** That the Board determines that the purchase price per share of $**[Share-price]** in consideration for the common stock issued pursuant to the terms and conditions of the above listed agreement constitutes full and adequate consideration for the common stock, and that such shares, when issued in accordance with the terms of such agreement, will be fully-paid and nonassessable outstanding shares of common stock of the Company.

**RESOLVED FURTHER:** That the officers of the Company in consultation with legal counsel are authorized and directed to execute, verify and file all documents, and to take whatever actions, that are necessary or advisable to comply with all state and federal securities laws.

**RESOLVED FURTHER:** That the responsible attorneys, paralegals and corporate assistants of LAWYERS, counsel for the Company, are authorized and directed to execute and submit on behalf of the

PLAINTIFF0002419



Company, an electronic exemption notice with the [California Department of Corporations] in connection with the current offering of the Company's securities, and are further authorized and directed to irrevocably appoint the [California Commissioner of Corporations] as agent for service of process for the Company in connection with the issuance of the Company's securities in the current offering.

## Indemnification Agreements

**RESOLVED:** That the Board determines that it is in the best interest of the Company and its stockholders for the Company to enter into indemnification agreements with its current and future directors and executive officers in substantially the form attached hereto as **Exhibit B.**

**RESOLVED FURTHER:** That the Company is authorized to execute and deliver an indemnification agreement with each current director and executive officer, and with all future directors and executive officers, of the Company.

**RESOLVED FURTHER:** That the officers of the Company are authorized to make modifications to such agreements in order to comply with applicable law.

## Employee Agreements

**RESOLVED:** That the Company is authorized and directed to adopt an At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement in substantially the form attached hereto as **Exhibit C,** and to enter into such agreement with each current employee of the Company and with all persons that commence employment with the Company.

**RESOLVED FURTHER:** That the officers of the Company are authorized to make modifications to such agreements in order to comply with the laws of particular states where employees may reside, as such officers deem appropriate.

## Management of Fiscal Affairs

PLAINTIFF0002420



**RESOLVED:** That the officers of the Company are authorized to:

- designate one or more banks or similar financial institutions as depositories of the funds of the Company;
- open, maintain and close general and special accounts with any such depositories;
- cause to be deposited from time to time in such accounts, funds of the Company as they deem necessary or advisable, and to designate, or to change or revoke the designation of, the officers or agents of the Company authorized to make such deposits and to endorse checks, drafts and other instruments for deposit;
- designate, or to change or revoke the designation of, the officers or agents of Company authorized to sign or countersign checks, drafts or other orders for the payment of money of the Company against any funds deposited in any of such accounts;
- authorize the use of facsimile signatures for the signing or countersigning of checks, drafts or other orders for the payment of money, and to enter into such agreements as banks and similar financial institutions customarily require as a condition for permitting the use of facsimile signatures; and
- make such general and special rules and regulations with respect to such accounts as they may deem necessary or advisable, and to complete, execute and certify any customary printed blank signature card forms in order to exercise conveniently the authority granted by this resolution, and any resolutions printed on such cards

PLAINTIFF0002421

are deemed adopted as a part of
this resolution.



**RESOLVED FURTHER:** That all form resolutions
required by any such depository are adopted, and
that the Secretary or any Assistant Secretary of
the Company is authorized to certify such
resolutions as having been adopted by this action
by unanimous written consent.

**RESOLVED FURTHER:** That any such depository to
which a certified copy of these resolutions has
been delivered by the Secretary or any Assistant
Secretary of the Company is authorized and
entitled to rely upon such resolutions for all
purposes until it receives written notice of the
revocation or amendment of these resolutions.

## Expenses of Incorporation and Organization

**RESOLVED:** That the Company is authorized to pay
and reimburse the expenses of incorporation and
organization of the Company, including without
limitation expenses incurred prior to the
incorporation of the Company.

**RESOLVED FURTHER:** That the officers of the
Company are authorized to determine whether to
elect to apply Section 248(a) of the Internal
Revenue Code with respect to any organizational
expenditures.

## Withholding Taxes

**RESOLVED:** That the Company is authorized to
consult with its bookkeepers, auditors and
attorneys in order to be fully informed as to,
and to collect and pay promptly when due, all
withholding taxes for which the Company may now
be (or hereafter become) liable.

## Accounting Year

**RESOLVED:** That the accounting year of the Company
will end on December 31st of each year.

## Principal Executive Office

**RESOLVED:** That the principal executive office of

PLAINTIFF0002422

the Company be established and maintained at
[Entity-address]

## Qualifications to do Business



**RESOLVED:** That the officers of the Company are
authorized to take any and all actions that they
deem necessary or appropriate to qualify the
Company to do business as a foreign corporation
in each state that the officers determine such
qualification to be necessary or appropriate.

## Employer Tax Identification Number

**RESOLVED:** That the officers of the Company are
authorized to apply for a federal employer
identification number on Form SS 4.

**RESOLVED FURTHER:** That the officers of the
Company are authorized to direct the responsible
attorneys, paralegals and corporate assistants of
[Counsel name], counsel for the Company, to
submit on behalf of the Company, an online
application for a federal employer identification
number on Form SS 4.

## Adoption of [Plan-year] Equity Incentive Plan and Agreement

**RESOLVED:** That the **[Plan-year]** Equity Incentive
Plan (the **"Plan"**) in substantially the form
attached hereto as **Exhibit D** is adopted and
approved.

**RESOLVED FURTHER:** That the Board reserves **[Share-reserve]** shares of common stock for issuance
under the Plan.

**RESOLVED FURTHER:** That the form of stock option
agreement in substantially the form attached
hereto as **Exhibit E** is approved.

**RESOLVED FURTHER:** That the officers of the
Company are authorized and directed to solicit
the consent of the stockholders to the adoption
of the Plan and to file the appropriate notices
with the applicable state and federal securities
authorities in connection with the issuance of
options, at such time as such actions may be

PLAINTIFF0002423

necessary or advisable in order to comply with applicable law.

## Omnibus Resolutions



**RESOLVED:** That the officers of the Company be, and each of them hereby is, authorized and empowered to take any and all such further action, to execute and deliver any and all such further agreements, instruments, documents and certificates and to pay such expenses, in the name and on behalf of the Company or such officer, as any such officer may deem necessary or advisable to effectuate the purposes and intent of the resolutions hereby adopted, the taking of such actions, the execution and delivery of such agreements, instruments, documents and certificates and the payment of such expenses by any such officer to be conclusive evidence of his or her authorization hereunder and the approval thereof.

**RESOLVED FURTHER:** That any and all actions taken by the officers of the Company to carry out the purposes and intent of the foregoing resolutions prior to their adoption are approved, ratified and confirmed.

> Note: Appointment of Officers table ee s to be ge eralize .

[Signature page to follow]

This action by written consent shall be effective as of the date the Company receives the consent of the Company's directors. This action by written consent may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one action. Any copy, facsimile or other reliable reproduction of this action by written consent may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used. This action by written consent shall be filed with the minutes of the proceedings of the

PLAINTIFF0002424

board of directors of the Company.



| THE BOARD |
| --- |
| Signature: |
| Print Name: [Director-name] |
| Role: Board Member |
| Dated: [Date] |

# Exhibit A

**FORM OF Restricted Stock Purchase Agreement**

# Exhibit B

**Form of Indemnification Agreement**

# Exhibit C

**Form of at will employment, confidential information,**

**invention assignment and arbitration agreement**

# Exhibit D

**[Plan-year]** equity incentive PLAN

# Exhibit E

FORM OF STOCK OPTION AGREEMENT

| Previous | Next |
| --- | --- |
| ByLaws, Adoption | Founder Stock Agreement |

PLAINTIFF0002425



**LEGAL—TOOLS**  DAOLABS

Connect Wallet



# Variables

Corporation's Name (ALL CAPS)

> ACME CORPORATION

Purchaser's Full Name

> Ms. Jane Doe

Purchaser's Address

> 123 Main Street Apt. 45, Kalamazoo, Michigan 49001

Entity Representative's Full Name

> Mr. John Doe

Entity Representative's Title/Role

> Chief Executive Officer

Date of Agreement

> 01/01/2023

Total Amount of Shares Purchased

> 100

Par Value Per Share (USD)

> 1

Purchase Price Per Share (USD)

> 1

Aggregate Purchase Price of Shares (USD)

> 100

Fair Market Value of Total Shares

> 100

Certificate Number of Stock Purchase Agreement

> 1

Attorney's Full Name

> Ms. Jane Doe

PLAINTIFF0002426

Entity's Address

123 Main Street Apt. 45, Kalamazoo, Michigan 49001

Escrow Agent's Name

Mr. John Doe

Purchaser's Taxpayer Identification Number

123 45 6789

Purchaser Spouse's Taxpayer Identification Number

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

Date the Shares Were Transferred

01/01/2023

Taxable Year

2023

Purchaser Spouse's Name

Mr. Jeff Doe

**Update document**

# [Entity-name] RESTRICTED STOCK PURCHASE AGREEMENT

Note: This agreement contains provisions specific to California. See section 10.

Note: Exhibit B may need clarification for average user.

This Restricted Stock Purchase Agreement (the "*Agreement*") is made as of **[Date]** by and between **[Entity-name]**, a Delaware corporation (the "*Company*"), and **[Purchaser-name]** (the "*Purchaser*").

In consideration of the mutual covenants and representations set forth below, the Company and the Purchaser agree as follows:

## 1. Purchase and Sale of the Shares.

Subject to the terms and conditions of this Agreement, the Company agrees to sell to the Purchaser and the Purchaser agrees to purchase from the Company

PLAINTIFF0002427

sell to the Purchaser and the Purchaser agrees to purchase from the Company on the Closing (as defined below) **[Share-amount]** shares of the Company's Common Stock, par value **[Share-par-value]** dollars per share (the "**Shares**"), at a price

of **[Share-price]** dollars per share (the "**Purchase Price**"), for an aggregate purchase price of **[Share-total-price]** dollars.

As additional consideration for the Company's agreement to sell the Shares, the Purchaser hereby transfers and assigns to the Company (i) the business plan of the Company (the "**Business Plan**") and (ii) any and all right, title and interest the Purchaser has in the Company's business and any Intellectual Property (as defined below) related to the Company's business, as currently conducted and as contemplated to be conducted pursuant to the Business Plan or otherwise. For purposes hereof, "**Intellectual Property**" means: (i) United States and foreign patents, trademarks, copyrights and mask works, registrations and applications therefor, and rights granted upon any reissue, division, continuation or continuation-in-part thereof, (ii) trade secret rights arising out of the laws of any and all jurisdictions, (iii) ideas, inventions, concepts, technology, software, methods, processes, drawings, illustrations, writings know-how, show-how, trade names, domain names, web addresses and web sites, and all rights therein and thereto, (iv) any other intellectual property rights, whether or not registrable, and (v) licenses in or to any of the foregoing. Further, the Purchaser agrees to take all actions reasonably requested by the Company to assist the Company in effecting the foregoing transfer and in establishing, perfecting, defending, enforcing and protecting the Company's rights in any of the above transferred items, including without limitation assisting in the prosecution of any patent applications included in or based upon the Intellectual Property.

# 2. Closing.

The purchase and sale of the Shares shall occur at a closing (the "**Closing**") to be held on the date first set forth above, or at any other time mutually agreed upon by the Company and the Purchaser. The Closing will take place at the principal office of the Company or at such other place as shall be designated by the Company. At the Closing, the Purchaser shall deliver the aggregate Purchase Price set forth above to the Company by wire transfer, check or any other method of payment permissible under applicable law and approved by the Company's board of directors (or any combination of such methods of payment), and the Company will issue, as promptly thereafter as practicable, a stock certificate, registered in the name of the Purchaser, reflecting the Shares.

# 3. Repurchase Option.

A. **Option.** In the event the Purchaser ceases to be an employee, consultant, advisor, officer or director of the Company (a "**Service Provider**") for any or no reason, including, without limitation, by reason of the Purchaser's death or disability (as defined in Section 22(e)(3) of the Internal Revenue Code of 1986, as amended (the

PLAINTIFF0002428

"**Code**"), "**Disability**"), resignation or involuntary termination, the Company shall, from such time (as determined by the Company in its discretion), have an irrevocable, exclusive option to repurchase (the "**Repurchase Option**") any Shares which have not yet been released from the Repurchase Option (the "**Unreleased Shares**"), at a price per share equal to the lesser of (x) the fair market value of the shares at the time the Repurchase Option is exercised, as determined by the Company's board of directors and (y) the Purchase Price (the "**Repurchase Price**"). The Company may exercise its Repurchase Option as to any or all of the Unreleased Shares at any time after the Purchaser ceases to be a Service Provider; *provided*, *however*, that without requirement of further action on the part of either party hereto, the Repurchase Option shall be deemed to have been automatically exercised as to all Unreleased Shares at 5:00 p.m. (Pacific Time) as of the date that is 60 days following the date the Purchaser ceases to be a Service Provider, unless the Company declines in writing to exercise its Repurchase Option prior to such time.

B. **Exercise.** If the Company decides not to exercise its Repurchase Option, it shall notify the Purchaser in writing within 60 days of the date the Purchaser ceases to be a Service Provider. If the Repurchase Option is exercised or deemed exercised, within 90 days of the date the Purchaser ceases to be a Service Provider, the Company shall deliver payment to the Purchaser, with a copy to the Escrow Agent (as defined in Section 8 hereof), by any of the following methods, in the Company's sole discretion: (i) delivering to the Purchaser or the Purchaser's executor a check in the amount of the aggregate Repurchase Price, (ii) canceling an amount of the Purchaser's indebtedness to the Company equal to the aggregate Repurchase Price, or (iii) any combination of (i) and (ii) such that the combined payment and cancellation of indebtedness equals the aggregate Repurchase Price.

C. **Rights upon Exercise.** In the event that the Repurchase Option is exercised or deemed exercised, the sole right and remedy of the Purchaser thereafter shall be to receive the Repurchase Price, and in no case shall the Purchaser have any claim of ownership as to any of the Unreleased Shares.

D. **Assignability.** The Company in its sole discretion may assign all or part of the Repurchase Option to one or more employees, officers, directors or stockholders of the Company or other persons or organizations.

# 4. Release of Shares from Repurchase Option; Vesting.

A. **Vesting.** As of the date of this Agreement, 50% of the total number of Shares shall be released from the Repurchase Option. So long as the Purchaser's continuous status as a Service Provider has not yet terminated in *each* such instance, an additional 1/48th of the

PLAINTIFF0002429





remaining number of Shares shall be released from the Repurchase Option on the corresponding day of each month thereafter (or if there is no corresponding day in any such month, on the last day of such month), until all Shares have been released on the fourth anniversary of this Agreement.

B. **_Acceleration upon Termination after a Change of Control._** In the event that the Purchaser's continuous status as a Service Provider is terminated by the Company without Cause (as defined below) within twelve (12) months after a Change of Control (as defined below), 100% of the total number of Shares that have not been released from the Repurchase Option shall be immediately released from the Repurchase Option.

C. **_"Change of Control" Definition._** For purposes of this Agreement, a "**_Change of Control_**" means either:

> (1) the acquisition of the Company by another entity by means of any transaction or series of related transactions (including, without limitation, any reorganization, merger or consolidation or stock transfer, but excluding any such transaction effected primarily for the purpose of changing the domicile of the Company), unless the Company's stockholders of record immediately prior to such transaction or series of related transactions hold, immediately after such transaction or series of related transactions, at least 50% of the voting power of the surviving or acquiring entity (_provided_ that the sale by the Company of its securities for the purposes of raising additional funds shall not constitute a Change of Control hereunder); or

> (2) a sale of all or substantially all of the assets of the Company.

D. **_Delivery of Released Shares._** Subject to the provisions of Section 8, the Shares which have been released from the Company's Repurchase Option shall be delivered to the Purchaser at the Purchaser's request.

E. **_"Cause" Definition._** For purposes of this Agreement, "**_Cause_**" shall mean:

> (i) the Purchaser's failure to perform his or her assigned duties or responsibilities as a Service Provider (other than a failure resulting from the Purchaser's Disability) after notice thereof from the Company describing the Purchaser's failure to perform such duties or responsibilities; (ii) the Purchaser engaging in any act of dishonesty, fraud or misrepresentation; (iii) the Purchaser's violation of any federal or state law or regulation applicable to the

PLAINTIFF0002430

business of the Company or its affiliates; (iv) the
Purchaser's breach of any confidentiality agreement or
invention assignment agreement between the Purchaser and the

Company (or any affiliate of the Company); or (v) the
Purchaser being convicted of, or entering a plea of *nolo
contendere* to, any crime or committing any act of moral
turpitude.



# 5. Limitation on Payments.

A. ***Payments Limitation.*** In the event that the severance and other
benefits provided for in this Agreement or otherwise payable to the
Purchaser (i) constitute "parachute payments" within the meaning of
Section 280G of the Code, and (ii) would be subject to the excise tax
imposed by Section 4999 of the Code (the "***Excise Tax***"), then the
Purchaser's benefits under this Agreement shall be either

(1) delivered in full, or

(2) delivered as to such lesser extent which would result in
no portion of such benefits being subject to the Excise Tax,

whichever of the foregoing amounts, taking into account the applicable
federal, state and local income taxes and the Excise Tax, results in
the receipt by the Purchaser on an after-tax basis, of the greatest
amount of benefits, notwithstanding that all or some portion of such
benefits may be taxable under Section 4999 of the Code. Any reduction
in payments and/or benefits required by this Section 5 will occur in
the following order: (1) reduction of cash payments; (2) reduction of
vesting acceleration of equity awards; and (3) reduction of other
benefits paid or provided to Purchaser. In the event that acceleration
of vesting of equity awards is to be reduced, such acceleration of
vesting will be cancelled in the reverse order of the date of grant
for Purchaser's equity awards. If two or more equity awards are
granted on the same date, each award will be reduced on a *pro-rata*
basis. In no event will Purchaser exercise any discretion with respect
to the ordering of any reductions of payments or benefits under this
Section 5.

B. ***Determination.*** Unless the Company and the Purchaser otherwise agree
in writing, any determination required under this Section 5 shall be
made in writing by the Company's independent public accountants or a
national "Big Four" accounting firm selected by the Company (the
"***Accountants***"), whose determination shall be conclusive and binding
upon the Purchaser and the Company for all purposes. For purposes of
making the calculations required by this Section 5, the Accountants
may make reasonable assumptions and approximations concerning
applicable taxes and may rely on reasonable, good faith
interpretations concerning the application of Section 280G and 4999 of

PLAINTIFF0002431

the Code. The Company and the Purchaser shall furnish to the Accountants such information and documents as the Accountants may reasonably request in order to make a determination under this

Section 5. The Company shall bear all costs the Accountants may reasonably incur in connection with any calculations contemplated by this Section 5.



# 6. Restrictions on Transfer.

A. *Investment Representations and Legend Requirements.* The Purchaser hereby makes the investment representations listed on **Exhibit A** to the Company as of the date of this Agreement and as of the date of the Closing, and agrees that such representations are incorporated into this Agreement by this reference, such that the Company may rely on them in issuing the Shares. The Purchaser understands and agrees that the Company shall cause the legends set forth below, or substantially equivalent legends, to be placed upon any certificate(s) evidencing ownership of the Shares, together with any other legends that may be required by the Company or by applicable state or federal securities laws:

> THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "*ACT*") AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL REGISTERED UNDER THE ACT OR, IN THE OPINION OF COUNSEL SATISFACTORY TO THE ISSUER OF THESE SECURITIES, SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT.

> THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER, A RIGHT OF FIRST REFUSAL, A LOCK-UP PERIOD IN THE EVENT OF A PUBLIC OFFERING AND A REPURCHASE OPTION HELD BY THE ISSUER OR ITS ASSIGNEE(S) AS SET FORTH IN THE RESTRICTED STOCK PURCHASE AGREEMENT BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THESE SHARES, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE ISSUER. SUCH TRANSFER RESTRICTIONS, RIGHT OF FIRST REFUSAL, LOCK-UP PERIOD AND REPURCHASE OPTION ARE BINDING ON TRANSFEREES OF THESE SHARES.

B. *Stop-Transfer Notices.* The Purchaser agrees that to ensure compliance with the restrictions referred to herein, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

C. *Refusal to Transfer.* The Company shall not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of this Agreement or

PLAINTIFF0002432

(ii) to treat as owner of such Shares or to accord the right to vote or pay dividends to any purchaser or other transferee to whom such Shares shall have been so transferred.

D. ***Lock-Up Period.*** The Purchaser hereby agrees that the Purchaser shall not sell, offer, pledge, contract to sell, grant any option or contract to purchase, purchase any option or contract to sell, grant any right or warrant to purchase, lend or otherwise transfer or encumber, directly or indirectly, any Shares or other securities of the Company, nor shall the Purchaser enter into any swap, hedging or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any Shares or other securities of the Company, during the period from the filing of the first registration statement of the Company filed under the Securities Act of 1933, as amended (the "***Securities Act***"), that includes securities to be sold on behalf of the Company to the public in an underwritten public offering under the Securities Act through the end of the 180-day period following the effective date of such registration statement (or such other period as may be requested by the Company or the underwriters to accommodate regulatory restrictions on (i) the publication or other distribution of research reports and (ii) analyst recommendations and opinions, including, but not limited to, the restrictions contained in FINRA Rule 2711(f)(4) or NYSE Rule 472(f)(4), or any successor provisions or amendments thereto). The Purchaser further agrees, if so requested by the Company or any representative of its underwriters, to enter into such underwriter's standard form of "lockup" or "market standoff" agreement in a form satisfactory to the Company and such underwriter. The Company may impose stop-transfer instructions with respect to securities subject to the foregoing restrictions until the end of any such restriction period.



E. ***Unreleased Shares.*** No Unreleased Shares subject to the Repurchase Option contained in Section 3 of this Agreement, nor any beneficial interest in such Shares, shall be sold, gifted, transferred, encumbered or otherwise disposed of in any way (whether by operation of law or otherwise) by the Purchaser, other than as expressly permitted or required by Section 3.

F. ***Released Shares.*** No Shares purchased pursuant to this Agreement, nor any beneficial interest in such Shares, shall be sold, transferred, encumbered or otherwise disposed of in any way (whether by operation of law or otherwise) by the Purchaser or any subsequent transferee, other than in compliance with the Company's right of first refusal provisions contained in Section 7 of this Agreement.

# 7. Company's Right of First Refusal.

Before any Shares acquired by the Purchaser pursuant to this Agreement (or any beneficial interest in such Shares) may be sold, transferred, encumbered

beneficial interest in such shares) may, sold, transferred, encumbered or otherwise disposed of in any way (whether by operation of law or otherwise) by the Purchaser or any subsequent transferee (each a "**_Holder_**"), such Holder must

first offer such Shares or beneficial interest to the Company and/or its assignee(s) as follows:

    A. **_Notice of Proposed Transfer._** The Holder shall deliver to the Company a written notice stating: (i) the Holder's _bona fide_ intention to sell or otherwise transfer the Shares; (ii) the name of each proposed transferee; (iii) the number of Shares to be transferred to each proposed transferee; (iv) the _bona fide_ cash price or other consideration for which the Holder proposes to transfer the Shares; and (v) that by delivering the notice, the Holder offers all such Shares to the Company and/or its assignee(s) pursuant to this section and on the same terms described in the notice.

    B. **_Exercise of Right of First Refusal._** At any time within 30 days after receipt of the Holder's notice, the Company and/or its assignee(s) may, by giving written notice to the Holder, elect to purchase all, but not less than all, of the Shares proposed to be transferred to any one or more of the proposed transferees, at the purchase price determined in accordance with Section 7.C.

    C. **_Purchase Price._** The purchase price for the Shares purchased by the Company and/or its assignee(s) under this section shall be the price listed in the Holder's notice. If the price listed in the Holder's notice includes consideration other than cash, the cash equivalent value of the non-cash consideration shall be determined by the board of directors of the Company in its sole discretion.

    D. **_Payment._** Payment of the purchase price shall be made, at the option of the Company and/or its assignee(s), in cash (by check), by cancellation of all or a portion of any outstanding indebtedness of the Holder to the Company and/or its assignee(s), or by any combination thereof within 30 days after receipt by the Company of the Holder's notice (or at such later date as is called for by such notice).

    E. **_Holder's Right to Transfer._** If all of the Shares proposed in the notice to be transferred to a given proposed transferee are not purchased by the Company and/or its assignee(s) as provided in this section, then the Holder may sell or otherwise transfer such Shares to that proposed transferee; _provided that_: (i) the transfer is made only on the terms provided for in the notice, with the exception of the purchase price, which may be either the price listed in the notice or any higher price; (ii) such transfer is consummated within 60 days after the date the notice is delivered to the Company; (iii) the transfer is effected in accordance with any applicable securities laws, and if requested by the Company, the Holder shall have delivered an opinion of counsel acceptable to the Company to that effect; and

PLAINTIFF0002434



(iv) the proposed transferee agrees in writing to receive and hold the Shares so transferred subject to all of the provisions of this Agreement, including but not limited to this section, and there shall be no further transfer of such Shares except in accordance with the terms of this section. If any Shares described in a notice are not transferred to the proposed transferee within the period provided above, then before any such Shares may be transferred, a new notice shall be given to the Company, and the Company and/or its assignees shall again be offered the right of first refusal described in this section.

F. **Involuntary Transfers.** Subject to the other provisions of this Section 7, in the event, at any time after the date of this Agreement, of any transfer by operation of law or other involuntary transfer (including, but not limited to, transfers by operation of law or other involuntary transfers in connection with a divorce, dissolution, legal separation or annulment) of all or a portion of the Shares by the record holder thereof that does not occur in accordance with the other provisions of this Section 7, the Company shall have the right to purchase all of the Shares transferred at the greater of the purchase price paid by Purchaser pursuant to this Agreement or the fair market value of the Shares on the date of transfer (as determined by the board of directors of the Company). Upon such a transfer, the persons transferring or acquiring the Shares shall promptly notify the Secretary of the Company in writing of such transfer. The right to purchase such Shares shall be provided to the Company for a period of 30 days following receipt by the Company of written notice of the transfer.

G. **Exception for Certain Family Transfers.** Notwithstanding anything to the contrary contained elsewhere in this section, the transfer of any or all of the Shares during the Holder's lifetime (except in connection with a divorce, dissolution, legal separation or annulment) or on the Holder's death by will or intestacy to (i) the Holder's spouse or domestic partner; (ii) the Holder's lineal descendants or antecedents, siblings, aunts, uncles, cousins, nieces and nephews (including adoptive relationships and step relationships), and their spouses or domestic partners; (iii) the lineal descendants or antecedents, siblings, cousins, aunts, uncles, nieces and nephews of Holder's spouse or domestic partner (including adoptive relationships and step relationships), and their spouses or domestic partners; and (iv) a trust or other similar estate planning vehicle for the benefit of the Holder or any such person, shall be exempt from the provisions of this section; _provided_ that, in each such case, the transferee agrees in writing to receive and hold the Shares so transferred subject to all of the provisions of this Agreement, including but not limited to this section, and there shall be no further transfer of such Shares except in accordance with the terms of this section; and _provided further_, that without the prior written consent of the

PLAINTIFF0002435

Company, which may be withheld in the sole discretion of the Company, no more than three transfers may be made pursuant to this section, including all transfers by the Holder and all transfers by any

transferee. For purposes of this Agreement, a person will be deemed to be a "*domestic partner*" of another person if the two persons (1) reside in the same residence and plan to do so indefinitely, (2) have resided together for at least one year, (3) are each at least 18 years of age and mentally competent to consent to contract, (4) are not blood relatives any closer than would prohibit legal marriage in the state in which they reside, (5) are financially interdependent, as demonstrated to the reasonable satisfaction of the Company and (6) have each been the sole spouse equivalent of the other for the year prior to the transfer and plan to remain so indefinitely; *provided* that a person will not be considered a domestic partner if he or she is married to another person or has any other spouse equivalent.

H. *Termination of Right of First Refusal.* The rights contained in this section shall terminate as to all Shares purchased hereunder upon the earlier of: (i) the closing date of the first sale of Common Stock of the Company to the general public pursuant to a registration statement filed with and declared effective by the Securities and Exchange Commission under the Securities Act, and (ii) the closing date of a Change of Control pursuant to which the holders of the outstanding voting securities of the Company receive securities of a class registered pursuant to Section 12 of the Securities Exchange Act of 1934, as amended.

# 8. Escrow.

A. *Deposit.* As security for the faithful performance of this Agreement, the Purchaser agrees, immediately upon receipt of the certificate(s) evidencing the Shares, to deliver such certificate(s), together with a stock power in the form of **Exhibit B** attached to this Agreement, executed by the Purchaser and by the Purchaser's spouse, if any (with the date and number of Shares left blank), to the Secretary of the Company or to another designee of the Company (the "*Escrow Agent*"). These documents shall be held by the Escrow Agent pursuant to the Joint Escrow Instructions of the Company and the Purchaser set forth in **Exhibit C** attached to this Agreement, which instructions are incorporated into this Agreement by this reference, and which instructions shall also be delivered to the Escrow Agent after the Closing.

B. *Rights in Escrow Shares.* Subject to the terms hereof, the Purchaser shall have all the rights of a stockholder with respect to such Shares while they are held in escrow, including without limitation, the right to vote the Shares. If, from time to time during the term of the Company's Repurchase Option, there is (i) any stock dividend, st

**PLAINTIFF0002436**