The Honorable John C. Coughenour

Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

DECEMBER 14, 2010

WILLIAM M. McCOOL, Clerk

By _____ Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR10-269JCC |
| Plaintiff, | |
| v. | SUPERSEDING INDICTMENT |
| MARK E. PHILLIPS, | |
| Defendant. | |

**COUNTS 1-4**
**(Wire Fraud)**

A. **Introduction**

1. MARK E. PHILLIPS is a Washington resident, and one of the founders of MOD Systems Incorporated ("MOD").

2. MOD is a technology start-up company that is focused on and engaged in the business of developing its Retail Digital Entertainment Platform, which enables retailers to deliver digital entertainment to consumers through self-service, touch-screen kiosks for download of portable electronic storage media.

3. Wallace Black, LLC ("Wallace Black") is a consulting company owned and operated by J.W.

4. J.W. and MARK E. PHILLIPS were romantically involved periodically from approximately May 2007 through approximately December 2008.

5. L.G. is lawyer at a small Seattle law firm (the "Law Firm") and MARK E. PHILLIPS's personal attorney.

INDICTMENT - Page 1
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

EXHIBIT 211                                                PLAINTIFF0004141

6. In July 2006, MOD issued MARK E. PHILLIPS approximately 7,500,000 shares of MOD common stock. MOD subsequently secured additional financing on or about September 24, 2008, from Toshiba Corporation, NCR Corporation, and Deluxe Entertainment Services Group, Inc. through an offering of Series A preferred stock. Toshiba Corporation, NCR Corporation, and Deluxe Entertainment Services Group, Inc. collectively invested approximately $35 million by purchasing approximately 11,508,812 shares of Series A preferred stock in MOD. In connection with this transaction, MARK E. PHILLIPS negotiated and received an additional 11,401,196 shares of MOD common stock, giving him a total of 18,901,196 shares of MOD common stock. As of the closing of the Series A offering, MARK E. PHILLIPS's 18,901,196 shares of MOD common stock represented a majority of the outstanding shares entitled to vote at a shareholder meeting. Until on or about March 27, 2009, MARK E. PHILLIPS was the CEO of MOD and a member of MOD's Board of Directors.

**B.   Essence of the Scheme to Defraud**

7. The essence of MARK E. PHILLIPS's scheme to defraud was to use his position as MOD's CEO to fraudulently cause MOD to expend corporate funds for his personal benefit, including for the purchase of two $30,000.00 Breguet watches, a $25,000.00 personal investment in a technology start-up company in Washington, a transfer of $15,000.00 to MARK E. PHILLIPS's personal investment account, payment of corporate credit card purchases of personal items by MARK E. PHILLIPS, and the transfer of approximately $1,500,000.00 to MARK E. PHILLIPS's personal investment account.

**C.   The Scheme to Defraud**

8. Beginning in or about January 2008, and continuing until in or about March 31, 2010, at Seattle, and at other places within the Western District of Washington and elsewhere, MARK E. PHILLIPS, together with others known and unknown, did devise and intend to devise a material scheme and artifice to defraud MOD and to obtain

INDICTMENT - Page 2
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004142

1 money from MOD by means of material false and fraudulent pretenses, representations,
2 and promises, as further described below.
3 **D.    Manner and Means**
4          The manner and means used to accomplish the scheme to defraud included
5 the following:
6          9.    On or prior to January 15, 2008, MARK E. PHILLIPS ordered or caused to
7 be ordered a $30,000.00 Breguet Rose Gold Power Reserve Moonphase watch ("Rose
8 Gold Breguet") from Feel Good Watches II Inc., a retailer of fine watches based in
9 Scottsdale, Arizona ("Feel Good Watches"). The watch was delivered to MARK E.
10 PHILLIPS's residence by Federal Express on January 16, 2008.
11         10.   To pay for the purchase of his Rose Gold Breguet, on or prior to January 17,
12 2008, MARK E. PHILLIPS informed L.G. that he wanted to use L.G. and the Law Firm's
13 trust account to route a payment to a personal consultant for services it had provided to
14 him. MARK E. PHILLIPS subsequently identified the consultant to L.G. as Wallace
15 Black, and provided L.G. with wiring information for Wallace Black's Bank of America
16 bank account. In truth and fact, Wallace Black was owned and operated by J.W., who
17 was romantically involved with MARK E. PHILLIPS. MARK E. PHILLIPS's sole
18 purpose in providing wiring instructions to the Law Firm was to convert funds to his own
19 personal use.
20         11.   It was further part of the scheme to defraud that MARK E. PHILLIPS
21 created, or caused to be created, false invoices supposedly from L.G. and the Law Firm,
22 which MARK E. PHILLIPS provided to MOD. In order to conceal from MOD the fact
23 that these funds were initially paid to J.W.'s company, Wallace Black, MARK E.
24 PHILLIPS caused these invoices to falsely state that payment was due to "W. Black
25 LLC" and/or "W-Black LLC," and thus caused MOD to transfer its corporate funds to the
26 Law Firm's trust account under the false pretense that the funds were to be paid to
27 "W. Black LLC" or "W-Black LLC."
28

INDICTMENT - Page 3
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004143

12. It was further part of the scheme to defraud that on or about January 18, 2008, MARK E. PHILLIPS informed K.G., a MOD employee, that MOD needed to pay a consultant $30,000.00 for advice the consultant had provided to MOD, and submitted a false invoice to MOD from the Law Firm for "Consultant/Contract Services – W-Black LLC" purportedly provided for MOD's benefit.

13. It was further part of the scheme to defraud that on January 22, 2008, (after MOD had transferred $30,000.00 to L.G.'s trust account), upon MARK E. PHILLIPS's instructions, L.G. transferred $30,000.00 by wire from the Law Firm's trust account in Washington to Wallace Black's Bank of America bank account in Arizona. Based on earlier directions from MARK E. PHILLIPS, J.W. then wired $30,000.00 from Wallace Black's Bank of America bank account to Feel Good Watches on January 22, 2008, to pay for the Rose Gold Breguet watch MARK E. PHILLIPS had received on January 16, 2008.

14. It was further part of the scheme to defraud that in or about January 2008, MARK E. PHILLIPS also purchased a Breguet Pre-Owned Perpetual Calendar ("Perpetual Calendar Breguet") watch for $30,000.00 from Feel Good Watches, which MARK E. PHILLIPS paid for using MOD corporate funds. MARK E. PHILLIPS arranged to pay Feel Good Watches for the watch in installments of $20,000.00 in March 2008, and $10,000.00 in April 2008.

15. It was further part of the scheme to defraud that on or about March 4, 2008, MARK E. PHILLIPS submitted a false invoice in the amount of $60,000.00 to MOD from the Law Firm for "Consultant/Contract Services – W-Black LLC." Contemporaneously, MARK E. PHILLIPS directed K.G., a MOD employee, to wire transfer $60,000.00 from MOD's bank account to the Law Firm's trust account in payment of the invoice. On or about March 6, 2008, MARK E. PHILLIPS directed L.G. to wire transfer $60,000.00 from the Law Firm's trust account in Washington to Wallace Black's Bank of America bank account in Arizona, which L.G. did on March 10, 2008. On March 11, 2008, based on MARK E. PHILLIPS's previous instructions, J.W. wired

INDICTMENT - Page 4
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004144

1 | $20,000.00 of the total $60,000.00 to Feel Good Watches in partial payment for the
2 | Perpetual Calendar Breguet.

3 |       16.    It was further part of the scheme to defraud that on or about May 12, 2008,
4 | MARK E. PHILLIPS submitted or caused to be submitted a third false invoice to MOD
5 | from the Law Firm purporting to seek payment of $10,000.00 from MOD for
6 | "Consultant/Contract Services – W. Black LLC." Contemporaneously, MARK E.
7 | PHILLIPS fraudulently directed K.G. to wire $10,000.00 from MOD's account to the
8 | Law Firm's trust account in payment of the invoice. On May 16, 2008, at MARK E.
9 | PHILLIPS's direction, L.G. caused $10,000.00 to be wired from the Law Firm's trust
10 | account in Washington to Wallace Black's Bank of America bank account in Arizona.
11 | On May 21, 2008, based on MARK E. PHILLIPS's previous instructions, J.W. wired
12 | $10,000.00 to Feel Good Watches in partial payment for the Perpetual Calendar Breguet.

13 |       17.    It was further part of the scheme to defraud that MARK E. PHILLIPS used
14 | the remaining $40,000.00 of MOD corporate funds from the March wire transfer referred
15 | to in Paragraph 15 (which MARK E. PHILLIPS caused K.G. to wire to L.G., and then
16 | L.G. to wire to Wallace Black in March 2008) for MARK E. PHILLIPS's personal
17 | benefit in that on or about March 17, 2008, MARK E. PHILLIPS offered and agreed to
18 | make a personal investment of $25,000.00 in Sampa Corporation, a Washington-based
19 | technology start-up company. Shortly thereafter, MARK E. PHILLIPS instructed J.W. by
20 | e-mail to wire $25,000.00 for the purchase of shares of stock in Sampa Corporation. J.W.
21 | wired the funds on April 7, 2008, from Wallace Black's Bank of America bank account in
22 | Arizona to Sampa Corporation's lawyer's trust account in Washington. Sampa
23 | Corporation thereafter issued a stock certificate to MARK E. PHILLIPS. On or about
24 | April 6, 2008, MARK E. PHILLIPS instructed J.W. to wire the remaining $15,000.00
25 | from Wallace Black's Bank of America account in Arizona to his personal
26 | CitiSmithBarney investment account (xxxx-16900) in New York, which J.W. did on or
27 | about April 7, 2008.
28 |

INDICTMENT - Page 5
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004145

18. It was further part of the scheme to defraud that MARK E. PHILLIPS submitted to MOD, or caused to be submitted to MOD, credit card statements for payment by MOD of purchases made by MARK E. PHILLIPS for his personal benefit, such as Salvador Dali lithographs, clothing and merchandise at Hermes, furniture and fixtures at Tokyu Department Store, clothing and merchandise at Mario's, and DNA genetic testing from 23 and Me, Inc. MARK E. PHILLIPS caused MOD to pay for such personal purchases by falsely claiming or representing to MOD that such personal purchases were for MOD business purposes, when MARK E. PHILLIPS well-knew that such purchases were not made by MARK E. PHILLIPS for MOD business purposes.

19. It was further part of the scheme to defraud that MARK E. PHILLIPS negotiated to purchase the Mosler Apartment for $2,300,000.00, by financing approximately $1,265,000.00 of the purchase and funding the balance/down payment, approximately $992,972.75, in cash. To make the cash payment due on the Mosler Apartment purchase, on or about April 28, 2008, MARK E. PHILLIPS directed K.G., a MOD employee, to transfer $1,500,000.00 from MOD's bank account to a CitiSmithBarney investment account (xxxx-16900) controlled by MARK E. PHILLIPS under the false pretenses that it was a payment against an existing licensing agreement and that such payment had been approved by the Chairman of MOD's Board of Directors, A.B. In fact and reality, as MARK E. PHILLIPS well-knew, A.B. did not consent to such transfer and the purported licensing agreement, against which MARK E. PHILLIPS told K.G. he was entitled to $1,500,000.00 of MOD's money, had not been completed and executed at the time of the transfer.

20. MARK E. PHILLIPS benefitted from the scheme to defraud in that on or about April 7, 2008, MARK E. PHILLIPS paid the $15,000.00 described above in Paragraph 17 from his CitiSmithBarney investment account (xxxx-16900), plus additional funds, to Professional Escrow as earnest money towards the purchase of a residence located at 3rd Avenue, Penthouse 1, Seattle, Washington (the "Mosler Apartment"). MARK E. PHILLIPS further benefitted from the scheme to defraud in that on or about

INDICTMENT - Page 6
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004146

May 23, 2008, MARK E. PHILLIPS transferred $992,972.75, substantially all of which was derived from MOD corporate funds, from MARK E. PHILLIPS's CitiSmithBarney investment account (xxxx-16900) to Sound Bank Company in payment of the down payment and balance for the purchase of the Mosler Apartment.

21.     MARK E. PHILLIPS never had permission or authority from MOD to use MOD's corporate funds to pay Wallace Black or J.W., or to use such funds for his personal benefit to buy watches, deposit in his personal account, or make a personal investment in Sampa Corporation. Moreover, MARK E. PHILLIPS did not have permission or authority from MOD to use MOD's corporate funds to make the earnest money payment or down payment on Mosler Apartment, or for payment of credit card charges for personal purchases.

E.     **Execution of the Scheme to Defraud**

22.     On or about the dates set forth below, at Seattle and at other places within the Western District of Washington, and elsewhere, MARK E. PHILLIPS, having devised the above-described scheme to defraud, for the purpose of executing and in order to effect the scheme to defraud, did knowingly transmit and cause to be transmitted by wire communication in interstate commerce writings, signs, signals, pictures, and sounds, each of which constitutes a separate Count of this Superseding Indictment.

| Count | Date | Sender | Recipient | Wire Transmission |
|---|---|---|---|---|
| 1 | 1/22/08 | The Law Firm, Seattle, Washington | Wallace Black, LLC, Arizona | $30,000.00 wire transfer of MOD funds in supposed payment for services rendered by Wallace Black, LLC from Seattle, Washington to Phoenix, Arizona |
| 2 | 3/10/08 | The Law Firm, Seattle, Washington | Wallace Black, LLC, Arizona | $60,000.00 wire transfer of MOD funds in supposed payment for services rendered by Wallace Black, LLC from Seattle, Washington to Phoenix, Arizona |

INDICTMENT - Page 7
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004147

| | | | | |
|---|---|---|---|---|
| 3 | 5/16/08 | The Law Firm, Seattle, Washington | Wallace Black, LLC, Arizona | $10,000.00 wire transfer of MOD funds in supposed payment for services rendered by Wallace-Black, LLC from Seattle, Washington to Phoenix, Arizona |
| 4 | 4/28/08 | Washington Mutual Bank, Seattle Washington | CitiSmithBarney, New York | $1,500,000.00 wire transfer of MOD funds in payment against supposed licensing agreement between MARK E. PHILLIPS and MOD from Seattle, Washington to New York |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT 5
### (Mail Fraud)

23.   Beginning in or about January 2008, and continuing until on or about March 31, 2010, at Seattle, and at other places within the Western District of Washington and elsewhere, MARK E. PHILLIPS, together with others known and unknown, did devise and intend to devise a material scheme to defraud MOD and to obtain money from MOD by means of material false and fraudulent pretenses, representations and promises, and the concealment of material facts.

24.   The Grand Jury re-alleges and reincorporates, as if fully set forth herein, Paragraphs 1 through 21 of this Superseding Indictment as setting forth the scheme to defraud and obtain money and property from MOD.

25.   On or about January 15, 2008, at Seattle and other places within the Western District of Washington, MARK E. PHILLIPS, having devised the scheme to defraud described above in Paragraphs 1 through 21, for the purpose of executing and in order to effect the scheme to defraud, did knowingly cause to be delivered by Federal Express, according to the directions thereon, the following matter, the delivery of which constitutes a separate Count of this Indictment.

INDICTMENT - Page 8
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004148

| Count | Date | Sender | Addressee | Item Mailed |
|---|---|---|---|---|
| 5 | 1/15/08 | Feel Good Watches II, LLC | MARK E. PHILLIPS | Breguet Rose Gold Power Reserve Moonphase purchased for $30,000.00 |

All in violation of Title 18, United States Code, Section 1341 and Section 2.

### COUNTS 6-7
### (Money Laundering)

26.     The Grand Jury re-alleges and incorporates, as if fully set forth herein, Paragraphs 1 through 21 of this Superseding Indictment.

27.     On or about the dates set forth below, at Seattle, and at other places within the Western District of Washington and elsewhere, MARK E. PHILLIPS did knowingly engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally-derived property of a value greater than $10,000, that is, the following deposits, withdrawals, transfers, and exchanges of United States currency, funds, and monetary instruments in the following amounts, such property having been derived from a specified unlawful activity, that is, mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, each of which transactions constitutes a separate count of this Superseding Indictment.

| Count | Date | Transaction | Purpose |
|---|---|---|---|
| 6 | 4/7/08 | $15,000.00 transfer from CitiSmithBarney investment account (xxxx-16900) belonging to MARK E. PHILLIPS, to Professional Escrow by check dated April 7, 2008 | Transfer of funds subsequently used by MARK E. PHILLIPS as part of $50,000.00 earnest money payment on purchase by MARK E. PHILLIPS of Mosler Apartment, for total purchase price of $2,300,000.00. |

INDICTMENT - Page 9
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004149

| 7 | 5/23/08 | $992,972.75 transfer from CitiSmithBarney investment account (xxxx-16900) belonging to MARK E. PHILLIPS to Sound Banking Company by wire transfer dated May 23, 2008 | Transfer of funds subsequently used by MARK E. PHILLIPS as balance/down payment on purchase by MARK E. PHILLIPS of Mosler Apartment, for total purchase price of $2,300,000.00. |
|---|---------|---|---|

All in violation of Title 18, United States Code, Section 1957.

## COUNT 8
### (Attempted Bank Fraud)

A.  **Introduction**

28.  The Grand Jury re-alleges and reincorporates, as if fully set forth herein, Paragraphs 1 through 21 of this Indictment

29.  On or about December 15, 2008, MOD shareholder R.A. made a written demand on MOD and its Board of Directors in the form of a draft, unfiled Complaint for damages. The draft Complaint alleged, among other things, that MARK E. PHILLIPS and others had misappropriated MOD funds to their own personal benefit and breached their fiduciary duties to the company. Among other things, R.A.'s draft Complaint alleged that MARK E. PHILLIPS misappropriated MOD corporate funds by fraudulently causing MOD to expend its corporate funds to purchase two expensive Breguet watches in 2008.

30.  In response to the allegations, MOD created a Demand Review Committee ("DRC") comprised of A.B. (MOD's current CEO and Chairman of the Board) and K.C. (a MOD Board member at that time) to investigate R.A.'s allegations, and in particular his allegations that MARK E. PHILLIPS had misappropriated MOD's corporate funds. The DRC retained counsel and MOD's former CFO to assist it in its investigation.

31.  Following a several month-long investigation, the DRC made preliminary findings that MARK E. PHILLIPS had misappropriated MOD corporate funds for his personal benefit. Based on these findings, MOD's Board of Directors asked MARK E. PHILLIPS to resign as MOD's CEO and from MOD's Board of Directors. MOD also

INDICTMENT - Page 10
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004150

1  insisted that MARK E. PHILLIPS relinquish his authority over MOD's day-to-day
2  financial operations and over his voting majority shareholder control of MOD. MARK E.
3  PHILLIPS agreed to these demands.
4       32.   To effectuate his resignation and MOD's request that MARK E. PHILLIPS
5  relinquish shareholder control and oversight over MOD's day-to-day financial operations,
6  MARK E. PHILLIPS entered into a Transition Agreement with MOD on March 27, 2009.
7  Pursuant to the Transition Agreement, MARK E. PHILLIPS agreed to resign as MOD's
8  CEO, resign from MOD's Board of Directors, place all of his 18,901,196 shares of MOD
9  common stock into a Voting Trust, relinquish all authority to expend or approve
10 expenditures of MOD funds, and refrain from playing any role in MOD corporate
11 governance matters.
12      33.   The Voting Trust was created and is governed by the terms of the Voting
13 Trust Agreement, entered into between MARK E. PHILLIPS and MOD, also on March
14 27, 2009. Under the terms of the Voting Trust Agreement, MARK E. PHILLIPS, among
15 other things, agreed to place all of his 18,901,196 shares of MOD common stock into the
16 Voting Trust, and transfer voting rights to all of the 18,901,196 shares to the Voting Trust
17 Trustee, K.C. The Voting Trust Agreement further provides that all of the shares in the
18 Voting Trust shall be voted in any corporate or shareholder action in precisely the same
19 proportion as the totality of all outstanding MOD shares voted in that particular instance
20 or action that are not included in the Voting Trust. Accordingly, MARK E. PHILLIPS
21 effectively ceased being the majority, controlling shareholder in MOD entitled to vote at
22 meetings of MOD shareholders.
23      34.   To effectuate the terms of the Voting Trust Agreement and the Transition
24 Agreement, on or about March 27, 2009, MARK E. PHILLIPS also signed a document,
25 entitled "Stock Power," by which MARK E. PHILLIPS "assign[ed] and transfer[red]
26 18,901,196 shares of common stock of MOD Systems Incorporated (the "Company")
27 represented by Certificate(s) No. CS-013 standing in the name of [MARK E. PHILLIPS]
28 on the books of [MOD] to Kyleen Cane, as Trustee of the Voting Trust Agreement, dated

INDICTMENT - Page 11
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004151

1  March 27, 2009[.]" The Voting Trust Agreement, which MARK E. PHILLIPS signed,
2  also provides that the stock certificates representing MARK E. PHILLIPS's 18,901,196
3  shares of MOD common stock will be surrendered, and MOD will reissue a new share
4  certificate registering the MARK E. PHILLIPS's 18,901,196 shares of MOD common
5  stock in the name of "Kyleen Cane, as Trustee of the Voting Trust Agreement dated
6  March 27, 2009."

7      35.    Accordingly, on or about April 2, 2009, MOD cancelled Stock Certificate
8  CS-013, certifying MARK E. PHILLIPS as the owner of 18,901,196 shares of MOD
9  common stock, and reissued Stock Certificate CS-014, certifying "[K.C.], as Trustee of
10 the Voting Trust Agreement dated 3/27/09" as the owner of 18,901,196 shares of MOD
11 common stock. In cancelling Stock Certificate CS-013, MOD placed a cancellation
12 stamp across the face of Stock Certificate CS-013, and recorded the cancelled Stock
13 Certificate on its corporate books and records.

14     36.    On September 24, 2009, MARK E. PHILLIPS filed a motion in King
15 County Superior Court seeking, among other things, to terminate the Voting Trust, and
16 regain voting power over his 18,901,196 shares of MOD common stock.

17     37.    On November 6, 2009, following lengthy briefing from attorneys for both
18 MARK E. PHILLIPS and MOD, the Honorable John P. Erlick, King County Superior
19 Court, held a hearing on MARK E. PHILLIPS's motion to terminate the voting trust, and
20 considered arguments from counsel. Both MARK E. PHILLIPS and D.M., MARK E.
21 PHILLIPS's consultant, were present during the hearing.

22     38.    At the conclusion of the hearing, Judge Erlick denied
23 MARK E. PHILLIPS's motion to terminate the Voting Trust. Following the hearing, on
24 November 12, 2009, Judge Erlick entered a written order denying MARK E. PHILLIPS's
25 motion to terminate the Voting Trust. Accordingly, all of MARK E. PHILLIPS's
26 18,901,196 shares of MOD common stock remained in the Voting Trust, subject to the
27 voting restrictions of the Voting Trust Agreement.
28 ///

INDICTMENT - Page 12
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004152

### B. Essence of the Scheme to Defraud

39. The essence of MARK E. PHILLIPS's scheme to defraud was to attempt to fraudulently obtain control of MOD's corporate funds from Wells Fargo Bank, N.A. ("Wells Fargo"), wherein MOD maintained approximately $10.9 million of its assets by falsely claiming that he was MOD's majority controlling shareholder, permitted to vote a majority of the outstanding shares in MOD at a shareholder meeting, and thus empowered to take unilateral shareholder action on behalf of MOD to take control of MOD, MOD's bank accounts, and all of MOD's assets. In fact, as MARK E. PHILLIPS well knew, he had no authority to vote his shares in MOD, and was prohibited, according to the terms of his resignation as MOD's CEO, from engaging in any MOD corporate governance matters or expending (or approving the expenditure of) MOD's corporate funds.

### C. The Scheme to Defraud

40. Beginning in or about January 2008, and continuing until on or about March 31, 2010, at Seattle and other places within the Western District of Washington, and elsewhere, MARK E. PHILLIPS devised and intended to devise a scheme and artifice to defraud and obtain money and property from Wells Fargo Bank, N.A., a financial institution, as defined under Title 18, United States Code, Section 20, by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts as set forth below.

### D. Manner and Means

The manner and means used to accomplish the scheme to defraud included the following:

41. It was part of MARK E. PHILLIPS scheme to defraud that, beginning on or about March 27, 2009, following his resignation from MOD's Board of Directors and from his position as MOD's CEO, MARK E. PHILLIPS fraudulently sought to regain control of MOD and its corporate assets through the use of false and materially misleading corporate documents relating to MARK E. PHILLIPS's ownership and control over MOD stock, particularly his right to vote a majority of MOD shares.

INDICTMENT - Page 13
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004153

42. It was further part of the scheme to defraud that MARK E. PHILLIPS created or caused to be created, the following false and fraudulent documents, among others:

    (a) A December 15, 2009 Majority Consent of Shareholders for MOD, signed by MARK E. PHILLIPS ("Majority Consent"), falsely stating that:

> The undersigned [MARK E. PHILLIPS], being the holder of a majority of the outstanding shares entitled to vote at meetings of the shareholders of MOD Systems Incorporated, a Washington corporation (the 'Company'), by this instrument in lieu of a meeting of the Company, consents to the adoption of the following resolutions[.]

    (b) A December 15, 2009 Consent in Lieu of Special Meeting of the Board of Directors for MOD, signed by MARK E. PHILLIPS ("Bank Consent"). The Bank Consent purported to give MARK E. PHILLIPS control over MOD's bank accounts and activity, authorizing MARK E. PHILLIPS to:

> execute such agreements and other documents, in the standard form provided by the Bank, as are necessary to open such accounts, including any standard form of banking resolutions, and that such officer is hereby authorized to sign checks or otherwise make withdrawals and to designate additional signatories on the checking account(s), and to change the designated signatories, as he deems appropriate from time to time, and to sign new banking resolutions as necessary to show the changed signatories[.]

    (c) An un-cancelled April 2, 2009 Stock Certificate, Number CS-013, showing MARK E. PHILLIPS to be the owner of 18,901,196 shares of MOD common stock ("Un-cancelled Stock Certificate CS-013"). The un-cancelled Stock Certificate CS-013 is fraudulent because it did not bear the cancellation stamp that MOD had placed on the true Stock Certificate CS-013.

43. As MARK E. PHILLIPS well knew, the true Stock Certificate CS-013 had been cancelled and all 18,901,196 shares in MOD common stock had been reissued in the form of another stock certificate to K.C. as trustee of the Voting Trust. Therefore, all of MARK E. PHILLIPS's 18,901,196 shares of MOD common stock were vested in the Voting Trust, and MARK E. PHILLIPS had no right to vote such shares. MARK E.

INDICTMENT - Page 14
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004154

1  PHILLIPS knew that he could not vote such shares because he was present when Judge
2  Erlick affirmed the validity of the Voting Trust on November 6, 2009.
3  E.     **Execution of the Scheme to Defraud**
4         44.    At approximately 9:00 a.m., on December 15, 2009, MARK E. PHILLIPS
5  entered the Wells Fargo building in downtown Seattle, and spoke with several Wells
6  Fargo Bank employees. MARK E. PHILLIPS was accompanied by D.M., MARK E.
7  PHILLIPS's lawyer R.A2., and D.L., a former MOD employee and a high school
8  classmate of MARK E. PHILLIPS.
9         45.    MARK E. PHILLIPS informed Wells Fargo employees that he was
10 re-taking control of MOD, and insisted on an immediate change to signatory authority to
11 MOD's Wells Fargo bank accounts. Specifically, MARK E. PHILLIPS demanded that
12 Wells Fargo remove all of the current signatories to MOD's accounts and substitute
13 himself as the signor.
14        46.    MARK E. PHILLIPS presented Wells Fargo employees with, among other
15 things, the Majority Consent, Bank Consent, and Un-canceled Stock Certificate CS-013,
16 and claimed that these documents gave him the authority to assert control of MOD.
17        47.    In response to MARK E. PHILLIPS's demand to substitute himself for the
18 current signatories to MOD's accounts, Wells Fargo froze all of MOD's accounts.
19 Ultimately, Wells Fargo denied MARK E. PHILLIPS demand, and unfroze the accounts.
20        48.    On or about December 15, 2009, at Seattle, within the Western District of
21 Washington, and elsewhere, MARK E. PHILLIPS did willfully and knowingly execute
22 and attempt to execute a scheme and artifice to defraud Wells Fargo Bank, N.A., a
23 financial institution as defined by Title 18, United States Code, Section 20, and to obtain
24 money, funds, assets, or other property, owned by or in the custody or control of Wells
25 Fargo Bank, N.A., by means of materially false and fraudulent pretenses.
26        All in violation of Title 18, United States Code, Sections 1344 and 1349.
27 ///
28 ///

INDICTMENT - Page 15
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004155

## FORFEITURE

49. With respect to the Mail Fraud and Wire Fraud alleged in Counts 1-4 of this Indictment, the defendant named herein, upon conviction shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the Scheme to Commit Mail Fraud and Wire Fraud, including but not limited to:

    a. <u>Money Judgment</u>

        1. A sum of money equal to approximately $100,000.00 in United States currency, representing the amount of proceeds obtained as a result of the Mail Fraud and Wire Fraud offenses.

    b. <u>Watches</u>

        1. Breguet Rose Gold Power Reserve Moonphase Watch, Serial No. 3376

        2. Breguet Pre-Owned Perpetual Calendar Watch, Serial No. 1642.

50. If any of the property described above subject to forfeiture as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third person;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said Defendant up to the value of the forfeitable property.

INDICTMENT - Page 16
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004156

1 | All in accordance with Title 18, United States Code, Section 981(a)(1)(C), and
2 | Title 28, United States Code, Section 2461(c).

A TRUE BILL

DATED: 12/14/2010

*Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States.*

FOREPERSON

JENNY A. DURKAN
United States Attorney

CARL BLACKSTONE
Assistant United States Attorney

MATTHEW D. DIGGS
Assistant United States Attorney

ARAVIND SWAMINATHAN
Assistant United States Attorney

INDICTMENT - Page 17
U.S. v. Mark E. Phillips

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

PLAINTIFF0004157