DocuSign Envelope ID: 86E2473C-7204-4335-9F32-710472070565

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

RYAN BRESLOW, ALEX FINE, and JON
GORDON,

      Plaintiffs,

vs.

MARK PHILLIPS and BENJAMIN REED,

      Defendants.

_____/

**DECLARATION OF RYAN BRESLOW**

    I, Ryan Breslow, make the following declaration based on my personal knowledge:

    1.    My name is Ryan Breslow. I am over the age of 18, competent to testify, and have person knowledge of the matters stated herein.

    2.    I am a resident of the United States Virgin Islands.

    3.    In 2021, Jon Gordon, Alex Fine, and myself (collectively, the "Plaintiffs") created a new cryptocurrency platform called the Movement DAO ("DAO" or "Movement DAO").

    4.    We intended for the Movement DAO to function as an online community, with community members investing capital into the DAO endowment.  That endowment would then be invested, and the proceeds from the investment returns would be used to fund DAO community projects.

DocuSign Envelope ID: 86E2473C-3294-4335-9F23-710472070565

5.      As of February 7, 2022, the DAO endowment Gnosis account contained over $16,000,000.   The DAO endowment's Gnosis safe account has the blockchain address: 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6.      A true and correct copy of the Etherscan.org account statement and transaction history of the DAO Endowment Gnosis account as of February 22, 2023 is attached as **Exhibit 1**.  That transaction history shows deposits valued over $16,000,000 entering into the DAO endowment Gnosis account in February 2022.

6.      Jon Gordon, Alex Fine, and I collectively invested over $16 million into the DAO endowment Gnosis account, over 97% of its total assets.  The amount invested by all other DAO community members is less than $300,000.   A true and correct copy of the Etherscan.org transaction records reflecting the transfer of approximately $16 million from accounts that acted as custodians for those assets are attached hereto as **Exhibits 50–52, 54–56**.

   a.   **Exhibit 50** shows a transfer of $3,000,000 in DAI cryptocurrency was made from 0xD78368092Cb1079e3DdaE7f192F5dCdE53949CCD, a blockchain wallet that acted as a custodian for Plaintiff Fine's funds, to the DAO endowment Gnosis account on February 2, 2022.

   b.   **Exhibit 51** shows a transfer of $9,786,795 in DAI cryptocurrency was made from  0x752515a3A1091b9f1c04416CF79D1F14d2340085,  a blockchain wallet that acted as a custodian for my funds, to the DAO endowment Gnosis account on February 2, 2022.

   c.   **Exhibit 52** shows a transfer of $1,200,000 in DAI cryptocurrency was made from 0x58F09dd6DF8dFCe8c209A00BaE4348002BACac1d, a blockchain wallet that acted as a custodian for my funds, to the DAO endowment Gnosis account on February 2, 2022.

**PLAINTIFF0000008**

d.  **Exhibit 53** shows a transfer of $200,000 in DAI cryptocurrency was made from 0xDe10F01e3f9bF288eF7A91cb4744B4AF3F2797F0, a blockchain wallet controlled by Plaintiff Fine, to the DAO endowment Gnosis account on February 7, 2022.

e.  **Exhibit 55** shows a transfer of 79.93 in ETH cryptocurrency (valued at the time as approximately $214,000) was made from 0xfE021e62637Cf8B880a76b09E94904693D38256A, a blockchain wallet that acted as a custodian for the funds of Plaintiff Gordon, to the DAO endowment Gnosis account on February 2, 2022.

f.  **Exhibit 56** shows a transfer of 687.47 in ETH cryptocurrency (valued at the time as approximately $1,842,302) was made from 0x58F09dd6DF8dFCe8c209A00BaE4348002BACac1d, a blockchain wallet that acted as a custodian for my funds, to the DAO endowment Gnosis account on February 2, 2022

7.  The Plaintiffs described the DAO concept in a white paper called the "Gitbook" published online on February 2, 2022. A true and correct copy of the Gitbook is attached hereto as **Exhibit 2**.

8.  The Gitbook states that no monies from the DAO Endowment would ever be spent; only the proceeds from the endowment's investment returns would be used to fund projects or support the DAO's operating expenses. **Exhibit 2** at 20 ("Money in the endowment cannot be spent.").

9.  Defendant Phillips created the DAO endowment's Gnosis account. The account had seven signatories. **Exhibit 2** at 7.

PLAINTIFF0000009

10.     Plaintiffs were three of the signatories on the DAO endowment's Gnosis account. Two other signatories on the DAO endowment's Gnosis account were Defendant Phillips and what I now understand to be a sham entity called Dao-lawfirm.eth that was controlled by Defendant Phillips.  **Exhibit 2** at 7 .

11.     The Gitbook described the unique, decentralized governance structure of the DAO. Once the DAO launched, decisions relating to governance, funding, and a variety of other subjects would be made by a community vote: a member would submit a proposal to the entire DAO community, and the DAO community would vote to determine whether the proposal was adopted or defeated.  **Exhibit 2** at 11, 27.

12.     According to the Gitbook, the number of votes a community member could exercise would be determined based on the amount of capital they contributed to the DAO endowment. **Exhibit 2** at 9.

13.     The more money a community member invested into the DAO endowment, the more votes they were able to cast on a proposal.  Proposals would be posted and votes would be cast on an online platform called Snapshot.org, which would display proposals and record vote tallies.  The Beta version of the DAO's Snapshot.org voting platform is available to view at https://snapshot.org/#/snapshot.movedao.eth.

14.     DAO community members would be issued "voting tokens"—called MOVE tokens—and would deploy those tokens to vote on proposals. **Exhibit 2** at 8.

15.     The concepts described in Paragraphs 11 through 14 were to take effect upon the launch of the DAO.  But due to Defendant Phillips's conduct, the DAO never launched.

PLAINTIFF0000010

16.   In July 2021, Plaintiffs were looking to hire a code developer who could construct the DAO's systems architecture. Plaintiff Gordon and I interviewed Phillips, who represented he had experience as a coding engineer and had worked for the Securities and Exchange Commission.

17.   Plaintiff Gordon and I were impressed with Phillips's experience with the SEC because we wanted to be sensitive to regulatory compliance issues in the cryptocurrency space.

18.   Based on Phillips's representations about his professional experience, we hired him. At no point during the hiring process did Phillips disclose that he had been previously convicted of federal wire fraud, mail fraud, and money laundering in connection with a startup technology company. A true and correct copy of an FBI press release relating to Phillips's conviction is attached hereto as **Exhibit 3**.



19.

20.

21.

22.

PLAINTIFF0000011

23.     Based on Phillips's prior criminal convictions, I now understand that Phillips ███

██████████████████████████████████████

24.     In October 2021, I brought Plaintiff Alex Fine in as head of the DAO project. Together, Plaintiff Fine and Phillips worked together to author the Gitbook.  A true and correct copy of a text exchange reflecting this work is attached hereto as **Exhibit 44**.

25.     During the Gitbook's creation and after its publication, Plaintiffs Fine, Gordon, and I directed Phillips to construct the DAO in accordance with the Gitbook, and Phillips, at least initially, acted accordingly.  For example, Phillips established the DAO endowment's Gnosis account, as described in the Gitbook.  In early 2022, Plaintiffs Gordon, Fine, and I contributed over $16 million to that account. The DAO endowment's Gnosis safe account has the blockchain address: 0x143cC0A996De329C1C5723Ee4F15D2a40c1203c6.  *See* **Exhibit 2** at 7.

26.      Phillips issued authorization tokens for the DAO endowment's Gnosis account to himself and his accomplices, including a sham law firm called Dao-lawfirm.eth, which I understand Phillips controls.

27.     Phillips then induced me and Plaintiff Fine to entrust him with our authorization tokens for the DAO endowment's Gnosis account by repeatedly assuring us he was trustworthy, including by representing he had heightened ethical obligations because of his affiliation with a law firm and because he had a security clearance with the SEC.  Plaintiff Fine and I trusted Phillips based on those representations, which made us comfortable making him custodian of our authorization tokens for the DAO endowment's Gnosis account.

28.     Phillips created a Beta version of the Snapshot—the platform that would enable DAO community members to post proposals and hold votes on them, as described in the Gitbook.

PLAINTIFF0000012

See **Exhibit 2** at 27. As part of that process, Phillips represented to Plaintiffs that he created voting tokens based on the contributions that DAO community members made to the DAO endowment.

29.     Because Plaintiffs Gordon, Fine, and I contributed over $16 million to the DAO endowment, we should have held over 97% of the voting tokens—and thus an overwhelming amount of the voting power—in the DAO community.

30.     I contributed the majority of the over $16 million investment into the DAO endowment, so I should have held well over 50% of the voting tokens.  However, Phillips induced me to entrust him to be custodian of my voting tokens through repeated assurances that he would vote my tokens as I directed him and that he was trustworthy.

31.     Plaintiff Fine similarly agreed to let Phillips act as custodian for some, but not all, of his voting tokens.

32.     Although the voting machinery was being created and tested in 2022, the DAO had not launched and the governing mechanisms that Phillips had created had no authority.

33.     

34.     Phillips took direction from Plaintiffs and kept Plaintiffs informed of his activities—at least for a time.  Phillips hired Defendant Benjamin Reed as a developer for the DAO project.

35.     The DAO launch did not occur in January 2022, as scheduled.  At that point, Phillips had the most comprehensive knowledge of the DAO's architecture of any member of the project.

PLAINTIFF0000013

36.    Defendant Phillips fostered a hostile working relationship with Plaintiff Fine. Phillips seemed to regularly criticize and admonish him.  At the same time, Phillips never missed an opportunity to highlight his own experience, skill set, and competency as someone who should take over the DAO.  For example, the 1,000+ hours of code that Plaintiff Alex had spent creating for the DAO was discarded because Phillips claimed it was "low quality" and that he should rewrite it all.  Plaintiff Gordon and I were duped by his posturing.  In February 2022, Plaintiff Fine decided to step away from day-to-day oversight of the project.  As Plaintiff Fine withdrew, Phillips filled the vacuum and assumed the primary leadership role of the project ███████████████████████

██████████████████████████████████

37.    By August 2022, Phillips began advocating to myself and Plaintiff Gordin that all spending on the DAO project should be exclusively dedicated to development.  Phillips also advocated that $1.75 million from the DAO endowment should be transferred to a DAO-affiliated account he controlled to pay for "development-related" expenses.  The account that Phillips wanted the assets transferred into was known as the DAO Developer Multisig.

38.    Plaintiffs ultimately agreed to authorize the transfer on the condition that Phillips would complete and launch the DAO by January 2023.  Plaintiffs did not discuss or approve any other authorizations or grants of authority to Phillips.

39.    On August 30, 2022, $1.75 million was transferred from the DAO endowment account to the DAO Developer Multisig account.  The blockchain address for the DAO Developer Multisig account is: 0x2187e6a7c765777d50213346F0Fe519fCA706fbD.  A true and correct copy of the Etherscan.org transaction record reflecting this transaction is attached hereto as **Exhibit 45**.

PLAINTIFF0000014

40.     On August 22, 2022, Phillips for the very first time, both through aliases and accomplices, posted proposals to the Snapshot.org page.  A true and correct copy of these Snapshot proposals is attached hereto as **Exhibits 5-12**.

41.     Proposal MIP-0003 purported to authorize the transfer of $1.75 million in DAI cryptocurrency from the DAO endowment into the DAO Developer Multisig account – the same amount that Plaintiff Gordon and myself authorized days earlier.  A true and correct copy of this proposal is attached hereto as **Exhibit 8.**

42.     Proposal MIP-0000 purported to create formal entities to faciliate DAO operations and to excuse Phillips from maintaining any record or accounting of costs, fees, or other expenses associated with the DAO.  A true and correct copy of this proposal is attached hereto as **Exhibit 5**.  Plaintiffs never authorized this proposal.

43.     Proposal MIP-0004 purported to authorize the advance of funds to Phillips and other "Certain Members" (i.e., Phillips's accomplices) under the auspices of indemnification for potential legal actions in the future.  A true and correct copy of this proposal is attached hereto as **Exhibit 9**.  Plaintiffs never authorized this proposal.

44.     Proposal MIP-0000 also purported to appoint Phillips, the sham law firm dao-lawfirm.eth, Defendant Benjamin Reed, and his other accomplices as "Service Providers," which would purportedly entitle them to fees from the DAO.  Plaintiffs never authorized this proposal.

45.     MIP-0007 purported to give Phillips and his fellow "Service Providers" discretion to deposit "funds of the DAO" into entities created by him as they deem 'necessary or advisable."  A true and correct copy of this proposal is attached hereto as **Exhibit 12**.  Plaintiffs never authorized this proposal.

PLAINTIFF0000015

46.     MIP-0007 also purported to retroactively ratify as authorized "every action that has been taken, authorized, unauthorized, and with respect to the DAO by the Service Providers, including…the transfer of cryptocurrency to and from Gnosis [accounts]."

47.     These proposals were inconsistent with the original vision laid out in the Gitbook. More fundamentally, the proposals did not have any binding effect, as the Snapshot.org platform would only govern the DAO after the DAO had launched.

48.     During this time, Phillips told Plaintiffs that development was proceeding according to plan and that he was doing what needed to be done to get the DAO up and running. He did not provide copies of the August 22, 2022 proposals to me or Plaintiffs Gordon and Fine, he did not make us aware of the powers and authorizations he sought in the proposals, and we never voted on the proposals.  Instead, Phillips induced us to pay no mind to what he was doing in the Beta environment of the DAO community's Snapshot.org space.

49.     For example, when we questioned Phillips about his proposal-posting activity, he assured us that he did not believe the proposals had any authority by stating that no one reads them anyway.

50.     Despite being the founders of the DAO and possession over 97% of the voting power in the DAO community, Plaintiffs did not vote on Phillips's August 2022 proposals. The only members of the DAO community that voted on these proposals were Phillips and/or his aliases and accomplices.

51.     Although Plaintiffs Gordon, Fine, and I had been induced to overlook Phillips's scheming on SnapShot.org (a Beta environment that had no authority in any event), Plaintiff Fine was concerned about the $1.75 million transferred from the DAO endowment Gnosis account,

PLAINTIFF0000016

which spurred him to consult with me and Plaintiff Gordon in September 2022 about what exactly Phillips was up to.

52.     Over the next two months, we attempted to obtain explanations for Phillips's actions. Unsatisfied with the justifications he gave us, in October and November 2022 Plaintiff Fine entered into discussions with myself and Plaintiff Gordon about the viability of the DAO and whether Plaintiffs should unwind their money from the DAO endowment.

53.     By December 2022, Plaintiffs Gordon, Fine, and I concluded that the best course was to unwind the DAO endowment entirely and refund all DAO endowment assets to all members of the DAO community to make each of them whole.  I referred to this as the redemption offer.

54.     Because the DAO had incurred substantial costs at that point, I, as the principal investor in the project, agreed to absorb those losses out of my own share of the DAO endowment.

55.     I asked Phillips to announce to the DAO community that each community member's investment into the DAO endowment would be redeemed and their assets returned. Phillips did not make that announcement to the DAO community.

56.     Phillips told us that he would need to consult with the sham law firm, Dao-lawfirm.eth to make sure the unwinding of the project was done completely above board.

57.     After this conversation, Phillips became distant and slowed his communications with us.  By the end of December 2022, Phillips had still not presented the redemption offer to the DAO community, despite our repeated instructions for him to do so.

58.      On January 2, 2023, Phillips, through both aliases and accomplices, including Defendant Benjamin Reed, introduced two proposals on Snapshot.org—MIP-0011 and MIP-0012. In the proposal titled "MIP-0011 Pay Deferred Legal Fees from 2022," Defendants Phillips and Reed proposed that the DAO endowment should pay DAO-lawfirm.eth $58,831.02 in DAI

PLAINTIFF0000017

cryptocurrency for legal services the "law firm" rendered in 2022.  This proposal falsely represented that Plaintiff Gordon's Snapshot.org alias—jimmyethworld.eth—reviewed and "confirmed that this proposal accords with the DAO's agreement with the Service Provider, dao-lawfirm.eth."  A true and correct copy of MIP-0011 is attached hereto as **Exhibit 13**.

59.     In fact, Plaintiffs Gordon and Fine voted against the proposal.  Plaintiff Gordon even posted the following statement along with his vote:  "This proposal should be removed for making false claims.  This was not approved by me, nor should that have been stated."  **Exhibit 13** at 9.

60.     In Defendants' other fraudulent proposal titled "MIP-0012 Pay Deferred Service Provider Fees From 2022," Defendants sought authorization to transfer $334,487 in DAI cryptocurrency from the DAO endowment to an account controlled by Phillips.  That account has the blockchain address: 0x752515a3A1091b9f1c04416CF79D1F14d2340085.  That account is associated with the following aliases:  *service-provider.eth and dao-lawfirm.eth. A true and correct copy of MIP-0012 is attached hereto as **Exhibit 14**.

61.     Plaintiffs Gordon, Fine, and I understood MIP-0011 and MIP-0012 to be fraudulent because we understood that funds in the DAO endowment Gnosis account were not to be touched without our explicit authorization.

62.     During the course of Phillips's work on the DAO, he purported to work with a law firm described in his proposals as "Dao-lawfirm.eth."  For example, in a proposal titled "MIP-0020 Proposal for Payout of Deferred Legal Expenses," Defendants stated that "in addition to acting as the DAO's service provider, dao-lawfirm.eth also provided legal services."  A true and correct copy of MIP-0020 is attached hereto as **Exhibit 15**.

PLAINTIFF0000018

63.     Phillips presented the Dao-lawfirm.eth to me and the other Plaintiffs as the Law Firm of Reed Yurchak and Stephen Hay.

64.     On February 6, 2023, attorney Reed Yurchak wrote an email to me explaining that "the last payment my office received was for a March 2022 invoice" and that there had been no outstanding invoices since March 2022.  A true and correct copy of the email chain containing this communication is attached hereto as **Exhibit 16.**

65.     On January 6, 2023, I wrote to Phillips and demanded that he provide an explanation for the fraudulent conduct relating to the January 2, 2023 proposals MIP-0011 and MIP-0012.  A true and correct copy of an email chain containing this communication is attached hereto as **Exhibit 17**.

66.     After receiving no response to my January 6, 2023 email, I wrote to Phillips again on January 29, 2023, alerting him of the grave nature of his actions to attempt to prevent the unwinding of the DAO and the redemption of each community member's investment.  A true and correct copy of an email chain containing this communication is attached hereto as **Exhibit 17**.

67.     On February 2, 2023, Defendants Phillips and Reed, through aliases and accomplices, introduced several proposals on Snapshot.org—MIP-0009, MIP-0010, and MIP-0014–0021.  But before doing so, Phillips disabled the voting tokens assigned to me, Plaintiff Gordon, and Plaintiff Fine to ensure that we could not vote against the proposals.

68.     Proposal MIP-0014 purported to disable the authorization tokens to the DAO endowment Gnosis account assigned to me, Plaintiff Gordon, and Plaintiff Fine and replace  as authorized signatories on that account.  A true and correct copy of MIP-0014 is attached hereto as **Exhibit 18**.

PLAINTIFF0000019

69.     Proposal MIP-0015 purported to ratify the termination of our ability to vote in the DAO community based on the pretext that our conduct was inconsistent with the values of the DAO.  A true and correct copy of MIP-0015 is attached hereto as **Exhibit 19**.

70.     Proposal MIP-0016 purported to reallocate the distribution of voting power now that we had been terminated from the DAO community.  A true and correct copy of MIP-0016 is attached hereto as **Exhibit 20**.

71.     Proposal MIP-0009 purported to authorize the transfer of 10 Ethereum and $12,200 DAI from the DAO endowment Gnosis account to an account controlled by Phillips for the "Launch of DAOLabs Beta Services."  A true and correct copy of Proposal MIP-0009 is attached hereto as **Exhibit 21**.

72.     Proposal MIP-0010 purported to transfer $50,000 DAI from the DAO endowment Gnosis account to the DAO Developer Multisig account—an account controlled by Phillips—for the purpose of "retaining counsel."  A true and correct copy of Proposal MIP-0010 is attached hereto as **Exhibit 22**.

73.     Proposal MIP-0017 purported to authorize the transfer of $511,794 DAI and 41,007 Ethereum from the DAO endowment Gnosis to the DAO Developer Multisig account—an account controlled by Phillips—for "Outstanding Operational Expense Payouts."  A true and correct copy of MIP-0017 is attached hereto as **Exhibit 23**.

74.     Proposal MIP-0018 purported to transfer $349,035 DAI from the DAO endowment Gnosis account to the DAO Developer Multisig account—an account controlled by Phillips—for "Deferred 2022 Developer Payouts."  A true and correct copy of MIP-0018 is attached hereto as **Exhibit 24**.

PLAINTIFF0000020

75.     Proposal MIP-0019 purported to authorize the transfer of $334,487 DAI from the DAO endowment Gnosis account to the DAO Developer Multisig account—an account controlled by Phillips—to be held "in escrow" until Phillip sand his accomplices decide to dedicate those funds to a new service provider and/or attorneys.  A true and correct copy of MIP-0019 is attached hereto as **Exhibit 25**.

76.     Proposal MIP-0021 purported to authorize the transfer of $5,354,433 DAI from the DAO endowment Gnosis account to the DAO Developer Multisig account—an account controlled by Phillips for the "DAO's 2023 Operational Budget."  A true and correct copy of MIP-0021 is attached hereto as **Exhibit 27**.

77.     Proposal MIP-0020 purported to authorize the transfer of $2,558,831 DAI from the DAO endowment Gnosis account to the Dao-lawfirm.eth—an entity controlled by Phillips for "Deferred Legal and Indemnification Expenses."  A true and correct copy of MIP-0020 is attached hereto as **Exhibit 26**.

78.     On information and belief, the only members of the DAO community that voted on these proposals were Defendants, their accomplices, and a handful of individual DAO community members who had been duped by Defendants' fraudulent scheme.  These proposals all passed with no votes against.

79.     On February 2, 2023, two large transfers were made out of the DAO endowment Gnosis account to the DAO Developer Multisig account controlled by Phillips in the following amounts:  (1) $7,500,000 in DAI ($7,500,000 in USD); and (2) over 800 Ethereum ($1,367,408 in USD).  A true and correct copy of the Etherscan.org transaction records reflecting these transaction is attached hereto as **Exhibits 28–29**.

PLAINTIFF0000021

80.     On February 2, 2023, Defendants caused the following transfers to be made from the DAO Developer Multisig to accounts believed to be under the control of Defendants: (1) $20,000 in DAI; (2) $100,000 in DAI; (3) $15,000 in DAI; (4) $592,000 in DAI; (5) $250,000 in DAI; (6) $500,000 in DAI; (7) 39.53 in Ethereum; (8) $1,058,000 in DAI; (9) $322,034.67 in DAI; and (10) $50,000 in DAI.  A true and correct copy of the Etherscan.org transaction records reflecting these transactions are attached hereto as **Exhibits 30-39**.

81.     We have reason to believe that the assets identified in Paragraph 80 ended up in accounts controlled by Defendants and their accomplices.  For example, Phillips transferred $1,058,000 directly to an account tied to his known Snapshot alias @tankbottoms.eth.  *See* **Exhibit 37**.  The blockchain address for the account that received the above-referenced transfer is: 0x5d95baEBB8412AD827287240A5c281E3bB30d27E.     @tankbottoms.eth is an alias for Defendant Phillips.  He used this alias to identify himself in the Gitbook.  *See* **Exhibit 2** at 7.

82.     Three of the transfers identified in Paragraph 80 (totaling $1,164,034.67) were made directly to the account of Phillips's accomplice, Defendant Reed.  *See* Exs. 33, 34, 38 . The blockchain address for the account that received the above-referenced transfer is: 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c.  That account is associated with the alias Benreed.eth.

83.     The rest of the assets identified in Paragraph 80 were sent to accounts that Plaintiffs Fine, Gordon, and I reasonably believe are owned or controlled by Defendants.  None of the recipient accounts have presented the DAO with invoices to establish they are legitimate vendors or service providers to the DAO.

84.     Plaintiffs first discovered the unauthorized transfers identified in Paragraph 80 on February 4, 2023 and immediately attempted to contact Phillips for an explanation.

PLAINTIFF0000022

85.     By February 6, 2023, Plaintiffs demanded the return of the Gnosis account authorization keys and an accounting of all DAO expenditures to date.  A true and correct copy of an email chain containing that communication is attached hereto as **Exhibit 17**.

86.     In response to Plaintiffs' February 6, 2023 email, Phillips refused, claiming that he was under no obligation to provide any accounting to Plaintiffs.  A true and correct copy of an email chain containing this communication is attached hereto as **Exhibit 17**.

87.     On February 6, 2023, Plaintiffs first discovered that Phillips had been convicted of federal wire fraud, mail fraud, and money laundering in connection with his involvement in a technology startup in 2011.  A true and correct copy of an FBI Press Release about his conviction is attached hereto as **Exhibit 3**.

88.     Blockchain ledgers are public and a number of third-party tools allow for a review the blockchain transactions associated with a specific wallet, including Etherscan.org.  Based upon my review of the blockchain transaction history of the DAO endowment and DAO Developer Multisig accounts, it appears that Defendants currently are moving misappropriated DAO assets out of cryptocurrency and into dollars.

89.     On February 13, Defendant Reed caused 86 ETH to be transferred from benreed.eth to an unknown cryptocurrency holding wallet with the address: 0x64d6A4C28868d9dD9eA650c37F7d0090986aC1CE.   A true and correct copy of the Etherscan.org transaction record reflecting this transaction is attached hereto as **Exhibit 40**.

90.     On February 13, Defendant Phillips, operating under the alias *service-rovider.eth, caused to be transferred $250,000 in DAI from the DAO Developer Multisig account to benreed.eth.  A true and correct copy of the Etherscan.org transaction record reflecting this transaction is attached hereto as **Exhibit 41** .

PLAINTIFF0000023

91.     On February 15, "unknown" persons transferred 86 ETH from the blockchain address  0x64d6A4C28868d9dD9eA650c37F7d0090986aC1CE—the same address Defendant Reed transferred 86 ETH in Exhibit 40—to the blockchain address 0xa26e73C8E9507D50bF808B7A2CA9D5dE4fcC4A04, which I have reason to believe is a Robin Hood cryptocurrency exchange account. Robin Hood maintains a cryptocurrency exchange that enables you to convert cryptocurrency into US dollars. A true and correct copy of the Etherscan.org transaction record reflecting this transaction is attached hereto as **Exhibit 42**.

92.     Phillips still has complete control over the DAO endowment Gnosis account, nearly all of whose assets belong to Plaintiffs. He also has complete control over the DAO Developer Multisig account, to which he is transferring assets from the DAO endowment account.

93.     Phillips is a sophisticated operator, well-versed in blockchain technology, who is capable of moving funds to and through various levels of anonymous cryptocurrency wallets. Once Phillips moves funds out of the Gnosis SAFE Account, it will be difficult (if not impossible) to ever track down and recover those funds.

94.     I have completed an analysis of the transaction histories of various blockchain addresses to determine where the assets from the DAO endowment and other DAO-affiliated accounts have been transferred.

95.     On February 2, 2023, a $100,000 transfer of DAI cryptocurrency was made from the DAO Developer Multisig account 0x2187e6a7c765777d50213346F0Fe519fCA706fbD to the blockchain address  0x91898f9103cDBA1546DE834F6E26f019E09A0d4B, which I believe is under the control of Defendant Phillips. A true and correct copy of the Etherscan.org transaction record reflecting the above-referenced transaction is attached as **Exhibit 31**.

PLAINTIFF0000024

DocuSign Envelope ID: 86E2473C-7304-4385-8F32-710472070565

ⓘ ERC-20 Tokens Transferred:

▸ From 0x2187e6...CA706fbD To 0x91898f...E09A0d4B For 100,000  **$99,985.40**

🌐 Dai Stableco... (DAI...)

96.     On February 2, 2023, a $15,000 transfer of DAI cryptocurrency was made from the DAO Developer Multisig account 0x2187e6a7c765777d50213346F0Fe519fCA706fbD to the blockchain address 0x57a16a385e86cd215deF121E6887D23Be8080d37, which is associated with the alias cookieslayer.eth and I believe to be under the control of Defendant Phillips.  A true and correct copy of the Etherscan.org transaction record reflecting the above-referenced transaction is attached as **Exhibit 32.**

ⓘ ERC-20 Tokens Transferred:

▸ From 0x2187e6...CA706fbD To 0x57a16a...e8080d37 For 15,000  **$14,997.81**  🌐 Dai Stableco... (DAI...)

97.     On February 2, 2023, a $592,000 transfer of DAI cryptocurrency was made from the DAO Developer Multisig account 0x2187e6a7c765777d50213346F0Fe519fCA706fbD to the blockchain address 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c, which is associated with the alias benreed.eth and is under the control of Defendant Reed (as the alias suggests).  A true and correct copy of the Etherscan.org transaction record reflecting the above-referenced transaction is attached as **Exhibit 33.**

ⓘ ERC-20 Tokens Transferred:

▸ From 0x2187e6...CA706fbD To 0xA4e6C2...E916931c For 592,000  **$591,913.57**

🌐 Dai Stableco... (DAI...)

98.     On February 2, 2023, a $1,058,000 transfer of DAI cryptocurrency was made from the DAO Developer Multisig account 0x2187e6a7c765777d50213346F0Fe519fCA706fbD to the

PLAINTIFF0000025

blockchain address 0x5d95baEBB8412AD827287240A5c281E3bB30d27E, which is associated with the alias tankbottoms.eth and is under the control of Defendant Phillips. *See* paragraph 81 *supra*. A true and correct copy of the Etherscan.org transaction record reflecting the above-referenced transaction is attached as **Exhibit 37**.

⑦ ERC-20 Tokens Transferred:

▸ From 0x2187e6...CA706fbD To 0x5d95ba...bB30d27E For 1,058,000   $1,057,845.53
Dai Stableco... (DAI...)

99.     **Exhibit 41** shows that on February 13, 2023, a $250,000 transfer of DAI cryptocurrency was made from the DAO Developer Multisig account 0x2187e6a7c765777d50213346F0Fe519fCA706fbD to the blockchain address 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c, which is associated with the alias benreed.eth and is under the control of Defendant Reed. **Exhibit 40** shows a transfer of 86 ETH (valued at approximately $140,000 USD) was made on February 15, 2023 from the blockchain address 0xA4e6C2B6264652444B3F0cc1bB37496AE916931c, which is associated with the alias benreed.eth, to an unknown cryptocurrency holding wallet with the blockchain address 0x64d6A4C28868d9dD9eA650c37F7d0090986aC1CE, which I have reason to believe is under the control of Defendants.

⑦ ERC-20 Tokens Transferred:        ▸ From 0x2187e6...CA706fbD To 0xA4e6C2...E916931c For 250,000   $249,889.25   Dai Stableco... (DAI...)

⑦ From:          ◇ benreed.eth ⑦

⑦ To:            0x64d6A4C28868d9dD9eA650c37F7d0090986aC1CE ⑦

⑦ Value:         ◆ 86.080974390183541355 ETH   $141,644.52

100.    On February 10, 2023, a $3877.50 transfer of DAI cryptocurrency was made from the DAO Developer Multisig account 0x2187e6a7c765777d50213346F0Fe519fCA706fbD to the

PLAINTIFF0000026

DocuSign Envelope ID: 36E2473C-7304-4385-8F32-710472070565

blockchain address 0x752515a3A1091b9f1c04416CF79D1F14d2340085, which is associated

with the alias of the sham law firm Dao-lawfirm.eth and the alias *service-provider.eth, which is

under the control of Defendant Phillips.  A true and correct copy of the Etherscan.org transaction

record reflecting the above-referenced transaction is attached as **Exhibit 48**.

> **From** 0x2187e6...CA706fbD **To** 0x752515...d2340085 **For** 3,877.5   $3,870.43   Dai Stableco... (DAI...)

101.    On February 2, 2023, a $500,000 transfer of DAI cryptocurrency was made from

the DAO Developer Multisig account 0x2187e6a7c765777d50213346F0Fe519fCA706fbD to an

unknown cryptocurrency holding wallet with the blockchain address

0x607d56643673649bd25AA47325A7a6AFeffc3B4a, which I have reason to believe is under the

control of Defendants.  A true and correct copy of the Etherscan.org transaction record reflecting

the above-referenced transaction is attached as **Exhibit 49**.

ERC-20 Tokens Transferred:          > **From** 0x2187e6...CA706fbD **To** 0x607d56...effc3B4a **For** 500,000   $500,000.00   Dai Stableco... (DAI...)

102.    As the foregoing examples go, Defendants are utilizing numerous blockchain

wallets to dissipate assets from the DAO Develop Multisig account, which itself improperly

received approximately $8.5 million in DAO endowment assets on February 2, 2023.

103.    If Defendants are not immediately enjoined from dissipating the remaining funds

from the DAO endowment's Gnosis account, Plaintiffs will suffer irreparable injury, as

Defendants will continue to dissipate funds from that account and other DAO-affiliated accounts,

like the DAO Developer Multisig account.  When Plaintiffs Gordon, Fine, and I invested in this

project, we placed over $16 million in the DAO endowment Gnosis account.  Today, that account

only has $5,514,405.32 remaining.  *See* **Exhibit 1** at 1.

104.    Plaintiff Fine is a citizen of California.

PLAINTIFF0000027

DocuSign Envelope ID: 86E2473C-7304-4335-8F32-710472070565

105.    Plaintiff Gordon is a citizen of Texas.

106.    On information and belief, Defendant Phillips is a citizen of Florida and Defendant Reed is a citizen of Washington.

107.    A substantial portion of Phillips's conduct occurred in Miami, Florida, where he undertook efforts to develop the DAO's system architecture and from where he executed his fraudulent scheme.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of February 2023.

DocuSigned by:

*Ryan Breslow*

B80590C4C546488...

Ryan Breslow

PLAINTIFF0000028