UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| RYAN BRESLOW, ALEX FINE, and JON GORDON,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>MARK PHILLIPS and BENJAMIN REED,<br><br>　　　　Defendants. | Action No.: 23-cv-20727-ALTMAN/Reid<br><br>Honorable Roy K. Altman |
| MOVEMENTDAO and MARK PHILLIPS,<br><br>　　　　Counterclaim-Plaintiffs<br><br>v.<br><br>RYAN BRESLOW, ALEX FINE, and JON GORDON,<br><br>　　　　Counterclaim-Defendants. | |

**PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSE
REGARDING MOTION FOR CLARIFICATION**

Plaintiffs Ryan Breslow, Alex Fine, and Jon Gordon ("Plaintiffs") file the following Second Supplemental Response pursuant to the Court's June 9, 2023 Order, ECF No. 109.

On June 9, 2023, the Court ordered Defendants to provide an accounting to the Court showing that Defendants had complied with the Court's Temporary Restraining Order, ECF No. 18, or else explaining why Defendants could not do so. ECF No. 109. The Court previously ordered Defendants to provide such an accounting on March 22, 2023, when it directed Defendants to show good cause why the Court should not hold them in contempt. ECF No. 47. Defendants have generated several versions of this accounting during the litigation, *see, e.g.*, ECF Nos. 51, 86-3, and Plaintiffs have repeatedly demonstrated that Defendants' accountings have been inaccurate, untrustworthy, and incomplete, *see, e.g.*, ECF Nos. 52, 88. On June 26, 2023, pursuant to the Court's June 9, 2023 Order, Defendants provided the latest version of their accounting. *See* July 6, 2023 Declaration of Christopher T. Berg ("Berg Decl."), Ex. 2.

Defendants' June 26 accounting is no better than its predecessors. It shows that nearly all the TRO assets that Defendants have not returned are in the possession of developers who Defendants control. Yet Defendants have provided nothing—no invoices, contracts, or bank statements—to show the legitimacy of these transfers or the accuracy of their accounting. Defendants provided only a self-serving spreadsheet with no corroborating documents. It was incumbent on Defendants to provide supporting documentation, and they have failed to do so. Defendants similarly failed to provide an accounting of TRO assets they used to pay for the expenses of entities within their control—specifically, DAOLabs and Meow LLC. Lastly, Defendants failed to provide an accounting of the windfall they received from arbitraging TRO assets during the five-month period (and counting) that they refused to comply with the TRO.

The June 26 accounting confirms that Defendants continue to be in noncompliance with the TRO and continue to dissipate and conceal assets subject to it.

### A.     Transfers to developers

The June 26 accounting shows that $561,467.50 in TRO assets were transferred to "third parties" and that $450,838.84 of that amount was transferred to developers hired by Defendant Mark Phillips.  *See* Berg Decl., Ex. 2 (Tab "third-party-control").  Defendants exercise control over these developers, and can direct them to return TRO assets, but Defendants have refused to do so.

The conduct of developer Mikhail Radin demonstrates that Defendants exercise control over the developers who received TRO assets.  Defendants blatantly violated the TRO by sending Mr. Radin multiple transfers of TRO assets after the February 28, 2023 TRO was issued.  *See* ECF No. 88-8 (showing Defendants transferred $240,000 to Mr. Radin between March 8 and 10, 2023).  At the hearing on March 28, 2023, after Plaintiffs' counsel notified the Court that Defendants had failed to account for the TRO assets they converted into cash, the Court warned Defendants that it did "not want to find that after the TRO was entered money was disbursed in violation of the TRO.  That would be very bad for your client."  Berg Decl., Ex. 3 (March 28, 2023 Hearing Transcript) at 28:22–29:6.  Only after Defendants received that admonishment from the Court did Mikhail Radin return the post-TRO transfers he received from Defendants.  *See*  ECF No. 86-2 (Declaration of Mr. Radin explaining he returned the post-TRO transfers on April 13, 2023—approximately two weeks after the March 28 hearing).  Importantly, Mr. Radin did not unwind all transfers of TRO assets that he received—he only unwound the transfers that he received after the TRO issued—that is, the transfers the Court expressly warned would be "very bad' for Defendants.  *See* ECF No. 88-9 (Defendants' accounting showing the Mr. Radin

did not return the February 14, 2023 transfer of TRO assets from Defendants). That conduct demonstrates that Mr. Radin unwound the post-TRO transfers at Defendants' direction to save them from obvious contempt based on the clear warning from the Court. Accordingly, Defendants can exercise control over developers to return TRO assets when it suits their interest.

Plaintiffs have shown that transfers to developers were fraudulent because developer fees were already paid by a $1.75 million transfer in August 2022. *See, e.g.*, ECF No. 52 at 2–3; ECF No. 88 at 11–12. The June 26 accounting instead shows that not only did Defendants "double-pay" developers using TRO assets, but that they also provided the developers with four-months' worth of salary "advances"—untethered to any documentation that shows how these advances were calculated, why the developers were entitled to them, what documents authorized the advances, or what work the developers would perform in exchange for these payments. *See* Berg Decl., Ex. 2 (Tab "third-party-control"). Defendants also provided no response to Plaintiffs' evidence showing the amount paid to developers like Mihail Radin are far in excess of the invoices actually submitted for Movement DAO work. *See, e.g.*, ECF No. 88 at 12.

Despite Plaintiffs' evidence showing that the developer payments are fraudulent, Defendants presented no evidence accompanying their accounting—no invoices, contracts, or bank statements—to dispel or contradict the inference from Plaintiffs' evidence that Defendants transferred TRO assets to their allies and co-conspirators in an attempt to claim that TRO assets are outside Defendants' control. Defendants' recent accounting is replete with omissions and devoid of explanation; it does not come close to meeting good cause. Furthermore, Mr. Radin's conduct belies the notion that Defendants do not control the developers. Defendants' failure to return the $450,838.84 transferred to developers therefore is a failure to comply with the TRO that lacks good cause.

B.     **Transfers to entities Defendants control**

Defendants have failed to provide an accounting for the TRO assets spent on behalf of DAOLabs and Meow LLC—entities that Defendants control. The June 26 accounting shows that Defendants made a $18,669.89 transfer of TRO assets to DAOLabs and a $40,000 transfer of TRO assets to Meow, LLC. Berg Decl., Ex. 2 at 9 (Tab "third-party-control," Cells G28, G33). Defendants provide no good cause for why they have not directed those entities to return the TRO assets to Defendants. The June 26 accounting notes only that the transfers were made to pay off credit card debt for those entities. But that does not justify why the $18,669.89 and $40,000 amounts have not been returned by those entities. For example, Defendants do not claim that DAOLabs and MEOW LLC do not have any other funds. Defendants' failure to direct those entities to return the $18,669.89 and $40,000 constitutes a failure to comply with the TRO and shows that Defendants continue to conceal and dissipate TRO assets.

Defendants also have failed to comply with the Court's Order by failing to provide any details or documentary support about what costs and expenses were covered by the $18,669.89 and $40,000 transfers to DAOLabs and Meow LLC. The Court expressly directed Defendants to provide an accounting for "DAO Labs business expenses" that were paid for by TRO assets. Berg Decl., Ex. 3 at 28:22–29:6. In stark contrast, Defendants ask the Court to take their word that the $18,669.89 and $40,000 in credit card debt was actually for the legitimate expenses of those entities rather than purchases made for Defendants' benefit, without so much as providing a copy of the relevant credit card statements. That is directly contrary to the Court's express directive. The Court-ordered accounting requires documentary proof to establish the legitimacy of those transfers and the accuracy of Defendants' accounting, particularly because Plaintiffs already pointed out this accounting deficiency on May 22, 2023, *see* ECF No. 88 at 8–9.

Nevertheless, Defendants continue to snub their nose at the Court by refusing to provide that information.

### C. Defendants' arbitrage of Ethereum

Defendants have also failed to provide an accounting of how they profited from taking the TRO funds. On February 2, 2023, Defendants took from the DAO endowment account 7,500,000 DAI and 805 Ethereum. Berg Decl., Ex. 2 at 1 (Tab "summary," Cells G8, F9). But that is not what Defendants returned. Instead, they returned 4,229,450.97 DAI and 2005.10 Ethereum—totaling approximately $8,247,881.08. Berg Decl., Ex. 2 at 6 (Tab "returned-to-gnosis," Row 39). The fact that Defendants returned 2005.10 ETH, when they originally took 805 ETH, shows that they engaged in cryptocurrency arbitrage, converting the DAI they took from the DAO endowment into Ethereum, in order to profit from their theft. Defendants did not provide the Court with an accounting of how much money they gained as a result of that arbitrage. Any gains they received should have been returned to the DAO endowment, as the gains occurred after the TRO issued and were obtained as a direct result of their non-compliance. Defendants' failure to disclose and return these gains is a violation of the TRO.

Defendants likely generated a substantial sum from their arbitrage of TRO assets. Defendants did not disclose how much of the DAI they took was then converted into Ethereum. The Court can surmise that Defendants converted *at least* enough DAI to yield 1200.10 Ethereum.[1] On February 2, 2023, the value of Ethereum was $1,642.74. *See* Berg. Decl., Ex. 2 at 12 (Tab "transaction-costs," Row 46). The value of Ethereum on June 23, 2023, the last day Defendants returned Ethereum to the DAO endowment, was $1,893.48—a $250.74 difference.

---

[1] Defendants returned 2005.10 ETH to the DAO endowment but they originally took only 805 ETH, which indicates they converted DAI to at least 1200.10 ETH.

*See id.* at 6 (Tab "returned-to-gnosis," Cell L37).  If the Court assumes that Defendants converted DAI into 1200.10 ETH on February 2, 2023—the same day Defendants made the transfers out of the DAO endowment—then that 1200.10 ETH was worth approximately $300,913.00 *more* by the time of Defendants' last Ethereum deposit in the DAO endowment account on June 23, 2023.

Because the Court does not know how much DAI Defendants converted to Ethereum (and when), the Court cannot discern the extent of the windfall Defendants have enjoyed as a result of their theft.  The worst case scenario is that on February 2, 2023 (the day of the theft) Defendants immediately converted the stolen 7,500,000 DAI into Ethereum, which would have yielded 4565.54 ETH, in addition to the 805 ETH Defendants directly took from the DAO endowment, for a total of 5,370.54 ETH.  That amount of Ethereum was worth $10,169,010.08 on June 23, 2023—the last day Defendants returned Ethereum to the DAO endowment.[2]  That amount is $1,341,802.77 in excess of the $8,827,207.31 Defendants took from the DAO endowment.  *See* Berg Decl., Ex. 2 at 1 (Tab "summary," Row 11).  In that scenario, Defendants could have returned all the assets they took from the DAO endowment and pocketed the difference—a $1,341,802.77 windfall—all without breathing a word of it to the Court.

That is a massively misleading omission by Defendants.  The Court should require Defendants to provide an accounting of how they converted any TRO assets, including covering all cryptocurrency conversions that were made, the purpose of those conversions, and how much additional value Defendants generated by their arbitrage beyond the 7,500,000 DAI and 805 ETH taken on February 2, 2023.  Once that arbitrage amount has been established, the Court

---

[2]  5,370.54 ETH multiplied by $1,893.48 (the June 23, 2023 value of ETH) equals $10,169,010.08.

should direct Defendants to return that amount to the DAO endowment, because the increased value of Ethereum occurred during the period of Defendants' noncompliance with the TRO. *Compare* Berg Decl., Ex. 2 at 3 (Tab "returned-to-gnosis," Row 6—showing ETH value was $1,561,53 on March 7, 2023 (7 days after the TRO issued)) *with id.* at 6 (Tab "returned-to-gnosis," Row 37—showing ETH value was $1,893.48 on June 23, 2023 (the date of the last ETH transfer from Defendants to DAO endowment account)).  Not requiring Defendants to divest these ill-gotten gains would grant Defendants a windfall from the rise in cryptocurrency prices during the five-month period in which they refused (and continue to refuse) to comply with the TRO.

## CONCLUSION

For the foregoing reasons, Defendants have failed to comply with the TRO and the Court's June 9 Order.  These failures illustrate once again that Defendants continue to conceal and dissipate TRO assets.  Defendants should be held in contempt until (1) they provide a full accounting, complete with supporting documentation, of the TRO assets; (2) they direct their developer agents to return TRO assets in their possession, custody, or control; (3) they provide an accounting of their cryptocurrency arbitrage activity during the five-month period they refused to comply with the TRO, and (4) they return to the DAO endowment any proceeds Defendants gained from that arbitrage.

Dated: July 6, 2023

John K. Shubin, Esq.
Dylan M. Helfand, Esq.
Jamie L. Katz, Esq.
**SHUBIN & BASS, P.A.**
150 W Flagler Street, Suite 1420
Miami, FL 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
Email:  jshubin@shubinbass.com
           jkatz@shubinbass.com
           dhelfand@shubinbass.com

Christopher T. Berg
Benjamin J. Kussman
Andrew R. Iglesias
**ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP**
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
(310) 274-7100
Email:  cberg@egcfirm.com
           bkussman@egcfirm.com
           aiglesias@egcfirm.com

*Attorneys for Plaintiffs Ryan Breslow, Alex Fine, and Jon Gordon*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served by the Court's CM/ECF system on July 6, 2023 on all counsel of record.

                                                      */s/* Jamie L. Katz
                                                      Jamie L. Katz