UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20727-ALTMAN/REID

RYAN BRESLOW, *et al.*,

    Plaintiffs,

v.

MARK PHILLIPS, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION
ON MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction. [ECF No. 4]. Defendants filed a response in opposition, to which Plaintiffs filed a reply. [ECF No. 43, 48]. The matter was referred to the Undersigned by the Honorable Roy K. Altman, United States District Court Judge to issue a report and recommendation. [ECF No. 64]; *See* 28 U.S.C. § 636. (ECF No. 27). Consequently, I held an evidentiary and preliminary injunction hearing. [ECF Nos. 81, 92, 96]. Having carefully considered the briefing, the voluminous evidence advanced by both parties at the hearing, and the record, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Preliminary Injunction [ECF No. 4] be **GRANTED**.

    **I.**    **Background**

Plaintiffs Ryan Breslow, Alex Fine, and Jon Gordon brought this action against Defendants Mark Phillips and Benjamin Reed on February 24, 2023, for breach of fiduciary duty, fraud, and civil conspiracy. [ECF No. 1]. Plaintiffs also filed an *ex parte* application for entry of a temporary restraining order and order to show cause regarding a preliminary injunction against Defendants.

[ECF No. 4]. On February 28, 2023, the district court granted Plaintiffs' *ex parte* application for entry of a temporary restraining order.  [ECF No. 18]. In granting the TRO, the district court concluded that Plaintiffs had established a likelihood of success on the merits and the evidence showed:

    a. The Plaintiffs are the co-founders and majority owners of a cryptocurrency platform dedicated to funding social impact projects called Movement DAO (the "DAO"). Collectively they invested over $16 million into the DAO endowment fund, held in a Gnosis SAFE account, which accounts for over 97% of the DAO's total assets.

    b. Under the DAO's relevant principles and guidelines, funds in the DAO endowment Gnosis account were to remain untouched.

    c. The Defendant Mark Phillips was hired by the Plaintiffs to implement the DAO's systems architecture and oversee its development. The Defendant Mark Phillips was entrusted with custody over certain authorization keys that allowed him access to the DAO endowment funds. As such, the Defendant Mark Phillips owed a fiduciary duty to the Plaintiffs.

    d. In January and February 2023, the Defendant Mark Phillips submitted several voting proposals on Snapshot.org that purported to authorize additional transfers of DAO assets.

    e. In February 2023, the Defendant Mark Phillips disabled Plaintiffs' voting tokens, preventing them from voting on Snapshot.org proposals.

    f. Beginning on February 2, 2023, the Defendant Mark Phillips began transferring large sums of DAO endowment funds from the DAO endowment Gnosis account and into accounts managed and/or controlled by the Defendants Mark Phillips and/or Benjamin Reed.

    g.  Plaintiffs, who contributed over 97% of the DAO endowment funds and retained over 97% of all voting rights in the DAO, never approved or authorized the February 2023 transfer of DAO endowment funds.

[ECF No. 18 at 2].

The district court determined Plaintiffs had established they were likely to suffer irreparable harm absent the injunctive relief and that the equities and public interest weighed in favor of the injunctive relief. [ECF No. 18 at 1]. As a result, the Court ordered Defendants and those in active participation with them to return all assets transferred out of the DAO endowment in February 2023, and prohibited any further transfers from any account that received DAO endowment assets from those February 2023 transfers. Specifically, the Court restrained Defendants and those in participation with them from "[t]ransferring any assets from the DAO endowment's Gnosis account or any other DAO-affiliated account" and "[t]ransferring any assets from any account that contains or has been used to transfer assets originating from a DAO-affiliated account." The court further ordered: "Defendants, their agents, employees, attorneys, and any persons in active concert or participation with them are further ordered to unwind any transfers that have been made in the last 30 days from the DAO endowment's Gnosis account or any other DAO-affiliated account. [ECF No. 18 at 4–5].

Since then, Defendants filed motions for modification and clarification of the TRO, which were referred to the undersigned for disposition. [ECF Nos. 86, 93, 87, 94]. In their motion for modification, Defendants asked the Court to allow them to use DAO funds to pay certain third parties who they claim rendered services to Movement DAO. They also sought to resume using certain accounts identified in the TRO because the accounts supposedly also contained personal funds. [ECF No. 86]. This Court denied Defendants' motion because Defendants failed to show

any circumstances that warranted modification. [ECF No. 109]. As to their request for clarification, Defendants were ordered to restore $300,000 to the Gnosis account, monies which had been transferred to defense counsel as payment of their fees. [*Id.*]. Further, the Court denied Defendants' request to allow them to use alternative means to return DAO endowment assets. [*Id.*].

## II. Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *F.T.C. v. Sterling Precious Metals, LLC*, 894 F. Supp. 2d 1378, 1382 (S.D. Fla. 2012) (quoting *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir.2003)). "The purpose of a preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir.2011) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

Normally, a private party seeking a preliminary injunction under Federal Rule of Civil Procedure 65 must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. *Sterling Precious Metals, LLC*, 894 F. Supp. 2d at 1383 (citing *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 968 (11th Cir. 2005)).

### 1. Substantial Likelihood of Success on the Merits

"A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). A plaintiff must allege four elements to establish a fraud or a fraudulent

misrepresentation claim: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Hercules Capital, Inc. v. Gittleman*, 16-CV-81663, 2018 WL 395489, at *21 (S.D. Fla. Jan. 12, 2018) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

Here, Plaintiffs have shown a substantial likelihood that their fraud claim will succeed on the merits. Plaintiffs introduced testimony from Plaintiffs Ryan Breslow and Jon Gordon showing that they relied on several statements made by Defendants, that Defendants knew these statements were false, that the statements were made to induce Plaintiffs to act on them, and that Plaintiffs suffered an injury by relying on Defendants' representation. Plaintiffs introduced evidence that Defendants made assurances that they would perform their functions and develop the DAO consistent with the principles and policies described in the Gitbook—a document published describing the DAO concept—which included a ban on withdrawing or transferring DAO endowment funds. Further, there is evidence Defendant Phillips represented he would hold Plaintiffs' voting tokens in trust and vote them as Plaintiffs directed. And there is evidence suggesting Defendants made certain representations regarding their association with the Law Firm of Reed Yurchak in an effort to legitimize the Snapshot.org proposals. [ECF No. 6 at 11; No. 48-1 at 3].

Defendants' assertions appear false because in January 2023, Defendant Phillips attempted to transfer DAO funds within Snapchat.org, a beta voting platform, and succeeded in transferring money of out of the DAO endowment in February 2023. [ECF No. 81; No. 6 at 14–16]. Further, Plaintiffs testified Defendant Phillips did not vote Plaintiff's tokens as directed and that he instead disabled the authorization tokens, replacing Plaintiffs as signatories on the DAO endowment's

Gnosis account. [ECF No. 81; No. 6 ¶¶ 50, 68]. Further, Reed Yurchak of the Law Firm of Reed Yurchak, presented testimony refuting Defendants' representations that his firm prepared, reviewed, or endorsed any proposals. [ECF No. 81; No. 48-1 ¶10].

Defendants seemed to have made these statements to induce Plaintiffs to trust them with their voting tokens and with the operation and construction of the DAO. As a result of their reliance on Defendants' representations, Plaintiffs are unable to access the DAO and their voting tokens, thereby losing control of their contributions to the endowment fund and their voting participation. Altogether, this is sufficient evidence that Plaintiffs are likely to succeed on their claim of fraud. Defendants have introduced testimony and documents in support of their defense that the proposals were authorized, but that defense is undermined by Mr. Yurchak's testimony that he did not agree to act as a "Service Provider" for DAO and substantial proof that DAO community members had yet to be vested with voting authority.

Similarly, Plaintiffs have also shown a probability that Defendants breached their fiduciary duties. "The elements of a cause of action for breach of fiduciary duty are (1) the existence of a duty, (2) breach of that duty, and (3) damages flowing from the breach." *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1323 (M.D. Fla. 2013) (quoting *Miller v. Miller*, 89 So.3d 962 (Fla. 5th DCA 2012)). "A fiduciary relationship exists when one is under a duty to act, or give advice, for the benefit of another upon matters within the scope of that relation." *McGriff Ins. Services, Inc. v. Littlestone*, 2:21-CV-480-JES-NPM, 2021 WL 4750646, at *6 (M.D. Fla. Oct. 12, 2021) (quoting *Crusselle v. Mong*, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011)). "An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party." *Id.*

Plaintiffs' testimony strongly indicates that a relationship of trust and confidence existed between the parties and that Plaintiffs depended on Defendant Phillips to develop and launch the DAO. That relationship of trust was apparently breached when Defendant transferred DAO endowment funds and disabled Plaintiff's voting tokens. There is evidence that, between February 2 and February 15, 2023, Defendant Phillips made transfers totaling over $8.5 million out of the DAO endowment Gnosis account. [ECF No. 6 ¶¶13–18]. Also, there is proof that in December 2022, Plaintiff Breslow asked Phillips to announce to the DAO community that each community member's investment into the DAO endowment would be redeemed and their assets returned. [ECF No. 6 ¶ 55]. Phillips failed to do so. Thus, Plaintiffs and DAO community members are likely to establish damages flowing from Defendants' breach of their fiduciary duties. In sum, Plaintiffs have shown a substantial likelihood of succeeding on their merits.

**2. Irreparable Injury**

Unless a preliminary injunction is entered, the evidence and record show that Defendants will likely further dissipate or conceal the assets in the DAO endowment and other DAO-affiliated accounts. Plaintiffs presented evidence they collectively invested over $16 million into the DAO endowment fund, which accounts for over 97% of the DAO's total assets. After the district court entered the TRO, Defendants were ordered to show cause why they should not be held in contempt for failing to comply with the TRO and were required to unwind their transfers of the endowment funds. [ECF No. 47] And, despite filing a notice of compliance, Defendants admitted that not all transfers had been unwound as directed by the TRO. [ECF No. 51 at 3]. Defendants eventually requested a modification of the TRO, but that request was denied because Defendants failed to show a change in circumstances.

All this suggests there is a substantial risk that DAO assets will remain unaccounted for or will continue to be dissipated. The Eleventh Circuit has explained that, to obtain injunctive relief, the asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Defendants' actions leading to this lawsuit, their easy access to the Gnosis account due to their control of Plaintiff's authorization keys, and their failure to quickly unwind the transfers all suggest that further dissipation is actual and imminent. Further, courts have found irreparable injury "where there is a strong indication that the defendant may dissipate or conceal assets" *Demaria v. Gisbex Clearing Corp., S.A.*, 10-20426-CIV, 2012 WL 13008158, at *4 (S.D. Fla. Mar. 12, 2012); *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005) (finding irreparable injury where defendant engaged in fraud and reorganized business to frustrate the repayment of outstanding debt). For these reasons, the Court finds that Plaintiffs have shown they will suffer irreparable injury absent injunctive relief.

### 3. Balance of Hardships

"Before issuing an injunction, the Court must balance the relative hardship to each side." *Florida Atl. Univ. Bd. of Trustees v. Parsont*, 465 F. Supp. 3d 1279, 1297 (S.D. Fla. 2020). Here, the balance weighs decidedly in Plaintiffs' favor. If the injunction does not issue, Plaintiffs will face dissipation of DAO assets. Defendants argue that if they are enjoined, Movement DAO will be defunct, and vendors will not be paid as Defendants claim. That argument is unpersuasive, however, because Plaintiffs presented substantial evidence that the DAO did not launch, nor did they authorize the vendors to be paid. Further, if vendors are indeed owed money from Plaintiffs, that type of harm could be later remediated through money damages. The dissipation and concealment of assets, however, is considered an irreparable injury. *See Demaria*, 2012 WL 13008158, at *4.

Although Defendants seem to claim that Movement DAO in fact launched and funded a project—PEACE DAO—Plaintiff Breslow maintained that the Movement DAO never hosted a social impact project because Defendant Phillips never created the Movement DAO platform he was hired to create. [ECF No. 48-4 ¶¶ 18–20]. Breslow explained that he in fact launched PEACE DAO using a fundraising website called Juicebox. [*Id.* ¶ 2]. Because Phillips never completed the Movement DAO platform, Breslow used the available software from Juicebox to launch the PEACE DAO project. [*Id.*].

### 4. Public Interest

Finally, the public interest will be served by the issuance of a preliminary injunction. Preserving the status quo and preventing irreparable harm so long as is necessary to conduct a trial will allow the parties to adjudicate their contractual rights in an orderly way. *eCapital Commercial Fin. Corp. v. Hitachi Capital Am. Corp.*, 519 F. Supp. 3d 1129, 1136 (S.D. Fla. 2021). Like the district court explained in *eCapital Commercial Fin. Corp*—a case involving allegations of conversion—"'hitting pause' on these disputed claims for payment until the Court may consider the merits of such claims serves the public interest far more than allowing the disputed transactions to take place, only to potentially need to unwind them later." 519 F. Supp. 3d at 1136–37.

### III. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Plaintiffs' Motion for Preliminary injunction be **GRANTED**. [ECF NO. 4].

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar movant from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds

of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**SIGNED** this 7th day of July 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **All Counsel of Record**