## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORDA
Case No.: 1:23-cv-20727-RKA

**RYAN BRESLOW**, *et al.*,

      Plaintiffs,

v.

**MARK PHILLIPS**, *et al.*,

      Defendants.

_____ /

**MOVEMENTDAO**, *et al.*,

      Counterclaim-Plaintiffs,

v.

**RYAN BRESLOW**, *et al.*,

      Counterclaim-Defendants.

---

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF MARK PHILLIPS, DEFENDANT
BENJAMIN REED, AND COUNTERCLAIM-PLAINTIFF MOVEMENTDAO'S
OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTION FOR
PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.     The R&R Contains No Colorable Basis for Plaintiffs to Prevail on Any Claim Against Mr. Reed. ................................................................................................... 1

II.    Plaintiffs Lack Standing as Their Purported Claims Belong to MovementDAO. ................ 2

III.   Plaintiffs Failed to Establish a Likelihood of Success on Their Fraud Claim. ..................... 5

    A.     Mr. Phillips Did Not Engage in Fraud by Promising to Follow the GitBook. ............................................................................................................ 5

    B.     Mr. Phillip Did Not Engage in Fraud by Promising to Vote Plaintiffs' Tokens as Directed. .............................................................................. 7

    C.     Mr. Phillips' Accurate Statements about Reed Yurchak Do Not Give Rise to a Fraud Claim. ........................................................................................ 8

    D.     The Magistrate Judge Erred by Rejecting Defendants' Evidence that the Various MIPs Were Enacted with Proper Authority. ................................... 10

IV.    Plaintiffs Failed to Establish a Likelihood of Success on Their Breach of Fiduciary Duties Claim. ........................................................................................................ 14

V.     The Factual Findings in the R&R Do Not Support a Finding of Irreparable Harm. .......... 17

VI.    The Balance of Hardships Analysis Favors Defendants. .................................................... 17

VII.   The R&R Failed to Include a Recommendation Regarding Security. ................................. 18

VIII.  The Magistrate Judge Did Not Recommend an Injunction that Would Satisfy Fed. R. Civ. P. 65 ............................................................................................................... 19

IX.    Conclusion ....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*APR Energy, LLC v. First Inv. Grp. Corp.*,

    88 F. Supp. 3d 1300 (M.D. Fla. 2015) ....................................................................................18

*Feldman v. Cutaia,*

    951 A.2d 727 (Del. 2008) ........................................................................................................3

*Helix Inv. Mgmt., LP v. Privilege Direct Corp.*, No. 8:18-CV-206-VMC-AEP,

    2019 WL 1006099 (M.D. Fla. Jan. 7, 2019) ..........................................................................17

*HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.,*

    302 F. Supp. 3d 1319 (M.D. Fla. 2016) ...................................................................................2

HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc., *aff'd,*

    703 F. App'x 814 (11th Cir. 2017) ..........................................................................................2

*Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*,

    117 F. Supp. 3d 392, 400 (S.D.N.Y. 2015) .............................................................................3

*Nodus Int'l Bank, Inc. v. Arocha Hernandez,*

    511 F. Supp. 3d 1316 (S.D. Fla. 2021) ....................................................................................6

*Nyesa Costa Rica v. Wilson Capital Grp. Holdings, LLC,* No. 11-22036,

    2012 WL 1492344 (S.D. Fla. Apr. 27, 2012) .....................................................................6, 10

*Sonnenreich v. Philip Morris Inc.*,

    929 F. Supp. 416 (S.D. Fla. 1996) ...........................................................................................2

*Tancogne v. Tomjai Enterprises Corp.*,

    408 F. Supp. 2d 1237 (S.D. Fla. 2005) ..................................................................................18

**Statutes**

Del. Code Ann. tit. 6, § 1906(a)................................................................................................3

**Rules**

Fed. R. Civ. P. 65(c) ..............................................................................................................18

Fed. R. Civ. P. 65(d)(1)(B) .....................................................................................................19

Fed. R. Civ. P. 65(d)(1)(C) .....................................................................................................19

Pursuant to Magistrate Judge Rule 4(b), Defendant and Counterclaim-Plaintiff Mark Phillips ("Mr. Phillips"), Defendant Benjamin Reed ("Mr. Reed"), and Counterclaim-Plaintiff MovementDAO, by and through their counsel, respectfully file their objections to United States Magistrate Judge Lisette M. Reid's Report and Recommendation on Motion for Preliminary Injunction, dated July 7, 2023 [ECF No. 139] (the "R&R").

The Court should reject the recommendation in the R&R and deny Plaintiffs Ryan Breslow ("Mr. Breslow"), Alex Fine ("Mr. Fine"), and Jon Gordon's ("Mr. Gordon") (collectively, "Plaintiffs") motion. The R&R should be set aside because (1) the Magistrate Judge made factual findings untethered from the facts adduced at the evidentiary hearing; (2) the findings the Magistrate Judge did make are insufficient to support the Magistrate Judge's conclusions of law; and (3) the Magistrate Judge did not make required rulings regarding the terms of the injunction or the security Plaintiffs must provide. When the Court reviews this matter de novo, the Court should find that (1) MovementDAO is a Delaware unincorporated nonprofit association separate from its members; (2) Defendants acted in accord with the authority MovementDAO's members vested in them; and (3) Plaintiffs have failed to establish any likelihood of success as to their claims against Defendants.

## I.    The R&R Contains No Colorable Basis for Plaintiffs to Prevail on Any Claim Against Mr. Reed.

The Magistrate Judge failed to analyze the likelihood of success as to any claim Plaintiffs made against Mr. Reed. The Magistrate Judge concluded that Plaintiffs were likely to prevail on their fraud and breach of fiduciary duties claim as to "Defendants." R&R at 5–6. But Plaintiffs brought these claims only against Mr. Phillips. ECF No. 1 at 7. Nor does the record support the conclusion that Mr. Reed made fraudulent misrepresentations or breached a fiduciary duty owed to Plaintiffs. Asked "[w]ho's Ben Reed," Mr. Breslow responded, "That's a good question. It was

someone that [Mr. Phillips] appeared to have hired to work with him on MovementDAO." PI Hr'g Tr. 59:9–12, Apr. 27, 2023 AM. Plaintiffs did not offer evidence of Mr. Reed making representations to Plaintiffs or forming a direct relationship with Plaintiffs. Plaintiffs thus cannot prevail on a fraud or breach of fiduciary duties claim against Mr. Reed.

The only claim against Mr. Reed is for civil conspiracy. ECF No. 1 at 19. While the R&R is silent as to this claim, nothing in the record would support a belated conclusion as to Messrs. Phillips and Reed's (collectively, "Defendants") liability for civil conspiracy. First, Plaintiffs did not introduce evidence that Defendants entered into a conspiracy for the purpose of doing an unlawful act or a lawful act by unlawful means, as is required for a civil conspiracy claim. *See Sonnenreich v. Philip Morris Inc.*, 929 F. Supp. 416, 419 (S.D. Fla. 1996) (citation omitted). Second, as Mr. Breslow's statement quoted above indicates, Defendants acted on behalf of MovementDAO. Plaintiffs introduced no evidence that Defendants took any relevant actions independent of their relationship to MovementDAO. Accordingly, the intracorporate conspiracy doctrine bars any civil conspiracy claim. *See HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016), *aff'd*, 703 F. App'x 814 (11th Cir. 2017) ("'According to the intracorporate conspiracy doctrine, . . . a civil conspiracy claim will not succeed where the only members of the alleged conspiracy are a corporation and/or its officers." (citations omitted)).

The finding of likelihood of success on the merits as to Mr. Reed is thus erroneous.

## II.     Plaintiffs Lack Standing as Their Purported Claims Belong to MovementDAO.

The Magistrate Judge's failure to consider Defendants' argument that Plaintiffs' claims belong to MovementDAO was erroneous because Plaintiffs have no likelihood of success when they lack standing to prosecute the claims at issue. The premise of Plaintiffs' claims relates to Defendants' use of funds Plaintiffs and others contributed to MovementDAO. As MovementDAO

is a Delaware unincorporated nonprofit association ("DUNA"), those funds belong to MovementDAO, and Plaintiffs have no standing to assert a direct claim against Defendants based on Defendants' use of those funds. This is true regardless of whether MovementDAO, the platform on which sub-DAOs could launch using MovementDAO's tooling (the "Platform"), is fully operational.

Various Movement Improvement Proposals ("MIPs"), i.e., governance proposals adopted by MovementDAO's members, make clear that MovementDAO is a DUNA separate from its members. In MIP-0000, MovementDAO's members adopted Guiding Principles establishing MovementDAO as a DUNA. Hr'g Ex. 168 at PLAINTIFF0003602 [ECF No. 106-51]; *see also* ECF No. 95. Under Delaware law, "[a] nonprofit association is a legal entity separate from its members for the purposes of determining and enforcing rights, duties and liabilities in contract and tort." Del. Code Ann. tit. 6, § 1906(a).

Plaintiffs' claims, are, therefore, at most, derivative claims because Plaintiffs asserted no harm outside of harm they suffered as contributors to and members of MovementDAO. *See Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) (footnote omitted). Plaintiffs' failure to assert their claims as derivative claims on behalf of MovementDAO is a jurisdictional defect. *See Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*, 117 F. Supp. 3d 392, 400 (S.D.N.Y. 2015) (holding that a derivative action on behalf of trusts that are unincorporated associations must include the associations as nominal parties).

At the hearing, Plaintiffs attempted to evade Defendants' standing argument by arguing that MovementDAO did not launch. Mr. Breslow admitted that he intended for his contributions to be under MovementDAO's management following the launch, indicating that post-launch, all contributions to MovementDAO belong to MovementDAO. PI Hr'g Tr. 19:9–13, Apr. 27, 2023

AM. Throughout this case, Plaintiffs have conflated MovementDAO as an entity with MovementDAO as the Platform. Even if the Platform is not fully operational, it is obvious that MovementDAO exists as an entity. The parties even stipulated that MovementDAO received an EIN from the IRS. ECF No. 68 ¶ 18. MovementDAO's status as a DUNA prevents Plaintiffs from asserting direct claims against Defendants based on Defendants' use of MovementDAO's funds.

Moreover, the weight of the evidence reflects that both sides understood MovementDAO to have launched as they worked together on the Platform prior to this dispute. Mr. Gordon stated in his declaration that MovementDAO would only launch when Mr. Breslow authorized it to launch, but he could not point to a single document consistent with that assertion outside of his declaration. PI Hr'g Tr. 39:10–21, Apr. 27, 2023 PM. By the end of February 2022, MovementDAO had multiple contributors beside Plaintiffs (which supports Defendants' argument as some of the funds at issue in this case originated from these contributors), but Mr. Gordon had no knowledge of anyone telling these contributors that MovementDAO would not launch without Mr. Breslow's authorization. PI Hr'g Tr. 39:23–40:5, Apr. 27, 2023 PM. On February 1, 2022, when a MovementDAO community member (OBStacker) referred to "launch tomorrow," indicating a launch date on February 2, 2022, Mr. Gordon (Fuego) did not deny that MovementDAO's imminent launch, and instead stated, "We are delaying a little bit here…looks to be a little anticlimactic for now…but we're MOVING on it…" Hr'g Ex. 374 [ECF No. 100-16].

Mr. Reed testified that by February 2022, MovementDAO had an active Discord (an online communication platform) community and had launched PeaceDAO. PI Hr'g Tr. 120:2–121:5, May 25. PeaceDAO's launch is significant because the purpose of the Platform was to organize and fund other DAO's called "Movements," and PeaceDAO was a Movement, funding humanitarian efforts in Ukraine. PI Hr'g Tr. 58:8–59:16, Apr. 27, 2023 PM. The PeaceDAO operated and

organized its community on MovementDAO's Discord server; the PeaceDAO community grew out of the MovementDAO community; both DAOs used Gnosis (a cryptocurrency wallet) and Snapshot.org (an online voting tool); and Plaintiffs referred to PeaceDAO as MovementDAO's first use case. PI Hr'g Tr. 124:8–125:5, May 25, 2023. On a Discord thread that included Mr. Breslow (theryanking), MovementDAO community members excitedly discussed the launch of "The Peace Movement (DAO)." Hr'g Ex. 421 [ECF No. 100-35]. The PeaceDAO's Juicebox page further indicates the payment of tribute from PeaceDAO to MovementDAO, reflecting PeaceDAO's status as a duly launched Movement. Hr'g Ex. 449 [ECF No. 100-41].

MovementDAO's status as a DUNA is fatal to Plaintiffs' case because Plaintiffs' claims relating to Defendants' use of MovementDAO funds are, at most, derivative claims belonging to MovementDAO as Plaintiffs suffered no harm distinct from their status as MovementDAO members. The Magistrate Judge therefore erred by treating Plaintiffs' claims as direct claims without considering whether they were in fact derivative claims.

### III.    Plaintiffs Failed to Establish a Likelihood of Success on Their Fraud Claim.

Even assuming Plaintiffs had standing to sue Mr. Phillips for fraud, none of the three bases for the fraud claim discussed in the R&R should survive de novo review. In each instance, the Court concluded that vague, promissory language gave rise to fraud claims without finding the required scienter on Mr. Phillips' part. Thus, the R&R's fraud analysis is incomplete. Combing through the record will not resuscitate Plaintiffs' fraud claim as the weight of the evidence contradicts the Magistrate Judge's findings.

#### A.  Mr. Phillips Did Not Engage in Fraud by Promising to Follow the GitBook.

First, the Magistrate Judge found that "Defendants made assurances that they would perform their functions and develop the DAO consistent with the principles and policies described in the [GitBook]." R&R at 5. Fraud requires not only a "a false statement concerning a material

fact," but also "knowledge by the person making the statement that the representation is false." *Nyesa Costa Rica v. Wilson Capital Grp. Holdings, LLC*, No. 11-22036, 2012 WL 1492344, at *3 (S.D. Fla. Apr. 27, 2012) (citation omitted). A promise can only serve as the basis for a fraud claim "if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform." *Nodus Int'l Bank, Inc. v. Arocha Hernandez*, 511 F. Supp. 3d 1316, 1324 (S.D. Fla. 2021). The R&R contains no finding as to either requirement.

There is no evidence that Mr. Phillips promised that he would develop the Platform in accordance with the GitBook *with the present intention not to do so*. The evidence indicates the opposite. On August 27, 2022, Mr. Breslow thanks Mr. Phillips for "some epic weeks," stating, "[t]hings haven't been easy but we're moving in the right direction." Hr'g Ex. 389 [ECF No. 100-25]. Even as late as October 2022, Mr. Breslow admitted that he still had faith in MovementDAO and that it was "likely" that he was still promoting MovementDAO and looking for partners to join MovementDAO. PI Hr'g Tr. 105:18–20, Apr. 27, 2023 AM. For example, on October 26, 2022, Mr. Breslow asked Mr. Gordon to contact another company to see if they were interested in "building on" MovementDAO. Hr'g Ex. 466 [ECF No. 100-44]; PI Hr'g Tr. 223:25–224:18, May 25, 2023.

The Magistrate Judge concluded that Mr. Phillips broke his promise to develop the Platform in accordance with the GitBook[1] based on the GitBook's prohibition on withdrawing or transferring endowment funds. R&R at 5. Plaintiffs themselves contradict this finding. Mr. Breslow testified that "[p]rior to launch, [endowment funds] really should not be spent, but there

---

[1] Plaintiffs told the Court at the hearing that the GitBook is not a contract. *See* PI Hr'g Tr. 6:8–11, May 25, 2023 ("THE COURT: The intention, with respect to these accounts, is set forth in a contract that is a Gitbook? MR. BERG: No, your Honor. The GitBook is more like a white paper.").

is no technical rule against it." PI Hr'g Tr. 81:18–19, Apr. 27, 2023 AM. During the development of the Platform, the endowment was used to pay Mr. Gordon's salary, as well as the salaries of the engineering team and the community governance team, and Plaintiffs consented to the spending of endowment funds. PI Hr'g Tr. 196:8–24, May 25, 2023. While Mr. Gordon abstained from voting on MIP-0003, which involved spending endowment funds (but cut Mr. Gordon's portion of the budget), Mr. Gordon conceded that Mr. Breslow had ultimately approved the proposal. PI Hr'g Tr. 49:25–50:11, Apr. 27, 2023 PM. Mr. Phillips therefore could not have breached his promise to abide by the GitBook by spending endowment funds when Plaintiffs believed it was permissible to spend endowment funds and previously approved spending such funds.

### B. Mr. Phillip Did Not Engage in Fraud by Promising to Vote Plaintiffs' Tokens as Directed.

The second basis for the fraud claim in the R&R was the Magistrate Judge's finding that "Defendant Phillips represented he would hold Plaintiffs' voting tokens in trust and vote them as Plaintiffs directed." R&R at 5.

The record is inconsistent with the Magistrate Judge's findings. The parties stipulated that Mr. Gordon voted for MIP-0000 through MIP-0008 on Snapshot.org, with the exception of MIP-0003, and Mr. Gordon used his own wallet and cryptocurrency address to vote. ECF No. 68 ¶ 20; PI Hr'g Tr. 183:13–184:18, May 25, 2023. Mr. Phillips used a ledger (a piece of hardware used to sign cryptocurrency transactions) that contained the other Plaintiffs' keys, but Plaintiffs' expert witness confirmed that a ledger does not provide the holder with the underlying keys. PI Hr'g Tr. 95:3–96:8, 183:13–184:18, May 25, 2023. Mr. Phillips could not have held Plaintiffs' keys in trust if he only had a ledger with Plaintiffs' keys stored thereon and if Mr. Gordon was voting on his own behalf.

The Magistrate Judge found that Mr. Phillips' representation appeared false because "in January 2023, Defendant Phillips attempted to transfer DAO funds within Snapchat.org [sic], a beta voting platform, and succeeded in transferring money out of the DAO endowment in February 2023." R&R at 5. First, the Magistrate Judge's findings do not support a fraud claim because Mr. Phillips' actions in February 2023 does not mean Mr. Phillips made any promise in 2022 regarding Plaintiffs' keys and voting tokens with a present intent to breach that promise, as a fraud claim requires. The evidence in the record shows that Defendants only transferred money in MovementDAO's endowment and disabled Plaintiffs' voting rights after MovementDAO's members conferred them with authority to do so. *See* Section III.D, *infra*.

### C. Mr. Phillips' Accurate Statements about Reed Yurchak Do Not Give Rise to a Fraud Claim.

The final basis for Plaintiffs' fraud claim identified by the Magistrate Judge was that "Defendants made certain representations regarding their association with the Law Firm of Reed Yurchak in an effort to legitimize the Snapshot.org proposals." R&R at 5. At the hearing, Plaintiffs advanced the theory that Mr. Phillips somehow deceived them by referencing Mr. Yurchak's firm as MovementDAO's Service Provider in the GitBook. But Mr. Fine "contributed all the substantive information" to the GitBook, while Mr. Phillips "provide[d] some technical aspects." PI Hr'g Tr. 193:16–20, May 25, 2023. While Mr. Fine was present, he did not testify and thus did not deny adding this language to the GitBook.

While the R&R does not identify any one statement regarding Mr. Yurchak as false, the evidence establishes that the representations Mr. Phillips actually made to Plaintiffs regarding Mr. Yurchak's involvement in MovementDAO were substantially true. Mr. Gordon met with Mr. Yurchak in person before Plaintiffs engaged his law firm. PI Hr'g Tr. 51:18–24, Apr. 27, 2023 PM. Mr. Yurchak testified that he did not know how to create or use a cryptocurrency address and

never executed a cryptocurrency transaction. PI Hr'g Tr. 70:21–71:10, Apr. 27, 2023 PM. These facts taken together make clear that Plaintiffs knew Mr. Phillips was performing portions of Mr. Yurchak's work relating to cryptocurrency.

Plaintiffs' argument that Mr. Phillips overstated Mr. Yurchak's involvement in MovementDAO was based on a single email from April 2022 when Mr. Yurchak's paralegal referenced omitting a reference to Mr. Yurchak's firm in the GitBook. But the record makes clear that Mr. Yurchak was significantly involved in MovementDAO throughout the course of the project, including agreeing to serve (and actually serving) as the Service Provider. Months before Mr. Yurchak supposedly objected to the GitBook's reference to himself as the Service Provider, Mr. Yurchak's paralegal sent an email to Mr. Yurchak and Mr. Phillips containing GitBook language that referenced Mr. Yurchak's firm as the "registered signatory on the [the] funds wallet." Hr'g Ex. 369 at 00358 [ECF No. 100-14] (brackets in original). While Mr. Yurchak was tasked by Mr. Fine with providing edits to the GitBook, Mr. Yurchak could not recall ever objecting to the inclusion of his firm as the Service Provider. PI Hr'g Tr. 113:7–14, Apr. 27, 2023 PM. In July 2022, Mr. Yurchak set up an EIN "for the nonprofit.". Hr'g Ex. 380 [ECF No. 100-20]. Around the same time, Mr. Yurchak's paralegal was helping Mr. Phillips form entities related to MovementDAO. Hr'g Ex. 381 [ECF No. 100-21]. On October 1, 2022, Mr. Phillips consulted Mr. Yurchak on Messrs. Fine and Breslow's obligations related to MovementDAO. Hr'g Ex. 395 [ECF No. 100-27].[2] In this same email, Mr. Phillips attached portions of the GitBook that referenced Mr. Yurchak's firm as the Service Provider, thus contradicting Mr. Yurchak's testimony that he objected to his inclusion in the GitBook as the Service Provider. *Id.* at 000527. On October 11,

---

[2] This document also contradicts Plaintiffs' argument that Mr. Yurchak did not provide legal counsel to Mr. Phillips individually or MovementDAO.

2022, Mr. Yuchak provided input on an indemnity agreement, a non-recourse loan agreement, and an IP licensing agreement for MovementDAO. Hr'g Ex. 397 [ECF No. 100-29].

Mr. Yurchak's involvement in MovementDAO is critical for two reasons. First, it demonstrates the substantial truth of Mr. Phillips' representations regarding Mr. Yurchak's work for MovementDAO. Mr. Breslow believed that MovementDAO's Service Provider's job was to provide legal services. PI Hr'g Tr. 83:19–25, Apr. 27, 2023 AM. Given this definition, Mr. Yurchak was indeed acting as the Service Provider. Mr. Yurchak further paid MovementDAO's developers with funds Plaintiffs advanced. PI Hr'g Tr. 125:24–126:8, Apr. 27, 2023 PM. Second, the Court should find that Mr. Yurchak's testimony is not credible as the foregoing evidence directly rebuts Mr. Yurchak's sworn testimony that he did not "provide[] services concerning the Movement DAO or to Merkaba, Inc. since March 2022." ECF No. 48-1 ¶ 13.

Even if the Court ignores the mountain of evidence related to Mr. Yurchak's work for MovementDAO, Plaintiffs' fraud claim still fails. Fraud requires "reliance on the representation to the injury of the other party[.]" *Nyesa Costa Rica*, 2012 WL 1492344, at *3. Plaintiffs contend that the votes on Snapshot.org were "advisory." *See* PI Hr'g Tr. 18:8–11, Apr. 27, 2023 AM (testimony by Mr. Breslow that Snapshot.org votes were "[n]ot at all binding"). To the extent Plaintiffs believe Snapshot.org votes were advisory, Mr. Phillips' representations made for the purpose of "legitimiz[ing] the Snapshot.org proposals," R&R at 5, would be of no consequence. In any event, any reliance on Plaintiffs' part would have been unreasonable as Mr. Breslow failed to read the Snapshot.org proposals at issue. PI Hr'g Tr. 52:3–4, Apr. 27, 2023 AM.

### D.  The Magistrate Judge Erred by Rejecting Defendants' Evidence that the Various MIPs Were Enacted with Proper Authority.

In assessing Plaintiffs' fraud claim, the Magistrate Judge acknowledged that "Defendants . . . introduced testimony and documents in support of their defense that the proposals [MIPs

relating to MovementDAO's governance and operations] were authorized." R&R at 6. The Magistrate Judge should have credited that evidence, as it refutes any notion that Defendants engaged in wrongdoing with respect to their operation and governance of MovementDAO. The weight of the evidence establishes that MovementDAO was to be governed by community votes on Snapshot.org, and that Defendants acted pursuant to authority granted by MovementDAO's community through the Snapshot.org voting mechanism.

The Magistrate Judge first rejected Defendants' argument that Defendants acted pursuant to valid authority because of "substantial proof that DAO community members had yet to be vested voting authority." R&R at 6. While the Magistrate Judge does not say what this "substantial proof" is, the record is replete with evidence showing that MovementDAO was governed by community voting on Snapshot.org. The GitBook is clear: "Snapshot voting strategies during the Movement DAO will employ a governance token available to individuals who stake $MOVE. However, during the bootstrapping phase of the DAO community contributors and based on participation will be granted a MAPE-1420 NFT which will be employed for initial governance." Hr'g Ex. 6 at PLAINTIFF0000072 [ECF No. 106-3]. Contrary to Plaintiffs' argument that community governance would not be in place until the release of the $MOVE token, the GitBook makes clear that contributors would be authorized to engage in "initial governance" through a MAPE NFT, i.e., a non-fungible token issued to MovementDAO contributors for voting.

Defendants established that the MovementDAO community did indeed engage in governance through the MAPE NFT, consistent with the GitBook. Mr. Phillips offered unrebutted testimony that contributors to MovementDAO were airdropped NFTs, and that certain contributors subsequently assigned their voting rights to dao-lawfirm.eth. PI Hr'g Tr. 188:1–22, May 25, 2023. Documentary evidence shows that Messrs. Fine and Gordon believed MovementDAO members

had the authority to enact proposals on Snapshot.org. On February 15, 2022, Mr. Fine (mr_fine) stated the following on a Discord thread: "Based on my understanding I think the NFT serves as the community governance token before the official tokens are released." Hr'g Ex. 376 [ECF No. 100-18]. In response, Mr. Gordon (Fuego) wrote, "That's correct, it also represents the genesis community that are shaping the platform to come." *Id.* On February 21, 2022, a Discord user named "Carl-bot" wrote, "The MAPES will now begin representing initial voting rights, because YOU are the founding community. Those who have 5 or more MAPES will be able to vote on upcoming initiatives that will shape the future of this platform." Hr'g Ex. 471 [ECF No. 100-45]. Mr. Gordon was participating in this conversation, but he did not dispute Carl-bot's statement. *See id.* On March 18, 2022, a community member named "myco" remarked on a Discord message thread, "looks like we're not voting with Mapes, eh?" Hr'g Ex. 478 [ECF No. 100-47]. A community member named "OBStacker" responded, "What makes you say that? Voting is through MAPEs." *Id.* Mr. Gordon, who authored the next message, did not dispute OBstacker's assertion. *See id.*

In light of the clear evidence that MovementDAO community members could and did vote on governance proposals, Plaintiffs fell back on the argument at the hearing that voting was "advisory." No evidence supports this theory. Mr. Gordon voted on each MIP between MIP-0000 and MIP-0007, choosing only to abstain from voting on MIP-0003, a proposal which, among other things, reduced MovementDAO's monthly community and marketing (which Mr. Gordon worked on) budget from $10,000 to zero, PI Hr'g Tr. 47:24–48:1, 48:11–49:9, Apr. 27, 2023 PM. While Mr. Gordon voiced his objection to MIP-0011, he at no point objected on the basis that voting was merely advisory or that Mr. Phillips lacked the authority to present proposals to the MovementDAO community for voting. PI Hr'g Tr. 33:23–34:6, Apr. 27, 2023 PM. Mr. Gordon

further could not recall a single communication in which he stated that voting on MIPs was advisory. PI Hr'g Tr. 47:10–17, Apr. 27, 2023 PM. Nor did any member of the MovementDAO community tell Mr. Gordon they believed their votes to be advisory. PI Hr'g Tr. 47:18–20, Apr. 27, 2023 PM. The Court should further reject Plaintiffs' expert witness's analysis of the Snapshot.org voting mechanism because he only analyzed the Snapshot.org strategy as it appeared in the weeks preceding the hearing—not at the time voting actually occurred. PI Hr'g Tr. 100:17–25, May 25, 2023.

Plaintiffs' main contention in this litigation is that Defendants acted wrongfully when they removed Plaintiffs' voting rights and expended MovementDAO funds in early 2023. But the evidence is clear that Defendants engaged in these actions in accordance with authority vested in them by MovementDAO through the Snapshot.org voting process. *See* Hr'g Ex. 168 at PLAINTIFF0003602, 3606–07 (MIP-0000, which appointed Defendants as Authorized Members of MovementDAO); PLAINTIFF0003609, 3611 (MIP-0001, which authorized MovementDAO's governance process); PLAINTIFF0003629, 3631–36 (MIP-0004, which authorized ongoing reimbursements to MovementDAO's Service Providers and provided for their indemnification); PLAINTIFF0003644–45 (MIP-0007, which authorized the appointment of Defendants as Authorized Members); PLAINTIFF0003664–65 (MIP-0011, which authorized payment of deferred legal fees to the Service Provider); PLAINTIFF0003668–69 (MIP-0012, which authorized the payment of the Service Provider's 2022 fee); PLAINTIFF0003675, 3677 (MIP-0014, which authorized the cycling of the keys to MovementDAO's Gnosis SAFE account); PLAINTIFF0003679, 3681 (MIP-0015, which terminated Plaintiffs' governance rights); PLAINTIFF0003686, 3688 (MIP-0017, which authorized various transfers for operational expenses); PLAINTIFF0003690, 92 (MIP-0018, which authorized transfers for the payment of

deferred salaries for developers from 2022); PLAINTIFF0003695–96 (MIP-0019, which authorized the maintenance of the Service Provider's 2022 fee in the Developer Gnosis SAFE account); PLAINTIFF0003698, 3700–01 (MIP-0020, which authorized the disbursement of indemnification expense to the Service Providers and Authorized Members); and PLAINTIFF0003703, 3706 (MIP-0021, which authorized transfers for MovementDAO's 2023 development budget) [ECF No. 106-51]; *see also* ECF No. 95.

The Magistrate Judge ignored this evidence, stating that Defendants' defense that they acted pursuant to valid authority "is undermined by Mr. Yurchak's testimony that he did not agree to act as a 'Service Provider' for DAO [sic]." As explained above, the weight of the evidence is that Mr. Yurchak agreed to be the Service Provider for MovementDAO, and that he did indeed act as the Service Provider. *See* Section III.C, *supra*. Even if Mr. Yurchak did not agree to be the Service Provider, the fact remains that MovementDAO's community governed itself and vested Defendants to act through various MIPs; the Magistrate Judge does not explain why Mr. Yurchak's self-serving disclaimer of his Service Provider role negates the MovementDAO community's voting mechanism.

The Magistrate Judge's rejection of Defendants' argument that the MovementDAO was governed by its community through voting on Snapshot.org was erroneous, and the Magistrate Judge's conclusions regarding Plaintiffs' likelihood of success on their fraud claim should therefore be set aside by the Court.

## IV.    Plaintiffs Failed to Establish a Likelihood of Success on Their Breach of Fiduciary Duties Claim.

The Court should set aside the Magistrate Judge's conclusion that Plaintiffs are likely to prevail on their breach of fiduciary duty claim because Plaintiffs failed to establish either the existence of a fiduciary duty or a breach of that duty. The weight of the evidence shows that Mr.

Phillips acted first as an independent contractor and then as a member of MovementDAO, and never as Plaintiffs' fiduciary. Regardless of the relationship between the parties, Defendants' actions were proper and not a breach of any duty.

The Court should reject the Magistrate Judge's generalized finding that a "relationship of trust and confidence existed between the parties," R&R at 7, because the documentary evidence establishes that the relationship between Plaintiffs and Mr. Phillips was never fiduciary in nature.

REDACTED

Following MovementDAO's launch on February 2, 2022, Mr. Phillips did not act as Plaintiffs' agent. MovementDAO was a DUNA, and Mr. Phillips acted as a member of MovementDAO pursuant to grants of authority from MovementDAO's members. *See* Sections II and III.D, *supra*. Given the extensive evidence that MovementDAO as an organization had launched, the Magistrate Judge's finding that Mr. Phillips acted as Plaintiffs' agent, and not MovementDAO's agent, is erroneous.

Even if the Court disregards MovementDAO's DUNA status, the Magistrate Judge's finding that the "relationship of trust was apparently breached when Defendant [sic] transferred DAO endowment funds and disabled Plaintiff's [sic] voting tokens" is inconsistent with the evidence. R&R at 7. While the Magistrate Judge found that "Defendant Phillips made transfers totaling over $8.5 million out of the DAO endowment Gnosis account," the Magistrate Judge did not find these transfers were made for an improper purpose. *See id.* The undisputed evidence is

that Defendants made these transfers pursuant to authority granted to them by MovementDAO's community to pay MovementDAO's contractors, vendors, and ongoing operational expenses. *See* Section III.D, *supra*.

Nor was disabling Plaintiffs' voting rights wrongful. Mr. Phillips explained that MovementDAO's Emergency Committee voted to terminate Plaintiffs' voting rights "to protect Movement from further harm," and Mr. Phillips acted on the Emergency Committee's recommendation (after it was approved by the community) even though it would have been far easier for Mr. Phillips to accede to Mr. Breslow's demands and relinquish control of MovementDAO's assets to him. PI Hr'g Tr. 224:19–225:23, May 25, 2023. Thus, the weight of the evidence shows that Defendants acted to protect MovementDAO from Plaintiffs' wrongful effort to strongarm Defendants into giving them MovementDAO's funds that they had contributed and promised to leave locked up.

Finally, the Magistrate Judge erred in determining that Mr. Phillips' failure to "announce to the DAO community that each community member's investment into the DAO endowment would be redeemed and their assets returned" was a basis for Plaintiffs' breach of fiduciary duties claims. R&R at 7. The Magistrate Judge ignored Mr. Phillips' testimony that Mr. Breslow directed him to lie to the MovementDAO community by telling them that MovementDAO needed to be shut down to stave off contagion from the collapse of FTX even though FTX's collapse had no impact on MovementDAO. PI Hr'g Tr. 222:10–223:5, May 25, 2023. Plaintiffs could not have been damaged by Mr. Phillips' refusal as Mr. Breslow could simply have delivered this message to the MovementDAO community himself. There is further no basis in MovementDAO's governing documents for Mr. Breslow to direct Mr. Phillips to shut down the DAO. Mr. Phillips' refusal to defraud the MovementDAO community at the direction of Mr. Breslow to the detriment

of MovementDAO cannot constitute a breach of fiduciary duties, particularly where Mr. Phillips was acting as MovementDAO's agent, not Mr. Breslow's agent.

## V.     The Factual Findings in the R&R Do Not Support a Finding of Irreparable Harm.

The Court should reject the Magistrate Judge's determination that Plaintiffs will be irreparably harmed if an injunction does not issue. The Magistrate Judge's determination was based on her finding that "Defendants will likely further dissipate and conceal the assets in the DAO endowment and other DAO-affiliated accounts" if an injunction does not issue. R&R at 7. Yet the Magistrate Judge made no finding of any conduct that actually constitutes dissipation or concealment. There is no evidence that Defendants hid or misappropriated any funds. Instead, they made transfers in the regular course of MovementDAO's business for MovementDAO's benefit. The "core purpose of injunctive relief" is not satisfied where the movant "essentially ask[s] [the] Court to either render the funds idle . . . or to preserve funds which can be traced to calculate damages[.]" *Helix Inv. Mgmt., LP v. Privilege Direct Corp.*, No. 8:18-CV-206-VMC-AEP, 2019 WL 1006099, at *3 (M.D. Fla. Jan. 7, 2019) (subsequent history omitted). Yet that is exactly what the R&R recommends. Even if Plaintiffs were later to succeed on their claims against Defendants, there is no evidence that supports a finding that Plaintiffs could not be made whole through an award of money damages.

## VI.    The Balance of Hardships Analysis Favors Defendants.

The Magistrate Judge's determination that the balance of hardships favors Plaintiffs is erroneous. As explained above, there are no findings that indicate dissipation or concealment of MovementDAO's assets. The Magistrate Judge minimized the very real harm of unpaid vendors, explaining that "if vendors are indeed owed money from Plaintiffs, that type of harm could be later remediated through money damages." R&R at 8. Vendors who provided valuable services to MovementDAO should not have to file a lawsuit in order to receive payment that MovementDAO

would be able to pay them absent an injunction. The Magistrate Judge further ignored Defendants' argument that social movements will go unfunded if MovementDAO's funds remain frozen. ECF No. 43 at 30.

## VII.   The R&R Failed to Include a Recommendation Regarding Security.

The Magistrate Judge neglected to include any recommendation as to security Plaintiffs must provide. "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Yet the R&R contains no recommendation regarding the security Plaintiffs must provide.

"Typically, a security bond is required when a court enters an injunction which prevents commercial, money-making activities." *APR Energy, LLC v. First Inv. Grp. Corp.*, 88 F. Supp. 3d 1300, 1324 (M.D. Fla. 2015) (citations omitted). "The bond requirement may be waived if bond is not requested, or if no evidence is presented that a party will suffer damages from the issuance of an injunction." *Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d 1237, 1252 (S.D. Fla. 2005) (citations omitted).

While the Magistrate Judge determined that the non-payment of vendors was not enough for the balance of hardships to favor Defendants, the Magistrate Judge did not dispute that vendors would go unpaid if an injunction issued. R&R at 8. If the Court issues an injunction, the Court should require a bond as (1) freezing MovementDAO's funds would impair any future commercial activity as commercial activity requires the expenditure of money; (2) Defendants are hereby requesting a bond; and (3) Defendants have presented evidence that they will be harmed if an injunction issues (and indeed have been harmed by the ongoing Temporary Restraining Order). *See* ECF No. 86. As Plaintiffs are seeking an injunction freezing all of MovementDAO's assets,

the Court should require Plaintiffs to post a bond in an equivalent amount before any injunction issues.

**VIII.    The Magistrate Judge Did Not Recommend an Injunction that Would Satisfy Fed. R. Civ. P. 65**

The R&R's recommended disposition, "that Plaintiffs' Motion for Preliminary injunction [sic] be **GRANTED**," is inconsistent with Federal Rule of Civil Procedure 65. An injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B) and (C). The R&R satisfies neither requirement.

**IX.    Conclusion**

Based on the foregoing arguments and the record developed at the evidentiary hearing, Defendant and Counterclaim-Plaintiff Mark Phillips, Defendant Benjamin Reed, and Counterclaim-Plaintiff MovementDAO respectfully request that this Honorable Court reject the Magistrate Judge's Report and Recommendation on Plaintiffs' Motion for Preliminary Injunction, deny the motion, and terminate the Temporary Restraining Order.

Date: July 21, 2023                     Respectfully submitted,

                                         /s/ Nitoj P. Singh

                                        DHILLON LAW GROUP INC.
                                        Matthew S. Sarelson (Florida Bar 888281)
                                        1601 Forum Place, Suite 403
                                        West Palm Beach, FL 33401
                                        305.773.1952

                                        DHILLON LAW GROUP INC.
                                        Nitoj P. Singh (Admitted *pro hac vice*)
                                        Jesse Franklin-Murdock (Admitted *pro hac vice*)
                                        177 Post Street, Suite 700
                                        San Francisco, CA 94108
                                        415.433.1700

Attorneys for Defendant and Counterclaim-Plaintiff
Mark Phillips; Defendant Benjamin Reed; and
Counterclaim-Plaintiff MovementDAO