# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:23-cv-20727-RKA

**RYAN BRESLOW**, *et al.*,

     Plaintiffs,

v.

**MARK PHILLIPS**, *et al.*,

     Defendants.

_____/

**MOVEMENTDAO**, *et al.*,

     Counterclaim-Plaintiffs,

v.

**RYAN BRESLOW**, *et al.*,

     Counterclaim-Defendants.

---

## DEFENDANT AND COUNTERCLAIM-PLAINTIFF MARK PHILLIPS AND COUNTERCLAIM-PLAINTIFF MOVEMENTDAO'S MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 1

III.  LEGAL STANDARD ........................................................................................ 4

IV.  ARGUMENT ..................................................................................................... 4

    A.  MovementDAO Has Capacity to Sue Counterclaim-Defendants. ........................... 4

    B.  The Court Has Subject-Matter Jurisdiction Over MovementDAO's Claims. ................................................................................................................. 5

    C.  MovementDAO States a Claim for Breach of Contract (Count I). .......................... 6

        1.  Counterclaim-Defendants are in breach of the GitBook. .................................. 6

        2.  The Guiding Principles are not *ultra vires*. ...................................................... 9

        3.  Counterclaim-Defendants breached MovementDAO's Guiding Principles, Code of Conduct, and MIP-0004. ....................................................... 9

    D.  MovementDAO States a Claim for Tortious Interference with Contractual Relations (Count II). ............................................................................ 13

        1.  MovementDAO had contracts with the Law Firm and Mr. Vizitiu. ................. 13

        2.  The counterclaim contains facts showing a breach of contract. ........................ 14

        3.  Counterclaim-Plaintiffs sufficiently allege unjustified interference. ................ 14

    E.  The IC Agreement Does Not Preclude Mr. Phillips' Claims against Counterclaim-Defendants. ...................................................................................... 15

    F.  The Statute of Frauds Does Not Bar Mr. Phillips' Breach of Contract Claim. ...................................................................................................................... 16

    G.  The Court Should Permit Counterclaim-Plaintiffs Leave to Amend Any Deficiencies. ............................................................................................................ 17

V.  CONCLUSION ................................................................................................... 17

## TABLE OF AUTHORITIES

### Cases

*Agrelo v. Affinity Mgmt. Servs., LLC*,
　841 F.3d 944 (11th Cir. 2016) ......................................................................... 6

*Beach Hotel, LLC v. Molko*, No. 09-21393-CIV,
　2009 WL 10667895 (S.D. Fla. Oct. 14, 2009) ............................................... 5

*Bell Atl. Corp. v. Twombly*
　550 U.S. 544 (2007) ........................................................................................ 4

*Butts v. ALN Grp., LLC*
　512 F. Supp. 3d 1301 (S.D. Fla. 2021) ........................................................... 4

*Columbia Park Golf Course, Inc. v. City of Kennewick*, No. CV-07-5054-EFS,
　2008 WL 4862554 (E.D. Wash. Nov. 7, 2008) ............................................. 16

*Commodity Futures Trading Comm'n v. Ooki DAO*
　No. 3:22-CV-05416-WHO, 2022 WL 17822445 (N.D. Cal. Dec. 20, 2022) ........... 4

*FDIC v. Bathgate*,
　27 F.3d 859 (3d Cir. 1994) .............................................................................. 5

*Four Way Plant Farm, Inc. v. Nat'l Council on Comp. Ins. (NCCI)*,
　894 F. Supp. 1538 (M.D. Ala. 1995) ............................................................... 7

*Godden v. Franco*, No. CV 2018-0504-VCL,
　2018 WL 3998431 (Del. Ch. Aug. 21, 2018) ................................................. 8

*Jacob v. Mentor Worldwide, LLC*
　40 F.4th 1329 (11th Cir. 2022) ....................................................................... 4

*Plummer v. Am. Inst. of Certified Pub. Accts.*,
　97 F.3d 220 (7th Cir. 1996) ............................................................................ 6

*Ridge Point Cap., LLC. v. Zecevic*, No. 22-CV-81449,
　2023 WL 3778265 (S.D. Fla. Apr. 7, 2023) ................................................. 16

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
　742 So. 2d 381 (Fla. Dist. Ct. App. 1999) ................................................... 14

*Underwriters at Lloyd's London v. Osting-Schwinn,* No. 8:05-CV-1460-17TGW,
　2006 WL 947815 (M.D. Fla. Apr. 12, 2006) .................................................. 5

*Yeyille v. Sch. Bd. of Miami-Dade Cnty.*, No. 14-24624-CIV,
　2015 WL 13950936 (S.D. Fla. Jan. 21, 2015) .............................................. 17

*Zokaites v. Balistreri Realty, Inc.*, No. 06-61244-CIV,
    2006 WL 8431529 (S.D. Fla. Nov. 27, 2006)........................................................................15

**Statutes**

Del. Code Ann. tit. 6, § 1906(a)........................................................................4

**Rules**

Fed. R. Civ. P. 13(a)(1)(A) ........................................................................5

Fed. R. Civ. P. 13(a)(1)(B) ........................................................................5

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller,
    Federal Practice & Procedure § 1414 (3d ed.)........................................................................6

Defendant and Counterclaim-Plaintiff Mark Phillips ("Mr. Phillips") and Counterclaim-Plaintiff MovementDAO (collectively, "Counterclaim-Plaintiffs"), by and through their counsel, hereby file their memorandum of law in opposition to Plaintiffs and Counterclaim-Defendants Ryan Breslow ("Mr. Breslow"), Alex Fine ("Mr. Fine"), and Jon Gordon's ("Mr. Gordon") (collectively, "Counterclaim-Defendants") Motion to Dismiss Counterclaim [ECF No. 131] (the "Motion").

## I.      INTRODUCTION

Counterclaim-Defendants induced Mr. Phillips to leave his work as an SEC contractor to devote his time to building MovementDAO, a novel type of organization that would utilize cryptocurrency and Web3 technology to fund and organize social movements. Counterclaim-Defendants subsequently breached the promises, contracts, and representations with which they induced Mr. Phillips to work for MovementDAO. In the process of breaching their promises, Counterclaim-Defendants caused grievous harm to MovementDAO itself. The Court should therefore deny the Motion and allow Counterclaim-Plaintiffs to seek relief based on the claims asserted in the Counterclaim.

## II.     STATEMENT OF FACTS

Counterclaim-Defendants lured Mr. Phillips away from his position as an SEC contractor to help develop MovementDAO's platform, which would facilitate social movements through a set of tooling that would enable the formation of other decentralized autonomous organizations ("DAOs"). ECF No. 73-1 ("Counterclaim") ¶¶ 24, 26. After working for Counterclaim-Defendants' entity, Merkaba, Inc., under a Consulting Agreement, Mr. Phillips and Counterclaim-Defendants negotiated the terms of Mr. Phillips' transition to work on MovementDAO full-time, which included three non-negotiable conditions: (1) Mr. Phillips would have veto power over

decisions relating to MovementDAO's treasury; (2) Counterclaim-Defendants would commit to providing substantial funding to MovementDAO, and agree to lock their contributions for six years so that the project would be sufficiently secure to attract developers and donors; and (3) MovementDAO would not engage in conduct tantamount to the unregistered offering of securities. *Id.* ¶¶ 27, 28.                          REDACTED

████████████████████████████████████████████████████

██

Following Mr. Phillips' work under the IC Agreement, the parties agreed that MovementDAO would pay Mr. Phillips a salary of $83,333 per month plus benefits and a significant development budget. *Id.* ¶ 34. Mr. Fine took charge of drafting MovementDAO's GitBook, a white paper that set forth MovementDAO's policies, goals, and governance mechanisms. *Id.* ¶ 38. The GitBook's public release on February 2, 2022, marked the launch of MovementDAO. *Id.* The Law Office of Reed Yurchak (the "Law Firm") played a vital role in MovementDAO's development, including traditional legal services as well as specialized services relating to cryptocurrency that Mr. Phillips performed as a consultant. *Id.* ¶¶ 35–36. After Mr. Breslow and Mr. Fine promoted MovementDAO, members of the public contributed to MovementDAO; nine contributors other than Counterclaim-Defendants account for over $1.7 million in contributions. *Id.* ¶¶ 39–42.

Between February and August of 2022, MovementDAO's governance took place largely on the Discord communications platform. *Id.* ¶ 43. During this period, Mr. Phillips shepherded the roll-out of online documentation and tooling to facilitate the creation of DAOs in accordance with MovementDAO's mission. *Id.* ¶ 43. In March 2022, Mr. Phillips set up a voting system on Snapshot.org so MovementDAO community members could vote using non-fungible tokens

("NFTs") issued by MovementDAO. *Id.* ¶ 45. That same month, the PeaceDAO, a DAO formed by MovementDAO dedicated to funding humanitarian aid in Ukraine, launched. *Id.* ¶ 46. In the summer of 2022, Mr. Phillips recruited Defendant Benjamin Reed ("Mr. Reed") to act as MovementDAO's Authorized Member, and Filip Vizitiu ("Mr. Vizitiu") to manage community and governance. *Id.* ¶ 48.

In August 2022, Mr. Phillips, Mr. Reed, and Mr. Vizitiu rolled out a series of proposals (Movement Improvement Proposals or "MIPs") relating to MovementDAO's governance and operations that were subsequently voted on and approved by the MovementDAO community. *Id.* ¶ 49–52. Counterclaim-Defendants were aware of and supported Mr. Phillips' efforts to build MovementDAO and help facilitate its governance. *Id.* ¶¶ 53–55.

At the end of August 2022, Counterclaim-Defendants began to reveal their intention to "rug" the MovementDAO community (a rug being a common exit scam in the crypto space where a development team abandons a project and absconds with the contributions): they began seeking constant updates on the balance of MovementDAO's treasury and speaking of the treasury as an "investment" that could be reclaimed, which was contrary to the GitBook and assurances Counter-Claim Defendants made to Mr. Phillips, which efforts Mr. Phillips did his best to oppose. *Id.* ¶ 56–63. Counterclaim-Defendants efforts to yank back their contributions to MovementDAO culminated in a demand that Mr. Phillips cause MovementDAO to cease nearly all spending, despite lacking the authority to make such a demand. *Id.* ¶¶ 64–66. Counterclaim-Defendants efforts to frustrate MovementDAO's continued existence interfered with MovementDAO's economic relationships with the Law Firm and Mr. Vizitiu and generally harmed MovementDAO's efforts to continue doing business. *Id.* ¶¶ 68–70.

///

### III.    LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to allege facts sufficient 'to raise a right to relief above the speculative level' or fails to 'state a claim to relief that is plausible on its face.'" *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007)). "While the court is required to accept as true all allegations contained in the complaint, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Butts v. ALN Grp., LLC*, 512 F. Supp. 3d 1301, 1306 (S.D. Fla. 2021) (quoting *Twombly*, 550 U.S. at 555).

### IV.    ARGUMENT

#### A.  MovementDAO Has Capacity to Sue Counterclaim-Defendants.

Counterclaim-Defendants are incorrect that MovementDAO lacks the capacity to file suit in this Court as a Delaware unincorporated nonprofit association ("DUNA"). Under Delaware law, an unincorporated association has standing to sue and be sued under its own name. *See* Del. Code Ann. tit. 6, § 1906(a) ("A nonprofit association is a legal entity separate from its members for the purposes of determining and enforcing rights, duties and liabilities in contract and tort"). While DAOs are a novel governance structure, courts have treated DAOs as legal persons subject to suit. *See Commodity Futures Trading Comm'n v. Ooki DAO*, No. 3:22-CV-05416-WHO, 2022 WL 17822445, at *4 (N.D. Cal. Dec. 20, 2022) (allowing the CFTC to bring an action against a DAO despite amici's contention that the DAO "is a technology, not an entity or group of persons"). In light of MovementDAO's status as a DAO comprised of many members formed under Delaware law, the Court should follow *Underwriters at Lloyd's London v. Osting-Schwinn*, in which the court allowed Lloyd's of London to file suit in its own name despite its status as an unincorporated association in recognition of Lloyd's of London's status as the real party in interest and its

importance in commerce.  No. 8:05-CV-1460-17TGW, 2006 WL 947815, at *2 (M.D. Fla. Apr. 12, 2006).

**B.  The Court Has Subject-Matter Jurisdiction Over MovementDAO's Claims.**

The Court has subject-matter jurisdiction over MovementDAO's claims against Counterclaim-Defendants because they were asserted as part of a compulsory counterclaim. The Counterclaim is compulsory because it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Both the Verified Complaint and the Counterclaim relate to the parties management of and relationship to MovementDAO and its assets. Counterclaim-Defendants argue that the Counterclaim is not compulsory because it requires the joinder of MovementDAO, "over whom [according to Counterclaim-Defendants] the court cannot acquire jurisdiction." Mot. at 8 (citing Fed. R. Civ. P. 13(a)(1)(B). Counterclaim-Defendants' arguments that MovementDAO must establish diversity jurisdiction as to its own claims and that the Court cannot acquire jurisdiction over it (thus rendering the counterclaim not compulsory) are both incorrect. "Rule 13(h) authorizes the court to join additional persons in order to adjudicate a counterclaim that is being asserted 'at the same the addition of a nonparty is sought.'" *So. Beach Hotel, LLC v. Molko*, No. 09-21393-CIV, 2009 WL 10667895, at *5 (S.D. Fla. Oct. 14, 2009) (quoting *FDIC v. Bathgate*, 27 F.3d 859, 873–74 (3d Cir. 1994)). Further, "[c]ourts automatically have supplemental jurisdiction over compulsory counterclaims." *Id.* (citation omitted). Thus, Mr. Phillips' joinder of MovementDAO as a counterclaim-plaintiff was proper because (1) Mr. Phillips' counterclaim was compulsory; and (2) MovementDAO's counterclaim is being asserted at the same time as Mr. Phillips' counterclaim.[1]

---

[1] Wright & Miller supports Counterclaim-Plaintiffs' position: "As a result of the ancillary-jurisdiction doctrine now codified as supplemental jurisdiction, the federal courts are able to adjudicate certain related disputes even though they might not be able to do so if the claims were

### C.  MovementDAO States a Claim for Breach of Contract (Count I).

#### 1.  Counterclaim-Defendants are in breach of the GitBook.

##### a.  The GitBook is a contract to which Counterclaim-Defendants are bound.

Counterclaim-Defendants' argument that the GitBook is not a contract to which Counterclaim-Defendants assented to be bound lacks merit. Counterclaim-Defendants zero in on the counterclaim's use of the term "white paper," but Counterclaim-Defendants ignore the allegation that "[m]uch like a set of corporate bylaws, the GitBook was intended to function as MovementDAO's initial governing document." Counterclaim ¶ 38. When individuals join an association, the association's governing documents create a contract to which members assent by virtue of their membership in the organization. "Upon joining a voluntary organization, members agree to be bound by the organization's ethical rules and its disciplinary procedures . . . . The organization, by promulgating such rules and procedures, obviously represents that it will abide by them as well. However, the disciplinary rules and procedures adopted by a private voluntary organization need not be as formal or as elaborate as those employed in a court of law[.]" *Plummer v. Am. Inst. of Certified Pub. Accts.*¸ 97 F.3d 220, 229 (7th Cir. 1996). As the GitBook is one of MovementDAO's governing documents, it therefore functioned as a contract between itself and its members, which included Counterclaim-Defendants. *See also Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 951 (11th Cir. 2016) (treating a homeowner association's governing

---

brought as separate actions. This means that if a federal court has jurisdiction over plaintiff's claim, it also will have jurisdiction over a counterclaim that arises from the same transaction or occurrence, although under the supplemental-jurisdiction statute the court has discretion to decline jurisdiction under certain circumstances, such as if the counterclaim substantially predominates over the main claim." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1414 (3d ed.) (footnotes omitted).

documents as a contract). In the context of a DAO, which is an organization controlled by its members in a decentralized fashion, a governing document like MovementDAO's GitBook is critical as it defines the protocol by which the DAO is governed.

Next, Counterclaim-Defendants argue that MovementDAO was not a party to the GitBook because MovementDAO's status as a DUNA was not formalized until MovementDAO's members adopted MIP-0000 on August 30, 2022. This is irrelevant as MovementDAO launched on February 2, 2022, and thus became a DAO on that date. Even if MovementDAO waited until August 2022 to formalize its existence as a DUNA, "[i]f [a] group fits the definition of an unincorporated association, then it is an unincorporated association." *Four Way Plant Farm, Inc. v. Nat'l Council on Comp. Ins. (NCCI)*, 894 F. Supp. 1538, 1547 (M.D. Ala. 1995) (citation omitted). Even if MovementDAO did not exist as a DUNA until August 2022 despite acting as such, that fact is of no consequence because Counterclaim-Defendants' breaches occurred in late 2022 and 2023.

Counterclaim-Defendants' next argument is that the GitBook is not an enforceable contract because the essential term at issue was not "certain and definite." Specifically, Counterclaim-Defendants argue that different versions of the GitBook provided for different lock-up periods, as versions with lock-up periods of "four years" and "#years" were published simultaneously. Mot. at 10 (citing Counterclaim ¶ 38 n.1). There is no contradiction between this allegation and Counterclaim-Plaintiffs' allegation that Counterclaim-Defendants were required to lock up their contributions to MovementDAO for "a period of multiple years." Counterclaim ¶ 75. Four years and "#years" both indicate a period of multiple years, and Counterclaim-Defendants attempted to withdraw the funds they had contributed before even one year had elapsed. As MovementDAO is a Duna, the Court should construe the GitBook in accordance with the following rule: "Delaware courts strive to interpret contracts, including LLC agreements, to avoid turning provisions into

surplusage or rendering them meaningless or illusory." *Godden v. Franco*, No. CV 2018-0504-VCL, 2018 WL 3998431, at *14 (Del. Ch. Aug. 21, 2018) (footnote and citation omitted).

Finally, Counterclaim-Defendants argue they received no consideration in exchange for agreeing to lock up their contributions. This is false as Counterclaim-Plaintiffs explained that both Mr. Phillips and Counterclaim-Plaintiffs "intended for the GitBook to be a public-spacing document that would attract developers, contributors, and community members." Counterclaim-Plaintiffs thus received the benefit of third parties contributing to and joining MovementDAO.

### b. The GitBook satisfies the Statute of Frauds.

The fact that Counterclaim-Defendants did not physically sign the GitBook is immaterial. Counterclaim-Plaintiffs allege that "Mr. Fine took charge of preparing MovementDAO's GitBook" and that he had "complete editorial control over the final contents of the GitBook." Counterclaim ¶ 38. As explained above, the GitBook functioned as one of MovementDAO's governing documents; the proposition that members of an association are not bound by the organization's governing documents without physically signing them is absurd. (Counterclaim-Defendants' effort to apply Florida's statute of frauds to an associated governed by Delaware law is misplaced.) By publishing the GitBook online, Counterclaim-Defendants evinced clear written assent to be bound thereby.

### c. MovementDAO alleged harm arising from Counterclaim-Defendants' breach.

Counterclaim-Defendants' argument that MovementDAO failed to allege how it was harmed by Counterclaim-Defendants' wrongful effort to rescind their contributions to MovementDAO misstates the counterclaim. Counterclaim-Plaintiffs alleged that as a result of Counterclaim-Defendants' directive to cease spending money, which is inextricably linked to their

effort to claw back their contributions, MovementDAO "has incurred significant damage to its goodwill, has had to spend significant amounts of money as a reasonable and foreseeable result of Counterclaim-Defendants' actions, and has lost economic opportunities it otherwise would have had. Counterclaim ¶ 67. As one example, Counterclaim-Plaintiffs cited the resignation of the Law Firm, which was precipitated by the conflict between the parties. *Id.* ¶ 68.

### 2. The Guiding Principles are not *ultra vires*.

Counterclaim-Defendants' effort to avoid their obligations under MovementDAO's Guiding Principles and Code of Conduct and MIP-0004 lack merit. First, Counterclaim-Defendants' argument that these documents are inconsistent with the GitBook contradicts their argument that the GitBook is not a contract. Even though the GitBook is a contract, Counterclaim-Defendants are still correct. Counterclaim-Defendants' argument that MovementDAO's members could not promulgate governance proposals with MAPE NFTs under the GitBook is incorrect, as Counterclaim-Defendants' selective citation to the GitBook ignores the following provision in the GitBook: "Snapshot voting strategies during the Movement DAO will employ a governance token available to individuals who stake $MOVE. However, during the bootstrapping phase of the DAO community contributors and based on participation will be granted a MAPE-1420 NFT which will be employed for initial governance." Berg Decl., Ex. 2 at PLAINTIFF0000072. Counterclaim-Defendants' argument that these documents are "unauthorized" is also inconsistent with the fact that they were aware and supportive of MovementDAO's efforts to adopt these governance proposals. Counterclaim ¶¶ 52–53, 55.

### 3. Counterclaim-Defendants breached MovementDAO's Guiding Principles, Code of Conduct, and MIP-0004.

### a. The Guiding Principles, and Code of Conduct and MIP-0004 are contracts.

As with Counterclaim-Defendants' *ultra vires* argument, Counterclaim-Defendants' argument that they did not agree to be bound by the Guiding Principles, Code of Conduct, and MIP-0004 is inconsistent with the counterclaim, in which Counterclaim-Plaintiffs alleged that Counterclaim-Defendants were aware and supportive of MovementDAO's efforts to adopt MIPS-0000 through 0007 (MIP-0000 included both the Guiding Principles and Code of Conduct). Counterclaim ¶¶ 52–53. Their argument is especially weak as to Mr. Gordon, who voted for MIP-0000. *Id.* ¶ 55.

Counterclaim-Defendants' consideration argument fails as it fails to take into consideration the fact that the Guiding Principles, Code of Conduct, and MIP-0004 were intended to govern a DAO and DUNA that both sides hoped third parties would contribute to and join. By providing members and prospective members with assurances that MovementDAO would be properly managed, the Guiding Principles, Code of Conduct, and MIP-0004 induced third parties to remain and/or become MovementDAO members, which benefited Counterclaim-Defendants as founders, promoters, and contributors who were once invested in MovementDAO's success. In addition, to the extent these documents provided MovementDAO's Authorized Members and Service Providers with governance rights, Counterclaim-Defendants benefited from the professional management of MovementDAO that these governance rights facilitated.

### b. Counterclaim-Plaintiffs sufficiently alleged a breach of the Guiding Principles and resulting damages.

Counterclaim-Plaintiffs allege multiple breaches of the Guiding Principles. First, Counterclaim-Plaintiffs alleged that Counterclaim-Defendants agreed in Section 2(f) that holding

governance tokens did not constitute "right[] to ownership or management of the DAO," but that they nonetheless tried to exercise control over MovementDAO's treasury and operations without regard to MovementDAO's governing documents or governance processes. Counterclaim ¶¶ 79–80. Second, Counterclaim-Defendants violated the non-disparagement provision in Section 6(d) by (1) disavowing MovementDAO's existence to counterparties; (2) describing its ongoing business, as well as Messrs. Phillips and Reed's role in governing MovementDAO, as "fraudulent;" and (3) disparaging MovementDAO so grievously to Joao Ritter, the founder of Juicebox, a platform whose open-source code Mr. Phillips used to construct MovementDAO's platform, that MovementDAO lost its close partnership with the Juicebox community. *Id.* ¶¶ 81–82.

The Counterclaim contains specific allegations showing how MovementDAO was damaged by Counterclaim-Defendants' breaches of the Guiding Principles. Counterclaim-Defendants' efforts to force MovementDAO to cease spending money (in violation of Section 2(f) caused significant damage to MovementDAO's goodwill, caused MovementDAO to expend money it otherwise would not have expended, resulted in the loss of economic opportunities, and lead to the resignation of the Law Firm. Counterclaim ¶¶ 67–68. Counterclaim-Defendants' violation of the non-disparagement term in turn caused MovementDAO to lose its close partnership with the Juicebox community, which has caused substantial harm to its future prospects, among other damages. *Id.* ¶ 82.

### c. Counterclaim-Plaintiffs sufficiently alleged a breach of the Code of Conduct and resulting damages.

The Counterclaim likewise contains allegations sufficient to show that Counterclaim-Defendants breached the Code of Conduct, resulting in damages. Paragraph 3 of the Community

Standards section of the Code of Conduct states: "Members must not employ any device, scheme, or artifice to defraud Movement, engage in any act, practice, or course of business that operates or would operate a fraud or deceit on Movement, or engage in any manipulative practice with respect to Movement[.]" Counterclaim ¶ 85.

Counterclaim-Defendants violated the Code of Conducts' prohibition on fraudulent practices by inducing MovementDAO's members to contribute funds by promising that their contributions would be locked for a period of multiple years. *Id.* ¶ 86. Counterclaim-Defendants' argument that Counterclaim-Plaintiffs failed to allege facts showing an intent to violate this promise at the time it was made lacks merit as the GitBook is still in effect, thus representing a continuing promise and representation by the parties. Counterclaim-Defendants also violated the prohibition on manipulative practices through its disparaging misrepresentations about MovementDAO discussed above. *Id.*

Counterclaim-Defendants' violation of these provisions contributed to the loss of goodwill, expenditures, lost business opportunities, and resignation of the Law Firm previously discussed. *Id.* ¶ 67–68.

### d. Counterclaim-Plaintiffs sufficiently alleged a breach of MIP-0004 and resulting damages.

Counterclaim-Defendants' intentional disruption of MovementDAO's business activities was a breach of MIP-0004 that caused MovementDAO to incur damages. In order to facilitate its business activities, MIP-0004 expressly authorized MovementDAO, through its Service Provider, to "make payments to itself, dao-lawfirm.eth, and tankbottoms.eth [Mr. Phillips] for Cryptocurrency reimbursements associated with ongoing expenses[.]" Counterclaim ¶ 89. Counterclaim-Defendants' efforts to prevent Mr. Phillips from expending funds on behalf of

MovementDAO contravenes the arrangement contemplated by MIP-0004 because MovementDAO's Service Provider cannot reimburse Mr. Phillips for expenses he incurs on MovementDAO's behalf if Mr. Phillips is prevented from spending funds on behalf of MovementDAO in the first place. Counterclaim-Defendants' violation of MIP-0004 contributed to the loss of goodwill, expenditures, lost business opportunities, and resignation of the Law Firm previously discussed. *Id.* ¶ 67–68.

### D. MovementDAO States a Claim for Tortious Interference with Contractual Relations (Count II).

Counterclaim-Plaintiffs alleged facts showing that Counterclaim-Defendants intentionally interfered with MovementDAO's contractual relationships with the Law Firm and Filip Vizitiu.

### 1. MovementDAO had contracts with the Law Firm and Mr. Vizitiu.

Counterclaim-Defendants' argument that Counterclaim-Plaintiffs failed to allege contractual relationships between MovementDAO on the one hand, and the Law Firm and Mr. Vizitiu on the other hand, is inconsistent with the counterclaim. The Counterclaim states that the "Law Firm provided the parties with the legal services necessary to build a large, sophisticated DAO, and contributed 100,000 DAI (approximately equivalent to the same amount in dollars) to MovementDAO. Counterclaim ¶ 35. The Law Firm thus had a contractual relationship with MovementDAO in two respects: first, as a provider of legal services; and second, as a contributor to, and therefore member of, MovementDAO. *See id.* MovementDAO further hired Mr. Vizitiu "to manage MovementDAO's community and governance." *Id.* ¶ 48. Mr. Vizitiu and MovementDAO thus had an independent contractor relationship. *See id.*

///

///

### 2. The counterclaim contains facts showing a breach of contract.

The Counterclaim does not support Counterclaim-Defendants' argument that Counterclaim-Plaintiffs failed to allege facts showing a breach of contract. Counterclaim-Defendants alleged that the Law Firm "cease[d] acting as MovementDAO's legal counsel," and "Mr. Vizitiu . . . cease[d] doing work for MovementDAO." Counterclaim ¶¶ 95, 98. These allegations do not support Counterclaim-Defendants' conclusion that neither of these counterparties breached their contracts with MovementDAO.

### 3. Counterclaim-Plaintiffs sufficiently allege unjustified interference.

Counterclaim-Defendants' relationship with MovementDAO (that they largely try to disclaim in order to evade MovementDAO's breach of contract claim) does not preclude MovementDAO's intentional interference claim. "[T]he 'privilege to interfere' enjoyed by an officer or employee of a contracting party is not absolute. The privilege is destroyed where an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit the employer, and the employee's conduct concerning the contract or business relationship is not in the employer's best interest." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. Dist. Ct. App. 1999) (citations omitted). With respect to both the Law Firm and Mr. Vizitiu, Counterclaim-Plaintiffs alleged that Counterclaim-Defendants did not interfere with MovementDAO's respective relationships "in their capacity as agents or employees of MovementDAO," and that they acted with malice. Counterclaim ¶¶ 95, 98. Accordingly, Counterclaim-Defendants had no privilege to interfere with MovementDAO's contracts with the Law Firm and Mr. Vizitiu.

*///*

14

### E.  The IC Agreement Does Not Preclude Mr. Phillips' Claims against Counterclaim-Defendants.

The IC Agreement does not preclude Mr. Phillips from asserting breach of contract, promissory estoppel, and fraud claims against Counterclaim-Defendants. █████ REDACTED █████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████  *See Zokaites v. Balistreri Realty, Inc.*, No. 06-61244-CIV, 2006 WL 8431529, at *4 (S.D. Fla. Nov. 27, 2006) ("[A]n inquiry into whether the contracts at issue contained integration clauses, and the subject matter covered by those contracts, is precisely the kind of factual inquiry that is not appropriate under the legal standard for a Motion to Dismiss."). ██

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████  Counterclaim ¶ 112.

15

████████████████ REDACTED ████████████████ *See Ridge*

*Point Cap., LLC. v. Zecevic*, No. 22-CV-81449, 2023 WL 3778265, at *3 (S.D. Fla. Apr. 7, 2023)

("[T]he existence of a merger or integration clause, which purports to make oral agreements not

incorporated into the written contract unenforceable, does not affect oral representations which are

alleged to have fraudulently induced a person to enter into the agreement." (citations and internal

quotation marks omitted)). Counterclaim-Defendants further argue that Mr. Phillips' fraud claim

fails because the IC Agreement contained consideration for Mr. Phillips to leave the SEC but did

not contain the representations underpinning Mr. Phillips' fraud claim. This is false. ██████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ Counterclaim-Defendants' representations regarding the ongoing governance

of MovementDAO, which were fraudulent, induced Mr. Phillips to commit to working full-time

for MovementDAO ██████████ REDACTED ██████████

**F. The Statute of Frauds Does Not Bar Mr. Phillips' Breach of Contract Claim.**

Counterclaim-Defendants' argument that Mr. Phillips' breach of contract is barred by the

statute of frauds lacks merit. First, the Court should apply Washington law, not Florida law, insofar

Mr. Phillips initially performed his work under the oral contract from Washington until

Counterclaim-Defendants induced him to move to Florida. *See* Counterclaim ¶ 31. Under

Washington law, "full and partial performance are exceptions to the statute of frauds." *Columbia*

*Park Golf Course, Inc. v. City of Kennewick*, No. CV-07-5054-EFS, 2008 WL 4862554, at *3

(E.D. Wash. Nov. 7, 2008) (citations omitted). In any event, there *is* a writing consistent with

Counterclaim-Defendants' promise relating to the lock-up of their contributions to

MovementDAO, the GitBook, primarily authored by Mr. Fine, committed Counterclaim-Defendants to lock their contributions to MovementDAO for a period of multiple years. Counterclaim ¶ 38.

### G. The Court Should Permit Counterclaim-Plaintiffs Leave to Amend Any Deficiencies.

In the event that the Court dismisses any part of the Counterclaim, Counterclaim-Plaintiffs request leave to amend their Counterclaim to allege additional facts that may cure any deficiencies. *See Yeyille v. Sch. Bd. of Miami-Dade Cnty.*, No. 14-24624-CIV, 2015 WL 13950936, at *1 (S.D. Fla. Jan. 21, 2015) (explaining that "leave to amend is freely given").

### V.    CONCLUSION

Based on the foregoing arguments and authorities, Defendant and Counterclaim-Plaintiff Mark Phillips and Counterclaim-Plaintiff MovementDAO respectfully request that this Honorable Court deny Plaintiffs and Counterclaim-Defendants Ryan Breslow, Alex Fine, and Jon Gordon's motion to dismiss the counterclaim, or, in the alternative, permit Counterclaim-Plaintiffs leave to file an amended Counterclaim to remedy any deficiency identified by the Court.

Date: July 28, 2023                         Respectfully submitted,

  /s/ Nitoj P. Singh

DHILLON LAW GROUP INC.
Matthew S. Sarelson (Florida Bar 888281)
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
305.773.1952

DHILLON LAW GROUP INC.
Nitoj P. Singh (Admitted *pro hac vice*)
Jesse Franklin-Murdock (Admitted *pro hac vice*)
177 Post Street, Suite 700
San Francisco, CA 94108
415.433.1700

Attorneys for Defendant and Counterclaim-Plaintiff
Mark Phillips; Defendant Benjamin Reed; and
Counterclaim-Plaintiff MovementDAO