**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

RYAN BRESLOW, ALEX FINE, and
JON GORDON,

               Plaintiffs,

     v.

MARK PHILLIPS and BENJAMIN REED,

               Defendants.

_____

MOVEMENTDAO and MARK PHILLIPS,

           Counterclaim-Plaintiffs

     v.

RYAN BRESLOW, ALEX FINE, and
JON GORDON,

           Counterclaim-Defendants

_____

Action No.: 23-cv-20727-ALTMAN/Reid

Honorable Roy K. Altman

**REDACTED VERSION**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTION
TO MAGISTRATE JUDGE REID'S REPORT AND RECOMMENDATION**

<u>**TABLE OF CONTENTS**</u>

**Page**

I.      Judge Reid's recommendation as to Defendant Reed is supported by the record ..............1

II.     Plaintiffs have standing to assert their claims ....................................................................4

III.    Judge Reid's finding that Movement DAO did not launch is supported by the record ..........................................................................................................................................8

IV.     Judge Reid's findings and conclusions regarding fraud are supported by the record ..........................................................................................................................................9

       A.     The record supports finding Mr. Phillips knew his statements were false ..............9

       B.     The record supports finding fraud regarding implementing the Gitbook ..............11

       C.     The record supports finding fraud regarding Plaintiffs' tokens ............................12

       D.     The record supports finding fraud regarding Mr. Yurchak's involvement............12

       E.     The record supports finding that Snapshot proposals have no authority ..............14

V.      The record supports finding a breach of fiduciary duty....................................................15

VI.     The record supports a finding of irreparable harm ..........................................................18

VII.    The record supports finding that the balance of hardships favors Plaintiffs....................19

VIII.   The Court should not require Plaintiffs to post bond........................................................19

IX.     Conclusion ........................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cap. Bank v. MVB, Inc.*,
    644 So. 2d 515 (Fla. Dist. Ct. App. 1994) ...............................................................16

*DeLong Equip. Co. v. Washington Mills Abrasive Co.*,
    887 F.2d 1499 (11th Cir. 1989) ...............................................................................2

*Gay-Straight All. of Yulee High Sch. v. Sch. Bd. of Nassau Cnty.*,
    602 F. Supp. 2d 1233 (M.D. Fla. 2009) .................................................................20

*Golden v. Univ. of Miami*,
    484 F. Supp. 3d 1255 (S.D. Fla. 2020) ..................................................................19

*Jackson-Davis v. Carnival Corp.*,
    2018 WL 1468665 (S.D. Fla. Mar. 23, 2018) ...........................................................6

*Kadiyala v. Pupke*,
    2021 WL 6750792 (S.D. Fla. Dec. 17, 2021) ............................................................4

*Kurnow v. Abbott*,
    114 So. 3d 1099 (Fla. Dist. Ct. App. 2013) ..............................................................2

*Macort v. Prem, Inc.*,
    208 F. App'x 781 (11th Cir. 2006)............................................................................8

*Mancinelli v. Davis*,
    217 So. 3d 1034 (Fla. Dist. Ct. App. 2017) ..............................................................4

*McAndrew v. Lockheed Martin Corp.*,
    206 F.3d 1031 (11th Cir. 2000) ................................................................................3

*Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*,
    367 F. Supp. 3d 1360 (M.D. Fla. 2019)....................................................................3

*Phan v. Deutsche Bank Nat. Tr. Co., ex rel. First Franklin Mortg. Loan Tr. 2006-FF11*,
    198 So. 3d 744 (Fla. Dist. Ct. App. 2016) ................................................................6

*Planco Fin. Servs., L.L.C. v. Guzzetta*,
    2009 WL 10700931 (S.D. Fla. Apr. 2, 2009) .........................................................20

*Solyom v. World Wide Child Care Corp.*,
    2015 WL 6167411 (S.D. Fla. Oct. 15, 2015)............................................................3

*Tancogne v. Tomjai Enterprises Corp.*,
  408 F. Supp. 2d 1237 (S.D. Fla. 2005) .................................................................20

*United States v. Schultz*,
  565 F.3d 1353 (11th Cir. 2009) .............................................................................8

*Wachovia Bank, N.A. v. Tien*,
  534 F. Supp. 2d 1267 (S.D. Fla. 2007) ..................................................................7

*XRI Inv. Holdings LLC v. Holifield*,
  283 A.3d 581 (Del. Ch. 2022).............................................................................3, 8

## Statutes

18 U.S.C. § 371 .......................................................................................................4

18 U.S.C. § 1343 .....................................................................................................4

Fla. Stat. § 817.034 .................................................................................................4

## Other Authorities

Restatement (Second) of Agency § 423 ...................................................................6

Defendants have filed an objection to Magistrate Judge Reid's Report and Recommendation (the "Report," ECF No. 139) that fails to contend with the overwhelming evidence that establishes Plaintiffs' entitlement to a preliminary injunction. ECF No. 142. The Court should adopt the Report in full because it correctly applies the law and is supported by compelling evidence. During the three-day evidentiary hearing, Plaintiffs presented unimpeached testimony, documents, and expert analysis on a voluminous scale. To rebut that evidence, Defendants almost exclusively relied on the testimony of Defendant Phillips, a felon convicted of wire fraud and money laundering, and who a federal judge found to have perjured himself four times during his criminal trial. Ex. F (Hr'g Trans. (May 30, 2023)) at 10:23–11:13, 51:19–54:4;[1] ECF No. 106-39. As Judge Reid implicitly found, like so many courts before, *see* Ex. F at 11:15–13:2, 54:1–54:4, Mr. Phillips's testimony was not credible.

The Report succeeds in succinctly distilling a complex case to its essentials. In doing so, it recommends converting the terms of the existing temporary restraining order into a preliminary injunction—including the order's directive to excuse bond. Defendants' strategy of mischaracterizing the Report's findings and conclusions is meritless. Defendants cannot escape the comprehensive record. The extraordinary remedy recommended by the Report befits Defendants' extraordinary wrongdoing.

## I.      Judge Reid's recommendation as to Defendant Reed is supported by the record

Defendants claim that Judge Reid made no findings about Defendant Reed's liability for civil conspiracy. ECF No. 142 at 2. Not so. Judge Reid found that Mr. Reed was an active participant in Mr. Phillips's scheme to defraud Plaintiffs. *See* ECF No. 139 at 5–6. Defendants

---

[1] Citations to exhibits correspond to the exhibits attached to the Declaration of Christopher T. Berg dated August 4, 2023, filed contemporaneously with this Opposition.

ignore huge portions of the record when they contend there is no evidence of Defendants having an agreement to enter into an unlawful conspiracy.  ECF No. 142 at 2.  An agreement to assist Mr. Phillips's fraud (a tortious and unlawful act) can be inferred from Mr. Reed's participation in the central acts of Mr. Phillips's theft.  *See DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1515 (11th Cir. 1989) ("Conspiracies are rarely evidenced by explicit agreements, and must almost always be proven by inferences that may be fairly drawn from the behavior of the alleged conspirators.").

As Judge Reid found, ECF No. 139 at 5–6, the record shows that Mr. Phillips's fraud culminated in his transferring $8.5 million from the DAO endowment and his removing Plaintiffs as signatories on the DAO endowment account.  Ex. F at 44:21–25, 45:11–14.  Mr. Reed assisted this fraudulent activity by authoring the Snapshot proposals purporting to authorize the $8.5 million transfer and the removal of Plaintiffs as signatories, *see e.g.*, ECF No. 106-10 at PLAINTIFF0000520–521; ECF No. 106-11 at PLAINTIFF0000542; ECF No. 106-14 ¶¶ 14–15, by authoring a failed proposal to transfer funds from the endowment that falsely claimed Plaintiff Gordon approved it, Ex. C (Hr'g Trans. (April 27, 2023 afternoon session)) at 30:18–32:3; ECF No. 106-9 at PLAINTIFF0000448, -455, by assisting Mr. Phillips in executing the transactions that transferred the $8.5 million from the DAO endowment, Ex. F at 44:21–45:6, and by receiving a share of the stolen DAO endowment funds into his personal account labeled "benreed.eth," ECF No. 106-14 ¶ 17(e & f); ECF No. 106-26 at PLAINTIFF0000903–904; ECF No. 106-36 at PLAITIFF0001653; ECF No. 106-44 .  The evidence establishing Mr. Reed as a coconspirator is compelling.

The intracorporate conspiracy doctrine does not save Defendants.  First, the doctrine applies only to directors, officers, or employees of a corporation, *Kurnow v. Abbott*, 114 So. 3d

1099, 1102 (Fla. Dist. Ct. App. 2013), and Defendants were made officers of MovementDAO pursuant to proposals that had no authority, *see* ECF No. 106-4 at PLAINTIFF0000179; *infra* Part IV.E; *accord* ECF No. 139 at 6, and that were procured by fraud, Ex. E (Hr'g Trans. (May 25, 2023)) at 52:8–57:4 and 68:9–73:17; Ex. G (Demonstrative of Nicholas Bax) at 8–10, 22–33; *infra* Part IV.D.  Defendants' status as agents of MovementDAO therefore was void *ab initio*. *See XRI Inv. Holdings LLC v. Holifield*, 283 A.3d 581, 653 (Del. Ch. 2022) ("An act that an entity lacks authority to take is ultra vires and void . . . .").

Second, the doctrine does not apply where the conspiring officers have "a personal stake in the activities that are separate and distinct from the corporation's interest," such that they act outside the scope of their employment.  *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, 367 F. Supp. 3d 1360, 1372–73 (M.D. Fla. 2019).  The Gitbook governs Defendants' relationship with MovementDAO and defines the entity's interests.  ECF No. 106-13 ¶¶ 20, 24; Ex. F at 15:6–16.  Defendants acted in contravention of the Gitbook by transferring $8.5 million from the DAO endowment in February 2023 based on proposals ratified by a Snapshot voting process that Mr. Phillips admitted did not comply with the voting process required by the Gitbook, and thus contrary to MovementDAO's interests.  Ex. F at 23:22–25:8; ECF No. 106-3 at PLAINTIFF0000089.  Defendants had a personal stake in violating the Gitbook because they each received over $1,000,000 from the February 2023 transfers for their personal gain.  ECF No. 106-26 at PLAINTIFF0000904–905; ECF No. 106-37; *see also infra* Part V at 17.

Third, the doctrine does not apply "in civil cases where the underlying conduct could support a criminal action."  *Solyom v. World Wide Child Care Corp.*, 2015 WL 6167411, at *2 (S.D. Fla. Oct. 15, 2015) (doctrine not applicable where civil conspiracy allegations would support fraud prosecution); *see also McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1039

-3-

(11th Cir. 2000) (doctrine not applicable where facts supporting civil conspiracy action could support criminal proceeding under 18 U.S.C. § 371); *cf. Mancinelli v. Davis*, 217 So. 3d 1034, 1037 n.1 (Fla. Dist. Ct. App. 2017) (acknowledging criminal conspiracy exception).  Here, in addition to supporting Plaintiffs' civil conspiracy claim to commit fraud, the record also would support criminal proceedings under 18 U.S.C. § 1343 (wire fraud) and Fla. Stat. § 817.034(4) (Florida Communications Fraud Act).  Fourth, the doctrine does not apply "unless the corporation is alleged to be one of the co-conspirators," *Kadiyala v. Pupke*, 2021 WL 6750792, at *1 (S.D. Fla. Dec. 17, 2021), and MovementDAO is not an alleged co-conspirator.[2]

## II.    Plaintiffs have standing to assert their claims

Defendants contend that Plaintiffs' claims belong to MovementDAO.[3]  ECF No. 142 at 2. They argue that a claim is derivative when a shareholder institutes an action "to enforce a right that the corporation or association may properly assert."  *See* ECF No. 43 at 20.  The Report's factual findings refute that premise by establishing that the claims alleged in the Complaint belong to Plaintiffs.

As to the fiduciary duty claim, Judge Reid found that "a relationship of trust and confidence existed between *the parties* and that *Plaintiffs* depended on Defendant Phillips."  ECF No. 139 at 7 (emphasis added).  On that basis, Judge Reid concluded that Mr. Phillips owed

---

[2]  The doctrine is also inapplicable because the fraudulent scheme began no later than January 2022—eight months before MovementDAO even purported to exist.  *See infra* Part IV.A; Ex. E at 113:12–19, 119:24–120:21 (Mr. Reed's participation began no later than February 2022). Defendants cannot shield their conspiratorial acts by creating a fraudulent entity after launching their conspiracy.

[3]  There is a distinction in this litigation between "MovementDAO," which is the fraudulently-formed entity created by Defendants, and the "Movement DAO" or the "Movement DAO project," which is the project described in the Gitbook that Plaintiffs hired Mr. Phillips to develop.  The transcript does not make that distinction and refers to both as MovementDAO.

Plaintiffs a duty and that he breached that duty.  *Id.*  Because Mr. Phillips owed a duty to Plaintiffs individually, the breach of duty claim belongs to Plaintiffs, not MovementDAO.

As to the fraud claim, the misrepresentations referenced in the Report are personal to Plaintiffs.  For example, one misrepresentation was intended to induce Plaintiffs to give Mr. Phillips access to their individual authorization tokens to the DAO endowment account.  Ex. A (Hr'g Trans. (April 25, 2023 morning session)) at 45:12–46:12; *accord* ECF. No. 139 at 5.  The right to assert the fraud claim therefore is held by Plaintiffs individually, not MovementDAO.

Moreover, Defendants' scheme began before the MovementDAO entity even purported to exist.  As Defendants concede, MovementDAO was formed in August 2022.  ECF No. 142 at 3 ("In MIP-0000, MovementDAO's members adopted Guiding Principles establishing MovementDAO as a DUNA."); *see also* ECF No. 106-4 at PLAINTIFF0000176 ("Guiding principles: Establish the DAO as a Delaware Unincorporated Nonprofit Association."); Ex. A at 31:5–20 (unincorporated association idea first mentioned in June 2022).  The fraudulent statements described in the Report occurred in January and February 2022.  Ex. A at 44:14–46:12; *see infra* Part IV.A.  The fraud claim cannot belong to MovementDAO when the statements giving rise to the fraud occurred months before the entity was even contemplated.

Defendants also contend that a claim is derivative when the harm is born by a corporation, not its shareholders.  ECF No. 142 at 3; *see also* ECF No. 43 at 20–21.  On that basis, Defendants argue the money Defendants stole belonged to MovementDAO,  ECF No. 142 at 3.  But Defendants cite no evidence that suggests MovementDAO owns the stolen funds.

The record clearly shows that the Movement DAO endowment account belongs to Ryan Breslow.  Mr. Phillips acted as Mr. Breslow's agent at the time of the account's creation in

January 2022 and for many months thereafter.[4]  *See Jackson-Davis v. Carnival Corp.*, 2018 WL 1468665, at *4 (S.D. Fla. Mar. 23, 2018) (agency relationship formed when principal acknowledges agent will act for him, agent accepts that charge, and principal controls agent). Mr. Breslow directed Defendant Phillips to create the DAO endowment account, and Mr. Phillips did so using the cryptocurrency address ending in 0085.[5]  After the account's creation, Plaintiffs transferred over $16 million into the DAO endowment account.  Ex. A at 13:13– 14:2; Ex. E at 57:5–58:12; ECF No. 6 ¶ 6.  Mr. Breslow never transferred ownership of the DAO endowment account or any of its assets to MovementDAO.[6]  Ex. A at 42:20–21 & 43:3–5. Instead, he has held his funds (and the funds provided by the other contributors) in trust in that account until the Movement DAO project launches, at which point the funds in the DAO endowment will be exchanged for $MOVE tokens.  *Id.* at 42:22–43:8.

When an agent performs an act pursuant to the direction of a principal, such as creating a bank account, that account is the property of the principal, not the agent.[7]  When Mr. Phillips

---

[4]  Ex. A at 40:25–42:19, 43:12–46:12; Ex. B at 28:10–29:9; ECF No. 106-38 (July 30, 2022 text message.  Phillips: "Thank you, for being an awesome boss. . . .just want to work and add value and protect your interests."); Ex. C at 9:16–12:12; ECF No. 106-24; ECF No. 106-25.

[5]  *See* Ex. A at 29:5–12; ECF No. 106-42 at PLAINTIFF0001811 (DAO endowment created on January 8, 2022 by 0085 address); ECF No. 68 ¶ 11 (0085 address registered to daolawfirm.eth); ECF No. 43-9 ¶ 22 (Phillips operated daolawfirm.eth); Ex. C at 71:3–72:1 (Phillips controlled the 0085 address); Ex. E at 60:1–62:4 (Phillips created DAO endowment); Ex. G at 18.

[6]  Defendants assert that Mr. Breslow "admitted" that all contributions to the DAO endowment account belong to MovementDAO following its launch.  ECF No. 142 at 3.  Not so.  Mr. Breslow testified that he would transfer his DAO endowment contribution to Movement DAO only after all launch preconditions were completed and he authorized launch.  Ex. A at 19:3–22.

[7]  *See* Restatement (Second) of Agency § 423 (1958) ("[A]n agent who holds the title to something for the principal is subject to a duty to . . . act in accordance with the directions of the principal [and] to use it only for the principal's benefit."); *Phan v. Deutsche Bank Nat. Tr. Co., ex rel. First Franklin Mortg. Loan Tr. 2006-FF11*, 198 So. 3d 744, 748 (Fla. Dist. Ct. App. 2016) ("An agent may, in the scope of its agency, hold property on its principal's behalf. In such

created the DAO endowment at Mr. Breslow's direction, that account became the property of Mr. Breslow, and the assets in that account belonged to individual contributors held in trust, including Plaintiffs, the largest contributors.  Ex. A at 42:22–43:2; Ex. E at 52:8–58:12; *accord* ECF No. 139 at 7 (Plaintiffs contributed over 97% of the DAO endowment account's total assets).  Because the DAO endowment account belongs to Mr. Breslow, and because that account was holding the contributions of Plaintiffs in trust, the vast majority of the money that Defendants stole belongs to Plaintiffs, not MovementDAO.  MovementDAO has no ownership over the DAO endowment account or the funds in it.  It is therefore Plaintiffs, not MovementDAO, who have suffered harm from Defendants' conduct.

Finally, MovementDAO is a fraudulently-formed entity.  Plaintiffs cannot assert claims on behalf on an entity that was void *ab initio*.  Plaintiffs presented copious evidence showing that Defendants' MovementDAO Snapshot proposals were inconsistent with the Gitbook and procured by fraud, including MIP-0000, which purported to establish MovementDAO as an unincorporated nonprofit association.[8]  *See infra* Part IV.E.  Judge Reid credited this evidence and concluded MovementDAO's Snapshot proposals were unauthorized.  ECF No. 139 at 6.

---

instances, it is said that the principal [] both owns the property held by the agent and bears authority to direct the agent's actions concerning that property."); *see also Wachovia Bank, N.A. v. Tien,* 534 F. Supp. 2d 1267, 1286 (S.D. Fla. 2007) (finding bank accounts to which principals granted agents signing authority were owned by each respective principal).

[8]  *See, e.g.*, ECF No. 106-13 ¶¶ 20, 24 (Gitbook governs the Movement DAO and its members); Ex. F at 15:6–16; Ex. A at 19:3–27:7 (only $MOVE tokenholders can authorize Movement DAO actions); ECF No. 106-3 at PLAINTIFF0000048, -54, - 89, -120 (Gitbook on same); Ex. F at 23:22–25:8 (Phillips admitting Snapshot voting process inconsistent with Gitbook); ECF No. 68 ¶ 12 (No $MOVE tokens issued); Ex. E at 65:15– 68:8 (MovementDAO proposals, including MIP-0000, were not voted on using $MOVE tokens or MAPE NFTs); Ex. E at 52:8–57:4 and 68:9–73:17 (MovementDAO governance proposals, including MIP-0000, were passed with fraudulently-procured votes); ECF No. 68 ¶ 19; ECF No. 106-4 at PLAINTIFF0000176 (MIP-0000 purporting to establish MovementDAO as an unincorporated nonprofit association).

Accordingly, MovementDAO's existence was void *ab initio,* and it was not and is not authorized to exist as any kind of entity or assert legal claims. *See XRI Inv. Holdings LLC*, 283 A.3d at 653.

### III.   Judge Reid's finding that Movement DAO did not launch is supported by the record

Defendants argue that "the evidence reflects that both sides understood MovementDAO to have launched," ECF No. 142 at 4, but they do not specifically object to Judge Reid's findings that "Plaintiffs presented substantial evidence that the DAO did not launch," ECF No. 139 at 8, and that because "Phillips never completed the Movement DAO platform, Breslow used the available software from Juicebox to launch the PEACE DAO project," *id*. at 9.[9]

The record comprehensively establishes that Movement DAO never launched. That is clear from the only contemporaneous piece of evidence that details the conditions for launch and to which both Mr. Breslow and Mr. Phillips expressly assented: ███████████████████

███████. Hr'g Ex. 367 at 000351-352 (docketed under seal as ECF No. 41-2, Exhibit 6 at 5–6)

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████ Ex. A at 19:10–22; Ex. B (Hr'g Trans. (April 27, 2023 morning session [sealed testimony])) at 3:14–7:20 & 29:22–30:13; Ex. C at 22:18–23:18; Ex. E at 73:18–78:6; Ex. G at 34–39; Ex. F at 66:4–67:9. The record shows that no social impact group has been launched or hosted on the Movement DAO platform, Ex. F at 67:4–6; Ex. A at 47:5–48:25 & 49:1–8 & 93:24–96:2; ECF No. 100-41; ECF No. 74, Exhibit B. Plaintiffs also established

---

[9] The failure to make specific objections results in clear error review. *See Macort v. Prem, Inc*., 208 F. App'x 781, 784 (11th Cir. 2006); *United States v. Schultz*, 565 F.3d 1353, 1360–61 (11th Cir. 2009).

that launch preconditions in the Gitbook were never implemented, *see* Ex. A at 19:23–25:24; Ex. F at 25:9–26:9; ECF No. 100-42 ¶¶ 11–20, and that the Movement DAO website stated that the project had not launched, *see* Ex. F at 61:14–65:12; ECF Nos. 106-54 & 106-55.  This substantial evidence shows that Movement DAO has not launched.  *Accord*  ECF No. 139 at 9.

## IV.    Judge Reid's findings and conclusions regarding fraud are supported by the record

### A.    The record supports finding Mr. Phillips knew his statements were false

Defendants incorrectly assert that the Report contains no finding that Mr. Phillips knew his representations to Plaintiffs were false at the time he made them.  ECF No. 142 at 5.  Judge Reid found that Plaintiffs introduced sufficient evidence showing "Defendants knew [their misrepresentations] were false," ECF No. 139 at 5, including that Mr. Phillips knew that his assurances to "develop the DAO consistent with the principles and policies described in the Gitbook" and to "hold Plaintiffs' voting tokens and vote them as instructed" were false, *id.*

Mr. Phillips knew his statements were false because, as the record shows, he had already begun executing his fraudulent scheme when he made the statements in January and February 2022.  First, on February 2, 2022, Mr. Phillips fraudulently attributed a contribution to the DAO endowment made by Mr. Breslow as if the contribution had been made by the address ending in 0085, a cryptocurrency wallet Mr. Phillips controlled.  Ex. E at 56:7–57:4 *see supra* note 5.  At that same time, Mr. Phillips took contributions made by DAO community members in DAI cryptocurrency, converted those DAI contributions to Ethereum cryptocurrency, and then falsely attributed the converted Ethereum as if the 0085 address had contributed it to the endowment.  Ex. E at 52:8–56:6.  Mr. Phillips used those false attributions to give the 0085 address over 10 million votes within the Snapshot voting platform, which he used to pass proposals that enabled his theft.  Ex. E at 65:15–70:21; Ex. G at 8–10, 22–33; Ex. C at 14:24–16:4; ECF No. 100-9.

Second, prior to February 2022 when the Gitbook was being drafted, Mr. Phillips lied to Plaintiffs about attorney Reed Yurchak overseeing the Movement DAO as the project's service provider. Ex. A at 29:13–30:23, 32:18–19, 50:18–52:9; Ex. C at 14:24–16:4. At that time, he specifically represented to Plaintiffs that Mr. Yurchak would oversee the use of the 0085 address. Ex. F at 32:20–34:8; Ex. C at 14:24–16:4. In reality, Mr. Phillips excluded Mr. Yurchak from the Movement DAO's development activities. Ex. C at 68:15–70:5, 76:23–79:17, 80:11–22, 83:12–84:23; ECF No. 106-23. He did not consult Mr. Yurchak about the use of the 0085 address, including when Mr. Phillips used it to pass self-serving "governance proposals" to assist his scheme, transfer $8.5 million from the DAO endowment, and remove Plaintiffs as signatories of the endowment. Ex. C at 70:6–72:1, 73:2–80:22; ECF Nos. 106-7, 106-8, & 106-42.

Mr. Phillips instead engaged in a series of fraudulent acts to make it seem like Mr. Yurchak was more involved in the Movement DAO project than he actually was, including preparing a false invoice showing Mr. Yurchak doing work on the Movement DAO project that Mr. Yurchak never performed, Ex. C at 84:24–91:25; ECF Nos. 106-15, 106-16; Ex. A at 53:10–25, creating a false website associating Mr. Yurchak with the dao-lawfirm alias that Mr. Phillips controlled, Ex. C at 80:24–83:2; ECF No. 106-1, sending emails to Plaintiffs using Mr. Yurchak's name that Mr. Yurchak never authorized, Ex. C at 16:5–18:13, 83:3–83:11; ECF Nos. 106-20, 106-23, and making recommendations to Plaintiffs that Mr. Phillips claimed was advice from Mr. Yurchak that Mr. Yurchak, in fact, never provided, Ex. A at 30:21–31:24 (Phillips conveyed "Yurchak advice" in June 2022); Ex. C at 83:12–21 (Yurchak stopped providing substantive advice by March 2022). Mr. Phillips even invited Mr. Yurchak to be a coconspirator in his scheme to bill Plaintiffs for work that Mr. Phillips represented Mr. Yurchak's firm performed but which Mr. Yurchak's firm never undertook. Ex. C at 87:12–88:18.

-10-

Third, Mr. Phillips repeatedly misrepresented to Plaintiffs from January 2022 onward that he worked for Mr. Breslow when he actually considered himself an employee of the entity MovementDAO as of January 1, 2022. Ex. A at 40:25–42:19; Ex. B at 28:14–29:9; ECF No. 106-38; Ex. F at 15:21–16:22. Fourth, Mr. Phillips admitted that in August 2022 he authored and implemented proposals that were inconsistent with the Gitbook, which is strong evidence that he never intended to implement the Gitbook. Ex. F at 22:13–25:8.

This evidence of Mr. Phillips's fraudulent scheme reflects his state of mind before and after he made his promises to Plaintiffs and shows a consistent intent not to honor his promises to implement the Gitbook or use Plaintiffs' authorization tokens per their instructions.

### B.    The record supports finding fraud regarding implementing the Gitbook

Judge Reid concluded that Mr. Phillips did not implement the Gitbook in accordance with his assurances to do so. ECF No. 139 at 5. Defendants contend that Judge Reid's conclusion is based on "the Gitbook's prohibition on withdrawing or transferring endowment funds." ECF No. 142 at 6. That misreads the Report. Judge Reid found that Defendants' attempted transfer of funds in January 2023 and the actual transfer of funds in February 2023 rendered Mr. Phillips's assurances false for three reasons. First, the Snapshot platform through which the January and February 2023 transfers were "ratified" was a beta platform that lacked authority to authorize transfers from the DAO endowment. Ex. A at 17:16–18:15; Ex. C at 30:7–30:13; ECF No. 106-3 at PLAINTIFF0000120; *accord* ECF No. 139 at 5. Second, Movement DAO members had not been vested with voting authority to authorize any Movement DAO actions because they had not yet been issued $MOVE tokens per the Gitbook. Ex. A at 24:7–25:5, 25:25–27:7; Ex. F at 22:13–25:8; ECF No. 106-3 at PLAINTIFF0000054, at -077, at -089; *accord* ECF No. 139 at 6. Third, the transfer proposals were fraudulently procured because Mr.

Yurchak did not approve them, ECF No. 106-20 ¶ 10; Ex. C at 76:23–80:22, contrary to Mr. Phillips's representations and the requirements set forth in the Gitbook regarding transfers of Movement DAO funds, Ex. F at 32:20–34:6; ECF No. 106-3 at PLAINTIFF0000088; ECF No. 6 ¶ 10; Ex. A at 29:22–30:20; *accord* ECF No. 139 at 6.  The record also shows that Mr. Phillips's promise to implement the Gitbook was false when he removed Plaintiffs as authorized signatories to the DAO endowment, despite the Gitbook requiring Plaintiffs be signatories to that account.  Ex. A at 27:8–28:25; ECF No. 106-3 at PLAINTIFF0000052.

### C.    The record supports finding fraud regarding Plaintiffs' tokens

Defendants claim there is no evidence to support Judge Reid's finding that "Defendant Phillips represented he would hold Plaintiffs' voting tokens in trust and vote them as Plaintiffs directed." ECF No. 139 at 5.  The record shows that Mr. Phillips agreed to use Plaintiffs' tokens per their instructions, Ex. A at 45:12–46:12, and that he did so when it suited his interests, *id.* at 49:1–50:17; Ex. F at 38:8–12.[10]  Defendants' argument regarding Jon Gordon's votes on Snapshot proposals is misdirection, ECF No. 142 at 7, as Judge Reid's specific finding pertains to Mr. Phillips's promise to vote Plaintiffs' DAO endowment authorization tokens, not Snapshot votes, *see* ECF No. 139 at 5.

### D.    The record supports finding fraud regarding Mr. Yurchak's involvement

Defendants claim the weight of the evidence is contrary to Judge Reid's conclusion that Mr. Phillips made fraudulent representations about Mr. Yurchak's involvement in the Movement DAO project.  ECF No. 142 at 8–10.  Judge Reid's conclusion is supported by compelling

---

[10]  Defendants' contention that Mr. Phillips only had access to a ledger that enabled him to use Plaintiffs' tokens, rather than the actual tokens themselves, is a distinction without a difference. ECF No. 142 at 7.  It is also inaccurate, as Mr. Phillips admitted the tokens were held by the dao-lawfirm, ECF No. 106-40, and the dao-lawfirm is Mr. Phillips's alter-ego.  Ex. C at 69:4–70:14, 77:9–77:22, 87:12–88:21; Ex. A at 29:13–19.

evidence.  First, the record shows that Mr. Yurchak objected to his firm being included in the Gitbook as Service Provider, Ex. C at 68:12–70:5; ECF No. 100-19, Mr. Phillips knew of that objection during the drafting of the Gitbook and was reminded again in April 2022 when Mr. Yurchak discovered his firm had been included in the Gitbook over his objection, Ex. F at 34:17–37:2; ECF No. 100-19, yet Mr. Phillips continued to represent to Plaintiffs through August 2022 and beyond that Mr. Yurchak was overseeing the Movement DAO project, Ex. F at 33:10–34:16; ECF No. 106-7 at PLAINTIFF0000302; ECF No. 106-8 at PLAINTIFF0000362; Ex. A at 29:13–31:4, 31:21–24; 32:18–19, 50:18–52:9; Ex. C at 14:24–16:4.

Second, the record shows Mr. Phillips represented he would use the cryptocurrency address ending in 0085 on behalf of Mr. Yurchak and in close consultation with him, Ex. F at 32:20–33:15; Ex. C at 14:24–16:4; but did not do so, Ex. C at 70:6–72:1, 73:2–80:22, 83:12–84:23; ECF No. 106-42; ECF No. 106-7 at PLAINTIFF0000302; ECF No. 106-8 at PLAINTIFF0000362; ECF No. 68 ¶ 19.  Instead, Mr. Phillips committed numerous fraudulent acts to maintain the fiction that Mr. Yurchak oversaw the Movement DAO project, including presenting a false invoice purporting to be from Mr. Yurchak's firm, *see supra*  Part IV.A at 10.

Defendants mischaracterize the record to suggest that Mr. Yurchak was actively involved in Movement DAO.  Mr. Yurchak's testimony shows he would go weeks and months without hearing about the project, and then would be asked out of the blue to review documents without any context that Defendants had already drafted.  Ex. C at 83:12–87:1.  The best evidence of Mr. Yurchak's lack of involvement is that he considered his work so *de minimis* that he never billed for any Movement DAO-related work after March 2022. *Id.* at 89:19–21.

Defendants contend that Mr. Phillips's misrepresentations about Mr. Yurchak cannot constitute fraud because they only concerned the legitimacy of Snapshot proposals, and Mr.

Breslow did not read or rely on any of the proposals.  ECF No. 142 at 10.  The misrepresentations about Mr. Yurchak's involvement constitute fraud because they show that Mr. Phillips was not implementing the Gitbook, which called for the installation of an independent law firm to oversee the Movement DAO's activities.  Ex. F at 33:16–34:8; ECF No. 106-3 at PLAINTIFF0000088.  Those misrepresentations also facilitated Mr. Phillips in convincing Plaintiffs that the Snapshot proposals were advisory.  Ex. A at 17:16–18:15, 50:18–52:9; Ex. C at 14:24–16:4.  In other words, Mr. Phillips's misrepresentations about Mr. Yurchak helped conceal Mr. Phillips's scheme by convincing Plaintiffs not to pay close attention to the Snapshot proposals he was using to effect his fraud.  *Accord* ECF No. 139 at 5.

> **E.      The record supports finding that Snapshot proposals have no authority**

Judge Reid correctly concluded that Snapshot proposals were invalid because Plaintiffs presented "substantial proof that DAO community members had yet to be vested with voting authority."  ECF No. 139 at 6.  The Gitbook governs the Movement DAO and the MovementDAO entity.  ECF No. 106-13 ¶¶ 20, 24; Ex. F at 15:6–16.  It explains that the Snapshot platform only has authority after $MOVE tokens have been distributed, ECF No. 106-3 at PLAINTIFF0000048, -54, -120, and that only $MOVE tokenholders can participate in Snapshot governance, *id.* at PLAINTIFF0000089.  *See also* Ex. A at 19:3–27:7.  The record shows that $MOVE tokens were never issued, ECF No. 68 ¶ 12, and thus no holder of a $MOVE token voted on a Snapshot proposal.  Phillips admitted that the Snapshot voting process he implemented was inconsistent with the Gitbook.  Ex. F at 23:22–25:8.  Without $MOVE tokens, no Snapshot vote was valid.

Defendants claim that the Gitbook permitted individuals holding MAPE NFTs to participate in "initial governance" of the Movement DAO.  First, the Gitbook does not set forth a

policy on MAPE NFTs; it only references them in passing and states "Details to follow."  ECF No. 106-3 at PLAINTIFF0000072.  Second, Mr. Breslow clarified how MAPE NFTs were used before Movement DAO's launch—they permitted community members to provide advisory votes on how leadership should develop the DAO.  Ex. A at 25:6–27:7.  Third, Plaintiffs' expert, Nicholas Bax, established that MAPE NFTs were not, in fact, used to pass proposals on Snapshot.  Ex. E at 65:15– 68:8; Ex. G at 26.

Mr. Bax instead demonstrated that Mr. Phillips deployed a fraudulent scheme that granted himself immense voting power within Snapshot, such that he cast over 95% of the votes on proposals he authored.[11]  Ex. E at 52:8–57:4 and 68:9–73:17; Ex. G at 8–10, 22–33.  The evidence of Mr. Phillips's fraudulent conduct to supercharge his Snapshot voting power further supports Judge Reid's finding that the Snapshot proposals were not authorized.  That finding is also supported by the evidence showing Mr. Phillips's falsely represented that Mr. Yurchak reviewed and approved the Snapshot proposals and that Mr. Phillips used the 0085 address to vote on those proposals with Mr. Yurchak's consultation and approval.  *See supra* Part IV.D.

This substantial record demonstrates that the Snapshot proposals were unauthorized and procured by fraud, and thus they provide Defendants with no defense for their wrongful conduct.

**V.     The record supports finding a breach of fiduciary duty**

Defendants claim that Judge Reid erred when she concluded that Mr. Phillips owed Plaintiffs fiduciary duties.  ECF No. 142 at 15.  There is no dispute that until January 1, 2022 Mr. Phillips did not owe Plaintiffs a fiduciary duty because his independent contractor agreement

---

[11]  Defendants urge the Court to reject Mr. Bax's analysis on the basis that he only reviewed the Snapshot voting strategy as it appeared weeks before the hearing.  ECF No. 142 at 13.  Defendants omit that, on redirect, Mr. Bax explained that the Snapshot voting strategy he analyzed was identical to the Snapshot strategy in place when the proposals were ratified.  Ex. E at 108:4–109:19; *see also id.* at 72:2–73:17.

disclaimed such duties.  But after that contract ended, the record shows Mr. Phillips assumed a fiduciary duty to Plaintiffs.  There is copious evidence on this point, largely consisting on Mr. Phillips's own statements.  *See supra* note 4; Ex. A at 32:20–34:6, 35:5–9, 43:12–46:12; Ex. C at 7:14–9:8, 14:6–16; Ex. F at 14:5–12; ECF No. 106-13 ¶ 11.  That evidence "strongly indicates" a fiduciary relationship between Plaintiffs and Mr. Phillips.  ECF No. 139 at 7.

Defendants argue that as of February 2, 2022 Phillips was acting only on behalf of MovementDAO, which they claim (without evidence) sprung into being as an unincorporated association on the same date.  ECF No. 142 at 15.  That position is inconsistent with the record, which shows MovementDAO did not even purport to exist until August 2022.  ECF No. 106-4; Ex. A at 31:5–20; *see supra* Part II at 5.

Defendants contend that Mr. Phillips "acted as a member of MovementDAO pursuant to grants of authority from MovementDAO's members."  ECF No. 142 at 15.  But no Snapshot proposal purported to grant him authority until August 2022, which underscores that he was acting at the behest of Mr. Breslow.  And, in August 2022, his "grants of authority" lacked authorization because they were based on proposals passed through the ultra vires Snapshot voting system that he erected.  *See supra* Part IV.E.

Defendants argue that Judge Reid erred by concluding that Mr. Phillips breached his duty when he transferred $8.5 million from the DAO endowment and stripped Plaintiffs of their voting rights because, Defendants contend, there is no evidence that these acts were done with an improper purpose.  ECF No. 142 at 15.  First, the fact that these acts were against Plaintiffs' interest is sufficient to constitute a breach of duty.[12]  *Cap. Bank v. MVB, Inc.*, 644 So. 2d 515,

---

[12]  Mr. Phillips also breached his duty by proposing and then executing $8.5 million in transfers out of the DAO endowment in February 2023 after Plaintiffs instructed him to stop all spending

520 (Fla. Dist. Ct. App. 1994) (finding breach of duty by "not acting in best interest of" beneficiary).  Second, the record shows that the February 2023 transfers were for an improper purpose—namely to dissipate and conceal DAO endowment assets for Defendants' benefit.  This improper purpose is evident from Defendants' transfer to jango.eth who never worked on the Movement DAO project, Ex. C at 18:14–19:11; Ex. D (Hr'g Trans. (April 27, 2023 afternoon session (sealed testimony)) at 5:2–20; ECF No. 106-45 ¶¶ 7–10, transfers that Defendants claim were authorized by Snapshot proposals but whose transfer amounts exceeded the amounts described in the proposals, Ex. E at 84:23–85:20; ECF No. 106-10 (MIP-0018); ECF No. 106-14 ¶¶ 16 & 17, transfers for "deferred developer payments" that had already been paid through an August 2022 transfer, *compare* Ex. A at 49:1–50:25; ECF No. 106-6 (Aug. 2022 proposal funding MovementDAO costs through end of 2022) *with* ECF No. 106-10 (Jan. 2023 proposal purporting to pay "deferred" 2022 developer costs), and Defendants' repeated inability to present an accurate accounting of where they transferred the DAO endowment assets and for what purpose, *see* Ex. E at 31:10–39:11, 83:16–92:12; Ex. G at 40–50.

Defendants claim that disabling Plaintiffs' voting rights was not wrongful because Plaintiffs were trying to remove their funds from the DAO endowment.  ECF No. 142 at 16.  The Gitbook enshrined Plaintiffs as DAO endowment signatories.  ECF No. 106-3 at PLAINTIFF0000052; Ex. A at 27:8–28:25; Ex. E at 60:1–19.  Removing them thus directly contravened the Gitbook, which Phillips admits he was bound to follow, ECF No. 106-13 ¶¶ 20, 24; Ex. F at 15:6–16.  The evidence also shows that Mr. Phillips removed Plaintiffs soon after they discovered his fraud, Ex. A at 57:4–58:7; ECF No. 106-27, which shows that Plaintiffs'

---

in December 2022.  ECF No. 106-18 (Dec. 30, 2022 email); Ex. A at 55:13–58:5; ECF No. 106-11 (Snapshot spending proposal dated Jan 31, 2023).

removal was done to ensure that Defendants could reap at least some of the fruits of their fraudulent scheme.

Defendants claim that Mr. Phillips's refusal to inform the Movement DAO community of Mr. Breslow's redemption offer is not a breach of duty.  ECF No. 142 at 16.  They claim Judge Reid ignored Mr. Phillips's testimony that relaying Mr. Breslow's offer would have required Mr. Phillips to lie to the DAO community.  *Id.*  Judge Reid did not ignore that testimony; she just did not find it credible.  The basis for concluding Mr. Phillips's testimony lacked credibility is compelling.  *See, e.g.*, Ex. F at 10:23–13:2 & 51:19–54:21.  Judge Reid instead credited Mr. Breslow's testimony.  Ex. A at 54:11–55:12; ECF No. 6 ¶¶ 52–57; *accord* ECF No. 139 at 7.

## VI.     The record supports a finding of irreparable harm

Defendants incorrectly claim that Judge Reid made no finding that Defendants dissipated or concealed DAO endowment assets.  ECF No. 142 at 17.  Not so.  Judge Reid based her finding on Defendants' admission that they did not comply with the TRO.  Ex. E at 31:10–39:11; *accord* ECF No. 139 at 7.  She also based her finding on Defendants' express request to dissipate assets made in their request to modify the TRO, which asked the Court to permit them to spend nearly $500,000 of DAO endowment funds.  ECF No. 139 at 3, 7; *see also* ECF No. 86 at 10.

Not only does the record show that Defendants did not return all assets, it also shows that Defendants violated the TRO by transferring DAO endowment assets after the TRO issued, which demonstrates concealment.  Ex. E at 89:23–92:12; Ex. G at 47–50 (referencing ECF No. 106-36 (Hr'g Ex. 133); ECF No. 106-37 (Hr'g Ex. 134); ECF No. 106-44 (Hr'g Ex. 160); ECF No. 106-53 (Hr'g Ex. 172)).  Plaintiffs' expert also demonstrated that Defendants' accounting was misleading and inaccurate, including Defendants' failure to account for assets they converted to cash, which further suggests concealment.  Ex. E at 83:16–89:22.  The Court need

only consider that Defendants transferred assets to an individual who never performed any work for the Movement DAO to conclude that Defendants attempted to dissipate and conceal assets. Ex. C at 18:14–19:11; Ex. D  at 5:2–20; ECF No. 106-45 ¶¶ 7–10; *see also supra* Part V at 17. To this day, Defendants have not provided a full accounting.  *See* ECF No. 137.  The failure to account for the stolen DAO endowment funds is strong evidence of concealment.  The record shows that this dissipating and concealing conduct is likely to continue absent an injunction.

## VII.    The record supports finding that the balance of hardships favors Plaintiffs

Defendants argue that the balance of hardships weighs in their favor because freezing DAO endowment assets would prevent vendors from being paid.  First, the record contains no contract or any other indicia showing that any vendors are owed anything, despite Defendants' being ordered to produce such an accounting.  *See* ECF No. 47.  Defendants' failure to present a single contract for any MovementDAO vendor is strong evidence that the February 2023 transfers were fraudulent.  Second, as Judge Reid found, there is substantial evidence showing there was no legitimate authorization to pay vendors.  *See supra* Part IV.E and Part V at 17; ECF No. 88 at 11–14; *accord* ECF No. 139 at 8.  Third, because of the likelihood of dissipation, Plaintiffs face irreparable harm absent an injunction, whereas the vendors (if owed anything) would merely face monetary harm.  ECF No. 139 at 8.  Defendants also argue that social movements would go unfunded if the DAO endowment remains frozen.  ECF No. 142 at 18.  But the record shows MovementDAO does not host or fund social groups on its platform, Ex. F at 67:4–6; Ex. A at 47:5–48:25, and lacks the ability to do so, Ex. E at 73:18–78:6; Ex. G at 34–39.

## VIII.   The Court should not require Plaintiffs to post bond

Defendants argue a bond is necessary for the first time in their Objection.  *See* ECF No. 142 at 19.  Defendants have waived that argument by not making it in their opposition to

Plaintiffs' motion for preliminary injunction or at the preliminary injunction hearing.  *See* ECF No. 43; *Golden v. Univ. of Miami*, 484 F. Supp. 3d 1255, 1258 (S.D. Fla. 2020) ("arguments that are not raised before a magistrate judge cannot be raised for the first time as an objection").

Notwithstanding that waiver, the Court has already found good cause to forego the bond requirement, and the facts supporting that determination remain unchanged.  ECF No. 18 at 6; *see also* ECF No. 4 at 32–33.  Good cause has been further established because there is no risk of financial harm to Defendants because MovementDAO does not host any groups on its platform, has not launched, and thus has no commercial activity to conduct.  *See* Ex. F at 67:4–6; Ex. A at 47:5–48:25; *supra* Part III; *Gay-Straight All. of Yulee High Sch. v. Sch. Bd. of Nassau Cnty.*, 602 F. Supp. 2d 1233, 1238 (M.D. Fla. 2009) (waiving bond because there was little risk of monetary loss to defendant).  Defendants also claim so-called "vendors" will go unpaid if an injunction issues, ECF No. 142 at 17–18, but they cite no evidence—no contracts, no invoices—to show any ongoing vendor obligations.  *See* ECF No. 88 at 11–14.  No such legitimate obligations exist.

Thus, in addition to the original basis for good cause, Defendants "presented no evidence as to the appropriate amount for a bond nor a reasonable estimate of any damages [they] may incur."  *Planco Fin. Servs., L.L.C. v. Guzzetta*, 2009 WL 10700931, at *2 (S.D. Fla. Apr. 2, 2009).  Bond should be waived.  *See Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d 1237, 1252 (S.D. Fla. 2005) ("the bond requirement may be waived if bond is not requested, or if no evidence is presented that a party will suffer damages from the issuance of an injunction.").[13]

## IX.    Conclusion

For the foregoing reasons, the Court should adopt Judge Reid's Report in full.

---

[13]  Defendants also claim Judge Reid failed to recommend a specific injunction.  ECF No. 142 at 19.  That is frivolous.  By recommending to grant Plaintiffs' Motion, Judge Reid recommended converting the existing TRO into a preliminary injunction without modification.

Dated:  August 4, 2023


John K. Shubin, Esq.
Dylan M. Helfand, Esq.
Jamie L. Katz, Esq.
**SHUBIN & BASS, P.A.**
150 W Flagler Street, Suite 1420
Miami, FL 33130
Tel.: (305) 381-6060
Fax: (305) 381-9457
Email:  jshubin@shubinbass.com
           jkatz@shubinbass.com
           dhelfand@shubinbass.com

Christopher T. Berg (*pro hac vice*)
Andrew R. Iglesias (*pro hac vice* )
**ELLIS GEORGE CIPOLLONE
O'BRIEN LLP**
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Tel.: (310) 274-7100
Fax: (310) 275-5697
Email:  cberg@egcfirm.com
           aiglesias@egcfirm.com


*Attorneys for Plaintiffs Ryan Breslow, Alex Fine, and Jon Gordon*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was served by the

Court's CM/ECF system on August 4, 2023 on all counsel of record.


<u>/s/ Jamie L. Katz</u>_
Jamie L. Katz